# Non-Confidential Appendix
# of Appellant – Volume I
# Pages 1 - 550

## DS ADVANCED ENTERPRISES, LTD. V. LOWE'S

## HOME CENTERS, LLC

### Case number: 25-1072; 25-1581

# DS ADVANCED ENTERPRISES, LTD. V. LOWE'S HOME CENTERS, LLC

## Case number: 25-1072; 25-1581

## Non-Confidential Appendix - Volume I

## Table of Contents

| Docket No. 32 | **Protective Order** | Pages 1-17 |
|---|---|---|

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| | U.S. Patent 11,054,118 ("'118 Patent") | 001-012 |
| 109 | Order on DSAE's post judgment motion pursuant to Fed. R. Civ. P. 52(b) and 59(e). | 013-016 |
| 67 | Order on Lowe's motion for summary judgment of non-infringement. | 017-024 |
| 107 | Order on Magistrate's report and recommendation | 025-028 |
| 108 | Order on Lowe's motion for attorney's fees and expenses | 029-033 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 99 | Magistrate's report and recommendation | 034-048 |
| 111 | Final Judgment. | 049-050 |
| 100 | Transcript from hearing on DSAE's post judgment motion. | 051-060 |
| 69 | Transcript from hearing on Lowe's motion for summary judgment. | 061-075 |
|  | Magistrate's Chamber Rules regarding Discovery Disputes | 076-077 |
| 61 | Order vacating *Markman* Hearing | 078-079 |
| 79 | Notice of DSAE's Motion pursuant to Fed. R. Civ. P. 52(e) and 52(b) | 080-081 |
| 79-1 | DSAE's Brief on Motion pursuant to Fed. R. Civ. P. 52(e) and 52(b) ("Rule 52/59 Motion") | 082-106 |
| 79-2 | Cummins Declaration in Support of DSAE's Rule 52/59 Motion | 107-109 |
| 79-3 | Lowe's Global Sourcing, Inc. response to subpoena for production of documents | 110-112 |
| 79-4 | Home Depot admitting, in a different case, Mr. David Sherman gave presentations to Home Depot regarding DSAE's Covered Products in 2019 | 113-114 |
| 79-5 | Public Catalog by DSAE's preferred manufacturer showing DSAE's "3 in 1" Covered Products | 115-128 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 79-6 | Certificate of Service for DSAE's Rule 52/59 Motion | 129 |
| 83 | Lowe's Brief in Opposition to DSAE's Rule 52/59 Motion | 130-138 |
| 83-1 | Declaration of Lowe's Counsel, Scott Stimpson, in opposition to DSAE's Rule 52/59 Motion | 139-142 |
| 83-2 | Lowe's Exhibit 1 showing email to DSAE's counsel attaching under seal documents | 143-144 |
| 83-3 | Lowe's Exhibit 2 showing email regarding documents for production | 145-146 |
| 83-4 | Lowe's Exhibit 3 attaching transcript of Hearing on Lowe's Summary Judgment Motion | 147-162 |
| 86 | DSAE's brief replying to Lowe's opposition to DSAE's Rule 52/59 Motion | 163-174 |
| 86-1 | Declaration of DSAE's Counsel, Patrick Cummins, in support of DSAE's Rule 52/59 Motion | 175-177 |
| 86-2 | DSAE's Exhibit A showing Ledvance brief identifying "metal housing" LED fixture | 178-179 |
| 34 | Lowe's Brief on Motion pursuant to Fed. R. Civ. P. 56 ("Rule 56") | 180-195 |
| 34-1 | Notice of Lowe's Motion pursuant to Rule 56 | 196-197 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 34-2 | Lowe's Notice of Lodgment in support of Lowe's Rule 56 Motion | 198-199 |
| 34-3 | Stimpson Declaration in support of Lowe' Rule 56 Motion | 200-201 |
| 34-4 | Lowe's Declaration of Dr. Bretschneider in support of Lowe's Rule 56 Motion | 202-209 |
| 34-5 | DSAE's Patent attached as Exhibit A to Lowe's Rule 56 Motion | 210-220 |
| 34-6 | Sample of Accused Product #504630 submitted as physical exhibit | 221 |
| 34-7 | Lowe's letter to DSAE's counsel attached as Exhibit C | 222-228 |
| 34-8 | Lowe's Exhibit D attaching DSAE's preliminary claim construction | 229-246 |
| 34-9 | Lowe's Exhibit E attaching Lowe's preliminary claim construction | 247-249 |
| 34-10 | Lowe's Exhibit F attaching website discussing wire connectors | 250-253 |
| 34-11 | Lowe's Exhibit G attaching other website discussing wire connectors | 254-256 |
| 45 | DSAE's Brief in Opposition to Lowe's Rule 56 Motion | 257-294 |
| 45-1 | DSAE's Table of Exhibits in opposition to Lowe's Rule 56 Motion | 295 |
| 45-1 | DSAE's Exhibit 1 attaching Oxford Dictionary definitions for certain claim terms | 296-302 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 45-1 | DSAE's Exhibit 2 attaching Merriam-Webster definitions for certain claim terms | 303-310 |
| 45-1 | DSAE's Exhibit 3 attaching other Merriam-Webster definitions for certain claim terms | 311-317 |
| 45-1 | DSAE's Exhibit 4 attaching DSAE's non-provisional patent application from which the '118 Patent claims priority | 318-335 |
| 45-1 | DSAE's Exhibit 5 attaching DSAE's non-provisional patent application from which the '118 Patent claims priority | 336-341 |
| 45-1 | DSAE's Exhibit 6 attaching a certificate correction for the '118 Patent | 342-343 |
| 45-1 | DSAE's Exhibit 7 attaching a certificate correction for the '118 Patent | 344-345 |
| 45-1 | DSAE's Exhibit 8 attaching certain pages from Electrical Fundamentals textbook | 346-362 |
| 45-1 | DSAE's Exhibit 9 attaching DSAE's March 20, 2024 Infringement Contentions | 363-432 |
| 45-1 | DSAE's Exhibit 10 attaching excerpts from Lowe's reply brief in support of Lowe's Fed. R. Civ. P. 12(b)(6) Motion | 433-435 |
| 45-1 | DSAE's Exhibit 11 attaching instructions and packaging of an Accused Product as a physical exhibit. | 436 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 45-1 | DSAE's Exhibit 12 attaching relevant pieces of Accused Product as physical exhibit | 437 |
| 45-1 | DSAE's Exhibit 13 attaching wafer piece of Accused Product as physical exhibit | 438 |
| 45-1 | DSAE's Exhibit 14 attaching other pieces of Accused Product as physical exhibit | 439 |
| 45-1 | DSAE's Exhibit 15 attaching screen capture of Lowe's website showing various wire connectors | 440-443 |
| 45-2 | DSAE's Notice of Lodgment of documents in support of DSAE's opposition to Lowe's Rule 56 Motion | 444-446 |
| 45-3 | Cummins Declaration in support of DSAE's opposition to Lowe's Rule 56 Motion | 447-451 |
| 45-4 | DSAE's Request for Judicial Notice in support of DSAE's opposition to Lowe's Rule 56 Motion | 452-457 |
| 45-5 | Certificate of Service of DSAE's opposition to Lowe's Rule 56 Motion | 458-460 |
| 86 | DSAE's Reply to Lowe's opposition to DSAE's Rule 52/59 Motion | 461-472 |
| 86-1 | Cummins Declaration in support of DSAE's Reply to Lowe's opposition to DSAE's Rule 52/59 Motion | 473-475 |
| 86-2 | Brief excerpt of Ledvance referencing "metal housing" of other product in | 476-477 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| | other case involving '118 Patent | |
| 59 | Notice of Lowe's Protective Order Motion | 478-479 |
| 59-1 | Lowe's Motion Brief alleging Protective Order violation | 480-493 |
| 59-2 | Lowe's Declaration of Compliance for Lowe's motion alleging Protective Order violation | 494-496 |
| 59-3 | Stimpson Declaration in support of motion alleging Protective Order violation | 497-498 |
| 59-4 | Lowe's **Confidential** Internal Product Presentation (LHC_000795-812), under seal as Exhibit A | 499-500 |
| 59-5 | Lowe's **Confidential** Sales Data Spreadsheet (LHC_000841-887), under seal as Exhibit B | 501-502 |
| 59-6 | Excerpts from Supplemental Response to Interrogatory No. 12, under seal as Exhibit C, **Confidential** | 503-504 |
| 59-7 | Lowe's Exhibit D showing emails between Lowe's counsel and DSAE's counsel | 505-509 |

PETER S. DOODY (Bar No. 127653)
Doody@higgslaw.com
KATHRYN CALLAGHAN (Bar No. 340145)
callaghank@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:  (619) 236-1551
Facsimile:  (619) 696-1410

SCOTT D. STIMPSON (Pro Hac Vice)
KATHERINE M. LIEB (Pro Hac Vice)
LINXUAN YAN (Pro Hac Vice)
SILLS CUMMIS & GROSS P.C.
101 Park Avenue, 28th Floor
New York, New York 10178
Telephone:  (212) 643-7000

Attorneys for Defendant LOWE'S HOME
CENTERS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., a Corporation,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC, a Corporation,<br><br>Defendant. | Case No. 3:23-cv-01335-CAB-JLB<br><br>**JOINT MOTION TO ENTER PROTECTIVE ORDER**<br><br>**(JURY TRIAL DEMANDED)**<br><br>JUDGE:   THE HONORABLE CATHY ANN BENCIVENGO<br><br>PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

WHEREAS Plaintiff DS ADVANCED ENTERPRISES, LTD. ("Plaintiff") and Defendant LOWE'S HOME CENTERS, LLC ("Defendant"), through undersigned counsel of record, have stipulated to the terms of a proposed protective order to govern the production of confidential and proprietary information in this action;

1

1    WHEREAS a copy of the proposed protective order, in the form agreed upon by the

2    parties, is being submitted to the Court via electronic mail;

3    NOW THEREFORE, the parties, by and through their undersigned counsel, jointly

4    request and hereby move for the entry of a Protective Order regarding confidential

5    information in the form set forth in the proposed protective order attached hereto as Exhibit

6    A, or as otherwise deemed appropriate by the Court.

7

8    Dated:  March 20, 2024                    HIGGS FLETCHER & MACK LLP

9

10

11                                    By:  _____*/s/ Peter S. Doody*_____
                                          PETER S. DOODY
12                                        KATHRYN CALLAGHAN
                                          **HIGGS FLETCHER & MACK LLP**
13

14                                        SCOTT D. STIMPSON (Pro Hac Vice)
                                          KATHERINE M. LIEB (Pro Hac Vice)
15                                        LINXUAN YAN (Pro Hac Vice)
                                          **SILLS CUMMIS & GROSS P.C.**
16                                        Attorneys for Defendant LOWE'S HOME
                                          CENTERS, LLC
17

18

19   Dated:  March 20, 2024                    CUMMINS INTELLECTUAL PROPERTY
                                               LAW PLLC
20

21

22                                    By:  _____*/s/ Patrick Cummins*_____
                                          PATRICK CUMMINS
23                                        Attorneys for Plaintiff DS ADVANCED
                                          ENTERPRISES, LTD.
24

25

26

27

28

2

## **ECF CERTIFICATION**

Pursuant to Section 2(f)(4) of the Electronic Case Filing Administrative Policies and Procedures of the United States District Court for the Southern District of California, I certify that the content of this document is acceptable to the foregoing counsel of record for the parties and that I have obtained authorization from each counsel of record to affix his or her electronic signature hereto.

_\_\_/s/ Peter S. Doody_____
Peter S. Doody

3

PETER S. DOODY (Bar No. 127653)
Doody@higgslaw.com
KATHRYN CALLAGHAN (Bar No. 340145)
callaghank@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:  (619) 236-1551
Facsimile:  (619) 696-1410

SCOTT D. STIMPSON (Pro Hac Vice)
KATHERINE M. LIEB (Pro Hac Vice)
LINXUAN YAN (Pro Hac Vice)
SILLS CUMMIS & GROSS P.C.
101 Park Avenue, 28th Floor
New York, New York 10178
Telephone:  (212) 643-7000

Attorneys for Defendant LOWE'S HOME
CENTERS, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., a Corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>LOWE'S HOME CENTERS, LLC, a Corporation,<br><br>              Defendant. | Case No. 3:23-cv-01335-CAB-JLB<br><br>**PROTECTIVE ORDER**<br><br>**(JURY TRIAL DEMANDED)**<br><br>JUDGE:   THE HONORABLE<br>              CATHY ANN<br>              BENCIVENGO<br><br>PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

The Court recognizes that at least some of the documents and information ("materials") being sought through discovery in the above-captioned action are, for competitive reasons, normally kept confidential by the parties. The parties have agreed to be bound by the terms of this Protective Order ("Order") in this action.

4

The materials to be exchanged throughout the course of the litigation between the parties may contain trade secret or other confidential research, technical, cost, price, marketing or other commercial information, as is contemplated by Federal Rule of Civil Procedure 26(c)(1)(G).   The purpose of this Order is to protect the confidentiality of such materials as much as practical during the litigation.  THEREFORE:

DEFINITIONS

1.   The term "confidential information" will mean and include information contained or disclosed in any materials, including documents, portions of documents, answers to interrogatories and requests for admissions, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, including data, summaries, and compilations derived therefrom that is deemed to be confidential information by any party to which it belongs.

2.   The term "materials" will include, but is not limited to: documents; correspondence; memoranda; bulletins; blueprints; specifications; customer lists or other material that identify customers or potential customers; price lists or schedules or other matter identifying pricing; minutes; telegrams; letters; statements; cancelled checks; contracts; invoices; drafts; books of account; worksheets; notes of conversations; desk diaries; appointment books; expense accounts; recordings; photographs; motion pictures; compilations from which information can be obtained and translated into reasonably usable form through detection devices; sketches; drawings; notes (including laboratory notebooks and records); reports; instructions; disclosures; other writings; models, prototypes, and other physical objects.

3.   The term "counsel" will mean outside counsel of record, and other attorneys, paralegals, secretaries, and other support staff employed in the law firms identified below: Cummins IP PLLC and Sills Cummis & Gross P.C. "Counsel" also includes Will Baeza, an in-house attorney for Lowe's Home Center LLC ("LHC").   Additional in-house attorneys for either party may be designated as "counsel" under this Paragraph by providing

5

1    the other party with notice of the names of such in-house attorneys prior to the disclosure

2    of any "CONFIDENTIAL-FOR COUNSEL ONLY" materials.

3                                        <u>GENERAL RULES</u>

4        4.      Each party to this litigation that produces or discloses any materials, answers

5    to interrogatories and requests for admission, trial testimony, deposition testimony, and

6    transcripts of trial testimony and depositions, or information that the producing party

7    believes should be subject to this Order may designate the same as "CONFIDENTIAL" or

8    "CONFIDENTIAL – FOR COUNSEL ONLY."

9              a.      Designation as "CONFIDENTIAL": **A party or non-party subject to**

10   **this Order may only designate documents or other information in this action as**

11   **"CONFIDENTIAL" if the designating party or non-party has an articulable,**

12   **good faith basis to believe that each document or other information designated**

13   **as confidential qualifies for protection under Federal Rule of Civil Procedure**

14   **26(c).**

15             b.      Designation as "CONFIDENTIAL – FOR COUNSEL ONLY": Any

16   party may designate information as "CONFIDENTIAL – FOR COUNSEL ONLY"

17   only if, in the good faith belief of such party and its counsel, the information is

18   among that considered to be most sensitive by the party, including but not limited to

19   trade secret or other confidential research, development, financial or other

20   commercial information.

21       5.      With respect to the Confidential portion of any Discovery Material other than

22   deposition transcripts and exhibits, the producing party or its counsel may designate such

23   portion as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" by

24   stamping or otherwise clearly marking as "CONFIDENTIAL" or "CONFIDENTIAL –

25   FOR COUNSEL ONLY," respectively, on each page of the protected material in a manner

26   that will not interfere with legibility or audibility.  For digital files being produced, the

27   producing party may mark each viewable page or image with the appropriate designation,

28

and for native files, mark the medium, container, and/or communication in which the digital files were contained.

6.     In the event the producing party elects to produce materials for inspection, no marking need be made by the producing party in advance of the initial inspection.  For purposes of the initial inspection, all materials produced will be considered as "CONFIDENTIAL – FOR COUNSEL ONLY," and must be treated as such pursuant to the terms of this Order.  Thereafter, upon selection of specified materials for copying by the inspecting party, the producing party must, within a reasonable time prior to producing those materials to the inspecting party, mark the copies of those materials that contain confidential information with the appropriate confidentiality marking.

7.     Whenever a deposition taken on behalf of any party involves a disclosure of confidential information of any party:

a.     the deposition or portions of the deposition must be designated as containing confidential information subject to the provisions of this Order; such designation must be made on the record whenever possible, but a party may designate portions of depositions as containing confidential information after transcription of the proceedings; a party will have until 30 calendar days after receipt of the deposition transcript to inform the other party or parties to the action of the portions of the transcript to be designated "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY."

b.     the disclosing party will have the right to exclude from attendance at the deposition, during such time as the confidential information is to be disclosed, any person other than the deponent, counsel (including their staff and associates), the court reporter, and the person(s) agreed upon pursuant to Paragraph 10 below; and

c.     the originals of the deposition transcripts and all copies of the deposition must bear the legend "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY," as appropriate, and the original or any copy ultimately

7

1   presented to a court for filing must not be filed unless it can be accomplished under
2   seal, identified as being subject to this Order, and protected from being opened
3   except by order of the Court.

4       8.     All confidential information designated as "CONFIDENTIAL" or
5   "CONFIDENTIAL – FOR COUNSEL ONLY" must not be disclosed by the receiving
6   party to anyone other than those persons designated within this Order and must be handled
7   in the manner set forth below and, in any event, must not be used for any purpose other
8   than in connection with this litigation and any appeals thereto, and not for any business,
9   commercial, or competitive purpose or in any other litigation proceeding unless and until
10  such designation is removed either by agreement of the parties or by order of the Court.
11  Nothing contained in this Order, however, will affect or restrict the rights of any party with
12  respect to its own documents or information produced in this action.

13      9.     Information designated "CONFIDENTIAL – FOR COUNSEL ONLY" must
14  be viewed only by counsel (as defined in Paragraph 3) of the receiving party, and by
15  independent experts or consultants under the conditions set forth in this Paragraph.  For
16  purposes of this Paragraph, an expert or consultant shall mean a person with specialized
17  knowledge or experience in a matter pertinent to the litigation who (1) has been retained
18  by a party or its counsel to serve as an expert witness or as a consultant in this action, (2)
19  is not a past or current employee of a party or of a party's competitor, and (3) at the time
20  of retention is not anticipated to become an employee of a party or of a party's competitor.
21  An expert or consultant is defined to include the outside consultant's or expert's direct
22  reports and other support personnel, such that the disclosure to an outside consultant or
23  expert who employs others within his or her firm to help in his or her analysis shall count
24  as a disclosure to a single outside consultant or expert.  No disclosure of information
25  designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" may
26  be provided to an expert or consultant that is involved in competitive decision-making, as
27  defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf
28  of a party or a competitor of a party.

8

a. The right of any independent expert to receive any confidential information will be subject to the advance approval of such expert by the producing party or by permission of the Court. The party seeking approval of an independent expert must provide the producing party with the name and curriculum vitae of the proposed independent expert, and an executed copy of the form attached hereto as <u>Exhibit A</u>, in advance of providing any confidential information of the producing party to the expert.

b. Any objection by the producing party to an independent expert receiving confidential information must be made in writing within 14 calendar days following receipt of the identification of the proposed expert. Any such objection must set forth in detail the grounds on which it is based.

c. A party that receives a timely written objection must follow the meet and confer requirements set forth in Paragraph V.A. of the Honorable Jill J. Burkhardt's Civil Chambers Rules (the "Chambers Rules") to try to resolve the matter by agreement. If the parties cannot reach agreement promptly, counsel for all affected parties will address their dispute to this Court in accordance with Paragraphs V. B and C of the Chamber Rules.

d. Confidential information may be disclosed to an independent expert if the fourteen-day period has passed and no objection has been made. The approval of independent experts must not be unreasonably withheld.

10. Information designated "CONFIDENTIAL" must be viewed only by counsel (as defined in Paragraph 3) of the receiving party, by independent experts (pursuant to the terms of Paragraph 9), and by the additional individuals listed below, provided each such individual has read this Order in advance of disclosure and has executed a copy of the form attached hereto as <u>Exhibit A</u>:

a. Executives who are required to participate in policy decisions with reference to this action;

/ / /

b.    Technical personnel of the parties with whom counsel for the parties find it necessary to consult, in the discretion of such counsel, in preparation for trial of this action; and

c.    Stenographic and clerical employees associated with the individuals identified above.

11.    In addition, with respect to material designated "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY," the parties may also disclose such information to the following persons:

a. outside vendors or service providers (such as copy-service providers and document-management consultants) that counsel hire and assign to this matter;

b. any mediator or arbitrator that the parties engage in this matter or that this Court appoints, provided such person has executed a copy of the form attached hereto as <u>Exhibit A</u> and the signed copy has been provided to all parties;

c. any person indicated on the face of the document to be its originator, author, or a recipient of a copy of the document, may be shown the same;

d. stenographers engaged to transcribe depositions the parties conduct in this action; and

e. this Court, including any appellate court, its support personnel, and court reporters.

12.    All information which has been designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" by the producing or disclosing party, and any and all reproductions of that information, must be retained in the custody of the counsel for the receiving party identified in Paragraph 3, except that independent experts authorized to view such information under the terms of this Order may retain custody of copies such as are necessary for their participation in this litigation.

**13.    Any party seeking to file documents under seal must comply with the procedures set forth in the ECF Manual.  Parties should not seek to file under seal**

10

1  entire pleadings, or entire attachments, unless the party can establish that the entire

2  document satisfies the standard for sealing.

3        Unless the entire document satisfies the standard for sealing, a redacted version

4  of the document must be publicly filed on the docket with only those portions of the

5  document appropriately subject to filing under seal redacted.  An application to file

6  under seal should specifically address the factual and legal basis for sealing each

7  proposed redaction.

8        The party shall lodge the unredacted version of any filing in accordance with

9  the ECF Manual.

10        If a party is seeking to file a document that contains information designated as

11  confidential by another party, the filing party must reach out to the designating party

12  in advance of filing the application to file under seal to obtain from the designating

13  party the legal basis for the confidential designation. The filing party must include

14  the legal basis in the application to file under seal.  If any party opposes the

15  application to file under seal, that party must, __within one court day__, contact the

16  chambers of the judge who will rule on the application to notify the judge's staff that

17  an opposition to the application will be filed.

18        14.    At any stage of these proceedings, any party may object to a designation of

19  materials as confidential information or as privileged.  The party objecting to material

20  designated as confidential or privileged must notify, in writing, counsel for the designating

21  party of the objected-to materials and the grounds for the objection.  If the dispute is not

22  resolved consensually between the parties after meeting and conferring within 14 calendar

23  days of receipt of such a notice of objections, the parties may jointly request the Court's

24  assistance with the dispute, in accordance with the Chambers Rules.  The materials at issue

25  must be treated as confidential information or privileged, as designated by the designating

26  party, until the Court has ruled on the objection or the matter has been otherwise resolved.

27        15.    All confidential information must be held in confidence by those inspecting

28  or receiving it and must be used only for purposes of this action.  Counsel for each party,

3:23-cv-01335-CAB-JLB

and each person receiving confidential information, must take reasonable precautions to prevent the unauthorized or inadvertent disclosure of such information.  If confidential information is disclosed to any person other than a person authorized by this Order, the party responsible for the unauthorized disclosure must immediately bring all pertinent facts relating to the unauthorized disclosure to the attention of the other parties and, without prejudice to any rights and remedies of the other parties, make every effort to prevent further disclosure by the party and by the person(s) receiving the unauthorized disclosure.

16.    No party will be responsible to another party for disclosure of confidential information under this Order if the information in question is not labeled or otherwise identified as such in accordance with this Order.

17.    If a party, through inadvertence, produces any confidential information without labeling or marking or otherwise designating it as such in accordance with this Order, at any point in time prior to trial, the designating party may give written notice to the receiving party that the document or thing produced is deemed confidential information, and that the document or thing produced should be treated as such in accordance with that designation under this Order.  The receiving party must treat the materials as confidential, once the designating party so notifies the receiving party.  If the receiving party has disclosed the materials before receiving the designation, the receiving party must notify the designating party in writing of each such disclosure.

18.    Nothing in this Protective Order shall require disclosure of documents, electronically stored information ("ESI"), or other information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other protection from discovery ("Privileged Material"). If Privileged Material is nevertheless inadvertently or unintentionally produced or made available for inspection, such disclosure shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or work product doctrine, or other ground for withholding production to which the producing party would otherwise be entitled to assert. Any party that inadvertently produces or makes available for inspection materials it believes are

Privileged Materials may obtain the return of those materials by promptly notifying the recipient(s) after learning of the inadvertent or unintentional disclosure and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material. The recipient(s) shall immediately gather and return all copies of the Privileged Material to the producing party after receiving a request for their return, except for any pages containing privilege markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the producing party. The recipient shall also immediately destroy and certify such destruction after receiving a request for return of inadvertently produced materials all documents or parts thereof summarizing or otherwise disclosing the content of the inadvertently produced material and shall not use such material for any purpose. Notwithstanding this provision, outside litigation counsel of record are not required to delete information that may reside on their respective firm's electronic back-up systems that are over-written in the normal course of business.

19.    This Order shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d), and shall be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S.C § 1738.  In the event of a conflict of law, the law that is most protective of privilege shall apply.

20.    Nothing within this Order will prejudice the right of any party to object to the production of any discovery material on the grounds that the material is protected as privileged or as attorney work product.

21.    Nothing in this Order will bar counsel from rendering advice to their clients with respect to this litigation and, in the course thereof, relying upon any information designated as confidential information, provided that the contents of the information must not be disclosed.

22.    Nothing contained in this Order will be construed as a ruling regarding the admissibility at trial of any document, testimony, or other evidence.

23.    This Order will be without prejudice to the right of any party to oppose production of any information for lack of relevance or any other ground other than the mere

presence of confidential information.  The existence of this Order must not be used by either party as a basis for discovery that is otherwise improper under the Federal Rules of Civil Procedure.

24.    Nothing within this Order will be construed to prevent disclosure of confidential information if such disclosure is required by law or by order of the Court.

25.    The terms of this Order are applicable to information produced by a non-party in this action and designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY."  Such information produced by non-parties in connection with this litigation is protected by the remedies and relief provided by this Order.  In the event that a party is required, by a valid discovery request, to produce a non-party's confidential information in its possession, that party shall follow the procedures set forth below in Paragraph 26.  Nothing in these provisions should be construed as prohibiting a non-party from seeking additional protections.

26.    Nothing in this Order will prevent any party from producing any confidential material in its possession in response to a lawful subpoena or other compulsory process, or if required to produce by law or by any government agency having jurisdiction, provided that such party gives written notice to the producing party as soon as reasonably possible, and if permitted by the time allowed under the request, at least 10 days before any disclosure.  Upon receiving such notice, the producing party will bear the burden to oppose compliance with the subpoena, other compulsory process, or other legal notice if the producing party deems it appropriate to do so.

27.    Within sixty (60) days of the final termination of this action, including any and all appeals, counsel for each party must, upon request of the producing party, return all confidential information to the party that produced the information, including any copies, excerpts, and summaries of that information, or must destroy same at the option of the receiving party, and must purge all such information from all machine-readable media on which it resides.  Notwithstanding the foregoing, counsel for each party may retain all pleadings, briefs, memoranda, motions, and other documents filed with the Court that refer

14

to or incorporate confidential information, and will continue to be bound by this Order with respect to all such retained information.  Further, attorney work product materials that contain confidential information need not be destroyed, but, if they are not destroyed, the person in possession of the attorney work product will continue to be bound by this Order with respect to all such retained information.

**28.   Absent an *ex parte* motion made within 10 calendar days of the termination of the case, the parties understand that the Court will destroy any confidential documents in its possession.**

29.   The restrictions and obligations set forth within this Order will not apply to any information that:

a.   the parties agree should not be designated confidential information;

b.   the parties agree, or the Court rules, is already public knowledge;

c.   the parties agree, or the Court rules, has become public knowledge other than as a result of disclosure by the receiving party, its employees, or its agents in violation of this Order; or has come or will come into the receiving party's legitimate knowledge independently of the production by the designating party.  Prior knowledge must be established by pre-production documentation.

30.   The restrictions and obligations within this Order will not be deemed to prohibit discussions of any confidential information with anyone if that person already has or obtains legitimate possession of that information.

31.   Transmission by e-mail or some other currently utilized method of transmission is acceptable for all notification purposes within this Order.

32.   This Order will survive the termination of the litigation and will continue to be binding upon all persons to whom confidential materials are produced or disclosed.

33.   This Court will retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any for any contempt thereof.

/ / /

3:23-cv-01335-CAB-JLB

34.     This Order may be modified by agreement of the parties, subject to approval by the Court.

35.     **The Court may modify the terms and conditions of this Order for good cause, or in the interest of justice, or on its own order at any time in these proceedings.**

**36.     Without separate court order, this Order and the parties' stipulation do not change, amend, or circumvent any court rule or local rule.**

IT IS SO ORDERED.

16

### EXHIBIT A

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

I, _____ (name), of _____ (address), declare under penalty of perjury that I have read in its entirety and understand the Protective Order ("Order") that was issued by the United States District Court for the Southern District of California on _____ (date), in the case of *DS Advanced Enterprises, LLC v. Lowe's Home Centers, LLC*. I agree to comply with and to be bound by all the terms of the Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to the Order to any person or entity, except in strict compliance with the provisions of the Order.

I further agree to submit to the jurisdiction of the United States District Court for the Southern District of California for the purpose of enforcing the terms of the Order, even if such enforcement proceedings occur after termination of this action.

Name: _____

Signature: _____   Date: _____

1

# DS ADVANCED ENTERPRISES, LTD. V. LOWE'S HOME CENTERS, LLC

### Case number: 25-1072; 25-1581

## Non-Confidential Appendix – Table of Contents

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
|  | U.S. Patent 11,054,118 ("'118 Patent") | 001-012 |
| 109 | Order on DSAE's post judgment motion pursuant to Fed. R. Civ. P. 52(b) and 59(e). | 013-016 |
| 67 | Order on Lowe's motion for summary judgment of non-infringement. | 017-024 |
| 107 | Order on Magistrate's report and recommendation | 025-028 |
| 108 | Order on Lowe's motion for attorney's fees and expenses | 029-033 |
| 99 | Magistrate's report and recommendation | 034-048 |
| 111 | Final Judgment. | 049-050 |
| 100 | Transcript from hearing on DSAE's post judgment motion. | 051-060 |
| 69 | Transcript from hearing on Lowe's motion for summary judgment. | 061-075 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| | Magistrate's Chamber Rules regarding Discovery Disputes | 076-077 |
| 61 | Order vacating *Markman* Hearing | 078-079 |
| 79 | Notice of DSAE's Motion pursuant to Fed. R. Civ. P. 52(e) and 52(b) | 080-081 |
| 79-1 | DSAE's Brief on Motion pursuant to Fed. R. Civ. P. 52(e) and 52(b) ("Rule 52/59 Motion") | 082-106 |
| 79-2 | Cummins Declaration in Support of DSAE's Rule 52/59 Motion | 107-109 |
| 79-3 | Lowe's Global Sourcing, Inc. response to subpoena for production of documents | 110-112 |
| 79-4 | Home Depot admitting, in a different case, Mr. David Sherman gave presentations to Home Depot regarding DSAE's Covered Products in 2019 | 113-114 |
| 79-5 | Public Catalog by DSAE's preferred manufacturer showing DSAE's "3 in 1" Covered Products | 115-128 |
| 79-6 | Certificate of Service for DSAE's Rule 52/59 Motion | 129 |
| 83 | Lowe's Brief in Opposition to DSAE's Rule 52/59 Motion | 130-138 |
| 83-1 | Declaration of Lowe's Counsel, Scott Stimpson, in opposition to DSAE's Rule 52/59 Motion | 139-142 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 83-2 | Lowe's Exhibit 1 showing email to DSAE's counsel attaching under seal documents | 143-144 |
| 83-3 | Lowe's Exhibit 2 showing email regarding documents for production | 145-146 |
| 83-4 | Lowe's Exhibit 3 attaching transcript of Hearing on Lowe's Summary Judgment Motion | 147-162 |
| 86 | DSAE's brief replying to Lowe's opposition to DSAE's Rule 52/59 Motion | 163-174 |
| 86-1 | Declaration of DSAE's Counsel, Patrick Cummins, in support of DSAE's Rule 52/59 Motion | 175-177 |
| 86-2 | DSAE's Exhibit A showing Ledvance brief identifying "metal housing" LED fixture | 178-179 |
| 34 | Lowe's Brief on Motion pursuant to Fed. R. Civ. P. 56 ("Rule 56") | 180-195 |
| 34-1 | Notice of Lowe's Motion pursuant to Rule 56 | 196-197 |
| 34-2 | Lowe's Notice of Lodgment in support of Lowe's Rule 56 Motion | 198-199 |
| 34-3 | Stimpson Declaration in support of Lowe' Rule 56 Motion | 200-201 |
| 34-4 | Lowe's Declaration of Dr. Bretschneider in support of Lowe's Rule 56 Motion | 202-209 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 34-5 | DSAE's Patent attached as Exhibit A to Lowe's Rule 56 Motion | 210-220 |
| 34-6 | Sample of Accused Product #504630 submitted as physical exhibit | 221 |
| 34-7 | Lowe's letter to DSAE's counsel attached as Exhibit C | 222-228 |
| 34-8 | Lowe's Exhibit D attaching DSAE's preliminary claim construction | 229-246 |
| 34-9 | Lowe's Exhibit E attaching Lowe's preliminary claim construction | 247-249 |
| 34-10 | Lowe's Exhibit F attaching website discussing wire connectors | 250-253 |
| 34-11 | Lowe's Exhibit G attaching other website discussing wire connectors | 254-256 |
| 45 | DSAE's Brief in Opposition to Lowe's Rule 56 Motion | 257-294 |
| 45-1 | DSAE's Table of Exhibits in opposition to Lowe's Rule 56 Motion | 295 |
| 45-1 | DSAE's Exhibit 1 attaching Oxford Dictionary definitions for certain claim terms | 296-302 |
| 45-1 | DSAE's Exhibit 2 attaching Merriam-Webster definitions for certain claim terms | 303-310 |
| 45-1 | DSAE's Exhibit 3 attaching other Merriam-Webster definitions for certain claim terms | 311-317 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 45-1 | DSAE's Exhibit 4 attaching DSAE's non-provisional patent application from which the '118 Patent claims priority | 318-335 |
| 45-1 | DSAE's Exhibit 5 attaching DSAE's non-provisional patent application from which the '118 Patent claims priority | 336-341 |
| 45-1 | DSAE's Exhibit 6 attaching a certificate correction for the '118 Patent | 342-343 |
| 45-1 | DSAE's Exhibit 7 attaching a certificate correction for the '118 Patent | 344-345 |
| 45-1 | DSAE's Exhibit 8 attaching certain pages from Electrical Fundamentals textbook | 346-362 |
| 45-1 | DSAE's Exhibit 9 attaching DSAE's March 20, 2024 Infringement Contentions | 363-432 |
| 45-1 | DSAE's Exhibit 10 attaching excerpts from Lowe's reply brief in support of Lowe's Fed. R. Civ. P. 12(b)(6) Motion | 433-435 |
| 45-1 | DSAE's Exhibit 11 attaching instructions and packaging of an Accused Product as a physical exhibit. | 436 |
| 45-1 | DSAE's Exhibit 12 attaching relevant pieces of Accused Product as physical exhibit | 437 |
| 45-1 | DSAE's Exhibit 13 attaching wafer piece of Accused Product as physical exhibit | 438 |
| 45-1 | DSAE's Exhibit 14 attaching other pieces of Accused Product as physical exhibit | 439 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 45-1 | DSAE's Exhibit 15 attaching screen capture of Lowe's website showing various wire connectors | 440-443 |
| 45-2 | DSAE's Notice of Lodgment of documents in support of DSAE's opposition to Lowe's Rule 56 Motion | 444-446 |
| 45-3 | Cummins Declaration in support of DSAE's opposition to Lowe's Rule 56 Motion | 447-451 |
| 45-4 | DSAE's Request for Judicial Notice in support of DSAE's opposition to Lowe's Rule 56 Motion | 452-457 |
| 45-5 | Certificate of Service of DSAE's opposition to Lowe's Rule 56 Motion | 458-460 |
| 86 | DSAE's Reply to Lowe's opposition to DSAE's Rule 52/59 Motion | 461-472 |
| 86-1 | Cummins Declaration in support of DSAE's Reply to Lowe's opposition to DSAE's Rule 52/59 Motion | 473-475 |
| 86-2 | Brief excerpt of Ledvance referencing "metal housing" of other product in other case involving '118 Patent | 476-477 |
| 59 | Notice of Lowe's Protective Order Motion | 478-479 |
| 59-1 | Lowe's Motion Brief alleging Protective Order violation | 480-493 |
| 59-2 | Lowe's Declaration of Compliance for Lowe's motion alleging Protective | 494-496 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| | Order violation | |
| 59-3 | Stimpson Declaration in support of motion alleging Protective Order violation | 497-498 |
| 59-4 | Lowe's **Confidential** Internal Product Presentation (LHC_000795-812), under seal as Exhibit A | 499-500 |
| 59-5 | Lowe's **Confidential** Sales Data Spreadsheet (LHC_000841-887), under seal as Exhibit B | 501-502 |
| 59-6 | Excerpts from Supplemental Response to Interrogatory No. 12, under seal as Exhibit C, **Confidential** | 503-504 |
| 59-7 | Lowe's Exhibit D showing emails between Lowe's counsel and DSAE's counsel | 505-509 |
| 71 | DSAE's Brief in Opposition to Lowe's motion alleging Protective Order violation | 510-528 |
| 71-1 Pgs. 1-3 | DSAE's Table of Exhibit in opposition to Lowe' s motion alleging Protective Order violation | 529-531 |
| 71-1 Pgs. 4-5 | Envelopes received from DSAE returning printed copies to DSAE's counsel | 532-533 |
| 71-1 Pgs. 6-7 | DSAE's president, Mr. David Sherman, signing First Supplemental Interrogatory response | 534-535 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 71-1 Pgs. 8-9 | Lowe's counsel's August 8, 2024 email stating issue may be resolved | 536-537 |
| 71-1 Pgs. 10-11 | Lowe's counsel's July 31, 2024 email expressing interest in Court Order requiring declarations from DSAE | 538-539 |
| 71-1 Pgs. 12-13 | DSAE's counsel's August 1, 2024 email providing Lowe's counsel with requested declaration and Second Supplemental response to interrogatory | 540-541 |
| 71-1 Pgs. 14-15 | Lowe's counsel's August 2, 2024 email providing draft joint discovery statement to DSAE's counsel | 542-543 |
| 71-1 Pgs. 16-17 | DSAE's August 2, 2024 email addressing Lowel's request for declarations | 544-545 |
| 71-1 Pgs. 18-20 | DSAE's August 2, 2024 emails discussing declaration Lowe's received from DSAE | 546-548 |
| 71-1 Pgs. 21-24 | Native excel version of April 13, 2021 Purchase Order showing DSAE's Covered Products and related emails from DSAE's Preferred Manufacturer | 549-552 |
| 71-1 Pgs. 25-26 | Excerpts of November 11, 2019 Agreement between DSAE and DSAE's Marketing Specialist, Total Marking International Co. | 553-554 |
| 71-1 Pgs. 27-28 | **Confidential** emails between DSAE's Marketing Specialist and Lowe's at LHC_001745, attached as Appx777 | 555-556 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 71-1 Pgs. 29-31 | Party's August 2, 2024 emails discussing updated draft joint statement regarding discovery issues | 557-559 |
| 71-1 Pgs. 32-33 | DSAE August 2, 2024 email attaching updated joint statement and acknowledging sending affidavit to DSAE for signing | 560-561 |
| 71-1 Pgs. 34-35 | Parties' August 5, 2024 emails discussing page length of draft joint statement | 562-563 |
| 71-1 Pgs. 36-37 | DSAE's August 3, 2024 docusign receipt from signing DSAE's declaration in furtherance of resolving Protective Order issue | 564-565 |
| 71-1 Pgs. 38-39 | DSAE's August 5, 2024 certificate of service for Cummins Declaration in furtherance of resolving Protective Order issue | 566-567 |
| 71-1 Pgs. 40-41 | DSAE's August 3, 2024 email in furtherance of addressing Lowe's demands to resolve Protective Order issue | 568-569 |
| 71-1 Pgs. 42-43 | DSAE's email providing DSAE's declaration in furtherance of resolving the Protective Order issue | 570-571 |
| 71-1 Pgs. 44-45 | Lowe's August 6, 2024 email indicating Lowe's intention to slip joint statement between DSAE's discovery issues and Lowe's Protective Order issue | 572-573 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 71-1 Pgs. 46-47 | DSAE's August 6, 2024 response to Lowe's intention to split joint statement | 574-575 |
| 71-1 Pg. 48-49 | DSAE's August 6, 2024 expressing intent to include DSAE's position on issues in Lowe's separate joint statement | 576-577 |
| 71-1 Pg. 50-51 | DSAE's August 6, 2024 email addressing additional request for declaration | 578-579 |
| 71-1 Pg. 52-53 | Lowe's response to DSAE's August 6, 2024 email feedback regarding additional request for declaration | 580-581 |
| 71-1 Pg. 54-57 | Parties' August 6-8, 2024 correspondence wherein Lowe's indicates Protective Order issue may be resolved | 582-585 |
| 71-1 Pg. 58-60 | Lowe's August 8, 2024 email indicating no intent to have a meet and confer for motion to preclude DSAE's evidence | 586-588 |
| 71-1 Pg. 61-64 | Parties' August 8, 2024 discussion of DSAE's signed undertaking per the Protective Order | 589-592 |
| 71-1 Pg. 65-66 | Lowe's August 27, 2024 email indicating intent to schedule meet and confer regarding Lowe's sanctions motion | 593-594 |
| 71-1 Pg. 67-70 | Parties' August 27, 2024 correspondence confirming Lowe's will not allege copies of entire were disclosed to DSAE's president. | 595-598 |
| 71-1 Pg. 71-72 | Parties' August 28, 2024 correspondence clarifying relief sought by Lowe's | 599-600 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| | sanctions motion | |
| 71-1<br>Pg. 73-74 | Parties' August 30, 2024 correspondence clarifying issues associated with Lowe's sanctions motion | 601-602 |
| 71-1<br>Pg. 75-76 | DSAE's September 3, 2024 offer to limit some evidence in lieu of Lowe's filing sanctions motion | 603-604 |
| 71-1<br>Pg. 77-79 | Parties' August 16, 2024 correspondence regarding native Excel version of Purchase Order with images of DSAE's Covered Products | 605-607 |
| 71-1<br>Pg. 80-82 | Lowe's response to DSAE's re-propounded Requests for Admissions Nos. 3 and 4 | 608-610 |
| 71-1<br>Pg. 83-85 | Parties' September 17, 2024 correspondence regarding DSAE's Request for Production No. 6 | 611-613 |
| 71-1<br>Pg. 86-87 | Attendee of DSAE's presentation to Lowe's Canada / Rona acknowledging presence with co-worker Elaine Pellerin | 614-615 |
| 71-1<br>Pg. 88-89 | LinkedIn provide of Attendee to DSAE's presentation to Lowe's Canada / Rona | 616-617 |
| 71-1<br>Pg. 90-91 | DSAE Purchase Order 149907825 identifying "Lowes" and Lowe's website showing Accused Product #5041632 | 618-619 |
| 71-1 | Parties' correspondence acknowledging | 620-621 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| Pg. 92-93 | meet and confer regarding DSAE's discovery issues with Requests for Admission Nos. 3 and 4. | |
| 71-1 Pg. 94-95 | Purchase Order 149907823 for "3in1" downlights from April 13, 2021 from DSAE's preferred manufacturer | 622-623 |
| 71-1 Pg. 96-100 | Text messages between DSAE's president and DSAE's preferred manufacturer | 624-628 |
| 71-1 Pg. 101-102 | Envelopes evidencing DSAE's president returning printed supplemental interrogatory responses | 629-630 |
| 71-1 Pg. 103-105 | Email from DSAE's manufacturer indicating "lowes" will place downlight orders and attaching PO149907823 | 631-633 |
| 71-1 Pg. 106-107 | Excerpts of Agreement between DSAE and DSAE's Marketing Specialist, Total Marketing International Co. | 634-635 |
| 71-1 Pg. 108-110 | Excerpts from DSAE's preferred manufacturer's catalog showing DSAE's "3 in 1 Patented" downlights | 636-638 |
| 71-1 Pg. 111-112 | Excerpts of Agreement between DSAE's preferred manufacturer and DSAE | 639-640 |
| 71-2 | Declaration of DSAE's president, Mr. David Sherman | 641-646 |
| 49-1 Pg. 1-3 | Application Data Sheet from April 23, 2019 Non-Provisional Application | 647-649 |
| 49-1 Pg. 4-7 | December 17, 2019 Emails between DSAE's Marketing Specialist and | 650-653 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| | Lowe's on the public record | |
| 49-1 Pg. 8-16 | Lowe's July 22, 2024 response to DSAE's Requests for Admission Nos. 3 and 4 | 654-662 |
| 49-1 Pg. 17-19 | Order from Central District of California denying motion to dismiss in case involving '118 Patent | 663-665 |
| 49-1 Pg. 20-21 | Excerpts from USPTO allowance for the '118 Patent | 666-667 |
| 49-2 | Declaration in support of DSAE's Opening Claim Construction Brief | 668-669 |
| 71-3 | Second Declaration of DSAE's President in furtherance of resolving Lowe's Protective Order issue | 670-673 |
| 71-4 | Second Declaration of DSAE's counsel and exhibits in furtherance of resolving Lowe's Protective Order issue | 674-683 |
| 71-5 | Third Declaration of DSAE's counsel and exhibits in furtherance of resolving Lowe's Protective Order issue | 684-686 |
| 75 | Lowe's Reply to DSAE's opposition to Lowe's Motion to Enforce Protective Order | 687-697 |
| 105 | DSAE's Objections to Magistrate Report and Recommendations regarding Lowe's Motion to Enforce Protective Order | 698-709 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| 105-1 | DSAE's summary of Lowe's attorneys' fees from Lowe's Motion to Enforce Protective Order | 710-712 |
| | Lowe's Interrogatory No. 12 regarding validity contentions | 713-715 |
| 41 | Magistrate's Minute Order regarding June 28, 2024 Discovery Dispute Conference | 716 |
| 19-3 Pg. 2-8 | Lowe's Translation of Purchase Orders 149907824 and 149907825 | 717-723 |
| 34-1 Pg. 2 | Notice of Lowe's Summary Judgment Motion attesting no genuine dispute of material fact | 724 |
| | Lowe's July 22, 2024 Objection and Response to DSAE's Requests for Admission Nos. 3 and 4 | 725-732 |
| | Lowe's Response to Re-propounded Requests for Admissions Nos. 3 and 4 after Discovery Dispute Conference | 733-737 |
| 57 | Lowe's Notice of Motion to File Documents Under Seal in support of Lowe's Motion to Enforce Protective Order | 738-740 |
| 57-1 | Lowe's Motion to File Documents Under Seal in support of Lowe's Motion to Enforce Protective Order | 741-746 |
| 97 | Order Granting Motion to File Documents Under Seal for Lowe's Motion to | 747-749 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| | Enforce Protective Order | |
| 93-1 Pgs. 12, 21, 30, and 39 | Lowe's Summary of Attorney's Fees for Lowe's Motion to Enforce Protective Order | 750-753 |
| 88 (under seal) and 87-2, Exhibits E and G (public) | **Confidential** 2021 Emails between Lowe's and Zhejiang Yankon (LHC_000794 and LHC_00813) | 754-755 |
| 88 (under seal) and 87-2, Exhibit H (public) | Zhejiang Yankon's **Confidential** 2021 Product Presentation (LHC_000815) | 756-757 |
| 64 (under seal) and 63-1 at Exhibit A (public) | Lowe's **Confidential** 2021 Product Presentation (LHC_000795, 812, 820-824) | 758-764 |
| 88 (under seal) and 87-2, Exhibit D (public) | **Confidential** 2019 emails between DSAE's Marketing Specialist and Lowe's (LHC_000792) | 765-766 |
| 64 (under seal) and 63-1at Exhibit B | Excerpt from Lowe's **Confidential** Sales Data Spreadsheet (LHC_000855) | 767 |

| Docket No. | Appendix Document Description | Appx. Range |
|---|---|---|
| (public) | | |
| 64 (under seal) and 79-5, pg. 1, Exhibit C (public) | Excerpt from First Supplemental Response to Lowe's Interrogatory No. 12 referencing **Lowe's Confidential Material** | 768-778 |
| | *Ending of Volume I / Beginning of Volume 2* | |
| 106 | Lowe's Opposition to DSAE's Objections to Magistrate Report on Lowe's Motion to Enforce Protective Order | 779-784 |
| | Docket Sheet for Case | 785-794 |



US011054118B2

(12) **United States Patent**
Sherman

(10) **Patent No.:** US 11,054,118 B2
(45) **Date of Patent:** Jul. 6, 2021

(54) **APPARATUS TO DETACHABLY ATTACH LED LIGHT FIXTURE TO CEILING OR RECESSED LIGHTING FIXTURE HOUSING**

(71) Applicant: **David Sherman**, Boca Raton, FL (US)

(72) Inventor: **David Sherman**, Boca Raton, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **16/392,731**

(22) Filed: **Apr. 24, 2019**

(65) **Prior Publication Data**

US 2021/0140610 A1     May 13, 2021

(51) **Int. Cl.**
| | | |
|---|---|---|
| *F21V 21/04* | (2006.01) | |
| *F21V 17/12* | (2006.01) | |
| *F21V 21/088* | (2006.01) | |
| *F21Y 115/10* | (2016.01) | |

(52) **U.S. Cl.**
CPC .............. *F21V 17/12* (2013.01); *F21V 21/04* (2013.01); *F21V 21/088* (2013.01); *F21Y 2115/10* (2016.08)

(58) **Field of Classification Search**
CPC ..... F21V 21/04; F21V 21/044; F21V 21/047; F21V 21/088; F21V 17/162
USPC ........................................................ 362/147
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 5,957,572 A | * | 9/1999 | Wedekind | F21V 21/04 362/365 |
| 7,909,487 B1 | * | 3/2011 | Venetucci | F21S 8/02 362/147 |
| 8,894,253 B2 | * | 11/2014 | Rowlette, Jr. | F21V 29/004 362/373 |
| 10,393,359 B1 | * | 8/2019 | Qi | F21V 21/044 |
| 2009/0097262 A1 | * | 4/2009 | Zhang | F21S 8/026 362/364 |
| 2009/0273938 A1 | * | 11/2009 | Wronski | F21S 8/02 362/346 |
| 2010/0053950 A1 | * | 3/2010 | Higuchi | F21S 8/026 362/234 |
| 2012/0044704 A1 | * | 2/2012 | Wilson | F21S 8/026 362/365 |
| 2012/0182744 A1 | * | 7/2012 | Santiago | F21S 8/026 362/365 |
| 2014/0254177 A1 | * | 9/2014 | Danesh | F21V 21/30 362/363 |
| 2015/0233537 A1 | * | 8/2015 | Athalye | F21V 7/0066 362/147 |
| 2015/0260383 A1 | * | 9/2015 | Wilcox | F21S 8/026 362/294 |
| 2015/0338071 A1 | * | 11/2015 | Feit | F21S 8/036 362/370 |

(Continued)

*Primary Examiner* — Christopher M Raabe

(57) **ABSTRACT**

Disclosed is an apparatus to detachably attach an LED light fixture to a ceiling or a recessed lighting fixture housing. The apparatus comprises retrofit clips (102), a plurality of new construction clips (104), connecting posts (106), metal housing (108), screw holes (110), complete fixture (112), junction box (116), and twist connector (118). The retrofit clips (102) are adaptable to attach with the metal housing (108) of the LED light fixture by screwing them into screw holes (110). The connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies the complete fixture (112). The junction box (116) holds connection wirings and may hold an LED driver. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108).

**5 Claims, 5 Drawing Sheets**



(56)         **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2017/0059102 A1 * | 3/2017 | Grant | F21S 8/026 |
| 2018/0266635 A1 * | 9/2018 | Dong | F21S 8/026 |
| 2018/0313524 A1 * | 11/2018 | Vidal | F21V 23/009 |

* cited by examiner



**FIG. 1**



**FIG. 2a**



**FIG. 2b**

**FIG. 3**

Appx004



**FIG. 4**



**FIG. 5**



**FIG. 6**



**FIG. 7**



FIG.8A

FIG.8B

## APPARATUS TO DETACHABLY ATTACH LED LIGHT FIXTURE TO CEILING OR RECESSED LIGHTING FIXTURE HOUSING

### TECHNICAL FIELD

The present invention is generally related to an apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing.

### BACKGROUND

The subject matter discussed in the background section should not be assumed to be prior art merely as a result of its mention in the background section. Similarly, a problem mentioned in the background section or associated with the subject matter of the background section should not be assumed to have been previously recognized in the prior art. The subject matter in the background section merely represents different approaches, which in-and-of-themselves may also be inventions.

Typically, the consumers and/or electricians have to buy different LED recessed light fixtures for new construction installations and retrofit installations. Currently, various mounting clips are used either for retrofit or new construction applications. This specification recognizes the problems faced by the consumers and/or electricians while installing the LED recessed light fixtures. Additionally, it is recognized in this specification that an apparatus for retrofit and new construction applications can reduce the amount of inventory carried by lighting distributors.

Thus, in view of the above, there is a long-felt need in the industry to address the aforementioned deficiencies and inadequacies.

Further limitations and disadvantages of conventional and traditional approaches will become apparent to one of skill in the art through comparison of described systems with some aspects of the present disclosure, as set forth in the remainder of the present application and with reference to the drawings.

### SUMMARY OF THE INVENTION

An apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing is provided substantially, as shown in and/or described in connection with at least one of the figures, as set forth more completely in the claims.

The apparatus comprises a plurality of retrofit clips (102), a plurality of new construction clips (104), a plurality of connecting posts (106), a metal housing (108), a plurality of screw holes (110), a complete fixture (112), a socket adapter (114), a junction box (116), and a twist connector (118). The plurality of retrofit clips (102) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (110). The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies the complete fixture (112). The junction box (116) holds the plurality of connection wirings. The junction box (116) comprises a plurality of output wires. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108). The socket adapter (114) replaces a light bulb in the recessed lighting fixture housing.

In an aspect, the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108).

In an aspect, the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories.

In an aspect, the junction box (116) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

Accordingly, one advantage of the present system and method is that it provides both a retrofit application and a new construction application embodied in the same LED light fixture.

Accordingly, one advantage of the present invention is that it allows lighting retailers and distributors to carry only one set of inventory, thus saving money and warehouse space.

These features and advantages of the present disclosure may be appreciated by reviewing the following description of the present disclosure, along with the accompanying figures wherein like reference numerals refer to like parts.

### BRIEF DESCRIPTION OF DRAWINGS

The accompanying drawings illustrate the embodiments of apparatus, methods, and other aspects of the disclosure. Any person with ordinary skills in the art will appreciate that the illustrated element boundaries (e.g., boxes, groups of boxes, or other shapes) in the figures represent an example of the boundaries. In some examples, one element may be designed as multiple elements, or multiple elements may be designed as one element. In some examples, an element shown as an internal component of one element may be implemented as an external component in another and vice versa. Furthermore, the elements may not be drawn to scale.

Various embodiments will hereinafter be described in accordance with the appended drawings, which are provided to illustrate, not limit, the scope, wherein similar designations denote similar elements, and in which:

FIG. 1 illustrates an exemplary view of retrofit clips and new construction clips, in accordance with at least one embodiment.

FIG. 2a illustrates an exemplary view of connecting post and metal housing, in accordance with at least one embodiment.

FIG. 2b illustrates an exemplary view of the metal housing, in accordance with at least one embodiment.

FIG. 3 illustrates an exemplary view of new construction clips and screw holes, in accordance with at least one embodiment.

FIG. 4 illustrates an exemplary view of connecting post, in accordance with at least one embodiment.

FIG. 5 illustrates an exemplary view of the socket adapter, in accordance with at least one embodiment.

FIG. 6 illustrates an exemplary view of the complete fixture, in accordance with at least one embodiment.

FIG. 7 illustrates an exemplary view of the junction box and twist connector, in accordance with at least one embodiment.

FIG. 8a illustrates a first exemplary view of a permanently installed junction box, in accordance with at least one embodiment.

FIG. 8b illustrates a second exemplary view of the permanently installed junction box, in accordance with at least one embodiment.

### DETAILED DESCRIPTION

The present disclosure is best understood with reference to the detailed figures and description set forth herein. Various embodiments have been discussed with reference to

the figures. However, those skilled in the art will readily appreciate that the detailed descriptions provided herein with respect to the figures are merely for explanatory purposes, as the methods and systems may extend beyond the described embodiments. For instance, the teachings presented, and the needs of a particular application may yield multiple alternative and suitable approaches to implement the functionality of any detail described herein. Therefore, any approach may extend beyond certain implementation choices in the following embodiments.

References to "one embodiment," "at least one embodiment," "an embodiment," "one example," "an example," "for example," and so on indicate that the embodiment(s) or example(s) may include a particular feature, structure, characteristic, property, element, or limitation but that not every embodiment or example necessarily includes that particular feature, structure, characteristic, property, element, or limitation. Further, repeated use of the phrase "in an embodiment" does not necessarily refer to the same embodiment.

Methods of the present invention may be implemented by performing or completing manually, automatically, or a combination thereof, selected steps or tasks. The term "method" refers to manners, means, techniques and procedures for accomplishing a given task including, but not limited to, those manners, means, techniques, and procedures either known to, or readily developed from known manners, means, techniques and procedures by practitioners of the art to which the invention belongs. The descriptions, examples, methods, and materials presented in the claims and the specification are not to be construed as limiting but rather as illustrative only. Those skilled in the art will envision many other possible variations within the scope of the technology described herein.

The present specification describes an apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing. The apparatus comprises a plurality of retrofit clips (102), a plurality of new construction clips (104), a plurality of connecting posts (106), a metal housing (108), a plurality of screw holes (110), a complete fixture (112), a socket adapter (114), a junction box (116), and a twist connector (118).

FIG. 1 illustrates an exemplary view (100) of retrofit clips (102) and new construction clips (104), in accordance with at least one embodiment. The plurality of retrofit clips (102) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (110), shown in FIG. 3.

FIG. 2a illustrates an exemplary view (200a) of connecting post (106) and metal housing (108), in accordance with at least one embodiment. The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies a complete fixture (112), shown in FIG. 6. FIG. 2b illustrates an exemplary view (200b) of metal housing (108), in accordance with at least one embodiment.

FIG. 3 illustrates an exemplary view (300) of new construction clips (104) and screw holes (110), in accordance with at least one embodiment. FIG. 4 illustrates an exemplary view (400) of the connecting post (106), in accordance with at least one embodiment.

FIG. 5 illustrates an exemplary view (500) of socket adapter (114), in accordance with at least one embodiment. The socket adapter (114) replaces a light bulb in the recessed lighting fixture housing.

FIG. 6 illustrates an exemplary view (600) of a complete fixture (112), in accordance with at least one embodiment. In an embodiment, the new construction clips (104) squeeze

ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108). In an embodiment, the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories. Examples of the electrical systems include but not limited to the LED driver, an LED PCB assembly, and an LED strip. Further, examples of the accessories include but not limited to wire connectors, and ground wire.

FIG. 7 illustrates an exemplary view (700) of the junction box (116) and twist connector (118), in accordance with at least one embodiment. The junction box (116) holds a plurality of connection wirings. The junction box (116) comprises a plurality of output wires. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108). In an embodiment, the junction box (116) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

In operation, if the existing recessed housing is present, the retrofit clips (102) make a friction fit inside the existing recessed lighting fixture housing to secure the complete fixture (112) inside. In case, the existing recessed housing is not present the new construction clips (104) are attached to the connecting posts (106).

In an embodiment, the present apparatus may be manufactured by die casting a metal housing (108). The metal housing (108) is a base of the complete fixture (112) containing two connecting posts (106), to attach new construction clips (104) and nine screw holes (110) (each retrofit clips uses 3 screws), at 120 degrees, to accept the retrofit clip (102). In an embodiment, the junction box (116) is made from sheet metal, stamped steel or plastic, configured into a hexagonal, or a round shape, including several side holes to be used for wiring. Further, the LED driver may installed inside the junction box (116). In an exemplary embodiment, the present apparatus may be manufactured by plastic injection molding to obtain a plastic housing.

FIG. 8a illustrates a first exemplary view (800a) of a permanently installed junction box (116), in accordance with at least one embodiment. FIG. 8b illustrates a second exemplary view (800b) of the permanently installed junction box, in accordance with at least one embodiment. The junction box (116) is permanently attached to the metal housing (108) or plastic housing. The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, the output wire connections are internally arranged and cannot be seen by the user. FIG. 8a and FIG. 8b also depict the placement of the new construction clip (104), connecting posts (106), and retrofit clips (102) when junction box (116) is permanently attached to the metal housing (108) or the plastic housing.

In an embodiment, the components of the present apparatus such as the plurality of retrofit clips (102), the plurality of new construction clips (104), the metal housing (108), the plurality of screw holes (110), the complete fixture (112), the socket adapter (114), the junction box (116), and the twist connector (118) are reconfigurable and the new construction clips (104) are attached to the connecting posts (106), or to a different connecting method.

In a real-time use, a user such as consumers or electricians has to decide whether the installation of the complete fixture (112) is retrofit or new construction application and then selects an appropriate attachment method.

For a retrofit installation, the user removes the light bulb and trims from the existing recessed lighting fixture and exposes the recessed housing. Then the user removes the

5

two new construction clips (104) from the metal housing (108) or connecting posts (106) and attaches the three retrofit clips (102) by screwing them with provided screws to the die-cast base or metal housing (108) in the provided screw holes (110). The user then attaches the socket adapter (114) by connecting the two free wires to two free wires in the junction box (116). The socket adapter (114) is screwed into an existing socket and places the junction box (116) on top of the metal housing (108) (if the junction box (116) is not attached to metal housing (108) or plastic housing). The user then pushes the complete fixture (112) and the junction box (116) fully into the existing recessed housing, wherein the junction box (116) is attached with the body of the LED light fixture. The complete fixture (112) is held inside existing recessed housing by the friction of retrofit clips (102) against inside the existing recessed housing.

For the new construction installation, the user cuts a hole in the ceiling of the appropriate size to accommodate the metal housing (108), where the complete fixture (112) is to be located. Then the user pulls wires from the building's electrical system and attaches to free wires in a junction box (116). Then the user attaches the junction box (116) to the LED fixture using the twist connector (118). Then the user pushes junction box (116) through a hole in the ceiling and allows it to rest on inside of the ceiling. The user then pushes new construction clips (104) perpendicular to the ceiling and push through the ceiling hole. Then the user allows the new construction clips (104) to squeeze the ceiling between the new construction clips (104) and extremity of the metal housing (108).

Thus the present apparatus provides a means to attach the LED light fixture to the ceiling directly or into a recessed lighting fixture housing. By providing both retrofit and new construction applications, the present apparatus reduces the amount of inventory carried.

No language in the specification should be construed as indicating any non-claimed element as essential to the practice of the invention.

It will be apparent to those skilled in the art that various modifications and variations can be made to the present invention without departing from the spirit and scope of the invention. There is no intention to limit the invention to the

6

specific form or forms enclosed. On the contrary, the intention is to cover all modifications, alternative constructions, and equivalents falling within the spirit and scope of the invention, as defined in the appended claims. Thus, it is intended that the present invention cover the modifications and variations of this invention, provided they are within the scope of the appended claims and their equivalents.

The invention claimed is:

1. An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing, the apparatus comprises:
   a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);
   a plurality of new construction clips (104);
   a plurality of connecting posts (106) to hold the new construction clips (104);
   a metal housing (108) to embody a complete fixture (112);
   a junction box (116) to hold a plurality of connection wirings, wherein the junction box (116) comprises a plurality of output wires; and
   a twist connector (118) to attach the output wires of the junction box (116) to the metal housing (108), wherein the retrofit clips (102) make a friction fit inside the recessed lighting fixture housing to secure the complete fixture (112) inside, wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present.

2. The apparatus according to claim 1 comprises a socket adapter (114) to replace a light bulb in the recessed lighting fixture housing.

3. The apparatus according to claim 1, wherein the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108).

4. The apparatus according to claim 1, wherein the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories.

5. The apparatus according to claim 1, wherein the junction box (116) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.        : 11,054,118 B2
APPLICATION NO.   : 16/392731
DATED             : July 6, 2021
INVENTOR(S)       : David Sherman

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Insert item (60), as follows:
--Related U.S. Application Data
(60) Provisional application No. 62/673,595, filed on May 18, 2018.--

Signed and Sealed this
Twenty-third Day of January, 2024

*Katherine Kelly Vidal*

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*

Appx011

UNITED STATES PATENT AND TRADEMARK OFFICE
## CERTIFICATE OF CORRECTION

PATENT NO.     : 11,054,118 B2                        Page 1 of 1
APPLICATION NO. : 16/392731
DATED           : July 6, 2021
INVENTOR(S)     : David Sherman

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

In the Drawings

Sheet 4, FIG. 6, replace "112" with -- 116 --

Signed and Sealed this
Ninth Day of July, 2024

*Katherine Kelly Vidal*

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*

Appx012



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, Ltd., <br>                                  Plaintiff, <br><br> v. <br><br> LOWE'S HOME CENTERS, LLC, <br>                                Defendant. | Case No.: 3:23-cv-01335-CAB-JLB <br><br> **ORDER ON PLAINTIFF'S MOTION TO AMEND AND ALTER THE JUDGMENT PURSUANT TO Fed. R. Civ. P. §§ 52(b) and 59(e)** <br><br> [Doc. No. 79] |

Before the Court is a motion brought by plaintiff DS Advanced Enterprises ("DS Advanced") to vacate the Court's judgment and for reconsideration of the Court's order granting summary judgment of noninfringement for defendant Lowe's Home Centers ("Lowe's HC"). [Doc. No. 79.] Lowe's HC filed an opposition. [Doc. No. 83.] DS Advanced filed a reply. [Doc. No. 86.] The Court held argument on January 16, 2025. The motion is DENIED.

DS Advanced asserted infringement of U.S. Patent No. 11,054,118 against Lowe's HC. The patent is directed to an apparatus designed to detachably attach a lighting fixture to a ceiling or a recessed lighting fixture housing. [Doc. No. 34-5, at 2.]

Lowe's HC moved for summary judgment of noninfringement based on constructions of certain claim limitations of the patent's only independent claim and the

1

1 assertion that the accused device lacked those limitations. After considering the
2 submissions of the parties and counsels' arguments on the construction of the claim
3 limitation "metal housing," the Court granted Lowe's HC's motion for summary judgment.
4 [Doc. No. 67.]

5      DS Advanced now moves pursuant to Fed. R. Civ. P. §§ 52(b) and 59(e) to set aside
6 the judgment for Lowe's HC and for reconsideration of the Court's claim construction and
7 its finding of noninfringement. Reconsideration is an "extraordinary remedy, to be used
8 sparingly in the interests of finality and conservation of judicial resources." *Kona*
9 *Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000.)

10      A district court may properly reconsider its decision under § 59(e) if it is "(1)
11 presented with newly discovered evidence, (2) committed clear error or the initial decision
12 was manifestly unjust, or (3) if there is an intervening change in the controlling law."
13 *School Dist. No. 1J v. ACandS, Inc.* 5 F.3d 1255, 1263 (9th Cir. 1993). Clear error occurs
14 when "the reviewing court on the entire record is left with the definite and firm conviction
15 that mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395
16 (1948). Motions for reconsideration are not to be used merely as an intermediate appeal
17 before taking a disputed ruling to the circuit court.

18      DS Advanced has not presented newly discovered evidence unavailable to it at the
19 time of filing its opposition to the defendant's motion for summary judgment. Nor has it
20 presented an intervening change in the law. DS Advanced contends the Court committed
21 clear error in both its construction of the claim limitation "metal housing" and its
22 determination that the component of the accused device that constitutes the housing
23 limitation is plastic and therefore does not infringe.

24      DS Advanced's motion is largely focused on a comparison of Lowe's HC's accused
25 product with what DS Advanced asserts is its own commercial embodiment of the
26 invention. This comparison is neither relevant to the claim construction or the infringement
27 analysis. "Claim construction, from which an infringement analysis depends, focuses on
28 the recited limitations of the *claims*, not on the features of a commercial embodiment of

1 the invention." *Myco Indus., Inc. v. BlephEX, LLC*, 955 Fl3d 1, 15 (Fed. Cir. 2020)
2 (emphasis in the original). "Infringement is determined on the basis of the claim, not on
3 the basis of a comparison with the patentee's commercial embodiment of the claimed
4 invention." *ACS Hosp. Sys. Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1578 (Fed. Cir.
5 1984).

6     DS Advanced disputes the Court's construction of the limitation "metal housing."
7 Plaintiff misconstrues or misstates the Court's claim construction in its motion. Further,
8 to the extent plaintiff asserts new claim construction arguments, that is not an appropriate
9 basis for reconsideration of the Court's claim construction order.

10     DS Advanced still seeks to construe the metal housing limitation based on the
11 configuration of the accused device. For example, claim 1 of the patent includes the
12 following limitation: "a twist connector (118) to attach the output wires of the junction box
13 (116) to the metal housing (108)." DS Advanced illustrates in its infringement contentions
14 that in the accused device there are wires passing through an opening in the "white wafer
15 piece" (i.e., the plastic housing) connecting to a circuit board on a metal disk contained
16 therein. Therefore, DS Advanced argues the metal disk with the circuit board constitutes
17 the "metal housing." This approach to claim construction based on the configuration of
18 the accused device however is misplaced. *See NeoMagic Corp. v. Trident Microsystems,*
19 *Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be
20 construed by reference to the accused device.")

21     The claim is construed based on its plain language and the specification and then
22 that construction is applied to the accused device to determine if the device is covered. DS
23 Advanced looks to its commercial embodiment and the accused device and contends that
24 any metal structure meets the claim limitation, but this simply ignores the plain meaning
25
26
27
28

3

1  of housing and its identification in the specification as a component separate from the
2  junction box, the clips, and the lighting fixture.[1]

3      DS Advanced also argues that the Court should reconsider whether this internal
4  metal component contained within the plastic housing of defendant's accused device,
5  revealed by removing the plastic covering, could be viewed by a jury as meeting the metal
6  housing limitation. The Court rejects this argument, whether timely raised or not, as this
7  metal disk does not meet the Court's construction of the limitation of a housing. It is a part
8  of the accused device contained within the plastic housing.

9      Plaintiff has not provided newly discovered evidence, identified an intervening
10  change in the controlling law, or demonstrated the court committed clear error in either its
11  claim construction or in granting summary judgment of noninfringement for defendant.
12  DS Advanced's motion is therefore DENIED.

13      It is **SO ORDERED**.

14  Dated: February 24, 2025

Hon. Cathy Ann Bencivengo
United States District Judge

---

[1] DS Advanced alleged in its amended complaint [Doc. No. 17, at ¶89] that the plastic portion of the
accused device has metallic content and therefore meets the claim limitation but did not argue this in
opposition to LHC's motion for summary judgment. In opposition to the summary judgment motion DS
Advanced reiterated its argument that the housing limitation was met by the metal structures in the
accused device including the metal disk beneath the "white wafer piece," which it contended was simply
an added plastic component included as an attempt to avoid infringement. [Doc. No. 45, at 33.]

4

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, Ltd., <br> Plaintiff, <br> v. <br> LOWE'S HOME CENTERS, LLC, <br> Defendant. | Case No.:  3:23-cv-01335-CAB-JLB <br><br> **ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT** <br><br> [ECF No. 34] |

Plaintiff DS Advanced Enterprises, LTD. ("DS Advanced") filed this lawsuit against Defendant Lowe's Home Centers, LLC. ("Lowe's HC") alleging infringement of U.S. Patent No. 11,054,118 ('118 Patent).  Lowe's HC moves for summary judgment of noninfringement. [ECF No. 34.] DS Advanced filed an opposition. [ECF No. 45.] Lowe's HC filed a reply. [ECF No. 47.] The Court held argument on September 26, 2024.  Central to Defendant's motion is the construction of the limitation "metal housing."  For the reasons explained further below, since the Accused Products contain only plastic housings, and the doctrine of equivalents does not apply, Lowe's HC's motion is **GRANTED.**

**I.     PATENT AT ISSUE AND ACCUSED PRODUCTS**

DS Advanced identifies itself as a designer and seller of lighting fixtures worldwide. DS Advanced filed an amended complaint ("Complaint") on Oct. 16, 2023, alleging

1

Appx017

1  infringement of the '118 Patent.  The Patent discloses "an apparatus to detachably attach

2  an LED light fixture to a ceiling or a recessed lighting fixture housing."  [Patent No. '118,

3  ECF No. 34-5 at 2.]  DS Advanced claims infringement for all five claims of the '118

4  Patent.  [*See* Compl. ¶¶ 15–45.]

5      The accused Lowe's HC products are recessed lighting products designated as

6  Utilitech Items #5041630, #5041631, #5041632, #5041633, and #5041634 (collectively,

7  the "Accused Products").  [Compl. ¶¶ 75–110.]  The Accused Products are largely similar

8  and for purposes of this motion, any differences between them are irrelevant.

9      Claim 1, the only independent claim of the '118 patent, claims:

10     An apparatus to detachably attach an LED light fixture to at least one of a ceiling,
       and a recessed lighting fixture housing, the apparatus comprises:
11         a plurality of retrofit clips (102) adaptable to attach with a body of the LED light
12         fixture by screwing them into a plurality of screw holes (110);
           a plurality of new construction clips (104);
13         a plurality of connection posts (106) to hold the new construction clips (104);
14         a metal housing (108) to embody a complete fixture (112);
           a junction box (116) to hold a plurality of connection wirings, where the junction
15         box (116) comprises a plurality of output wires; and
16         a twist connector (118) to attach the output wires of the junction box (116) to the
           metal housing (108), wherein the retrofit clips (102) make a friction fit inside the
17         recessed lighting fixture housing to secure the complete fixture (112) inside,
18         wherein the new construction clips (104) are attached to the connecting posts
           (106) if the recessed lighting fixture housing is not present.
19

20 [Patent No. '118, Ex. 34-5, Col 6:9-28.]

21     Employing an unusual format, at least in this Court's experience, the claim itself

22 incorporates specific references to the structure disclosed in the specification for each claim

23 limitation, e.g., a metal housing (108), a junction box (116), etc.

24 ///

25 ///

26 ///

27

28

2

Appx018



[Patent No. '118, Ex. 34-5, Fig. 8A.]

Defendant's motion asserts that summary judgment is proper because certain claim limitations are absent from each of the Accused Products, specifically: (1) a metal housing (108); (2) the junction box (116); and (3) a twist connector (118).

## II.    LEGAL STANDARD

The usual standard for summary judgment applies to this case.  Summary judgment is authorized if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The nonmoving party must come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

A patent infringement analysis involves two steps: (1) claim construction; and (2) application of the properly construed claim to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995).  Claim construction is a matter of law reserved for the court. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  "Disputes concerning the meaning of claims do not preclude summary judgment, because the resolution of those disputes is part of the process of claim interpretation, a question of law." *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998).

To prove direct infringement, "the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally

3

Appx019

1  or under the doctrine of equivalents." *Advanced Cardiovascular Sys., Inc. v. Scimed Life*
2  *Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).

3      Literal infringement requires that each element in the asserted claim be literally
4  present in the accused device. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981
5  (Fed. Cir. 1997). If a reasonable jury cannot find that every limitation or its equivalent of
6  a properly construed claim is found in the accused product, the court may enter summary
7  judgment of noninfringement. *Medgraph Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed.
8  Cir. 2016).

9      **III.  DISCUSSION**

10      Claim construction requires a review of the patent's intrinsic evidence and, when
11  appropriate, extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed.
12  Cir. 2005) (en banc). "Claim terms are generally given their plain and ordinary meaning,
13  which is the meaning one of ordinary skill in the art would ascribe to a term when read in
14  the context of the claim, specification, and prosecution history." *Apple Inc. v. MPH Techs.*
15  *Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022). Claims must be read in view of the specification
16  of which they are a part. The specification is always highly relevant to the claim
17  construction. *Phillips*, 415 F.3d at 1315. "The construction that stays true to the claim
18  language and most naturally aligns with the patent's description of the invention will be,
19  in the end, the correct construction." *Renishaw PLC v. Marposs Societa' per Azioni*, 158
20  F.3d 1243, 1250 (Fed. Cir. 1998).

21      Based on the Court's construction of the claim limitation "metal housing (108)" and
22  the undisputed fact that the corresponding aspect of the accused devices is a plastic
23  housing, the Court finds it unnecessary to go beyond the absence of this limitation to enter
24  a judgment of noninfringement for Defendant Lowe's HC.

25

26

27

28

4

### A. Construction of Metal Housing (108)

The plain language of the claim limitation "metal housing (108)" unambiguously requires that this housing element of the apparatus be comprised of metal. Although the parties banter somewhat over a definition of metal, neither contend that in the context of this patent metal has a special meaning to a person of skill in the art.

The Court finds that the claim requires this "housing" limitation of the apparatus be made of a scientifically recognized metal substance. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Arlington Industries, Inc. v. Bridgeport Fittings*, 632 F.3d 1246, 1253 (Fed. Cir. 2011) (claim recited a "spring metal adaptor," consistent with the ordinary and customary meaning of the words; this term imposed the limitation that the adapter must be made of spring metal).

The construction dispute focuses more on the interpretation of the claim limitation "the metal housing (108) to embody the complete fixture (112)." [Patent No. '118, Ex. 34-5, Col. 6:88.] The Court is guided by the maxim that "[c]laims mean precisely what they say." *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007). On its face, Claim 1 makes clear that the metal housing (108) is just one part of the overall apparatus. [Patent No. '118, Ex. 34-5, Col. 6:9-28.]

Claim 1 describes the metal housing (108) as a component of the apparatus designed to embody the complete fixture (112). The complete fixture includes a plurality of electrical systems, clips, and accessories. [*Id.*, Col. 4:2-4.] The metal housing (108) is attached to the output wires of the junction box (116) by a twist connector (118), both separately identified components of the claimed apparatus. [*Id.*, Fig. 7, Col. 4:9-15.] Retrofit clips (102), another separate component, are attached to the metal housing (108) to provide a friction fit inside a recessed lighting fixture housing to secure the complete fixture (112) inside. [*Id.*, Figs. 7 and 8B.]

Appx021

1    The metal housing (108) is a particular structure to which various other claim
2 components are attached and it contains, i.e., encases, the complete fixture. "Where a claim
3 lists elements separately, 'the clear implication of the claim language' is that those
4 elements are 'distinct component[s]' of the patented invention." *Becton, Dickinson & Co.*
5 *v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010).

6    DS Advanced contends that the phrase "to embody" found in the claim limitation
7 "the metal housing (108) to embody the complete fixture (112)" implies that the metal
8 housing is somehow analogous to the entire fixture, rather than a component that encases
9 (houses) the parts of the complete fixture. Plaintiff argues that the claim should be
10 construed such that this metal housing component (108) is metal if other component parts
11 of the complete fixture, such as the various clips, wires, and junction box, are metal since
12 the housing, regardless of whether that individual part is made of metal, contains the
13 complete fixture.

14    The Court is not persuaded by this interpretation of the claim. It directly contradicts
15 the plain language of the claim that provides that the metal housing (108) is a component
16 of the complete fixture (112), among numerous individually identified components. The
17 specification describes the metal housing (108) as the base of the complete fixture (112).
18 [Patent No. '118, Ex. 34-5, at Col. 4:25-26.] Different terms are presumed to mean
19 different things. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d
20 1308, 1317 (Fed. Cir. 2000).

21    Moreover, the patentee included in the claim itself the specification's parenthetical
22 references for each component limitation. While this unusual format of claiming the
23 invention may not limit the claimed invention to only the figures as illustrated in the
24 specification, the inclusion of these references for each component part of the claimed
25 apparatus informs the construction of each limitation—and therefore what constitutes the
26 metal housing element. DS Advanced's claim construction argument that the metal
27 housing (108) is the embodiment of the complete fixture (112) is contrary to the claim
28

6

Appx022

language.  These are separately identified limitations, and the housing is disclosed to embody, i.e., encase, the complete fixture and must be formed of metal.

The Court construes the "metal housing (108)" limitation of the '118 Patent based on the plain language of the claim and in accordance with the descriptions in the specification and its figures as a "casing or enclosure made of a scientifically recognized metal substance."

**B. Summary Judgment for Lowes is Warranted: There is No Dispute of Fact as to Whether the Accused Product Contains a "Metal Housing (108)"**

Having construed the claim limitation "metal housing (108)," the Court is satisfied that there is no dispute of material fact as to whether the Accused Product infringes the '118 Patent.  The summary judgment evidence is clear that the Accused Products have a housing made of plastic.  [ECF No. 48-1 ("Bretschneider Decl.") ¶¶ 12-24.]  DS Advanced offers no evidence to rebut Dr. Eric Bretschneider's analysis and conclusion related to the plastic housing, apart from its somewhat tortured proposed claim construction of "metal housing" which the Court rejects.  The straightforward visual confirmation of the plastic housing from the physical sample submitted by Lowe's HC as part of its motion leaves no debate on the issue.  [ECF No. 34-6.]  As the Accused Products do not contain a metal housing as construed by the Court, there can be no literal infringement, and summary judgment for Lowe's HC is warranted unless the doctrine of equivalents applies.  *See Medtronic, Inc.*, 843 F.3d at 949.

**C. The Doctrine of Equivalents is Barred by the Disclosure-Dedication Doctrine**

A lack of literal infringement does not end the infringement inquiry as infringement may exist under the doctrine of equivalents.  The doctrine of equivalents allows, in some circumstances, a claim element to be met by its substantial equivalent.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732–33 (2002) (citing *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605 (1950)).

In this case, "the disclosure-dedication doctrine bars application of the doctrine of equivalents."  *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed.

7

1  Cir. 2020). The doctrine states that "when a patent drafter discloses but declines to claim
2  subject matter, . . . this action dedicates the unclaimed subject matter to the public."
3  *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002).
4  The application of the disclosure-dedication rule is a question of law for the Court. *SanDisk*
5  *Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1364 (Fed. Cir. 2012).

6      The '118 Patent itself distinguishes between the metal housing (108) or plastic
7  housing. [*See, e.g.*, '118 Patent, Ex. 34-5, Col. 4:34-36, 41-52.] Yet "plastic housing" is
8  not the subject of any of the '118 Patent's claims. Given that the Patent disclosed plastic
9  housings, but did not claim them, the "disclosure-dedication" rule applies: the plastic
10  housings are dedicated to the public and cannot be captured under the doctrine of
11  equivalents. *See PCS Computer Products, Inc. v. Foxconn International, Inc.*, 355 F.3d
12  1353, 1360 (Fed. Cir. 2004) ("We agree with the district court, however, that the specific
13  disclosure that '[o]ther prior art devices use molded plastic and/or metal parts that must be
14  cast or forged which again are more expensive metal forming operations,' . . . dedicated
15  the alternative use of plastic parts to the public."). Accordingly, there is no infringement
16  by equivalents.

17      **IV.   CONCLUSION**

18      Defendant's motion for summary judgment of noninfringement of the '118 patent is
19  **GRANTED**. All pending motions and deadlines are vacated, except for Defendant's
20  Motion for Sanctions [ECF No. 59] pending before the magistrate judge for determination.
21  Final judgment will be entered upon determination of that motion.

22      It is **SO ORDERED**.

23  Dated: September 30, 2024

24
25          Hon. Cathy Ann Bencivengo
            United States District Judge
26
27
28

8

3:23-cv-01335-CAB-JLB

Appx024

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    SOUTHERN DISTRICT OF CALIFORNIA

10

11   DS ADVANCED ENTERPRISES, LTD.,        Case No.: 3:23-cv-01335-CAB-JLB

12                            Plaintiff,   **ORDER ADOPTING REPORT AND**
                                           **RECOMMENDATION RE: MOTION**
13   v.                                    **TO ENFORCE THE PROTECTIVE**
                                           **ORDER AND FOR SANCTIONS,**
14   LOWE'S HOME CENTERS, LLC,             **AND GRANTING IN PART**
                                           **DEFENDANT'S MOTION**
15                            Defendant.
16

17                                         [Doc. Nos. 59, 99]

18

19

20        Pending before the Court is the Report and Recommendation ("R&R") of Magistrate

21   Judge Jill L. Burkhardt, filed on January 24, 2025, recommending that the Court grant in

22   part defendant Lowe's Home Center's ("Lowe's HC") motion to enforce the Protective

23   Order and impose sanctions against counsel for plaintiff DS Advanced Enterprises, Ltd.

24   ("DS Adavanced"). [Doc. Nos. 59 and 99.]

25        Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district

26   court's duties in connection with a magistrate judge's report and recommendation. The

27   district court must "make a de novo determination of those portion of the report to which

28

1

3:23-cv-01335-**CAB-JLB**

Appx025

1  objection is made," and "may accept, reject, or modify, in whole or in part, the findings or
2  recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also United*
3  *States v. Raddatz*, 447 U.S. 667, 673-76 (1980); *United States v. Remsing*, 874 F.2d 614,
4  617 (9th Cir. 1989). DS Advanced filed timely objections. [Doc. No. 105.] Lowe's HC
5  filed a timely response. [Doc. No. 106.]

6          DS Advanced does not object to the finding of the magistrate judge that its counsel
7  violated the terms of the Protective Order issued in the case by disclosing to his client
8  information and images designated as "CONFIDENTIAL – FOR COUNSEL ONLY" ("C-
9  FCO"). DS Advanced does not directly object to the magistrate judge's finding that
10 counsel made these disclosures twice, despite having been advised of the violation after
11 the first occasion.

12         DS Advanced objects that the magistrate judge did not resolve its challenge to
13 Lowe's HC's confidentiality designations raised in its opposition to Lowe's HC's motion
14 for sanctions before finding the violation of the Protective Order. DS Advanced asserted
15 then and reasserts now that the information disclosed in violation of the Protective Order
16 was already known to DS Advanced and was improperly designated C-FCO. As the
17 magistrate judge found however DS Advanced did not follow the Protective Order
18 procedures to challenge the designation prior to counsel disclosing the materials to his
19 client. DS Advanced's argument that the confidential material disclosed should not have
20 been designated confidential in the first instance does not alter the fact that counsel
21 disclosed it twice without properly seeking to first remove the C-FCO designation. The
22 discovery was produced subject to the Protective Order and DS Advanced's counsel could
23 not unilaterally decide to ignore the designation because he thought it improperly
24 designated. DS Advanced's untimely challenge to the designation in response to the
25 motion for sanctions for violating the Protective Order does not remedy the violations. The
26 objection is overruled.

27         DS Advanced's remaining objections are with regard to the propriety of the fees
28 Lowe's HC claims to have incurred in the seeking to enforce the Protective Order and the

2

1  sanction imposed on DS Advanced's counsel for his non-compliance with the terms of the
2  Order.

3      The magistrate judge considered the reasonable expenses, including attorneys' fees
4  incurred by Loew's HC as a result of the violations of the Protective Order. DS Advanced
5  objects to the recovery of any fees related to the second violation arising from the
6  production of the Second Supplemental Interrogatory Responses and communications
7  regarding that production. The Second Supplemental Interrogatory Responses however
8  evidenced that counsel provided C-FCO material to his client again without first seeking
9  to properly remove the designation. This was made apparent in DS Advanced's opposition
10 to the motion for sanctions and was therefore addressed in Lowe's HC's reply. To the
11 extent the magistrate judge awarded fees that covered expenses related to addressing the
12 second violation, the objection is overruled.

13     Similarly, DS Advanced objects to the recovery of fees arising from meet and confer
14 efforts to address the Protective Order violations. These efforts to ascertain what occurred
15 and when, and the extent of the violations were relevant to the determination of an
16 appropriate sanction. It provided important factual background to determine the scope of
17 the violation and the potential harm to Lowe's HC resulting from the improper disclosures.
18 The information developed through the meet and confer process in part established that the
19 harm to Lowe's HC from the disclosures was limited and did not justify the issue preclusion
20 sanctions Lowe's HC sought.   The magistrate judge also found that mitigating
21 circumstances made a full award of Lowe's HC's expenses unjust.

22     Lowe's HC sought over $41,000 in fees and expenses as a result of the violations of
23 the Protective Order. The magistrate judge reviewed the invoices provided by Lowe's HC
24 in detail and only found time entries for research, drafting and review of the motion to be
25 reasonably awarded.   Time spent meeting and conferring, reviewing emails,
26 communicating with clients and with opposing counsel and communications within the
27 defense counsels' firm were all excluded, as was the time billed by attorney Krawczyk.
28 Consequently, DS Advanced's objections to recovery of fees for communications, emails

3

1 and meet and confer discussions, and purported block billing are moot, as they were
2 excluded from the recommended final award.

3      The magistrate judge evaluated the nature of the violations, the harm to Lowe's HC
4 and the reasonable expenses billed for the preparation of the motion. The magistrate judge
5 ultimately concluded and ordered, that for his violations of the Protective Order, counsel
6 for DS Advanced should pay $25,000. This Court overrules the objections raised by DS
7 Advanced to this award and finds no basis to revise this number. Further DS Advanced
8 has provided no legal justification for its argument that Lowe's HC's indemnitor should be
9 precluded from receiving the payment.

10      Having reviewed the R&R, the Court finds that it is thorough, well-reasoned, and
11 contains no clear error. Having considered DS Advanced's objections *de novo*, the
12 objections are overruled or deemed moot. Accordingly, the Court hereby **ADOPTS**
13 Magistrate Judge Burkhardt's report and recommendation. The motion to enforce the
14 Protective Order and award sanctions is GRANTED IN PART as set forth within the
15 Report and Recommendation.

16      It is **SO ORDERED**.

17 Dated: February 24, 2025

18
19                                        Hon. Cathy Ann Bencivengo
                                         United States District Judge
20
21
22
23
24
25
26
27
28

4

3:23-cv-01335-CAB-JLB

Appx028

1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT
9                         SOUTHERN DISTRICT OF CALIFORNIA
10
11   DS ADVANCED ENTERPRISES, Ltd.,          Case No.: 3:23-cv-01335-CAB-JLB
12                              Plaintiff,
                                             **ORDER ON DEFENDANT'S**
13   v.                                      **MOTION FOR ATTORNEYS' FEES**
                                             **AND RELATED EXPENSES**
14   LOWE'S HOME CENTERS, LLC,
15                             Defendant.    [Doc. No. 77]
16
17
18          Before the Court is a motion brought by defendant Lowe's Home Centers, LLC
19   ("Lowe's HC") as the prevailing party in this litigation, for the Court to find this case
20   exceptional pursuant to 35 U.S.C. § 285, and to award defendant its reasonable attorney
21   fees and expenses against plaintiff DS Advanced Enterprises, Ltd. ("DS Advanced").
22   Lowe's HC also seeks an award of fees and expenses against plaintiff's counsel pursuant
23   to 35 U.S.C. § 1927, asserting that counsel's bad faith conduct unreasonably multiplied the
24   proceedings. [Doc. No. 77.] DS Advanced filed an opposition. [Doc. No. 81.] Lowe's
25   HC filed a reply. [Doc. No. 84.] The Court determined this motion could be decided on
26   the papers. Civ.LR 7.1.d.1.
27          A district court in exceptional cases may award reasonable attorney fees and non-
28   taxable costs to the prevailing party. 35 U.S.C. § 285. "An exceptional case is simply one

                                              1

Appx029

1    that stands out from others with respect to the substantive strength of a party's litigating

2    position . . . or the unreasonable manner in which the case was litigated." *Dragon*

3    *Intellectual Prop. v. Dish Network*, 101 F.4th 1366 1369-70 (Fed. Cir. 2024) *citing Octane*

4    *Fitness LLC v. ICON Health & Fitness, Inc.* 572 U.S. 545, 554 (2014).

5        A district court may determine whether a case is exceptional in the case-by-case

6    exercise of its discretion considering the totality of the circumstances. *OneSubsea IP UK*

7    *Ltd. v. FMC Tech., Inc.*, 68 F.4th 1285, 1294 (Fed. Cir. 2023). A party seeking fees under

8    § 285 must prove the case is exceptional by a preponderance of the evidence. *Id., citing*

9    *Octane Fitness,* 572 U.S. at 554.[1]

10       As an initial matter the Court finds that Lowe's HC's fee motion was submitted

11   timely. Although the Court granted Lowe's HC's summary judgment of non-infringement

12   on September 30, 2024, the order specifically stated final judgment would not be entered

13   until a pending motion for sanctions was resolved. [Doc. No. 67.] Further on October 15,

14   2024, the Court issued a scheduling order for the filing of an exceptional case determination

15   after entry of final judgment, which still has not occurred. [Doc. No. 74.] That order

16   notwithstanding, Lowe's HC filed its motion on October 23, 2024, in advance of the entry

17   of final judgment. DS Advanced's contention that the motion should be deemed waived

18   as untimely is rejected.

19       The briefing on this motion by both parties highlights that this has been an

20   acrimonious litigation with both sides hurling assertions of bad faith and misconduct.

21   Lowe's HC accuses DS Advanced and its counsel of harassing litigation tactics and shifting

22   frivolous infringement contentions. DS Advanced accuses Lowe's counsel of making false

23   statements to the Court and violations of Rule 11.

24

25

26

27   [1] Counsel for DS Advanced erroneously argued that the standard to prove the exceptional nature of the
28   case is clear and convincing evidence [Doc. No. 81, at 6], citing to case law that preceded the Supreme
     Court's rejection of that evidentiary burden in *Octane Fitness*.

2

Appx030

1        The Court in assessing whether this case merits an exceptional case finding considers
2   only the matters before it. As evidence of plaintiff's bad faith and harassment, Lowe's HC
3   references other litigations in other districts filed by DS Advanced against other Lowe's
4   entities or affiliates regarding the same patent at issue in this litigation. These matters are
5   not before this Court and will be left to those district judges to determine if they were
6   improvidently or maliciously filed.

7        Lowe's HC also references a violation by counsel for DS Advanced of the Protective
8   Order entered in this case. That discovery matter was addressed by the magistrate judge
9   in a Report and Recommendation made to this Court. [Doc. No. 99.] Counsel's violations
10  were found to be unjustified, careless failures to adhere to the terms of the Protective Order
11  but not bad faith, and counsel has already been sanctioned.

12       The Court focuses on the history of this case and the litigation position of DS
13  Advanced. The case was filed on July 21, 2023. [Doc. No. 1.] Lowe's HC contends that
14  DS Advanced improperly named multiple defendants without justification, however DS
15  Advanced voluntarily dismissed those parties on August 21, 2023, before any substantial
16  expense or inconvenience was incurred. [Doc. No 5.]

17       DS Advanced filed an amended complaint on October 16, 2023. [Doc. No. 17.]
18  Lowe's HC filed a motion to dismiss willfulness allegations which the Court denied finding
19  that, based only on the allegations of the complaint, DS Advanced plausibly stated a claim
20  for willful infringement. [Doc. No. 24.] Lowe's HC then filed its answer on January 29,
21  2024. [Doc. No. 27.] In March 2024, the parties entered into a Scheduling Order [Doc.
22  No. 31] and a Protective Order [Doc. No. 33]. Nothing else appears on the docket until
23  Lowe's HC filed its motion for summary judgment of non-infringement on June 10, 2024.
24  [Doc. No. 34.]

25       After receipt of DS Advanced's infringement contentions, Lowe's HC presented its
26  motion to the Court for summary judgment of non-infringement. Based on proposed
27  constructions of three limitations of the patent's only independent claim, Lowe's HC
28  argued for a finding of non-infringement asserting that the aspects of the accused devices

3

3:23-cv-01335-CAB-JLB

1   that DS Advanced contended satisfied those claim elements could not as a matter of law
2   infringe. [*Id.*]

3       Lowe's HC briefed the three claim limitations. The Court after construing the "metal
4   housing" limitation found it unnecessary to reach the two other challenged limitations.  DS
5   Advanced proposed a construction for "metal housing" that it contended encompassed the
6   accused devices.   The Court rejected the proposed construction as contrary to the plain
7   meaning of the claim term and the specification.   [Doc. No. 67.]   Lowe's HC correctly
8   states that the Court was highly skeptical of the construction being proffered by DS
9   Advanced and remarked that it was "almost frivolous."

10      The question before the Court now is whether DS Advanced's interpretation of the
11  claim limitation was so objectively unreasonable that the circumstances support an
12  exceptional case finding.  The construction of "metal housing" was put before the Court
13  relatively early in the litigation, just three months after the entry of the Scheduling Order
14  and Protective Order. DS Advanced appears to have consistently identified in its
15  infringement contentions the aspects of the accused device it alleged met this claim
16  limitation based on its expansive interpretation of the claim.

17      The Court does not find that DS Advanced asserted its construction in bad faith or
18  for an improper purpose, such as to extract a settlement. *See Extremity Medical, LLC v.*
19  *Nextremity Solutions, Inc.* 2024 WL 4384202, *2 (Oct. 3, 2024, D.Del.) (pursing baseless
20  litigation for a quick pay day).   DS Advanced failed to convince the Court of its
21  interpretation of the patent and the Court found the proposed construction strained the plain
22  reading of the claim.  Under the totality of the circumstances however the Court is not
23  convinced that DS Advanced knowingly and intentionally asserted a meritless position for
24  improper purposes.  It was just wrong.

25      Lowe's HC's motion to find the case exceptional and request for an award of
26  attorneys' fees and expenses pursuant to 35 U.S.C. § 285 is DENIED.

27      The Court also does not find that DS Advanced's counsel intentionally and in bad
28  faith unreasonably multiplied the proceedings justifying a fee award pursuant to 35 U.S.C.

4

1  § 1927.  Counsel has a litigation style that is perhaps overly aggressive and at times

2  reflected a somewhat condescending attitude toward the Court, but the Court does not find

3  it was intentionally harassing or advanced in bad faith.  The request for a fee award against

4  counsel is also DENIED.[2]

5      It is **SO ORDERED**.

6  Dated:  February 24, 2025

                                    _____

                                    Hon. Cathy Ann Bencivengo
                                    United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  [2] The sanction award against counsel for DS Advanced for his violations of the Protective Order however remains affirmed.

3:23-cv-01335-CAB-JLB

Appx033



UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD.,<br>Plaintiff,<br><br>v.<br><br>LOWE'S COMPANIES, INC., et al.,<br>Defendants. | Case No.: 23-cv-01335-CAB-JLB<br><br>**REPORT AND RECOMMENDATION RE: MOTION TO ENFORCE THE PROTECTIVE ORDER AND FOR SANCTIONS**<br><br>**(ECF No. 59)** |

This Report and Recommendation is submitted to the Honorable Cathy Ann Bencivengo, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

On September 9, 2024, Defendant Lowe's Homes Centers, LLC ("LHC") filed a Motion to Enforce the Protective Order and for Sanctions pursuant to Federal Rule of Civil Procedure 37(b). (ECF Nos. 59 (redacted); 98 (sealed).) LHC moves for an order enforcing the Protective Order issued in this case and sanctioning Plaintiff DS Advanced Enterprises, Ltd. ("Plaintiff"). (*Id.* at 1–2.) Plaintiff filed an opposition. (ECF No. 71.)

1

Appx034

1  LHC filed a reply. (ECF No. 75.) For the reasons set forth below, the Court
2  **RECOMMENDS** that LHC's Motion to Enforce the Protective Order and for Sanctions
3  be granted in part.

4  **I.    BACKGROUND**

5      **A.    Factual Background**

6      Plaintiff commenced this lawsuit against multiple entities on July 21, 2023, alleging
7  infringement of U.S. Patent No. 11,054,118 ('118 Patent). (ECF No. 1.) In its First
8  Amended Complaint ("FAC"), Plaintiff alleges infringement of the '118 Patent solely
9  against LHC. (*See* FAC, ECF No. 17.)

10     Plaintiff identifies itself as a designer and seller of lighting fixtures worldwide. (*Id.*
11  ¶ 13.) Plaintiff claims to be the owner of all right, title, and interest in the '118 Patent. (*Id.*
12  ¶¶ 16, 123.) The Patent discloses "an apparatus to detachably attach an LED light fixture
13  to a ceiling or a recessed lighting fixture housing." (Patent No. '118, ECF No. 34-5 at 2.)

14     Plaintiff alleges in the FAC that LHC sold "pirated lighting products" in its stores
15  and on its websites and thereby infringed Plaintiff's Patent in violation of 35 U.S.C. § 271.
16  (FAC ¶¶ 69–72, 124.) The accused LHC products are recessed lighting products
17  designated as Utilitech Items #5041630, #5041631, #5041632, #5041633, and #5041634.
18  (*Id.* ¶¶ 75–110.)

19     On June 10, 2024, LHC filed a motion for summary judgment of noninfringement
20  asking the Court to grant summary judgment of non-infringement and dismiss the case in
21  its entirety. (ECF No. 34.) On September 30, 2024, the Honorable Cathy Ann Bencivengo
22  granted LHC's motion and vacated all pending motions and deadlines, except for the
23  present motion. (ECF No. 67.) On October 10, 2024, Plaintiff filed a Notice of Appeal to
24  the Federal Circuit. (ECF No. 72.)

25     **B.    Discovery**

26     As discovery commenced in this matter, the parties filed a Joint Motion for
27  Protective Order. (ECF No. 32.) The Joint Motion was granted, and the operative
28  Protective Order was entered on March 21, 2024. (ECF No. 33.) In the stipulated

2

1   Protective Order, the parties agree "to be bound by the terms" of the Protective Order,
2   which permits parties to designate information as "CONFIDENTIAL – FOR COUNSEL
3   ONLY" ("C-FCO") only if, "in the good faith belief of such party and its counsel, the
4   information is among that considered to be most sensitive by the party, including but not
5   limited to trade secret or other confidential research, development, financial or other
6   commercial information." (*Id.* at 1–3.) Information designated C-FCO may be viewed
7   only by counsel of the receiving party (as defined by the parties in the stipulated Protective
8   Order), and by identified persons under designated conditions. (*Id.* ¶¶ 4–12.) In order to
9   receive and review information designated as CONFIDENTIAL, Plaintiff's President,
10   David Sherman, signed a copy of Exhibit A to the Protective Order which bound him to
11   the Protective Order's provisions. (*See id.* at ¶ 10, Ex. A; *see also* Declaration of David
12   Sherman ("Sherman Decl."), ECF No. 71-2 ¶¶ 3–8.)

13       On April 4, 2024, LHC produced two documents, LHC_000795–812 and
14   LHC_000841–887, which were responsive to Plaintiff's Requests for Production of
15   Documents. (ECF No. 59-1 at 4, 6.) These documents disclosed, among other things,
16   LHC's sales, costs, and profit information, and internal proposals for products that would
17   compete with Plaintiff's products, along with estimated sales and profit margins for those
18   products. (*Id.*) Specifically, LHC_000795-812 is an internal presentation containing
19   diagrams of certain proposed products. (*Id.* at 6.) The final page of the presentation,
20   LHC_000812, contains a diagram of one of those products, as well as an estimate of total
21   sales and expected gross margin percentage. (*Id.*) LHC_000841–887 is an excel
22   spreadsheet containing detailed sales, costs, and profit data for LHC's products, from July
23   2022 through March 2024, including gross revenue, net revenue, costs of goods sold, total
24   units sold, and net margins, among other things. (*Id.*) Both documents were designated
25   C-FCO by LHC pursuant to the Protective Order. (*Id.* at 4.)

26       On July 19, 2024, Plaintiff served supplemental interrogatory responses ("First
27   Supplemental Response"), verified by Mr. Sherman, on LHC. (ECF No. 59-1 at 6–7; *see*
28   *also* Declaration of Patrick Cummins ("Cummins Decl."), ECF No. 71-4 ¶ 11.) The

3

1  responses addressed commercial success, citing LHC_000841 for evidence of units sold
2  by LHC of the Accused Products since 2022, as well as gross revenue and net profit. (ECF
3  No. 98 at 84.)  The responses also addressed both evidence of copying, which involved
4  reproducing an image from LHC_000795, and skepticism, citing LHC_000812. (*Id.* at 4–
5  7.)

6       On July 29, 2024, LHC raised concerns with Plaintiff regarding what sales
7  information had been disclosed to Mr. Sherman when he reviewed and verified the First
8  Supplemental Response. (Cummins Decl. ¶ 16.)  On August 1, 2024, Plaintiff's counsel
9  spoke with Mr. Sherman to address LHC's concerns. (*Id.* ¶ 18.)  Mr. Sherman recounted
10 in his declaration that he had printed a single copy of the First Supplemental Response, but
11 he had not discussed or otherwise shared any information from the First Supplemental
12 Response with anyone other than Plaintiff's counsel. (Sherman Decl. ¶¶ 11–12, 17.)  Mr.
13 Sherman agreed to mail his single printed copy of the First Supplemental Response to
14 counsel and remove any digital copies from his possession. (*Id.* ¶¶ 13–15, 27.)

15      On August 1, 2024, Plaintiff's counsel served a second supplemental interrogatory
16 response ("Second Supplemental Response"), verified by Mr. Sherman, on LHC.
17 (Cummins Decl. ¶ 22.)  The next day, LHC's counsel raised concerns regarding images
18 and exhibits in the Second Supplemental Response, which it claimed had also been in the
19 First Supplemental Response. (*Id.* ¶ 24.)  Plaintiff's counsel apologized for including
20 certain exhibits in the interrogatory responses. (*Id.* ¶ 25.)  He claimed to have "mistakenly
21 attached certain exhibits assuming they were part of an email thread that was already in
22 Plaintiff's possession prior to the initiation" of the present lawsuit. (*Id.*)  That same day,
23 Plaintiff's counsel contacted Mr. Sherman regarding LHC's latest concerns and had him
24 mail the single copy he had printed of the Second Supplemental Response back to counsel
25 and confirm he did not have any other copies and had not discussed the Second
26 Supplemental Response with anyone. (*Id.* ¶¶ 26–28.)  Mr. Sherman mailed his single
27 printed copy of the Second Supplemental Response back to counsel, confirmed he did not
28

4

23-cv-01335-CAB-JLB

1  have another other copies, and agreed to sign an affidavit addressing LHC's concerns.

2  (Sherman Decl. ¶¶ 20–27.)

3      On August 3, 2024, Plaintiff served both a redacted and unredacted third

4  supplemental interrogatory response on LHC to address its confidentiality concerns.

5  (Cummins Decl. ¶ 36.)

6  **II.    LEGAL STANDARDS**

7      Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose

8  sanctions where a party has violated a discovery order, including a protective order issued

9  pursuant to Rule 26.  Fed. R. Civ. P. 37(b)(2); *see Apple, Inc. v. Samsung Elecs. Co.*, No.

10  5:11-CV-01846-LHK-PSG, 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014); *Life*

11  *Techs. Corp. v. Biosearch Techs.*, Inc., No. C-12-00852 WHA JCS, 2012 WL 1600393, at

12  *8 (N.D. Cal. May 7, 2012).

13      Rule 37 "authorizes the district court to impose a wide range of sanctions if a party

14  fails to comply with a discovery order." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d

15  906, 910 (9th Cir. 1986).  "The choice among the various sanctions rests within the

16  discretion of the district court." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617

17  F.2d 1365, 1369 (9th Cir. 1980).  However, the court's authority to issue sanctions "is

18  subject to certain limitations[.]" *Nat'l Med. Enters., Inc.*, 792 F.2d at 910.  Specifically:

19  "(1) the sanction must be just; and (2) the sanction must specifically relate to the particular

20  claim at issue in the order." *Id.*  Furthermore, a compensatory award is limited to the

21  "actual losses sustained as a result of the contumacy." *Shuffler v. Heritage Bank*, 720 F.2d

22  1141, 1148 (9th Cir. 1983).  And where the sanction amounts to dismissal of a claim, the

23  district court is "required to consider whether the claimed noncompliance involved

24  willfulness, fault, or bad faith," and the availability of lesser sanctions.  *R & R Sails, Inc.*

25  *v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citation omitted).

26  "Disobedient conduct not shown to be outside the litigant's control" meets the standard of

27  willfulness, bad faith or fault. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460

28  F.3d 1217, 1233 (9th Cir. 2006) (citations omitted).

5

1  III.  **DISCUSSION**

2      **A.  Parties' Arguments**

3          LHC contends that Plaintiff's counsel improperly disclosed information and images
4  contained in documents identified as C-FCO to Plaintiff's President, a competitor, in
5  violation of the Protective Order.  (ECF Nos. 59-1 at 4; 75 at 5.)  LHC contends that these
6  documents reveal sensitive sales, costs, and profit data, and proposals for competing
7  products with associated product margins.  (ECF No. 59-1 at 4.)  Furthermore, LHC
8  complains that, when Plaintiff's counsel was first asked if C-FCO documents or their
9  substance had been disclosed, Plaintiff's counsel failed to reveal the disclosure,
10  responding, instead, "I believe I'm complying with the counsel only requests."  (*Id*. at 9.)
11  LHC contends that, after inquiries, Plaintiff admitted that it had disclosed this information.
12  (*Id*. at 4.)  LHC seeks serious sanctions to remedy the harm caused by the improper
13  disclosure and to deter Plaintiff and others from such violations in the future.  (*Id*. at 4–5.)

14          Specifically, LHC seeks attorney's fees and costs incurred as result of Plaintiff's
15  violation of the Protective Order.  (ECF No. 59-1 at 9.)  LHC also asks the Court to preclude
16  Plaintiff "from alleging commercial success, copying, or skepticism for any purpose in this
17  litigation."  (*Id*. at 11.)  If the Court prefers a lesser sanction, then LHC proposes the Court
18  preclude Plaintiff from "using LHC_000795-812 or LHC_000841 to assert commercial
19  success, copying, or skepticism for any purpose in this litigation (limiting the sanction to
20  these two documents only)."  (*Id*. at 12.)

21          In response, Plaintiff does not dispute that Mr. Sherman reviewed unredacted
22  versions of the supplemental interrogatory responses at issue.  (*See* ECF No. 71 at 4–12;
23  Cummins Decl. ¶¶ 9–28.)  Rather, Plaintiff contends, with respect to both the supplemental
24  interrogatory responses, that LHC was not prejudiced and, with respect to the Second
25  Supplemental Response, that the C-FCO material LHC complains about should not have
26  been so designated because Plaintiff had independent knowledge of the information.  (*See*
27  ECF No. 71 at 5–6, 9–11, 15–16.)  Plaintiff further contends that Mr. Sherman only
28  reviewed an unredacted version of the supplemental interrogatory responses at issue

6

1  through Plaintiff's counsel's mistake and outlines the steps Plaintiff took to rectify the
2  mistake. (*Id.* at 4–9.) Mr. Sherman specifically states in affidavits that he did not discuss
3  or otherwise share any information contained in the supplemental interrogatory responses
4  that he reviewed with anyone. (Sherman Decl. ¶¶ 12, 17, 24; Second David Sherman
5  Declaration ("Second Sherman Decl."), ECF No. 71-3 at ¶ 4.) Mr. Sherman also states that
6  he returned all copies of the supplemental interrogatory responses he may have
7  downloaded or printed to his counsel. (Sherman Decl. ¶¶ 14–15, 22–23, 26–27; Second
8  Sherman Decl. ¶¶ 5–6.)

9      Plaintiff further argues that Plaintiff is hardly a competitor of Defendant like
10  Amazon or Home Depot. (ECF No. 71 at 9–10.) In this regard, Mr. Sherman explicitly
11  states that he does not own or operate retail stores, does not have any employees, and does
12  not compete with LHC. (Second Sherman Decl. ¶¶ 7–9.) However, Mr. Sherman also
13  states that he has purchased lights from manufacturers and resold them to other vendors for
14  profit. (*Id.* ¶ 15.)

15      Overall, Plaintiff argues the Court should deny LHC's request for sanctions because
16  LHC has failed to provide evidence of great harm caused by the purported violation or
17  evidence of bad faith or willful conduct. (ECF No. 71 at 12–18.)

18      **B.**   **Analysis**

19          1.   Violation of the Protective Order

20      There is no dispute that Plaintiff's counsel violated the Protective Order issued in
21  this case. As discussed above, he disclosed to his client C-FCO information and images
22  on not one, but *two*, separate occasions, despite having been advised of the violation after
23  the first occasion. Although the issue of whether or not the material was properly
24  designated in the first place may go to the issue of the harm suffered by LHC, it is not a
25  defense to the violations of the Protective Order. There were procedures available to
26  Plaintiff to challenge improper designations. (*See* ECF No. 33 at ¶ 14.) It should go
27  without saying that a party who receives discovery subject to a protective order may not
28

7

1 | unilaterally decide not to comply with the protective order because that party has decided
2 | the material was improvidently designated as confidential.

3 |     The question now is one of remedy.

4 |         2.    <u>Remedy for Violations</u>

5 |     Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), when there is a failure to
6 | abide by a protective order, the court "must order the disobedient party, the attorney
7 | advising that party, or both to pay the reasonable expenses, including attorney's fees,
8 | caused by the failure, unless the failure was substantially justified or other circumstances
9 | make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, the Court finds
10 | that counsel's violation of the Protective Order was not substantially justified. Plaintiff's
11 | counsel's actions may have been a mistake, but counsel was still careless with LHC's
12 | sensitive information. *See Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852
13 | WHA JCS, 2012 WL 1600393, at *9 (N.D. Cal. May 7, 2012) (noting that "in patent cases,
14 | it is critical that outside counsel handle the opposing party's confidential information with
15 | the utmost caution"). Furthermore, when asked directly whether C-FCO material had been
16 | shared with Mr. Sherman, Plaintiff's counsel did not give the inquiry careful consideration,
17 | but instead initially asserted that he was handling C-FCO material properly. (*See* ECF No.
18 | 59-7 at 2–5.) After being alerted to LHC's concern about the First Supplemental Response,
19 | Plaintiff's counsel should have taken extra care with respect to C-FCO material when
20 | preparing the Second Supplemental Response. He did not.

21 |     However, the Court finds that there are mitigating circumstances that make a full
22 | award of expenses unjust. First, after his initial deflection, Plaintiff's counsel took
23 | substantial steps to minimize any harm and to provide LHC with evidentiary support that
24 | Mr. Sherman no longer had access to C-FCO material, that he did not recall the substance
25 | of what he had seen, and that he had not shared the information with anyone else. In
26 | addition, LHC argues that it has been prejudiced, but it has not convincingly demonstrated
27 | significant prejudice. LHC contends that Plaintiff is a competitor and Mr. Sherman can
28 | utilize the limited information he was given to compete with LHC in selling light fixtures.

8

Appx041

1  (*See* ECF No. 59-1 at 10.) The Court does not find these arguments persuasive. First, Mr.
2  Sherman is the sole employee of Plaintiff and does not own any retail stores. Second,
3  LHC_000841–887, is a 47-page excel spreadsheet containing detailed sales, costs, and
4  profit data for LHC's products, from July 2022 through March 2024, including gross
5  revenue, net revenue, costs of goods sold, total units sold, and net margins, among other
6  things.    However, Mr. Sherman did not receive or review this spreadsheet.    The
7  interrogatory reviewed by Mr. Sherman identified only three numbers—total units sold of
8  the Accused Products since 2022, the gross revenue, and reported net profit. (ECF No. 98
9  at 84.) The extent to which Mr. Sherman can recall and then utilize these three numbers to
10 compete with and harm LHC is unclear, but it strikes the Court as purely speculative.[1]
11 Moreover, the interrogatory reviewed by Mr. Sherman which contains a partial image from
12 LHC_000812, only contains estimates from a "PROMO" presentation, not actual sales
13 figures. (*See id.* at 86–88.)

14     Taking all of this into consideration, the Court finds that Plaintiff's counsel should,
15 within limits, pay the reasonable expenses, including attorney's fees, incurred by LHC as
16 a result of his violation of the Protective Order with respect to the First Supplemental
17 Response and Second Supplemental Response. *See Cahill v. Nike, Inc.*, No. 3:18-CV-
18 01477-JR, 2024 WL 3963809, at *6 (D. Or. Aug. 26, 2024) (finding counsel liable for
19 reasonable attorney's fees where counsel disclosed confidential information subject to a
20 protective order to a news organization although the disclosure was not deliberate or done
21 in bad faith).

22     The Court has not been persuaded that Plaintiff should be precluded from alleging
23 commercial success, copying, or skepticism for any purpose in this litigation, or that
24
25

26 [1]    Mr. Sherman stated in his declaration that he does not recall any of LHC's sales data
27 that was revealed when he reviewed and signed the First Supplemental Response, except
28 that he believes he remembers "the number of significant digits of gross revenue for
[LHC's] sales of the Accused Products." (ECF No. 71-3 at 4.)

9

1  Plaintiff should be precluded from using LHC_000795–812 or LHC_000841–887, or any
2  of the information contained in these documents, to assert commercial success, copying,
3  or skepticism in this litigation.  First, there was nothing improper about the underlying
4  production or retention of the documents.  They were not, for example, inadvertently
5  produced privileged documents that were improperly retained by Plaintiff.  Thus, there
6  would be no remedial purpose to the evidence preclusion.  LHC is simply seeking to punish
7  and therefore deter Plaintiff and others from protective order violations in the future.  (*See*
8  ECF No. 59-1 at 5.)

9      "Rule 37(b) sanctions may serve . . . *punitive and deterrent purposes*," *Falstaff*
10  *Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983) (emphasis added),
11  but "the sanction must specifically relate to the particular claim at issue in the order," *Nat'l*
12  *Med. Enters., Inc.*, 792 F.2d at 910.  *See, e.g.*, *Life Techs. Corp. v. Biosearch Techs., Inc.*,
13  No. C-12-00852 WHA JCS, 2012 WL 1600393, at *11 (N.D. Cal. May 7, 2012) (barring
14  attorney who disclosed attorney's eyes only documents to his client from further access to
15  attorney's eyes only documents).  Here, the Court finds that LHC has not demonstrated
16  that the proposed remedy is sufficiently related to the violation at issue such that evidence
17  preclusion is appropriate.  Plaintiff utilized the relevant documents when attempting to
18  support  secondary  considerations  of  non-obviousness  in  responding  to  LHC's
19  interrogatories, specifically commercial success, copying, and skepticism. (*See* ECF No.
20  59-1 at 5, 11.)  However, wholesale preclusion of the argument or use of the documents is
21  too attenuated and would not be a just penalty given the circumstances discussed below,
22  where the Court does not find bad faith or prejudice.

23      As  discussed  above,  although  Plaintiff's  counsel  was  careless  with  LHC's
24  confidential information, there is nothing in the record before the Court to suggest that
25  Plaintiff itself acted willfully or in bad faith.  Plaintiff's President simply reviewed the
26  information provided to him and signed the interrogatory responses he was asked to sign.
27  (Sherman Decl. ¶¶ 9–30.)  Mr. Sherman only briefly retained the C-FCO information at
28  issue before returning or deleting all copies, and did not share the information with anyone

1   besides Plaintiff's counsel. (*Id.*)  Moreover, there is nothing in the record before the Court
2   to suggest Plaintiff's counsel acted willfully or in bad faith.  Preclusion of evidence can be
3   a severe sanction, which is generally only imposed to deter "flagrant disobedience and
4   callous disregard of court discovery orders." *See Sumitomo Marine*, 617 F.2d at 1369–70.
5   Here, LHC has not established that Plaintiff or Plaintiff's counsel flagrantly disobeyed or
6   callously disregarded the Protective Order.

7        Lastly, "[w]hen a court excludes evidence under Rule 37, the court should do so only
8   where there is a finding of prejudice to the nonoffending party." *Life Techs. Corp.*, 2012
9   WL 1600393, at *11.  As addressed above, LHC argues that it has been prejudiced, but it
10  has not demonstrated that it has suffered such prejudice as to warrant the harsh sanction of
11  evidence preclusion.

12       For the foregoing reasons, the Court finds that the appropriate remedy for Plaintiff's
13  counsel's violation of the Protective Order is ordering counsel to pay, within limits, the
14  reasonable expenses, including attorney's fees, incurred by LHC as a result of his violation
15  of the Protective Order with respect to the First Supplemental Response and Second
16  Supplemental Response.  *See Apple, Inc.*, 2014 WL 12596470, at *10 (finding that
17  assessing outside counsel as liable for any and all costs and fees incurred in litigating a
18  motion for sanctions, in addition to public findings of wrongdoing, to be sufficient to
19  remedy the harm of repeated protective order violations and discourage similar conduct in
20  the future).

21            3.    Reasonable Attorney's Fees

22       As LHC did not substantiate its fee request in its Motion to Enforce the Protective
23  Order and for Sanctions, the Court ordered LHC to file a supplemental declaration in
24  support of its motion specifying the amount of attorney's fees and costs sought and
25  attaching all supporting documentation.  (ECF No. 91.)  In its supplemental declaration,
26  LHC states that it is seeking $41,448.11 in attorney's fees and expenses incurred by its
27  counsel, Sills Cummis & Gross P.C. ("Sills Cummis"), as result of Plaintiff's violations of
28  the Protective Order.  (Suppl. Decl. of Scott D. Stimpson ("Stimpson Decl."), ECF No. 93

23-cv-01335-CAB-JLB

Appx044

1  ¶ 2.)[2]  This amount includes a client discount of 15% on Sills Cummis's standard billing
2  rate. (*Id.* ¶ 14.)

3      LHC is generally entitled to all "reasonable expenses" caused by Plaintiff's
4  counsel's violation of the Protective Order. *See* Fed. R. Civ. P. 37(b)(2)(C). Reasonable
5  attorney fees are calculated based on the lodestar method, which requires the court to
6  "multiply[] the number of hours it finds the prevailing party reasonably expended on the
7  litigation by a reasonable hourly rate." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th
8  Cir. 1995); *see also Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 115 (S.D. Cal. 2024).

9      The party seeking fees bears the burden of demonstrating that its counsel's hourly
10  rates are reasonable and in line with prevailing rates in the relevant legal community of the
11  Southern District of California. *See Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-
12  BAS-AHG, 2021 WL 409724, at *2 (S.D. Cal. Feb. 5, 2021). To do so, the party must
13  produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested
14  rates are in line with those prevailing in the community for similar services of lawyers of
15  reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258,
16  1263 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Roberts v.*
17  *City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the
18  attorney seeking fees to submit evidence to support the requested hourly rate.").

19      In calculating the number of reasonable hours to include in the lodestar, the court
20  should consider "whether a reasonable attorney would have believed the work to be
21  reasonably expended in pursuit of success at the point in time when the work was
22  performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982). Billing
23  records may establish the reasonableness of the requested number of hours. *See Gonzalez*
24  *v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The court will exclude any hours

25
26

---

27  [2]   LHC represents that any monetary award in this case will go toward reimbursement
28  of the fees spent by Yankon Lighting due to its indemnification obligations. (Stimpson Decl. ¶ 6.)

12

1  "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*,
2  565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted); *see also Cruz*, 346 F.R.D. at 117.
3  The court has "a great deal of discretion in determining the reasonableness of the fee[,]"
4  including "the reasonableness of the hours claimed by the prevailing party." *Gates v.*
5  *Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

6      LHC represents that four attorneys worked on the Motion to Enforce the Protective
7  Order and for Sanctions: (1) Scott Stimpson, a member of Sills Cummis's litigation
8  department and Chair of its Intellectual Property Practice Group, with over 35 years of
9  experience in intellectual property litigation and counselling, with an hourly billing rate of
10 $925; (2) Randy Moonan, a member of Sills Cummis's litigation department with over 11
11 years of experience representing clients in complex high-stakes litigation and in sensitive
12 regulatory and internal investigations, with an hourly billing rate of $825; (3) Laura
13 Krawczyk, counsel in Sills Cummis's litigation department, with almost 20 years of
14 experience handling intellectual property litigation, with an hourly billing rate of $675; and
15 (4) Sean Camperson, an associate in Sills Cummis's litigation department, with 2 years of
16 experience handling commercial litigation disputes, with an hourly billing rate of $450.
17 (Stimpson Decl. ¶¶ 9–12.)

18     In its briefing, LHC has not demonstrated—or attempted to demonstrate—that its
19 counsel's hourly rates are reasonable and in line with prevailing rates in the relevant legal
20 community of the Southern District of California. However, the Court finds that counsel's
21 hourly rates, as discounted, are reasonable in this District. *See CliniComp Int'l, Inc. v.*
22 *Cerner Corp.*, No. 17-cv-02479-GPC (DEB), 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22,
23 2023) (finding reasonable undiscounted hourly rates for a partner up to $1,465, for
24 associates up to $805, and for paralegals up to $495 in patent litigation); *NuVasive, Inc. v.*
25 *Alphatec Holdings, Inc.*, No. 3:18-CV-347-CAB-MDD, 2020 WL 6876300, at *2–3 (S.D.
26 Cal. Mar. 20, 2020) (finding a Winston & Strawn partner's billing rate of $1,005 per hour
27 and other attorneys' rates of $860 and $885 per hour "consistent with the prevailing market
28 rates for complex patent litigation in this district"); *Orthopaedic Hosp. v. Encore Med.*,

23-cv-01335-CAB-JLB

1  *L.P.*, No. 3:19-cv-00970-JLS-AHG, 2021 WL 5449041, at *13–15 (S.D. Cal. Nov. 19,
2  2021) (finding reasonable in a complex, high-stakes patent litigation a Quinn Emanuel
3  partner's billing rate of up to $1,260 and a fifth-year associate hourly rate of up to $1,065,
4  but acknowledging a client discount that worked out to an average hourly rate of $709.63).
5  Here, incorporating its client discount, Sills Cummis billed an average hourly rate of
6  $632.80 for its work on this patent litigation. The Court finds that rate reasonable in this
7  District.

8      The Court has reviewed the invoices provided by LHC in detail. The Court finds
9  that only time entries that specifically reflect research, drafting, and review of the Motion
10 to Enforce the Protective Order and for Sanctions are reasonably awarded in this case. The
11 Court will exclude all time spent meeting and conferring, reviewing emails, and
12 communicating with clients, opposing counsel, and within the firm. In this regard, the
13 Court finds that Mr. Stimpson's time sheets reflect that he spent 9.3 hours reviewing and
14 revising the motion,[3] Ms. Krawczyk spent 13.3 hours researching and drafting the motion,
15 Mr. Moonan spent 22.6 hours drafting and finalizing the motion, including declarations
16 and exhibits, and the reply,[4] and Mr. Camperson spent 11.2 hours conducting research.
17 The Court will not question Sills Cummis's decision to have Mr. Moonan, a senior counsel,
18 do the majority of drafting in this case, as he may have been more efficient with his time
19 than a junior associate. However, the Court finds that LHC has not endeavored to justify
20 the reasonableness or efficiency of having multiple people draft the motion. Accordingly,
21 the Court finds it appropriate to cut Ms. Krawczyk's hours entirely. For the foregoing
22 reasons, the Court finds that LHC has established reasonable expenses in the amount of
23 $27,444.38.

24
25

---

26 [3]    The Court is not including Mr. Stimpson's hours on July 31, August 3, August 5,
27 August 27, September 3 (conference), September 5, October 7 (correspondence), October
28 10, and October 15.
   [4]    The Court is not including Mr. Moonan's hours on September 3.

14

1    However, Rule 37(b)(2)(C) also directs the Court to consider whether "other
2  circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, the
3  Court further considers the relative financial positions of the parties, the lack of evidence
4  of intentionality, the remediation efforts undertaken by Plaintiff's counsel, and the lack of
5  persuasive evidence of harm to LHC and determines that an appropriate sanction under
6  these circumstances should not exceed $25,000. Accordingly, the Court finds a total fee
7  award of $25,000 to be reasonable and just.

8  **IV.   CONCLUSION**

9    For the reasons set forth above, the Court the Court **RECOMMENDS** that LHC's
10  Motion to Enforce the Protective Order and for Sanctions be **GRANTED IN PART** such
11  that Plaintiff's counsel be ordered to pay the reasonable expenses, including attorney's
12  fees, in the amount of $25,000, caused by his violation of the Protective Order with respect
13  to the First Supplemental Response and Second Supplemental Response. However, the
14  Court recommends that all other forms of relief requested by LHC be denied.

15    **IT IS HEREBY ORDERED** that no later than **January 31, 2025**, each party shall
16  file either a "Notice of Intent to File Objections" or a "Notice of Intent Not to File
17  Objections." If a party has timely noticed its intent to object, any written objections to this
18  Report and Recommendation shall be filed with the Court and served on all parties no later
19  than **February 7, 2025**. The document should be captioned "Objections to Report and
20  Recommendation."

21    The parties are advised that failure to file objections within the specified time may
22  waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*,
23  158 F.3d 449,445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

24    **IT IS SO ORDERED.**

25  Dated: January 24, 2025

26
27  Hon. Jill L. Burkhardt
   United States Magistrate Judge
28

15



# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

DS Advanced Enterprises, Ltd.

                        **Plaintiff,**

               **V.**

See Attachment

                     **Defendant.**

Civil Action No.  23-cv-01335-CAB-JLB

**JUDGMENT IN A CIVIL CASE**

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED:

Plaintiff's motion to amend or alter this judgment having been denied, the Court hereby enters Final Judgment in favor of Defendant Lowe's Home Centers, LLC. Case Closed.

**Date:**       2/25/25

**CLERK OF COURT**
**JOHN MORRILL, Clerk of Court**
By:  s/  A. Hazard

A. Hazard, Deputy

Appx049

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

(ATTACHMENT)

**Civil Action No.** 23-cv-01335-CAB-JLB

Lowe's Companies, Inc., A Corporation; Lowe's Home Centers, LLC, A Corporation;  LF, LLC, A Corporation; Yankon Lighting, Inc., A Corporation

Defendants.

23-cv-1335-CAB-JLB                              1

```
 1                    UNITED STATES DISTRICT COURT

 2              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   DS ADVANCED ENTERPRISES,        .
     LTD.,                           .
 5                                   . Docket
                  Plaintiff,         . No. 23-cv-1335-CAB-JLB
 6                                   .
                       v.            . January 16, 2025
 7                                   . 2:00 p.m.
     LOWE'S COMPANIES, INC.,         .
 8   et al.,                         .
                                     .
 9             Defendants.           . San Diego, California
     . . . . . . . . . . . . . . . .

10

11                  TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE CATHY ANN BENCIVENGO
12                 UNITED STATES DISTRICT JUDGE

13

                       A-P-P-E-A-R-A-N-C-E-S
14

     For the Plaintiff:      Cummins IP Law PLLC
15                           3426 Pepperhill Road
                             Lexington, Kentucky 40502
16                           By:  PATRICK CUMMINS, ESQ.

17   For the Defendant:      Sills Cummis & Gross P.C.
                             One Riverfront Plaza
18                           Newark, New Jersey 07102
                             By:  SCOTT D. STIMPSON, ESQ.
19                           - and -
                             Higgs Fletcher & Mack LLP
20                           401 West A Street, Suite 2600
                             San Diego, California 92101
21                           By:  KATHRYN CALLAGHAN, ESQ.

22
     Court Reporter:         Chari Bowery, RPR, CRR
23                           USDC Clerk's Office
                             333 West Broadway, Suite 420
24                           San Diego, California 92101
                             chari_bowery@casd.uscourts.gov
25   Reported by Stenotype, Transcribed by Computer
```

23-cv-1335-CAB-JLB                                2

```
 1            SAN DIEGO, CALIFORNIA; JANUARY 16, 2025; 2:00 P.M.
 2                              -oOo-
 3            THE CLERK:  We are once again on the record.  Calling
 4    at this time Matter Number 2.  This is 23-cv-1335-CAB-JLB,
 5    DS Advanced Enterprises, Limited, v. Lowe's Companies,
 6    Incorporated, et al., on calendar for motion hearing.
 7         Counsel, please state your appearances.
 8            ATTORNEY CUMMINS:  Patrick Cummins for the plaintiff,
 9    DS Advanced.
10            ATTORNEY STIMPSON:  Good afternoon, Your Honor.
11    Scott Stimpson, Sills Cummis & Gross, representing Lowe's Home
12    Centers.
13            ATTORNEY CALLAGHAN:  Good afternoon, Your Honor.
14    Kathryn Callaghan, also on behalf of Lowe's Home Centers.
15            THE COURT:  Thank you.
16         We are here on calendar today for plaintiff's motion for
17    reconsideration pursuant to Federal Rules of Civil
18    Procedure 52(b) and 59(e).  The motion arises out of the
19    Court's claims construction and summary judgment order granting
20    order of noninfringement to the defendants for the product
21    that's accused of infringing, Patent 11054118.
22         Obviously, the standard here for reconsideration would
23    require a showing that the Court had committed clear error,
24    that there was an intervening change in the law, or newly
25    discovered evidence, and that these motions are not granted
```

Appx052

 1   regularly.  The Court has considered all the submissions of the

 2   parties.

 3        It is the plaintiff's motion, so why don't you proceed.

 4             ATTORNEY CUMMINS:  Upon receiving the order from this

 5   Court, we filed our 52(b) motion and 59 motion.

 6        The 52(b) motion was, I guess, partially motivated to get

 7   some more clarification on some of the decisions from the

 8   Court, especially regarding the metal housing not being

 9   present, the construction of the metal housing, I guess, how

10   the Court construed it, so we could address that on appeal.

11        And then upon -- if there was additional findings made, we

12   filed the Rule 59 motion, at least in our view, because there

13   was a clear error in not addressing what plaintiff considered

14   to be the metal housing in the accused products.  We had

15   submitted our formal infringement contentions well before the

16   filing of the motion for summary judgment, pointing to the

17   accused metal housing, or what I refer to as the accused metal

18   housing.

19        The contentions were not attached to the summary judgment

20   motion, and we attempted to point to that in our opposition to

21   the summary judgment motion and attempted to argue it in the

22   hearing; but in the ultimate, I guess, order that came out from

23   this Court, opinion, it didn't seem like it was addressed, like

24   our position on that particular element was addressed.  And I

25   understand that you are not required to at the summary judgment

Appx053

23-cv-1335-CAB-JLB                                    4

1   phase, but we wanted to get some indication of why it was not

2   addressed or why it shouldn't be within the scope of the term

3   "metal housing" as construed by this Court.

4         And I provided some background of my client, DS Advanced,

5   to, perhaps, emphasize what we -- I guess, in our view was --

6   could be gross injustice as a result of having to go forward

7   with an appeal just based on this issue.

8         As I indicated in my -- this is my client's first patent.

9   He filed it as a micro-entity.

10            THE COURT:  None of that is really relevant, Counsel.

11        This was a pretty straightforward matter brought early in

12   the case.  You have a disagreement between you as to how this

13   particular term, "metal housing," in the claim was to be

14   construed.  The Court construed it as the housing that embodies

15   the -- I will give you the exact construction.

16        But I listened to your arguments.  I read your arguments.

17   I did not give them short shrift.  There's no "rocket docket"

18   here.

19        The Court's construction, I think, resulted in the

20   defendant's request that they be found not infringing because

21   the structure of their light fixture, the housing, is all

22   plastic.

23        There is, contained within that plastic casing, a metal

24   disk, which is what you subsequently pointed to; but the Court

25   does not consider that the "housing."  Based on interpretation

Appx054

23-cv-1335-CAB-JLB                                          5

1    of the patent, the specification, that disk appears to be what
2    holds the circuitry for the light, but it is not a housing, not
3    the way the Court has interpreted the patent.
4        And, you know, you have raised again this issue of the
5    junction box being part of the housing.  It is a completely
6    separate element in the claim.  In the claim language, in the
7    specification, it is identified as a completely separate thing.
8    It is not an interchangeable part.
9        To some extent, I feel like your interpretation of what
10   the metal housing should be would render this patent indefinite
11   because I wouldn't be able to tell what was the housing.  And
12   it is not indefinite.  There are very clear objects of the
13   fixture that is defined by these claims as what they
14   constitute.  And I am not persuaded by your argument.
15       So anything else you want to add for the record?
16           ATTORNEY CUMMINS:  Yes, Your Honor.  Yes.
17       Apologies regarding the "rocket docket."  I hope that
18   wasn't taken with any offense.
19       So the Court construed "metal housing" as "an encasing or
20   enclosure made from a scientifically recognized metal."  I
21   believe that's it.
22       Based on that construction, then, the Court then decided
23   there was not infringement because there's nothing in the
24   accused products that is an encasing or enclosure that is made
25   out of a scientifically recognized metal.

Appx055

23-cv-1335-CAB-JLB                                                6

1        Is that correct?

2            THE COURT:  I am not quite sure that's it.

3        The aspect of the accused product that would correspond to

4    the housing is plastic, in the Court's opinion.  And I don't

5    think a reasonable jury could conclude that it is not.

6            ATTORNEY CUMMINS:  In the Court's written opinion,

7    you have a clear construction on "metal housing," so I think a

8    jury could find that.

9        The construction is "an encasing or enclosure made of

10   scientifically recognized metal."

11       We pointed to the disk-looking object.  I guess I would

12   ask, with the LED strip inside of that disk object, is it not

13   encasing or enclosing the LED strip?

14           THE COURT:  It doesn't correspond to the rest of the

15   patent and the specification.

16       What is indicated as the metal housing, parenthetical 108,

17   that then corresponds to the descriptions in the specification

18   and the drawings, is not a flat disk contained within a

19   structure that is plastic, in this case, that holds the

20   circuitry.  That would be the lighting fixture.

21       It just -- Counsel, your argument doesn't ring with me.

22       I understand that you feel strongly that there's this

23   metal aspect to the accused product.  You repeatedly pointed to

24   a number of metal components saying, "Well, there's this, and

25   this and this, and so all of this is part of the complete

Appx056

23-cv-1335-CAB-JLB                                                  7

1  structure; and therefore, there's metal," but I do not accept
2  that as a proper claim construction.  And based on my claim
3  construction, I do not believe a reasonable jury could have
4  concluded that there is infringement in this case.

5      You have noticed your appeal.  It has been temporarily
6  vacated.  You can take it to the Circuit, and they can tell me
7  I am wrong.

8          ATTORNEY CUMMINS:  All right.  Thank you, Your Honor.
9          THE COURT:  I doubt there's anything you want to add.
10         ATTORNEY STIMPSON:  There is not, Your Honor.
11         THE COURT:  With regard -- there are a couple of
12 things pending in this case.  I had not entered a final
13 judgment because at the time the Court entered the order for
14 summary judgment, there was a motion for sanctions pending in
15 front of Magistrate Judge Burkhardt.

16     I did notice in the docket that she had asked you to file
17 more specific application as to the amount, and that has been
18 filed.  I left her an email -- she did not get back to me -- to
19 find out -- is there any sense of when something is going to
20 issue?

21         ATTORNEY STIMPSON:  No, although we expect it soon,
22 given the request for the additional filing.

23     There actually is one, perhaps, important timing issue,
24 Your Honor, that relates to this.  I just don't want to forget,
25 before the Court actually rules on the reconsideration motion.

Appx057

23-cv-1335-CAB-JLB                                    8

1   I don't know if you want me to do it now.

2            THE COURT:  Go ahead.  Because I am trying to --

3   because you had filed a Rule 58 motion.  And actually, the

4   Court having, prior to that, entered a scheduling order, I

5   think it obviated the need for you to do that, because the rule

6   says, based on this timing, unless otherwise ordered by the

7   Court.  And I had issued the scheduling order on any motion for

8   exceptional case finding and fees on October 15th.  It is at

9   Docket 74.  That indicated that you could file your motion no

10  later than 14 days after the entry of final judgment.

11       You have filed your motion.  They have filed their

12  opposition.  You filed -- it is briefed.  It is ready to go.

13       To the extent your request under Rule 58 still is

14  required, the Court would grant it; but I, frankly, think it's

15  moot.  I don't think there's an issue there.

16            ATTORNEY STIMPSON:  I think -- my colleague knows

17  this issue better than I do.  I should have a better handle on

18  this, Your Honor.

19       But I believe that the Rule 58 motion asked that it be

20  treated as a Rule 59 motion, which is what the rules allow, and

21  I don't think that's in the scheduling order.

22       And the reason that this timing comes up, Your Honor, is

23  because under Rule 58(e) -- and this does get a little

24  complicated.  But under Rule 58(e), the Court's -- obviously,

25  the point of treating it as a Rule 59 motion is so that

1    everything gets done and gets to the Federal Circuit together.

2         But under Rule 58(e), the Court can act before -- and

3    treat it as a Rule 59 motion; the Court can act before a notice

4    of appeal is filed and becomes effective.  Now, the notice of

5    appeal is filed.  But I think that when the Court rules on the

6    reconsideration motion and the sanctions motion, then -- then

7    it becomes effective.  So if the Court has not ruled on the

8    58(e) motion by then, it may be too late.

9         THE COURT:  All right.  I don't want anybody here to

10   lose their procedural rights because of the odd way this case

11   is trying to wrap up to get up on appeal.

12        To the extent the defendants have requested, pursuant to

13   Federal Rule of Civil Procedure 58(e), that any pending motion

14   for attorneys' fees have the same effect under Federal Rule of

15   Appellate Procedure 4(a)(4) as a motion pursuant to 59, the

16   Court grants that.  The motion is already filed.  It is

17   submitted.  The Court has reviewed it.  I will be ruling on

18   that shortly.  And I believe Judge Burkhardt will have a

19   decision shortly on the sanctions motion.

20        Again, the motion for reconsideration is denied.  But I

21   will hold off on a final judgment until at least

22   Judge Burkhardt has issued her order, and I will impress on her

23   that sooner rather than later would be useful.

24        Then I think everything would be in a posture to go up on

25   appeal.

23-cv-1335-CAB-JLB                                    10

1       Again, the appeal is noticed.  We did get notice from the

2   Federal Circuit today, saying that it had been deactivated but

3   would be -- within 14 days of my decision, you could inform the

4   Court that, based on the decision, whether it should proceed.

5   Obviously, the plaintiff will want to proceed.

6       So I think you have two weeks from when I enter the order.

7   I am orally doing it.  I will do it in writing so it is a

8   distinct date, and then the 14 days will start to run.

9       And hopefully, when that order issues in writing,

10  Judge Burkhardt will also have issued her order.  And then the

11  attorneys' fees can run parallel while you deal with the

12  appeal.

13          ATTORNEY STIMPSON:  Thank you, Your Honor.

14          THE COURT:  All right.  Thank you.

15          ATTORNEY CALLAGHAN:  Thank you, Your Honor.

16      (End of proceedings at 2:15 p.m.)

17                      -oOo-

18              C-E-R-T-I-F-I-C-A-T-I-O-N

19          I certify that the foregoing is a correct
    transcript from the record of proceedings in the above-entitled
20  matter.  Dated:  January 27, 2025.

21                      /s/  Chari Bowery

22                      _____
                        Chari Bowery, CSR No. 9944, RPR, CRR

23

24

25

Appx060

```
 1                    UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   DS ADVANCED ENTERPRISES,      .
     LTD.,                         .
 5                                 . Docket
              Plaintiff,           . No. 23-cv-1335-CAB-JLB
 6                                 .
                 v.                . September 26, 2024
 7                                 . 9:30 a.m.
     LOWE'S COMPANIES INC.,        .
 8   ET AL.,                       .
                                   .
 9           Defendants.           . San Diego, California
     . . . . . . . . . . . . . . .
10

11                 TRANSCRIPT OF MOTION HEARING
           BEFORE THE HONORABLE CATHY ANN BENCIVENGO
12               UNITED STATES DISTRICT JUDGE

13

14                   A-P-P-E-A-R-A-N-C-E-S

15   For the Plaintiff:      Cummins IP PLLC
                             3426 Pepperhill Road
16                            Lexington, Kentucky 40502
                             By:  PATRICK D. CUMMINS, ESQ.
17   For the Defendant       Sills Cummis & Gross
     Lowe's Home Centers,    One Riverfront Plaza
18   LLC:                    Newark, New Jersey 07102
                             By:  SCOTT D. STIMPSON, ESQ.
19                            - and -
                             Higgs Fletcher & Mack LLP
20                            401 West A Street, Suite 2600
                             San Diego, California 92101
21                            By:  KATHRYN CALLAGHAN, ESQ.

22   Court Reporter:         Chari Bowery, RPR, CRR
                             USDC Clerk's Office
23                            333 West Broadway, Suite 420
                             San Diego, California 92101
24                            chari_bowery@casd.uscourts.gov

25   Reported by Stenotype, Transcribed by Computer
```

1    SAN DIEGO, CALIFORNIA; SEPTEMBER 26, 2024; 9:30 A.M.

2                          -oOo-

3        THE CLERK:  We are on record this morning on matter

4    number one.  This is 23-cv-1335-CAB-JLB, DS Advanced

5    Enterprises, Ltd., v. Lowe's Companies, Inc., et al., on

6    calendar for motion hearing.

7        If I could please have counsel state your appearance.  We

8    will begin with plaintiff's counsel, on the phone.

9        ATTORNEY CUMMINS:  Yes.  Thank you, Your Honor.

10   Patrick Cummins, lead counsel for DS Advanced Enterprises.

11       THE COURT:  Thank you.  Good morning.

12       ATTORNEY STIMPSON:  Your Honor, Scott Stimpson, with

13   Sills Cummis & Gross, in New York City, representing Lowe's

14   Home Center.

15       With me here today is Kathryn Callaghan, from Higgs

16   Fletcher & Mack, and James Ruane, who is not admitted to the

17   bar yet.  He just got his LL.M. from Cornell, interning at our

18   firm.  And I hope it is okay if he --

19       THE COURT:  Absolutely.

20       You are welcome to observe, and I hope it is constructive

21   for you, and congratulations on your graduation.

22       This was originally scheduled to be a claim construction

23   hearing on the '118 patent.  The defendants had filed a motion

24   for summary judgment that incorporates a claims construction

25   issue, and the Court does find this construction would be

1  dispositive of the case, so I vacated the overall claim

2  construction to address the summary judgment motion.

3      There are three aspects of the accused devices that the

4  defendants have alleged are not present, are not covered by the

5  claims: that the accused products don't have a metal housing, a

6  junction box, or a twist connector, as set forth in the patent.

7      The Court at this point is not inclined to reach the

8  issues on "junction box" or "twist connector" because I

9  believe the construction of "metal housing" will be dispositive

10 in the case and lead to a summary judgment in favor of the

11 defendants.

12     I did want to confirm with counsel before I allow the

13 plaintiffs to articulate to me again their claim construction

14 on metal housing, which the Court found, frankly, not

15 persuasive, but I will give you a chance to help me help you by

16 helping me find where you are coming from.  But I think it is

17 undisputed, there's no material fact in dispute that the

18 accused products have a plastic housing; that the claim

19 unambiguously requires that this housing be metal; and that,

20 given the way it is claimed, the doctrine of equivalents is

21 barred under the disclosure-dedication doctrine, since the

22 patent does provide for the alternative, that it could be a

23 plastic housing but then makes no provision in the claim to

24 encompass that, and therefore it would be dedicated to the

25 public.

1      So, plaintiff's counsel, I know you are on the phone.

2      Again, my construction of the "metal housing" is

3  essentially that it is a component part here that is "A casing

4  or enclosure made of scientifically recognized metal

5  substance."  It is not, as I believe you are trying to

6  articulate, the complete fixture.  It is a portion of the

7  complete fixture; it is the portion or the component of the

8  complete fixture that encases it.  But I just couldn't really

9  follow your construction, so here is your chance to change my

10  mind.  Go.

11      ATTORNEY CUMMINS:  Okay.  Thank you, Your Honor.  And

12  apologies for not being more clear.

13      So, taking your construction, adopting that, and if it is

14  okay, I can argue for the -- that the metal housing is included

15  in the accused product.

16      So, metal housing was, of course, introduced in Claim 1

17  with the phrase, "A metal housing (108) to embody a complete

18  fixture."  I would like to break that into three portions and

19  then argue for each one, first portion being "metal housing,"

20  second, "to embody," and "complete fixture."

21      To be clear, we are not arguing that the metal housing is

22  the complete fixture, and I will try to be clearer about that.

23      So, with respect to just the words "metal housing," in a

24  vacuum, as used by the accused products, the accused products

25  certainly include metal.  That's not debatable.

1      With respect to just the word "housing" -- or "metal
2  housing," I guess in a vacuum --
3           THE COURT:  It is not a vacuum, though, Counsel.  It
4  is a claim limitation.  The claim limitation here requires it.
5      And it is, I have to admit, the most unusual claim format
6  I have ever seen.  I have been doing this for 17 years as a
7  litigator, almost 19 years as a judge now, magistrate and
8  district.  I have never personally seen a claim before that, in
9  the language of the claim, included the parenthetical
10  references to the specification.  And I searched for case law
11  to figure out how limiting that is.  I did not find -- it was
12  really hard.  I couldn't find anything.
13      But, in essence, even if the Court were to conclude that
14  the inclusion of the parentheticals that refer specifically
15  back to the illustrations and the discussion in the
16  specification are not limiting as to how the metal housing
17  might be configured -- it doesn't have to be round; it could be
18  square -- maybe.
19      But it certainly educates and informs the claim
20  construction if I have to look at what constitutes the
21  limitation, the element, a metal housing, I am going to go --
22  because it is a metal housing parenthetical (108), close
23  parentheses, I am going to look at (108).  I am going to look
24  at all the discussions of (108) in the specification.  And it
25  is the portion of the fixture that encases all the other parts.

1     You can't break it up and say, "Well, there's metal, and
2  there's housings, so there's metal housings."  That is so --
3  I'm going to say it's almost frivolous.  I don't understand.
4  You are just denying the plain language of the claim.  I don't
5  get it.
6                ATTORNEY CUMMINS:  I am sorry.  I understand.  I get
7  it.
8     I think parentheticals are often used for international
9  application, in the Canadian application or maybe Europe
10 sometimes requires parentheticals with the specifications
11 listed.  I personally didn't draft this application, but in my
12 experience with prosecution, that's oftentimes what happens.
13 So I think the attorney or agent that was drafting this is
14 likely maybe used to doing it for a foreign entity as well, so
15 that's part of that.
16    But I was not trying to construe it in a vacuum.  I guess
17 I was just trying to argue for a -- start with broader
18 arguments and sort of lead narrower into a fact interpretation,
19 or your construction.
20    So we are not arguing that the complete fixture is, kind
21 of, part of the housing.  With respect to the phrase "to
22 embody," "to embody" typically is referred to as "giving form
23 to," like a person, you know, when we refer to "This person
24 embodies patience," or a virtue, they are giving form to that.
25    In this respect, the metal housing is the structure that

1   gives form to the complete fixture, so the "complete fixture"

2   portion in the specification is defined as to include a variety

3   of electrical systems, clips, and accessories.

4       And in our opposition, if you look at document 45, at

5   page 32, there's an image of the junction box with the ground

6   wire connector, shown there, which is taken from

7   Dr. Bretschneider's affidavit, and then the group of images at

8   the bottom left, from plaintiff's infringement contentions.

9       So the "complete fixture," as defined in the

10  specification, is said to comprise a variety of electrical

11  systems, clips, and accessories.

12      So just determining whether that, the complete fixture, is

13  included in the accused products, the electrical systems are

14  defined in the specification as including an LED driver, which,

15  if you look at the collection of images from our infringement

16  contention, is that, kind of, circuit on top of the, kind of,

17  metal Frisbee, there.

18      And let me know if you are following along or if you are

19  not to the page yet.

20          THE COURT:  I am sorry, Counsel.

21      I am on the page.  Again, I am still not -- I am not on

22  board with this idea that you are changing "housing" to

23  "structure," and that "embody" somehow creates this idea that

24  the metal housing is therefore analogous with the entire

25  fixture; and if the entire fixture has metal parts, then the

1   claim limitation is met.

2       "To embody" in this case is not sort of like, "I am

3   embodying the spirit of another person."  It is to enclose, to

4   encase, to house.  It is specifically relating back to

5   embodying in the plain meaning of the term that it encases all

6   the other parts that are either attached to it or contained

7   within it.

8       Your argument just doesn't have any legs for the Court.

9       So if you want to move on to explaining why you think

10  there's a disputed fact as to whether the accused product

11  contains a metal housing, with the metal housing being the

12  casing or enclosure made of metal, and what is indicated in

13  both the patent and in the -- really, undisputed evidence by

14  the defendants from Dr. Bretschneider and the product they

15  provided to the Court as a sample, that that equivalent part,

16  that aspect of their accused products, is made of plastic.  It

17  is not made of metal.

18      And so, why don't you explain to me where there's a

19  disputed fact there.

20          ATTORNEY CUMMINS:  I believe what they are pointing

21  to is the kind of the wafer piece we provided as Exhibit 13 to

22  our opposition.

23      What we are pointing to as the metal housing we provided

24  as Exhibit 12, which is kind of the metal Frisbee-looking

25  portion, with the LED strip enclosed within it.

23-cv-1335-CAB-JLB                              9

1       And then the junction box also provides the housing as
2   well, because it includes the ground wires and connectors,
3   which are expressly recited in the patent specification as
4   being the part of complete fixture, as well as the LED --
5           THE COURT:  Right.  But the junction box is a
6   separate component of the complete fixture.  The junction box
7   is not tradable with the metal housing, so the fact that their
8   junction box may be made of metal does not meet the claim
9   limitation that the housing is made of metal.
10          ATTORNEY CUMMINS:  Your Honor, I know they argued
11  that in their motion for summary judgment and cited the *Becton*
12  case.
13      We cited the *Home Depot* case, which did indicate that
14  although there is kind of an assumption that, when you talk
15  about two separate things, they may be separate in one way or
16  the other, whether it's physical or through some other
17  description, but it is not necessarily the blanket rule for all
18  construction.
19      In the *Home Depot* case, I believe there was, like, a
20  cutting saw that was used in all the Home Depot stores, and
21  they separately claimed -- they claimed this whole system, but
22  they separately claimed the dust collector -- and I forget the
23  other piece; some other part of the cutting mechanism.
24      But Home Depot had argued that these would two separate
25  elements, but they were, as claimed -- because they were

Appx069

23-cv-1335-CAB-JLB                                    10

1    claimed separately.

2         But in view of the specification, the Court said that

3    their decision was not contrary to *Becton*, but in fact that

4    they did interpret -- they did find infringement because even

5    though the two parts were, kind of, part of the same part on

6    the accused product.  Even though they were claimed separately,

7    they still found infringement.

8         And in this --

9              THE COURT:  All right.  Go ahead.

10             ATTORNEY CUMMINS:  I'm sorry.  Okay.

11        In this particular case, the -- okay.  Just with respect

12   to the junction box and the metal housing, for example, in our

13   provisional application, you can see that the -- I believe we

14   attached it in our opposition as well -- there's a figure from

15   the provisional application where, kind of, the underside --

16   the junction box and the underside, the opposing side of the

17   entire apparatus is shown, that belongs to the housing, that is

18   to show the entire product.

19        Additionally, in the patent itself, they say that they cut

20   a hole in the ceiling to accommodate the metal housing.  I

21   believe that shows in the specification that defendant filed,

22   in document 34-5, at page 11, says, "Cut the hole in the

23   ceiling the appropriate size to accommodate the metal

24   housing."  That would be, of course, accommodating the junction

25   box and then the other portions that are just below the

Appx070

1  junction box.

2      Additionally, the complete fixture itself is expressly

3  defined as including the clips.  So it says the complete

4  fixture -- like in Claim 4, which shows prototypes for the

5  *Phillips* case -- the complete fixture, comprised of electrical

6  systems, clips, and accessories.  The "clips" refer to the

7  elements 104 and 102, which are the new construction clips and

8  the retrofit clips.

9      There's nothing enclosing those.  So to say that there's

10  some metal housing to embody the complete fixture or there's

11  some metal housing in the patent that actually encloses

12  everything, there's nothing there that's enclosing the clips.

13      I actually think that's maybe the strongest indication for

14  why there's nothing that is supposed to be enclosing every

15  single thing that the "complete fixture" is referring to.  Of

16  course, it encloses some of it, like in terms of -- in

17  defendant's accused product, they have the metal Frisbee, with

18  the LED strip kind of being enclosed in it.

19      The LED strip is expressly defined in plaintiff's patent

20  as being part of the complete fixture, so there is certainly

21  metal housing that is enclosing parts of the complete fixture,

22  but the complete fixture is expressly defined as including the

23  clips, and there's nothing in the patent that shows a metal

24  housing completely encasing or enclosing the clips.

25          THE COURT:  All right.  I just sort of feel like we

1   are talking around in circles here.  Given that the

2   specification doesn't show that the thing that's identified as

3   the metal housing encloses the clips, I don't even know how you

4   can reach that analysis to say therefore somehow their accused

5   product, that doesn't enclose the clips -- Counsel, I have got

6   to say, I just feel like you are struggling here to talk around

7   in circles to ignore the plain language of the claim.

8        Do you have anything to offer on the conclusion that the

9   doctrine of equivalents here cannot stretch to plastic, given

10  the fact that the specification itself talks about the housing

11  being metal and then makes reference that it could be plastic;

12  but rather than claiming it as just a housing (108), that

13  therefore would have been more encompassing, that include both

14  metal and plastic, the claim language specifically is limited

15  to metal, and therefore the Court has concluded, under the

16  disclosure-dedication doctrine, you are barred from including

17  or encompassing those aspects of the specification that

18  disclosed an alternative material but then didn't claim it, and

19  therefore it is dedicated to the public?

20       Do you have any response to that?

21           ATTORNEY CUMMINS:  Yes.

22       For -- the plastic housing is, of course, mentioned a few

23  times.  There's never a mention of plastic housing (108).

24  There's just "plastic housing."

25       In the figures, there's nothing -- there's no plastic

1   housing, no plastic housing element, you know, 224 or anything

2   like that.

3       There's just a few instances where they say, column 4 of

4   the patent, "May be manufactured by plastic injection molding

5   to obtain a plastic housing," or same thing in column 4,

6   "junction box attached to the metal housing (108) or the

7   plastic housing," period.

8       So there's no -- plaintiff's patent does not equate -- or

9   it is not expressly saying that (108) can be swapped with

10  plastic; you know, "Wherever there's metal in (108), that can

11  be plastic."  That's not supported by the specification.  And

12  we would not argue that plastic is equivalent to metal.

13      But to say that the specification somehow equates the

14  metal housing (108) to -- such that the metal in there could be

15  plastic, all throughout, I don't think that's supported by the

16  specification.

17          THE COURT:  All right.  Thank you.

18      Thank you, Counsel.

19      Defendants, is there anything you would like to put on the

20  record, since the Court is going to grant the motion and this

21  will potentially be up for appeal, if there's anything else you

22  want to add beyond your briefing?

23          ATTORNEY STIMPSON:  We have nothing to add.  Thank

24  you, Your Honor.

25          THE COURT:  All right.  Thank you.

```
 1        Thank you, Counsel for the plaintiff.

 2        The Court is granting the motion for summary judgment

 3   based on the Court's claim construction of the metal housing

 4   limitation and the represented facts here that I believe are

 5   undisputed in light of that construction that the defendants'

 6   products do not have a metal housing and that the doctrine of

 7   equivalents can't apply in this case.

 8        So judgment will be entered for the defendants.  The case

 9   will be dismissed.  And that's all.

10        And I am not going to reach the other issues in light of

11   the fact that I think this one construction is dispositive.

12        All right.  Thank you.

13             ATTORNEY STIMPSON:  Understood.

14             ATTORNEY CUMMINS:  Thank you, Your Honor.

15             ATTORNEY STIMPSON:  Your Honor, I just have one

16   question.  I am sorry.

17             THE COURT:  Yes.  Okay.

18             ATTORNEY STIMPSON:  If this case is going to be

19   dismissed, we do have one motion pending which we would like to

20   resolve, which is they disclosed our confidential information.

21   We have a motion for sanctions pending, and I know we can

22   get --

23             THE COURT:  That's fine.

24        The discovery motion regarding any kind of violation of

25   the protective order -- I will enter the judgment here.
```

1    I will indicate that that motion is still pending for

2  resolution and any other motions you might want to file before

3  we close the matter; but all your other discovery issues and

4  deadlines and trial deadlines are vacated in light of the

5  Court's decision there's not infringement.

6         ATTORNEY STIMPSON:   Thank you, Your Honor.

7         THE COURT:   All right.   Thank you.

8      (End of proceedings at 9:55 a.m.)

9                        -o0o-

10                C-E-R-T-I-F-I-C-A-T-I-O-N

11         I certify that the foregoing is a correct
   transcript from the record of proceedings in the above-entitled
12  matter.   Dated:   September 30, 2024.

13                      /s/  Chari Bowery

14                      _____
                        Chari Bowery, CSR No. 9944, RPR, CRR

15

16

17

18

19

20

21

22

23

24

25

3. **Motions to Continue Discovery Dispute Deadlines.** Counsel for the parties must meet and confer in person or by telephone prior to filing a motion to continue discovery dispute deadlines. Any such motion shall include the following:

   **a.** The date of the event giving rise to the discovery dispute. (*See* § V.E.)
   **b.** The current meet and confer deadline. (*See* § V.A.)
   **c.** The current deadline to contact the Court with the discovery dispute. (*See* § V.B.)
   **d.** A specific proposed date by which the parties will conclude the meet and confer process and, if still necessary, contact the Court with any remaining discovery disputes.

## V. DISCOVERY DISPUTES

A. **Meet and Confer Requirement.** The Court will not address discovery disputes until counsel have met and conferred to resolve the dispute. *See* CivLR 26.1.a. Counsel must proceed with due diligence in scheduling and conducting an appropriate meet and confer conference as soon as the dispute arises. Counsel shall commence the meet and confer process within **14 calendar days** of the event giving rise to the dispute (*see* § V.E).

The Court expects strict compliance with the meet and confer requirement, as it is the experience of the Court that the vast majority of disputes can be resolved by means of that process. Counsel must **thoroughly** meet and confer in person or by telephone and shall make every effort in good faith to resolve all disputes without the Court's intervention. Under no circumstances may the parties satisfy the meet and confer requirement by exchanging e-mails or other written correspondence.

B. **Contacting the Court with an Unresolved Discovery Dispute.** No later than **30 calendar days** after the date upon which the event giving rise to the discovery dispute occurred (*see* § V.E), if the parties have been unable to resolve their dispute through the meet and confer process, the parties shall:

   1. **Lodge** a **Joint Discovery Statement** with the Court. The Joint Discovery Statement shall be no more than **7 pages** excluding exhibits and include the following:
      **a.** The date of the event giving rise to the discovery dispute and the corresponding deadline to contact the Court with the dispute. (*See* §§ V.B, E.)
      **b.** The requests in dispute along with each party's position on each request.
      **c.** At least **3 mutually agreeable dates** within **10 calendar days** for an informal Discovery Conference with the Court.
      **d.** Attached exhibits of **only the relevant** requests and responses at issue (including any material definitions and general objections). All requests and responses not at issue should be redacted or removed. Counsel should not attach copies of any meet and confer correspondence.

After reviewing the Joint Discovery Statement, the Court may set a telephonic, videoconferencing, or in-person Discovery Conference or may issue a briefing schedule.

C. **Discovery Motions.** A motion seeking to resolve a discovery dispute requires advance permission from the Court. (*See* § V.B.) Unless the Court directs otherwise, a discovery motion and any opposition thereto shall be no more than **10 pages** each, exclusive of exhibits. Reply briefs will not be permitted unless requested or authorized by the Court. Requested or authorized reply briefs shall be no more than **5 pages**.

   1. **Motion Contents.** The motion shall include the following:

      a. A specific reference to each discovery request and response at issue.
      b. A statement as to why the discovery is needed, including the legal authority to support the position.
      c. A declaration of compliance with the meet and confer requirements of CivLR 26.1. Counsel should **not** attach copies of any meet and confer correspondence to the declaration or motion.
      d. Attached exhibits of the relevant requests and responses at issue (including any material definitions and general objections).

   2. **Following the Filing of the Motion.** After reviewing the parties' briefs, the Court may set a telephonic or in-person hearing or may issue an order without oral argument. *See* CivLR 7.1.d.1.

D. **Disputes Arising During Depositions.** If a dispute arises during a deposition regarding an issue of privilege, enforcement of a court-ordered limitation on evidence, or pursuant to Fed. R. Civ. P. 30(d), counsel may leave a joint voicemail message with Judge Burkhardt's Chambers at (619) 557-6624 to seek an immediate ruling on the dispute. If Judge Burkhardt is available, she will either rule on the dispute or give counsel further instructions regarding how to proceed. If Judge Burkhardt is unavailable, counsel shall mark the deposition at the point of the dispute and continue with the deposition. Thereafter, counsel shall meet and confer regarding all disputed issues pursuant to the requirements of CivLR 26.1.a within 14 calendar days of the deposition (*see* § V.A). If counsel have not resolved their disputes through the meet and confer process, they shall proceed as provided in § V.B.

E. **Calculating When the Event Giving Rise to the Dispute Occurs.** For written discovery, the event giving rise to the discovery dispute is the date of the service of the answer/response or, in the absence of a response, the date upon which a timely answer/response was due. For oral discovery, the event giving rise to the discovery dispute is the completion of the deposition session during which the dispute arose.

## VI.   STIPULATED PROTECTIVE ORDERS

### A.   Joint Motion Required.

All stipulated protective orders submitted for the Court's approval **must be filed as a joint motion** pursuant to CivLR 7.2. The joint motion must contain the language of the stipulated protective order sought, including any exhibits, and the parties' electronic signatures. A signature line for

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., | Case No.:  3:23-cv-01335-CAB-JLB |
| Plaintiff, | **ORDER SETTING HEARING** |
| v. | |
| LOWE'S HOME CENTERS, LLC, | |
| Defendant. | |

The parties have a claim construction hearing scheduled for Sept. 26, 2024.  The Court hereby **VACATES** that hearing.  Instead, the Court **ORDERS** that the parties be prepared to argue the pending motion for summary judgment on that same hearing date/time.  [ECF No. 34.]  The parties should focus on the infringement allegation related to the "metal housing (108)" limitation of Claim 1 of the '118 patent.

///

///

///

Appx078

The Court prefers lead counsel to attend the hearing in person, but grants Plaintiff's motion [ECF No. 56] to appear by **teleconference** should the need for Plaintiff's remote appearance arise.  The Court will set up a teleconference line in advance of the hearing date.

It is **SO ORDERED**.

Dated:  September 10, 2024

Hon. Cathy Ann Bencivengo
United States District Judge

1 | Patrick Cummins
2 | CA Bar No.: 294400
  | Patrick@CumminsIP.com
3 | Cummins IP PLLC
4 | 3426 PEPPERHILL RD
5 | LEXINGTON, KY 40502
  | TEL: 502.445.9880
6 | **Counsel for Plaintiff,**
7 | **DS Advanced Enterprises, Ltd.**

8

9

## U.S. DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| DS ADVANCED ENTERPRISES, LTD., a corporation, | Case No.: 3:23-cv-01335-CAB-JLB |
|---|---|
| Plaintiff, | **Notice of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b) Regarding Judgement** |
| v. LOWE'S HOME CENTERS, LLC, a corporation, | Date:    December 2, 2024 Judge:   Hon. Cathy Ann Bencivengo |
| Defendant. | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

Appx080

1 **TO THE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

2    PLEASE TAKE NOTICE that on December 2, 2024, or as soon as hereafter as the
3 matter may be heard in the above-identified court, located at 221 W Broadway, San
4 Diego, California, 92101, Plaintiff DS Advanced Enterprises, Ltd. hereby moves this
5 Honorable Court to amend and/or correct its Judgement (Doc. No. 67) regarding
6 Defendant's Motion for Summary Judgement (Doc. No. 34).

7    The grounds supporting this Motion are Fed. R. Civ. P. §§ 52(b) and 59(e), which
8 allow this Court to amend and/or reconsider their judgements when there is "some
9 blatant injustice, or an obvious error". *Karoun Dairies, Inc. v. Karoun Dairies, Inc.*,
10 Civil No. 08-1521-AJB (WVG), 5 (S.D. Cal. Oct. 24, 2014) (internal citations omitted).

11    This Motion is based on this Notice, the accompanying Memorandum of Points and
12 Authorities in Support of this Motion, the accompanying Declaration, all pleadings and
13 papers on file herein and under seal, and upon such evidence and arguments as the Court
14 may allow at the time of hearing.

15

16 Dated: October 28, 2024

17 Cummins Intellectual Property (IP) Law PLLC

18 */s/ Patrick Cummins*,

19 Patrick Cummins, CA Bar No. 294400

20 Patrick@CumminsIP.com

21 3426 Pepperhill Rd.

22 Lexington, KY 40502

23 Telephone: (502) 445-9880

24 *Counsel for Plaintiff,*

25 *DS Advanced Enterprises, Ltd.*

26

27

28




CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

1
Notice of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b) Regarding Judgement
Case No.: 3:23-cv-01335-CAB-JLB

1  PATRICK CUMMINS (SBN: 294400)
2  Patrick@CumminsIP.com
   Cummins IP PLLC
3  3426 Pepperhill Rd.
4  Lexington, KY 40502
5  Telephone: 502.445.9880
   *Counsel for Plaintiff,*
6    *DS Advanced Enterprises, Ltd.*
7
8
9              **UNITED STATES DISTRICT COURT**
10            **SOUTHERN DISTRICT OF CALIFORNIA**
11
12  DS ADVANCED ENTERPRISES, LTD.,        Case No.: 3:23-cv-01335-CAB-JLB
       a corporation,
13                                        **Plaintiff's Motion Pursuant to Fed. R.**
14          *Plaintiff,*                  **Civ. P. § 59(e) and §52(b) Regarding**
                                          **Judgement**
15  v.
    LOWE'S HOME CENTERS, LLC,             Date:    December 2, 2024
16     a corporation,                     Judge:   Hon. Cathy Ann Bencivengo
17          *Defendant.*
18                                        PER CHAMBER RULES, NO ORAL
19                                        ARGUMENT UNLESS SEPARATELY
                                          ORDERED BY THE COURT
20
21
22
23
24
25
26
27
28

*Honorable Judge Bencivengo*                    *Case No.: 3:23-cv-01335-CAB-JLB*

1

## *Table of Contents*

2
I. Informal Opening Statement ............................................................................. 1

3
II. Formal Introduction to the Requested Relief ................................................... 2

4
III. Legal Standards for Rule 52(b) and Rule 59(e) .............................................. 2

5
IV. Defendant's Design-Around Does Not Obviate

6
Infringement and Should Not be Rewarded

7
with the Current Judgement.................................................................................. 4

8
V. Altering the Judgement per Rule 52(b) is

9
Appropriate Because the Court Made Factual

10
Findings to Grant Defendant's Summary Judgement Motion ............................ 10

11
VI. This Court Committed a Clear Error of

12
Law by Construing the Claimed "Clips" to

13
be Enclosed by the "Metal Housing" ................................................................... 12

14
VII. This Court Committed Clear Error of

15
Law and Fact by Not Viewing the Junction Box

16
as Part of the Housing per Dependent Claim 5 ................................................... 15

17
VIII. Conclusion Regarding Relief Sought by Plaintiff......................................... 17

18
IX. Additional Note Regarding Clear Error being

19
Invited by Defendant .......................................................................................... 18

20

21

22

23

24

25

26

27

28

<em><u>Table of Authorities</u></em>

<u>Cases</u>

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.,*

    761 F.3d 1329 (Fed. Cir. 2014) ............................................................... 12

*Anderson v. Liberty Lobby, Inc.,*

    477 U.S. 242 (1986) ................................................................................... 8

*Backlund v. Barnhart,*

    778 F.2d 1386 (9th Cir. 1985) ................................................................... 3

*Bot M8 LLC v. Sony Corp.,*

    4 F.4th 1342 (Fed. Cir. 2021) ................................................................. 20

*CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG,*

    224 F.3d 1308 (Fed. Cir. 2000) ............................................................... 15

*DS Advanced v. Cooper et al.,*

    Case 5:23-cv-02603, 43 (C.D. Cal. July 22, 2024) ................................... 1

*In re Benno,*

    768 F.2d 1340, 226 USPQ 683 (Fed. Cir. 1985) ..................................... 17

*Karoun Dairies, Inc. v. Karoun Dairies, Inc.,*

    Civil No. 08-1521-AJB (WVG), 5 (S.D. Cal. Oct. 24, 2014) .................. 3

*Leading Mfg. Sols., LP v. Hitco, Ltd.,*

    Case No.: 15cv1852-LAB (BGS), (S.D. Cal. Aug. 9, 2019) .................... 2

*Living Designs, Inc. v. E.I. Dupont De Nemours Co.,*

    431 F.3d 353 (9th Cir. 2005) ................................................................... 20

*Phillips v. AWH Corp.,*

    415 F.3d 1303 (Fed. Cir. 2005) ............................................................... 13

*Powell v. Home Depot U.S.A., Inc.,*

    663 F.3d 1221 (Fed. Cir. 2012) ......................................................... 16, 17

*Premier Networks, Inc. v. Lucent Technology Inc.,*

No. 99 C 3787, (N.D. Ill. May. 29, 2003) ............................................................. 13

*Roton Barrier, Inc. v. Stanley Works,*

    79 F.3d 1112 (Fed. Cir. 1996) ...................................................................... 9

*Smith v. Clark Cnty. Sch. Dist.,*

    727 F.3d 950 (9th Cir. 2013) ...................................................................... 3

*Trimed, Inc. v. Stryker Corp.,*

    608 F.3d 1333 (Fed. Cir. 2010) .................................................................. 20

## Statutes

35 U.S.C. § 112 ....................................................................................................... 13

## Rules

37 C.F.R. § 1.29 ......................................................................................................... 1

Fed. R. Civ. P. § 52(a) ............................................................................................ 11

Fed. R. Civ. P. § 59(e) ................................................................................... 2, 15, 19

Fed. R. Civ. P. §52(b) .............................................................................. 2, 15, 18, 19

Patent L.R. 3.1 ................................................................................................... 19, 20

## Other Authorities

112 Cong. Rec. H4369 (daily ed. June 22, 2011) ........................................... 1, 10

MPEP 2163 § I(B) .................................................................................................. 17

1    Plaintiff's Counsel sincerely provides this informal introduction to convince this
2    Court to review the following pages with renewed impartiality and patience.

3

4                              *I. Informal Opening Statement*

5

6    The Patent asserted in this Case is US Patent 11,054,118 and names David Sherman
7    as the inventor. This Patent was Mr. Sherman's first patent *ever*. See Cummins Decl. at ¶
8    6. Mr. Sherman was able to file his patent application as a micro-entity since his gross
9    income is below a threshold value and he had not been named on more than four previously
10   filed non-provisional applications. See *Id*. and 37 C.F.R. § 1.29 (defining micro entity
11   status). This relatively new feature of the US Patent system was established by the America
12   Invents Act of 2012. 112 Cong. Rec. H4369 (daily ed. June 22, 2011) (Rep. Lamar Smith
13   stating: "This bill helps small businesses and inventors by reducing fees for both."). Upon
14   issuance, Mr. Sherman assigned his first patent to his small Canadian business, DS
15   Advanced Enterprises, Ltd., the Plaintiff in this Case.

16   Starting diligently in 2018, and during the time of his Patent's pendency, Mr.
17   Sherman approached various US retailers in furtherance of having his invention available
18   to consumers. See Doc. No. 70 at pgs. 6-7, and see also Doc. No. 49 at pg. 6. See also,
19   Doc. No. 71-3 ("Sherman Decl.") at ¶ 23. Home Depot admitted to receiving multiple
20   presentations from Mr. Sherman regarding his invention. See Exhibit B (Defendant Home
21   Depot's Answer filed July 22, 2024: "Home Depot admits that Mr. Sherman gave
22   presentations to Home Depot regarding Plaintiff's lighting products on or around April 2,
23   2019 and August 27, 2019"). See also, *DS Advanced v. Cooper et al*., Case 5:23-cv-02603,
24   43 at pg. 5, lines 15-16 (C.D. Cal. July 22, 2024).

25   Plaintiff's Counsel makes this informal but sincere introduction as context for this
26   Motion, which may only be granted if "manifest injustice" or "clear error" would remain

27

28

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 1 —    Case No.: 3:23-cv-01335-CAB-JLB*

Appx086

1 but for this Court's Judgement being amended.[1]  Plaintiff respectfully moves this Court to
2 slightly throttle their rocket docket at this event horizon, and consider this post-judgement
3 Motion with renewed impartiality and patience.

4
5                     ***II.    Formal Introduction to the Requested Relief***

6       Plaintiff respectfully moves this Court per Fed. R. Civ. P. § 52(b) ("Rule 52(b)") to
7 amend and/or make additional findings regarding this Court's Judgement, and/or alter their
8 Judgement per Fed. R. Civ. P. § 59(e) ("Rule 59(e)") by correcting legal errors.

9       This Motion presents the grounds for granting specific relief to prevent manifest
10 injustice and rectify the clear errors in the Court's decision granting the Defendant's
11 Motion for Summary Judgment of Non-Infringement ("Defendant's Motion"). Initially,
12 this Motion will illustrate how the "David" vs. Goliath nature of this case makes it
13 particularly prone to manifest injustice, especially in the realm of patent infringement in
14 the United States. Subsequently, this Motion will demonstrate how the Defendant's Motion
15 invited the errors apparent in this Court' ruling.  Specifically, after the Court construed the
16 term "metal housing", the Court appeared to rely solely on the *Defendant's* interpretation
17 of the Plaintiff's draft infringement theory from the *Complaint*, rather than considering the
18 Plaintiff's own Patent L.R. 3.1 Infringement Contentions, which were submitted as part of
19 Plaintiff's Opposition Brief and were not included in the Defendant's Motion.

20
21                     ***III.    Legal Standards for Rule 52(b) and Rule 59(e)***

22       "A motion under Rule 52 or 59 is intended to correct manifest errors, or to
23 consider newly discovered evidence or new law." *Leading Mfg. Sols., LP v. Hitco, Ltd.*,
24 Case No.: 15cv1852-LAB (BGS), (S.D. Cal. Aug. 9, 2019).  This District has indicated
25 that a motion under Rule 59(e) "shall be granted if at least one of four circumstances is
26 shown. A court (1) is presented with newly discovered evidence or (2) has committed

27 _____
28 [1] "Judgement" will be used herein to refer to Doc. No. 67 and any subsequent judgement
that is based on Doc. No. 67.
           *Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
                                         *Honorable Judge Burkhardt*
                              *— 2 —    Case No.: 3:23-cv-01335-CAB-JLB*

1    clear error. Additionally, (3) if the initial decision was manifestly unjust, reconsideration

2    is merited." *Karoun Dairies, Inc. v. Karoun Dairies, Inc.*, Civil No. 08-1521-AJB

3    (WVG), 5 (S.D. Cal. Oct. 24, 2014) (internal citations omitted). In particular "[r]ule

4    59(e) requires something new and decisive, some blatant injustice, or an obvious error,

5    not substantively identical assertions repeated and repackaged." *Id*. at 5-6

6    citing *Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985). "Although the Court

7    recognizes that it has discretion to reconsider its own orders at any time before final

8    judgment is entered, *see* Fed. R. Civ. P. 54(b), reconsideration on a party's motion is

9    appropriate only in limited circumstances such as where the Court committed clear

10    error." *Leading Mfg. Sols., LP* at 2 (S.D. Cal. Aug. 9, 2019) citing *Smith v. Clark*

11    *Cnty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013).

12

13    **IV.**    ***Defendant's Design-Around Does Not Obviate Infringement and Should Not Be***

14              ***Rewarded with the Current Judgement***

15       In furtherance of providing additional context for Plaintiff's Patent Claims and

16    Plaintiff's Infringement Contentions, Plaintiff provides the following images of Plaintiff's

17    Covered Products, which were referenced but not included in Plaintiff's Infringement

18    Contentions. See Doc. No. 45-1 at pg. 73 (listing item numbers from the "Foxsun 2021

19    Catalog", produced to Defendants as PLNTF100005-PLNTF100017). Plaintiff entered

20    into a licensing agreement with Foxsun Lighting Co. Ltd ("Foxsun") to sell Plaintiff's

21    Covered Products. Doc. No. 71-1 at pg. 112 (Agreement between Plaintiff and Foxsun

22    executed on February 5th of 2020[2]). See also, Mr. Sherman's declaration at Doc. No. 71-3

23    at pg. 4, ¶ 22.

24       After executing this Agreement, Plaintiff's Covered Products appeared in the "2021

25    Foxsun Catalog" and were labeled "Patented". *Id*. at ¶ 24. See also, Doc. No. 71-1 at pg.

26    109 ("3 in 1 Patented" and images of one of the Covered Products). See also, Exhibit C,

27

28    [2] The date of execution was 2020, despite the "2021" appearing at the top of the
agreement.

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 3 —    *Case No.: 3:23-cv-01335-CAB-JLB*

Appx088

1 attached ("2021 Foxsun Catalog" as produced).   On April 13, 2021, Plaintiff's contact at
2 Foxsun indicated that Lowe's manufacturer, Zhejiang Yankon Mega, purchased Plaintiff's
3 Covered Products.  See Doc. No. 71-1 at pg. 23 (modified) ("April 23, 13, 2021…andy
4 <manager@foxsun.net> wrote:…brother[,] I tell you another two good news…lowes will
5 place    smart    downlights    order    200000pcs…andy";    and    "From:    'David
6 Sherman'….Fantastic news!").

7 Also on April 13, 2021, Andy sent Mr. Sherman the corresponding Lowe's Purchase
8 Orders, which included an Excel version of a purchase order named "PO149907823-1"
9 ("Lowe's POs").  *Id.*  A screenshot of the Lowe's PO is on the record. *Id.* at pg. 24. See
10 also, Sherman Decl., Doc. No. 71-3 at pg. 3, ¶¶ 11-25. Images from the Lowe's PO show
11 Plaintiff's Covered Products. *Id.*  Defendant refused to cooperate in discovery when
12 Plaintiff sought information on the Lowe's POs, so Plaintiff subpoenaed Lowe's Global
13 Sourcing ("LG Sourcing") of North Carolina for additional information.  LG Sourcing
14 objected, despite Defendant having already produced POs for the Accused Products
15 without issue. See entities  identified in the confidential Accused Product POs filed under
16 seal by Defendant as Exh. R with Doc. No. 76 (LHC_00180), and confidential sales
17 accounting for the Accused Products filed under seal by Defendants as Exh. O with Doc.
18 No. 76 (LHC_000841). See LG Sourcing subpoena objection, attached as Exhibit A, and
Insert text here
19 Cummins Decl. at ¶ 5.

20 What may or may not have been known to Lowe's at the time of the Lowe'sPOs was
21 that Mr. Sherman had presented his Covered Products to Lowe's more than a year earlier,
22 on January 15, 2020. See Doc. No. 17-1 at pgs. 39-40 (presentation to "Elaine Pellerin"
23 and "Philipe Ciot"), and see Sherman Decl., Doc. No. 71-3 at pg. 3, ¶ 23.  Confidential
24 employment documents for participants to the presentation were filed under seal by
25 Defendant as Exhs. S and T, with Doc. No. 76 (LHC_001802 to 1804).  Plaintiff speculates
26 that Defendant ultimately canceled the April 23, 2021 Lowe's POs because Plaintiff's
27 Covered Products were labeled "Patented".   Lowe's subsequently solicited Zhejiang
28 Yankon for new products, and arguably unbeknownst to Lowe's, Yankon presented

1  *Plaintiff's* Covered Products, which were ultimately accepted by Lowe's. See confidential
2  Yankon communications at Exhs. L, M, and N, filed under seal by Defendant for Doc. No.
3  76. Defendant's under seal Exh. L corroborates this contention, as it shows images of the
4  same products from the Lowe's PO Plaintiff received from Foxsun. This makes perfect
5  sense from Plaintiff's perspective because Zhejian Yankon had previously purchased
6  samples of Plaintiff's Covered Products from Foxsun. See Exh. L, under seal, compared
7  to Doc. No. 71-1 at pg. 22. See also, Sherman Decl., Doc. No. 71-3 at pg. 3, ¶ 13.

8      Lowe's under seal documents provide important context for this Motion, and were
9  not available to Plaintiff until well-after Defendant filed their Answer. Now, with this



Plaintiff's Covered Products from Foxsun Catalog

Patented 3 in 1 LED Narrow Frame Downlight

Plaintiff's Metal Housing

Trim Piece. Visible at ceiling after installation.

The Court construes the "metal housing (108)" limitation of the '118 Patent based on the plain language of the claim and in accordance with the descriptions in the specification and its figures as a "casing or enclosure made of a scientifically recognized metal substance."

Lowe's Accused Products

Unnecessary Wafer Piece that Dr. Bretschneider refers to as the housing

1  context, Plaintiff directs this Court to the above diagram comparing (1) this Court's claim
2  construction to (2) Plaintiff's Covered Products and (3) to Lowe's products.

3       The above diagram compares this Court's claim constructions to Plaintiff's Covered
4  Product shown in the 2021 Foxsun Catalog and also to Lowe's Accused Products. Plaintiff
5  respectfully asks this Court to take a moment to consider the above diagram in view of the
6  claim construction set forth in their Judgement. This Court's discussion of the "metal
7  housing" claim element are excerpted in the diagram on the following page for further
8  comparison to Lowe's Accused Products and Plaintiff's Covered Product.

9       At the time of filing Plaintiff's Complaint, Plaintiff's Counsel did not have the
10  physical samples of Plaintiff's Covered Products. The physical samples of Plaintiff's
11  Covered Products were received by Plaintiff's Counsel on March 29, 2024, just after
12  Plaintiff served their infringement contentions on March 20, 2024. See Cummins Decl. at
13  ¶ 3. References to Plaintiff's Covered Products were included in their Patent L.R. 3.1
14  Infringement Contentions, without images of the physical samples. Doc. No. 45-1 at pg.
15  73, lines 11-24 (excerpted below). Considering Defendant did not even cite to Plaintiff's
16  Patent L.R. 3.1 Infringement Contentions in their Summary Judgement Motion, Plaintiff
17  speculates that Defendant would still not have addressed them even if the images of the
18  physical samples were included. See § VI, *infra*.

19

20       The diagram on the following page shows images of the above-identified Covered
21  Product, as received by Plaintiff's Counsel on March 29, 2024 (product on the right). The
22  images were captured in preparation for this Motion. See Cummins Decl. at ¶¶ 3-4. The
23  item number shown on the Covered Product's junction box corresponds to item shown in
24  the images above. This item number is also listed in the 2021 Foxsun Catalog, as shown
25  on the following pages (annotated). See also, Exhibit C, attached.

26
27
28

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 6 —    Case No.: 3:23-cv-01335-CAB-JLB*

Retrofit clips (102), another separate component, are attached to the metal housing (108) to provide a friction fit inside a recessed lighting fixture housing to secure the complete fixture (112) inside. [*Id.*, Figs. 7 and 8B.]



Plaintiff's Covered Product

Lowe's Accused Product

of the complete fixture (112), among numerous individually identified components. The specification describes the metal housing (108) as the base of the complete fixture (112). [Patent No. '118, Ex. 34-5, at Col. 4:25-26.] Different terms are presumed to mean different things. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

The above diagram is also provided as context for this Motion, and also to show how the Court's construction of the "metal housing" reads on Plaintiff's Covered Products *and* on Lowe's Accused Products (*e.g.*, the "metal housing" is the "base on the complete fixture (112)"…[C]lips…are attached to the metal housing."). The diagram above is further provided to show how Plaintiff's Covered Products and Lowe's Accused Products are nearly identical when the extraneous white wafer piece is removed from Lowe's Accused Products. Plaintiff contends that Lowe's less-than-innovative attempt to design around Plaintiff's Covered Products still results in infringement of Plaintiff's Patent, at least for keeping (and attempting to hide) the same "metal housing" from Plaintiff's Covered Products.

1    Plaintiff respectfully asks this Court to reconsider whether a jury could find in favor
2  of Plaintiff regarding infringement, and/or whether these facts viewed in favor of Plaintiff
3  constitute a genuine issue that should have been decided by a jury rather than this Court at
4  summary judgement. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("If
5  the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed
6  verdict based on the lack of proof of a material fact, the judge must ask himself not whether
7  he thinks the evidence unmistakably favors one side or the other but whether a fair-minded
8  jury could return a verdict for the plaintiff on the evidence presented."). If this Court agrees
9  that they committed a clear error by determining this genuine dispute of material fact
10 regarding infringement of the "metal housing" (as construed by this Court), Plaintiff
11 respectfully asks this Court to amend their Judgement to cure this error.

12    As further context to this Motion, Plaintiff provides the following additional diagram
13 that shows additional views of Plaintiff's Covered Products and the white wafer piece
14 delivered to this Court with Plaintiff's Opposition Brief. Cummins Decl. at ¶ 4.

15



Trim Piece that is visible at consumer's ceiling after installation.

Design Around Wafer Piece that Dr. Bretschneider refers to as the housing, as provided to Court with Opposition Brief.

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 8 —    *Case No.: 3:23-cv-01335-CAB-JLB*

1
2
3

| | Excerpt from Plaintiff's Patent L.R. 3.1 Infringement Contentions |
|---|---|
| 18 | **4. Foxsun Light ZF-DL6-12W-DIM-CC-*L#** |



Patented 3 in 1 LED Narrow Frame Downlight

14      Each of Plaintiff's Covered Products are shipped from Foxsun with the "Patented"

15  label on the junction box and the product number, as shown above. For the covered product

16  shown in the above diagrams, the product number corresponds to the product number

17  shown in Plaintiff's Patent L.R. 3.1 Infringement Contentions, and in the 2021 Foxsun

18  Catalog, each excerpted and annotated above. Doc. No. 45-1 at pg. 73, line 18.

19      Plaintiff provides the above diagrams to illuminate some additional context, which

20  this Court did not have before Defendant's Motion, and which may evidence glaring

21  injustice apparent in this Court's Judgement. Plaintiff also provides this because evidence

22  of copying can be instructive for determining infringement. *Roton Barrier, Inc. v. Stanley*

23  *Works*, 79 F.3d 1112, 1126 (Fed. Cir. 1996) ("[E]vidence of copying or designing around,

24  may also inform the test for infringement under the doctrine."). See also, date and images

25  from of Defendant's confidential internal presentation at Exhs. J, K, and H, filed under seal

26  with Doc. No. 76, compared to the above 2021 Foxsun Catalog item (also attached as

27  Exhibit C), and compared to Lowe's PO received by Plaintiff from Foxsun (Doc. No. 71-

28  1 at pg. 22) (excerpted below).

1    Other evidence of copying includes:

2    (1) Plaintiff's contractor, Matt Varnell[3], presenting his invention to

3        Brandon Abbott of Lowe's between December 2019 and January

4        2020. See Defendant's Exhs. B, C, P, and Q, filed under seal; and

5        see Sherman Decl. at Doc. No. 71-3 at pg. 2, ¶¶ 9-10.



6    (2) Plaintiff's Covered Products appearing in a confidential Lowe's

7        presentation.  See Defendant's Exhs. E, F (last page), J, and K,

8        filed under seal with Doc. No. 76.

9    (3) Plaintiff's Covered Products appearing in confidential Yankon presentation around

10       October 2021.  See Defendant's Exh. H, under seal with Doc. No. 76.

11   (4)  Plaintiff's Covered Products being assigned the product numbers that are being

12       accused in this case (Defendant's Exhs. L and M, under seal) to be manufactured by

13       Zhejiang Yankon, who received samples of Plaintiff's Covered Products before

14       interacting with Lowe's. See Sherman Decl. at Doc. No. 71-3 at pg. 3, ¶ 16.

15   (5) Other manufactures receiving Plaintiff's Covered Products. See *Id*. at ¶¶ 14-21.

16

17       For at least these reasons, Plaintiff contends that manifest injustice (in the context of

18   patent infringement) can be cured by amending this Court's Judgement.   Plaintiff

19   respectfully asks this Court to indicate the Accused Products include the "metal housing"

20   as construed by this Court, or to indicate that Defendant's Motion for Summary Judgement

21   is denied.  Plaintiff contends that other clear errors are apparent in this Court's Judgement,

22   and those errors are discussed below.

23

24

25

26

27

28   [3] Matt Varnell was served a non-party subpoena for documents but never responded or
     objected.  See Cummins Decl. at ¶ 7.

1  *V.    Altering the Judgement per Rule 52(b) is Appropriate Because the Court Made*
2  *Factual Findings to Grant Defendant's Summary Judgement Motion*

3  Plaintiff respectfully requests that this Court amend its judgement to make additional
4  findings of fact. Although Fed. R. Civ. P. § 52(a) does not require this Court to "state
5  findings or conclusions when ruling on a motion under Rule 12 or 56", amending the
6  Judgement may promote judicial efficiency for the pending appeal (Doc. No. 72). The
7  Judgement should be amended to provide this Court's rationale for finding no genuine
8  issue of material fact where Plaintiff expressly pointed to a portion of the Accused Products
9  that clearly house a strip of LEDs, which is a part that is *expressly* recited in Plaintiff's
10 Patent as being part of the "complete fixture". See Doc. No. 45-1 at pg. 117, compared to
11 the image at Doc. No. 34-4 at pg. 4 at ¶ 18. In other words, the Parties point to *two different*
12 features of the Accused Products as the "housing" thereby creating a genuine dispute.
13 Defendant points to the extraneous "white wafer" piece, and Plaintiff points to their metal
14 housing that houses the strip of LEDs and dictates the shape of the fixture. For ease of
15 reference, the image below is an excerpt from Plaintiff's Patent L.R. 3.1 Infringement
16 Contentions Brief, as attached to Plaintiff's Opposition to Defendant's Motion for



of the junction box (116)
to the metal housing (108),

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 11 —    Case No.: 3:23-cv-01335-CAB-JLB*

1  Summary Judgement. Doc. No. 45-1 at pg. 117.

2      As this Court's Judgement acknowledges, "[t]he complete fixtures includes a
3  plurality of electrical systems, clips, accessories", and Plaintiff's Patent expressly recites
4  the "electrical systems include but [are] not limited to the LED driver, an LED PCB
5  assembly, and an *LED strip*." See Doc. No. 34-5 at pg. 10, col. 4:4-6 (emphasis added);
6  and Doc. No. 67 at pg. 5, lines 21-23. At summary judgment, the Court was required to
7  view the facts in light *most favorable to the non-moving party*, and Plaintiff cannot
8  understand how this requirement was satisfied for this particular portion of the Judgement.
9  *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329, 1342 (Fed. Cir. 2014)
10  (modified) ("The district court erred in granting summary judgment to [defendant] because
11  it…failed to make all reasonable inferences supported by the record in favor of [plaintiff]
12  and, instead, resolved disputed factual issues in [defendant's] favor.").

13      In summary, to the extent that the Court improperly made findings of fact at
14  summary judgment, Plaintiff respectfully requests that the Judgement be amended to
15  reflect those findings. Otherwise, should the Court agree that clear errors of fact and/or
16  law were made in their Judgement, Plaintiff respectfully requests that this Court amend
17  their judgement to correct those errors.

18

19  ## VI. This Court Committed a Clear Error of Law by Construing the Claimed "Clips" to
20  ## Be Enclosed by the "Metal Housing"

21      Plaintiff respectfully asserts that this Court committed a clear error of law to the
22  extent that the Court construed Plaintiff's Patent's Claims 1-5 so that the "clips" of the
23  "complete fixture" are *enclosed* by the "metal housing". Put simply, a construction that
24  indicates the "clips" are enclosed by *any* part of the claimed apparatus is completely
25  erroneous in view of the Claims themselves and all other intrinsic evidence.

26      As correctly noted by the Court, the "complete fixture" is expressly recited as
27  including the "plurality of electrical systems, *clips*, and accessories". Doc. No. 67 at pg.
28  5, lines 22-23 (emphasis added). Dependent Claim 4 even expressly claims the complete

1  fixture in this way. Doc. No. 34-5 at pg. 11, Claim 4. *Phillips v. AWH Corp.*, 415 F.3d
2  1303, 1314 (Fed. Cir. 2005) ("Because claim terms are normally used consistently
3  throughout the patent, the usage of a term in one claim can often illuminate the meaning of
4  the same term in other claims").

5      However, the Judgement erroneously indicates that the claimed apparatus should be
6  construed to have a "metal housing (108)… [that] contains, i.e., *encases*, the complete
7  fixture." Doc. No. 67 at pg. 6, lines 1-2 (modified). The Judgement indicates again that
8  the metal housing is "a component that *encases* (*houses*) the parts of the complete fixture"
9  (*Id*. at lines 7-9) (emphasis added); and again that "the housing is disclosed to embody, i.e.,
10  encase, the complete fixture and must be formed of metal" (*Id*. at pg. 7, lines 1-2). And
11  yet—a cursory review of the Figures in Plaintiff's Patent reveals that the clips (102 and
12  104) are *never* shown as enclosed by *anything* that is part of the claimed apparatus, much
13  less the "metal housing 108". The Figures from Plaintiff's Patent are reproduced on the
14  following page for quick confirmation of Plaintiff's position on this issue. See also, Doc.
15  No. 34-5 at pg. 4-8.

16      A new argument to consider on this front is that the Court's construction gives
17  Plaintiff something *different* than what was set forth in Plaintiff's Patent. This result is not
18  consistent with purpose of claim construction. *Premier Networks, Inc. v. Lucent*
19  *Technology Inc.*, No. 99 C 3787, (N.D. Ill. May. 29, 2003) ("Courts cannot narrow or
20  broaden the scope of a claim to give the patentee something different than what he has set
21  forth."). Plaintiff's Counsel respectfully asks this Court to consider its claim construction
22  as a hypothetical claim amendment submitted during prosecution. On that front, had Mr.
23  Sherman attempted to amend the claims to read "the metal housing encloses the clips", any
24  competent Examiner would have rejected that amendment per 35 U.S.C. § 112.

25
26
27
28



**U.S. Patent** · Jul. 6, 2021 · Sheet 1 of 5 · US 11,054,118 B2

FIG. 1

FIG. 2a



**U.S. Patent** · Jul. 6, 2021 · Sheet 2 of 5 · US 11,054,118 B2

FIG. 2b

FIG. 3



**U.S. Patent** · Jul. 6, 2021 · Sheet 3 of 5 · US 11,054,118 B2

FIG. 4

FIG. 5



**U.S. Patent** · Jul. 6, 2021 · Sheet 4 of 5 · US 11,054,118 B2

FIG. 6

FIG. 7

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*

1    It is important to note that Plaintiff *agrees* with this Court's construction to the extent
2  that the "metal housing" should be construed to "house" parts of the complete fixture. After
3  all, Plaintiff's Covered Products each include a metal housing that houses the LEDs and
4  dictates the shape of the complete fixture. In fact, a simple modification of Plaintiff's
5  proposed construction arrives at this Court's construction: "a metal housing ~~structure~~ (108)
6  that is a constituent part of ~~includes~~ a complete fixture (112) ~~as a constituent part~~". Doc.
7  No. 42-2 at pg. 3 (modified for comparing with this Court's construction of the same
8  phrase). See also, Judgment at pg. 6, lines 15-16 ("the metal housing (108) is a component
9  of the complete fixture (112), among numerous individually identified components.").
10  Although Plaintiff's construction briefs were admittedly a bit long-winded, part of their
11  purpose was to avoid the term "embody" being construed to mean "house", since the result
12  would be an erroneous claim scope in which the "clips" are enclosed by the "metal
13  housing".

14    As a new argument on this issue, Plaintiff asserts that the term "housing" and
15  "embody" are different terms that are presumed to mean different things, unless the
16  intrinsic evidence indicates otherwise. See Judgment, Doc. No. 67 at pg. 6, lines 18-20
17  citing *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317
18  (Fed. Cir. 2000) ("Different terms are presumed to mean different things."). Despite
19  quoting this precedent, the Court erroneously construed "embody" to mean the *same* thing
20  as "housing", without considering the precedent or the issues it would create with the
21  "clips" of the "complete fixture". See Doc. No. 67 at pg. 7, lines 1-2 ("the housing is
22  disclosed to embody, i.e., encase, the complete fixture").

23    For at least these reasons, Plaintiff respectfully asks this Court to amend their
24  Judgement to correct any errors of law regarding claim construction Plaintiff's Patent
25  Claims 1-5 per Rules 52(b) or 59(e). Should this Court decline to find any errors of law,
26  Plaintiff's respectfully asks this Court to amend the Judgement to include their rationale
27  for construing the "metal housing" to enclose the "clips" of Claims 1 and 4 of Plaintiff's
28  Patent.

1  **VII. This Court Committed Clear Error of Law and Fact by Not Viewing the Junction**
2  **Box as Part of the Housing per Dependent Claim 5**

3

4    Plaintiff contends that a genuine issue of material fact existed with the respect to
5  whether the "junction box" as claimed can be considered part of the "complete fixture";
6  and the Court committed a clear error of law by resolving this dispute at summary
7  judgment. Plaintiff's Counsel was expressly asked at the summary judgment hearing to
8  explain whether there is a disputed fact. Doc. No. 69 at pg. 8, line 18, to pg. 9, line 18.
9  Plaintiff's Counsel replied by explaining that the "metal Frisbee-looking portion, with the
10  LED strip enclosed within it" is the portion of the Accused Products Plaintiff is pointing to
11  as the metal housing, along with "the junction box [that] also provides the
12  housing…because it includes the ground wires and connectors". *Id.* The Court went on to
13  state that "the junction box is a separate component of the complete fixture [and] is not
14  tradable with the metal housing." *Id.* (modified). Plaintiff's Counsel then attempted to
15  distinguish the *Becton* case, which Court seemed to be alluding to, with the *Home Depot*
16  case, which the Federal Circuit indicated is *not* contrary to *Becton*. See *Powell v. Home
17  Depot U.S.A., Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2012) (modified) ("*Becton* is not to
18  the contrary… Here, the disclosure in the *specification cuts against* Home Depot's
19  argument that the 'cutting box' and 'dust collection structure' must be *separate*
20  components… [The disclosure] does not suggest that the claim terms require separate
21  structures."). While Plaintiff's Counsel's oration at the hearing could have been clearer,
22  the point and precedent are no less important.

23    The Claims themselves support the contention that the junction box can be part of
24  the metal housing because: (1) Claim 5 recites "the junction box (116) allows an *LED
25  driver* to be installed", (2) Claim 4 defines the complete fixture as including "a plurality of
26  electrical systems", and (3) the Specification expressly states that the "electrical systems
27  include but [are] not limited to the *LED driver*". See Doc. No. 34-5 at pg. 11, Claims 4
28  and 5 (emphasis added). See also, *Id.* at pg. 10, Col. 4:5-6 (modified). In other words, the

1  LED driver is part of the claimed "complete fixture" and Claim 5 recites the LED driver as
2  being installed inside the junction box. Nonetheless, the Court did not seem to be aware
3  of, or be willing to acknowledge, the Federal Circuit case *Powell v. Home Depot U.S.A.,*
4  *Inc.*, 663 F.3d 1221, 1231-32 (Fed. Cir. 2012), which was addressed in Plaintiff's
5  responsive claim construction brief. Doc. No. 52 at pg. 13, line 18 to pg. 15, line 14
6  (Plaintiff's responsive claim construction brief discussing *Powell v. Home Depot U.S.A.,*
7  *Inc.*). Plaintiff's assertions regarding the junction box being included with the metal
8  housing represented a genuine issue of material fact that should not have been decided by
9  this Court at summary judgement.

10

11      As a new argument that should be considered per Rule 52(b) and/or Rule 59(e),
12  Plaintiff asserts that the as-filed claims of a patent can represent their own embodiment,
13  and are part of the specification at the time of filing. See MPEP 2163 § I(B) citing *In re*
14  *Benno*, 768 F.2d 1340, 226 USPQ 683 (Fed. Cir. 1985) ("The claims as filed in the original
15  specification are part of the disclosure and, therefore, if an application as originally filed
16  contains a claim disclosing material not found in the remainder of the specification, the
17  applicant may amend the specification to include the claimed subject matter). Here,
18  Plaintiff's Patent was filed by Mr. Sherman and originally included Claim 5 as reciting:
19  "wherein the junction box (116) allows an LED driver to be installed and comprises a
20  predefined area to attach a plurality of wires." Doc. No. 45-1 at pg. 40 (Claim 5). The
21  provisional application also supports Claim 5 by stating "An LED driver would be installed
22  inside the junction box (8)" and including the image to the
23  right labeled "housing". Doc. No. 45-1 at pg. 46. Hence,
24  when viewing these facts in light most favorable to Plaintiff,
25  the claimed embodiment contemplates the junction box being
26  part of the housing because it encases the LED driver, which



27  is expressly claimed as part of the complete fixture that this Court construed as being
28  "encased" by the "metal housing".

1      For at least these reasons, Plaintiff respectfully asks this Court to amend its
2 judgement per Rules 59(e) and/or 52(b), at least with respect to the claim construction of
3 the "metal housing (108) to embody a complete fixture (112)". Plaintiff contends that clear
4 errors were made in constructing this claim phrase, and that relief in the form of an
5 amended Judgement is warranted. Although Plaintiff contends that new arguments are not
6 necessary for this Court to correct those errors, Plaintiff provided the new arguments above
7 as additional clarification regarding the alleged errors. Furthermore, Plaintiff contends that
8 correcting the claim construction in this way, and viewing the context of Plaintiff's
9 Covered Products, should warrant reversing this Court's Judgement of non-infringement,
10 and having the issue of infringement decided by a jury.

11

12                         ***VIII. Conclusion Regarding Relief Sought by Plaintiff***

13

14      Pursuant to 59(e) and 52(b), Plaintiff asks this Court to correct, and/or provide their
15 rationale for, many of the conclusions set forth in their Judgement. In particular, Plaintiff
16 respectfully requests the following relief:

17

18 1. Plaintiff moves this Court per Fed. R. Civ. P. §52(b) to impartially consider whether
19     the appropriate standard for summary judgement was applied before granting
20     Defendant's Motion for Summary Judgement of Non-Infringement.

21 2. Plaintiff moves this Court per Fed. R. Civ. P. §52(b) to impartially reconsider whether
22     the *facts* supporting this Court's claim construction of "a metal housing (108) to
23     embody a complete fixture (112)" were viewed in light most favorable to Plaintiff.

24 3. Plaintiff moves this Court per Fed. R. Civ. P. §52(b) to impartially reconsider whether
25     *facts* supporting the Accused Products infringing *this Court's* construction of "metal
26     housing" were viewed in light most favorable to Plaintiff.

27 4. Should this Court determine that factual findings were made and/or that genuine issues
28     of material facts were decided, Plaintiff respectfully asks this Court to amend their

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 18 —*    *Case No.: 3:23-cv-01335-CAB-JLB*
Appx103

1   Judgment per Fed. R. Civ. P. §52(b).

2   5. Plaintiff respectfully asks this Court to amend its Judgment per Fed. R. Civ. P. §59(e)

3   in view of the additional context provided herein for Plaintiff's Covered Products,

4   and in the interest of avoiding manifest injustice that may result from this Court's

5   Judgement.

6   6. Plaintiff respectfully asks this Court to amend its Judgment per Fed. R. Civ. P. §59(e)

7   to provide its rationale for construing the "metal housing" to "encase" the "complete

8   fixture", including the "clips", and/or amend their Judgement to obviate this issue

9   from further appeal or litigation.

10  7. Additionally, Plaintiff respectfully asks this Court to amend its Judgement per Fed. R.

11  Civ. P. § 59(e) and provide its rationale for concluding that the metal housing portion

12  of the Accused Products that *Plaintiff* points to does not infringe *this Court's*

13  construction of "metal housing", and/or amend their Judgement to obviate this issue

14  from further appeal.

15

16  ### IX.  *Additional Note Regarding Clear Error being Invited by Defendant*

17

18  Plaintiff suspects that Defendant's focus on the infringement theories set forth in the

19  Complaint snowballed into this Court making many of the errors set forth herein.

20  Defendant intentionally filed their motion for summary judgment without citing Plaintiff's

21  Patent L.R. 3.1 Infringement Contentions, or even attaching them.  Instead, Defendant

22  focused their entire summary judgment motion on many arguments and images that were

23  not even included in Plaintiff's Patent L.R. 3.1 Infringement Contentions.

24  Despite Defendant constantly promoting a theory that Plaintiff's infringement

25  theories were "ever changing", *Plaintiff never amended their Patent L.R. 3.1 Infringement*

26  *Contentions* after they were served on May 20, 2024 per this Court's scheduling order,

27  Doc. No. 31, and per Patent L.R. 3.1.

28  In executing this negligent strategy, Defendant directed this Court to Plaintiff's

*Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 19 —   *Case No.: 3:23-cv-01335-CAB-JLB*

1  underdeveloped infringement theory in the Complaint, instead of addressing the finalized
2  infringement contentions Defendant had been served with weeks prior. As a result, it
3  appears this Court did just that. This Court's Judgement cites to Plaintiff's Opposition
4  Brief one time (Doc. No. 45), Plaintiff's Complaint two times, and Plaintiff's Patent L.R.
5  3.1 Infringement Contentions *zero* times (Doc. No. 45-1, pgs. 70-138). See *Trimed, Inc.*
6  *v. Stryker Corp.*, 608 F.3d 1333, 1344 (Fed. Cir. 2010) ("The district court has now been
7  reversed twice after entering summary judgment against TriMed, in both instances simply
8  signing Stryker's proposed statement of law and facts relevant to the decided issues, a
9  disfavored practice in the Ninth Circuit, see *Living Designs, Inc. v. E.I. Dupont De*
10 *Nemours Co.*, 431 F.3d 353, 373 (9th Cir. 2005) (noting that the Ninth Circuit has criticized
11 district courts that engaged in the 'regrettable practice' of adopting the findings drafted by
12 the prevailing party whole-sale.")

13      Admittedly, the infringement theories in the original complaint were not completely
14 developed. But the Federal Circuit has repeatedly emphasized that infringement theories
15 are *not* required to be fully developed at the pleading stage. *Bot M8 LLC v. Sony Corp.*, 4
16 F.4th 1342 (Fed. Cir. 2021) ("Once more, we explain that patentees need not prove their
17 case at the pleading stage"). As a strategy, it makes no sense to focus on the pleadings
18 when you've been served Infringement Contentions per Patent Local Rule 3.1. That rule
19 requires "A chart identifying specifically where each element of each asserted claim is
20 found within each Accused Instrumentality", whereas initial complaints are not held to
21 such a heightened standard for pleading an infringement theory.

22      Defendant's evasive strategy convinced this Court to issue summary judgment on
23 theories of infringement from Plaintiff's *Complaint*, instead of addressing the finalized
24 infringement theory Plaintiff served on Defendant per Patent L.R. 3.1. Plaintiff's Counsel
25 speculates that Defendant invited error by focusing on the underdeveloped infringement
26 theories set forth in the Complaint, thereby leading this Court to assume no genuine
27 disputes of material fact existed.

28

1  Dated: October 28, 2024

2  */s/ Patrick D. Cummins*,

3  Patrick D. Cummins

4  Cummins IP Law PLLC

5  3426 Pepperhill Rd.

6  Lexington, KY 40502

7  Telephone: (502) 445-9800

8  Patrick@CumminsIP.com

9  *Attorney for Plaintiff,*

10    *DS Advanced Enterprises, Ltd.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  PATRICK CUMMINS (SBN: 294400)
2  Patrick@CumminsIP.com
   Cummins IP PLLC
3  3426 Pepperhill Rd.
4  Lexington, KY 40502
5  Telephone: 502.445.9880
   *Counsel for Plaintiff,*
6    *DS Advanced Enterprises, Ltd.*
7

8

9          **UNITED STATES DISTRICT COURT**
10        **SOUTHERN DISTRICT OF CALIFORNIA**
11

12 | DS ADVANCED ENTERPRISES, LTD., | Case No.: 3:23-cv-01335-CAB-JLB
13 | a corporation, |
   | | **Declaration of Patrick Cummins in**
14 | *Plaintiff,* | **Support of Plaintiff's Motion Pursuant**
   | | **to Fed. R. Civ. P. § 59(e) and §52(b)**
15 | v. | **Regarding Judgement**
   | LOWE'S HOME CENTERS, LLC, |
16 | a corporation, |
17 | | Date:    December 2, 2024
   | *Defendant.* | Judge:   Hon. Cathy Ann Bencivengo
18 |
19 | | PER CHAMBER RULES, NO ORAL
   | | ARGUMENT UNLESS SEPARATELY
20 | | ORDERED BY THE COURT
21

22

23

24

25

26

27

28
   *Declaration of Patrick Cummins in Support of Plaintiff's Motion Pursuant to Fed. R. Civ.*
   *P. § 59(e) and §52(b)*

                                    *Honorable Judge Burkhardt*
                                    *Case No.: 3:23-cv-01335-CAB-JLB*
   — 1 —

I, Patrick Cummins, declare as follows:

1. I am over the age of eighteen and not a party to this action. I am an attorney licensed to practice law before all Courts of the State of California and am admitted to practice before the Southern District of California. I am counsel at Cummins IP PLLC.

2. I am the attorney of record for the Plaintiff in this matter. I have personal knowledge of the facts stated in this Declaration and, if called to testify, could and would testify competently and under oath to these facts.

3. I received the physical samples of Plaintiff's Covered Products on March 29, 2024, just after Plaintiff served their infringement contentions on March 20, 2024.

4. I captured the photographs shown in the attached Motion, and annotated many of the images for explanation.

5. Exhibit A, attached, is a true and correct copy excerpts I captured of a letter I received from Defendant's Counsel objecting to a non-party subpoena to Lowe's subsidiary Lowe's Global Sourcing.

6. I prosecuted a separate patent application for Mr. David Sherman, President of DS Advanced Enterprises, Ltd. Mr. Sherman and Plaintiff qualify as micro-entities per See 37 C.F.R. § 1.29. The Patent asserted in this Case, US 11,054,118, was David Sherman's first patent ever.

7. I caused Matt Varnell to be served with a non-party subpoena for documents during this Case. I received photographic confirmation of that service. I never received a response or objection from Matt Varnell or his company within the deadline identified in the subpoena.

In accordance with 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*Declaration of Patrick Cummins in Support of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)*

*Honorable Judge Burkhardt*
*Case No.: 3:23-cv-01335-CAB-JLB*

— 1 —

1  Dated: October 28, 2024

2  */s/ Patrick D. Cummins*,

3  Patrick D. Cummins

4  Cummins IP Law PLLC

5  3426 Pepperhill Rd.

6  Lexington, KY 40502

7  Telephone: (502) 445-9800

8  Patrick@CumminsIP.com

9  *Attorney for Plaintiff,*

10  *DS Advanced Enterprises, Ltd.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  *Declaration of Patrick Cummins in Support of Plaintiff's Motion Pursuant to Fed. R. Civ.
P. § 59(e) and §52(b)*

*Honorable Judge Burkhardt*
*Case No.: 3:23-cv-01335-CAB-JLB*

— 2 —

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **<u>EXHIBIT A</u>**

*Exhibit*

1

# Sills Cummis & Gross
A Professional Corporation

101 Park Avenue, 28th Floor
New York, New York 10178
Tel: (212) 643-7000
Fax (212) 643-6500

Scott D. Stimpson
Member
Admitted In NY
Direct Dial: 212-500-1550
Email: sstimpson@sillscummis.com

The Legal Center
One Riverfront Plaza
Newark, NJ 07102
Tel: (973) 643-7000
Fax: (973) 643-6500

September 26, 2024

**By Email**
Patrick Cummins, Esq.
3426 Pepperhill Rd.
Lexington KY 40502
Email: Patrick@CumminsIP.com

Re:    Subpoena to Non-Party LG Sourcing, Inc.;
        *DS Advanced Enterprises, Ltd. v. Lowe's Home Centers, LLC*;
        23-cv-1335-CAB-JLB (the "Litigation")

Dear Patrick:

Non-party LG Sourcing, Inc. ("LG Sourcing") hereby makes the following objections to

the Subpoena to Produce Documents, Information, or Objects (the "Subpoena") served by

Plaintiff DS Advanced Enterprises, Ltd. ("DSAE") in the Litigation.

**OBJECTIONS TO REQUEST FOR PRODUCTION OF DOCUMENTS AND THINGS**

**REQUEST:** Any and all correspondence discussing any of the attached Purchase Orders,

as well as any replies to, and forwards of, such correspondence; and also any documents attached

to such correspondence.

**OBJECTION:** LG Sourcing objects to this Request as overbroad, unduly burdensome,

irrelevant, not proportional to the needs of this Litigation, and not seeking documents reasonably

*Exhibit*

2

Appx111

1

2

**Sills Cummis & Gross**
A Professional Corporation

3

Patrick Cummins, Esq.
September 26, 2024

4

Page 2

5

calculated to lead to the discovery of admissible evidence. LG Sourcing is not a party to this

6

case, and correspondence, if any, in its files about these "Purchase Orders" is irrelevant. LG

7

Sourcing further objects because this Request seeks documents that are obtainable from other

8

9

sources that are more convenient, less burdensome, and/or less expensive, and in particular, from

10

the defendant in this Litigation, Lowe's Home Centers, LLC ("LHC"). To the extent that

11

Plaintiff deems the Purchase Orders as relevant, Plaintiff may seek discovery from LHC about

12

these Purchase Orders as part of the Litigation. Additionally, LG Sourcing objects to this

13

Request to the extent it seeks discovery of information that is protected by virtue of the attorney-

14

client privilege, work product doctrine, and/or any other applicable privilege or protection.

15

Finally, LG Sourcing objects to the Subpoena as defective. The Subpoena violates Fed.

16

R. Civ. 45(c)(2) in that it requires the production of documents and electronically stored

17

information at a place more than 100 miles where LG Sourcing resides, is employed, or regularly

18

transacts business in person.

19

20

LG Sourcing will not be producing documents in response to this Request.

21

Sincerely,

22

s/ Scott D. Stimpson
Scott D. Stimpson

23

24

25

26

27

28

*Exhibit*

3

Appx112

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>EXHIBIT B</u>

*Exhibit*

4



15    32.    Home Depot admits that Mr. Sherman gave presentations to Home Depot

16    regarding Plaintiff's lighting products on or around April 2, 2019 and August 27, 2019.

28
                                           30
HOME DEPOT'S ANSWER TO COMPLAINT                    CASE NO. 5:23-CV-02603

Dated: July 22, 2024

Respectfully submitted,

By: /s/ Ryan W. Koppelman

Ryan W. Koppelman (SBN 290704)
**Alston & Bird LLP**
350 S. Grand St. 51st Floor
Los Angeles, CA 90071
Telephone:  (213) 576-1000
ryan.koppelman@alston.com

Adam D. Swain (SBN 257687)
**Alston & Bird LLP**
950 F St NW
Washington, DC 20004
Telephone:  (213) 576-1000
adam.swain@alston.com

Katherine G. Rubschlager (SBN 328100)
**Alston & Bird LLP**
560 Mission St., Suite 2100
San Francisco, CA 94105
Telephone:  (415) 243-1000
katherine.rubschlager@alston.com

*Attorneys for Defendant Home Depot USA,
Inc.*

*Exhibit*

5

Appx114

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

*Exhibit*

6



Appx116



## OXSUN LIGHTING 重伝照明

Zhejiang Foxsun Lighting has been exporting LED products exclusively to the North American market for more than 12 years. Our highly qualified team's main goal is to provide unique products, very competitive pricing, excellent quality, and exceptional customer service.

### WHY CHOOSE FOXSUN

We focus on LED down lighting and LED flush mount lighting.

We have a strong design and development team with many years of experience ISO9001 certification backed by a strong QA system.

OEM & ODM as required by customers

Over 300 staff

Short lead times

Chinese, USA, and Canadian Patented items

LPG production lines, SMT machines, aging lines

## COMPANY INTRODUCTION 企业简介

Appx117



## Recessed
## LED Downlight

Residential Downlight
Commercial Downlight
Smart Slim Downlight
UVC Downlight
Decorative Downlight



FOXSUN LIGHTING

Foxsun
Give you a high quality of life

Direct recessed LED down lights are ideal replacements for traditional recessed lighting. Electrical consumption is about 15% of the equivalent incandescent light, saving energy costs and being good for the planet. The innovative lens and reflectors provide uniform illumination with a minimum of glare. Average lifetime of our LED luminaires is 50,000 hours of maintenance free use. Most designs include a smooth dimming feature compatible with many common dimmers available on the market. Energy Star and cETL compliant and Patented installation make this product ideal for new construction and retrofit applications.

In addition, our products are available with a smart app that works with Google Assistant and Amazon Alexa, or our easy to use mobile APP. Consumers can choose colors, brightness, differing scenes and schedule timing all through their mobile phone or voice control.

Appx119



Appx120



Appx121



Appx122



Appx123







Appx127



1
2
3
4
## CERTIFICATE OF SERVICE
5
6
       I, Patrick Cummins, of full age, certify that on October 28, 2024, I caused a copy
7
of the foregoing ***Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)***
8
***Regarding Judgement and Supporting Declaration*** to be served by electronic mail to the
9
following counsel of record for Case No.:3:23-cv-01335-CAB-JLB:
10
PETER S. DOODY
11
SCOTT D. STIMPSON (Pro Hac Vice)
12
KATHERINE M. LIEB (Pro Hac Vice)
13
LINXUAN YAN (Pro Hac Vice)
14
*Attorneys for Defendant LOWE'S HOME CENTERS, LLC*
15

16
In accordance with 28 U.S. Code § 1746, I declare under penalty of perjury that the
17
foregoing is true and correct.
18
19
Executed on this 28th day of October 2024, in Lexington, Kentucky.
20
21
22
Patrick D. Cummins, CA Bar No. 294400
23
24
25
26
27
28

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
3  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
4  Facsimile:   (619) 696-1410

5  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
6  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
7  101 Park Avenue, 28th Floor
   New York, New York 10178
8  Telephone:  (212) 643-7000

9  Attorneys for Defendant LOWE'S HOME
   CENTERS, LLC
10

11

12                  UNITED STATES DISTRICT COURT

13                 SOUTHERN DISTRICT OF CALIFORNIA

14

15  DS ADVANCED ENTERPRISES,          Case No. 3:23-cv-01335-CAB-JLB
    LTD., a Corporation,
16                                    **OPPOSITION BRIEF TO
            Plaintiff,                PLAINTIFF'S MOTION
17                                    PURSUANT TO FED. R. CIV. P.
                                      § 59(e) and § 52(b) REGARDING
18       v.                           JUDGMENT**

19  LOWE'S HOME CENTERS, LLC, a       **(JURY TRIAL DEMANDED)**
    Corporation,
20                                    JUDGE:   THE HONORABLE
            Defendants.                        CATHY ANN
21                                             BENCIVENGO

22                                    PER CHAMBER RULES, NO ORAL
                                      ARGUMENT UNLESS
23                                    SEPARATELY ORDERED BY THE
                                      COURT
24

25                    **PRELIMINARY STATEMENT**

26       Plaintiff asks this Court to exercise "renewed impartiality and patience," to

27  "throttle their rocket docket," and to "take a moment" to consider facts and arguments

28
                                                    Case No. 3:23-cv-01335-CAB-JLB
HIGGS FLETCHER &
   MACK LLP

12775379 v1

Appx130

1 Plaintiff either already presented, or declined to present, in opposing the summary
2 judgment motion.

3      Plaintiff's motion is highly patronizing to this Court and implies, without any
4 evidence, that this Court was both partial toward LHC in granting summary judgment
5 and that the Court conducted a roughshod analysis of LHC's motion. On the contrary,
6 Plaintiff had the full opportunity to oppose LHC's motion, including the submission
7 of an overlength brief and an appearance at oral argument, and this Court, after
8 hearing oral argument, entered a reasoned decision denying the Plaintiff's "tortured"
9 claim construction and "almost frivolous" infringement argument.

10      Reconsideration motions under Federal Rules 52(b) and 59(e) are only
11 available to correct manifest errors, or to address newly discovered evidence or a
12 change in the law. These motions are not opportunities to rehash the same arguments,
13 or to present arguments or evidence that should have been made in the original papers.

14      Plaintiff does not remotely meet the standard for reconsideration. Rather,
15 Plaintiff only reargues the same things it argued in opposition to the summary
16 judgment motion, and makes new arguments that Plaintiff admittedly could have
17 made (but did not make) in opposing summary judgment.

18 **ARGUMENT**

19 **I.**    **THE RELEVANT LAW**

20      Rule 59(e) "offers an extraordinary remedy, to be used sparingly in the interests
21 of finality and conservation of judicial resources." *Siegler v. Sorrento Therapeutics,*
22 *Inc.*, No. 3:18-cv-01681-GPC-MSB, 2019 U.S. Dist. LEXIS 216776, at \*12 (S.D. Cal.
23 Dec. 17, 2019) (citations omitted). While courts have discretion in granting or denying
24 a motion for reconsideration, *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1441 (9th Cir.
25 1991), "[a] motion for reconsideration under Rule 59(e) 'should not be granted, absent
26 highly unusual circumstances, unless the district court is presented with newly
27 discovered evidence, committed clear error, or if there is an intervening change in the
28 controlling law.'" *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).

HIGGS FLETCHER &
MACK LLP

2           Case No. 3:23-cv-01335-CAB-JLB

12775379 v1

1    "Motions made pursuant to Rule 52(b) 'are designed to correct findings of fact
2  which are central to the ultimate decision.'" *DCR Mktg. Inc. v. U.S. All. Grp., Inc.*,
3  No. 819CV01897JVSDFMX, 2023 U.S. Dist. LEXIS 75841, 2023 WL 3152292, at
4  *1 (C.D. Cal. Mar. 9, 2023) (citation omitted). Rule 52(b) "is not intended as a vehicle
5  for securing a rehearing on the merits." *Id.* "Like Rule 59(e) motions, Rule 52(b)
6  motions are appropriately granted in order to correct manifest errors of law or fact or
7  to address newly discovered evidence or controlling case law." *Pan v. Tom Ming
8  Chou*, No. SACV1501528JVSKESX, 2019 WL 1877445, at *3 (C.D. Cal. Feb. 6,
9  2019), *aff'd sub nom. Pan v. Chou*, 848 F. App'x 232 (9th Cir. 2021).

10    The standards for Rules 52(b) and 59(e) are thus similar. "Each [of Rules 52(b)
11  and 59(e)] only provides for relief from a judgment in very limited circumstances,
12  and in each case, disagreement with a court's ruling or even an ordinary error in that
13  ruling are not sufficient bases for relief." *Parallax Grp. Int'l, LLC v. Incstores, LLC*,
14  No. SACV 16-00929 JVS (DFMx), 2024 U.S. Dist. LEXIS 112056, at *6 (C.D. Cal.
15  Apr. 5, 2024); *see also, e.g., Otay Land Co. v. U.E. Ltd., Ltd. P'ship*, No. 03cv2488
16  BEN (POR), 2006 U.S. Dist. LEXIS 104717, at *3 (S.D. Cal. Oct. 10, 2006) (Rule
17  52(b) "is similar, if not identical to the standards applied for Rule 59(e) motions").

18  **II.    NO NEW OR DIFFERENT FACTS**

19    Plaintiff's brief makes a variety of arguments, but none are based on new facts.
20  Indeed, Plaintiff's motion seems to confuse the requirement of new *facts*, with new
21  *arguments* – nowhere in the entire Opening Brief does Plaintiff allege any fact that
22  was unknown to Plaintiff when it filed its summary judgment opposition, but Plaintiff
23  repeatedly asks this Court to address new arguments. *See, e.g.,* Dkt. #79-1 (Plaintiff's
24  Opening Brief ("Op. Br.")), at 13 ("A new argument to consider on this front is . . ."),
25  15 ("As a new argument on this issue . . ."), 17 ("As a new argument that should be
26  considered . . ."). Thus, Plaintiff wholly misunderstands the proper grounds for a
27  motion for reconsideration. *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5

28

HIGGS FLETCHER &
MACK LLP

3                    Case No. 3:23-cv-01335-CAB-JLB

1  (2008) (motion for reconsideration "may not be used … to raise arguments or present
2  evidence that could have been raised prior to the entry of judgment.").[1]

3  **III.  NO MANIFEST ERRORS**

4  **A.  Plaintiff's Product Argument is Untimely and Irrelevant**

5  For eight pages of its brief, Plaintiff describes alleged similarities between
6  LHC's accused products, and Plaintiff's allegedly "Covered Product." Op. Br., at 3–
7  10. These facts are not newly discovered, nor would they remotely be a basis for
8  reconsideration even if they were new facts.[2]

9  As for timing, Plaintiff does not allege that any of these facts were unknown at
10 the time it filed its summary judgment opposition on July 8, 2024. *See, e.g.,* Op. Br.
11 at 5 (documents not available until after LHC's Answer), at 6 (alleging products
12 received in March of 2024); *see also* Declaration of Scott D. Stimpson ("Stimpson
13 Decl.") ¶¶ 2–5 (Plaintiff received LHC's Exhibits B to O filed under seal on April 22,
14 2024), and 6–11 (alleged copying evidence mentioned on page 10 of Op. Br. were all
15 known to Plaintiff long before its summary judgment opposition). *See, e.g., Far Out*
16 *Prods. v. Oskar*, 247 F.3d 986, 992–93 (9th Cir. 2001) (evidence is not newly
17 discovered unless it was discovered after the judgment, and due diligence would not
18 have discovered it); *Mintz v. Dietz & Waston, Inc.*, No. 05-CV-1470-L(CAB), 2010
19 U.S. Dist. LEXIS 118781, at *8 (S.D. Cal. Nov. 9, 2010) (evidence is not newly
20 discovered where the evidence "could have been brought to the [c]ourt's attention in
21 a timely and helpful manner but were not").

22 Substantively, Plaintiff's allegedly "Covered Product" is irrelevant to both
23 claim construction and infringement analyses, even if Plaintiff had timely made this
24 argument and proved its product is actually covered by the patent claims. That is,

25 ───────────────
26 [1] Plaintiff was required to submit an affidavit specifically identifying any "new and different facts and circumstances." Local Civil Rule 7.1(i)(1). Plaintiff did not do so.

27 [2] Even if a comparison to a patented product had any relevance, Plaintiff does nothing to show its
28 own product is covered by the patent – itself a highly questionable proposition.

1  under long-established Federal Circuit law, "infringement is determined on the basis
2  of the claims, not on the basis of a comparison with the patentee's commercial
3  embodiment of the claimed invention," and "claim construction, from which an
4  infringement analysis depends, focuses on the recited limitations of the claims, not on
5  the features of a commercial embodiment of the invention." *Myco Indus., Inc. v.*
6  *BlephEX, LLC,* 955 F.3d 1, 15 (Fed. Cir. 2020) (citations omitted).

7  While Plaintiff cites a case about copying potentially having some relevance to
8  the doctrine of equivalents (Op. Br. at 9, citing *Roton* case), that case is inapplicable
9  for several reasons: (1) Plaintiff's opposition to summary judgment expressly
10  disclaimed reliance on the doctrine of equivalents for the element of metal housing
11  (Dkt. #45, at 26: "Plaintiff's primary infringement allegations do not rely on . . . the
12  doctrine of equivalents . . ." and alleging literal infringement "without relying on the
13  Doctrine of Equivalents"); (2) the allegation about copying (indeed, about equivalents
14  generally) is untimely as being raised for the first time in a motion for reconsideration;
15  (3) none of these alleged facts even hint that LHC copied anything (*see* Op. Br., at 9–
16  10); and (4) the copying allegations are entirely irrelevant here, as the doctrine of
17  equivalents was barred under the disclosure dedication doctrine (Dkt. #67, at 7–8).

18  Thus, nothing about Plaintiff's product even remotely supports the clear error
19  standard. *Smith v. Clark Cty. School Dist.*, 727 F.3d 950, 955 (9th Cir. 2013) ("Clear
20  error occurs only when the reviewing court on the entire record is left with the definite
21  and firm conviction that a mistake has been committed"; citations omitted); *Fisher v.*
22  *Roe*, 263 F.3d 906, 912 (9th Cir. 2001) (for clear error standard to be met, "a decision
23  must . . . strike us as wrong with the force of a five-week old, unrefrigerated dead
24  fish") (citations omitted).

25  ### B. Plaintiff's Latest Housing Argument

26  Plaintiff's game of ever-changing infringement analyses continues.    Now
27  Plaintiff argues that the Court should view only a single internal part of the LHC
28  product as the housing.  Op. Br. at 11–12.

1    Plaintiff's summary judgment opposition never made this argument, nor did
2   Plaintiff make this argument anywhere in its infringement contentions.  In opposing
3   summary judgment, Plaintiff argued that any "***metal structure***" in the LHC product
4   could be the housing.  *See, e.g.*, Dkt. #45 at 5, 7.  From this interpretation, Plaintiff
5   argued that various metal parts of the Accused Products – the clips, the electrical
6   systems, the junction box, the wiring, the PCB – were collectively the "housing."  *Id.*
7   at 25.  Nowhere in Plaintiff's opposition did it ever single out the internal part it does
8   now, and nowhere did Plaintiff even mention the "strip of LEDs" it now alleges to be
9   "housed" by this part. *See* Op. Br. at 11; *Mintz*, 2010 U.S. Dist. LEXIS 118781, at
10  *4–5 (collecting cases: "'after thoughts' or 'shifting of ground' do not constitute an
11  appropriate basis for reconsideration").

12    While Plaintiff references a part of its infringement contentions as allegedly
13  supporting its newly-presented theory (see figures on page 11 of Op. Br.), this was
14  not presented in Plaintiff's opposition to summary judgment, and these figures were
15  addressing a ***different*** claim element – purportedly showing where wires were alleged
16  to be attached to the metal housing.  Dkt. #45-1, Exhibit 9, at 116.  Where the
17  infringement contentions address the metal housing element at issue here, they are
18  consistent only with the argument made in Plaintiff's summary judgment opposition
19  (any "metal structure" can be the housing).  *Id.* at 84 (Plaintiff identifying various
20  components as metal housing, including clips, and internal structures) and 85 ("The
21  'housing' and the 'complete fixture' therefore overlap in scope.").

22    Even if Plaintiff had timely made this argument, it is entirely fanciful.  That is,
23  the part Plaintiff references now as the metal housing is an ***internal*** structure – it is a
24  part ***being housed***. *See* Op. Br. at 11. Contrary to Plaintiff's argument, it does nothing
25  to encase the LEDs, but rather it is the structure on which they are secured (then that
26  entire structure is encased by the plastic housing).

27    Despite Plaintiff's arguments to the contrary, there is no genuine issue of
28  material fact that would preclude summary judgment, because there is no dispute

HIGGS FLETCHER &
MACK LLP

6                     Case No. 3:23-cv-01335-CAB-JLB

12775379 v1

Appx135

1  about the structure and operation of the LHC product. This is and was entirely a
2  question of claim construction. The Court properly construed the term "metal
3  housing" – consistently with every court that has addressed the interpretation of
4  "housing" – as a "*casing or enclosure* made of a scientifically recognized metal
5  substance." Dkt. #67, at 7 (emphasis added). The Court easily rejected Plaintiff's
6  argument that any metal structure could be the metal housing as "almost frivolous"
7  and contrary to the plain language of the claim. Stimpson Decl., Ex. 3, 6:1–3; *see also*
8  Dkt. #67, at 6–7. With the proper construction from the Court, this internal structure
9  cannot be the metal housing.

10                      **C. The Court Did Not Require Clips to be Enclosed**

11         At pages 12–15, Plaintiff criticizes this Court "to the extent that the Court
12  construed Plaintiff's Patent's Claims 1-5 so that the 'clips' of the 'complete fixture'
13  are *enclosed* by the 'metal housing.'" Op. Br. at 12.

14         This argument is wrong, and inappropriate for a reconsideration motion, for
15  several reasons. *First*, Plaintiff already made this same argument in opposition to
16  summary judgment – it is just a rehash of exactly the same baseless argument. Dkt.
17  #45, at 8–9. *See, e.g., Mintz*, 2010 U.S. Dist. LEXIS 118781, at *7–8 (no basis for
18  Rule 59(e) motion: plaintiffs "urge the [c]ourt to try again at reaching their desired
19  conclusion" but "plaintiffs do nothing more than reassert their prior arguments that
20  were rejected"). *Second*, Plaintiff misrepresents the Court's claim construction,
21  which was only that the term "metal housing" is a "casing or enclosure made of a
22  scientifically recognized metal substance" – the interpretation says nothing about
23  what must be enclosed. Dkt. #67, at 7. *Third*, Plaintiff's citations to other language
24  in the Court's Order (not the actual claim construction) crops out the Court's language
25  that confirms some components may be attached to, rather than encased by, the
26  housing. *Id.* at 6 (the housing is "a particular structure *to which various other claim*
27  *components are attached* and it contains, i.e., encases, the complete fixture";
28  emphasis added). *Fourth*, Plaintiff's basis for this argument (as it was in opposing

HIGGS FLETCHER &
MACK LLP

                                             7                    Case No. 3:23-cv-01335-CAB-JLB

12775379 v1

Appx136

1 summary judgment) is language found in claim 4 (*see* Op. Br. at 12–13), but claim 4
2 is a dependent claim – it is not required in claim 1 (and of course, a fixture can have
3 clips other than the retrofit and new construction clips recited in claim 1).

4                    **D. The Court Correctly Distinguished the Junction Box**

5         Plaintiff next rehashes its argument that the junction box should be considered
6 part of the housing. Op. Br. at 16–18. That argument, however, was made in opposing
7 the summary judgment motion. *See, e.g.,* Dkt. #45, at 24–25. Thus, like its other
8 repeated arguments, if Plaintiff wants to continue with this baseless argument, it needs
9 to be addressed at the Federal Circuit, not here. *Mintz*, 2010 U.S. Dist. LEXIS
10 118781, at *8 ("[Plaintiff's] disagreements with the [c]ourt's conclusions . . . are ripe
11 for appeal but they do not provide a basis for reconsideration under Rules 59(e) or
12 60(b).").

13         Plaintiff next advances "a new argument that should be considered," referring
14 the Court to the as-filed claims of the original patent application. Op. Br. at 17. The
15 argument appears to be that, since a junction box of claim 5 can contain an LED
16 driver, it must be a part of the metal housing referenced in claim 1. *See id*. This is a
17 non-sequitur rejected by the Court, particularly given that the junction box is clearly
18 distinguished from the metal housing throughout the specification and in the claims.
19 *See* Dkt. #67, at 6 (Plaintiff's argument "directly contradicts the plain language of the
20 claim that provides that the metal housing (108) is a component of the complete
21 fixture (112), among numerous individually identified components . . . Different
22 terms are presumed to mean different things.") (citation omitted). And even if this
23 argument held water, it cannot be raised for the first time in a motion for
24 reconsideration. *Exxon Shipping*, 554 U.S. at 485 n.5 (motion for reconsideration
25 "may not be used . . . to raise arguments or present evidence that could have been
26 raised prior to the entry of judgment.").

27 / / /

28 / / /

HIGGS FLETCHER &
MACK LLP

8                                    Case No. 3:23-cv-01335-CAB-JLB

12775379 v1

Appx137

1  **CONCLUSION**

2  For any or all of the foregoing reasons, Plaintiff's Motion should be denied.

3

4                    Respectfully submitted,

Dated:  November 15, 2024

5                    HIGGS FLETCHER & MACK LLP

6

7

8       By:  */s/ Peter S. Doody*
             PETER S. DOODY
9

10           SILLS CUMMIS & GROSS P.C.
             Scott D. Stimpson (Pro Hac Vice)
11           Katherine M. Lieb (Pro Hac Vice)
             Linxuan Yan (Pro Hac Vice)
12

13           Attorneys for Defendant LOWE'S HOME
             CENTERS, LLC
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12775379 v1

Appx138

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
3  San Diego, California 92101-7910
   Telephone: (619) 236-1551
4  Facsimile:   (619) 696-1410

5  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
6  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
7  101 Park Avenue
   New York, NY 10178
8  Telephone: (212) 643-7000

9  Attorneys for Defendant LOWE'S HOME
   CENTERS, LLC
10

11            **UNITED STATES DISTRICT COURT**

12          **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  DS ADVANCED ENTERPRISES,          Case No. 3:23-cv-01335-CAB-JLB
    LTD., a corporation,
15                                     **DECLARATION OF SCOTT D.**
           Plaintiff,                  **STIMPSON IN OPPOSITION TO**
16                                     **PLAINTIFF'S MOTION TO**
            v.                         **AMEND AND/OR CORRECT**
17                                     **JUDGMENT**
    LOWE'S HOME CENTERS, LLC, a
18  Corporation,                       JUDGE:   THE HONORABLE
                                                CATHY ANN
19          Defendant.                          BENCIVENGO

20                                     PER CHAMBER RULES, NO ORAL
                                       ARGUMENT UNLESS
21                                     SEPARATELY ORDERED BY THE
                                       COURT
22

23
         I, Scott D. Stimpson, declare as follows:
24
         1.    I am a Member at the law firm of Sills Cummis & Gross P.C., 101 Park
25
    Avenue, 28th Floor, New York, New York 10178, attorneys for defendant Lowe's
26
    Home Centers ("LHC") in this litigation. I submit this declaration in opposition to
27
    plaintiff DS Advanced Enterprises, Ltd.'s ("Plaintiff") motion to amend and/or
28

HIGGS FLETCHER &                                     Case No. 3:23-cv-01335-CAB-JLB
MACK LLP
                  12755296v1
                  12775379v1

Appx139

1  correct the Court's Judgement (ECF No. 67) regarding LHC's Motion for Summary
2  Judgement (ECF No. 34) (the "Motion to Amend," ECF No. 79). I have personal
3  knowledge of the facts set forth herein and can testify competently thereto.

4      2.     On October 21, 2024, LHC filed a Motion to File Documents under
5  Seal, seeking to file under seal certain documents which LHC designated as
6  "CONFIDENTIAL" or "CONFIDENTIAL –FOR COUNSEL ONLY" and
7  produced to Plaintiff during discovery. (ECF No. 76.) The documents which LHC
8  sought to file under seal are Exhibits B to T referenced in the Declaration of Scott
9  D. Stimpson in Support of Defendant's Motion to File Documents under Seal. (ECF
10  No. 76-2.) The referenced Exhibits which LHC sought to file under seal are
11  hereinafter referred to as "Confidential Ex(s)."

12      3.     LHC provided the Confidential Exs. B to T to the Court on October 22,
13  2024. A true and accurate email in which LHC transmitted the Confidential Exs. B
14  to T to the Court is attached hereto as Exhibit 1.

15      4.     LHC produced the Confidential Exs. B to O, bates stamped as
16  LHC_000788 to LHC_000887, to Plaintiff on April 22, 2024. A true and accurate
17  copy of the email in which LHC transmitted the Confidential Exs. B to O Plaintiff is
18  attached hereto as Exhibit 2.

19      5.     On October 30, 2024, the Court granted in full LHC's Motion to File
20  Documents under Seal. (ECF No. 80.)

21      6.     Page 10 of the brief for Plaintiff's Motion to Amend mentioned
22  "[o]ther evidence of copying" on five points, referenced hereinafter as Points 1 to 5.
23  (ECF No. 79-1, at 10.)

24      7.     Point 1 refers to "Plaintiff's contractor, Matt Varnell, presenting his
25  invention to Brandon Abbott of Lowe's between December 2019 and January
26  2020." (*Id.*) The alleged presentation by Matt Varnell was shown in Confidential
27  Exs. B and C, produced in April of 2024. Plaintiff also mentions Exhibits P and Q,
28  but those have nothing to do with the presentation.

HUNTELTCHLY &
MOELLER

12755296v1
12775378v1

2                                    Case No. 3:23-cv-01335-CAB-JLB

1    8.    Point 2 refers to "Plaintiff's Covered Products appearing in a
2  confidential Lowe's presentation." (*Id.*) The presentation, according to Plaintiff, was
3  shown in Confidential Exs. E, F, J, and K, and thus were produced in April of 2024.
4  (*Id.*)

5    9.    Point 3 refers to "Plaintiff's Covered Products appearing in confidential
6  Yankon presentation around October 2021." (*Id.*) The alleged Yankon presentation,
7  according to Plaintiff, was shown in Confidential Ex. H, also produce in April of
8  2024. (*Id.*)

9    10.    Point 4 refers to "Plaintiff's Covered Products being assigned the
10  product numbers that are being accused in this case," based on Confidential Exs. L
11  and M, both produced in April of 2024. (*Id.*) Point 4 also refers to the Plaintiff's
12  Covered Products "to be manufactured by Zhejiang Yankon, who received samples
13  of Plaintiff's Covered Products before interacting with Lowe's," based on paragraph
14  16 of the Declaration of David Sherman filed by Plaintiff on October 7, 2024
15  ("Sherman Decl."), which states: "Upon information and belief, and as shown in
16  Exhibit 42, Zhejiang Yankon Mega Co. Ltd., who manufactures the Accused
17  Products sold by Defendant in this Case, purchased my Covered Products that are
18  protected by my US Patent 11,054,118." (*Id.*; ECF No. 71-3 ¶ 16.) The Exhibit 42
19  referenced in paragraph 16 of Sherman Decl. is a copy of text messages dated in
20  March 2023 (apparently with DS Advanced CEO David Sherman, so DS Advanced
21  had this since early 2023).

22    11.    Point 5 refers to "Other manufacturers [sic] receiving Plaintiff's
23  Covered Products" based on Sherman Decl. ¶¶ 14–21. (ECF No. 79-1, at 10.)
24  Plaintiff did not identify the "Other manufactures," but the Amended Complaint
25  references these alleged presentations. Dkt. #17, ¶ 27. Thus, Plaintiff knew of these
26  at least as of the time of the Amended Complaint, more than a year ago.

27

28

HUGS FLETCHER &
MACK LLP

12755246 v1
12775378 v1

3    Case No. 3:23-cv-01335-CAB-JLB

Appx141

1       12.    On September 26, 2024, the Court held a hearing on LHC's Motion for

2    Summary Judgement. A true and accurate copy of the hearing's transcript is

3    attached hereto as Exhibit 3.

4       I declare under penalty of perjury that the foregoing is true and correct.

5

6    Dated: November 18, 2024

7                          Scott D. Stimpson

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Appx142

# Exhibit 1

## Linxuan Yan

| | |
|---|---|
| **From:** | Alexa Alburquerque Lass <lassa@higgslaw.com> |
| **Sent:** | Tuesday, October 22, 2024 2:12 PM |
| **To:** | patrick@cumminsip.com; Scott D. Stimpson; Katherine Lieb; Linxuan Yan |
| **Cc:** | Kathryn Callaghan; Peter S. Doody |
| **Subject:** | DS Advanced v Lowe's [IMAN-WORKSITE.FID1380073] |
| **Attachments:** | 2024-10-21 DSAE-LHC Memo of Law ISO Motion to Seal.pdf; 2024-10-21 DSAE-LHC Notice of Motion to Seal.pdf; Ex. A. email.pdf; Confidential Exhibits B to T_zip |

## *** External Email ***

Good morning,

Please see documents attached regarding LHC's Motion to File Documents under Seal. The same is being lodged with the Court today.

Thank you,

AAL



**Alexa Alburquerque Lass**
Legal Secretary to Kathryn Callaghan & Tiffany Spencer

Phone  (619) 236.1551
Fax    (619) 696.1410
Email  lassa@higgslaw.com

401 West A Street, Suite 2600, San Diego, CA 92101

www.higgslaw.com

Please read the legal disclaimers that govern this e-mail and any attachments.



# Exhibit 2

**Linxuan Yan**

| | |
|---|---|
| **From:** | Linxuan Yan |
| **Sent:** | Wednesday, April 24, 2024 5:16 PM |
| **To:** | Patrick Cummins; Katherine Lieb |
| **Cc:** | doody@higgslaw.com; Callaghan, Kathryn; Scott D. Stimpson |
| **Subject:** | RE: DS Advanced Enterprises, Ltd. v. Lowe's Home Centers - Objections and Responses to First Set of Discovery |
| **Attachments:** | 2024-04-24 - LOWES DOC PROD VOL 02.zip |

Hi Patrick,

Please find attached LHC''s document productions made pursuant to the Protective Order.

Best
Linxuan

1
Appx146

# Exhibit 3

23-cv-1335-CAB-JLB                                    1

```
 1                 UNITED STATES DISTRICT COURT

 2             FOR THE SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   DS ADVANCED ENTERPRISES,        .
     LTD.,                           .
 5                                   . Docket
                  Plaintiff,         . No. 23-cv-1335-CAB-JLB
 6                                   .
                      v.             . September 26, 2024
 7                                   . 9:30 a.m.
     LOWE'S COMPANIES INC.,          .
 8   ET AL.,                         .
                                     .
 9             Defendants.           . San Diego, California
     . . . . . . . . . . . . . . .   .
10

11                TRANSCRIPT OF MOTION HEARING
            BEFORE THE HONORABLE CATHY ANN BENCIVENGO
12                UNITED STATES DISTRICT JUDGE

13
                  A-P-P-E-A-R-A-N-C-E-S
14
     For the Plaintiff:      Cummins IP PLLC
15                           3426 Pepperhill Road
                             Lexington, Kentucky 40502
16                           By:  PATRICK D. CUMMINS, ESQ.

17   For the Defendant       Sills Cummis & Gross
     Lowe's Home Centers,    One Riverfront Plaza
18   LLC:                    Newark, New Jersey 07102
                             By:  SCOTT D. STIMPSON, ESQ.
19                           - and -
                             Higgs Fletcher & Mack LLP
20                           401 West A Street, Suite 2600
                             San Diego, California 92101
21                           By:  KATHRYN CALLAGHAN, ESQ.

22   Court Reporter:         Chari Bowery, RPR, CRR
                             USDC Clerk's Office
23                           333 West Broadway, Suite 420
                             San Diego, California 92101
24                           chari_bowery@casd.uscourts.gov

25   Reported by Stenotype, Transcribed by Computer
```

```
 1          SAN DIEGO, CALIFORNIA; SEPTEMBER 26, 2024; 9:30 A.M.
 2                             -o0o-
 3          THE CLERK:  We are on record this morning on matter
 4   number one.  This is 23-cv-1335-CAB-JLB, DS Advanced
 5   Enterprises, Ltd., v. Lowe's Companies, Inc., et al., on
 6   calendar for motion hearing.
 7      If I could please have counsel state your appearance.  We
 8   will begin with plaintiff's counsel, on the phone.
 9          ATTORNEY CUMMINS:  Yes.  Thank you, Your Honor.
10   Patrick Cummins, lead counsel for DS Advanced Enterprises.
11          THE COURT:  Thank you.  Good morning.
12          ATTORNEY STIMPSON:  Your Honor, Scott Stimpson, with
13   Sills Cummis & Gross, in New York City, representing Lowe's
14   Home Center.
15      With me here today is Kathryn Callaghan, from Higgs
16   Fletcher & Mack, and James Ruane, who is not admitted to the
17   bar yet.  He just got his LL.M. from Cornell, interning at our
18   firm.  And I hope it is okay if he --
19          THE COURT:  Absolutely.
20      You are welcome to observe, and I hope it is constructive
21   for you, and congratulations on your graduation.
22      This was originally scheduled to be a claim construction
23   hearing on the '118 patent.  The defendants had filed a motion
24   for summary judgment that incorporates a claims construction
25   issue, and the Court does find this construction would be
```

1   dispositive of the case, so I vacated the overall claim
2   construction to address the summary judgment motion.
3        There are three aspects of the accused devices that the
4   defendants have alleged are not present, are not covered by the
5   claims: that the accused products don't have a metal housing, a
6   junction box, or a twist connector, as set forth in the patent.
7        The Court at this point is not inclined to reach the
8   issues on "junction box" or "twist connector" because I
9   believe the construction of "metal housing" will be dispositive
10  in the case and lead to a summary judgment in favor of the
11  defendants.
12       I did want to confirm with counsel before I allow the
13  plaintiffs to articulate to me again their claim construction
14  on metal housing, which the Court found, frankly, not
15  persuasive, but I will give you a chance to help me help you by
16  helping me find where you are coming from.  But I think it is
17  undisputed, there's no material fact in dispute that the
18  accused products have a plastic housing; that the claim
19  unambiguously requires that this housing be metal; and that,
20  given the way it is claimed, the doctrine of equivalents is
21  barred under the disclosure-dedication doctrine, since the
22  patent does provide for the alternative, that it could be a
23  plastic housing but then makes no provision in the claim to
24  encompass that, and therefore it would be dedicated to the
25  public.

1        So, plaintiff's counsel, I know you are on the phone.

2        Again, my construction of the "metal housing" is

3   essentially that it is a component part here that is "A casing

4   or enclosure made of scientifically recognized metal

5   substance."  It is not, as I believe you are trying to

6   articulate, the complete fixture.  It is a portion of the

7   complete fixture; it is the portion or the component of the

8   complete fixture that encases it.  But I just couldn't really

9   follow your construction, so here is your chance to change my

10  mind.  Go.

11        ATTORNEY CUMMINS:  Okay.  Thank you, Your Honor.  And

12  apologies for not being more clear.

13        So, taking your construction, adopting that, and if it is

14  okay, I can argue for the -- that the metal housing is included

15  in the accused product.

16        So, metal housing was, of course, introduced in Claim 1

17  with the phrase, "A metal housing (108) to embody a complete

18  fixture."  I would like to break that into three portions and

19  then argue for each one, first portion being "metal housing,"

20  second, "to embody," and "complete fixture."

21        To be clear, we are not arguing that the metal housing is

22  the complete fixture, and I will try to be clearer about that.

23        So, with respect to just the words "metal housing," in a

24  vacuum, as used by the accused products, the accused products

25  certainly include metal.  That's not debatable.

1      With respect to just the word "housing" -- or "metal
2    housing," I guess in a vacuum --
3           THE COURT:  It is not a vacuum, though, Counsel.  It
4    is a claim limitation.  The claim limitation here requires it.
5      And it is, I have to admit, the most unusual claim format
6    I have ever seen.  I have been doing this for 17 years as a
7    litigator, almost 19 years as a judge now, magistrate and
8    district.  I have never personally seen a claim before that, in
9    the language of the claim, included the parenthetical
10   references to the specification.  And I searched for case law
11   to figure out how limiting that is.  I did not find -- it was
12   really hard.  I couldn't find anything.
13     But, in essence, even if the Court were to conclude that
14   the inclusion of the parentheticals that refer specifically
15   back to the illustrations and the discussion in the
16   specification are not limiting as to how the metal housing
17   might be configured -- it doesn't have to be round; it could be
18   square -- maybe.
19     But it certainly educates and informs the claim
20   construction if I have to look at what constitutes the
21   limitation, the element, a metal housing, I am going to go --
22   because it is a metal housing parenthetical (108), close
23   parentheses, I am going to look at (108).  I am going to look
24   at all the discussions of (108) in the specification.  And it
25   is the portion of the fixture that encases all the other parts.

1    You can't break it up and say, "Well, there's metal, and
2   there's housings, so there's metal housings." That is so --
3   I'm going to say it's almost frivolous. I don't understand.
4   You are just denying the plain language of the claim. I don't
5   get it.

6        ATTORNEY CUMMINS:  I am sorry.  I understand.  I get
7   it.

8        I think parentheticals are often used for international
9   application, in the Canadian application or maybe Europe
10  sometimes requires parentheticals with the specifications
11  listed.  I personally didn't draft this application, but in my
12  experience with prosecution, that's oftentimes what happens.
13  So I think the attorney or agent that was drafting this is
14  likely maybe used to doing it for a foreign entity as well, so
15  that's part of that.

16       But I was not trying to construe it in a vacuum.  I guess
17  I was just trying to argue for a -- start with broader
18  arguments and sort of lead narrower into a fact interpretation,
19  or your construction.

20       So we are not arguing that the complete fixture is, kind
21  of, part of the housing.  With respect to the phrase "to
22  embody," "to embody" typically is referred to as "giving form
23  to," like a person, you know, when we refer to "This person
24  embodies patience," or a virtue, they are giving form to that.
25       In this respect, the metal housing is the structure that

Appx153

1  gives form to the complete fixture, so the "complete fixture"
2  portion in the specification is defined as to include a variety
3  of electrical systems, clips, and accessories.

4       And in our opposition, if you look at document 45, at
5  page 32, there's an image of the junction box with the ground
6  wire connector, shown there, which is taken from
7  Dr. Bretschneider's affidavit, and then the group of images at
8  the bottom left, from plaintiff's infringement contentions.

9       So the "complete fixture," as defined in the
10 specification, is said to comprise a variety of electrical
11 systems, clips, and accessories.

12      So just determining whether that, the complete fixture, is
13 included in the accused products, the electrical systems are
14 defined in the specification as including an LED driver, which,
15 if you look at the collection of images from our infringement
16 contention, is that, kind of, circuit on top of the, kind of,
17 metal Frisbee, there.

18      And let me know if you are following along or if you are
19 not to the page yet.

20          THE COURT:  I am sorry, Counsel.

21      I am on the page.  Again, I am still not -- I am not on
22 board with this idea that you are changing "housing" to
23 "structure," and that "embody" somehow creates this idea that
24 the metal housing is therefore analogous with the entire
25 fixture; and if the entire fixture has metal parts, then the

1  claim limitation is met.

2       "To embody" in this case is not sort of like, "I am

3  embodying the spirit of another person."  It is to enclose, to

4  encase, to house.  It is specifically relating back to

5  embodying in the plain meaning of the term that it encases all

6  the other parts that are either attached to it or contained

7  within it.

8       Your argument just doesn't have any legs for the Court.

9       So if you want to move on to explaining why you think

10 there's a disputed fact as to whether the accused product

11 contains a metal housing, with the metal housing being the

12 casing or enclosure made of metal, and what is indicated in

13 both the patent and in the -- really, undisputed evidence by

14 the defendants from Dr. Bretschneider and the product they

15 provided to the Court as a sample, that that equivalent part,

16 that aspect of their accused products, is made of plastic.  It

17 is not made of metal.

18      And so, why don't you explain to me where there's a

19 disputed fact there.

20          ATTORNEY CUMMINS:  I believe what they are pointing

21 to is the kind of the wafer piece we provided as Exhibit 13 to

22 our opposition.

23      What we are pointing to as the metal housing we provided

24 as Exhibit 12, which is kind of the metal Frisbee-looking

25 portion, with the LED strip enclosed within it.

1       And then the junction box also provides the housing as
2    well, because it includes the ground wires and connectors,
3    which are expressly recited in the patent specification as
4    being the part of complete fixture, as well as the LED --
5           THE COURT:  Right.  But the junction box is a
6    separate component of the complete fixture.  The junction box
7    is not tradable with the metal housing, so the fact that their
8    junction box may be made of metal does not meet the claim
9    limitation that the housing is made of metal.
10          ATTORNEY CUMMINS:  Your Honor, I know they argued
11   that in their motion for summary judgment and cited the *Becton*
12   case.
13      We cited the *Home Depot* case, which did indicate that
14   although there is kind of an assumption that, when you talk
15   about two separate things, they may be separate in one way or
16   the other, whether it's physical or through some other
17   description, but it is not necessarily the blanket rule for all
18   construction.
19      In the *Home Depot* case, I believe there was, like, a
20   cutting saw that was used in all the Home Depot stores, and
21   they separately claimed -- they claimed this whole system, but
22   they separately claimed the dust collector -- and I forget the
23   other piece; some other part of the cutting mechanism.
24      But Home Depot had argued that these would two separate
25   elements, but they were, as claimed -- because they were

1  claimed separately.

2      But in view of the specification, the Court said that

3  their decision was not contrary to *Becton*, but in fact that

4  they did interpret -- they did find infringement because even

5  though the two parts were, kind of, part of the same part on

6  the accused product.  Even though they were claimed separately,

7  they still found infringement.

8      And in this --

9          THE COURT:  All right.  Go ahead.

10          ATTORNEY CUMMINS:  I'm sorry.  Okay.

11      In this particular case, the -- okay.  Just with respect

12  to the junction box and the metal housing, for example, in our

13  provisional application, you can see that the -- I believe we

14  attached it in our opposition as well -- there's a figure from

15  the provisional application where, kind of, the underside --

16  the junction box and the underside, the opposing side of the

17  entire apparatus is shown, that belongs to the housing, that is

18  to show the entire product.

19      Additionally, in the patent itself, they say that they cut

20  a hole in the ceiling to accommodate the metal housing.  I

21  believe that shows in the specification that defendant filed,

22  in document 34-5, at page 11, says, "Cut the hole in the

23  ceiling the appropriate size to accommodate the metal

24  housing."  That would be, of course, accommodating the junction

25  box and then the other portions that are just below the

1   junction box.

2       Additionally, the complete fixture itself is expressly

3   defined as including the clips.  So it says the complete

4   fixture -- like in Claim 4, which shows prototypes for the

5   *Phillips* case -- the complete fixture, comprised of electrical

6   systems, clips, and accessories.  The "clips" refer to the

7   elements 104 and 102, which are the new construction clips and

8   the retrofit clips.

9       There's nothing enclosing those.  So to say that there's

10  some metal housing to embody the complete fixture or there's

11  some metal housing in the patent that actually encloses

12  everything, there's nothing there that's enclosing the clips.

13      I actually think that's maybe the strongest indication for

14  why there's nothing that is supposed to be enclosing every

15  single thing that the "complete fixture" is referring to.  Of

16  course, it encloses some of it, like in terms of -- in

17  defendant's accused product, they have the metal Frisbee, with

18  the LED strip kind of being enclosed in it.

19      The LED strip is expressly defined in plaintiff's patent

20  as being part of the complete fixture, so there is certainly

21  metal housing that is enclosing parts of the complete fixture,

22  but the complete fixture is expressly defined as including the

23  clips, and there's nothing in the patent that shows a metal

24  housing completely encasing or enclosing the clips.

25          THE COURT:  All right.  I just sort of feel like we

1    are talking around in circles here.  Given that the
2    specification doesn't show that the thing that's identified as
3    the metal housing encloses the clips, I don't even know how you
4    can reach that analysis to say therefore somehow their accused
5    product, that doesn't enclose the clips -- Counsel, I have got
6    to say, I just feel like you are struggling here to talk around
7    in circles to ignore the plain language of the claim.

8         Do you have anything to offer on the conclusion that the
9    doctrine of equivalents here cannot stretch to plastic, given
10   the fact that the specification itself talks about the housing
11   being metal and then makes reference that it could be plastic;
12   but rather than claiming it as just a housing (108), that
13   therefore would have been more encompassing, that include both
14   metal and plastic, the claim language specifically is limited
15   to metal, and therefore the Court has concluded, under the
16   disclosure-dedication doctrine, you are barred from including
17   or encompassing those aspects of the specification that
18   disclosed an alternative material but then didn't claim it, and
19   therefore it is dedicated to the public?

20        Do you have any response to that?
21             ATTORNEY CUMMINS:  Yes.
22        For -- the plastic housing is, of course, mentioned a few
23   times.  There's never a mention of plastic housing (108).
24   There's just "plastic housing."
25        In the figures, there's nothing -- there's no plastic

1  housing, no plastic housing element, you know, 224 or anything
2  like that.
3       There's just a few instances where they say, column 4 of
4  the patent, "May be manufactured by plastic injection molding
5  to obtain a plastic housing," or same thing in column 4,
6  "junction box attached to the metal housing (108) or the
7  plastic housing," period.
8       So there's no -- plaintiff's patent does not equate -- or
9  it is not expressly saying that (108) can be swapped with
10 plastic; you know, "Wherever there's metal in (108), that can
11 be plastic."  That's not supported by the specification.  And
12 we would not argue that plastic is equivalent to metal.
13      But to say that the specification somehow equates the
14 metal housing (108) to -- such that the metal in there could be
15 plastic, all throughout, I don't think that's supported by the
16 specification.
17           THE COURT:  All right.  Thank you.
18      Thank you, Counsel.
19      Defendants, is there anything you would like to put on the
20 record, since the Court is going to grant the motion and this
21 will potentially be up for appeal, if there's anything else you
22 want to add beyond your briefing?
23           ATTORNEY STIMPSON:  We have nothing to add.  Thank
24 you, Your Honor.
25           THE COURT:  All right.  Thank you.

23-cv-1335-CAB-JLB                                        14

1        Thank you, Counsel for the plaintiff.

2        The Court is granting the motion for summary judgment

3   based on the Court's claim construction of the metal housing

4   limitation and the represented facts here that I believe are

5   undisputed in light of that construction that the defendants'

6   products do not have a metal housing and that the doctrine of

7   equivalents can't apply in this case.

8        So judgment will be entered for the defendants.  The case

9   will be dismissed.  And that's all.

10       And I am not going to reach the other issues in light of

11  the fact that I think this one construction is dispositive.

12       All right.  Thank you.

13            ATTORNEY STIMPSON:  Understood.

14            ATTORNEY CUMMINS:  Thank you, Your Honor.

15            ATTORNEY STIMPSON:  Your Honor, I just have one

16  question.  I am sorry.

17            THE COURT:  Yes.  Okay.

18            ATTORNEY STIMPSON:  If this case is going to be

19  dismissed, we do have one motion pending which we would like to

20  resolve, which is they disclosed our confidential information.

21  We have a motion for sanctions pending, and I know we can

22  get --

23            THE COURT:  That's fine.

24       The discovery motion regarding any kind of violation of

25  the protective order -- I will enter the judgment here.

Appx161

23-cv-1335-CAB-JLB                                          15

1        I will indicate that that motion is still pending for
2    resolution and any other motions you might want to file before
3    we close the matter; but all your other discovery issues and
4    deadlines and trial deadlines are vacated in light of the
5    Court's decision there's not infringement.
6            ATTORNEY STIMPSON:  Thank you, Your Honor.
7            THE COURT:  All right.  Thank you.
8        (End of proceedings at 9:55 a.m.)
9                         -o0o-
10                 C-E-R-T-I-F-I-C-A-T-I-O-N
11           I certify that the foregoing is a correct
     transcript from the record of proceedings in the above-entitled
12   matter.  Dated:  September 30, 2024.
13                     /s/  Chari Bowery
14                     _____
                       Chari Bowery, CSR No. 9944, RPR, CRR
15
16
17
18
19
20
21
22
23
24
25

1  PATRICK CUMMINS (SBN: 294400)
2  Patrick@CumminsIP.com
   Cummins IP PLLC
3  3426 Pepperhill Rd.
4  Lexington, KY 40502
5  Telephone: 502.445.9880
   *Counsel for Plaintiff,*
6    *DS Advanced Enterprises, Ltd.*
7
8
9              **UNITED STATES DISTRICT COURT**
10            **SOUTHERN DISTRICT OF CALIFORNIA**
11

| 12 DS ADVANCED ENTERPRISES, LTD., a corporation, | Case No.: 3:23-cv-01335-CAB-JLB |
|---|---|
| 13 | |
| 14 *Plaintiff,* | **Plaintiff's Reply in Support of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b) Regarding Judgement** |
| 15 v. LOWE'S HOME CENTERS, LLC, a corporation, | |
| 16 | |
| 17 *Defendant.* | Date:    December 2, 2024 |
| 18 | Judge:   Hon. Cathy Ann Bencivengo |
| 19 | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| 20 | |

21
22
23
24
25
26
27
28

*Honorable Judge Bencivengo*                    *Case No.: 3:23-cv-01335-CAB-JLB*

Appx163

## A. Not Finding Infringement in View of the Accused Metal Housing is the Clear Error to be Corrected per Plaintiff's Motion

As Lowe's agrees, motions made pursuant to Rule 52(b) are designed to correct findings of fact which are central to the ultimate decision.  Doc. No. 83 at pg. 3, lines 1-4 (citations omitted).  In this particular instance, the finding of fact to be corrected is whether the Accused Products include a "metal housing", as claimed in Claim 1 of Plaintiff's Patent.

Recently, in another Case involving Plaintiff's Patent and another accused product sold by LEDVANCE LLC ("Ledvance"), Ledvance referred to a portion of their own accused products as a "metal housing".  As shown below, the portion Ledvance refers to is *nearly identical* to the accused metal housing of the Lowe's products—the same portion of Lowe's Accused Products Plaintiff has been pointing to since the original complaint.  See Doc. No. 81 at § III(a).  Below is an annotated excerpt from defendant Ledvance's reply brief in their motion to dismiss with an overlayed image of Lowe's accused metal housing for ease of comparison.  See also, *DS Advanced Enterprises, Ltd. v. Ledvance LLC*, Case



9   For example, below is an image of Ledvance Product 62884 from the FAC. Dkt. 27
10   at 34. The image shows wires from the junction box connecting to the LED strip
11   through a small hole near the center of the metal housing.

Lowe's Accused Product

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 1 —   *Case No.: 3:23-cv-01335-CAB-JLB*

1  No. 1:23-cv-11155-JEK, Doc. No. 82 at pg. 12, lines 9-20 (D. Mass. September 3, 2024).
2  For ease of reference, the entire page from Ledvance's reply brief is also attached as Exhibit
3  A.   Cummins Decl. at ¶ 3.   The above image of Lowe's accused metal housing was
4  excerpted from Doc. No. 79-1 at pg. 11, lines 1-18.  Each metal housing above houses an
5  LED strip for each respective fixture.

6      Ledvance's admission was not available until September 3, 2024.  Plaintiff's
7  Opposition to Lowe's summary judgment was filed on July 8, 2024, well before
8  Ledvance's admission. See Cummins Decl. at ¶ 4-6. This admission by Ledvance should
9  be compared to Plaintiff's infringement contentions, as reproduced below.  Plaintiff's
10  infringement contentions were attached to Plaintiff's opposition to Defendant's summary
11  judgement motion but not addressed by Lowe's. Doc. No. 45-1 at pg. 70 (annotated below).

12      For purposes of finding clear error per Plaintiff's Rule 52/59 Motion, Ledvance's
13  admission should illuminate the clear error of finding non-infringement, or at least the clear
14  error of finding no genuine issue of material fact regarding the accused metal housing.
15  Ledvance is one of the largest producers of lighting products in the world, and they own
16  famous lighting brands such as Sylvania and Osram[1-2].  Ledvance has also partnered with



22
23
24
25
26
27
28

*(Claim 1 continued)*
a metal housing (108)
to embody a complete fixture (112).

These images and copy right are
provided to evidence the portions
of the accused product that
infringe these elements of Claim 1. For at least these reasons, the accused

identified, for the Defendant, features of the Accused Products include the "metal housing (108) to embody a complete fixture (112)". See Exh. 9 at pgs. 84-87 and 111-114, and as shown in the image to the left. These elements of an Accused Product #5141630 were also provided as a physical exhibit. See Exh. 12 and Cummins

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
25                          Case No.: 3:23-cv-01335-CAB-JLB

28  [1] https://en.wikipedia.org/wiki/Ledvance
    [2] https://shop.ledvanceus.com/about-us/

1  Lowe's[3]. Ledvance's products have *nearly the same* metal housing as Lowe's Accused
2  Products, and Ledvance *expressly* refers to their nearly-identical metal housing as a "metal
3  housing". See *supra* pg. 1, and see Exhibit A.

4

5  **B. Defendant Denies—but Does Not Substantively Address—Plaintiff's Brief**
6  **Showing the Metal Housing Claim Element Mapped to Plaintiff's Covered Products**

7          Lowe's argues that a patentee's commercial embodiment should not be the focus of
8  an infringement analysis, but that argument completely misses the point. Doc. No. 83 at
9  pg. 5, lines 1-6. Of course the Claims of Plaintiff's Patent should be the primary focus.
10  However, Patent L.R. 3.1(g) expressly states that: "If a party claiming patent infringement
11  asserts or wishes to preserve the right to rely, for any purpose, on the assertion that its own
12  apparatus….practices the claimed invention, the party must identify…each such
13  apparatus….that incorporates or reflects that particular claim." Patent L.R. 3.1(g)
14  (modified). This is why Plaintiff expressly referred to their covered products in their
15  infringement contentions. See Doc. No. 45-1 at pg. 73, lines 4-23, which lists the same
16  item number as the item number shown in Plaintiff's Motion's Opening Brief (Doc. No.
17  79-1 at pg. 12, lines 16-17) ("ZF-DL6-12W-DIM-5CC-*L#"). Lowe's did not address or
18  rebut this in their summary judgement briefs.

19          Lowe's further alleges that "Plaintiff does nothing to show its own product is
20  covered by the patent", which is yet another example of Lowe's asking this Court to deny
21  reality. Doc. No. 83 at pg. 4, lines 27-28. Plaintiff's Motion expressly compared the
22  accused metal housing to the metal housing of the Covered Products *and* to this Court's
23  construction of "metal housing". See, at least, Doc. No. 79-1 at pg. 9, lines 10-28, and see
24  also, pg. 11, lines 1-18. The allegation that Plaintiff did "nothing" to map Plaintiff's
25  Covered Product merely adds to the list of knowingly false statements submitted by Lowe's
26  and their counsel to this Court.

27

28  [3] https://corporate.lowes.com/newsroom/press-releases/osram-sylvania-and-lowes-introduce-brightest-led-light-bulb-11-18-10

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 3 —    *Case No.: 3:23-cv-01335-CAB-JLB*

**C. Lowe's Metal Housing Arguments Finally Address the Accused Metal Housing but Their Assertions Further Stink of "Dead Fish"**

Lowe's makes many of the same arguments that Plaintiff has already debunked, but Lowe's also *finally* makes some effort to address the accused metal housing by arguing it "is an internal structure – it is a part being housed. Contrary to Plaintiff's argument, it does nothing to encase the LEDs, but rather it is the structure on which they are secured". Doc. No. 83 at pg. 6, lines 22-26. In response, this Court should consider Ledvance's admission that the portion Plaintiff is referring to *is* a metal housing. See pg. 1, *supra*. Additionally, the only reason the accused metal housing appears "internal" is because Lowe's or Lowe's manufacturer, Zhejiang Yankon, slapped an extraneous wafer piece on the Accused Products as their non-inventive design-around that leaves the metal housing intact. Doc. No. 79-1 a pg. 9, lines 20-28.

Lowe's also makes another Orwellian assertion that the accused metal housing does not encase or enclose the LED strip, which this Court can easily debunk with their own eyes. Doc. No. 83 at pg. 7, lines 20-23. Lowe's even concedes that "the Court's claim construction...says nothing about what must be enclosed" and yet—still, Lowe's will not concede that the accused metal housing is enclosing *something* (*e.g.*, the LED strip). *Id.*



Lowe's bare assertion that the accused metal housing "does nothing to encase the LEDs" simply denies plain English. The verbs "encase" and "house" are synonymous and mean to cover[4] or enclose[5] something. The LED strip is not entirely visible in pictures like the ones to the right of this text

Lowe's Accused Product



because the LED strip is *being enclosed* by the accused metal housing. Doc. No. 81 at pg.

---

[4] https://www.britannica.com/dictionary/encase
[5] https://www.britannica.com/dictionary/house

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 4 —    Case No.: 3:23-cv-01335-CAB-JLB*

1  9, lines 14-28. That is the purpose of the accused metal housing. The surrounding lip of
2  the accusing metal housing even extends down far enough for both the LED strip and
3  diffuser lens to be enclosed by the accused metal housing. The accused metal housing also
4  happens to house the diffuser lens and reflective paper that comes with the Accused
5  Products, further evidencing that the accused metal housing houses multiple things, aside
6  from part of the complete fixture (*e.g.*, the LED strip). See image below include parts of
7  one of the Accused Products. See Cummins Decl. at ¶ 7. The images below also show the
8  diffuser lens and reflective paper being disposed within the accused metal housing, and
9  being slightly displaced from the accused metal housing. Although these images may not
10  be necessary for this Court to grant Plaintiff's Motion, they are nonetheless provided to
11  reinforce Lowe's recent assertion that the accused metal housing does not house anything.
12  See Doc. No. 83 at pg. 8, lines 20-23 (Lowe's indicating that this Court's construction of
13  the "metal housing" "says nothing about what must be enclosed.").



**C. Lowe's Knowingly Submits Falsehoods by Continuing to Allege this Case Involved a "Game of Ever-Changing" Infringement Analysis**

Lowe's alleges Plaintiff has continually changed their infringement contentions throughout this Case, but this is another attempt to perpetuate a false narrative. Lowe's doubling down on this false narrative simply reveals their lack of counterarguments regarding the accused metal housing. Doc. No. 83 at pg. 5, lines 26-28. If Lowe's had any counterarguments regarding why the accused metal housing is not within the scope of this Court's construction of "metal housing", they hopefully would have made those arguments by now. Lowe' assertion is self-defeating considering Lowe's alleges that "Plaintiff argues…only a single internal part" is the accused metal housing, and then addresses Plaintiff's assertion that "the junction box should be considered part of the housing." *Id*. compared to Doc. No. 83 at pg. 8, lines 5-6.

Lowe's intentional misrepresentations continue as they assert "Plaintiff argued that any 'metal structure' in the LHC product be the housing." *Id*. at pg. 6, lines 3-4. The portion of Plaintiff's opposition that Defendant cites to is the Doc. No. 45 at pgs. 5 and 7. Oddly, those pages correspond to the table of authorities for Plaintiff's opposition to Defendant's summary judgment motion. Doc. No. 83 at pg. 6, lines 3-4 citing to Doc. No. 45 at pgs. 5 and 7. These false assertions are reckless and should not be tolerated. It is telling that Lowe's never puts the word "any" in quotes when making this assertion. *Id*.

Lowe's goes on to submit another blatant falsehood by asserting: "Nowhere in Plaintiff's opposition did it ever single out the internal part it does now, and nowhere did Plaintiff even mention the 'strip of LEDs' it now alleges to be 'housed' by this part." Doc. No. 83 at pg. 6, lines 7-8. Plaintiff's Infringement Contentions expressly discuss the strip of LEDs by pointing them out and mapping to the Claims. Doc. No. 45-1 at pgs. 84-85 ("LED strips"). For every instance of the term "metal housing", Plaintiff pointed to the accused metal housing. Plaintiff's counsel even asserted this at the hearing. Doc. No. 69 at pg. 8, line 18, to pg. 9, line 18. The images below provide more instances of the Plaintiff

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 6 —    *Case No.: 3:23-cv-01335-CAB-JLB*

Appx169

1 singling out the accused
2 metal housing and/or the
3 LED strip. These images



4 further reinforce Lowe's knowingly submitting false
5 statements on the record. Doc. No. 83 at pg. 6, lines 7-11.

6     Lowe's also attempts to argue that some images in
7 Plaintiff's Motion were "addressing a different claim
8 element" than the metal housing claim element. Doc. No.
9 83 at pg. 6, lines 12-16.[6] The referenced page of
10 Plaintiff's Motion expressly shows the term "the metal
11 housing (108)" with an arrow from that term to the
12 accused metal housing. Doc. No. 79-1 at pg. 15. An
13 excerpt from that page is reproduced at



14 the far upper-right of this page.
15 Lowe's assertion is another false
16 statement. The image does not show
17 "a different claim element" being
18 mapped to the accused metal
19 housing. *Id.*

20     Lowe's arguments are a desperate attempt to
21 convince this Court that Plaintiff is presenting a new
22 infringement theory that Plaintiff could've asserted in
23 their opposition to Defendant's summary judgment
24 motion. But that is *not* the case. Plaintiff's Motion
25 addresses clear error in the decision to grant summary
26 judgment of non-infringement—not to set forth any new
27
28



---

[6] Lowe's cites to the brief's page number 11, not the ECF page number.

1  theories of infringement. As Plaintiff repeats in Plaintiff's Motion, Defendant did not
2  attach Plaintiff's infringement contentions to their summary judgment motion, much less
3  address the infringement theories set forth in Plaintiff's infringement contentions. Doc.
4  No. 79-1 at § IX. Lowe's has only themselves to blame for this. Lowe's had been served
5  the infringement contentions according to the Patent Local Rules, but Lowe's opted to not
6  address them in their summary judgment. *Id*. For a variety of reasons, this just makes no
7  sense. Plaintiff did not have "ever-changing" infringement theories, nor did Plaintiff assert
8  new infringement theories in Plaintiff's Motion.

9

10  **D.  Lowe's Limited Remaining Arguments Miss the Point and Intentionally**
11  **Mischaracterize the Purpose of Plaintiff's Motion**

12  Lowe's does not rebut Plaintiff's arguments regarding the junction box and original
13  Claims as filed, except to attempt to summarize the argument, cite to this Court's Order,
14  and then assert that the argument cannot be raised for the first time in Plaintiff's Motion.
15  Doc. No. 83 at pg. 8, lines 13-26. Lowe's also cites to Plaintiff's Motion's discussion of
16  the junction box being part of the metal housing per Claim 5, but Lowe's does not address
17  the *Home Depot* case cited by Plaintiff's Motion and at the hearing. Doc. No. 83 at pg. 8,
18  line 12-22. Lowe's simply re-quotes this Court's order, Doc. No. 67, which also does not
19  address the *Home Depot* case. Doc. No. 79-1 at pg. 20, lines 12-22.

20  Lowe's provides a number of other arguments that do not have much merit. For
21  example, regarding Dependent Claim 4, Lowe's wholly misses the point. Claim 4 *must* be
22  prioritized over other intrinsic evidence during claim construction, at least according to
23  binding precedents. Doc. No. 83 at pg. 8, lines 1-3 compared to Doc. No. 79-1 at pg. 16,
24  line 28 to pg. 17, line 4 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir.
25  2005)). Plaintiff's discussion of Claim 4 was to further illuminate the alleged clear error.
26  Doc. No. 79-1 at § VII.

27  Despite Lowe's opposition brief citing to the Order, Doc. No. 67 from Honorable
28  Judge Bencivengo, and attempting to rebut any new facts being asserted, Lowe's provides

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 8 —    Case No.: 3:23-cv-01335-CAB-JLB*

1  a contradictory footnote argument regarding a lack of certified statement per Civil L.R.
2  7.1(i)(1). Doc. No. 83 at pg. 3, lines 25-26. The local rules require that a motion for
3  reconsideration include a statement indicating "(1) when and to what judge the application
4  was made, (2) what ruling or decision or order was made thereon, and (3) what new or
5  different facts and circumstances are claimed to exist which did not exist, or were not
6  shown, upon such prior application." Civil L.R. 7.1(i)(1). Considering Lowe's own
7  opposition brief indirectly admits those requirements are met, Lowe's footnote argument
8  has no merit.

9     Lowe's goes on to perform some quote cropping in furtherance of alleging Plaintiff
10  entirely disclaimed the doctrine of equivalents regarding the metal housing. Doc. No. 83
11  at pg. 5, lines 9-13. This is simply not true, but also not particularly relevant to Plaintiff's
12  Motion. Also, regarding Lowe's rebuttal to arguments regarding copying, the facts *do*
13  support Lowe's copied Plaintiff's design, as addressed in Plaintiff's Motion. See, at least,
14  Doc. No. 79-1 at pg. 13, line 19 to pg. 14, line 15. Evidence of copying is also found in
15  the image of the Ledvance product on pg. 1 from the Ledvance case (Lowe's attached the
16  entire Ledvance complaint as Doc. No. 77-8).

17     Finally, Lowe's awkwardly attempts to re-frame the first few lines of Plaintiff's
18  Motion (Doc. No.79-1) as patronizing of this Court. It is no secret that the Southern District
19  of California is ranked[7] high relative to all other District Courts in filings per judgeship.
20  Plaintiff's Counsel was simply alluding to this fact by referring to a "rocket docket".
21  Lowe's clearly did not appreciate the blackhole analogy either. Doc. No. 79-1 at pgs. 5-6.

22     Furthermore, any mentioning of "impartiality" was *not* to explain why Plaintiff lost
23  at summary judgement. Far from it. Plaintiff's Counsel simply incorporated that language
24  into their introduction as a sincere request, and in reflection upon hearing the phrase
25  "almost frivolous" at the hearing. Doc. No. 69 at pg. 6, lines 3. Lowe's, in another brief,
26  points to Plaintiff seeking reassignment but Lowe's is seemingly unaware of why

27

28  [7] https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2024

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 9 —    Case No.: 3:23-cv-01335-CAB-JLB*

Appx172

1 | reassignment could be more efficient in view of the Central District case involving
2 | Plaintiff's Patent and Lowe's. Doc. No. 84 at pg. 7, lines 26-28. Lowe's attempts to
3 | mischaracterize Plaintiff's Motion are disingenuous, especially in view of the constant
4 | misleading and false statements Lowe's continue to submit on the record.

5 | If Plaintiff's Motion was at all offensive to this Court (as Lowe's suggests), Plaintiff
6 | and Plaintiff's Counsel sincerely apologize to this Court. Portions of Plaintiff's Motion,
7 | such as the opening lines, were sincere attempts to distinguish Plaintiff's Motion from other
8 | motions for reconsideration, which Plaintiff's Counsel acknowledges may be a procedural
9 | tool that is overused. Though Plaintiff hopes this Court will agree that use of this tool was
10 | warranted under these circumstances.

11 |

12 | ### E. Conclusion Regarding Plaintiff's Motion

13 | As Plaintiff's Motion suggests, the Defendant invited clear error by not addressing
14 | Plaintiff's infringement contentions and directing this Court to something other than the
15 | accused metal housing that Plaintiff had been referring to since the beginning of this case.
16 | Doc. No. 79-1 at § IX. Although some newly discovered evidence is set forth in Plaintiff's
17 | Motion briefs, that evidence is not intended to be the exclusive basis for Plaintiff's Motion.
18 | See *Id.*, at least at §§ I and II. Plaintiff respectfully and primarily asserts that, in view of
19 | Plaintiff's Motion, there exists clear error in concluding that the accused metal housing is
20 | not within the scope of this Court's construction of the "metal housing" claim element.
21 | Doc. No. 79-1 at pg. 11, lines 1-28. Additionally, Plaintiff's respectfully asserts that this
22 | Court committed clear error by weighing facts at summary judgment and/or not finding a
23 | genuine dispute of material fact regarding the white wafer and the accused metal housing.

24 |

25 | For at least these reasons, Plaintiff respectfully asks this Court to modify its
26 | judgment and/or modify its findings, per Fed. R. Civ. P. §§ 52(b) and/or 59(e), to resolve
27 | any manifest error in this Court's Order, Doc. No. 67.

28 |

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 10 —    Case No.: 3:23-cv-01335-CAB-JLB*

1  Dated: November 25, 2024

2  */s/ Patrick D. Cummins*,

3  Patrick D. Cummins

4  Cummins IP Law PLLC

5  3426 Pepperhill Rd.

6  Lexington, KY 40502

7  Telephone: (502) 445-9800

8  Patrick@CumminsIP.com

9  *Attorney for Plaintiff,*

10   *DS Advanced Enterprises, Ltd.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— *11* —        *Case No.: 3:23-cv-01335-CAB-JLB*

PATRICK CUMMINS (SBN: 294400)
Patrick@CumminsIP.com
Cummins IP PLLC
3426 Pepperhill Rd.
Lexington, KY 40502
Telephone: 502.445.9880
*Counsel for Plaintiff,*
  *DS Advanced Enterprises, Ltd.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., a corporation,<br><br>    *Plaintiff,*<br><br>v.<br>LOWE'S HOME CENTERS, LLC, a corporation,<br><br>    *Defendant.* | Case No.: 3:23-cv-01335-CAB-JLB<br><br>**Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b) Regarding Judgement**<br><br>Date:    December 2, 2024<br>Judge:  Hon. Cathy Ann Bencivengo<br><br>PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

*Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's*
*Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)*
*Honorable Judge Burkhardt*
*Case No.: 3:23-cv-01335-CAB-JLB*

— 1 —

Appx175

I, Patrick Cummins, declare as follows:

1. I am over the age of eighteen and not a party to this action. I am an attorney licensed to practice law before all Courts of the State of California and am admitted to practice before the Southern District of California. I am counsel at Cummins IP PLLC.

2. I am the attorney of record for the Plaintiff in this matter. I have personal knowledge of the facts stated in this Declaration and, if called to testify, could and would testify competently and under oath to these facts.

3. Exhibit A is a true and correct copy of a page from Ledvance LLC's reply brief in another action involving Plaintiff's Patent. I annotated that same page and included an excerpt of the annotated page in the attached brief.

4. In their reply brief, Ledvance admitted to having a "metal housing" in their accused product. *DS Advanced Enterprises, Ltd. v. Ledvance LLC*, Case No. 1:23-cv-11155-JEK, Doc. No. 82 at pg. 12, lines 9-20 (D. Mass. September 3, 2024).

5. Ledvance's admission was not available until September 3, 2024. Plaintiff's Opposition to Lowe's summary judgment was filed on July 8, 2024. See ¶ 4, *supra*.

6. Ledvance's admission is a new fact that supports granting Plaintiff's Motion per Fed. R. Civ. P. § 59(e) and §52(b).

7. I created the diagrams in the attached reply brief. The diagram at page 5 includes an image I captured of Lowe's Accused Product's reflective paper, diffuser lens, hoop, and accused metal housing. The Accused Product is sold with the diffuser lens and reflective paper disposed within, and housed by, the accused metal housing.

In accordance with 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)*
*Honorable Judge Burkhardt*
*Case No.: 3:23-cv-01335-CAB-JLB*

— 1 —

1  Dated: November 25, 2024

2  */s/ Patrick D. Cummins*,

3  Patrick D. Cummins

4  Cummins IP Law PLLC

5  3426 Pepperhill Rd.

6  Lexington, KY 40502

7  Telephone: (502) 445-9800

8  Patrick@CumminsIP.com

9  *Attorney for Plaintiff,*

10    *DS Advanced Enterprises, Ltd.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  *Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's
Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)*
*Honorable Judge Burkhardt*
— 2 —    *Case No.: 3:23-cv-01335-CAB-JLB*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1    LED PCB assembly, LED strip, wire connectors, and ground wires. Defendant has

2    demonstrated the absurdity of this characterization of "metal housing" in § (II)(A),

3    *supra*. Accepting the specification's definition of the "metal housing" as "a base of

4    the complete fixture," Plaintiff's argument regarding the output wires collapses

5    entirely. *See* Dkt 78 at 12 (relying on "metal housing" including the complete fixture).

6        Furthermore, Plaintiff's pleadings make it clear that none of the Ledvance

7    Accused Products use a twist connector to connect the output wires of the junction

8    box to the metal housing under the plain and ordinary meaning of "metal housing".

9    For example, below is an image of Ledvance Product 62884 from the FAC. Dkt. 27

10   at 34. The image shows wires from the junction box connecting to the LED strip

11   through a small hole near the center of the metal housing. These are the only wires

12   connecting between the junction box and the housing. They are never shown with

13   and do not utilize any form of wire connector, let alone a twist connector.



20       The FAC demonstrates this fact over and over again with images for each

22                                          9

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  KATHRYN CALLAGHAN (Bar No. 340145)
   callaghank@higgslaw.com
3  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
4  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
5  Facsimile:   (619) 696-1410

6  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
7  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
8  101 Park Avenue, 28th Floor
   New York, New York 10178
9  Telephone:  (212) 643-7000

10  Attorneys for Defendant LOWE'S HOME
    CENTERS, LLC

11

12

13            **UNITED STATES DISTRICT COURT**

14          **SOUTHERN DISTRICT OF CALIFORNIA**

15

16  DS ADVANCED ENTERPRISES,          Case No. 3:23-cv-01335-CAB-JLB
    LTD., a Corporation,
17                                    **MEMORANDUM IN SUPPORT OF**
               Plaintiff,            **DEFENDANT'S MOTION FOR**
18                                    **SUMMARY JUDGMENT OF NO**
           v.                         **INFRINGEMENT**
19
    LOWE'S HOME CENTERS, LLC, a       **(JURY TRIAL DEMANDED)**
20  Corporation,
                                      DATE:     JULY 15, 2024
21             Defendant.            JUDGE:    THE HONORABLE
                                                CATHY ANN
22                                              BENCIVENGO

23                                    PER CHAMBER RULES, NO ORAL
                                      ARGUMENT UNLESS
24                                    SEPARATELY ORDERED BY THE
                                      COURT
25

26  ///

27  ///

28  ///

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1                                        Case No. 3:23-cv-01335-CAB-JLB

**TABLE OF CONTENTS**

**Page**

I.   PRELIMINARY STATEMENT ........................................................................ 1

II.  STATEMENT OF FACTS ............................................................................. 1

    A.   The '118 Patent ................................................................................. 1

    B.   The Accused Products ...................................................................... 3

    C.   Plaintiff's Shifting Positions ........................................................... 4

III. ARGUMENT ............................................................................................... 4

    A.   THE RELEVANT LEGAL STANDARDS ........................................... 4

        1.   The Standard on Summary Judgment ..................................... 4

        2.   Claim Interpretation .............................................................. 5

        3.   Literal Infringement .............................................................. 5

        4.   Doctrine of Equivalents ........................................................ 5

    B.   THE ACCUSED PRODUCTS DO NOT INFRINGE ........................... 6

        1.   Metal Housing ...................................................................... 6

        2.   The Plurality of Junction Box Output Wires ........................... 8

        3.   The Twist Connector .............................................................. 9

IV.  CONCLUSION .......................................................................................... 12

Appx181

1

## **TABLE OF AUTHORITIES**

2

3

**Page**

4

## **FEDERAL CASES**

5

6

*Aclara Biosciences v. Caliper Techs. Corp.*
    N.D. Cal. Oct. 27, 2000 ................................................................................. 11

7

*Apex Inc. v. Raritan Computer, Inc.*
    325 F.3d 1364 ................................................................................................. 6

8

9

*BabyAge.com, Inc. v. Leachco, Inc.*
    M.D. Pa. Jan. 12, 2009 ................................................................................. 11

10

*Chore-Time Equip., Inc. v. Cumberland Corp.*
    713 F.2d 774 ................................................................................................... 5

11

12

*Desper Prods. v. QSound Lab.*
    157 F.3d 1325 ................................................................................................. 5

13

*DNA Genotek Inc. v. Spectrum Sols. L.L.C.*
    S.D. Cal. May 12, 2023 .................................................................................. 4

14

15

*Eagle Pharmaceuticals Inc. v. Slayback Pharma LLC*
    958 F.3d 1171 ............................................................................................. 6, 7

16

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*
    535 U.S. 722 ................................................................................................... 5

17

18

*General Mills, Inc. v. Hunt-Wesson, Inc.*
    103 F.3d 978 ........................................................................................ 5, 7, 10

19

*Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*
    339 U.S. 605 ................................................................................................... 5

20

21

*Johnson & Johnson Assoc. v. R.E. Serv.*
    285 F.3d 1046 ............................................................................................. 6, 7

22

*Markman v. Westview Instruments, Inc.*
    52 F.3d 967 ..................................................................................................... 5

23

24

*Nike Inc. v. Wolverine World Wide*
    43 F.3d 644 ..................................................................................................... 5

25

*PCS Computer Products, Inc. v. Foxconn International, Inc.*
    355 F.3d 1353 ................................................................................................. 7

26

27

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*
    157 F.3d 866 ................................................................................................... 8

28

Appx182

*Phonometrics, Inc. v. N. Telecom Inc.*
   133 F.3d 1459 ................................................................................................ 5

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*
   843 F.3d 1315 ................................................................................................ 9

*Sage Prods. v. Devon Indus.*
   126 F.3d 1420 .............................................................................................. 11

*SanDisk Corp. v. Kingston Tech. Co.*
   695 F.3d 1348 ................................................................................................ 6

*Seachange Int'l, Inc. v. C-COR Inc.*
   413 F.3d 1361 ................................................................................................ 6

*Shamrock Techs., Inc. v. Medical Sterilization, Inc.*
   903 F.2d 789 .................................................................................................. 4

*Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.*
   507 F. Supp. 2d 214 .................................................................................... 11

*Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*
   520 U.S. 17 ......................................................................................... 6, 10, 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

Appx183

# I.
# PRELIMINARY STATEMENT

Defendant Lowe's Home Centers ("LHC") herein seeks summary judgment of non-infringement in response to the meritless patent infringement claims brought by Plaintiff DS Advanced Enterprises, Ltd. ("Plaintiff"). It is obvious from review of the patent-in-suit that multiple claim elements are wholly absent from the accused products. For purposes of this motion, LHC will focus on three specific claim elements that are lacking from the accused products: (i) a metal housing, (ii) the junction box output wires, and (iii) a twist connector. Standing alone, the absence of any one of these claim elements would nullify Plaintiff's infringement claims and mandate summary judgment on non-infringement grounds. Viewed collectively, this entire case should have never been filed.

No further discovery or claim construction is necessary to determine this motion. Plaintiff has had access to and relied upon the accused products as far back as the filing of the initial Complaint. The accused products are easily understood, particularly with respect to the three missing claim elements, and do not require further discovery. Similarly, there can be no serious dispute about the meaning of the three missing claim terms at issue, which are commonly understood. Indeed, for two of the three missing elements, the proposed constructions of the parties are consistent insofar as they relate to this motion. As summary judgment is ripe on the current record, LHC seeks to avoid the need for burdensome and expensive discovery and claim construction proceedings.

Accordingly, LHC respectfully requests that the Court grant summary judgment of non-infringement and dismiss this case in its entirety.

# II.
# STATEMENT OF FACTS

**A.   The '118 Patent**

The only asserted patent in this case is United States Patent No. 11,054,118 ("the '118 Patent"), entitled "apparatus to detachably attach LED light fixture to

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1                                1                    Case No. 3:23-cv-01335-CAB-JLB

Appx184

1 ceiling or recessed lighting fixture housing." (Declaration of Scott D. Stimpson
2 ("Stimpson Decl."), Ex. A.) Basically, the patent discloses and claims a "downlight"
3 LED that has two different types of clips so that it can be used either with a "new
4 construction" or to "retrofit" existing lighting. With a new construction, a hole is
5 made in the ceiling, and the "new construction clips" are used to secure the light in
6 the ceiling by pinching the ceiling between these clips and an extremity of the light
7 below the ceiling. *See, e.g., id.*, Fig. 8A, new construction clips 104. With a retrofit
8 application, "retrofit clips" are used to secure the light within a cannister that is
9 already in the ceiling. *See, e.g., id.,* Fig. 8B, retrofit clips 102 which hold to the
10 interior of the existing cannister (not shown).

11       The '118 Patent has a single independent claim. That claim, and thus all claims
12 of the patent, requires various components, three of which are relevant to this motion:

13       (1) First, the claims all require a ***metal housing***. *Id.*, 6:18.[1] The patent itself
14 distinguishes metal housings from plastic housings. *See, e.g., id.,* 4:42-43 ("metal
15 housing (108) or plastic housing").

16       (2) Second, the claims all require a ***junction box comprising a plurality of***
17 ***output wires***. *Id.*, 6:20-21. The claims distinguish between wires that are merely held
18 by the junction box (*id.* at 6:19-20: "a junction box ***to hold*** a plurality of connection
19 wirings"), and the wires of the junction box ***itself*** (*id.*, 6:20-21: "wherein the junction
20 box ***comprises*** a plurality of output wires"); *see also, e.g., id.*, 5:20-22 (distinguishing
21 the building wiring from the "free wires" in the junction box to which they are
22 connected); 5:6-7 ("two free wires in the junction box").

23       (3) Third, the claims all require a ***twist connector*** to connect the junction box
24 output wires to the metal housing. *Id.*, 6:22-23. Twist connectors are common
25 connectors that are "twisted" onto the wires.

26

27 [1] Citations to the patent are in the format column; lines. For example, 6:18 is
28 column 6, line 18.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1                               2                    Case No. 3:23-cv-01335-CAB-JLB

Appx185

1  **B.    The Accused Products**

2      The accused LHC products are lighting products designated as Utilitech Items
3  #5041630, #5041631, #5041632, #5041633, and #5041634 (collectively, the
4  "Accused Products").  First Amended Complaint ("FAC"), Dkt. #17, ¶¶ 75-110.

5      For purposes of this motion, the five Accused Products are all the same – they
6  differ only in size, or the number of products inside a box, or by irrelevant features.
7  *See, e.g.,* FAC, Exhibits 4-8 (screenshots of websites showing of all five products).
8  Accordingly, a single representative Accused Product is used here (we are using
9  product #5041630).  Pictures of the housing of the Accused Products are provided
10  below, with the left picture showing the side that is visible on the ceiling, and the right
11  picture showing the side that is concealed against the ceiling or in the cannister.



18      A physical sample is submitted as Stimpson Decl., Ex. B.  As can be seen
19  above, and with the sample, the housing is white; it encloses the internal parts; *and it*
20  *is plastic*.  Declaration of Eric Bretschneider ("Bretschneider Decl."), ¶¶ 12-24.

21      The junction box of the Accused Products has a single wire (not a plurality),
22  and the wire is a ground wire (with the associated green and yellow coloring), not an
23  output wire.  *Id.*, ¶ 25-28.  As shown from FAC ¶ 83 (on page 16):



HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

Appx186

1  The Accused Product does not contain any twist connector.  The only wire
2  connector in the Accused Products is a push-in wire connector.  As shown in FAC ¶
3  83:



## C.    Plaintiff's Shifting Positions

10  Since the inception of this case, Plaintiff's infringement contentions have
11  changed repeatedly -- bouncing from one to another depending on the latest round of
12  infringement correspondence.  *See, e.g.*, Stimpson Decl., Ex. C (warning letter to
13  Plaintiff's counsel, outlining various changes in Plaintiff's analyses).  LHC has
14  warned Plaintiff of the risks it faces in pursuing this case (*see, id.*), but Plaintiff will
15  not voluntarily dismiss the case, thus forcing this motion.

### III.
### ARGUMENT

## A.    THE RELEVANT LEGAL STANDARDS

### 1.    The Standard on Summary Judgment

20  Rule 56 of the Federal Rules of Civil Procedure provides for the entry of
21  summary judgment where there is "no genuine dispute as to any material fact" and
22  when the "movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);
23  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Shamrock Techs., Inc. v.*
24  *Medical Sterilization, Inc.,* 903 F.2d 789, 791 (Fed. Cir. 1990).  "In order to survive
25  summary judgment, a claimant must present affirmative evidence." *DNA Genotek Inc.*
26  *v. Spectrum Sols. L.L.C.*, No. 3:21-CV-00516, 2023 U.S. Dist. LEXIS 86982, at *18
27  (S.D. Cal. May 12, 2023).

28  / / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1                              4                    Case No. 3:23-cv-01335-CAB-JLB

Appx187

1    These standards are fully applicable to patent cases. *See Nike Inc. v. Wolverine*
2  *World Wide*, 43 F.3d 644, 646 (Fed. Cir. 1994). Indeed, the Federal Circuit has
3  emphasized, "[s]ummary judgment is as appropriate in a patent case as it is in any
4  other," *Desper Prods. v. QSound Lab*., 157 F.3d 1325, 1332 (Fed. Cir. 1998) (citations
5  and quotation marks omitted), and has encouraged use of Rule 56 where appropriate,
6  stating that, "[w]here no issue of material fact is present . . . courts should not hesitate
7  to avoid an unnecessary trial by proceeding under Fed. R. Civ. P. 56." *Chore-Time*
8  *Equip., Inc. v. Cumberland Corp*., 713 F.2d 774, 778-79 (Fed. Cir. 1983).

9      **2.   Claim Interpretation**

10    The court construes the meaning of language used in the patent claim as a
11  matter of law. *Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir.
12  1995). "Disputes concerning the meaning of claims do not preclude summary
13  judgment, because the resolution of those disputes is part of the process of claim
14  interpretation, a question of law." *Phonometrics, Inc. v. N. Telecom Inc.,* 133 F.3d
15  1459, 1464 (Fed. Cir. 1998).

16      **3.   Literal Infringement**

17    One way in which a patent claim may be infringed is by "literal" infringement.
18  Literal infringement requires that each element in the asserted claim be literally
19  present in the accused device. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d
20  978, 981 (Fed. Cir. 1997). Put another way, there can be no literal infringement if the
21  accused device lacks any one element of the asserted claims. *Id*.

22      **4.   Doctrine of Equivalents**

23    A lack of literal infringement does not end the infringement inquiry, as
24  infringement may exist under the "doctrine of equivalents." The doctrine of
25  equivalents allows, in some circumstances, a claim element to be met by its substantial
26  equivalent. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722,
27  732-33 (2002) (*citing Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605
28  (1950)).

Higgs Fletcher &
Mack LLP
Attorneys at Law
San Diego

12381876.1            5          Case No. 3:23-cv-01335-CAB-JLB

Appx188

1    There are strict limitations to application of the doctrine of equivalents,
2  however, two of which are applicable here:

3    (1) <u>Vitiation</u>: The concept of "vitiation" limits the doctrine of equivalents
4  under the "all elements rule," which "requires a determination that every claim
5  limitation, or its equivalent, be found in the accused device." *Apex Inc. v. Raritan*
6  *Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003). As the Supreme Court has
7  held, "if a theory of equivalence would entirely vitiate a particular claim element,
8  partial or complete summary judgment should be rendered by the court, as there
9  would be no further material issue for the jury to resolve." *Warner-Jenkinson Co. v.*
10 *Hilton Davis Chem. Co.*, 520 U.S. 17, 39 n.8 (1997).

11    (2) <u>Disclosure-Dedication Doctrine</u>: The disclosure-dedication doctrine states
12 that "when a patent drafter discloses but declines to claim subject matter, . . . this
13 action dedicates the unclaimed subject matter to the public." *Johnson & Johnson*
14 *Assoc. v. R.E. Serv.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (en banc). "By preventing
15 a patentee from recapturing unclaimed subject matter, the disclosure-dedication
16 doctrine reinforces 'the primacy of the claims in defining the scope of the patentee's
17 exclusive right.'" *Eagle Pharmaceuticals Inc. v. Slayback Pharma LLC*, 958 F.3d
18 1171, 1175 (Fed. Cir. 2020), *citing Johnson& Johnson*, 285 F.3d at 1054.

19    Each of these principles are legal limitations on the doctrine of equivalents and
20 can be resolved on summary judgment as a question of law. *See Seachange Int'l, Inc.*
21 *v. C-COR Inc.*, 413 F.3d 1361, 1378 (Fed. Cir. 2005) (application of the all elements
22 rule is a question of law); *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1364
23 (Fed. Cir. 2012) ("Whether the disclosure-dedication rule prevents a patentee from
24 pursuing a doctrine of equivalents infringement theory is a question of law.").

25 **B.    THE ACCUSED PRODUCTS DO NOT INFRINGE**

26    **1.    Metal Housing**

27    Claim 1 requires a metal housing to embody a complete fixture. Stimpson
28 Decl., Ex. A, 6:18. The patent shows the housing as element 108. *See, e.g., id.*, Figs.

Appx189

1   8A, 8B, 3:34-41 (identifying parts, including "metal housing 108"). The parties agree
2   that the housing must be metal. Stimpson Decl., Ex. D, page 5 (Plaintiff's proposed
3   construction of "metal housing" as "a metal structure"); Ex. E (LHC's proposed
4   construction of "metal" as "consisting predominantly of metallic elements").

5       In its efforts to capture the plastic housing of the Accused Products, Plaintiff
6   has floated a variety of theories. These theories have included arguments that trace
7   elements of metal atoms can be found in the plastic; and that the separate metal clips
8   or metal internal parts (*i.e.*, the parts being housed), should be considered parts of the
9   housing itself. *See* Stimpson Decl., Ex. C, at 1-3. All of Plaintiff's arguments have
10  been consistently frivolous. The Accused Products have a housing made of a common
11  plastic. Bretschneider Decl. ¶¶ 12-24. As plastic is not metal, there cannot be literal
12  infringement. *General Mills*, 103 F.3d at 981.

13      Federal Circuit law expressly precludes application of the doctrine of
14  equivalents here. That is, the patent itself distinguishes between metal and plastic,
15  and indeed it expressly provides that the housing could be made of plastic. *See, e.g.*,
16  Stimpson Decl., Ex. A, 4:42-43 ("metal housing (108) or plastic housing"). As the
17  patent disclosed plastic housings, but failed to claim them, the "disclosure-dedication"
18  rule applies, such that plastic housings are dedicated to the public and cannot be
19  captured under the doctrine of equivalents. Indeed, the Federal Circuit has found that
20  disclosures of plastic parts in a specification dedicated those to the public where the
21  claim required metal parts. *PCS Computer Products, Inc. v. Foxconn International,*
22  *Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004) ("We agree with the district court,
23  however, that the specific disclosure that 'other prior art devices use molded plastic
24  and/or metal parts that must be cast or forged which again are more expensive metal
25  forming operations,' . . . dedicated the alternative use of plastic parts to the public.");
26  *see also, e.g., Johnson & Johnson,* 285 F.3d at 1054; *Eagle Pharmaceuticals*, 958
27  F.3d at 1175. Accordingly, there is no infringement by equivalents, either.
28  / / /

1
### 2.    The Plurality of Junction Box Output Wires

2       Claim 1 requires a junction box that "comprises a plurality of output wires."

3 Stimpson Decl., Ex. A, 6:20-21; *see Phillips Petroleum Co. v. Huntsman Polymers*

4 *Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998) ("comprising" is a term of art used in claim

5 language which means that the named elements "are essential").    The claims

6 themselves distinguish between wires that are only ***held*** by the junction box

7 (Stimpson Decl., Ex. A, 6:19-20: "a junction box ***to hold*** a plurality of connection

8 wirings"), and the wires of the junction box ***itself*** (*id.*, 6:20-21: "wherein the junction

9 box ***comprises*** a plurality of output wires").    *See also, e.g., id.* at 5:20-22

10 (distinguishing the building wiring from the "free wires" in the junction box to which

11 they are connected); 5:6 ("two free wires in the junction box").

12       Plaintiff's infringement theories have varied, and all stretch the bounds of

13 credibility. *See* Stimpson Decl., Ex. C, at 3-4. For example, Plaintiff has pointed to

14 wires unconnected to the junction box that are simply held by the box. Plaintiff has

15 also stripped the single ground wire to argue that the internal copper strands are the

16 plurality of wires (see below on the right from FAC ¶ 83 (on page 18)):

17
18
19
20
21
22



23       The argument is entirely fanciful.  This is not the way Plaintiff itself

24 interpreted the term "wire" before LHC pointed out the deficiencies in Plaintiff's

25 infringement analyses, nor does the patent itself even remotely support this analysis.

26 *See, e.g.,* Stimpson Decl., Ex. A, 1:61 and Fig. 7 ("twist connector (118) attaches the

27 ***output wires***") 5:5-6 (user connecting the "free ***wires***"); 5:20 ("user pulls ***wires*** from

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1                                8                    Case No. 3:23-cv-01335-CAB-JLB

Appx191

1 the building") (all emphases added). None of these disclosures make any sense if a
2 wire is an internal copper strand.

3      Moreover, even if the single wire of the junction box (stripped or not) was in
4 fact a plurality of wires, it is not an "output" wire but a ***ground*** wire – evident by the
5 green and yellow coloring. *See* FAC ¶ 83 (on page 16); Bretschneider Decl. ¶¶ 25-
6 28. Thus, the single wire is not an "output" wire as required by the claims, and thus
7 the "plurality of output wires" of the junction box is entirely missing – there is not
8 even one output wire of the junction box. Even if the wire was an output wire, there
9 could be no infringement as the Federal Circuit has confirmed that a single item
10 cannot meet a "plurality" requirement, literally or equivalently.   *See Power*
11 *Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1344-45 (Fed.
12 Cir. 2016).

13      **3.**    **The Twist Connector**

14      The independent claim of the '118 Patent requires a "twist connector" to attach
15 the output wires of the junction box to the metal housing. Stimpson Decl., Ex. A,
16 6:22. A twist connector is a very common mechanism for connecting two wires,
17 which is "twisted" onto the stripped ends of wires. Bretschneider Decl. ¶¶ 29-30.
18 Twist connectors can also be called "wire twists," or "wire nuts" (which also indicate
19 the twisting action, like any nut would twist onto a bolt). *Id.* These connectors are
20 tapered and have internal conducting metal coils that thread onto the wires as they are
21 twisted, thus securing the wires together. *Id.* Below is a picture of the common twist
22 connector from Wikipedia, showing the internal coil:

23
24
25
26
27
28



End view showing metal inserts

1    The parties agree that a twist connector ***requires a twisting for connection***.
2  Stimpson Decl., Ex. D, page 10 (Plaintiff's proposed construction: "a connector that
3  relies on the act of twisting to make a connection"); Ex. E (LHC's proposed
4  construction: "An electrical connector . . . [that] is twisted onto the wire ends . . ..").
5  A video showing the typical use of a twist connector is found through this link:
6  https://www.youtube.com/watch?v=o-xf6KooHl0&t=84s (last visited June 7, 2024).
7    The Accused Products have ***push-in*** connectors, as shown in the FAC ¶ 83:



14    Push-in connectors are also common connectors, known long before the filing
15  of the earliest application of the '118 Patent. *See, e.g.*, Bretschneider Decl. ¶¶ 31-
16  33; Stimpson Decl., Ex. F (September 2017: "Push-in Wire Connectors Replace
17  Twist-on Wire Connectors"); Stimpson Decl., Ex. G (August 2017: "Compared to
18  twist-on wire connectors, the Minis [push-in connectors] are faster to use and easier
19  on operators' fingers"). A video showing typical use of push-in connectors is found
20  through this link:  https://www.youtube.com/watch?v=dCi88bEBIio&t=1s (last
21  visited June 7, 2024).
22    As the Accused Products lack the required twist connector, they do not literally
23  infringe. *General Mills*, 103 F.3d at 981.
24    There also can be no infringement by equivalents. The claim limitation is
25  simple and unequivocal, and any application of the doctrine of equivalents would
26  vitiate this clear requirement of a very specific type of connector. *See, e.g., Warner-*
27  *Jenkinson*, 520 U.S. at 29 ("It is important to ensure that the application of the doctrine
28  [of equivalents], even as to a single element, is not allowed such broad play as to

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1                    10                    Case No. 3:23-cv-01335-CAB-JLB

Appx193

1  effectively eliminate that element in its entirety"); *Sage Prods. v. Devon Indus.*, 126
2  F.3d 1420, 1423-26 (Fed. Cir. 1997) (*citing Warner-Jenkinson*: the claims defined "a
3  relatively simple structural device" and "no reasonable fact finder could find
4  equivalence"; "[F]or a patentee who has claimed an invention narrowly, there may
5  not be infringement under the doctrine of equivalents in many cases, even though the
6  patentee might have been able to claim more broadly. If it were otherwise, then claims
7  would be reduced to functional abstracts, devoid of meaningful structural limitations
8  on which the public could rely."); *see also, e.g., Van Blarcom Closures, Inc. v. Owens-*
9  *Illinois, Inc.,* 507 F. Supp. 2d 214, 223 (E.D.N.Y. 2006) ("As the *Sage* court held, if
10 an invention is claimed narrowly and precisely, a patent holder cannot later expand
11 his claims through the doctrine of equivalents."); *Aclara Biosciences v. Caliper Techs.*
12 *Corp.*, No. C 99-1968, 2000 U.S. Dist. LEXIS 15940, at *28 (N.D. Cal. Oct. 27, 2000)
13 ("[A] patentee should not be able to show infringement under the doctrine of
14 equivalents if its equivalence theory would contradict specific limitations in the patent
15 claims."); *BabyAge.com, Inc. v. Leachco, Inc.*, No. 3:07-cv-1600, 2009 U.S. Dist.
16 LEXIS 1771, at *19-20 (M.D. Pa. Jan. 12, 2009) (summary judgment of no
17 infringement: "In determining whether a limitation is vitiated, the Federal Circuit
18 Court of Appeals has stressed considerations such as, 'the simplicity of the structure,
19 the specificity and narrowness of the claim, and the foreseeability of variations at the
20 time of filing the claim . . . .'"; citation omitted).

21      In addition to the problem of effectively reading the "twist" connector out of
22 the claims, there can be no equivalents because twist connectors and push-in
23 connectors work in substantially different ways. A twist connector requires a twisting
24 motion to screw the wires together in a single hole in the connector, with the wires
25 wrapping around a metal thread, and it can be used multiple times. Bretschneider
26 Decl. ¶¶ 29-30. In contrast, plug-in connectors work by plugging the wires into
27 different holes of the connector. The plug-in connector of the junction box of the

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1          11          Case No. 3:23-cv-01335-CAB-JLB

Appx194

1   Accused Products is clamped by a blade and is designed for single use. *Id*. at ¶¶ 31-
2   33; *see also* Stimpson Decl., Exhibits F, G.

### IV.
### CONCLUSION

For any or all of the foregoing reasons, LHC's motion for summary judgment of no infringement should be granted, together with such other and further relief which the Court deems just and proper.

Dated:  June 10, 2024                    Respectfully submitted,

HIGGS FLETCHER & MACK LLP


By:    */s/ Peter S. Doody*
        PETER S. DOODY
        KATHRYN CALLAGHAN

        SILLS CUMMIS & GROSS P.C.
        Scott D. Stimpson (Pro Hac Vice)
        Katherine M. Lieb (Pro Hac Vice)
        Linxuan Yan (Pro Hac Vice)

        Attorneys for Defendant LOWE'S HOME
        CENTERS, LLC

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381876.1                          12              Case No. 3:23-cv-01335-CAB-JLB

Appx195

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  KATHRYN CALLAGHAN (Bar No. 340145)
   callaghank@higgslaw.com
3  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
4  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
5  Facsimile:   (619) 696-1410

6  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
7  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
8  101 Park Avenue, 28th Floor
   New York, New York 10178
9  Telephone:  (212) 643-7000

10 Attorneys for Defendant LOWE'S HOME
   CENTERS, LLC

11

12

13             **UNITED STATES DISTRICT COURT**

14            **SOUTHERN DISTRICT OF CALIFORNIA**

15

16 DS ADVANCED ENTERPRISES,            Case No. 3:23-cv-01335-CAB-JLB
   LTD., a Corporation,
17                                      **NOTICE OF MOTION AND**
            Plaintiff,                  **DEFENDANT LOWE'S HOME**
18                                      **CENTERS, LLC'S MOTION FOR**
        v.                             **SUMMARY JUDGMENT OF NO**
19                                      **INFRINGEMENT**
   LOWE'S HOME CENTERS, LLC, a
20 Corporation,                         **(JURY TRIAL DEMANDED)**

21          Defendant.                  DATE:    JULY 15, 2024
                                        JUDGE:   THE HONORABLE
22                                               CATHY ANN
                                                 BENCIVENGO
23
                                        PER CHAMBER RULES, NO ORAL
24                                      ARGUMENT UNLESS
                                        SEPARATELY ORDERED BY THE
25                                      COURT

26

27 ///

28 ///

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO
        12381846.1                                    Case No. 3:23-cv-01335-CAB-JLB

                              Appx196

1  **TO THE PARTIES AND THEIR COUNSEL OF RECORD:**

2  **PLEASE TAKE NOTICE** that on July 15, 2024, or as soon thereafter as the

3  matter may be heard before the Honorable Cathy Ann Bencivengo in Courtroom 15A

4  of the United States District Court for the Southern District of California, located at

5  333 West Broadway, San Diego, California 92101, Defendant LOWE'S HOME

6  CENTERS, LLC ("LHC") will, and hereby does, move for an order granting summary

7  judgment of no infringement.

8  There is no genuine dispute of material fact; the undisputed evidence proves

9  this action has no merit; and LOWE'S HOME CENTERS, LLC ("LHC") is entitled

10  to judgment as a matter of law on all claims, as more particularly described below,

11  and in LHC's accompanying papers.

12  This Motion is based on the Notice of Motion and Motion, the Memorandum

13  in support thereof, Declaration of Dr. Eric Bretschneider in support thereof,

14  Declaration of Scott D. Stimpson in support thereof, all pleadings and papers filed in

15  this action, and such other and further matters as the Court may consider.

16

17  Dated: June 10, 2024                 HIGGS FLETCHER & MACK LLP

18

19

20                                    By:      _/s/ Peter S. Doody_
                                              PETER S. DOODY
21                                            KATHRYN CALLAGHAN

22                                            SILLS CUMMIS & GROSS P.C.
23                                            Scott D. Stimpson (Pro Hac Vice)
                                              Katherine M. Lieb (Pro Hac Vice)
24                                            Linxuan Yan (Pro Hac Vice)

25                                            Attorneys for Defendant LOWE'S HOME
26                                            CENTERS, LLC

27

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

12381846.1                    2              Case No. 3:23-cv-01335-CAB-JLB

Appx197

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  KATHRYN CALLAGHAN (Bar No. 340145)
   callaghank@higgslaw.com
3  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
4  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
5  Facsimile:   (619) 696-1410

6  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
7  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
8  101 Park Avenue, 28th Floor
   New York, New York 10178
9  Telephone:  (212) 643-7000

10  Attorneys for Defendant LOWE'S HOME
    CENTERS, LLC

11

12

13              **UNITED STATES DISTRICT COURT**

14            **SOUTHERN DISTRICT OF CALIFORNIA**

15

16  DS ADVANCED ENTERPRISES,          Case No. 3:23-cv-01335-CAB-JLB
    LTD., a Corporation,
17                                    **NOTICE OF LODGMENT IN**
              Plaintiff,              **SUPPORT OF DEFENDANT**
18                                    **LOWE'S HOME CENTERS, LLC'S**
         v.                           **MOTION FOR SUMMARY**
19                                    **JUDGMENT**
    LOWE'S HOME CENTERS, LLC, a
20  Corporation,                      **(JURY TRIAL DEMANDED)**

21            Defendant.              DATE:     JULY 15, 2024
                                      JUDGE:    THE HONORABLE
22                                              CATHY ANN
                                                BENCIVENGO
23
                                      PER CHAMBER RULES, NO ORAL
24                                    ARGUMENT UNLESS
                                      SEPARATELY ORDERED BY THE
25                                    COURT

26

27  / / /

28  / / /

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO
                                              Case No. 3:23-cv-01335-CAB-JLB

1    Defendant Lowes Home Centers, LLC ("LHC") hereby lodges true and correct
2    copies of the following documents in support of LHC's Motion for Summary
3    Judgment of No Infringement.

| | | |
|---|---|---|
| 4 | **Exhibit A** | United States Patent dated July 6, 2021 (Patent No. 11,054,118 B2). |
| 5 | **Exhibit B** | Utilitech Item No. 5041630 (Sample Physically Submitted Under |
| 6 | | Separate Cover to the Court and to Plaintiff's Counsel). |
| 7 | **Exhibit C** | Sills Cummis & Gross Letter dated December 11, 2023, which |
| 8 | | outlines Lowes' position in this matter. |
| 9 | **Exhibit D** | Plaintiff's Claim Construction. |
| 10 | **Exhibit E** | Email Communication Regarding LHC's Proposed Construction. |
| 11 | **Exhibit F** | September 2017 Article Regarding "Push-In Wire Connectors |
| 12 | | Replace Twist-On Wire Connectors." |
| 13 | **Exhibit G** | August 2017 Article Regarding "Hellarmann Tyton's Push-In Wire |
| 14 | | Connector Now 40% Smaller." |

15

16   Dated:  June 10, 2024                    HIGGS FLETCHER & MACK LLP

17

18

19                                    By:  _____/s/ Peter S. Doody_____
20                                         PETER S. DOODY
                                          KATHRYN CALLAGHAN
21
22                                         SILLS CUMMIS & GROSS P.C.
                                          Scott D. Stimpson (Pro Hac Vice)
23                                         Katherine M. Lieb (Pro Hac Vice)
                                          Linxuan Yan (Pro Hac Vice)
24
25                                         Attorneys for Defendant LOWE'S HOME
                                          CENTERS, LLC
26

27

28

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
3  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
4  Facsimile:   (619) 696-1410

5  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
6  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
7  101 Park Avenue
   New York, NY 10178
8  Telephone: (212) 643-7000

9  Attorneys for Defendant LOWE'S HOME
   CENTERS, LLC
10

11            **UNITED STATES DISTRICT COURT**

12          **SOUTHERN DISTRICT OF CALIFORNIA**

13

14  DS ADVANCED ENTERPRISES,              Case No. 3:23-cv-01335-CAB-JLB
    LTD., a corporation,
15                                        **DECLARATION OF SCOTT D.**
            Plaintiff,                    **STIMPSON IN SUPPORT OF**
16                                        **DEFENDANT'S MOTION FOR**
         v.                               **SUMMARY JUDGMENT OF NO**
17                                        **INFRINGEMENT**
    LOWE'S COMPANIES, INC., A
18  CORPORATION, LOWE'S HOME              JUDGE:   THE HONORABLE
    CENTERS, LLC, A CORPORATION,                   CATHY ANN
19  LF, LLC, A CORPORATION, and                    BENCIVENGO
    YANKON LIGHTING, INC., A
20  CORPORATION,                          PER CHAMBER RULES, NO ORAL
                                          ARGUMENT UNLESS
21         Defendants.                    SEPARATELY ORDERED BY THE
                                          COURT
22

23
          I, Scott D. Stimpson, declare as follows:
24
          1.    I am a Member at the law firm of Sills Cummis & Gross P.C., 101 Park
25
    Avenue, 28th Floor, New York, New York 10178, attorneys for defendant Lowe's
26
    Home Centers ("LHC") in this litigation. I submit this declaration in support of
27

28

HIGGS FLETCHER &
MACK LLP                                                    Case No. 3:23-cv-01335-CAB-JLB
ATTORNEYS AT LAW
SAN DIEGO

Appx200

1 | LHC's Motion for Summary Judgment of Non-Infringement. I have personal
2 | knowledge of the facts set forth herein and can testify competently thereto.

3 |    2.    Attached hereto as Exhibit A is a true and correct copy of United States
4 | Patent No. 11,054,118.

5 |    3.    Exhibit B is a physical sample of the accused product Utilitech Item
6 | #5041630, which LHC is submitting under separate cover.

7 |    4.    Attached hereto as Exhibit C is a true and correct copy of a letter that
8 | LHC transmitted to plaintiff DS Advanced Enterprises, Ltd. ("Plaintiff"), dated
9 | December 11, 2023.

10 |    5.    Attached hereto as Exhibit D is a true and correct copy of Plaintiff's
11 | Preliminary Claim Construction Worksheet, dated June 3, 2024.

12 |    6.    Attached hereto as Exhibit E is a true and correct copy of an email that
13 | LHC transmitted to Plaintiff, dated June 3, 2024.

14 |    7.    Attached hereto as Exhibit F is a true and correct copy of an article
15 | titled "Push-in Wire Connectors Replace Twist-on Wire Connectors," dated
16 | September 29, 2017, and authored by Paul Shepard, available at
17 | https://eepower.com/new-industry-products/push-in-wire-connectors-replace-twist-
18 | on-wire-connectors/ (last visited June 4, 2024).

19 |    8.    Attached hereto as Exhibit G is a true and correct copy of an article
20 | titled "HellermannTyton's push-in wire connector now 40% smaller," dated August
21 | 31, 2017, and authored by Kelly Pickerel, available at
22 | https://www.solarpowerworldonline.com/2017/08/hellermanntytons-push-wire-
23 | connector-now-40-smaller/ (last visited June 4, 2024).

24 |    I declare under penalty of perjury that the foregoing is true and correct.

25 |
26 | Dated: June 7, 2024

27 |                                                Scott D. Stimpson

28 |

Appx201

PETER S. DOODY (Bar No. 127653)
Doody@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:  (619) 236-1551
Facsimile:   (619) 696-1410

SCOTT D. STIMPSON (Pro Hac Vice)
KATHERINE M. LIEB (Pro Hac Vice)
LINXUAN YAN (Pro Hac Vice)
SILLS CUMMIS & GROSS P.C.
101 Park Avenue
New York, NY 10178
Telephone: (212) 643-7000

Attorneys for Defendant LOWE'S HOME
CENTERS, LLC

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| DS ADVANCED ENTERPRISES, LTD., a corporation, | Case No. 3:23-cv-01335-CAB-JLB |
|---|---|
| Plaintiff, | |
| v. | **DECLARATION OF DR. ERIC BRETSCHNEIDER** |
| LOWE'S COMPANIES, INC., A CORPORATION, | |
| Defendant. | |

I, Eric Bretschneider, do hereby declare and state as follows:

### BACKGROUND AND QUALIFICATIONS

1.  I submit this declaration in support of Lowe's Home Center's Motion for Summary Judgment of No Infringement.

2.  I have over 30 years of experience with lighting and LEDs, including a comprehensive background on the full range of LED production technologies, including substantial experience in product development, package design, and manufacturing.

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

1

7555291.v5

Appx202

1      3.     I have a Ph.D. in chemical engineering from the University of Florida,
2  with a focus on the development of optoelectronic devices.

3      4.     Since 2014, I have been the Chief Technology Officer at EB Designs &
4  Technology. In that capacity, I am (among other things) responsible for the design
5  of solid-state lighting technologies for clients ranging from startups to Fortune 100
6  companies.

7      5.     I previously served as a member of the University of Florida
8  Department of Chemical Engineering Advisory Board from 1998 until 2023. I have
9  been a Conference Chair for LED Measurement and Standards. I am also a member
10  of a number of professional societies, including SPIE, Materials Research Society,
11  Illuminating Engineering Society (I am a member of the Science Advisory Panel as
12  well as a member of numerous committees, most notably the IES Test Procedures
13  Committee where I chair the Solid-State Lighting subcommittee).

14      6.     Prior to my position at EB Designs & Technology, in 2013-2014, I
15  served as the Director of Engineering at HeathCo, LLC. In that capacity, I was
16  responsible for advanced technology/product development related to solid state
17  lighting, sensors, notifications, and control products.

18      7.     Prior to my position as Director of Engineering at HeathCo, between
19  2011 and 2013, I was positioned at the Elec-Tech International Co., Ltd., where I
20  held the positions of Chief Engineer, ETi Lighting Research Institute and VP of
21  Research and Development, ETi Solid State Lighting. In that capacity, my
22  responsibilities included developing all technology and product roadmaps for
23  markets in North America, China, Europe, and Japan.

24      8.     Between 2008 and 2011, I was positioned at Lighting Science Group
25  Corp., first as a product development manager, and my responsibilities included
26  developing solid state lighting products, then as VP of Research, and my
27  responsibilities included developing advanced LED models for product development
28  and production control.

Higgs Fletcher &
Mack LLP
Attorneys at Law
San Diego

2      Case No. 3:23-cv-01335-CAB-JLB

7555291.v5

Appx203

1      9.    I have also authored and presented more than 50 times in this field, and

2  I am a named inventor on about 45 patents, many related to LED and light fixtures.

3      10.    I earned my BSE in Chemical Engineering from Tulane University in

4  1989. I earned a Ph.D. in Chemical Engineering from the University of Florida in

5  1997, where my graduate work focused on development of optoelectronic devices,

6  including novel silicon based visible LEDs and sulfide based TFELD structures and

7  zinc selenide blue LEDs.

8      11.    Based on the above education and experience, I believe that I have an

9  extensive and detailed understanding of the state of the art in LED lighting design

10  during the relevant period, as well as a sound basis for opining how persons of skill

11  in the art at that time of the alleged invention would understand the technical issues

12  in this case.

13      A copy of my curriculum vitae is attached hereto as **Appendix A**.

14             **THE LOWE'S HOUSING IS COMMON PLASTIC**

15      12.    I have reviewed physical samples of several LED light fixture products

16  of LHC, specifically Utilitech SKUs #5041630, #5041631, #5041632, #5041633,

17  and #5041634.

18      13.    I was asked to determine the makeup of the housing of those fixtures.

19      14.    My review showed, unequivocally, that the housings are all comprised

20  of common thermoformable plastic materials.  This is evident from any physical

21  inspection of the products.

22      15.    To further confirm these housings are plastic, I took apart the units.

23  There are clear imprints from tool marks from the machining of the injection mold

24  which would only show up for injection molded plastic parts.

25      16.    Injection molded plastic parts will include gate marks on one or more

26  surfaces.  Gates are portions of the mold that allow molten thermoplastics to be

27  injected into the mold cavity and are closed prior to allowing the thermoplastic to

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

3      Case No. 3:23-cv-01335-CAB-JLB

7555291.v5

1    cool. Several gate marks are present on the same surface of the housing which
2    further support the conclusion that the housing is a plastic part and not a metal part.

3       17.    The presence of mold tooling marks on the housing of the Accused
4    Products by itself is sufficient to confirm that the parts are plastic based and formed
5    from an injection molding process and not metal as required by claim 1 of the '118
6    Patent.

7       18.    The image below shows the inner surface of the back of the housing of
8    SKU# 5041632. Trochoidal tooling marks from the inner surface of the injection
9    mold and gate marks are clearly visible. Trochoidal tooling marks also indicate a
10    plastic part.



26       19.    These marks would not be present after die casting a metal part, which
27    would involve filling a mold with a molten metal which is allowed to cool and
28    solidify before it is ejected from the mold. The contraction of the metal part from

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

4     Case No. 3:23-cv-01335-CAB-JLB

7555291.v5

Appx205

1  the temperature difference would rapidly remove any tooling marks on mold
2  surfaces.

3      20.    I have reviewed a "PIXE" analysis provided by Plaintiff in this
4  litigation and attached to the Amended Complaint as Exhibit 29. That analysis is
5  further confirmation that the material is a plastic – if the housing was metal the
6  analysis would show nearly 100% metallic elements, not the tiny percentages of
7  metals in this analysis. Indeed, tiny amounts of metallic elements are expected in
8  any opaque plastic.

9      21.    The largest percentages of metals in this analysis are titanium (2.006%)
10  and aluminum (less than 1%). These minor amounts of metallic elements are clearly
11  within expectations. Upon inspection, it is evident that the housing is a white,
12  plastic material. The most common filler material for white plastic is titanium
13  dioxide ($TiO_2$). Titanium dioxide is commonly used for materials when a high
14  reflectivity across the visible spectrum is desired, and it is the primary pigment or
15  filler material in white paint or white plastics (these housings of these products are
16  all made from white plastic materials).

17      22.    Additional filler materials may be added in small quantities to subtly
18  alter the visual appearance of white plastic including mica ($KAl_2$
19  $(AlSi_2O_{10})(F,OH)_2$), marble/limestone/chalk (calcium carbonate – $CaCO_3$), alumina
20  ($Al_2O_3$), and silica ($SiO_2$). The tiny amounts of metallic elements detected by PIXE
21  analysis are almost certainly from the fillers in the thermoplastic that render it white
22  and are not present as metal or alloys.

23      23.    It is further noted that PIXE analysis determines the atomic
24  composition and is not suitable for determining if a component is metal. For
25  example, a ruby is primarily $Al_2O_3$ with some chromium and iron impurities. A
26  PIXE analysis would reveal aluminum, chrome, and iron, but a ruby is a gemstone
27  and is clearly not a metal.
28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

5        Case No. 3:23-cv-01335-CAB-JLB

7555291.v5

Appx206

1    24.    In summary, the small amounts of metallic elements detected by PIXE
2  analysis are entirely consistent with a plastic housing with minor amounts of white
3  filler materials.  No person of skill in this art would ever confuse the thermoplastic
4  housing of the LHC products with a metal housing.

5        **THE LHC JUNCTION BOX HAS ONLY A SINGLE GROUND WIRE**

6    25.    The LHC junction box has a single wire, colored green and yellow.

7    26.    A person of ordinary skill in the art would be know that wires can be
8  constructed using a single (thick) conductor or multiple (thin) conductors.  The
9  choice of single or multiple conductors affects the flexibility of the wire with
10  increasing numbers of strands resulting in more flexible wire that is less susceptible
11  to work hardening.

12    27.    Plaintiff identifies a wire with a green and yellow insulator which
13  indicates its intended purpose is to function as a ground wire – a wire for safely
14  discharging any excess electricity or voltage to the ground.  This purpose is
15  consistent with it being connected to the interior of the junction box with a lug
16  terminal.

17    28.    A person of ordinary skill in the art would understand output wires to
18  be wires that conduct electricity to a component, in the present example, the LED
19  module.  For this reason, a person of ordinary skill in the art understands that the
20  ground wire is not an output wire as it does not conduct electricity to the LED
21  module.

22        **TWIST CONNECTORS AND PUSH CONNECTORS**

23    29.    A twist connector is a very common mechanism for connecting two
24  wires, which is "twisted" onto the stripped ends of wires.  Twist connectors can also
25  be called "wire twists," or "wire nuts" (which also indicates the twisting action, like
26  any nut would twist onto a bolt).  These connectors are tapered and have internal
27  conducting metal threads that cut into the surface of the conductors of one or more

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

6        Case No. 3:23-cv-01335-CAB-JLB

7555291.v5

1  wires as they are twisted.  When the conductors of more than one wire are secured
2  in this manner, electrical current freely passes between the joined wires.

3        30.     Twist connectors are multiple use connectors and can be easily
4  removed to allow wires to be separated after installation.  Common twist connectors
5  are shown below.



6
7
8
9
10

11       31.     Another type of wire connector is a push-in wire connector.  A push-in
12  wire connector like that shown below, uses a tapered blade mechanism to secure and
13  make electrical contact to the exposed conductors of wires.  The tapered blades of
14  push-in connectors are designed to spread open when conductors are inserted in a
15  manner in which they will clamp onto and secure the conductor, preventing it from
16  being removed.  As such, these types of push-in connectors are single use
17  connectors.  Once wires are installed, they cannot be removed without damaging the
18  connector or the wires.

19
20
21
22
23  
24
25
26
27
28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

7                    Case No. 3:23-cv-01335-CAB-JLB

7555291.v5

Appx208

1    32.    All the connectors used in the LHC products are push-in connectors,
2  not twist connectors.  The connector in the Accused Products that attaches the
3  output wires of the junction box to the housing (as required by the claims) is the
4  type of connector shown and described above.  It is my opinion that a person of
5  ordinary skill in the art would not confuse a push-in connector with a twist
6  connector as they are visually distinct and operate on entirely different principles.

7    33.    Both twist connectors and push connectors have been available for
8  years, long before the alleged 2018 priority date of Plaintiff's patent.

9    I declare under penalty of perjury that the foregoing is true and correct.

10

11  Dated: June 7, 2024

Dr. Eric Bretschneider

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HIGGS FLETCHER &
MACK LLP
ATTORNEYS AT LAW
SAN DIEGO

8                    Case No. 3:23-cv-01335-CAB-JLB

7555291.v5

Appx209

# EXHIBIT A

US011054118B2

(12) **United States Patent**
Sherman

(10) Patent No.: **US 11,054,118 B2**
(45) Date of Patent: **Jul. 6, 2021**

(54) **APPARATUS TO DETACHABLY ATTACH LED LIGHT FIXTURE TO CEILING OR RECESSED LIGHTING FIXTURE HOUSING**

(71) Applicant: **David Sherman**, Boca Raton, FL (US)

(72) Inventor: **David Sherman**, Boca Raton, FL (US)

(*) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **16/392,731**

(22) Filed: **Apr. 24, 2019**

(65) **Prior Publication Data**

US 2021/0140610 A1 May 13, 2021

(51) **Int. Cl.**
| | |
|---|---|
| *F21V 21/04* | (2006.01) |
| *F21V 17/12* | (2006.01) |
| *F21V 21/088* | (2006.01) |
| *F21Y 115/10* | (2016.01) |

(52) **U.S. Cl.**
CPC .............. *F21V 17/12* (2013.01); *F21V 21/04* (2013.01); *F21V 21/088* (2013.01); *F21Y 2115/10* (2016.08)

(58) **Field of Classification Search**
CPC ...... F21V 21/04; F21V 21/044; F21V 21/047; F21V 21/088; F21V 17/162
USPC ........................................................ 362/147
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,957,572 A | * | 9/1999 | Wedekind .............. F21V 21/04 |
| | | | 362/365 |
| 7,909,487 B1 | * | 3/2011 | Venetucci .............. F21S 8/02 |
| | | | 362/147 |

| | | | |
|---|---|---|---|
| 8,894,253 B2 | * | 11/2014 | Rowlette, Jr. ......... F21V 29/004 |
| | | | 362/373 |
| 10,393,359 B1 | * | 8/2019 | Qi ...................... F21V 21/044 |
| 2009/0097262 A1 | * | 4/2009 | Zhang ................. F21S 8/026 |
| | | | 362/364 |
| 2009/0273938 A1 | * | 11/2009 | Wronski ................ F21S 8/02 |
| | | | 362/346 |
| 2010/0053950 A1 | * | 3/2010 | Higuchi ................ F21S 8/026 |
| | | | 362/234 |
| 2012/0044704 A1 | * | 2/2012 | Wilson ................. F21S 8/026 |
| | | | 362/365 |
| 2012/0182744 A1 | * | 7/2012 | Santiago ............... F21S 8/026 |
| | | | 362/365 |
| 2014/0254177 A1 | * | 9/2014 | Danesh ................. F21V 21/30 |
| | | | 362/363 |
| 2015/0233537 A1 | * | 8/2015 | Athalye ............... F21V 7/0066 |
| | | | 362/147 |
| 2015/0260383 A1 | * | 9/2015 | Wilcox ................ F21S 8/026 |
| | | | 362/294 |
| 2015/0338071 A1 | * | 11/2015 | Feit ................... F21S 8/036 |
| | | | 362/370 |

(Continued)

*Primary Examiner* — Christopher M Raabe

(57) **ABSTRACT**

Disclosed is an apparatus to detachably attach an LED light fixture to a ceiling or a recessed lighting fixture housing. The apparatus comprises retrofit clips (102), a plurality of new construction clips (104), connecting posts (106), metal housing (108), screw holes (110), complete fixture (112), junction box (116), and twist connector (118). The retrofit clips (102) are adaptable to attach with the metal housing (108) of the LED light fixture by screwing them into screw holes (110). The connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies the complete fixture (112). The junction box (116) holds connection wirings and may hold an LED driver. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108).

**5 Claims, 5 Drawing Sheets**



**US 11,054,118 B2**

Page 2

(56)                 **References Cited**

U.S. PATENT DOCUMENTS

2017/0059102 A1 *   3/2017   Grant ...................... F21S 8/026
2018/0266635 A1 *   9/2018   Dong ...................... F21S 8/026
2018/0313524 A1 *   11/2018  Vidal ..................... F21V 23/009

* cited by examiner



FIG. 1

FIG. 2a



**FIG. 2b**

**FIG. 3**



**FIG. 4**



**FIG. 5**



**FIG. 6**



**FIG. 7**



FIG.8A

FIG.8B

US 11,054,118 B2

1

## APPARATUS TO DETACHABLY ATTACH LED LIGHT FIXTURE TO CEILING OR RECESSED LIGHTING FIXTURE HOUSING

### TECHNICAL FIELD

The present invention is generally related to an apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing.

### BACKGROUND

The subject matter discussed in the background section should not be assumed to be prior art merely as a result of its mention in the background section. Similarly, a problem mentioned in the background section or associated with the subject matter of the background section should not be assumed to have been previously recognized in the prior art. The subject matter in the background section merely represents different approaches, which in-and-of-themselves may also be inventions.

Typically, the consumers and/or electricians have to buy different LED recessed light fixtures for new construction installations and retrofit installations. Currently, various mounting clips are used either for retrofit or new construction applications. This specification recognizes the problems faced by the consumers and/or electricians while installing the LED recessed light fixtures. Additionally, it is recognized in this specification that an apparatus for retrofit and new construction applications can reduce the amount of inventory carried by lighting distributors.

Thus, in view of the above, there is a long-felt need in the industry to address the aforementioned deficiencies and inadequacies.

Further limitations and disadvantages of conventional and traditional approaches will become apparent to one of skill in the art through comparison of described systems with some aspects of the present disclosure, as set forth in the remainder of the present application and with reference to the drawings.

### SUMMARY OF THE INVENTION

An apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing is provided substantially, as shown in and/or described in connection with at least one of the figures, as set forth more completely in the claims.

The apparatus comprises a plurality of retrofit clips (102), a plurality of new construction clips (104), a plurality of connecting posts (106), a metal housing (108), a plurality of screw holes (110), a complete fixture (112), a socket adapter (114), a junction box (116), and a twist connector (118). The plurality of retrofit clips (102) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (110). The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies the complete fixture (112). The junction box (116) holds the plurality of connection wirings. The junction box (116) comprises a plurality of output wires. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108). The socket adapter (114) replaces a light bulb in the recessed lighting fixture housing.

In an aspect, the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108).

2

In an aspect, the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories.

In an aspect, the junction box (116) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

Accordingly, one advantage of the present system and method is that it provides both a retrofit application and a new construction application embodied in the same LED light fixture.

Accordingly, one advantage of the present invention is that it allows lighting retailers and distributors to carry only one set of inventory, thus saving money and warehouse space.

These features and advantages of the present disclosure may be appreciated by reviewing the following description of the present disclosure, along with the accompanying figures wherein like reference numerals refer to like parts.

### BRIEF DESCRIPTION OF DRAWINGS

The accompanying drawings illustrate the embodiments of apparatus, methods, and other aspects of the disclosure. Any person with ordinary skills in the art will appreciate that the illustrated element boundaries (e.g., boxes, groups of boxes, or other shapes) in the figures represent an example of the boundaries. In some examples, one element may be designed as multiple elements, or multiple elements may be designed as one element. In some examples, an element shown as an internal component of one element may be implemented as an external component in another and vice versa. Furthermore, the elements may not be drawn to scale.

Various embodiments will hereinafter be described in accordance with the appended drawings, which are provided to illustrate, not limit, the scope, wherein similar designations denote similar elements, and in which:

FIG. 1 illustrates an exemplary view of retrofit clips and new construction clips, in accordance with at least one embodiment.

FIG. 2a illustrates an exemplary view of connecting post and metal housing, in accordance with at least one embodiment.

FIG. 2b illustrates an exemplary view of the metal housing, in accordance with at least one embodiment.

FIG. 3 illustrates an exemplary view of new construction clips and screw holes, in accordance with at least one embodiment.

FIG. 4 illustrates an exemplary view of connecting post, in accordance with at least one embodiment.

FIG. 5 illustrates an exemplary view of the socket adapter, in accordance with at least one embodiment.

FIG. 6 illustrates an exemplary view of the complete fixture, in accordance with at least one embodiment.

FIG. 7 illustrates an exemplary view of the junction box and twist connector, in accordance with at least one embodiment.

FIG. 8a illustrates a first exemplary view of a permanently installed junction box, in accordance with at least one embodiment.

FIG. 8b illustrates a second exemplary view of the permanently installed junction box, in accordance with at least one embodiment.

### DETAILED DESCRIPTION

The present disclosure is best understood with reference to the detailed figures and description set forth herein. Various embodiments have been discussed with reference to

US 11,054,118 B2

3

the figures. However, those skilled in the art will readily appreciate that the detailed descriptions provided herein with respect to the figures are merely for explanatory purposes, as the methods and systems may extend beyond the described embodiments. For instance, the teachings presented, and the needs of a particular application may yield multiple alternative and suitable approaches to implement the functionality of any detail described herein. Therefore, any approach may extend beyond certain implementation choices in the following embodiments.

References to "one embodiment," "at least one embodiment," "an embodiment," "one example," "an example," "for example," and so on indicate that the embodiment(s) or example(s) may include a particular feature, structure, characteristic, property, element, or limitation but that not every embodiment or example necessarily includes that particular feature, structure, characteristic, property, element, or limitation. Further, repeated use of the phrase "in an embodiment" does not necessarily refer to the same embodiment.

Methods of the present invention may be implemented by performing or completing manually, automatically, or a combination thereof, selected steps or tasks. The term "method" refers to manners, means, techniques and procedures for accomplishing a given task including, but not limited to, those manners, means, techniques, and procedures either known to, or readily developed from known manners, means, techniques and procedures by practitioners of the art to which the invention belongs. The descriptions, examples, methods, and materials presented in the claims and the specification are not to be construed as limiting but rather as illustrative only. Those skilled in the art will envision many other possible variations within the scope of the technology described herein.

The present specification describes an apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing. The apparatus comprises a plurality of retrofit clips (102), a plurality of new construction clips (104), a plurality of connecting posts (106), a metal housing (108), a plurality of screw holes (110), a complete fixture (112), a socket adapter (114), a junction box (116), and a twist connector (118).

FIG. 1 illustrates an exemplary view (100) of retrofit clips (102) and new construction clips (104), in accordance with at least one embodiment. The plurality of retrofit clips (102) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (110), shown in FIG. 3.

FIG. 2a illustrates an exemplary view (200a) of connecting post (106) and metal housing (108), in accordance with at least one embodiment. The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies a complete fixture (112), shown in FIG. 6. FIG. 2b illustrates an exemplary view (200b) of metal housing (108), in accordance with at least one embodiment.

FIG. 3 illustrates an exemplary view (300) of new construction clips (104) and screw holes (110), in accordance with at least one embodiment. FIG. 4 illustrates an exemplary view (400) of the connecting post (106), in accordance with at least one embodiment.

FIG. 5 illustrates an exemplary view (500) of socket adapter (114), in accordance with at least one embodiment. The socket adapter (114) replaces a light bulb in the recessed lighting fixture housing.

FIG. 6 illustrates an exemplary view (600) of a complete fixture (112), in accordance with at least one embodiment. In an embodiment, the new construction clips (104) squeeze

4

ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108). In an embodiment, the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories. Examples of the electrical systems include but not limited to the LED driver, an LED PCB assembly, and an LED strip. Further, examples of the accessories include but not limited to wire connectors, and ground wire.

FIG. 7 illustrates an exemplary view (700) of the junction box (116) and twist connector (118), in accordance with at least one embodiment. The junction box (116) holds a plurality of connection wirings. The junction box (116) comprises a plurality of output wires. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108). In an embodiment, the junction box (116) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

In operation, if the existing recessed housing is present, the retrofit clips (102) make a friction fit inside the existing recessed lighting fixture housing to secure the complete fixture (112) inside. In case, the existing recessed housing is not present the new construction clips (104) are attached to the connecting posts (106).

In an embodiment, the present apparatus may be manufactured by die casting a metal housing (108). The metal housing (108) is a base of the complete fixture (112) containing two connecting posts (106), to attach new construction clips (104) and nine screw holes (110) (each retrofit clips uses 3 screws), at 120 degrees, to accept the retrofit clip (102). In an embodiment, the junction box (116) is made from sheet metal, stamped steel or plastic, configured into a hexagonal, or a round shape, including several side holes to be used for wiring. Further, the LED driver may installed inside the junction box (116). In an exemplary embodiment, the present apparatus may be manufactured by plastic injection molding to obtain a plastic housing.

FIG. 8a illustrates a first exemplary view (800a) of a permanently installed junction box (116), in accordance with at least one embodiment. FIG. 8b illustrates a second exemplary view (800b) of the permanently installed junction box, in accordance with at least one embodiment. The junction box (116) is permanently attached to the metal housing (108) or plastic housing. The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, the output wire connections are internally arranged and cannot be seen by the user. FIG. 8a and FIG. 8b also depict the placement of the new construction clip (104), connecting posts (106), and retrofit clips (102) when junction box (116) is permanently attached to the metal housing (108) or the plastic housing.

In an embodiment, the components of the present apparatus such as the plurality of retrofit clips (102), the plurality of new construction clips (104), the metal housing (108), the plurality of screw holes (110), the complete fixture (112), the socket adapter (114), the junction box (116), and the twist connector (118) are reconfigurable and the new construction clips (104) are attached to the connecting posts (106), or to a different connecting method.

In a real-time use, a user such as consumers or electricians has to decide whether the installation of the complete fixture (112) is retrofit or new construction application and then selects an appropriate attachment method.

For a retrofit installation, the user removes the light bulb and trims from the existing recessed lighting fixture and exposes the recessed housing. Then the user removes the

US 11,054,118 B2

5

two new construction clips (104) from the metal housing (108) or connecting posts (106) and attaches the three retrofit clips (102) by screwing them with provided screws to the die-cast base or metal housing (108) in the provided screw holes (110). The user then attaches the socket adapter (114) by connecting the two free wires to two free wires in the junction box (116). The socket adapter (114) is screwed into an existing socket and places the junction box (116) on top of the metal housing (108) (if the junction box (116) is not attached to metal housing (108) or plastic housing). The user then pushes the complete fixture (112) and the junction box (116) fully into the existing recessed housing, wherein the junction box (116) is attached with the body of the LED light fixture. The complete fixture (112) is held inside existing recessed housing by the friction of retrofit clips (102) against inside the existing recessed housing.

For the new construction installation, the user cuts a hole in the ceiling of the appropriate size to accommodate the metal housing (108), where the complete fixture (112) is to be located. Then the user pulls wires from the building's electrical system and attaches to free wires in a junction box (116). Then the user attaches the junction box (116) to the LED fixture using the twist connector (118). Then the user pushes junction box (116) through a hole in the ceiling and allows it to rest on inside of the ceiling. The user then pushes new construction clips (104) perpendicular to the ceiling and push through the ceiling hole. Then the user allows the new construction clips (104) to squeeze the ceiling between the new construction clips (104) and extremity of the metal housing (108).

Thus the present apparatus provides a means to attach the LED light fixture to the ceiling directly or into a recessed lighting fixture housing. By providing both retrofit and new construction applications, the present apparatus reduces the amount of inventory carried.

No language in the specification should be construed as indicating any non-claimed element as essential to the practice of the invention.

It will be apparent to those skilled in the art that various modifications and variations can be made to the present invention without departing from the spirit and scope of the invention. There is no intention to limit the invention to the

6

specific form or forms enclosed. On the contrary, the intention is to cover all modifications, alternative constructions, and equivalents falling within the spirit and scope of the invention, as defined in the appended claims. Thus, it is intended that the present invention cover the modifications and variations of this invention, provided they are within the scope of the appended claims and their equivalents.

The invention claimed is:

1. An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing, the apparatus comprises:

  a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);

  a plurality of new construction clips (104);

  a plurality of connecting posts (106) to hold the new construction clips (104);

  a metal housing (108) to embody a complete fixture (112);

  a junction box (116) to hold a plurality of connection wirings, wherein the junction box (116) comprises a plurality of output wires; and

  a twist connector (118) to attach the output wires of the junction box (116) to the metal housing (108), wherein the retrofit clips (102) make a friction fit inside the recessed lighting fixture housing to secure the complete fixture (112) inside, wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present.

2. The apparatus according to claim 1 comprises a socket adapter (114) to replace a light bulb in the recessed lighting fixture housing.

3. The apparatus according to claim 1, wherein the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108).

4. The apparatus according to claim 1, wherein the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories.

5. The apparatus according to claim 1, wherein the junction box (116) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires.

* * * * *

# EXHIBIT B

## Utilitech Item #5041630
## (Sample Submitted Under
## Separate Cover)

# EXHIBIT C

# Sills Cummis & Gross

A Professional Corporation

101 Park Avenue
28th Floor
New York, New York  10178
Tel: (212) 643-7000
Fax (212) 643-6500

Scott D. Stimpson
Member
Admitted In NY
Direct Dial:  212-500-1550
Email: sstimpson@sillscummis.com

The Legal Center
One Riverfront Plaza
Newark, NJ 07102
Tel: (973) 643-7000
Fax: (973) 643-6500

December 11, 2023

<u>**VIA EMAIL AND REGULAR MAIL**</u>

Patrick Cummins, Esq.
Cummins IP PLLC
3426 Pepperhill Road
Lexington, KY 40502

>        Re:    <u>**DS Enterprises v. Lowe's**</u>

Dear Patrick:

While it is not my style to start litigations on such an acrimonious note, we are deeply concerned with the lack of merit to the infringement case brought against Lowe's Home Centers ("LHC"), and we urge you and your client to immediately dismiss all remaining claims.  If the claims are dropped promptly, and only if they are dropped promptly, we will forego requests for all Lowe's fees.

## <u>The Accused Products Clearly Do Not Infringe</u>

**1.     <u>The Metal Housing to Embody the Entire Fixture</u>**

The only independent claim in the '118 patent, and thus all claims, requires a "***<u>metal</u>* housing *<u>to</u> <u>embody a complete fixture</u>*."  In your warning letter to Lowe's and in the original complaint, trying to find anything "metal" in the accused products, you disassembled the accused products, identifying an ***<u>internal</u>*** structure for this claim language.  The assembled and disassembled products are shown below (both from the original complaint, ¶ 31):

10098739 v1

**Sills Cummis & Gross**
A Professional Corporation

Patrick Cummins, Esq.
December 11, 2023
Page 2



Assembled · Disassembled

Obviously, an internal part does not embody the entire fixture. We pointed out this flaw in our motion to dismiss the willfulness allegation in the original complaint, and you amended the complaint to now accuse entirely different structure (the "white portions") as meeting this housing requirement. From the First Amended Complaint ("FAC"), ¶¶ 83, 86:



These "white portions," however, are obviously plastic – not metal as required by the claims. To try to address this glaring deficiency, you have recently obtained an "elemental analysis," attached as Exhibit 29 to the Amended Complaint. This analysis shows trivial, trace amounts of metals in the plastic. Obviously, trace amounts of metals do not convert a plastic into a metal, and your allegation otherwise is entirely frivolous. *See, e.g.*, *Leesona Corp. v. Varta Batteries, Inc.*, 522 F. Supp. 1304, 1326 (S.D.N.Y. 1981) ("small amounts of metal impurities" does not make a structure a "metal" structure).

Any argument of infringement under the doctrine of equivalents would clearly fail. Indeed, the patent specification itself distinguishes between metal and plastic housings, yet the claims only cover metal. *See* the patent, e.g., at 4:34-36 (injection molding "to obtain a plastic housing"); 4:42-43 ("metal housing *or* plastic housing"). Accordingly, DS is precluded by long-established Federal Circuit law from alleging infringement by equivalents. *Johnson & Johnston Assocs. Inc.*

10098739 v1

Appx224

**Sills Cummis & Gross**
A Professional Corporation

Patrick Cummins, Esq.
December 11, 2023
Page 3

*v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002) (*en banc*) ("when a patent drafter discloses but declines to claim subject matter, as in this case, this action dedicates that unclaimed subject matter to the public").

### 2.    The Junction Box Lacks a Plurality of Wires

The independent claim of the '118 Patent also requires a junction box that (i) "hold[s] a plurality of connection wirings" and (ii) itself comprises (*i.e.*, has) "a plurality of output wires." But the junction box in the accused products has only a single wire, not a "plurality" of wires, as shown in the FAC, ¶¶ 83, 86:



The Federal Circuit has confirmed that a single item cannot meet a "plurality" requirement, literally or equivalently. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 843 F.3d 1315, 1344-45 (Fed. Cir. 2016).

After reviewing our first motion to dismiss, you completely changed the infringement analysis, now ***stripping*** the single wire in the junction box and alleging that its ***internal copper strands*** are the plurality of wires (FAC, ¶¶ 83, 86):



10098739 v1

Appx225

**Sills Cummis & Gross**
A Professional Corporation

Patrick Cummins, Esq.
December 11, 2023
Page 4

This novel analysis, like your newly-minted "metal housing" argument above, is entirely frivolous. No one, including you and DS Advanced when you did your first infringement analyses, would ever consider the term "wire" to be so construed. It is entirely inconsistent with the patent itself. *See, e.g.,* Fig. 7 and 1:61 ("twist connector (118) attaches the output wires").

### 3.   **There is no Twist Connector**

The independent claim of the '118 Patent requires a "twist" connector. Surely, you and your client know that this references a common electrical connector which is "twisted" onto the stripped ends of wires. The accused products have only a plug connector – compared below to common twist connectors:



common twist connectors



plug connector in FAC

A finding of equivalents on this element would completely eviscerate the "twist" connector requirement. *See, e.g., Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 117 S. Ct. 1040, 1049 (1997) ("It is important to ensure that the application of the doctrine [of equivalents], even as to a single element, is not allowed such broad play as to effectively eliminate that element in its entirety"); *Sage Prods. v. Devon Indus.,* 126 F.3d 1420, 1423-26 (Fed. Cir. 1997) (*citing Warner-Jenkinson*: the claims defined "a relatively simple structural device" and "no reasonable fact finder could find equivalence").

After reviewing our motion to dismiss, you have now argued that the wires in the accused products are "already twisted." FAC, ¶ 83. The claim does not require a twisted wire, however. It requires a twist *connector* – plainly lacking from the accused products.[1]

---

[1] The case brought by DS Advanced against Lowe's Global Sourcing Shanghai in the Central District of California was baseless for all the same reasons (as it alleged the exact same products were infringing the same patent), plus the fact that there was no justification for you or DS Advanced to believe that Lowe's Shanghai could be infringing. This case was a second litigation, with a 76-page complaint and 81 pages of exhibits, raising ***the same*** infringement and

**Sills Cummis & Gross**
A Professional Corporation

Patrick Cummins, Esq.
December 11, 2023
Page 5

### The Law Supports Sanctions and Fees

These cases were and are entirely baseless, and the various obvious defects in the cases and the infringement positions, including DS Advanced's shifting infringement theories, will result in fees being awarded to Lowe's. *Kilopass Tech. Inc. v. Sidense Corp.*, No. C 10-02066, 2014 U.S. Dist. LEXIS 112321, at *49-50 (N.D. Cal. Aug. 12, 2014) (awarding fees: "This is a case that stands out from others with respect to the substantive strength of plaintiff's litigating position and the unreasonable manner in which the case was litigated"); *IPVX Patent Holdings, Inc. v. Voxernet LLC*, No. 5:13-cv-01708, 2014 U.S. Dist. LEXIS 158037, at *21 (N.D. Cal. Nov. 6, 2014) ("In its discretion, the court finds that this case warrants attorney's fees. As explained above, IPVX's position on infringement was objectively baseless at the inception of the lawsuit, and IPVX proceeded in this litigation without developing any factual record to support its infringement contentions, either on literal infringement or on infringement under the doctrine of equivalents."); *CliniComp Int'l, Inc. v. Cerner Corp.*, No. 17-cv-02479, 2023 U.S. Dist. LEXIS 19000, at *31-32 (S.D. Cal. Feb. 3, 2023)("CliniComp chose to continue with the litigation and assert what became a string of baseless and ever-changing theories of infringement.").

I have been in situations like this before, and I have been successful in getting sanctions and fees when frivolous arguments are presented. *See, e.g., Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361 (Fed. Cir. 2012) (imposing sanctions on my opposing counsel: "it is unreasonable minds that go to extraordinary lengths to conjure . . . in order to accuse non-infringing devices.").

---

validity issues as the first case already brought in the Southern District of California – it was clearly improper at least under the "first filed" rule, especially when the same plaintiff brought both cases concurrently in two different courts. The case was also improper because it joined two disparate defendants together, which was clearly inappropriate. 35 U.S.C. § 299. While we are pleased that DS Advanced has now dismissed Lowe's Shanghai from that case, it should never have been brought in the first place.

10098739 v1

Appx227

## Sills Cummis & Gross
A Professional Corporation

Patrick Cummins, Esq.
December 11, 2023
Page 6

### Conclusion

Please review the above carefully and consider whether you and DS Advanced really want to continue with this litigation. If the claims are dropped promptly, we will forego our demands for fees and sanctions.

I am available to discuss any of the foregoing.

Sincerely,

Scott D. Stimpson

10098739 v1

Appx228

# **EXHIBIT D**

**"An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing"**

**Claim Construction:** Plain and ordinary meaning, in view of intrinsic evidence.  No means-plus-function.[1]

**Proposed Construction:** "An apparatus to detachably attach an LED light fixture to a ceiling in at least two different circumstances: (1) when a recessed lighting fixture housing is present, and (2) when the recessed lighting fixture housing is not present"

**Reasoning for proposing construction:**

Consideration of Pre-amble "necessary to give life, meaning, and vitality" to Claim 1, especially with respect to the portion of Claim 1 reciting: "wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present."[2]

Additionally, "[a]n apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing" should be given patentable weight because these terms are included in the body of Claim 1, even if certain terms are not claimed as part of the "apparatus".  See Claim 1 (modified).

Additionally, Defendants take issue with the final portion of Claim 1, and the pre-amble can therefore assist with re-enforcing the "meaning" of Claim 1 in view of Defendant's assertions.  See, e.g., Defendant's Invalidity Contentions at pg. 19, lines 11-21 ("So, if there is a housing present there could be infringement; and if there is no housing present there could not be infringement.").[3]

**Intrinsic Evidence:**

See Claim 1:

"a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);" and "wherein the retrofit clips (102) make a friction fit inside the recessed lighting fixture housing to secure the complete fixture (112) inside, wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present."

Thus, the proposed construction does not narrow or broaden the scope of the Claims, and will assist a trier of fact with understanding the Claims.

---

[1] See *Biszer v. Best Bee Bros., LLC*, No. 2022-1033, 8 (Fed. Cir. Nov. 16, 2022) citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) ("Although the words of a claim are generally given their ordinary and customary meaning, as understood by a relevant artisan at the time of the invention, such an artisan is deemed to read the claim term . . . in the context of the particular claim in which the disputed term appears and in the context of the entire patent, including the specification.") (quotations removed).

[2] See, e.g., *Catalina Market. Intern. v. Coolsavings.com*, 289 F.3d 801, 808 (Fed. Cir. 2002) ("In general, a preamble limits the invention if it recites essential structure or steps, or if it is "necessary to give life, meaning, and vitality" to the claim. *Pitney Bowes*, 182 F.3d at 1305. Conversely, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553 (Fed. Cir. 1997).")

[3] See, e.g., *Eon Corp. v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318-1319 (Fed. Cir. 2016) citing *O2 Micro International, Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351 (Fed. Cir. 2008). ("[a] determination that a claim term "needs no construction" or has the "plain and ordinary" meaning may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute" and "[t]hus, a district court's duty at the claim construction stage is, simply, the one that we described in *O2 Micro* and many times before: to resolve a dispute about claim scope that has been raised by the parties.")

| "a body of the LED light fixture" |
| --- |
| **Claim Construction:** See Proposed Construction, in view of Plain and ordinary meaning, in view of intrinsic evidence.  No means-plus-function.[1] |
| **Proposed Construction:** "a base of the LED light fixture" |
| **Reasoning for proposing construction:** Considering the terms "body" and "housing" are used in the same Claim 1, Claim Construction may be necessary to distinguish and understand their scope.[4][5]  Additionally, Defendant takes issue with the term "metal housing", further reinforcing the need for the scope of this claim portion to be defined.  See, e.g., Defendant's Invalidity Contentions at pg. 20, lines 3-10.[3] |
| **Intrinsic Evidence:**  The "body" is a portion of an LED light fixture where a plurality of retrofit clips can be attached for securing the retrofit clips.  See PLNTF102344 at col. 1, lines 53-56.  "Housing" is not used in the provisional application except in the Figures of the provisional application, and to refer to an existing recessed housing.  "Fixture's body" and "metal body (4)" are used in the provisional application initially.  See PLNTF100218.  "Metal body" is then broadened in the Patent Specification to be just "body", and "body" is used in the Patent Specification to refer to a portion that the retrofit clips are attached.  See PLNTF102344 at col. 1, lines 53-56.  This is consistent with the provisional figures, shown to the right, wherein the retrofit clips are attached to the "base".  See PLNTF100216-218 ("…a metal body (4).  That is the base of the complete fixture….").

**Extrinsic Evidence:** Dictionaries.[6]

https://dictionary.cambridge.org/us/dictionary/english/body

https://www.merriam-webster.com/dictionary/base

The definitions for "base" and "body" at least partially overlap to the extent that they refer to a main, supporting portion of something.  Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims. |

---

[4] "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) and citing *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997).

[5] *Blazer v. Best Bee Bros. LLC*, No. 2022-1033, 8-9 (Fed. Cir. Nov. 16, 2022) citing *World Class Technology Corp. v. Ormco Corp.*, 769 F.3d 1120, 1124 (Fed. Cir. 2014) ("Rather than providing an unambiguous, clear meaning, therefore, the claim language leaves uncertainty… In such circumstances, we turn to the specification to resolve the uncertainty."

[6] "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. See *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did not require elaborate interpretation)). In such circumstances, general purpose dictionaries may be helpful." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (quotations removed).

Appx231

| |
|---|
| **"a plurality of connecting posts to hold the new construction clips (104);"** |
| **Claim Construction:** See Proposed Construction, in view of at least intrinsic evidence (*e.g.*, Claim 1, and Specification) and extrinsic evidences (*e.g.*, Dictionary). No means-plus-function. |
| **Proposed Construction:** "a plurality of connecting posts to hold the new construction clips (104) when the new construction clips are attached to the connecting posts and when the recessed lighting fixture housing is not present." |
| **Reasoning for proposing construction:** Claim construction necessary in view of Defendant's position on claim interpretation. *See, e.g.*, Defendant's Invalidity Contentions at pg. 20, lines 3-9. [3] |
| **Intrinsic Evidence:** In order to understand the phrase "to hold" in the above-cited portion of Claim 1, the end of Claim 1 can be helpful. The end of Claim 1 states: "wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present." This modifies the construction of "to hold" from the above-cited portion of Claim 1, thereby necessitating that (1) the plurality of connecting posts have the quality of being able to hold the new construction clips and (2) that the connecting posts be able to have the new construction clips as an attachment when the recessed lighting fixture housing is not present. Although the new construction clips are expressly claimed as elements of Claim 1, they are modified by the "if" in Claim 1, and which is read in light of the Specification. The "if" statement depends on whether a "recessed lighting fixture housing" is present. *See, e.g.*, Patent Specification at [0036]: "In operation, if the existing recessed housing is present, the retrofit clips (102) make a friction fit inside the existing recessed lighting fixture housing to secure the complete fixture (112) inside." *See also*, [0043]: "Thus the present apparatus provides a means to attach the LED light fixture to the ceiling directly or into a recessed lighting fixture housing." |
| **Extrinsic Evidence:** Dictionaries. [6] <br> https://www.merriam-webster.com/dictionary/hold <br> https://dictionary.cambridge.org/us/dictionary/english/hold |
| The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification.  Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims. |

Appx232

| "to embody" |
| --- |
| **Claim Construction:** See Proposed Construction, in view of plain and ordinary meaning, in view of intrinsic evidence (*e.g.*, Claims and Specification) and extrinsic evidence (*e.g.*, Dictionary). No means-plus-function. |
| **Proposed Construction:** "to include as a constituent part" |
| **Reasoning for proposing construction:** Claim construction necessary in view of Defendant's position on claim interpretation. See, *e.g.*, Defendant's Invalidity Contentions at pg. 20, lines 3-11. [3] |
| **Intrinsic Evidence:**<br><br>See Patent Specification / Non-provisional application at:<br><br>[0031]: "FIG. 2a illustrates an exemplary view (200a) of connecting post (106) and metal housing (108), in accordance with at least one embodiment. The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies a complete fixture (112), shown in FIG. 6. FIG. 2b illustrates an exemplary view (200) of metal housing (108), in accordance with at least one embodiment."<br><br>**Extrinsic Evidence:** Dictionaries. [6]<br><br>https://dictionary.cambridge.org/us/dictionary/english/embody<br><br>https://www.merriam-webster.com/dictionary/embody<br><br>https://www.google.com/search?q=embody+definition<br><br>The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims. |

Appx233

| "metal housing" |
|---|
| **Claim Construction:** See Proposed Construction, in view of plain and ordinary meaning, and in view of intrinsic evidence. No means-plus-function. |
| **Proposed Construction:** "a metal structure" |
| **Reasoning for proposing construction:** Claim construction necessary in view of Defendant's position on claim interpretation. See, e.g. Defendant's Invalidity Contentions at pg. 20, lines 3-10. [3] |
| **Intrinsic Evidence:**<br><br>Claim 1: "body" and "housing" have different scopes, at least for being different words in the same claim. Hence, "metal housing" and "recessed lighting fixture housing" having different scopes, though "recessed lighting fixture housing" is not claimed as part of the claimed apparatus.<br><br>Claim 3: The "metal housing" is described as having an "extremity" per Claim 3, which states "the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108)."<br><br>Claim 4: The "metal housing" is introduced in Claim 1 as "a metal housing (108) to embody a complete fixture (112)" and the "complete fixture (112)" is referred to in Claim 4 has comprising "a plurality of electrical systems, clips, and accessories." Hence, and strictly in view of the Claims as intrinsic evidence, the "metal housing" can also be construed as a "metal structure" "comprising" the "clips" as a constituent part, rather than being something that envelopes the clips. In other words, Claim 3 indicates that "clips" "squeeze ceiling material placed between the new construction clips…and an extremity of the metal housing . . .," but nothing in the Claims would indicate that there is some external structure enveloping those clips.<br><br>This is further reinforced by the Patent Specification / Non-provisional application at:<br><br>Abstract, [0007] and [0008]: "The apparatus comprises…metal housing (108)", and "The retrofit clips (102) are adaptable to attach with the metal housing (108) of the LED light fixture by screwing them into screw holes (110)."<br><br>[0018]: "FIG. 2b illustrates an exemplary view of the metal housing, in accordance with at least one embodiment."<br><br>[0031]: "FIG. 2a illustrates an exemplary view (200a) of connecting post (106) and metal housing (108), in accordance with at least one embodiment. The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies a complete fixture (112), shown in FIG. 6. FIG. 2b illustrates an exemplary view (200) of metal housing (108), in accordance with at least one embodiment."<br><br>[0038]: "The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, the output wire connections are internally arranged and cannot be seen by the user." (see FIGS. 1, 2a, 6, 8A, and 8B below). |



The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims.

| "a metal housing (108) to embody a complete fixture (112);" |
| --- |
| **Claim Construction:** See Proposed Construction, in view of at least intrinsic evidence (*e.g.*, Claim 1, Claim 3, and Specification), and extrinsic evidence (*e.g.*, Dictionary).  No means-plus-function.<br><br>**Proposed Construction:** "a metal structure (108) that includes a complete fixture (112) as a constituent part;" or, if this first construction is not accepted, then Plaintiff proposes the following section construction: "a metal housing (108) that includes a complete fixture (112) as a constituent part:" |
| **Reasoning for proposing construction:** Claim construction necessary in view of Defendant's position on claim interpretation.  See, *e.g.*, Defendant's Invalidity Contentions at pg. 20, lines 3-11.  ³  See also, table above entitled "metal housing".<br><br>**Intrinsic Evidence:** Claim 1: "body" and "housing" have different scopes, at least for being different words in the same claim.  Also, "metal housing" and "recessed lighting fixture housing" having different scopes, though "recessed lighting fixture housing" is not claimed as part of the claimed apparatus.<br>Claim 3:  The "metal housing" is described as having an "extremity" per Claim 3, which states "the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108)."<br>Claim 4:  "the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories.".<br><br>In view of Claims 1, 3, and 4, and available definitions of "embody", the appropriate construction of the above-cited portion of Claim 1 should indicate that the "metal housing (108)" does not necessarily enclose or envelop the "complete fixture (112)".<br><br>See Patent Specification / Non-provisional application at:<br>[0018]: "FIG. 2b illustrates an exemplary view of the metal housing, in accordance with at least one embodiment."<br>[0031]: "FIG. 2a illustrates an exemplary view (200a) of connecting post (106) and metal housing (108), in accordance with at least one embodiment. The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies a complete fixture (112), shown in FIG. 6. FIG. 2b illustrates an exemplary view (200) of metal housing (104), in accordance with at least one embodiment."<br>[0038]: "The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, the output wire connections are internally arranged and cannot be seen by the user."<br><br>The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification.  Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims. |



**"the junction box (116) comprises a plurality of output wires;"**

| |
|---|
| **Claim Construction:** See Proposed Construction, in view plain and ordinary meaning and intrinsic evidence.  No means-plus-function. |
| **Proposed Construction:** "the junction box (116) has a plurality of output wires arranged therein" |
| **Reasoning for proposing construction:** Claim construction also necessary in view of Defendant's position on claim interpretation.  See, e.g., Defendant's Invalidity Contentions at pg. 20, lines 3-12. [3] |
| **Intrinsic Evidence:** |

The term "comprises" is used throughout the claims and spec to mean different things.  In Claim 1, the apparatus "comprises" the new construction clips, though they are not always physically connected to the connecting posts at all times. [7]

The junction box "comprises", in Claim 5, a predefined area to attach a plurality of wires.

Patent Specification at:

[0038]:  "The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, the output wire connections are internally arranged and cannot be seen by the user."

Abstract: "The junction box (116) holds connection wirings and may hold an LED driver. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108)."

Provisional:

"9. Twist connector is used to attach the junction box (8) output wire to the complete fixture."

"6. Complete fixture includes all electrical systems, clips, and accessories."

"An LED driver would be installed inside the junction box (8)." PLNTF100218-219.




The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification.  Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims.

---

[7] *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1367-68, 101 USPQ2d 1457, 1460 (Fed. Cir. 2012) (The asserted claims of the patent were directed to a tactile feedback system for video game controllers comprising a flexible pad with a plurality of actuators "attached to said pad." The court held that the claims were not limited to actuators attached to the external surface of the pad, even though the specification used the word "attached" when describing embodiments affixed to the external surface of the pad but the word "embedded" when describing embodiments affixed to the internal surface of the pad. The court explained that the plain and ordinary meaning of "attached" includes both external and internal attachments. Further, there is no clear and explicit statement in the specification to redefine "attached" or disavow the full scope of the term.).

| "a twist connector (118)" |
|---|
| **Claim Construction:** See Proposed Construction, in view of plain and ordinary meaning, in view of intrinsic evidence and extrinsic evidence. No means-plus-function.<br><br>**Proposed Construction:** "a connector that relies on an act of twisting to make a connection."<br><br>**Reasoning for proposing construction:** Claim construction necessary in view of Defendant's position on claim interpretation. See, *e.g.*, Defendant's Invalidity Contentions at pg. 20, lines 3-14. ³<br><br>**Intrinsic Evidence:**<br><br>Patent Specification: [0007], [0035], and Abstract that include the same language. "The junction box (116) holds connection wirings and may hold an LED driver. **The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108).**" (bold added). While Plaintiff acknowledges the Specification states at [0042] "Then the user attaches the junction box (116) *to the LED fixture* using the twist connector (118)", this is not what is claimed in Claim 1. What is claimed is more closely supported by other portions the Specification.<br><br>Other discussions of twist connector are found in the Patent Specification at:<br><br>[0023]: "FIG. 7 illustrates an exemplary view of the junction box and twist connector, in accordance with at least one embodiment."<br><br>[0038]: "The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, *the output wire connections are internally arranged and cannot be seen by the user*." (bold added).<br><br>[0029] and Abstract: "The apparatus comprises....a twist connector (118)."<br><br>[0042]: "Then the user attaches the junction box (116) to the LED fixture using the twist connector (118)."<br><br>Provisional:<br><br>"9. **Twist connector is used to attach the junction box (8) output wire to the** complete fixture."<br><br>"6. Complete fixture includes all electrical systems, clips, and accessories." PLNTF100218-219 (bold added).<br><br>**Extrinsic Evidence:** Dictionaries⁶<br><br>https://www.merriam-webster.com/dictionary/twist<br>https://dictionary.cambridge.org/us/dictionary/english/twist<br><br>The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims.  |

**"a twist connector (118) to attach the output wires of the junction box (116) to the metal housing (108),"**

**Claim Construction:** Plain and ordinary meaning, in view of intrinsic evidence and extrinsic evidence. No means-plus-function.

**Proposed Construction:** "a connector that relies on an act of twisting to attach the output wires of the junction box to the metal housing (108)".

**Reasoning for proposing construction:** Claim construction necessary in view of Defendant's position on claim interpretation. See, e.g., Defendant's Invalidity Contentions at pg. 20, lines 3-14. [3]

**Intrinsic Evidence:**

Patent Specification: [0007], [0035], and Abstract that include the same language. "The junction box (116) holds connection wirings and may hold an LED driver. **The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108).**"

While Plaintiff acknowledges the Specification states at [0042] "Then the user attaches the junction box (116), to the metal housing twist connector (118)", this is not what is claimed in Claim 1. [3]  What is claimed is more closely supported by other portions the Specification.

Other discussions of twist connector are found in the Patent Specification at:

[0038]: "The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, *the output wire connections are internally arranged and cannot be seen by the user.*"

[0023]: "FIG. 7 illustrates an exemplary view of the junction box and twist connector, in accordance with at least one embodiment."

[0029] and Abstract: "The apparatus comprises…a twist connector (118)."

[0042]: "Then the user attaches the junction box (116) to the LED fixture using the twist connector (118)."

Provisional:

"9. Twist connector is used to attach the junction box (8) output wire to the complete fixture."

"6. Complete fixture includes all electrical systems, clips, and accessories."




**Extrinsic Evidence:** Dictionaries[6]

https://www.merriam-webster.com/dictionary/twist

https://dictionary.cambridge.org/us/dictionary/english/twist

The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims.

**"the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present"**

**Claim Construction:** Proposed claim construction in view of plain and ordinary meaning, and in view of intrinsic evidence. No means-plus-function.[1]

**Proposed Construction:** "the new construction clips (104) are attached to the connecting posts (106) when the recessed lighting fixture housing is not present"

**Reasoning for proposing construction:** Claim construction also necessary in view of Defendant's position on claim interpretation. See, e.g., Defendant's Invalidity Contentions at pg. 19, lines 11-21.[3]

**Intrinsic Evidence:** Pre-amble of Claim 1, which has patentable weight in view of the pre-amble providing some intent regarding uses of claimed apparatus. See MPEP 2111.02(II). Claim 1, pre-amble recites: "An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing". Additionally, the aforementioned claim portion does not render Claim 1 indefinite, as suggested by Defendant. See, e.g., Defendant's Invalidity Contentions at pg. 19, lines 11-21.[3]

The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims.

Appx241

12

| "output wires" |
|---|
| **Claim Construction**: Proposed construction in view of plain and ordinary meaning, in view of intrinsic evidence. No means-plus-function.[1] |
| **Proposed Construction**: "wires extending out from the plurality of connection wirings or the junction box" |
| **Reasoning for Proposing Construction**: Claim construction also necessary in view of Defendant's position on claim interpretation. See, e.g., Defendant's Invalidity Contentions at pg. 20, lines 3-13. [3] Also, "output wires" used multiple times throughout Claim 1.[8]

The proposed claim construction is accurate because the "output wires" are given express limitations in Claim 1. Firstly, it is important to note that a wire will have two ends, and each end can be connected to something (e.g., another wire). For example, Claim 1 indicates that the junction box is provided "to hold a plurality of connection wirings", which can plainly refer to two different sets of wires being connected, thereby creating the "plurality of connection wirings". One of these sets can be the output wires, but is not necessarily the output wires. Nonetheless, the junction box is claimed to "comprise[]" the "plurality of output wires", indicating some relationship between the junction box and the output wires. This relationship can be illuminated by Claim 5, which also uses "comprises" when referring to the junction box, but refers to an "area" that is internal to the junction box. Therefore, the "output wires" of Claim 1 can be considered to be at least partially internal to the junction box, as Claim 1 also recites that "the junction box (116) comprises a plurality of output wires".

Claim 1 further limits this relationship by stating "the twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108)". Although Claim 1 does not expressly limit the twist connector to facilitating the "connections wirings", the scope of Claim 1 covers an instance in which some ends of the output wires are part of the connection wirings, the connection wirings are facilitated by the twist connector, and the output wires become attached to the metal housing as a result of their connection via the twist connector. Thus, the scope of Claim 1 encompasses both (1) the "connection wirings" including some ends of the output wires, wherein the output wires are connected to the metal housing using the twist connector, or (2) the "connection wirings" not including the ends of the output wires, but the output wires still being at least partially "comprise[d]" by the junction box and the twist connector still connecting the output wires to the metal housing. The former boundary "(1)" of the scope is further supported by the Patent Specification at [0007] ("The junction box (116) holds the plurality of connection wirings. The junction box (116) comprises a plurality of output wires, the twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108)."). The latter boundary "(2)" of the scope is further supported by at least the Patent Specification at [0038] ("the output wire connections are internally arranged and cannot be seen by the user").

**Intrinsic Evidence:** |

[8] "While we read claims in view of the specification, of which they are a part, we do not read limitations from the embodiments in the specification into the claims. *Liebel–Flarsheim Co. v. Medrad, Inc.*,358 F.3d 898, 904 (Fed.Cir.2004). We depart from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal. *Thorner,*669 F.3d at 1365. The standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.,* 755 F.3d 1367, 1371 (Fed. Cir. 2014).

13

Claim 1: "a junction box (116) to hold a plurality of connection wirings, wherein the junction box (116) comprises a plurality of output wires;" and

Claim 1: "the twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108);"

Claim 5: "the junction box (116) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires."

Patent Specification:

[0007]: "The junction box (116) holds the plurality of connection wirings. The junction box (116) comprises a plurality of output wires, the twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108)."

[0038]: "In real-time, the output wire connections are internally arranged and cannot be seen by the user."

Provisional as filed recites "9. Twist connector is used to attach the junction box (8) output wire to the complete fixture (6)", but the Patent Specification and Claims then emphasizes that the "twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108)."

The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims.

Appx243

| **"a plurality of electrical systems"** |
| --- |
| **Claim Construction**: See Proposed Construction, in view of plain and ordinary meaning, in view of intrinsic evidence and extrinsic evidence. No means-plus-function. [1] |
| **Proposed Construction**: "a plurality of groups of interdependent electrical items" |
| **Reasoning for proposing construction**: Possible range of meanings, and expressly defined in Specification.[9] |
| **Intrinsic Evidence:** <br> Patent Specification at: <br> [0034]: "Examples of the electrical systems include but not limited to the LED driver, an LED PCB assembly, and an LED strip." <br> **Extrinsic Evidence:** Dictionaries[6] <br> https://www.merriam-webster.com/dictionary/system <br> https://dictionary.cambridge.org/us/dictionary/english/system <br><br> The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims. |

15

Appx244

| "clips" (as in Claim 4) |
|---|
| **Claim Construction:** See Proposed Construction, in view of plain and ordinary meaning, in view of intrinsic evidence and extrinsic evidence. No means-plus-function.[1] |
| **Proposed Construction:** "the plurality of retrofit clips and/or the plurality of new construction clips" |
| **Reasoning for proposing construction:** Possible range of meanings.[8] |
| **Intrinsic Evidence:** |
| Claim 1: "a plurality of retrofit clips (102)" and "a plurality of new construction clips (104)" |
| Claim 3: "the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108)." |
| Patent Specification: |
| Abstract, [0007] and [0008]: "The apparatus comprises…metal housing (108)", and "The retrofit clips (102) are adaptable to attach with the metal housing (108) of the LED High fixture by screwing them into screw holes (110)." |
| [0031]: "The plurality of connecting posts (106) hold the new construction clips (104)." |
| The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims. |

| "accessories" |
| --- |
| **Claim Construction:** Proposed construction in view of plain and ordinary meaning, and in view of intrinsic evidence and extrinsic evidence. |
| No means-plus-function.[1] |
| **Proposed Construction:** "additional electrical items" |
| **Reasoning for proposing construction:** Possible range of meanings, and expressly defined in Specification.[8] |
| **Intrinsic Evidence:**<br><br>Patent Specification at:<br><br>[0034]: "Further, examples of the accessories include but not limited to wire connectors, and ground wire."<br><br>**Extrinsic Evidence:** Dictionaries[6]<br><br>https://dictionary.cambridge.org/us/dictionary/english/accessory?q=accessories<br><br>https://www.merriam-webster.com/dictionary/accessories |
| The proposed construction is consistent with the plain meaning of the aforementioned claim portion, and also aligns with the Patent Specification. Hence, the proposed construction does not change the scope of the Claims, and will assist a trier of fact with understanding the Claims. |

# EXHIBIT E

Appx247

## Linxuan Yan

| | |
|---|---|
| **From:** | Scott D. Stimpson |
| **Sent:** | Monday, June 3, 2024 3:00 PM |
| **To:** | Patrick Cummins, Esq. (Patrick@CumminsIP.com) |
| **Cc:** | Katherine Lieb; Linxuan Yan |
| **Subject:** | Claim constructions and support |
| **Attachments:** | McGraw-Hill Dictionary of Scientific and Technical Terms.pdf; Line E - Electrical Fundamentals Competency E-1 (definition for twist connector on page 13-14).pdf |

Patrick, per our agreement for a 3pm EST simultaneous exchange, please find below our proposed constructions and supporting extrinsic evidence.  Maybe we should arrange a call mid-week to start our discussions, and see if we can find room for agreement?

Thanks.
Scott

### Constructions

(1) Housing:  A casing that encloses and protects other parts.

(2) Metal: Consisting predominantly of metallic elements.

(3) Output Wires:  Insulated wires that carry power to other components.

(4) Junction box comprises a plurality of output wires:  The junction box is physically attached to at least two output wires, excluding wires merely held by the junction box.

(5) Twist Connector:  An electrical connector with a threaded metal interior that engages two or more wire ends and is twisted onto the wire ends to tighten a twisting of the wire ends to one another and hold the wire ends more tightly in the threaded metal interior; also known as a wire nut.

(6) The Apparatus Comprises:  All claim elements must be found on the same, assembled apparatus.

### Preliminary Identification of Extrinsic Evidence

LHC may use any one or more of the following as supporting extrinsic evidence.

- Testimony of Dr. Eric Bretschneider, expert.  Dr. Bretschneider's testimony may include, inter alia, (1) his background and expertise with regard to LEDs and the relevant technology; (2) general background information about LEDs and the relevant technology, (3) POSITA's understanding of each of the terms addressed above, and (4) differences between the proper constructions of the terms and other structures in the art.
- Dictionaries and Treatises attached.

Best,
Scott

**Scott D. Stimpson**
Chairman of the Intellectual Property Group



**website | bio | vCard | newsroom | email**

101 Park Avenue, 28th Floor, New York, NY 10178
p (212) 500-1550 | f (212) 643-6500   **map**

# **EXHIBIT F**

New Industry Products

# Push-in Wire Connectors Replace Twist-on Wire Connectors

September 29, 2017 by Paul Shepard

**BlockMaster Electronics, Inc.** announces its line of Clear Connects™ push-in wire connectors, which offer a fast and easy alternative to traditional twist-on wire connectors, is now available for LED lighting applications.

While the new WPC300 Series connectors are suitable for electricians and installers working on residential, commercial, lighting retrofits or with prefabricated wiring systems, they are also designed for the very popular LED lighting systems being installed and retrofitted today.

As the prices of LED lighting have dropped sharply over the last few years, there is a major push to replace fluorescent lighting in offices and factories with LED lighting.

Many local utility companies are offering business incentives to convert over from fluorescent lighting to LED lighting. This past spring, BlockMaster Electronics took advantage of Commonwealth Edison's incentive in Illinois, and converted about 100 fluorescent light fixtures in their office and warehouse over to LED lighting. The conversion is expected to pay for itself in less than one year.

When the original fluorescent lighting fixtures were installed, the wires were connected with the old style twist-on wire connectors. The 21st century replacement for these old twist-on wire connectors is BlockMaster's WPC300 Clear Connects with screwless connection technology.

Installers and electricians will no longer have to twist 2, 3 or 4 wires together and try to jam them into a twist-on wire connector. The WPC300 Clear Connects Series will quickly and easily terminate wires.

Clear Connects are easy to use and their transparency provides visual confirmation for a perfect connection every time. They also come with a Strip Guide so you know the proper length to strip your wire. The connectors accept solid and tinned stranded wire 22-12 AWG, and have a built-in slot for access to test the circuit.

Lighting is not the only application for BlockMaster's WPC300 Clear Connects. Other application includes security/alarm systems, appliances, heating elements, motor leads, junction boxes and control panels.

Clear Connects are made with highly conductive copper. They are color-coded for easy identification and "touch-safe," with wires safely shrouded by the connector housing.

Appx251

The WPC300 Series is safer and easier to use than traditional twist-on wire connectors. Installation time is greatly reduced, without having to twist or tape connections. Their compact size enables connections in tight spaces.

They are OSHA recommended to reduce wrist and hand strain. The new connector series has multiple international and domestic agency approvals, including UL and CUL.

Other Clear Connects push-in wire connector features:

- 2 to 8 pole units available
- Voltage: VDE-AC, DC, 450V; UL-600V
- Current: VDE-24A
- Rated Voltage: 600V for building wiring, 1000V for lighting fixtures
- Temperature: VDE-110°C, UL-105°C
- Housing: Polycarbonate, Flame-Retardant to UL 94V2
- Working Temp: 105°C/221°F
- Clamp Unit: Tin-plated Copper, Stainless Steel Spring; Zinc-plated Steel frame
- Glow wire test: VDE-850°C
- Wire Stripping Length: 11mm/0.4 inches
- Colors: Yellow, Orange, Clear, Blue, Purple, Black
- UL Approved
- Patented: US 7255592

Content From Partners

Appx252

Appx253

**Single Pole Device**

Content from Sager Electronics

Load more comments

# <u>EXHIBIT G</u>



# HellermannTyton's push-in wire connector now 40% smaller

**By Kelly Pickerel | August 31, 2017**



HellermannTyton announces a significant, space-saving modification to its line of HelaCon Plus push-in wire connectors, now called HelaCon Plus Mini. This type of connector speeds the process of connecting electrical wires, which has traditionally been managed with twist-on wire connectors.

The HelaCon Plus Mini's design is highlighted by its double-spring retention system. Individually, the spring plates have greater flexibility than competitive connectors. This promotes easier insertion of wires and helps prevent stranded wire from separating during installation. In tandem, the springs produce superior extraction force for ultra reliable connections.

"Compared to twist-on wire connectors, the Minis are faster to use and easier on operators' fingers," said HellermannTyton Product Manager Duane Kuske. "Electrical contractors will appreciate greater assurance their installations are safe – especially where vibration or movement is involved."





to eight wire ports, to address most wire connection scenarios. The Minis accommodate a wide range of wire gauges, from 12-22 AWG solid copper wire and 14-22 AWG stranded wire. This product will fully replace the original HelaCon Plus line of wire connectors later this year.

*News item from HellermannTyton*

## ABOUT THE AUTHOR



**Kelly Pickerel**

Kelly Pickerel has over a decade of experience reporting on the U.S. solar industry and is currently editor in chief of Solar Power World.

 

# Tell Us What You Think!

1  Patrick Cummins
2  CA Bar No.: 294400
   Patrick@CumminsIP.com
3  Cummins IP PLLC
4  3426 PEPPERHILL RD
5  LEXINGTON, KY 40502
   TEL: 502.445.9880
6  *Counsel for Plaintiff,*
7  *DS Advanced Enterprises, Ltd.*

8

9

10        **UNITED STATES DISTRICT COURT**

11      **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  DS ADVANCED ENTERPRISES,        Case No.: 3:23-cv-01335-CAB-JLB
    LTD.,
14    A CORPORATION,              **PLAINTIFF'S MEMORANDUM
                                  OF POINTS AND AUTHORITIES
15  *Plaintiff,*                  IN OPPOSITION TO
                                  DEFENDANT'S MOTION FOR
16    v.                          SUMMARY JUDGEMENT (DOC.
                                  NO. 34)
17
    LOWE'S HOME CENTERS, LLC,
18    A CORPORATION,              JURY TRIAL DEMANDED
19
        *Defendant.*             DATE:  (per Doc. No. 39)
20                                JUDGE: HONORABLE CATHY
21                                       ANN BENCIVENGO
22
                                 PER CHAMBER RULES, NO ORAL
23                               ARGUMENT UNLESS
24                               SEPARATELY ORDERED BY THE
                                 COURT
25

26

27

28


CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
                                    JUDGEMENT        Case No.: 3:23-cv-01335-CAB-JLB

1

## TABLE OF CONTENTS

2    I.   Introduction Regarding Case and Issues ..................................................... 1

3    II.  Claim Construction, Infringement, and Summary

4         Judgement Standards ............................................................................. 1

5         a.  Legal Standard for Determining Patent

6             Infringement ................................................................................. 1

7         b.  Legal Standard for Claim Construction on

8             Summary Judgement ...................................................................... 2

9         c.  Legal Standard for Deciding Accused Products

10            Infringe Construed Claims ............................................................. 2

11        d.  Legal Standard for Summary Judgement ........................................ 3

12   III. The Intrinsic Evidence and the Applicable Law of

13        the Federal Circuit Support Plaintiff's Proposed

14        Constructions but Contradict the Defendant's .......................................... 4

15        a.  Defendant's Proposed Construction of "Metal

16            Housing" Contradicts the Intrinsic Evidence ................................... 4

17        b.  Defendant's Proposed Construction of

18            "Junction Box Comprises a Plurality of

19            Output Wires" Contradicts the Intrinsic

20            Evidence ..................................................................................... 14

21        c.  Defendant's Proposed Construction of "Twist

22            Connector" Contradicts the Intrinsic

23            Evidence and Defendant's Motion ................................................ 18

24   IV.  This Court Should Reject Defendant's Non-

25        Infringement Arguments and Conclude that the

26        Claim Terms are in the Accused Products ..................................................... 24

27        a.  The Accused Products Include the Metal

28            Housing as Claimed ...................................................................... 24

CUMMINS
INTELLECTUAL PROPERTY LAW, PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
i
Case No.: 3:23-cv-01335-CAB-JLB

Appx258

b.  The Accused Products Include the Twist
Connector as Claimed ....................................................................26

c.  The Accused Products Include the Claimed
Terms "Junction Box Comprises a Plurality
of Output Wires" ...........................................................................29

V.  Conclusion..............................................................................................30

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
ii                                Case No.: 3:23-cv-01335-CAB-JLB

Appx259

1

# TABLE OF AUTHORITIES

Cases

*Anderson v. Liberty Lobby, Inc.,*

477 U.S. 242, 1986 U.S. LEXIS 115 (1986) ............................................................4

*Apple Inc. v. Samsung Elecs. Co.,*

Case No.: 12-CV-0630-LHK (PSG) (N.D. Cal.

Jun. 26, 2013) ....................................................................................................30

*Autogiro Company of America v. United States,*

384 F.2d 391 (Fed. Cir. 1967) ................................................................................7

*Ballard Med. Prods. v. Allegiance Healthcare Corp.,*

268 F.3d 1352, 2001 U.S. App. LEXIS 21591,

(Fed. Cir. 2011) ..................................................................................................2

*Celotex Corp. v. Catrett,*

477 U.S. 317, 1986 U.S. LEXIS 118, (1986) ....................................................3, 4

*CLS Bank International v. Alice Corp. Pty. Ltd.,*

717 F.3d 1269, 2013 U.S. App. LEXIS 9493

(Fed. Cir. 2013) ..................................................................................................4

*Cool Fuel, Inc. v. Connett,*

685 F.2d 309, 1982 U.S. App. LEXIS 16378

(9th Cir. 1982) ....................................................................................................4

*Frank's Casing Crew & Rental Tools, Inc.*

*v.  Weatherford Int'l, Inc.,*

389 F.3d 1370, 2004 U.S. App. LEXIS 24660

(Fed. Cir. 2004) ..................................................................................................3

*Golden Blount, Inc. v. Robert H. Peterson,*

438 F.3d 1354, 2006 U.S. App. LEXIS 3553

(Fed. Cir. 2006) ..................................................................................................3

*Hill-Rom Services, Inc. v. Stryker Corp.,*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

iii                          Case No.: 3:23-cv-01335-CAB-JLB

Appx260

1    755 F.3d 1367, 2014 U.S. App. LEXIS 12105

2        (Fed. Cir. 2014)........................................................................................................22

3  *Interactive Gift Express, Inc. v. CompuServe Inc.,*

4        2001 U.S. App. LEXIS 15711 (Fed. Cir. 2001) ........................................................2

5  *Kassbaum v. Steppenwolf Productions, Inc.,*

6        236 F.3d 487, 2000 U.S. App. LEXIS 33902

7        (9th Cir. 2000)............................................................................................................4

8  *Linear Technology Corp. v. Impala Linear,*

9        379 F.3d 1311, 2004 U.S. App. LEXIS 17108

10       (Fed. Cir. 2004)........................................................................................................16

11 *Malvern Panalytical Inc. v.TA Instruments-Waters LLC,*

12       No. 2022-1439, 2023 U.S. App. LEXIS 28937

13       (Fed. Cir. Nov. 1, 2023)......................................................................................22, 24

14 *Markman v. Westview Instruments, Inc.,*

15       52 F.3d 967, 1995 U.S. App. LEXIS 7593

16       (Fed. Cir. 1995).......................................................................................................2, 5

17 *Mylan Institutional LLC v. Aurobindo Pharma Ltd.,*

18       857 F.3d 858, 2017 U.S. App. LEXIS 8792

19       (Fed. Cir. 2017)..........................................................................................................3

20 *New Hampshire v. Maine,*

21       532 U.S. 742, 2001 U.S. LEXIS 3981 (2001) ........................................................23

22 *PC Connector Solutions LLC v. SmartDiskCorp.,*

23       406 F.3d 1359, 2005 U.S. App. LEXIS 7855

24       (Fed. Cir. 2005)......................................................................................................1, 3

25 *Phillips Petroleum Co. v. Huntsman Polymers Corp.,*

26       157 F.3d 866, 1998 U.S. App. LEXIS 23349

27       (Fed. Cir. 1998)........................................................................................................15

28 *Phillips v. AWH Corp.,*

CUMMINS
INTELLECTUAL PROPERTY [?]
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
iv                                    Case No.: 3:23-cv-01335-CAB-JLB

Appx261

1     415 F.3d 1303, 2005 U.S. App. LEXIS 13954

2     (Fed. Cir. 2005)..........................................................................................2, 6, 12, 22

3     *Promptu Sys. Corp. v. Compcast Corp.*,

4     92 F.4th 1372 (Fed. Cir. 2024) ..................................................................................2

5     *Renishaw PLC v. Marposs Societa' Per Azioni,*

6     158 F.3d 1243 (Fed. Cir. 1998) ...............................................................................11

7     *Soremekun v. Thrifty Payless, Inc.*,

8     509 F.3d 978, 2007 U.S. App. LEXIS 27350

9     (9th Cir. 2007)...........................................................................................................4

10     *Teva Pharma. USA, Inc. v. Sandoz, Inc.*,

11     574 U.S. 318, 2015 U.S. LEXIS 628 (2015) .............................................................2

12     *Thorner v. Sony Computer Entm't Am. LLC,* ..........................................................

13     669 F.3d 1362, 101 USPQ2d 1457,

14     2012 U.S. App. LEXIS 1864 (Fed. Cir. 2012) ........................................................10

15     *Vehicular Technologies V. Titan Wheel Intern. et al.*,

16     212 F. 3d 1377, 2000 U.S. App. LEXIS 11373

17     (Fed. Cir. May 22, 2000) .........................................................................................15

18     *Vitronics Corp. v. Conceptronic, Inc.*,

19     90 F.3d 1576, 1996 U.S. App. LEXIS 18587

20     (Fed. Cir. 1996)..........................................................................................................2

21     Vulcan Eng'g Co., Inc. v. Fata Aluminum, Inc.,

22     278 F.3d 1366, 2002 U.S. App. LEXIS 1776

23     (Fed. Cir. 2002)........................................................................................................13

24     *Warner-Jenkinson Co., Inc.*

25     *v. Hilton Davis Chem. Co.*,

26     520 U.S. 17, 117 S. Ct. 1040,

27     137 L. Ed. 2d 146,

28     1997 U.S. LEXIS 1476 (1997) ..................................................................................3

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

## Statutes

35 U.S.C. § 271 ............................................................................................1

35 U.S.C. §§ 271(b)-(c) ..........................................................................3, 16

## Rules

Fed. R. Civ. P. 11(b)(4)..............................................................................30

Fed. R. Civ. P. 56 .......................................................................................30

Fed. R. Civ. P. 56(a)...........................................................................3, 4, 30

Fed. R. Civ. P. 56(c)(1)(A) ..........................................................................4

Fed. R. Civ. P. 56(h) ............................................................................13, 30

Judge Bencivengo Chamber Rule § II(D).................................................20

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
vi                                    Case No.: 3:23-cv-01335-CAB-JLB

Appx263

## I. Introduction Regarding Case and Issues

Plaintiff asks this Court to deny Defendant's Motion for Summary Judgement of Non-Infringement (Doc. No. 34) ("Defendant's Motion") with prejudice. Defendant's Motion argues that at least one of 3 claimed elements from Plaintiff's Patent ("the Patent") are not found in Defendant's Accused Products. Doc. No. 34 at pg. 5, lines 6-9. In rebuttal, Plaintiff argues that Defendant's proposed claim constructions are invalid, at least for not relying on, or in some instances even contradicting, the intrinsic evidence. See *infra* § III. Plaintiff proposes proper claim constructions for the 3 claimed elements at issue, and asks this Court to adopt those proposed constructions in furtherance of eliminating issues. *Id.* Additionally, Plaintiff asks this Court to order, upon briefing of Defendant's Motion, that the Accused Products include at least the 3 claimed elements as construed, since this will further eliminate issues. See *infra* § IV. Alternatively, should this Court not order that the 3 claimed elements are present in the Accused Products, or not adopt Plaintiff's proposed claim constructions, Plaintiff asks this Court to deny Defendant's Motion because genuine issues of material facts remain regarding claim construction and infringement of Patent Claims 1-5 per 35 U.S.C. § 271.

## II. Claim Construction, Infringement, and Summary Judgement Standards

Because Defendant has filed Defendant's Motion prior to any Claim Construction Order or Claim Construction Hearing, this Court may undertake construction of the 3 claim terms Defendant's Motion takes issue with. See *infra* § II(a), and Doc. No. 34 at pg. 5, lines 6-9. Thereafter, the Court may determine whether any genuine issues of material facts exist regarding whether the construed claim terms are found in the Accused Products. See *infra* §§ II(b-d). This may necessitate applying the legal standards of summary judgment to issues of fact. See *infra* § II(d).

### a. Legal Standard for Determining Patent Infringement

"Determining whether a claim has been infringed requires a two-step analysis." See *PC Connector Solutions LLC v. SmartDiskCorp.,* 406 F.3d 1359, 1362 (Fed. Cir. 2005). "First, the claim must be properly construed to determine its scope and meaning." *Id.*

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW, PLLC
MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
1
Case No.: 3:23-cv-01335-CAB-JLB

Appx264

1  Claim construction is a matter of law reserved for the court. See *Vitronics*
2  *Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). At summary
3  judgement, a court can construe claims to the extent necessary to determine infringement
4  by an accused device. See *Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d
5  1352, 1358 (Fed. Cir. 2011).

6  **b. Legal Standard for Claim Construction on Summary Judgement**

7  "[P]atent claims[] define the scope of the patentee's rights under the patent." See
8  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970 (Fed. Cir. 1995) (modified).
9  "In some cases, the ordinary meaning of claim language as understood by a person of skill
10 in the art may be readily apparent even to lay judges, and claim construction in such cases
11 involves little more than the application of the widely accepted meaning of commonly
12 understood words." See *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).
13 See also, *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (claims may "not require
14 elaborate interpretation"). "If the meaning of the claim limitations is apparent from the
15 totality of the intrinsic evidence, then the claim has been construed." See *Interactive Gift*
16 *Express, Inc. v. CompuServe Inc.*, 2001 U.S. App. LEXIS 15711 **17 (Fed. Cir. 2001).
17 The intrinsic evidence includes "the patent claims and specifications, along with the
18 patent's prosecution history." See *Teva Pharma. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318
19 (2015) (modified). "[P]articular features recited in the specification merely as aspects of
20 embodiments, and not expressly or even implicitly identifying requirements of the
21 invention, do not narrow a claim term that is otherwise broader in its ordinary meaning."
22 *Promptu Sys. Corp. v. Compcast Corp.*, 92 F.4th 1372, 1379 (Fed. Cir. 2024) (modified).
23 "Only if there were still some genuine ambiguity in the claims, after consideration of all
24 available intrinsic evidence, should the trial court have resorted to extrinsic evidence[.]"
25 See *Vitronics Corp., Inc.*, 90 F.3d 1584 (Fed. Cir. 1996).

26 **c. Legal Standard for Deciding Accused Products Infringe Construed Claims**

27 "In the second step of infringement analysis, the court determines whether the properly
28 construed claims cover the accused device, either literally or under the doctrine of



CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
2
Case No.: 3:23-cv-01335-CAB-JLB

Appx265

1 equivalents." See *PC Connector*, 406 F.3d 1362, 1364. "Although this second step is a
2 question of fact, when there are no genuine issues of material fact in dispute, a grant of
3 summary judgment is proper." *Id*. at 1364. "[L]iteral infringement requires that each and
4 every claim limitation appear in an accused product." See, e.g., *Frank's Casing Crew &*
5 *Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370,1378 (Fed. Cir. 2004)
6 (modified). For contributory and/or induced infringement per 35 U.S.C. §§ 271 (b)-(c),
7 instructions disseminated by an accused infringer can prove acts of direct infringement.
8 See, *e.g.*, *Golden Blount, Inc. v. Robert H. Peterson*, 438 F.3d 1354, 1363 (Fed. Cir.
9 2006) (finding that "instructions packaged with each [accused] device [taught] the
10 infringing configuration[.]") (modified).

11   Infringement under the doctrine of equivalents may be found where the "accused
12 product or process contain[s] elements identical or equivalent to each claimed element of
13 the patented invention." *Warner-Jenkinson Co., Inc. v. Hilton Davis Chem. Co.*, 520 U.S.
14 17, 40, 117 S. Ct. 1040, 137 L. Ed. 2d 146 (1997). "[T]he Supreme Court set out two
15 frameworks for evaluating equivalence—the familiar FWR test (viz., whether the accused
16 product performs 'substantially the same function in substantially the same way to obtain
17 the same result') and the insubstantial differences test (whether the accused product or
18 process is substantially different from what is patented)". See *Mylan Institutional LLC v.*
19 *Aurobindo Pharma Ltd.*, 857 F.3d 858, 866-67 (Fed. Cir. 2017).

20   **d. Legal Standard for Summary Judgement**

21   A "court shall grant summary judgment if the movant shows that there is no genuine
22 dispute as to any material fact and the movant is entitled to judgment as a matter of law."
23 See Fed. R. Civ. P. 56(a). A party may move for summary judgment not only as to an
24 entire case, but also as to a claim, defense, or part of a claim or defense. *Id*. A *movant*
25 bears the initial burden to demonstrate the lack of a genuine issue of material fact. See
26 *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 336-337 (1986) (modified). The movant
27 cannot "ignore supporting evidence that the record clearly contained" and is required, "as
28 an initial matter, to attack the adequacy of this evidence." *Id*. The moving party's "failure

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
3
Case No.: 3:23-cv-01335-CAB-JLB

Appx266

1  to fulfill this simple requirement constitute[s] a failure to discharge its initial burden of
2  production under Rule 56", thereby rendering their motion for "summary judgment
3  improper". *Id*. (modified). If the movant satisfies the burden, the nonmovant must set forth
4  specific facts showing that there remains "a genuine issue for trial", and "may not rest
5  upon mere allegation or denials of his pleading."  See *Anderson v. Liberty Lobby, Inc.*,
6  477 U.S. 242, 248 (1986). Issues of fact are genuine and material when they "properly can
7  be resolved only by a finder of fact because they may reasonably be resolved in favor of
8  either party."  *Id*. at 250. A party asserting that a fact cannot be genuinely disputed must
9  support that assertion by citing to "materials in the record, including depositions,
10  documents, electronically stored information, affidavits or interrogatory answers, or other
11  materials."  See Fed. R. Civ. P. 56(c)(1)(A).

12      The law of the relevant regional circuit applies to grant or denial of summary judgment,
13  and Federal Circuit law applies to issues of substantive patent law. See *CLS Bank*
14  *International v. Alice Corp. Pty. Ltd.*, 717 F.3d 1269, 1276 (Fed. Cir. 2013). In the 9th
15  Circuit, on summary judgment, a court should not weigh conflicting evidence or make
16  credibility determinations. See *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th
17  Cir. 2007). It should draw all reasonable inferences in the light most favorable to the non-
18  moving party. *Id*.

19      "It is generally recognized that a court has the power *sua sponte* to grant summary
20  judgment to a non-movant when there has been a motion but no cross-motion."  See *Cool*
21  *Fuel, Inc. v. Connett*, 685 F.2d 309, 311 (9th Cir. 1982).  "When one party moves for
22  summary judgment and at a hearing the record reveals no genuine dispute on a material
23  fact, 'the overwhelming weight of authority supports the conclusion that . . . the court may
24  *sua sponte* grant summary judgment to the non-moving party.'"  See *Kassbaum v.*
25  *Steppenwolf Productions, Inc.*, 236 F.3d 487, 494 (9th Cir. 2000).

26  **III. The Intrinsic Evidence and the Applicable Law of the Federal Circuit Support**
27      **Plaintiff's Proposed Constructions but Contradict the Defendant's**
28  **a. Plaintiff's Proposed Construction of "Metal Housing" is Proper and**



MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
4
Case No.: 3:23-cv-01335-CAB-JLB

Appx267

1 **Defendant's Proposed Construction Contradicts the Intrinsic Evidence**

2     Parties do not currently agree on proper construction for the claim term "metal
3 housing" from Claim 1 of the Patent. Nonetheless, and because Defendant has indicated
4 no further construction or discovery is necessary, Plaintiff asks this Court to adopt
5 Plaintiff's proposed construction upon briefing of Defendant's Motion. See Doc. No. 34
6 at pg. 5, lines 12-14. In furtherance of properly construing "metal housing", and as
7 Defendant correctly notes, Patent Claim 1 requires "a metal housing [(108)] to embody a
8 complete fixture [(112)]". See Doc. No. 34 at pg. 10, line 27 to p. 11, line 1 (modified).
9 Defendant proposes separate constructions for "metal" and "housing". *Id*. at pg. 5, lines
10 6-9; and Doc. No. 34-9. Defendant proposed "Metal" to be construed as "[c]onsisting
11 predominantly of metallic elements" and "Housing" to be "[a] casing that encloses and
12 protects other parts." See Doc. No. 34-9 (modified).

13     Plaintiff agrees with Defendant to the extent that any construction of "metal housing"
14 should include the word "metal". See Doc. No. 34 at pg. 11, lines 1-4. Parties' agreement
15 may not *per se* determine the proper construction of claim terms. See *Markman v.*
16 *Westview Instruments, Inc.*, 52 F.3d 967, 985 (Fed. Cir. 1995) ("Patents are not contracts
17 per se and patent infringement actions have never been viewed as breach of contract
18 actions."). Beyond this agreement though, Plaintiff asserts that Defendant's proposed
19 construction for the entire claim term "metal housing" is improper and unsupported by the
20 intrinsic evidence. See *infra* § III(a). In lieu of adopting Defendant's proposed
21 constructions both "metal" and "housing", this Court should adopt Plaintiff's proposed
22 construction of "metal housing" to be "metal structure". See *supra* § II(b) and *infra* §
23 III(a); and Doc. No. 44 at pgs. 1-2.

24     Defendant's proposed claim construction for "metal housing" contradicts the intrinsic
25 evidence for the Patent and should therefore be rejected by this Court. See *supra* § II(b).
26 Defendant cites an instance of the phrase "the metal housing (108)" from the Patent, and
27 two patent figures showing element "108". See Doc. No. 34-8 at pg. 6, and Doc. No. 34-
28 9. Defendant cites no other intrinsic evidence to support their proposed construction of


CUMMINS
INTELLECTUAL PROPERTY LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
5
Case No.: 3:23-cv-01335-CAB-JLB

Appx268

1  "housing" to be "[a] casing that encloses and protects other parts", or their construction
2  of "metal" to be "[c]onsisting predominantly of metallic elements." See *Id*. and Doc. No.
3  34-9. In view of the wealth of intrinsic evidence available, and the legal requirement of
4  heeding intrinsic evidence during claim construction, this Court should reject Defendant's
5  proposed construction as improper. See *supra* § II(b). Nonetheless, and regardless of
6  whether this Court accepts the Defendant's, the Plaintiff's, or their own claim construction
7  for "metal housing", this Court can find the Accused Products include the claimed "metal
8  housing", thereby precluding granting of Defendant's Motion. See *infra* § IV(a).

9     Plaintiff asserts the appropriate construction for "metal housing" from Patent Claim 1
10  is "metal structure", as provided in Plaintiff's Preliminary Claim Construction. See Doc.
11  No. 34-9 at pgs. 6-7; and Doc. No. 43 at pg. 2. In furtherance of properly construing the
12  claim term "metal housing", Plaintiff first looked to the Claim of the Patent in which the
13  term "metal housing" is found, as well as any other claims of the Patent, because these
14  sources give meaning to the claim term. See *Phillips* at 1314 (Fed. Cir. 2005) ("[T]he
15  context of the surrounding words of the claim also must be considered in determining the
16  ordinary and customary meaning of those terms…[and, b]ecause claim terms are normally
17  used consistently throughout the patent, the usage of a term in one claim can often
18  illuminate the meaning of the same term in other claims") (modified).

19     Claim 1 recites the "apparatus comprises… a metal housing (108) *to embody a*
20  *complete fixture (112)*". See Doc. No. 34-5 at pg. 11, 6:8-18 (modified and emphasis
21  added).   Claim 1 also recites claims terms such as "a body of the LED light fixture" and
22  "recessed lighting fixture housing", thereby implying that a "fixture" may have a "body"
23  and/or a "housing". See *Id*. at 6:8-14. Claim 3 indicates the "metal housing" can have an
24  "extremity", and the extremity is involved in "squeez[ing]" of "ceiling material placed
25  between the new construction clips (104) and [the] extremity of the metal housing (108)."
26  See *Id*. at 6:32-35 (modified). Claim 4 indicates a "complete fixture" can comprise "a
27  plurality of electrical systems, clips, and accessories". See *Id*. at 6:36-38 (modified and
28  emphasis added). In view of Claims 1, 3 and 4, the proper construction of "metal housing"


CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
6
Case No.: 3:23-cv-01335-CAB-JLB

Appx269

1  should be something that can have an extremity, and can embody a complete fixture that
2  comprises "a plurality of electrical systems, clips, and accessories." *Id.*

3      Based on this initial examination of the surrounding claim language, this Court can
4  reasonably conclude, without reference to other evidence, that a "metal structure" can
5  include an "extremity" and that a "metal structure" can also include an extremity that (in
6  conjunction with, *e.g.*, a "clip") can "squeeze ceiling material", as indicated in Claim 3.
7  See *supra* § II(b) citing *Phillips* at 1314 (some claims may "not require elaborate
8  interpretation"). Therefore, at least based on the claim language surrounding the claim
9  term "metal housing", Plaintiff's proposed construction of "metal structure" is thus far
10 supported by the intrinsic evidence. See *Autogiro Company of America v. United States*,
11 384 F.2d 391, 396 (Fed. Cir. 1967) ("Courts occasionally have confined themselves to the
12 language of the claims. When claims have been found clear and unambiguous, courts have
13 not gone beyond them to determine their content.").

14     To be sure, a "general purpose dictionar[y]" can help to determine how the words in
15 the Claims should influence a construction of "metal housing" from Claim 1. See *Phillips*
16 at 1314 (Fed. Cir. 2005). For example, the definition of "embody" can include the
17 following meanings: "To represent in concrete form", "To make part of a system or
18 whole", "to cause to become a body or a part of a body or system, "to represent in visible
19 form", and "to give definite form to". See attached Cummins Decl. ¶¶ 3-4; Exh. 1 at pg.
20 4; Exh. 2 at pg. 12, and Exh. 3 at pg. 20. In view of these definitions, and the words in the
21 Patent Claims, this Court can also conclude that a "metal structure" can "give definite
22 form to", and/or "represent in visible form", a "complete fixture" and "a plurality of
23 electrical systems, clips, and accessories". *Id.* in view of Doc. No. 34-5 at pg. 11, 6:8-41.
24     Considering these definitions in view of Claims 1, 3, and 4, Plaintiff's proposed
25 construction of "metal housing" to be "metal structure" is supported by these words and
26 definitions. *Id.* Additionally, Plaintiff notes that a "metal structure" does *not exclude*
27 something that can "comprise a plurality of electrical systems, clips, and accessories",
28 therefore Plaintiff's proposed construction does not conflict with Claim 4 being a



MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
7
Case No.: 3:23-cv-01335-CAB-JLB

Appx270

1 | dependent claim. See *Phillips* at 1324-1325 (Fed. Cir. 2005) (a dependent claim would be
2 | redundant if the independent claim is limited to the scope of the dependent).

3 |     In furtherance of supporting Plaintiff's proposed construction—and also to invalidate
4 | Defendant's proposed construction—the Patent Specification is referred to for additional
5 | intrinsic evidence. See *Phillips* at 1315 (Fed. Cir. 2005) citing *Markman* at 978 (Fed. Cir.
6 | 1995) ("The claims, of course, do not stand alone….[C]laims 'must be read in view of the
7 | specification, of which they are a part.'") (modified). See also *Phillips* at 1316 (Fed. Cir.
8 | 2005) citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)
9 | ("[T]he specification may reveal a special definition given to a claim term…[and]…[i]n
10 | such cases, the inventor's lexicography governs.") (modified).

11 |     Defendant argues "the separate metal clips…[are]…the parts *being* housed", which
12 | *contradicts* the intrinsic evidence from Patent Specification. See Doc. No. 34 at pg. 10,
13 | line 27 to pg. 11, line 1 (emphasis added). In support of this argument, Defendant cites the
14 | Patent Specification at "Figs. 8A, 8B, 3:34-41", but these portions of the Patent
15 | Specification actually support *not* limiting the "metal housing" claim term to something
16 | that "encloses…*other* parts". See Doc. No. 34-9 (emphasis added). As discussed *supra*
17 | pg. 6, Claim 1 requires "a metal housing (108) to embody a complete fixture (112)"; but,
18 | when this portion of Claim 1 is read in view of Defendant's proposed construction, the
19 | "metal housing" may be required to "enclose" the "plurality of electrical systems, clips,
20 | and accessories" that the "complete fixture" comprises. See *Id*. and Doc. No. 34-5 at pg.
21 | 11, 6:8-41. Because the "clips" can be considered part of the "complete fixture" to be
22 | "enclosed" in Defendant's proposed construction, one would expect to find something in
23 | the intrinsic evidence that is enclosing the "clips"—but there is no such thing in the
24 | intrinsic evidence. See *Id*. and Exhs. 4 and 5. In other words, considering the "clips" are
25 | expressly claimed as being part of the "complete fixture", and the "metal housing" is
26 | claimed as "emboy[ing the] complete fixture", Defendant's proposed construction *cannot*
27 | be considered valid because it requires that the "clips" be "enclose[d]" by something. *Id*.

28 |

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
8
Case No.: 3:23-cv-01335-CAB-JLB

Appx271

1  Furthermore, the Specification expressly states the "In an embodiment, the complete
2  fixture (112) comprises a plurality of electrical systems, clips, and accessories." See Doc.
3  No. 34-5 at pg. 10, col. 4, 4-8. Considering this passage, along with the figures reproduced
4  below, and in view of Claim 1 reciting "a metal housing (108) to embody a complete



5  fixture (112)", this Court should conclude that the
6  construction of "metal housing" cannot be limited to "A
7  casing that *encloses* and protects *other* parts" because
8  the "clips" (104 and 102) are not enclosed by anything.
9  See Doc. No. 34-9 at pg. 2 compared to Doc. No. 34-5
10  at pgs. 4, 5, 7, and 9 showing clips 102 and 104
11  (emphasis added). The Patent Specification indicates



12  that "FIG. 2a illustrates an exemplary view of connecting post
13  and metal housing, in accordance with at least one
14  embodiment." See Doc. No. 34-5 at pg. 9, 2:39-41. The Patent

15  also indicates that "FIG. 2b illustrates an exemplary view of the metal housing, in
16  accordance with at least one embodiment." *Id*. at 2:42-43. When discussing FIGS. 2a and
17  2b, the Patent also indicates "[t]he metal housing (108) embodies a complete fixture (112),
18  shown in FIG. 6." *Id*. at 3:51-55. This reinforces that the correct construction for "metal
19  housing" as one in which the "clips" (elements 104 and 102), as claimed in Claim 1, can
20  be *part of* the "metal housing" rather than requiring they be "enclosed" by the "metal
21  housing".      In other words, the "clips" are *claimed* and referred to in Plaintiff's
22  Specification as being part of the "complete fixture" but—as shown in the figures above,
23  the clips (102 and 104) are never shown or described as being "enclosed" by *anything* that
24  is part of the claimed apparatus. See *Id*.; Exhs. 4 and 5; and *supra* III(a).

25  Defendant's Letter erroneously implies that a "metal housing" must be something
26  that is entirely external by pointing to "Internal" metal parts. See Doc. No. 34-7 at pgs. 2-
27  3. However, the only time the Specification expressly recites the word "external" is to *not*
28  to require any element be external, but to indicate that the "[i]n some examples, an element

CUMMINS
INTELLECTUAL PROPERTY OF
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
9
Case No.: 3:23-cv-01335-CAB-JLB

Appx272

1 | shown as an internal component of one element may be implemented as an external
2 | component in another and vice versa." See Doc. No. 34-5 at pg. 9, 2:28-31. Therefore,
3 | the intrinsic evidence does not support requiring the "metal housing" being exclusively
4 | external to all other elements of the claimed apparatus.

5 |     The Federal Circuit dealt with a similar claim construction dispute in *Thorner v. Sony*
6 | *Computer Entm't Am. LLC*, 669 F.3d 1362, 1367-68, 101 USPQ2d 1457, 1460 (Fed. Cir.
7 | 2012). In *Thorner*, the asserted claims of the patent were directed to a system comprising
8 | a flexible pad with a plurality of actuators "attached to said pad." *Id*. The Federal Circuit
9 | held that the claims were not limited to actuators attached to the *external surface* of the
10 | pad, even though the specification used the word "attached" when describing
11 | embodiments affixed to the *external* surface of the pad and (2) the word "embedded" when
12 | describing embodiments affixed to the *internal* surface of the pad. *Id*. The Federal Circuit
13 | explained that the plain and ordinary meaning of "attached" includes both external and
14 | internal attachments, and there was no clear and explicit statement in the specification to
15 | redefine "attached" or disavow the full scope of the term. *Id*. Similarly, this Court should
16 | reject Defendant's proposed construction for attempting to narrow "metal housing" in a
17 | way that *contradicts* the plain language surrounding the claim term and otherwise finds
18 | "no clear and explicit statement in the specification" for support. *Id*.

19 |     Defendant may argue that the construction of "metal housing" requires the word
20 | "casing", or the word "encloses", in view of the dictionary definitions of "housing". See
21 | Exh. 1 at pg. 5; Exh. 2 at pg. 14; Exh. 3 at pg. 22 (modified). In response, Plaintiff asserts
22 | that the construction of "metal housing" to be a "metal structure" does not contradict these
23 | definitions (*e.g.*, a shelter, a case, and a cover can all be a metal structure). Furthermore,
24 | the Patent's use of "metal housing" in the Claims can be inconsistent with the dictionary
25 | definition (*e.g.*, the "clips" are not shown as enclosed or encased by anything) without
26 | causing issues at claim construction. For example, the Federal Circuit has indicated that
27 | even when "a common meaning, such as one expressed in a relevant dictionary, that flies
28 | in the face of the patent disclosure is undeserving of fealty". See *Renishaw PLC v.*



MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
10
Case No.: 3:23-cv-01335-CAB-JLB

Appx273

1  *Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

2      Defendant may also argue that their proposed construction for "metal housing"
3  should be adopted because the "metal housing" is claimed as embodying the "complete
4  fixture", and because Claims 4 and 5 arguably reference elements in the Figures that
5  appear enclosed (*e.g.*, some of the "plurality of electrical systems" and the "LED driver"
6  of the "junction box" may be shown as enclosed in FIGS. 8A and 8B). See Doc. No. 34-
7  5 at pg. 11, 6:8-41, and at pg. 8. Nonetheless, the Claims describe "clips" as being part of
8  the "complete fixture" and the Patent Specification never describes or shows the clips 102
9  or clips 104 as ever being enclosed by anything, thereby contradicting Defendant's
10 proposed construction. See *Id*. and Doc. No. 34-5.

11      This Court may not need to rely on the Provisional Application for adopting any of
12 Plaintiff's proposed constructions, but nonetheless, Plaintiff's proposed constructions are
13 also supported by the Provisional Application. See Exh. 5.[1]  The Federal Circuit has
14 affirmed that provisional applications can be instructive to claim construction. See, *e.g.*,
15 *MPHJ Technology Investments, LLC v. Ricoh Americas Corp.*, 847 F.3d 1363, 1375 (Fed.

16 Cir. 2017) (a provisional application can
17 contribute to the understanding of the claims).
18 For example, the picture on the right is a
19 reduced copy of a figure ("Provisional
20 Figure") from the Provisional Application.
21 See Exh. 5 at pg. 43; Cummins Decl. ¶ 5; and
22 Judicial Notice ¶ 4. The upper right portion of
23 the Provisional Figure shows two images



24 above the label "Housing", and the retrofit clips discussed in the Provisional Application

25

---

26 [1] Plaintiff's Patent claims priority to Non-Provisional US Application 16/392,731 and to
27 Provisional US Application 62/673,595.  See Cummins Decl. ¶¶ 5-6 and 17; Judicial
28 Notice ¶¶ 2, 3, and 7; and Exhs. 4, 5, and 6.



CUMMINS
INTELLECTUAL PROPERTY LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
11                           Case No.: 3:23-cv-01335-CAB-JLB

Appx274

1 are also shown attached to the "Housing" (retrofit clips are labeled "1" in the image below
2 the "Housing" caption and in the Provisional Application). See *Id*. In contradiction to
3 Defendant's proposed construction, these clips are *not* enclosed by *anything*. *Id*. However,
4 the clips *do* appear to be a part of a structure that is being referred to as a "Housing",
5 thereby further supporting Plaintiff's proposed construction. *Id*. The clips (1 and 2) appear
6 to define part of an outer edge of the structure of the apparatus, as opposed to being
7 enclosed by something. *Id*. For instance, the "new construction clips" are labeled "2" in
8 the drawings and throughout the Provisional Application, and yet nothing in the
9 Provisional Figure shows the new construction clips being enclosed by separate parts. See
10 Exh. 5. The drawings to the left of the "Housing" drawings show arrows extending from
11 the "complete fixture" (6), and—similarly—those images do *not* show anything that
12 "encloses" the clips. *Id*. Therefore, this additional intrinsic evidence further supports the
13 validity of Plaintiff's proposed construction of "metal housing" and invalidates
14 Defendant's proposed construction.

15      Should this Court still not be persuaded to reject Defendant's proposed construction,
16 Plaintiff notes that "the inventor's lexicography governs". See, *e.g.*, *Phillips* at 1316 (Fed.
17 Cir. 2005) ("[T]he specification may reveal a special definition given to a claim term by
18 the patentee that differs from the meaning it would otherwise possess. In such cases, the
19 inventor's lexicography governs.") (modified). Therefore, because the intrinsic evidence
20 (1) expressly defines the metal housing as "embodying the complete fixture", (2) defines
21 the "complete fixture" as "compris[ing] a plurality of electrical systems, clips, and
22 accessories", and (3) does not include descriptions or figures describing anything
23 "enclosing" the "clips", the term "housing" should not be construed as being limited to an
24 enclosure of other parts. See *supra* § III(a), and *Id*.

25      Furthermore, and contrary to Defendant's proposed construction, the term "housing"
26 should *not* be limited to a *single* part, at least in view of the above discussion, and because
27 the Patent never expressly limits the term "housing" to a single element. Moreover, the
28 only time the Specification discusses anything being "one element" is when stating that



CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
12                          Case No.: 3:23-cv-01335-CAB-JLB

Appx275

1  "[i]n some examples, one element may be designed as multiple elements, or multiple
2  elements may be designed as one element." See Doc. No. 34-5 at pg. 9 lines 26-28
3  (modified).

4      The remainder of Defendant's Motion § B(1) appears to be directed to infringement
5  arguments, and appears to not have any bearing on their proposed claim construction of
6  "metal housing". See Doc. No. 34 at pg. 10, line 26 to pg. 11, line 27. Defendant separately
7  asserts "plastic is not metal", but this seems to be set forth to support Defendant's
8  infringement defenses. See Doc. No. 34 at pg. 11, lines 11-12. Nonetheless, the existence
9  of plastic parts in the Accused Products will not preclude a finding of infringement as long
10 as each of Defendant's Accused Products includes all the elements of Claim 1 of the
11 Patent. See *Vulcan Eng'g Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1375-76 (Fed.
12 Cir. 2002) ("addition of features does not avoid infringement, if all the elements of the
13 patent claims have been adopted.").

14     Defendant attempts to provide extrinsic evidence as a Declaration of Dr. Eric
15 Bretschneider, but his Declaration is seemingly not set forth for construing the claim term
16 "metal housing". See Doc. No. 34-4. In the "Lowe's Housing" section, the Declaration
17 expressly states Dr. Bretschneider "was asked to determine the makeup of the housing of
18 those fixtures" in reference to the "physical samples" of the Accused Products. See *Id.* at
19 pg. 3, lines 15-18. Based on all the details Dr. Bretschneider sets forth in this section of
20 the Declaration, it appears Dr. Bretschneider only reviewed the single white wafer-looking
21 piece of the Accused Products, and nothing else, rendering it a bad faith declaration per
22 Fed. R. Civ. P. 56(h). See *Id.* at pg. 3, line 14 to pg. 6, line 4; and see Exh. 13, and
23 Cummins Decl. ¶¶ 19-22. Dr. Bretschneider's testimony does not substantially address
24 the intrinsic evidence of the Patent, therefore his testimony was likely not set forth for
25 claim construction purposes, unless Dr. Bretschneider's curriculum vitae says otherwise
26 (Dr. Bretschneider's curriculum vitae was not attached, despite indicating it was provided
27 as "Appendix A"). *Id.* Should Defendant set forth additional expert testimony regarding
28 any claim construction, Plaintiff asks this Court to not consider such evidence per Fed. R.

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
13
Case No.: 3:23-cv-01335-CAB-JLB

Appx276

1 Civ. P. 12(f), since Plaintiff was not given a fair opportunity to respond.

2     For at least these reasons, this Court should adopt Plaintiff's proposed claim
3 construction for "metal housing" because the intrinsic evidence supports Plaintiff's
4 Proposed claim construction. This Court should reject Defendant's proposed construction
5 as being contradictory to the intrinsic evidence and otherwise improperly narrowing the
6 term "metal housing". See *supra* § II(b) citing *Phillips*. Additionally, this Court should
7 order Defendant is not entitled to judgement as a matter of law because the "metal
8 housing" claim element is found in the Accused Products. See *infra* § IV(a).

9 **b. Defendant's Proposed Construction of "Junction Box Comprises a Plurality of**
10 **Output Wires" Contradicts the Intrinsic Evidence**

11     Defendant's Motion should be denied for failing to show Defendant is entitled to
12 judgement as a matter of law. Defendant proposes construing the claim terms the "junction
13 box comprises a plurality of output wires" to be the "junction box is physically attached
14 to at least two output wires, excluding wires merely held by the junction box", and
15 construing "output wires" to be "insulated wires that carry power to other components."
16 See Doc. No. 34-9 at pg. 2 (see "(3)" and "(4)" under "Constructions").

17     Defendant's proposed construction of "the junction box comprises a plurality of
18 output wires" contradicts the surrounding words of the Claims and should therefore be
19 considered invalid. See *supra* § II(b) citing *Phillips*. Defendant argues the term
20 "comprises" supports their construction of "physically attached to", since the
21 Specification indicates there can be "free wires" in the junction box. See Doc. No. 34 at
22 pg. 12, lines 5-10. Defendant provides no further support or arguments for why "free
23 wires" should be considered as necessarily "physically attached" to something, which is
24 otherwise not intuitive from the term "free" or "comprising". *Id*. Defendant cites the
25 *Huntsman* case, which does indicate "comprising" means the recited claim elements are
26 "essential", but *Huntsman* does not indicate "comprising" must also mean physically
27 attached to. See Doc. No. 34 at pg. 12, lines 1-5, citing *Phillips Petroleum Co. v.*
28 *Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998). Defendant provides no

CUMMINS
INTELLECTUAL PROPERTY LAW
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
14
Case No.: 3:23-cv-01335-CAB-JLB

Appx277

1  other precedent supporting their contention. *Id*. See also, *Vehicular Technologies V. Titan*
2  *Wheel Intern. et al.*, 212 F. 3d 1377, 1383 (Fed. Cir. May 22, 2000) ("[Patent] drafters use
3  "comprising" to mean "I claim at least what follows and potentially more.") (modified).

4     Nonetheless, Defendant's assertion that "comprises" should mean "physically
5  attached to" is contradicted by the surrounding words of Claim 1. For example, Claim 1
6  indicates the "apparatus *comprises*…the new construction clips" but then *conditions* the
7  *attachment* of the "new construction clips" on whether "the recessed lighting fixture
8  housing is not present." See Doc. No. 34-5 at pg. 11, lines 9-29 (modified). Therefore,
9  Claim 1 does not provide support for "comprises" being exclusively limited to constant,
10  direct, physical attachment. See *supra* § II(b) citing *Phillips*.

11    Additionally, Defendant's proposed construction of "the "junction box is physically
12  attached to at least two output wires, excluding wires merely held by the junction box"
13  also expressly contradicts the intrinsic evidence and should therefore be considered
14  invalid. See *supra* pg. 10 discussing *Thorner*. For example, when discussing FIGS. 8A
15  and 8B, the Patent expressly states that views 800a and 800b "show an absence of *output*
16  *wires* from the junction box (116) to the metal housing (108)" and that "the *output wire*
17  *connections* are internally arranged and cannot be seen by the user." See Doc. No. 34-5
18  at pg. 10, lines 46-48 (emphasis added). In other words, the Patent Specification indicates
19  the "output wires" have "output wire connections", and the "output wire connections are
20  internal[]" to the junction boxes of FIGS. 8A and 8B. See *Id*., and *Id*. at pg. 8 (modified).
21  This contradicts the Defendant's proposed construction, which attempts to "exclude[e]"
22  the "connection wirings" from being part of the "output wires", despite Claim 1 *expressly*
23  stating the "junction box [is] to hold a plurality of connection wirings". See *Id*. at pg. 11,
24  6:19-21, compared to Doc. No. 34-9 at pg. 2 (see "(4)" under "Constructions") (modified).
25  If the "output wire connections" are excluded from "output wires", then the output wires
26  could not provide electrical current to or from any component, which—again—contradicts
27  the intrinsic evidence. See Doc. No. 34-5 at pg. 11, lines 5-7, and lines 20-22
28  ("user…connect[s] two free wires to two free wires in the junction box (116)") and "user

1  pulls wires from building's electrical system and attaches to free wires in a junction box
2  (116)") (modified). Dr. Bretschneider's testimony is not helpful on this issue, considering
3  his testimony was limited to his examination of a single ground, rather than an Accused
4  Product that's been fully-installed by a customer (or himself) according to Defendant's
5  instructions (*e.g.*, such that the output wire connections are held in the junction box, as
6  described with respect to FIGS. 8a and 8b). [2]  See Doc. No. 34-4 at pg. 6, lines 5-21;
7  images of partial installation from Exh. 9 at pgs. 108 and 135; product instructions
8  provided as Exh. 11; and see Cummins Decl. ¶¶ 19-22. See also, *Linear Technology Corp.*
9  *v. Impala Linear*, 379 F.3d 1311, 1326 (Fed. Cir. 2004) (vacating district court's summary
10  judgement of non-infringement where genuine issues raised regarding contributory and
11  induced infringement per 35 U.S.C. §§ 271(b)-(c)). For at least these reasons, Defendant's
12  proposed claim construction for "the junction box comprises a plurality of output wires"
13  should be rejected for being contradictory to the intrinsic evidence.

14      Defendant also attempts to support their construction by arguing Claim 1
15  distinguishes between the phrases "hold a plurality of connection wirings" and "comprises
16  a plurality of output wires". See *Id*. at pg. 6, lines 16-22. However, Defendant makes no
17  attempt to interpret, or formally propose any construction for, "connection wirings", or
18  determine the relationship between "connection wirings" and their "output wires". See *Id*.
19  and Doc. No. 34-9 at pg. 2 (emphasis added). Additionally, Defendant proposes a
20  construction for "output wires" separate from their proposed construction for "the junction
21  box comprises a plurality of output wires", but the proposed construction does not support
22  granting judgement as a matter of law for Defendant. See Doc. No. 34-9 at pg. 2.

23      Defendant proposes their construction of "output wires" to be "insulated wires that

24

25  [2] Plaintiff notes Defendant's physical Exhibit B was received without the product
26  instructions sheet, therefore Defendant's Stimpson Decl. is not entirely accurate. See Doc.
27  No. 34-3 at pg. 2 ¶ 3; and see Cummins Decl. ¶ 23.  Plaintiff is providing a physical copy
28  of the instructions sheet with Exhibit 11.



CUMMINS
INTELLECTUAL PROPERTY LP
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
16
Case No.: 3:23-cv-01335-CAB-JLB

Appx279

1  carry power to other components". See Doc. No. 34-9 at pg. 2. Defendant's arguments
2  regarding "output wires" relate to infringement rather than supporting their proposed
3  construction. See Doc. No. 34 at pg. 12, line 1 to pg. 13, line 12. Defendant provides no
4  citation to intrinsic evidence to expressly support this construction, though Defendant may
5  purport to rely on Dr. Bretschneider's testimony. See Doc. No. 34-4 at pg. 6, lines 5-21.
6  In the context of examining the "LED module" of the accused products, Dr. Bretschneider
7  states that output wires are "wires that conduct electricity to a component [such as] the
8  LED module" and that a "ground wire is not an output wire". *Id.* (modified). Dr.
9  Bretschneider's understanding of "output wires" is different from Defendant's proposed
10  construction, thereby rendering Defendant's proposed construction as unreliable. See *Id.*
11  compared to See Doc. No. 34-9 at pg. 2. For example, Defendant's proposed construction
12  requires *multiple* "components" whereas Dr. Bretschneider's testimony argues for a single
13  "component". *Id.* Defendant's proposed construction requires "insulated" wires, whereas
14  Dr. Bretschneider's testimony makes no such requirement for insulation. *Id.* For at least
15  these reasons, Defendant's proposed construction for "output wires" is invalid, especially
16  since Defendant's own evidence does not support their narrow construction.

17      Plaintiff asks this Court to adopt Plaintiff's Proposed construction of "the junction
18  box comprises a plurality of output wires" as "the junction box comprises a plurality of
19  wires extending out from the plurality of connection wirings or the junction box". See
20  Doc. No. 34-8 at pg. 14, and Doc. No. 42-2 at pg. 5. This proposed construction is
21  supported by the intrinsic evidence, and clarifies, for a trier of fact, the meaning of
22  "comprising" when used with respect to the "output wires" of the junction box. *Id.*

23      For example, the Patent at FIG. 7, as reproduced below, shows wires extending out
24  of the junction box (116), and attaching to the twist connector (118). See Doc. No. 34-5
25  at pg. 7.   The Patent Specification states the "twist connector (118) attaches the output
26  wires of the junction to the metal housing (108)", thereby reinforcing that the wires
27  extending *out* of the junction box in FIG. 7 below are meant to be considered the "output

28

CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
17                          Case No.: 3:23-cv-01335-CAB-JLB

Appx280

1   wires". *Id.* at pg. 10, 4:9-18. In the sentence prior, when describing FIG. 7, the
2   Specification reinforces that the "junction box comprises [the] plurality of output wires"
3   and "holds" the "connection wirings". *Id.* This is also
4   consistent with FIGS. 8A and 8B, which show the
5   junction box in an arrangement where the output wires
6   and output wire connections are inside junction box,
7   allowing the output wires to conduct current to and



FIG. 7

8   from components outside the junction box. See Doc. No. 34-5 at pg. 10, 4:37-52, and at
9   pg. 8. Therefore, Plaintiff's proposed construction is supported by the Specification for
10  showing and describing wires extending "out" from the junction box, and also indicating
11  that "output wire connections" are inside the junction box. See *Id.* Plaintiff's proposed
12  construction is also supported by the Provisional Application. For example, the
13  Provisional Application includes the same language as the Non-Provisional Application
14  regarding "connecting the two free wires to two free wires in the junction box (8)" and
15  pulling "wires from building's electrical system and attach to free wires in junction box
16  (8). See Exh. 4 at pg. 27; Cummins Decl. ¶¶ 5-6 and 17; and Jud. Notice ¶¶ 2, 3, and 7.

17      For at least these reasons, this Court should adopt Plaintiff's proposed construction
18  of "the junction box comprises a plurality of output wires" to be "the junction box
19  comprises a plurality of wires extending out from the plurality of connection wirings or
20  the junction box". See Doc. No. 44 at pg. 2. Furthermore, this Court should reject
21  Defendant's proposed construction for being unsupported by the intrinsic evidence. See
22  *supra* § III(b).

23      **c. Defendant's Proposed Construction of "Twist Connector" Contradicts the**
24          **Intrinsic Evidence and Defendant's Motion**

25      Plaintiff asks this Court to reject Defendant's proposed construction of the claim term
26  "twist connector" and adopt Plaintiff's proposed construction. Defendant's proposed
27  construction of "twist connector" is set forth in item "(5)" of their construction email. See
28  Doc. No. 34-9 at pg. 2, and also Doc. No. 34 at pg. 13, line 13 to pg. 16, line 2. In support


CUMMINS
INTELLECTUAL PROPERTY (IP)
Law PLLC

1  of their proposed construction, the Defendant cites to Claim 1 of the Patent, testimony of
2  Dr. Bretschneider, and websites using the phrase "twist-*on* connectors"—even though the
3  claim term to be construed is "twist connector". See Doc. No. 34 at pg. 13, lines 13-17,
4  Doc. No. 34-3, and Doc. No. 34-10, and Doc. No. 34-11 (emphasis added). Defendant
5  does not support their proposed construction with any intrinsic evidence (*e.g.*, the
6  Specification, Drawings, Provisional Application, etc.), thereby rendering Defendant's
7  proposed construction as improper. See e.g., *Vitronics Corp. v. Conceptronic, Inc.*, 90
8  F.3d 1576, 1584 (Fed. Cir. 1996) ("Only if there were still some genuine ambiguity in the
9  claims, after consideration of all available intrinsic evidence, should the trial court have
10  resorted to extrinsic evidence[.]"). See also, e.g., *Phillips* at 1317 (Fed. Cir. 2005) ("while
11  extrinsic evidence can shed useful light on the relevant art, we have explained that it is
12  less significant than the intrinsic record in determining the legally operative meaning of
13  claim language.") (inner quotes and citations omitted).

14      The limited evidence Defendant cites to support their purported construction of "twist
15  connector" actually contradicts their construction. For example, Defendant argues the
16  wires secured by a twist connector "wrap[] *around* a metal thread", but the below image
17  they reproduced from a Wikipedia Article does not appear to show how wires can wrap
18  "around" any metal threads. See Doc. No. 34 at pg. 15, lines 23-25 (emphasis added), and



Figure 12—Twist-on connectors end view showing metal inserts

19  pg. 13, lines 21-28. See also Cummins
20  Decl. ¶¶ 12-14, and Exh. 9. Defendant's
21  description of a wire nut even contradicts
22  Defendant's proposed construction. See



23  *Id.* and See Doc. No. 34-9 at pg. 2 (Item "(5)" under
24  "Constructions"). In furtherance of showing the internal
25  structure of a wire nut, Plaintiff's counsel shaved the
26  exterior of a wire nut off to capture the image
27  reproduced above, and attached as Exhibit 7. See Cummins Decl. ¶¶ 7-10, and Exh. 7. The
28  above Wikipedia Article image of wire nuts shows tapered metal coils (*i.e.*, "metal


CUMMINS
INTELLECTUAL PROPERTY LAW
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
19      Case No.: 3:23-cv-01335-CAB-JLB

Appx282

1  inserts", as the image caption indicates) as part of their interior structure, which is not the
2  same as a "threaded metal interior" set forth in Defendant's proposed construction of
3  "twist connector". See Doc. No. 34-9 at pg. 2. A "threaded metal interior" may be
4  expected for something referred to as a "nut" in the context of attaching things (*e.g.*, a nut
5  has a threaded interior to receive a threaded exterior of a bolt). Yet, Defendant's proposed
6  construction expressly recites "wire nut" but does not accurately describe the *actual* wire
7  nuts shown in the images above. See *Id*. compared to Exh. 7. Defendant goes on to cite
8  Dr. Bretschneider's testimony, which also contradicts Defendant's proposed construction.
9  Dr. Bretschneider's appears to only rely on his experience and the Wikipedia Article. See
10 Doc. No. 34-4 at pg. 6, line 22 to pg. 9, line 8. Plaintiff has previously pointed out that
11 "the cited Wikipedia article[] *never* uses the phrase 'twist connector'", which is the claim
12 term to be construed. See Doc. No. 20 at pg. 32, lines 1-3, and see Doc. No. 20-2.
13 Additionally, Dr. Bretschneider's testimony alleges twist connectors "have internal
14 conducting metal threads that cut *into* the surface of conductors" but, again, this is not
15 entirely accurate for wire nuts having the tapered metal coils shown above and in Exh. 7.
16 See Doc. No. 34 at pg. 15, lines 23-25; and see Doc. No. 34-4 at pg. 6, lines 26-27; and
17 see Exh. 7 (emphasis added). Dr. Bretschneider also cites no sources referring to anything
18 as a "twist connector", but does rely on the Wikipedia article, which only uses the term
19 "twist-*on* connectors". See Doc. No. 34-4 at pg. 6, line 22 to pg. 8, line 8, and see Doc.
20 No. 20-2. The Wikipedia Article cites to an Electrical Fundamentals book, which also
21 only recites "twist-on connectors". See Cummins Decl. ¶¶ 12-14 and Exh. 8 (excerpted
22 per Judge Bencivengo Chamber Rule § II(D). See *Power Integrations, Inc. v. Fairchild*
23 *Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013) ("Thus, while an expert's
24 data need not be admissible, the data cannot be derived from a manifestly unreliable
25 source."). See *Prakhin v. The United States*, No. 14-924L pgs. 8-9 (Fed. Cl. March 10,
26 2023) (providing collection of cases indicating Wikipedia is unreliable). This raises
27 significant *Daubert* issues Dr. Bretschneider's testimony regarding "twist connector",
28 since "an expert's testimony [must rest] on reliable foundation that is relevant to the task

CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
20                              Case No.: 3:23-cv-01335-CAB-JLB

Appx283

1   at hand". See *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993)
2   (modified). Therefore, this Court should reject Defendant's proposed construction of
3   "twist connector" and adopt Plaintiff's proposed constructions for this claim term and its
4   surrounding claim text. See Doc. No. 42-2 at pg. 13, col. 3. Plaintiff asserts that these
5   proposed constructions are supported by the intrinsic evidence. See Doc. No. 34-8 at pg.
6   12 (citing intrinsic evidence and dictionaries).

7        Firstly, with respect to whether "twist connector" includes a wire nut, Plaintiff
8   already asserted in their Infringement Contentions that a "twist connector is a category of
9   connector types that does *not* include *all* types of means for connecting wires…[and
10  that]…a twist connector may *not* include connectors such as alligator clips, shrink wrap,
11  crimp connectors, among others." See Cummins Decl. ¶ 15; Exh. 9 at pg. 89-91 and 116-
12  118; (modified and emphasis added). See also Exh. 15 (showing example alligator clips,
13  shrink wrap, and crimp connectors) and Cummins Decl. ¶ 24. Additionally, Plaintiff even
14  *agrees* a "twist connector" can include, but is not limited to, connectors such as a wire nut
15  and a "tethered connector" (from another light fixture sold by Defendant) because they
16  rely on a twisting action. See *Id.*, and at pg. 129 (annotated instructions); Cummins Decl.
17  ¶ 18; and Jud. Notice ¶¶ 8-9.

18       Should this Court consider the term "twist-*on* connector" to be a term of art, then
19  there is a reasonable inference that "twist connector" was intended to *not* be limited to
20  wire nuts that are twisted *on* to an end of something, as Defendant's proposed construction
21  requires. See Doc. No. 34-9 at pg. 2. Based on this inference, the proper construction for
22  "twist connector" should simply be "a connector that relies on an act of twisting". See
23  Doc. No. 42-2 at pg. 6. The Federal Circuit has provided guidance for construing adjacent
24  claim terms when a relatively commonly used modifier (*e.g.*, "-on") does not appear
25  adjacent to the claim terms. See, *e.g.*, *Malvern Panalytical Inc. v. TA Instruments-Waters
26  LLC*, No. 2022-1439, 9-10 (Fed. Cir. Nov. 1, 2023). In *Malvern*, the Federal Circuit
27  concluded the claim term "pipette guiding mechanism" should encompass both automatic
28  and manual mechanisms, after considering the definition of each of the 3 words, and also

CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
21                          Case No.: 3:23-cv-01335-CAB-JLB

Appx284

1 finding the specification did not explicitly or implicitly limit the guiding mechanism to
2 manual embodiments. *Id*. at 10-13.   In their analysis in *Malvern*, the Federal Circuit also
3 cited to their opinion in *Hill-Rom Services, Inc.*, which sided with a party who was arguing
4 the claim term "data-link" is not limited to "wired" or "wireless" embodiments in part
5 because neither of those adjectives were recited to modify the claims. *Id*. citing *Hill-Rom
6 Services, Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014). See also *Phillips* at 1314
7 (Fed. Cir. 2005) ("[T]he claim in this case refers to 'steel baffles,' which strongly implies
8 that the term 'baffles' does not inherently mean objects made of steel.") (modified).

9     In view of *Malvern* and *Hill-Rom Services, Inc.*, this Court can conclude
10 Defendant's proposed construction for "twist connector" is inappropriate because "the
11 claim language contains no restrictions that would suggest that" the twist connector is
12 something that is twisted exclusively *on* to the ends of wires, as wire nuts do. See *Malvern*
13 at 11 (Fed. Cir. Nov. 1, 2023). Rather, the "claim language supports the conclusion that"
14 "twist connector" "encompasses" embodiments in which the twist connector is twisted
15 "on", or *not* twisted on, but nonetheless still relies on an act of twisting. *Id*. The Patent
16 Specification even describes the "twist connector" (depending on the embodiment) as
17 being capable of attaching "the output wires of the junction box (116) to the metal housing
18 (108)" and attaching "the junction box (116) to the LED fixture". See Doc. No. 34-5 at
19 pg. 10, 4:9-17, and at pg. 11, 5:22-23. But—none of these recitations limit the twist
20 connector to anything that is *exclusively* twisted onto the end of wires, nor do these
21 recitations *exclude* such functionality. *Id*. Therefore, the Specification supports *not*
22 limiting "twist connector" to a twist-*on* connector. See *Id*., and see *Malvern Panalytical
23 Inc.* at 13-14 (Fed. Cir. Nov. 1, 2023) ("[T]he specification describes the guiding
24 mechanism broadly, without limitation to either manual or automatic embodiments.)
25 (modified). Therefore, the Court should reject Defendant's proposed construction of
26 "twist connector" and adopt Plaintiff's proposed construction. See *Id*.; Doc. No. 34-5 at
27 pg. 11, 6:22-23; and Doc. No. 42-2 at pg. 6.

28     Defendant argues in another jurisdiction, and regarding the Patent (but a product of



MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
22                    Case No.: 3:23-cv-01335-CAB-JLB

Appx285

1  a different brand), that a "twist connector" as claimed in the Patent should *not* be a wire
2  nut. See Cummins Decl. ¶ 11, and see attached Exh. 10 at pg. 140 (annotated and
3  excerpted). Although still pending, Judicial Estoppel would have arguably prevented
4  Defendant from taking their position in this Case, had they successfully argued a "twist
5  connector" cannot be defendants' wire nut. See, e.g., *New Hampshire v. Maine*, 532 U.S.
6  742, 749 (2001) ("judicial estoppel…prevents a party from prevailing in one phase of a
7  case on an argument and then relying on a contradictory argument to prevail in another
8  phase.") (modified).

9         Nonetheless, this Court should conclude Plaintiff's proposed construction for "twist
10 connector" is supported by the intrinsic evidence and dictionary definitions, and should
11 therefore be adopted. A general purpose dictionary can be helpful to confirm the
12 appropriateness of Plaintiff's proposed construction. See *Phillips* at 1314 ("general
13 purpose dictionaries may be helpful"). For example, definitions of the noun "twist", as
14 defined in multiple general purpose dictionaries, include: "something formed by twisting
15 or winding", "a thing with a spiral shape", "a spiral turn or curve", "the state of being
16 twisted", and "a thread, yarn, or cord made by twisting two or more strands together". See
17 Cummins Decl. ¶¶ 3-4; Exh. 1 at pg. 7, Exh. 2 at pg. 13, and Exh. 3 at pg. 21; and Jud.
18 Notice ¶¶ 4-6. When combined with the word "connector", the term "twist connector" (in
19 a vacuum) can reasonably refer to something that connects two or more things that were
20 formed by twisting or winding, and/or something that connects two or more things that
21 are in a state of being twisted. *Id.* When considered in view of the intrinsic evidence for
22 the Patent, this Court can arrive at Plaintiff's proposed constructions for "twist connector"
23 and for "a twist connector (118) to attach the output wires of the junction box (116) to the
24 metal housing (108)". See Doc. No. 42-2 at pg. 6.

25         For example, when discussing FIG. 7, the Patent Specification indicates the "twist
26 connector (118) attaches the output wires of the junction box (116) to the metal housing
27 (108)." See Doc. No. 34-5 at pg. 10, lines 13-15. Additionally, FIGS. 6 and 7 illustrate
28 the "twist connector (118)", and FIGS. 8A and 8B are described as having "the output


CUMMINS
INTELLECTUAL PROPERTY LAW, PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
23                    Case No.: 3:23-cv-01335-CAB-JLB

Appx286

1  wire connections [] internally arranged" and thus "cannot be seen by the user." See *Id*.,
2  and see *Id*. at pgs. 7-8, and pg. 10, col. 6, lines 46-48. Therefore, the intrinsic evidence
3  supports Plaintiff's proposed construction of "a twist connector (118) to attach the output
4  wires of the junction box (116) to the metal housing (108)" to be "a connector that relies
5  on an act of twisting and that attaches, to the metal structure, the plurality of wires
6  extending from the plurality of connection wirings or the junction box". See Doc. No. 42-
7  2 at pg. 6. Plaintiff asserts that this proposed construction: (1) aligns with the intrinsic
8  evidence, (2) does not modify the scope of the Claims, and (3) will assist the finder of fact
9  with understanding the issues in this Case. See, *e.g.*, *Eon Corp. v. Silver Spring Networks,*
10 *Inc.*, 815 F.3d 1314, 1318-1319 (Fed. Cir. 2016); and *Malvern Panalytical Inc.* (Fed. Cir.
11 Nov. 1, 2023).

12       For at least these reasons, Plaintiff asks this Court to reject Defendant's proposed
13 construction of "twist connector". See *supra* § II(b). Plaintiff also asks this Court to adopt
14 Plaintiff's proposed construction of "twist connector" as being supported by the intrinsic
15 evidence and *Phillips*. See *Id*. and Doc. No. 42-2 at pg. 6.

16 **IV. This Court Should Reject Defendant's Non-Infringement Arguments and**
17         **Conclude that the Claim Terms are in the Accused Products**

18       For *infra* §§ IV(a-c), Plaintiff asks this Court to deny Defendant's Motion because
19 Defendant is not entitled to judgement as a matter of law, and to order Plaintiff is entitled
20 to judgement of infringement in favor of Plaintiff, at least regarding each of the 3 claim
21 terms at issue in Defendant's Motion. Alternatively, should this Court decide Plaintiff is
22 not entitled to judgement as a matter of law, Defendant's Motion should be denied because
23 there may be genuine issues of material fact regarding infringement of the 3 claim terms.

24 **a. The Accused Products Include the Metal Housing as Claimed**

25       Defendant's Motion should be denied because the "metal housing" element of Claim
26 1 of the Patent is found in each of the Accused Products (literally and/or by equivalents).
27 Defendant argues the "Accused Products have a housing made of a common plastic" and
28 "plastic is not metal". See Doc. No. 34 at pg. 11, lines 10-12. Defendant and Dr.

CUMMINS
INTELLECTUAL PROPERTY LAW, PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
24
Case No.: 3:23-cv-01335-CAB-JLB

Appx287

1  Bretschneider do not appear to agree on what the "housing" of the Accused Products is.
2  Dr. Bretschneider indicates "[t]he connector[,] in the Accused Products that attaches the
3  output wires of the junction box to the housing[,] is the type of connector shown and



4  described above". See Doc. No. 34-4 at pg. 7 line
5  19 to pg. 8, line 4 (modified). The image Dr.
6  Bretschneider's references is reproduced to the
7  left and shows a "ground wire" that is connected
8  to a *metal* junction box of the Accused Products,
9  thereby indicating that Dr. Bretschneider is
10  testifying under oath that the metal junction box

11  is part of the "housing". *Id.* and see Exh. 12 and Cummins Decl. ¶¶ 19-22. On the other
12  hand, Defendant points to a white wafer piece of the Accused Products to be a unitary
13  housing of the Accused Products. See *Id.* Therefore, if one only considers Defendant's
14  Motion in a vacuum, Defendant is not entitled to judgement as a matter of law because
15  Defendant's Accused Products include a "metal housing" under their own proposed
16  construction and based on their own expert's testimony ("[a] casing that encloses and
17  protects other parts" and is "[c]onsisting predominantly of metallic elements").  See Doc.
18  No. 34-9 at pg. 2 (Parts (1) and (2) under "Constructions"). Plaintiff proposes construing
19  "metal housing" as "metal structure" and asserts Defendant's Accused products include a
20  "a metal structure to embody a complete fixture", as claimed in Patent Claim 1. See Doc.
21  No. 34-5 at pg. 11, col. 6, line 18. See also, *supra* § III(a). Plaintiff has already expressly



22  identified, for the Defendant, features of the
23  Accused Products include the "metal housing
24  (108) to embody a complete fixture (112)". See
25  Exh. 9 at pgs. 84-87 and 111-114, and as shown
26  in the image to the left. These elements of an
27  Accused Product #5141630 were also provided
28  as a physical exhibit. See Exh. 12 and Cummins

CUMMINS
INTELLECTUAL PROPERTY LLC
LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
25                          Case No.: 3:23-cv-01335-CAB-JLB

Appx288

1  Decl. ¶¶ 19-22. Defendant cannot avoid patent infringement by *adding* elements (the
2  white wafer piece) when the Accused Products otherwise have *each and every* feature of
3  Patent Claim 1, literally or by equivalents. See, *e.g.*, *Vectra Fitness, Inc.* at \*\*10 (W.D.
4  Wash. 2003) citing *Vulcan Eng'g Co., Inc.*, 1375-76 (Fed. Cir. 2002) ("Numerous
5  decisions indicate that addition of an element or step to an accused product cannot avoid
6  infringement."). Defendant argues for the white wafer piece being the "housing" so that
7  the doctrine of equivalence cannot be applied per the disclosure-dedication doctrine. See
8  Doc. No. 34 at pg. 11, lines 12-27. However, Plaintiff's primary infringement contentions
9  do not rely on the white wafer piece or the doctrine of equivalents to find the metal housing
10 claim element in the Accused Products. See Exh. 9 at pgs. 84-87 and 111-114.
11 Additionally, the intrinsic evidence, and Defendant's own expert testimony, supports
12 finding the claimed "metal housing" literally in the Accused Products, without relying on
13 the Doctrine of Equivalents.

14    For at least these reasons, this Court should conclude the Accused Products include the
15 "metal housing" of Patent Claim 1, and Defendant is not entitled to judgement as a matter
16 of law, or, alternatively, that genuine issues of material fact remain.

17   **b. The Accused Products Include the Twist Connector as Claimed**

18      Defendant erroneously alleges the Accused Products do not include a "twist
19 connector" because the Accused Products do not include wire nuts. See Doc. No. 34 at
20 pgs. 13-14 ("Twist connectors can also be called 'wire nuts'…[and] the Accused Products
21 lack the required twist connector".) (modified). However, this assertion relies on
22 Defendant's purported construction of "twist connector" being limited to a "wire nut",
23 which Plaintiff has shown is unsupported and invalid. See *supra* § III(c) compared to Doc.

24   No. 34-9 at pg. 2. When considering Plaintiff's
25 proposed construction of "twist connector" as "a
26 connector that relies on an act of twisting", the
27 Accused Products include the "twist connector" of
28 Claim 1. See *Id*. For example, the image to the left


CUMMINS
INTELLECTUAL PROPERTY LTD

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
26                        Case No.: 3:23-cv-01335-CAB-JLB

Appx289

1   shows a partially shaved connector from the Accused Products to evidence the internal
2   structure of the connector. See Cummins Declaration ¶¶ 7-10 and 19-22. See also Exhs. 7
3   and 12. The above image evidences the wires inside the connectors being already *twisted*
4   and coated at the time of purchase. *Id*. As Plaintiff described in Plaintiff's Infringement
5   Contentions, the twisting and coating of such wires can be performed either manually or
6   automatically. See Cummins Decl. ¶ 16; Exh. 9 at pgs. 89-91, 116-118, and 136; and Jud.
7   Notice ¶ 1. For example, when automatically performed, a machine will pull an insulated
8   wire from a source bundle, strip the end of the wire, twist the end of the wire, and then
9   coat the end of the wire. *Id*. The twisted wire would then have helical outer ridges, as
10  visible in Exhibit 7 and in the image above. See *Id*. and Exh. 7. A "c" shaped metal insert
11  is provided in each wire hole of the connector to engage a helical ridge of a respective
12  twisted wire and thus ensure the twisted wire cannot be easily removed from the wire hole.
13  *Id*. Therefore, because the accused connectors rely on an act of twisting, and otherwise
14  satisfy the limitations of the claimed "twist connectors", this Court should conclude the
15  Accused Products have the claimed "twist connectors", either literally or by equivalents.
16  See *Id*. and see *supra* § III(c).

17      Defendant cites precedent regarding doctrines of equivalents and vitiation, and then
18  and sets forth arguments that are not fleshed out. See Doc. No.
19  34 at pg. 10, lines 3-10, and pg. 14, line 22 to pg. 16, line 2.
20  For example, Defendant argues the claim term "twist
21  connector" is "unequivocal" but provides no explanation for
22  this conclusion beyond alleging "twist connectors and push-in
23  connectors work in substantially different ways." *Id*. at pg. 14,



24  lines 24-26, and at pg. 15, lines 23-
25  26. There may a genuine issue of
26  material fact because Defendant only
27  argues against equivalents for
28  connectors at one end of the





1 || connector "DD" (seen above-right, annotated) but does not provide arguments regarding
2 || the connectors at the other ends (seen above-left, annotated) of some of the accessories.
3 || See *Id*.; Exh. 11; and Cummins Decl. ¶¶ 19-22. Secondly, Defendant hardly addresses
4 || only one aspect for determining equivalents (*e.g.*, "different ways"), and omits
5 || consideration of any other aspects. See *supra* § II(c) ¶ 2. Although Plaintiff *dis*agrees that
6 || none of the connectors of the Accused Products can be considered equivalents of the



7 || claimed "twist connector", Defendant's *own* description and construction
8 || of the claimed "twist connector" actually make the case for equivalents *in*
9 || *favor* of Plaintiff. See Doc. No. 34 at pg. 15, lines 23-25, and Doc. No. 34-
10 || 9 at pg. 2. For example, the Accused Products include the accused
11 || connectors shown to the right, and those accused connectors: (1) "can be
12 || used multiple times", (2) have instances of a "single hole" in which twisted
13 || wires/strands are inserted into, (3) have a "metal interior that engages two

14 || or more wire ends", and (4) rely on "twisting of the wire ends". *Id*. and see Exh. 7; and
15 || see *supra* § II(c) ¶ 2.

16 ||       Similarly, Defendant makes a vitiation argument by alleging the claimed "twist
17 || connector" requires "a very specific type of connector." See Doc. No. 14, lines 24-26.
18 || However, Defendant's proposed construction "twist connector" being exclusively limited
19 || to a "wire nut" is not supported by the intrinsic evidence. See *supra* § III(c). Nonetheless,
20 || equating the "twist connector", as claimed, to the accused connectors would *not* vitiate the
21 || claim limitation because the accused connectors are wire connectors that rely on an act of
22 || twisting, as opposed to using a crimping tool, alligator clips, or shrink wrap (something
23 || other than a twist connector) to connect wires to something. See Exh. 9 at pgs. 90-91; Exh.
24 || 15; and Cummins Decl. ¶¶ 24-25. Plaintiff's argument is *not* being set forth to ensure
25 || *every* specious correlation between a connector and an act of twisting will fall within the
26 || scope of the claimed "twist connector" (*e.g.*, connectors made in a factory where workers
27 || twist the steering wheels of their cars during their morning commute does not mean that
28 || factory's connectors are also the claimed twist connector). Rather, Plaintiff emphasizes

CUMMINS

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
28
Case No.: 3:23-cv-01335-CAB-JLB

Appx291

1 | that one can view the evidence of this Case and visibly confirm, without specious
2 | correlations, the accused connectors rely on a twisting action to securely connect wires to
3 | something, even if the end user is not the one performing the twisting. See Exh. 7.
4 | Moreover, the claimed term "twist connector" has a particular purpose in Claim 1, which
5 | further limits the claimed term, without covering every use of a connector under the sun.
6 | For at least these reasons, this Court should deny Defendant's Motion, and indicate the
7 | claimed "twist connector" is found in the Accused Products.

8 | **c. The Accused Products Include the Claimed Terms "Junction Box Comprises a**
9 | **Plurality of Output Wires"**

10 | Defendant alleges the claim terms, "junction box comprises a plurality of output
11 | wires", is not included in the Accused Products because the Accused Products only
12 | include a "single ground wire" and because "there is not even one output wire of the
13 | junction box." See Doc. No. 34 at pg. 12, line 2 to pg. 13, line 12. However, when
14 | users/consumers install the Accused Products according to Defendant's instructions and



15 | using the parts included with the Accused Products, the respective
16 | junction boxes will have a plurality of wires extending out from the
17 | plurality of connection wirings (*i.e.*, out from the connectors that are
18 | connecting wires) and/or out from the junction box (in the image to the
19 | left, the junction box is detached to reveal the wires and connectors that
20 | would otherwise not be visible when the junction box *is* attached during
21 | normal operations). See Cummins Decl. ¶ 25; and see Exh. 9 at pgs. 87,
22 | 89, 114, and 116. See also *supra* § II(c) citing *Golden Blount, Inc.* (Plaintiff has already
23 | claimed that Defendant should be liable for indirect infringement. See Doc. No. 17 ¶ 124).
24 | Nonetheless, there is direct and/or indirect infringement even if this Court adopts
25 | Defendant's proposed construction. See *supra* § at III(b). For example, when a user
26 | follows the instructions provided by Defendant, the Accused Products will have
27 | "[i]nsulated wires that carry power to other components". See Exh. 9 at pgs. 108 and 135,
28 | and see Doc. No. 34-9 at pg. 2. Furthermore, when the user follows those instructions,

CUMMINS
INTELLECTUAL PROPERTY LAW PLLC

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
JUDGEMENT
29                          Case No.: 3:23-cv-01335-CAB-JLB

Appx292



1    wires would be extending out of the junction box, and
2 those wires would be held *and* physically attached to the
3 junction box, since: (1) the white wafer piece is attached
4 to, and forming part of (or can be considered an equivalent
5 to a bottom portion of) the junction box in the image to
6 the left, and (2) at least two output wires are physically
7 attached (directly or indirectly) to Accused Product and
8 thus the junction box and the claimed metal housing. See *Id.* and Exh. 13; see Cummins
9 Decl. ¶¶ 19-22; and *supra* § III(b). Moreover, Dr. Brettschneider's testimony supports
10 finding the "output wires" in the Accused Products because, as shown above, the yellow
11 cable entering the junction box connects to the accused "output wires", and during
12 operation those "output wires" conduct electricity, through the connection wirings, "to a
13 component" such as "the LED module." See Exh. 9 at pgs. 88-89; and Doc. No. 34-4 at
14 pg. 6, lines 5-21. Therefore, Plaintiff asserts the Accused Products include the claimed
15 terms "output wires" and "the junction box comprises a plurality of output wires" as set
16 forth in Claim 1.

17 **V. Conclusion**

18    In view of the foregoing, Plaintiff asks this Court to order as follows:

19 **1.** Per FRCP 56(a), Defendant's Motion is denied because Defendant is not entitled to
20 judgement as a matter of law regarding any and all of at least the 3 claims terms
21 Defendant's Motion addresses. **2.** Per FRCP 56(f)(1) and (3), Plaintiff's proposed claim
22 constructions of the 3 claim terms are adopted in lieu subsequent claim construction
23 proceedings per Patent L.R. §§ 4.4-4.5. **3.** Per FRCP 56(f)(1), at least the 3 construed
24 claim terms are found in the Accused Products. **4.** Per FRCP 11(b)(4) and 56(h),
25 Defendant's Motion is in bad faith for unprecedentedly evading Plaintiff's Infringement
26 Contentions (*i.e.*, pleading). See *Apple Inc. v. Samsung Elecs. Co.*, No.: 12-CV-0630-
27 LHK (PSG) (N.D. Cal. Jun. 26, 2013) (infringement contentions are substitutes for
28 interrogatories and act as form of pleading).

1

2 Dated: July 8, 2024

3 **CUMMINS IP LAW PLLC**

4 */s/ Patrick Cummins*,

5 Patrick D. Cummins, CA Bar No. 294400

6 3426 Pepperhill Rd.

7 Lexington, KY 40502

8 Telephone: (502) 445-9880

9 Patrick@CumminsIP.com

10 *Counsel for Plaintiff, DS Advanced Enterprises, Ltd.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1 | Patrick Cummins
2 | CA Bar No.: 294400
  | Patrick@CumminsIP.com
3 | Cummins IP PLLC
4 | 3426 PEPPERHILL RD
5 | LEXINGTON, KY 40502
  | TEL: 502.445.9880
6 | *Counsel for Plaintiff,*
7 | *DS Advanced Enterprises, Ltd.*
8 |
9 |

### TABLE OF OPPOSITION EXHIBITS

EXHIBIT 1........................... PGS. 1-7

EXHIBIT 2........................... PGS. 8-15

EXHIBIT 3........................... PGS. 16-22

EXHIBIT 4........................... PGS. 23-40

EXHIBIT 5........................... PGS. 41-46

EXHIBIT 6........................... PGS. 47-48

EXHIBIT 7........................... PGS. 49-50

EXHIBIT 8........................... PGS. 51-67

EXHIBIT 9........................... PGS. 68-137

EXHIBIT 10.........................PGS. 138-140

EXHIBIT 11........................ PG.   141

EXHIBIT 12.........................PG.   142

EXHIBIT 13........................ PG.   143

EXHIBIT 14.........................PG.   144

EXHIBIT 15.........................PGS. 145-148

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

i

Appx295

# EXHIBIT 1

**EXHIBIT 1**
**pg. 1**

CLAIM CONSTRUCTION



PLNTF102717

**EXHIBIT 1**
**pg. 2**

Appx297



# The Concise
## Oxford
# Dictionary

TENTH EDITION

*Edited by*

**Judy Pearsall**

**OXFORD**
UNIVERSITY PRESS

PLNTF102718

**EXHIBIT 1**
**pg. 3**

CLAIM CONSTRUCTION



PLNTF102719

EXHIBIT 1
pg. 4

Case 3:23-cv-01335-CAB-JLB   Document 45-1   Filed 07/08/24   PageID.910   Page 6 of 149

CLAIM CONSTRUCTION



PLNTF102720

**EXHIBIT 1**
**pg. 5**

CLAIM CONSTRUCTION



PLNTF102721

**EXHIBIT 1
pg. 6**

Appx301

CLAIM CONSTRUCTION



PLNTF102722

EXHIBIT 1
pg. 7

Appx302

# EXHIBIT 2

**EXHIBIT 2**
**pg. 8**

Appx303

CLAIM CONSTRUCTION



PLNTF102702

**EXHIBIT 2**
**pg. 9**

Appx304

CLAIM CONSTRUCTION

# Merriam-Webster's Intermediate Dictionary



**Merriam-Webster, Incorporated**
Springfield, Massachusetts, U.S.A.

PLNTF102703

**EXHIBIT 2**
**pg. 10**

CLAIM CONSTRUCTION



**A GENUINE MERRIAM-WEBSTER**

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster*™ is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 2004 by Merriam-Webster, Incorporated

Library of Congress Cataloging-in-Publication Data

Merriam-Webster's intermediate dictionary.
        p. cm.
     Summary: Provides definitions, pronunciation, etymology, part of speech designation, and other appropriate information. Intended for use by students in grades six to eight.
     ISBN-13: 978-0-87779-579-7
     ISBN-10: 0-87779-579-7
     1. English language—Dictionaries, Juvenile [1. English language—Dictionaries.]  I. Title: Intermediate dictionary. II. Merriam-Webster, Inc.

PE1628.5.M44 2004
423—dc22

                                                          2004045792

Merriam-Webster's Intermediate Dictionary principal copyright 1986

All rights reserved. No part of this book covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, taping, or information storage and retrieval systems—without written permission of the publisher.

Made in the United States of America

PLNTF102704

**EXHIBIT 2**
**pg. 11**

CLAIM CONSTRUCTION

## elver • embrace

**254**

**el·ver** \'el-vər\ *n* : a young eel

**elves** *plural of* ELF

**elv·ish** \'el-vish\ *adj* : MISCHIEVOUS 2, 3

**Ely·si·um** \i-'lizh-ē-əm, -'liz-\ *n* : a place or condition of ideal happiness : PARADISE [derived from Greek *Elymion*, name in mythology of a place for the dead] — **Ely·sian** \-'lizh-ən\ *adj*

**el·y·tron** \'el-ə-,trän\ *also* **el·y·trum** \-trəm\ *n, pl* **-tra** \-trə\ : one of the thick modified front wings in beetles and some other insects that protect the hind pair of wings that are used for flying

**em-** — see EN-

**ema·ci·ate** \i-'mā-shē-,āt\ *vb* **-at·ed; -at·ing** : to cause to lose flesh so as to become very thin — **ema·ci·a·tion** \-,mā-shē-'ā-shən, -sē-\ *n*

**e-mail** \'ē-,māl\ *n*  1 : a system for sending messages between computers  2 : messages sent through an e-mail system ⟨receives a lot of *e-mail*⟩  **b** : an e-mail message ⟨sent him an *e-mail*⟩ — **e-mail** *vb* — **e-mail-er** \-,māl-ər\ *n*

**em·a·nate** \'em-ə-,nāt\ *vb* **-nat·ed; -nat·ing**  1 : to come out from a source ⟨a scent *emanating* from the flowers⟩  2 : EMIT 1a, GIVE OUT ⟨seems to *emanate* confidence⟩ — **em·a·na·tion** \,em-ə-'nā-shən\ *n* — **em·a·na·tion·al** \-shnəl, -shən-ᵊl\ *adj* — **em·a·na·tive** \'em-ə-,nāt-iv\ *adj*

**eman·ci·pate** \i-'man(t)-sə-,pāt\ *vb* **-pat·ed; -pat·ing** : to free from someone else's control or power; *esp* : to free from slavery — **eman·ci·pa·tion** \-,man(t)-sə-'pā-shən\ *n* — **eman·ci·pa·tor** \-'man(t)-sə-,pāt-ər\ *n* — **eman·ci·pa·to·ry** \-'man(t)-sə-pə-,tōr-ē, -,tōr-ē\ *adj*

**emas·cu·late** \i-'mas-kyə-,lāt\ *vb* **-lat·ed; -lat·ing**  1 : to deprive of masculine strength or spirit : WEAKEN  2 : CASTRATE — **emas·cu·la·tion** \-,mas-kyə-'lā-shən\ *n* — **emas·cu·la·tor** \-'mas-kyə-,lāt-ər\ *n*

**em·balm** \im-'bä(l)m\ *vb* : to treat a dead body with special preparations to preserve it from decay — **em·balm·er** *n* — **em·balm·ment** \-mənt\ *n*

**em·bank** \im-'baŋk\ *vb* : to enclose by an embankment

**em·bank·ment** \im-'baŋk-mənt\ *n* : a raised bank or wall to carry a roadway, prevent floods, or hold back water

**em·bar·go** \im-'bär-gō\ *n, pl* **-goes**  1 : an order of a government prohibiting commercial ships from leaving its ports  2 : legal prohibition or restriction of trade  3 : an informal or unofficial stoppage : IMPEDIMENT; *esp* : PROHIBITION  2 — **embargo** *vb*

**em·bark** \im-'bärk\ *vb*  1 : to go or put on board a ship or airplane  2 : to begin some task or project ⟨*embark* on a career⟩ — **em·bar·ka·tion** \,em-,bär-'kā-shən\ *n* — **em·bark·ment** \im-'bärk-mənt\ *n*

**em·bar·rass** \im-'bar-əs\ *vb*  1 : to cause to feel self-consciously confused or distressed ⟨unexpected laughter *embarrassed* the speaker⟩  2 : to restrict the movement of : HINDER, IMPEDE  3 : to involve in financial difficulties — **em·bar·rass·ing·ly** \-'bar-ə-siŋ-lē\ *adv*

**synonyms** EMBARRASS, DISCONCERT, ABASH mean to make upset, uncomfortable, or confused in one's emotions. EMBARRASS suggests a feeling of uneasiness or discomfort ⟨*embarrassed* to see my relatives in the audience⟩. DISCONCERT suggests emotional upset or confusion from a strong and direct source ⟨street noises *disconcert* me during piano practice⟩. ABASH suggests a complete loss of self-control ⟨a from feelings of guilt or inferiority⟩ ⟨was *abashed* by their haughty behavior⟩.

**em·bar·rass·ment** \im-'bar-əs-mənt\ *n*  1 **a** : something that embarrasses ⟨the scandal was a terrible *embarrassment*⟩  **b** : an overly large quantity from which to select — used especially in the phrase *embarrassment of riches*  2 : the state of being embarrassed ⟨blushed with *embarrassment*⟩

**em·bas·sy** \'em-bə-sē\ *n, pl* **-sies**  1 : a group of representatives headed by an ambassador  2 : the position, role, or business of an ambassador  3 : the residence or office of an ambassador

**em·bat·tle** \im-'bat-ᵊl\ *vb* **em·bat·tled; em·bat·tling** \-'bat-liŋ, -ᵊl-iŋ\  1 : to arrange in order of battle : prepare for battle  2 : FORTIFY a

**embattled** *adj* : engaged in battle or conflict

**em·bed** *also* **im·bed** \im-'bed\ *vb* **em·bed·ded** *also* **im·bed·ded; em·bed·ding** *also* **im·bed·ding**  1 : to enclose in or as if in a surrounding mass : set solidly in or as if in a bed ⟨*embed* a post in concrete⟩  2 : to prepare (material for use under a microscope) for cutting by infiltrating with and enclosing in a supporting substance (as paraffin)

**em·bel·lish** \im-'bel-ish\ *vb* : to make beautiful with ornamentation : DECORATE ⟨a book *embellished* with pictures⟩  **synonyms** see ADORN — **em·bel·lish·ment** \-mənt\ *n*

**em·ber** \'em-bər\ *n* : a glowing piece of coal or wood from a fire; *esp* : such a piece smoldering in ashes

**em·bez·zle** \im-'bez-əl\ *vb* **-bez·zled; -bez·zling** \-(ə-)liŋ\ : to take (property entrusted to one's care) dishonestly for one's own use ⟨*embezzled* thousands of dollars⟩ — **em·bez·zle·ment** \-əl-mənt\ *n* — **em·bez·zler** \-(ə-)lər\ *n*

**em·bit·ter** \im-'bit-ər\ *vb* : to make bitter; *esp* : to cause bitter feeling in — **em·bit·ter·ment** \-mənt\ *n*

**em·bla·zon** \im-'blāz-ᵊn\ *vb*  1 : to inscribe or decorate with markings or emblems used in heraldry  2 : CELEBRATE 3, EXTOL ⟨a name *emblazoned* in history⟩

**em·blem** \'em-bləm\ *n*  1 : an object or likeness used to suggest a thing that cannot be pictured ⟨the flag is the *emblem* of one's country⟩  2 : a device, symbol, design, or figure used as an identifying mark ⟨the *emblem* of the club⟩

**synonyms** EMBLEM, TOKEN, SYMBOL mean a sign for something else. EMBLEM applies to an object or picture that is commonly understood to stand for an idea ⟨the bald eagle is an *emblem* of the United States⟩. TOKEN applies to an act, gesture, or object that is taken as a sign of sentiment ⟨please accept this watch as a *token* of our appreciation⟩. SYMBOL applies to anything that is understood as a sign of something else ⟨the lion is the *symbol* of courage⟩.

**em·blem·at·ic** \,em-blə-'mat-ik\ *also* **em·blem·at·i·cal** \-'mat-i-kəl\ *adj* : of, relating to, or serving as an emblem : SYMBOLIC

**em·bod·i·ment** \im-'bäd-i-mənt\ *n*  1 : the act of embodying : the state of being embodied  2 : one that embodies something

**em·body** \im-'bäd-ē\ *vb* **-bod·ied; -body·ing**  1 : to give definite form to ⟨*embodied* her ideas in suitable words⟩  2 : to cause to become a body or a part of a body or system ⟨the Constitution *embodies* the fundamental laws of the United States⟩  3 : to represent in visible form ⟨a leader who *embodies* courage⟩ — **em·bod·i·er** *n*

**em·bold·en** \im-'bōl-dən\ *vb* : to make bold

**em·bo·lism** \'em-bə-,liz-əm\ *n*  1 : the sudden blocking of a blood vessel by an embolus  2 : EMBOLUS

**em·bo·lus** \'em-bə-ləs\ *n, pl* **-li** \-,lī\ : an abnormal particle (as an air bubble) circulating in the blood — compare THROMBUS

**em·bos·om** \im-'buz-əm\ *vb* : to shelter closely : ENCLOSE

**em·boss** \im-'bäs, -'bôs\ *vb* : to decorate with a raised pattern or design — **em·boss·er** *n* — **em·boss·ment** \-mənt\ *n*

**em·bow·er** \im-'bau̇(-ə)r\ *vb* : to shelter or enclose in or as if in a shelter of tree branches

¹**em·brace** \im-'brās\ *vb* **em·braced; em·brac·ing**  1 : to clasp in the arms : HUG  2 : to enclose on all sides ⟨the hills *embraced* the valley⟩  3 **a** : to take up readily or gladly ⟨*embrace* a cause⟩  **b** : to make use of : WELCOME ⟨*embrace* an opportunity⟩  4 : TAKE IN 4, INCLUDE — **em·brace·able** \-'brā-sə-bəl\ *adj* — **em·brac·er** *n*

**Word History**  One of the meanings of the English

**EXHIBIT 2**
**pg. 12**

Appx307

CLAIM CONSTRUCTION



**EXHIBIT 2**
**pg. 13**

Appx308

CLAIM CONSTRUCTION

**378**

## housemate • hull

**house·mate** \-ˌsmāt\ *n* : a person who lives with another in the same house

**House of Commons** : the lower house of the British and Canadian parliaments

**House of Lords** : the upper house of the British Parliament

**house of representatives** : the lower house of a legislative body (as the U.S. Congress)

**house·plant** \ˈhau̇-ˌsplant\ *n* : a plant grown or kept indoors

**house sparrow** *n* : a sparrow native to Europe and Asia that has been introduced into and now occurs widely in the New World — called also *English sparrow*

**house·top** \ˈhau̇-ˌstäp\ *n* : ¹ROOF 1a

**house·warm·ing** \ˈhau̇-swȯr-miŋ\ *n* : a party to celebrate moving into a new home

**house·wife** \ˈhau̇-ˌswīf, *sense 2 is often* ˈhəz-əf, ˈhəs-əf\ *n* **1** : a married woman who manages her own home **2** : a small container for small articles (as thread) — **house·wife·li·ness** \ˈhau̇-ˌswī-flē-nəs\ *n* — **house·wife·ly** \-flē\ *adj* — **house·wif·ery** \ˈhau̇-ˌswī-fə-rē, -frē\ *n*

**house·work** \ˈhau̇-ˌswərk\ *n* : the work of housekeeping

**¹hous·ing** \ˈhau̇-ziŋ\ *n* **1 a** : the shelter of a temporary or permanent structure (as a tent or house) : LODGING **b** : dwellings provided for people ⟨*housing* for the elderly⟩ **2 a** : something that covers or protects **b** : a support (as a frame) for mechanical parts

**²housing** *n* : CAPARISON 1

**hove** *past and past participle of* HEAVE

**hov·el** \ˈhəv-əl, ˈhäv-\ *n* **1** : an open shed or shelter **2** : a small poorly built house : HUT

**hov·er** \ˈhəv-ər, ˈhäv-\ *vb* **hov·ered; hov·er·ing** \-(ə-)riŋ\ **1 a** : to hang fluttering in the air or on the wing **b** : to remain floating over a place or object **2 a** : to move to and fro near a place ⟨waiters *hovered* about⟩ **b** : to be in an undecided or uncertain state ⟨*hovering* between life and death⟩ — **hover** *n* — **hov·er·er** \-ər-ər\ *n*

**hov·er·craft** \-ˌkraft\ *n* : a vehicle supported above the surface of land or water by a cushion of air produced by fans blowing downward

**¹how** \(ˈ)hau̇\ *adv* **1** : in what manner or way ⟨study *how* plants grow⟩ ⟨*how* was it done⟩ **2** : for what reason : WHY ⟨*how* could you say that⟩ **3** : to what degree or extent ⟨*how* far is Denver⟩ **4** : in what state or condition ⟨*how* are you⟩ — **how about** : what do you say to or think of ⟨*how about* another game⟩ — **how come** : ¹WHY

**²how** *conj* : in what manner or condition ⟨remember h...

**howl** \ˈhau̇(ə)l\ *vb* sound like that of pain, grief, or am with laughter⟩ **3** outcry ⟨*howled* d...
**howl·er** \ˈhau̇-lər\ ridiculous blunde
**how·so·ev·er** \ˌha...ner **2** : to whate...
**hoy·den** \ˈhȯid-ᵊn...
**hoy·den·ish** \-is...
**HTML** \ˌāch-ˌtē-ˌe...create pages for...text, pictures, so...*language*]
**hua·ra·che** \wə-ˈ...thongs woven to...
**hub** \ˈhəb\ *n* **1** :...wheel) **2** : a cen...
**Hub·bard squa...dark green to o...oval shape and v...
**hub·bub** \ˈhəb-ˌ...
**hub·cap** \ˈhəb-ˌk...tire of a car or t...
**huck·le·ber·ry** ...related to the ...black usually a...
**huck·ster** \ˈhək...: a writer of adv...
**¹hud·dle** \ˈhəd-ᵊl...**1** : to crowd, p...doorway⟩ **2** :...UP, CROUCH ⟨...\ˈhəd-lər, -ᵊl-ər...
**²huddle** *n* **1** : ...FERENCE 1 **b**...from the line ...next play
**hue** \ˈhyü\ *n* **1**...or : SHADE **3**...identified as ...tween any two
**hue and cry** \...the pursuit of...

PLNTF102707

**EXHIBIT 2**
**pg. 14**

Appx309

CLAIM CONSTRUCTION

## messeigneurs • meteorology

492

given to a messenger to deliver," from earlier *missus* (past participle of *mittere* "to send, throw") and *–aticum* "action, result" — related to EMIT, MISSION, PROMISE, SUBMISSIVE]

**mes·sei·gneurs** *plural of* MONSEIGNEUR

**mes·sen·ger** \'mes-ⁿn-jər\ *n* : one that carries a message or does an errand

**messenger RNA** *n* : an RNA that carries the code for a particular protein from DNA in the nucleus to a ribosome and that acts as a pattern for the formation of that protein — compare TRANSFER RNA

**mess hall** *n* : a hall or building (as on an army post) in which mess is served

**mes·si·ah** \mə-'sī-ə\ *n* **1** *cap* **a** : the expected king and deliverer of the Jews **b** : Jesus Christ regarded as the savior of the world by Christians **2** : a leader of some hope or cause : DELIVERER

**messieurs** *plural of* MONSIEUR

**mess-mate** \'mes-ˌmāt\ *n* : a member of a mess (as on a ship)

**Messrs.** \ˌmes-ərz\ *plural of* MR.

**messy** \'mes-ē\ *adj* **mess·i·er; -est** **1** : marked by confusion, disorder, or dirt : UNTIDY **2** : extremely unpleasant or trying ⟨*messy* lawsuits⟩ — **mess·i·ly** \'mes-ə-lē\ *adv* — **mess·i·ness** \'mes-ē-nəs\ *n*

**mes·ti·za** \me-'stē-zə\ *n* : a woman who is a mestizo

**mes·ti·zo** \me-'stē-zō\ *n, pl* **-zos** : a person having mixed European and American Indian ancestors

**met** *past and past participle of* MEET

**met·a·bol·ic** \ˌmet-ə-'bäl-ik\ *adj* : of, relating to, or based on metabolism ⟨*metabolic* activity⟩ ⟨a *metabolic* disorder⟩ — **met·a·bol·i·cal·ly** \-i-k(ə-)lē\ *adv*

**me·tab·o·lism** \mə-'tab-ə-ˌliz-əm\ *n* **1** : the processes essential for life by which the complex substances in the cells of living things are built up or broken down **2** : the processes by which a particular substance (as iodine) is handled in the living body

**me·tab·o·lite** \mə-'tab-ə-ˌlīt\ *n* **1** : a substance produced by metabolism **2** : a substance essential to a process of metabolism

**me·tab·o·lize** \mə-'tab-ə-ˌlīz\ *vb* **-lized; -liz·ing** : to break down by metabolism ⟨food is *metabolized* by the body⟩

**¹meta·car·pal** \ˌmet-ə-'kär-pəl\ *adj* : of, relating to, or being the part of the hand or front foot or a bone of this part that is between the carpal bones and the bones of the fingers or toes

**²metacarpal** *n* : a metacarpal bone

**met·al** \'met-ᵊl\ *n* **1** : any of various substances (as gold, tin, or copper) that have a more or less shiny appearance, are good conductors of electricity and heat, can be melted, and are usually capable of being shaped; *esp* : one that is a chemical element rather than an alloy **2** : METTLE 2 — **metal** *adj*

**me·tal·lic** \mə-'tal-ik\ *adj* **1** : of, relating to, or being a metal **2** : containing or made of metal **3** : having a harsh or rasping sound ⟨a *metallic* voice⟩

**met·al·loid** \'met-ᵊl-ˌoid\ *n* : an element that has some characteristics of metals and some of nonmetals — **metal·loid** *adj*

**met·al·lur·gy** \'met-ᵊl-ˌər-jē\ *n* : the science of obtaining metals from their ores and preparing them for use — **met·al·lur·gi·cal** \ˌmet-ᵊl-'ər-ji-kəl\ *adj* — **met·al·lur·gist** \'met-ᵊl-ˌər-jəst\ *n*

**met·al·work** \'met-ᵊl-ˌwərk\ *n* : the product of metalworking — **met·al·work·er** \-ˌwər-kər\ *n*

**met·al·work·ing** \'met-ᵊl-ˌwər-kiŋ\ *n* : the act or process of shaping things out of metal

**meta·mor·phic** \ˌmet-ə-'mȯr-fik\ *adj* : changed into a more compact form by the action of pressure, heat, and water ⟨a *metamorphic* rock⟩ — compare IGNEOUS, SEDIMENTARY 2

**meta·mor·phose** \ˌmet-ə-'mȯr-ˌfōz, -ˌfōs\ *vb* **-phosed;**

**-phos·ing** : to change or cause to change to a through metamorphosis

**meta·mor·pho·sis** \ˌmet-ə-'mȯr-fə-səs\ *n, pl* \-fə-ˌsēz\ **1** : a change of form, structure, or substance especially by witchcraft or magic **2** : a striking change in appearance, character, or circumstances : the process of basic and usually rapid change in the form and habits of some animals during transformation from an immature stage (as a tadpole or caterpillar) to an adult stage (as a frog or a butterfly) — compare COMPLETE METAMORPHOSIS, INCOMPLETE METAMORPHOSIS

**meta·phase** \'met-ə-ˌfāz\ *n* : the stage of mitosis in which the chromosomes are arranged in the middle of the dividing cell prior to their separation to and movement to the poles of the cell

**met·a·phor** \'met-ə-ˌfȯ(ə)r\ *also* -fər\ *n* : a figure of speech in which a word or phrase meaning one kind of idea is used in place of another to suggest a likeness between them (as in *the ship plows the sea*) — compare SIMILE — **met·a·phor·ic** \ˌmet-ə-'fȯr-ik, -'fär-\ *or* **met·a·phor·i·cal** \ˌmet-ə-'fȯr-i-kəl, -'fär-\ *adj* — **met·a·phor·i·cal·ly** \-i-k(ə-)lē\ *adv*

**meta·phys·i·cal** \ˌmet-ə-'fiz-i-kəl\ *adj* **1** : of, relating to, or based on metaphysics **2** : SUPERNATURAL 1 : difficult to understand : ABSTRACT — **meta·phys·i·cal·ly** \-k(ə-)lē\ *adv*

**meta·phys·ics** \ˌmet-ə-'fiz-iks\ *n* : the part of philosophy concerned with the ultimate causes and basic nature of things [from Latin *Metaphysica*, title given to a work of Aristotle on the subject, from Greek dia *meta ta physika* literally, "the (works) after the physical (works)"; so called because this section came after the section on physical nature in a collection of Aristotle's writings]

**me·tas·ta·sis** \mə-'tas-tə-səs\ *n, pl* **-ta·ses** \-ˌsēz\ : spread of something that produces disease (as cancer cells) from the original location of disease to another part of the body **2** : a growth of a malignant tumor into part of the body resulting from metastasis

**me·tas·ta·size** \mə-'tas-tə-ˌsīz\ *vb* : to spread in or as if by metastasis

**¹meta·tar·sal** \ˌmet-ə-'tär-səl\ *adj* : of, relating to, or being the part of the foot in human beings or of the hind limb of a four-footed animal that is located between the bones and the toes

**²metatarsal** *n* : any of the metatarsal bones of which there are five in human beings

**meta·tho·rax** \ˌmet-ə-'thō(ə)r-ˌaks, -'thȯr-\ *n* : the rearmost of the three segments of the thorax of an insect that is next to the abdomen

**meta·zo·an** \ˌmet-ə-'zō-ən\ *n* : any of the group of animals with a body composed of cells forming tissues and organs — **metazoan** *adj*

**mete** \'mēt\ *vb* **met·ed; met·ing** : to distribute by measure : to give out in portions ⟨*mete* out rewards⟩

**me·te·or** \'mēt-ē-ər, -ē-ˌȯ(ə)r\ *n* : one of the small bits of matter in the solar system observable when it falls into the earth's atmosphere where the heat of friction may cause it to glow brightly for a short time; *also* : the streak of light produced by the passage of a meteor

**me·te·or·ic** \ˌmēt-ē-'ȯr-ik, -'är-\ *adj* **1** : of or relating to a meteor ⟨a *meteoric* shower⟩ **2** : resembling a meteor in speed or in sudden and temporary brilliance ⟨a *meteoric* rise to fame⟩ — **me·te·or·i·cal·ly** \-i-k(ə-)lē\ *adv*

**me·te·or·ite** \'mēt-ē-ə-ˌrīt\ *n* : a meteor that reaches the surface of the earth

**me·te·or·oid** \'mēt-ē-ə-ˌroid\ *n* : a meteor revolving around the sun

**me·te·o·rol·o·gy** \ˌmēt-ē-ə-'räl-ə-jē\ *n* : a science that deals with the atmosphere, weather, and weather forecasting — **me·te·o·ro·log·ic** \ˌmēt-ē-ə-rə-'läj-ik\

# EXHIBIT 3

**EXHIBIT 3**
**pg. 16**

Appx311

CLAIM CONSTRUCTION



PLNTF102710

**EXHIBIT 3**
**pg. 17**

Appx312

CLAIM CONSTRUCTION



PLNTF102711

**EXHIBIT 3**
**pg. 18**

Appx313

CLAIM CONSTRUCTION



## A GENUINE MERRIAM-WEBSTER

The name *Webster* alone is no guarantee of excellence. It is used by a number of publishers and may serve mainly to mislead an unwary buyer.

*Merriam-Webster*™ is the name you should look for when you consider the purchase of dictionaries or other fine reference books. It carries the reputation of a company that has been publishing since 1831 and is your assurance of quality and authority.

Copyright © 2020 by Merriam-Webster, Incorporated

Library of Congress Cataloging-in-Publication Data

Names: Merriam-Webster, Inc., editor.
Title: Merriam-Webster's dictionary and thesaurus.
Other titles: Dictionary and thesaurus
Description: Springfield, Massachusetts : Merriam-Webster, Incorporated, 2020.
Identifiers: LCCN 2020002059 | ISBN 9780877793526 (hardcover) | ISBN
   9780877797425 (trade paperback)
Subjects: LCSH: English language—Dictionaries. | English language—
   Synonyms and antonyms—Dictionaries.
Classification: LCC PE1628 .M367 2020 | DDC 423—dc23
LC record available at https://lccn.loc.gov/2020002059

All rights reserved. No part of this work covered by the copyrights hereon may be reproduced or copied in any form or by any means—graphic, electronic, or mechanical, including photocopying, recording, taping, or information storage and retrieval systems—without written permission of the publisher.

Printed in China

1st printing      XY Printing Co.      Guangzhou      May 2020

CLAIM CONSTRUCTION



PLNTF102713

EXHIBIT 3
pg. 20

Appx315



CLAIM CONSTRUCTION

PLNTF102714

EXHIBIT 3
pg. 21

Appx316

CLAIM CONSTRUCTION



PLNTF102715

**EXHIBIT 3**
**pg. 22**

# EXHIBIT 4

**EXHIBIT 4**
**pg. 23**

Appx318

CLAIM CONTENTIONS PRODUCTION

1/5



**FIG. 1**

**FIG. 2a**

PLNTF100169

**EXHIBIT 4**
pg. 24

Appx319

CLAIM CONTENTIONS PRODUCTION

**2/5**



**FIG. 2b**

**FIG. 3**

PLNTF100170

**EXHIBIT 4**
**pg. 25**

Appx320

CLAIM CONTENTIONS PRODUCTION

**3/5**



**FIG. 4**



**FIG. 5**

PLNTF100171

**EXHIBIT 4**
**pg. 26**

Appx321

CLAIM CONTENTIONS PRODUCTION

**4/5**



**FIG. 6**



**FIG. 7**

PLNTF100172

**EXHIBIT 4**
**pg. 27**

Appx322

CLAIM CONTENTIONS PRODUCTION



**FIG.8A**

**FIG.8B**

PLNTF100173

**EXHIBIT 4**
**pg. 28**

Appx323

CLAIM CONTENTIONS PRODUCTION

## APPARATUS TO DETACHABLY ATTACH LED LIGHT FIXTURE TO CEILING OR RECESSED LIGHTING FIXTURE HOUSING

### TECHNICAL FIELD

[0001]   The present invention is generally related to an apparatus to detachably attach an
5   LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing.

### BACKGROUND

[0002]   The subject matter discussed in the background section should not be assumed to
be prior art merely as a result of its mention in the background section. Similarly, a
problem mentioned in the background section or associated with the subject matter of the
10   background section should not be assumed to have been previously recognized in the prior
art. The subject matter in the background section merely represents different approaches,
which in-and-of-themselves may also be inventions.

[0003]   Typically, the consumers and/or electricians have to buy different LED recessed
light fixtures for new construction installations and retrofit installations. Currently, various
15   mounting clips are used either for retrofit or new construction applications. This
specification recognizes the problems faced by the consumers and/or electricians while
installing the LED recessed light fixtures. Additionally, it is recognized in this specification
that an apparatus for retrofit and new construction applications can reduce the amount of
inventory carried by lighting distributors

20   [0004]   Thus, in view of the above, there is a long-felt need in the industry to address the
aforementioned deficiencies and inadequacies.

[0005]   Further limitations and disadvantages of conventional and traditional approaches
will become apparent to one of skill in the art through comparison of described systems
with some aspects of the present disclosure, as set forth in the remainder of the present
25   application and with reference to the drawings.

PLNTF100193

**EXHIBIT 4**
**pg. 29**

Appx324

CLAIM CONTENTIONS PRODUCTION

## SUMMARY OF THE INVENTION

[0006]   An apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing is provided substantially, as shown in and/or described in connection with at least one of the figures, as set forth more completely in the claims.

[0007]   The apparatus comprises a plurality of retrofit clips (102), a plurality of new construction clips (104), a plurality of connecting posts (106), a metal housing (108), a plurality of screw holes (110), a complete fixture (112), a socket adapter (114), a junction box (116), and a twist connector (118). The plurality of retrofit clips (102) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (110). The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies the complete fixture (112). The junction box (116) holds the plurality of connection wirings. The junction box (116) comprises a plurality of output wires. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108). The socket adapter (114) replaces a light bulb in the recessed lighting fixture housing.

[0008]   In an aspect, the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108).

[0009]   In an aspect, the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories.

[0010]   In an aspect, the junction box (116) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

[0011]   Accordingly, one advantage of the present system and method is that it provides both a retrofit application and a new construction application embodied in the same LED light fixture.

PLNTFI00194

EXHIBIT 4
pg. 30

Appx325

CLAIM CONTENTIONS PRODUCTION

[0012]    Accordingly, one advantage of the present invention is that it allows lighting retailers and distributors to carry only one set of inventory, thus saving money and warehouse space.

[0013]    These features and advantages of the present disclosure may be appreciated by reviewing the following description of the present disclosure, along with the accompanying figures wherein like reference numerals refer to like parts.

PLNTF100195

**EXHIBIT 4**
**pg. 31**

Appx326

CLAIM CONTENTIONS PRODUCTION

### BRIEF DESCRIPTION OF DRAWINGS

[0014]   The accompanying drawings illustrate the embodiments of apparatus, methods, and other aspects of the disclosure. Any person with ordinary skills in the art will appreciate that the illustrated element boundaries (e.g., boxes, groups of boxes, or other shapes) in the figures represent an example of the boundaries. In some examples, one element may be designed as multiple elements, or multiple elements may be designed as one element. In some examples, an element shown as an internal component of one element may be implemented as an external component in another and vice versa. Furthermore, the elements may not be drawn to scale.

[0015]   Various embodiments will hereinafter be described in accordance with the appended drawings, which are provided to illustrate, not limit, the scope, wherein similar designations denote similar elements, and in which:

[0016]   FIG. 1 illustrates an exemplary view of retrofit clips and new construction clips, in accordance with at least one embodiment.

[0017]   FIG. 2a illustrates an exemplary view of connecting post and metal housing, in accordance with at least one embodiment.

[0018]   FIG. 2b illustrates an exemplary view of the metal housing, in accordance with at least one embodiment.

[0019]   FIG. 3 illustrates an exemplary view of new construction clips and screw holes, in accordance with at least one embodiment.

[0020]   FIG. 4 illustrates an exemplary view of connecting post, in accordance with at least one embodiment.

[0021]   FIG. 5 illustrates an exemplary view of the socket adapter, in accordance with at least one embodiment.

[0022]   FIG. 6 illustrates an exemplary view of the complete fixture, in accordance with at least one embodiment.

PLNTF100196

**EXHIBIT 4**
**pg. 32**

Appx327

CLAIM CONTENTIONS PRODUCTION

[0023]   FIG. 7 illustrates an exemplary view of the junction box and twist connector, in accordance with at least one embodiment.

[0024]   FIG. 8a illustrates a first exemplary view of a permanently installed junction box, in accordance with at least one embodiment.

5   [0025]   FIG. 8b illustrates a second exemplary view of the permanently installed junction box, in accordance with at least one embodiment.

PLNTF100197

**EXHIBIT 4**
**pg. 33**

Appx328

CLAIM CONTENTIONS PRODUCTION

### DETAILED DESCRIPTION

[0026]   The present disclosure is best understood with reference to the detailed figures and description set forth herein. Various embodiments have been discussed with reference to the figures. However, those skilled in the art will readily appreciate that the detailed descriptions provided herein with respect to the figures are merely for explanatory purposes, as the methods and systems may extend beyond the described embodiments. For instance, the teachings presented, and the needs of a particular application may yield multiple alternative and suitable approaches to implement the functionality of any detail described herein. Therefore, any approach may extend beyond certain implementation choices in the following embodiments.

[0027]   References to "one embodiment," "at least one embodiment," "an embodiment," "one example," "an example," "for example," and so on indicate that the embodiment(s) or example(s) may include a particular feature, structure, characteristic, property, element, or limitation but that not every embodiment or example necessarily includes that particular feature, structure, characteristic, property, element, or limitation. Further, repeated use of the phrase "in an embodiment" does not necessarily refer to the same embodiment.

[0028]   Methods of the present invention may be implemented by performing or completing manually, automatically, or a combination thereof, selected steps or tasks. The term "method" refers to manners, means, techniques and procedures for accomplishing a given task including, but not limited to, those manners, means, techniques, and procedures either known to, or readily developed from known manners, means, techniques and procedures by practitioners of the art to which the invention belongs. The descriptions, examples, methods, and materials presented in the claims and the specification are not to be construed as limiting but rather as illustrative only. Those skilled in the art will envision many other possible variations within the scope of the technology described herein.

[0029]   The present specification describes an apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing. The apparatus comprises a plurality of retrofit clips (102), a plurality of new construction clips (104), a plurality of connecting posts (106), a metal housing (108), a plurality of screw holes (110).

PLNTF100198

**EXHIBIT 4**
**pg. 34**

Appx329

CLAIM CONTENTIONS PRODUCTION

a complete fixture (112), a socket adapter (114), a junction box (116), and a twist connector (118).

[0030]   FIG. 1 illustrates an exemplary view (100) of retrofit clips (102) and new construction clips (104), in accordance with at least one embodiment. The plurality of retrofit clips (102) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (110), shown in FIG. 3.

[0031]   FIG. 2a illustrates an exemplary view (200a) of connecting post (106) and metal housing (108), in accordance with at least one embodiment. The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies a complete fixture (112), shown in FIG. 6. FIG. 2b illustrates an exemplary view (200b) of metal housing (108), in accordance with at least one embodiment.

[0032]   FIG. 3 illustrates an exemplary view (300) of new construction clips (104) and screw holes (110), in accordance with at least one embodiment. FIG. 4 illustrates an exemplary view (400) of the connecting post (106), in accordance with at least one embodiment.

[0033]   FIG. 5 illustrates an exemplary view (500) of socket adapter (114), in accordance with at least one embodiment. The socket adapter (114) replaces a light bulb in the recessed lighting fixture housing.

[0034]   FIG. 6 illustrates an exemplary view (600) of a complete fixture (112), in accordance with at least one embodiment. In an embodiment, the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108). In an embodiment, the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories. Examples of the electrical systems include but not limited to the LED driver, an LED PCB assembly, and an LED strip. Further, examples of the accessories include but not limited to wire connectors, and ground wire.

[0035]   FIG. 7 illustrates an exemplary view (700) of the junction box (116) and twist connector (118), in accordance with at least one embodiment. The junction box (116) holds

PLNTF100199

EXHIBIT 4
pg. 35

Appx330

CLAIM CONTENTIONS PRODUCTION

a plurality of connection wirings. The junction box (116) comprises a plurality of output wires. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108). In an embodiment, the junction box (116) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

[0036]   In operation, if the existing recessed housing is present, the retrofit clips (102) make a friction fit inside the existing recessed lighting fixture housing to secure the complete fixture (112) inside. In case, the existing recessed housing is not present the new construction clips (104) are attached to the connecting posts (106).

[0037]   In an embodiment, the present apparatus may be manufactured by die casting a metal housing (108). The metal housing (108) is a base of the complete fixture (112) containing two connecting posts (106), to attach new construction clips (104) and nine screw holes (110) (each retrofit clips uses 3 screws), at 120 degrees, to accept the retrofit clip (102). In an embodiment, the junction box (116) is made from sheet metal, stamped steel or plastic, configured into a hexagonal, or a round shape, including several side holes to be used for wiring. Further, the LED driver may installed inside the junction box (116). In an exemplary embodiment, the present apparatus may be manufactured by plastic injection molding to obtain a plastic housing.

[0038]   FIG. 8a illustrates a first exemplary view (800a) of a permanently installed junction box (116), in accordance with at least one embodiment. FIG. 8b illustrates a second exemplary view (800b) of the permanently installed junction box, in accordance with at least one embodiment. The junction box (116) is permanently attached to the metal housing (108) or plastic housing. The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, the output wire connections are internally arranged and cannot be seen by the user. FIG. 8a and FIG. 8b also depict the placement of the new construction clip (104), connecting posts (106), and retrofit clips (102) when junction box (116) is permanently attached to the metal housing (108) or the plastic housing.

[0039]   In an embodiment, the components of the present apparatus such as the plurality of retrofit clips (102), the plurality of new construction clips (104), the metal housing (108),

CLAIM CONTENTIONS PRODUCTION

the plurality of screw holes (110), the complete fixture (112), the socket adapter (114), the junction box (116), and the twist connector (118) are reconfigurable and the new construction clips (104) are attached to the connecting posts (106), or to a different connecting method.

[0040]    In a real-time use, a user such as consumers or electricians has to decide whether the installation of the complete fixture (112) is retrofit or new construction application and then selects an appropriate attachment method.

[0041]    For a retrofit installation, the user removes the light bulb and trims from the existing recessed lighting fixture and exposes the recessed housing. Then the user removes the two new construction clips (104) from the metal housing (108) or connecting posts (106) and attaches the three retrofit clips (102) by screwing them with provided screws to the die-cast base or metal housing (108) in the provided screw holes (110). The user then attaches the socket adapter (114) by connecting the two free wires to two free wires in the junction box (116). The socket adapter (114) is screwed into an existing socket and places the junction box (116) on top of the metal housing (108) (if the junction box (116) is not attached to metal housing (108) or plastic housing). The user then pushes the complete fixture (112) and the junction box (116) fully into the existing recessed housing, wherein the junction box (116) is attached with the body of the LED light fixture. The complete fixture (112) is held inside existing recessed housing by the friction of retrofit clips (102) against inside the existing recessed housing.

[0042]    For the new construction installation, the user cuts a hole in the ceiling of the appropriate size to accommodate the metal housing (108), where the complete fixture (112) is to be located. Then the user pulls wires from the building's electrical system and attaches to free wires in a junction box (116). Then the user attaches the junction box (116) to the LED fixture using the twist connector (118). Then the user pushes junction box (116) through a hole in the ceiling and allows it to rest on inside of the ceiling. The user then pushes new construction clips (104) perpendicular to the ceiling and push through the ceiling hole. Then the user allows the new construction clips (104) to squeeze the ceiling between the new construction clips (104) and extremity of the metal housing (108).

PLNTF100201

**EXHIBIT 4**
**pg. 37**

CLAIM CONTENTIONS PRODUCTION

[0043]    Thus the present apparatus provides a means to attach the LED light fixture to the ceiling directly or into a recessed lighting fixture housing. By providing both retrofit and new construction applications, the present apparatus reduces the amount of inventory carried.

5    [0044]    No language in the specification should be construed as indicating any non-claimed element as essential to the practice of the invention.

[0045]    It will be apparent to those skilled in the art that various modifications and variations can be made to the present invention without departing from the spirit and scope of the invention. There is no intention to limit the invention to the specific form or forms 10    enclosed. On the contrary, the intention is to cover all modifications, alternative constructions, and equivalents falling within the spirit and scope of the invention, as defined in the appended claims. Thus, it is intended that the present invention cover the modifications and variations of this invention, provided they are within the scope of the appended claims and their equivalents.

15

PLNTF100202

EXHIBIT 4
pg. 38

Appx333

CLAIM CONTENTIONS PRODUCTION

**CLAIMS:**

1. An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing, the apparatus comprises:

5     a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);

    a plurality of new construction clips (104);

    a plurality of connecting posts (106) to hold the new construction clips (104);

    a metal housing (108) to embody a complete fixture (112);

10     a junction box (116) to hold a plurality of connection wirings, wherein the junction box (116) comprises a plurality of output wires; and

    a twist connector (118) to attach the output wires of the junction box (116) to the metal housing (108).

2. The apparatus according to claim 1 comprises a socket adapter (114) to replace a light bulb in the recessed lighting fixture housing.

15 3. The apparatus according to claim 1, wherein the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108).

4. The apparatus according to claim 1, wherein the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories

20 5. The apparatus according to claim 1, wherein the junction box (116) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires.

25

PLNTF100203

**EXHIBIT 4**
**pg. 39**

CLAIM CONTENTIONS PRODUCTION

**ABSTRACT**

Disclosed is an apparatus to detachably attach an LED light fixture to a ceiling or a recessed lighting fixture housing. The apparatus comprises retrofit clips (102), a plurality of new construction clips (104), connecting posts (106), metal housing (108), screw holes (110), complete
5    fixture (112), junction box (116), and twist connector (118). The retrofit clips (102) are adaptable to attach with the metal housing (108) of the LED light fixture by screwing them into screw holes (110). The connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies the complete fixture (112). The junction box (116) holds connection wirings and may hold an LED driver. The twist connector (118) attaches the output wires of the junction box (116)
10   to the metal housing (108).

PLNTF100204

**EXHIBIT 4**
**pg. 40**

Appx335

# EXHIBIT 5

**EXHIBIT 5**
**pg. 41**

Appx336

CLAIM CONTENTIONS PRODUCTION



PLNTF100216

**EXHIBIT 5**
**pg. 42**

Appx337

CLAIM CONTENTIONS PRODUCTION

## PROVISIONAL APPLICATION FOR PATENT

### INVENTION TITLE

**A means to attach an LED light fixture on the ceiling directly or into an existing recessed housing.**

### BACKGROUND OF THE INVENTION

**Problem Solved:** This invention solves the problem of consumers and/or electricians having to buy different LED recessed light fixtures for new construction installations and retrofit installations.

Currently different mounting clips are used either for retrofit or new construction applications.

By providing both retrofit and new construction applications the invention reduces the amount of inventory carried by lighting distributors.

### DETAILED DESCRIPTION OF THE INVENTION

As stated above, this invention solves the problem of consumers and/or electricians having to buy different light fixtures for new construction installations and retrofit installations. The invention claimed here solves this problem.

The unique fixture configuration provides both a retrofit application and new construction application embodied in the same light fixture.

The claimed invention differs from what currently exists. The unique fixture configuration is different from other available products on the market as it embodies both retrofit and new construction applications. This allows lighting retailers and distributors to carry only one set of inventory, thus saving money and warehouse space.

This invention is an improvement on what currently exists. The unique fixture configuration is different from other available products on the market as it embodies both retrofit and new construction applications. This allows lighting retailers and distributors to carry only one set of inventory, thus saving money and warehouse space.

The other available products require distributors and retailers to carry two sets of inventory.

By providing both retrofit and new construction applications it reduces the amount of inventory carried.

**The Version of The Invention Discussed Here Includes:**

1. retrofit clips
2. new construction clips

**EXHIBIT 5**
**pg. 43**

Appx338

CLAIM CONTENTIONS PRODUCTION

3. connecting post
4. metal body
5. screw holes
6. complete fixture
7. socket adapter
8. junction box
9. twist connector

<u>Relationship Between The Components</u>:

1. Retrofit clips are attached to the fixture's body by screwing them into the provided holes (5).

2. New construction clips are attached to the connecting posts (3).

3. Connecting posts hold the new construction clips (2).

4. Metal body embodies the complete fixture (6).

5. Screw holes are used to attach the retrofit clips (1).

6. Complete fixture includes all electrical systems, clips, and accessories.

7. Socket adapter is used in conjunction with retrofit installation and replaces the light bulb in existing recessed fixture, and completes the electrical circuit

8. Junction box is used to hold connected wiring.

9. Twist connector is used to attach the junction box (8) output wire to the complete fixture (6).

<u>How The Invention Works</u>:

a. The new construction clips (2) are attached to connecting posts (3).

b. Retrofit clips (1) make a friction fit inside an existing recessed lighting fixture housing thereby securing complete fixture (6) inside.

c. In the absence of an existing recessed housing new construction clips (2) squeeze the ceiling material between the new construction clips (2) and extremity of complete fixture (6).

<u>How To Make The Invention</u>:

The invention would be made by die casting a metal body (4).  That is the base of the complete fixture containing two connecting posts (3), to attach new construction clips (2) and three screw holes (5), at

PLNTF100218

**EXHIBIT 5**
**pg. 44**

Appx339

CLAIM CONTENTIONS PRODUCTION

120 degrees, to accept the retrofit clip (1). A junction box (8), would be made from sheet metal, or stamped steel, configured into hexagonal, or round shape, including a number of side holes to be used for wiring. An LED driver would be installed inside the junction box (8).

All of the elements must be used together in order for the invention to work properly.

The components can be reconfigured to attach to the connecting posts (3), or to a different connecting method.

**How To Use The Invention:**

Consumers and/or electricians (user) would buy complete fixture (6). User will decide whether the installation is retrofit or new construction and then choose the appropriate attachment method.

Retrofit installation: Remove the light bulb and trim from the existing recessed fixture, exposing the recessed housing. Remove the two new construction clips (2) from the complete fixture (6) and attach the three retrofit clips (1) by screwing them with provided screws to the die cast base (4) in the holes provided (5). Attach a provided socket adapter (7) by connecting the two free wires to two free wires in the junction box (8). Screw socket adapter (7) into the existing socket, place junction box (8) on top of metal body (4). Push the complete fixture (6) and junction box (8) fully into the existing recessed housing.

New construction installation: Cut hole in ceiling, of appropriate size to accommodate metal body (4), where the complete fixture (6) is to be located. Pull wires from building's electrical system and attach to free wires in junction box (8). Attach junction box to fixture using twist connector (9). Push retrofit clips (2) perpendicular to the ceiling and push through ceiling hole. Allow the clips to squeeze the ceiling between the clips (2) and metal body (4).

PLNTF100219

**EXHIBIT 5**
**pg. 45**

Appx340

CLAIM CONTENTIONS PRODUCTION

**ABSTRACT**

A means to attach a recessed light fixture to the ceiling directly or into a recessed housing is disclosed.
By providing both retrofit and new construction applications it reduces the amount of inventory carried.

PLNTF100220

**EXHIBIT 5**
**pg. 46**

Appx341

# EXHIBIT 6

**EXHIBIT 6**
**pg. 47**

Appx342

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 11,054,118 B2                                        Page 1 of 1
APPLICATION NO.  : 16/392731
DATED                   : July 6, 2021
INVENTOR(S)        : David Sherman

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Insert item (60), as follows:
--Related U.S. Application Data
(60) Provisional application No. 62/673,595, filed on May 18, 2018.--

Signed and Sealed this
Twenty-third Day of January, 2024

Katherine Kelly Vidal

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*

LHC_000005

**EXHIBIT 6**
**pg. 48**

# EXHIBIT 7

EXHIBIT 7
pg. 49

Appx344



**EXHIBIT 7**
**pg. 50**

Appx345

# EXHIBIT 8

EXHIBIT 8
pg. 51

Appx346

# Trades Access Common Core

## Line E: Electrical Fundamentals
## Competency E-3: Explain Wiring Connections



**B.C. Open Textbook Project**
open.bccampus.ca

BCcampus ⠿ OpenEd

**EXHIBIT 8**
**pg. 52**

# Trades Access
## COMMON CORE

Line E: Electrical Fundamentals
Competency E-3: Explain Wiring Connections

**EXHIBIT 8**
**pg. 53**

**Acknowledgments and Copyright**

To learn more about BCcampus Open Textbook project, visit http://open.bccampus.ca

© Camosun College. The Trades Access Common Core resources are licensed under the Creative Commons Attribution 4.0 Unported Licence (http://creativecommons.org/licenses/by/4.0/), except where otherwise noted. Under this licence, any user of this textbook or the textbook contents herein must provide proper attribution as follows:

- If you redistribute this textbook in a digital format (including but not limited to EPUB, PDF, and HTML), then you must retain on every page the following attribution: Download for free at http://open.bccampus.ca/find-open-textbooks/
- If you redistribute this textbook in a print format, then you must include on every physical page the following attribution: Download for free at http://open.bccampus.ca/find-open-textbooks/
- If you redistribute part of this textbook, then you must retain in every digital format page view (including but not limited to EPUB, PDF, and HTML) and on every physical printed page the following attribution: Download for free at http://open.bccampus.ca/find-open-textbooks/
- If you use this textbook as a bibliographic reference, then you should cite it as follows: BCcampus, Name of Textbook or OER. DATE. http://open.bccampus.ca/find-open-textbooks/.

For questions regarding this licensing, please contact opentext@bccampus.ca

All images copyright BC Industry Training Authority are licensed under the Creative Commons Attribution-NonCommercial-ShareAlike 4.0 licence.
http://creativecommons.org/licenses/by-nc-sa/4.0/

The issuing/publishing body is Crown Publications, Queen's Printer, Ministry of Technology, Innovation and Citizens' Services.

BCcampus would like to acknowledge the following individuals and organizations for their contributions in producing the Trades Access Common Core Open Textbook resources.

**BCcampus**
Open Education Team
Hilda Anggraeni, Graphics

**Camosun College**
Olaf Nielsen, Chair, Trades Development and Special Projects, School of Trades and Technology
Nannette Plant, Manager, Enterprise Point Operations & Special Projects, Office of the VP Strategic Development
Rod Lidstone, Instructor, Plumbing and Pipe Trades, Lead Writer/Reviewer
Brian Coey, Instructor, Sheet Metal and Metal Fabrication, Writer/Reviewer
Matt Zeleny, Camosun innovates, 3D Imaging

**Open School BC**
Monique Brewer, Director
Adrian Hill, Instructional Designer
Dennis Evans, Image Coordinator, Photographer, Graphics, Production Technician (layout)
Farrah Patterson, Production Technician

**EXHIBIT 8**
**pg. 54**

Appx349

**Industry Training Authority of BC**
The ITA works with employers, employees, industry, labour, training providers, and government to issue credentials, manage apprenticeships, set program standards, and increase opportunities in approximately 100 BC trades. Among its many functions are oversight of the development of training resources that align with program standards, outlines, and learning objectives, and authorizing permission to utilize these resources (text and images).

Erin Johnston, Director of Training Delivery
Cory Williams, Manager, Industry Relations

**Publishing Services, Queen's Printer**
Spencer Tickner, Director of QP Publishing Services
Dwayne Gordon, Manager, Electronic Publishing

October 2015, Version 1
To order print copies of any of the Trades Access Common Core resources, please contact us:

Crown Publications, Queen's Printer
PO Box 9452 Stn Prov Govt
563 Superior St, 3rd Floor
Victoria, BC V8W 9V7
Phone: 250-387-6409
Toll Free: 1-800-663-6105
Fax: 250-387-1120
crownpub@gov.bc.ca
www.crownpub.bc.ca

**Intellectual Property Program**
Ilona Ugro, Copyright Officer, Ministry of Technology, Innovation and Citizens' Services,
Province of British Columbia

## Creative Commons Attributions
**Cover photo:**
US Navy 091004-N-8960W-014 Interior Communications Electrician 3rd Class Karla Martinez inspects wiring aboard the aircraft carrier USS Nimitz (CVN 68): U.S. Navy photo by Mass Communication Specialist Seaman Apprentice Robert Winn

(https://commons.wikimedia.org/wiki/File:US_Navy_091004-N-8960W-014_Interior_Communications_Electrician_3rd_Class_Karla_Martinez_inspects_wiring_aboard_the_aircraft_carrier_USS_Nimitz_(CVN_68).jpg) under Public Domain

**EXHIBIT 8**
**pg. 55**

Appx350

### Foreword

The BC Open Textbook Project began in 2012 with the goal of making post-secondary education in British Columbia more accessible by reducing student cost through the use of openly licensed textbooks. The BC Open Textbook Project is administered by BCcampus and is funded by the British Columbia Ministry of Advanced Education.

Open textbooks are open educational resources (OER); they are instructional resources created and shared in ways so that more people have access to them. This is a different model than traditionally copyrighted materials. OER are defined as teaching, learning, and research resources that reside in the public domain or have been released under an intellectual property licence that permits their free use and repurposing by others (Hewlett Foundation). Our open textbooks are openly licensed using a Creative Commons licence, and are offered in various e-book formats free of charge, or as printed books that are available at cost. For more information about this project, please contact opentext@bccampus.ca. If you are an instructor who is using this book for a course, please let us know.

### Preface

The concept of identifying and creating resources for skills that are common to many trades has a long history in the Province of British Columbia. This collection of Trades Access Common Core (TACC) resources was adapted from the 15 Trades Common Core line modules co-published by the Industry Training and Apprenticeship Commission (ITAC) and the Centre for Curriculum Transfer and Technology (C2T2) in 2000-2002. Those modules were revisions of the original Common Core portion of the TRAC modules prepared by the Province of British Columbia Ministry of Post-Secondary Education in 1986. The TACC resources are still in use by a number of trades programs today and, with the permission from the Industry Training Authority (ITA), have been utilized in this project.

These open resources have been updated and realigned to match many of the line and competency titles found in the Province of BC's trades apprenticeship program outlines. A review was carried out to analyze the provincial program outlines of a number of trades, with the intent of finding common entry-level learning tasks that could be assembled into this package. This analysis provided the template for the outline used to update the existing modules. Many images found in ITA apprentice training modules were also incorporated into these resources to create books that are similar to what students will see when they continue their chosen trades training. The project team has also taken many new photographs for this project, which are available for use in other trades training resources.

The following list of lines and competencies was generated with the goal of creating an entry-level trades training resource, while still offering the flexibility for lines to be used as stand-alone books. This flexibility—in addition to the textbook content being openly licensed—allows these resources to be used within other contexts as well. For example, instructors or institutions may incorporate these resources into foundation-level trades training programming or within an online learning management system (LMS).

**Line A – Safe Work Practices**
- A-1 Control Workplace Hazards
- A-2 Describe WorkSafeBC Regulations
- A-3 Handle Hazardous Materials Safely
- A-4 Describe Personal Safety Practices
- A-5 Describe Fire Safety

**Line B – Employability Skills**
- B-1 Apply Study and Learning Skills
- B-2 Describe Expectations and Responsibilities of Employers and Employees
- B-3 Use Interpersonal Communication Skills
- B-4 Describe the Apprenticeship System

EXHIBIT 8
pg. 56

Appx351

**Line C – Tools and Equipment**
- C-1 Describe Common Hand Tools and Their Uses
- C-2 Describe Common Power Tools and Their Uses
- C-3 Describe Rigging and Hoisting Equipment
- C-4 Describe Ladders and Platforms

**Line D – Organizational Skills**
- D-1 Solve Trades Mathematical Problems
- D-2 Apply Science Concepts to Trades Applications
- D-3 Read Drawings and Specifications
- D-4 Use Codes, Regulations, and Standards
- D-5 Use Manufacturer and Supplier Documentation
- D-6 Plan Projects

**Line E – Electrical Fundamentals**
- E-1 Describe the Basic Principles of Electricity
- E-2 Identify Common Circuit Components and Their Symbols
- E-3 Explain Wiring Connections
- E-4 Use Multimeters

All of these textbooks are available in a variety of formats in addition to print:

- PDF—printable document with TOC and hyperlinks intact
- HTML—basic export of an HTML file and its assets, suitable for use in learning management systems
- Reflowable EPUB—format that is suitable for all screen sizes including phones

All of the self-test questions are also available from BCcampus as separate data, if instructors would like to use the questions for online quizzes or competency testing.

**About This Book**
In an effort to make this book a flexible resource for trainers and learners, the following features are included:

- An introduction outlining the high-level goal of the Competency, and a list of objectives reflecting the skills and knowledge a person would need to achieve to fulfill this goal.
- Discrete Learning Tasks designed to help a person achieve these objectives
- Self-tests at the end of each Learning Task, designed to informally test for understanding.
- A reminder at the end of each Competency to complete a Competency test. Individual trainers are expected to determine the requirements for this test, as required.
- Throughout the textbook, there may also be links and/or references to other resources that learners will need to access, some of which are only available online.
- Notes, cautions, and warnings are identified by special symbols. A list of those symbols is provided below.

EXHIBIT 8
pg. 57

Appx352

# Contents

**Introduction** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
**Objectives** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Learning Task 1:** Describe various wiring connections. . . . . . . . . . . . . . . . . . . . . . . 9
    Conductors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Soldered connections . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
    Solderless connectors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    Self-Test 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**Learning Task 2:** Describe appropriate soldering techniques . . . . . . . . . . . . . . . . . . 19
    Safety . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Solder bonding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
    Soldering tools . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    Soldering techniques . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
    Self-Test 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Answer Key** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

**EXHIBIT 8**
**pg. 58**

Appx353

## Introduction

It is important for you to be familiar with techniques for soldering electrical connections and how to use wireless connectors. For example, the ends of the finely stranded wires used for power supply cords on most portable power tools are soldered to permit a long-lasting, trouble-free connection. Solder also produces secure, durable electrical connections for switches, plugs, and tools. Wireless connectors are commonly used in many electrical applications because they are quick and easy to use.

## Objectives

When you have completed the Learning Tasks in this Competency, you will be able to:

- define the terms used and explain the principles of soldering
- describe the methods for making properly soldered connections
- maintain soldering equipment
- use wireless connectors

**EXHIBIT 8**
**pg. 59**

Appx354

## LEARNING TASK 1

# Describe various wiring connections

Making tight electrical connections is critical to a safe wiring job. If wires come loose, you could get arcing and overheating, which could lead to a fire. The right connector is determined by a number of variables.

## Conductors

A material that allows energy to flow with relative ease is known as a *conductor*. The most common form of electrical conductor used is the wire. Most electrical wires are made from copper or aluminum and are in one of two forms: solid or stranded.

The term *electrical cable* usually refers to multiple insulated wires grouped together in a common sheathing (Figure 1).



Cable Jacket

Stripped wire

Ground

Wire insulation

**Figure 1** —Electrical cable components

## Stranded conductors

Stranded wire is a collection of solid wires twisted or braided together, commonly around a central core (Figure 2).



**Figure 2** —Stranded flexible conductor

**EXHIBIT 8**
**pg. 60**

The current-carrying capacity of a stranded wire is close to the current-carrying ability of a single strand. Stranded wires act as a single conductor and carry a single electrical current. Stranded conductors are normally used in thin wire that requires flexibility, such as speaker wire. Ordinarily, a stranded conductor has wires all the same size. The size of the strands used depends on the flexibility required. For example, #00 gauge cable may be made up of seven strands of #7 gauge wire, or 19 strands of #12 gauge, or 37 strands of #24 gauge, the last one being rated "extra flexible."

## Solid conductors

Solid wire consists of one strand of copper metal wire, bare or surrounded by an insulator. Solid wire is normally found in smaller sizes only. Solid wire is cheaper to manufacture than stranded wire and is used where there is little need for flexibility in the wire.

## Insulating materials

The purpose of conductor insulation is to prevent unwanted flow of electrical current, such as ground faults, short circuits, or electric shock.

There are various methods used to insulate conductors to satisfy the many conditions encountered in electrical installations, such as temperature, moisture, and different voltage ratings. Insulating materials include:

- enamel coating
- rubber
- thermoplastics
- minerals

## Stripping insulation

In order to make any type of electrical connection, you will need to expose the base wire from the insulated covering. You can do this with wire strippers (Figure 3).



Figure 3 — Wire strippers

With wire strippers, you can strip the amount of wire required for the type of connection being made. It is important to avoid damaging the copper wire by nicking the copper or cutting into it. Nicked wires can lead to overheating and eventually could cause an electrical fire.

EXHIBIT 8
pg. 61

Appx356

## Colour coding

Most electrical wiring circuits look complicated because several wires are found at any one point in the circuit. In order to make it easier to know exactly which is which, wires are identified by colour or labelled.

For building construction, the Canadian Electrical Code reserves two colours for specific applications:

- White or natural grey covering is reserved for insulated, identified conductors; identified common conductors; and identified neutral conductors.

- Green covering is reserved for the equipment grounding conductor.

When this system of colour coding is followed, at any point in any circuit a white wire always indicates a neutral conductor. A green wire always indicates an equipment grounding conductor. Any other colour wires, such as red, black, or blue, can be assumed to be live or hot, meaning that they will have a voltage on the conductor and are therefore dangerous.

### Wire size

Wires are manufactured in sizes according to the American Wire Gauge (AWG) system. The cross-sectional area of each gauge is an important factor for determining the current-carrying capacity of a wire (ampacity). Increasing gauge numbers denote decreasing wire diameters, ranging from the largest 0000 (4/0) to the smallest, 44.

## Soldered connections

A variety of joints are used to prepare wires for soldering. These include:

- Western Union splice
- tap joint
- twist joint

### Western Union splice

This splice is used to join the ends of two wires in line (compare to the twist joint, below). Strip the wires for a length of 2.5 to 8 cm (1" to 3") as shown in Figure 4. Clean the wire, then twist the ends of the wire tightly together as shown.



Figure 4 — Western Union splice

**EXHIBIT 8**
**pg. 62**

## Tap joint

The tap joint (Figure 5) is used to connect a stranded wire to an intermediate point along the length of a second wire. Wrap the wire at least six times.



Figure 5 — Tap joint

## Twist joint

The twist joint (Figure 6) is used to join wires that are parallel, whereas the Western Union splice is used to connect wires that are in line. Strip the insulation, clean the wires, and twist them together tightly for a length of 2.5 cm (1 in.).



Figure 6 — Twist joint

## Tinning stranded wire

In a general sense, *tinning* is the process of applying a thin layer of solder to something and will be discussed in more detail in Learning Task 2. In the case of stranded wire, you should tin the stripped ends of the wire to prevent the strands from separating while they are bending or connecting. Use only enough solder to make the stripped portion of the wire solid. The strands of the wire should be visible through the solder. Avoid solder from wicking in a wire underneath the insulation because it will make the wire solid and cause it to break more easily.



Figure 7 — Tinning stranded wire prior to bending it

**EXHIBIT 8**
**pg. 63**

Appx358

## Solderless connectors

Soldering is the recommended way to splice, tap, or join wires to make a rigid, permanent connection that is weather-resistant. The process of soldering can be time consuming, awkward, restrictive, and expensive.

In many applications, soldering has been replaced by special connecting devices that simplify wire joining procedures. Solderless connectors are used on both wire and cable connections. Types of solderless connectors include:

- looped-end
- twist-on
- set-screw
- crimp-on

### Looped-end connectors

The most common solderless connection has the looped end of a wire (Figure 8) held in place by a set-screw at an electrical terminal (Figure 9). Note that the direction of the loop is the same as the direction the screw is turned when it is tightened (clockwise). The screw and washer should be made of corrosion-resistant materials such as copper or brass.



Figure 8—Good loop (also known as a hook)



Figure 9 — Proper installation under terminal screw

### Twist-on connectors

The twist-on connector is a one-piece connecting device designed to splice aluminum or copper wires. Twist-on connectors are also known as *wire nuts, wire connectors, cone connectors, thimble connectors,* or *Marrettes.* Inside the blunt, bullet-like cover of the twist-on connector is a cone-shaped spring insert which threads itself onto conductors when the connector is twisted. When the connector is twisted onto the stripped ends of wires, the wires are drawn, twisted, and

EXHIBIT 8
pg. 64

Appx359

squeezed into the connector's metal insert. Electrical continuity is maintained both by the direct twisted wire-to-wire contact and by contact with the metal insert.



**Exposed wires twisted together**

Figure 10—Completed connection

Wing-like extensions (Figure 11) are moulded into some makes of connectors to reduce operator muscle fatigue when installing a large number of the connectors.



Figure 11—Winged connector

The shell of the twist-on connector provides sufficient insulation to allow these connectors to be used in circuits carrying up to 600 V.

Twist-on wire connectors are commonly colour coded to indicate the connector size and, hence, their capacity (Figure 12). They are commonly used as an alternative to soldering conductors together since they are quicker to install and, unlike soldered connections, allow easy removal for future modifications.



Figure 12—Twist-on connectors end view showing metal inserts

Twist-on connectors are not often used on wire gauges thicker than AWG #10 (5.26 mm²), because such solid wires are too stiff to be reliably connected with this method. Instead, set-

14

**EXHIBIT 8**
**pg. 65**

Appx360

screw connectors, clamps, or crimp connectors are used.

### Set-screw connectors

Set-screw connectors (Figure 13) consist of two parts:

- a brass connector body into which wires are inserted

- an insulated cone-shaped cap that is screwed onto the brass connector



Figure 13 — Set-screw connector

The set-screw connector is most often used as a splice inside a protected electrical box and in lighting fixtures. Although set-screws are a bit more time consuming to install and are more expensive than twist-ons, they may offer a more secure connection than twist-on connectors.

### Crimp-on connectors

A crimp-on connector is used for a permanent tight splice. The crimp-on connector (compression connection) can have one or two parts.

The two-part connector (Figure 14) has a conductor retaining sleeve that is compressed by using special crimping pliers and an insulated screw cap into which the crimped retainer is inserted.

The sleeve is composed of copper or zinc-plated steel while the cap is a high dielectric substance. The zinc-plated steel retaining sleeve should not be used with aluminum conductors, as electrolysis can take place between the metals.



Figure 14 — Two-part crimp-on connector

These devices are available in many sizes. As with other solderless connectors, the correct size two-piece crimp-on connector must be carefully selected for each application.

**EXHIBIT 8**
**pg. 66**

Appx361

The one part crimp-on connector (Figure 15) is commonly used as a terminal lug. Both the fork and the ring type greatly simplify connecting stranded conductors to terminal screws. The crimp-on connector sometimes has a soft, hose-like tube that is moulded to the connector. The connector and the insulation are crimped together. After crimping, the insulation returns to its original form.



**Figure 15** — One-part crimp-on connectors

Now complete the Learning Task Self-Test.

**EXHIBIT 8**
**pg. 67**

Appx362

# EXHIBIT 9

**EXHIBIT 9**
**pg. 68**

Appx363



1    Patrick Cummins
2    CA Bar No.: 294400
3    Patrick@CumminsIP.com
     Cummins IP PLLC
4    3426 PEPPERHILL RD
5    LEXINGTON, KY 40502
6    TEL: 502.445.9880
     *Counsel for Plaintiff,*
7    *DS Advanced Enterprises, Ltd.*
8
9
10              **UNITED STATES DISTRICT COURT**
11            **SOUTHERN DISTRICT OF CALIFORNIA**
12
13   DS ADVANCED ENTERPRISES, LTD.,     Case No.: 3:23-cv-01335-CAB-JLB
14   A CORPORATION,
                                        **PLAINTIFF'S DISCLOSURE OF**
15        *Plaintiff,*                  **ASSERTED CLAIMS AND**
                                        **INFRINGEMENT CONTENTIONS**
16   v.                                 **PER PATENT L.R. 3.1 AND 3.2**
17   LOWE'S HOME CENTERS, LLC,
18   A CORPORATION,
19        *Defendants.*
20
21
22
23
24
25
26
27
28
     PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND INFRINGEMENT CONTENTIONS PER PATENT L.R. 3.1
                                    AND 3.2
                                       1

**EXHIBIT 9**
**pg. 69**

Appx364

1   **Plaintiff provides the following discussion and attachments to satisfy the**
2   **Plaintiff's Disclosure of Asserted Claims and Infringement Contentions Per Patent**
3   **L.R. 3.1. The Text of Patent L.R. 3.1 is also include below for reference.**
4       a. Each claim of each patent in suit that is allegedly infringed by each opposing
5           party. For any patent that claims priority to an earlier application, the priority
6           date to which each asserted claim allegedly is entitled
7       **Claims 1-5 of US Patent No. 11,054,118 are infringed by Defendant.**
8       **Each Claim, of Claims 1-5, is entitled to a priority date of May 18, 2018.**
9       b. Separately for each asserted claim, each accused apparatus, product, device,
10          process, method, act, or other instrumentality ("Accused Instrumentality") of
11          each opposing party of which the party is aware. This identification must be as
12          specific as possible. Each product, device and apparatus must be identified by
13          name or model number, if known. Each method or process must be identified
14          by name, if known, or by any product, device, or apparatus which, when used,
15          allegedly results in the practice of the claimed method or process.
16      **1. Utilitech, Item #5041630, Model #MQTL1183-LED12K9027 (5" / 6")**
17      **infringes Claims 1-5.**
18      **2. Utilitech, Item #5041631, Model #MQTL1181-LED10K9027 (4") infringes**
19      **Claims 1-5.**
20      **3. Utilitech, Item #5041632, Model #MQTL1182-LED12K9027 (5" / 6")**
21      **infringes Claims 1-5.**
22      **4. Utilitech, Item #5041633, Model #MQTL1181-LED10K9027 (4") infringes**
23      **Claims 1-5.**
24      **5. Utilitech, Item #5041634, Model #MQTL1182-LED12K9027 (5" / 6")**
25      **infringes Claims 1-5.**
26      c. A chart identifying specifically where each element of each asserted claim is
27          found within each Accused Instrumentality, including for each element that
28          such party contends is governed by 35 U.S.C. §112(6), the identity of the

2

EXHIBIT 9
pg. 70

Appx365

1        structure(s), act(s), or material(s) in the Accused Instrumentality that performs

2        the claimed function.

3

4    **CHART 1**: Chart 1 is part of the attached Appendix, as pages 1-26, and references

5    the attached Exhibits. Chart 1 shows claim mappings between Claims 1-5 and the

6    following Accused Products:

7        Utilitech, Item #5041630, Model #MQTL1183-LED12K9027 (5" / 6")

8        Utilitech, Item #5041632, Model #MQTL1182-LED12K9027 (5" / 6")

9        Utilitech, Item #5041634, Model #MQTL1182-LED12K9027 (5" / 6", 6-pack)

10

11    **CHART 2**: Chart 2 is part of the attached Appendix, as pages 27-53, and references

12    the attached Exhibits. Chart 2 shows claim mappings between Claims 1-5 and the

13    following Accused Products:

14        Utilitech, Item #5041633, Model #MQTL1181-LED10K9027 (4", 6-pack)

15        Utilitech, Item #5041631, Model #MQTL1181-LED10K9027 (4")

16

17    Each arrow in each Chart is set forth to show an approximate location or vicinity

18    of one or more infringing portions of an Accused Product(s). Each arrow may, or

19    may not, terminate directly at an intended infringing portion, and additionally,

20    there may not be an arrow for every infringing portion, but enough to understand

21    Plaintiff's infringement contentions.

22        d. For each claim which is alleged to have been indirectly infringed, an

23            identification of any direct infringement and a description of the acts of the

24            alleged indirect infringer that contribute to or are inducing that direct

25            infringement. Insofar as alleged direct infringement is based on joint acts of

26            multiple parties, the role of each such party in the direct infringement must be

27            described.

28    See Charts 1 and 2 attached, and referenced above.

3

EXHIBIT 9
pg. 71

Appx366

1       e. Whether each element of each asserted claim is claimed to be literally present

2           and/or present under the doctrine of equivalents in the Accused

3           Instrumentality

4   **See Charts 1 and 2 attached, and referenced above.**

5       g. If a party claiming patent infringement asserts or wishes to preserve the right to

6           rely, for any purpose, on the assertion that its own apparatus, product, device,

7           process, method, act, or other instrumentality practices the claimed invention,

8           the party must identify, separately for each asserted claim, each such

9           apparatus, product, device, process, method, act, or other instrumentality that

10          incorporates or reflects that particular claim; and

11  **Plaintiff's productions disclose various versions of Plaintiff's products covered by**

12  **Claims 1-5, but the covered products are not limited to these items.**

13  **For example, see Foxsun 2021 Catalog (PLNTF100005-PLNTF100017) for the**

14  **following Items:**

15      **1. Foxsun Light FX-DL4-9W-DIM-5CC-#C-***

16      **2. Foxsun Light FX-DL6-12W-DIM-5CC-#C-***

17      **3. Foxsun Light ZF-DL4-10W-DIM-CC-*L#**

18      **4. Foxsun Light ZF-DL6-12W-DIM-CC-*L#**

19      **5. Foxsun Light ZF-DL8-18W-DIM-CC-*L#**

20      **6. Foxsun Light ZF-DL4-10W-DIM-CC-*W#**

21      **7. Foxsun Light ZF-DL6-12W-DIM-CC-*W#**

22      **8. Foxsun Light ZF-DL6-12W-DIM-CC-*M#**

23      **9. Foxsun Light ZF-DL6-12W-DIM-CC-*M#-S**

24

25      h. If a party claiming infringement alleges willful infringement, the basis for such

26          allegation.

27  **Plaintiff is claiming willful infringement based at least on correspondence to**

28  **Defendant disclosing Plaintiff's Patented Products, presentations made to**

4

**EXHIBIT 9**
**pg. 72**

Appx367

1  **Defendant and/or other Lowe's entities, Plaintiff's products and their**
2  **corresponding catalogs being tagged as patented, and cease and desist letters**
3  **mailed and emailed to Defendant.  Plaintiff reserves the right to amend these**
4  **contentions, and supplement these contentions with additionally discovered**
5  **materials.**

6

7  **Plaintiff provides the following discussion and attachments to satisfy the**
8  **Plaintiff's Disclosure of Asserted Claims and Infringement Contentions Per Patent**
9  **L.R. 3.2.  The Text of Patent L.R. 3.2 is also include below for reference.**

10  a. Documents (e.g., contracts, purchase orders, invoices, advertisements, marketing
11  materials, offer letters, beta site testing agreements, and third party or joint
12  development agreements) sufficient to evidence each discussion with,
13  disclosure to, or other manner of providing to a third party, or sale of or offer
14  to sell, the claimed invention prior to the date of application for the patent in
15  suit. A party's production of a document as required within these rules does
16  not constitute an admission that such document evidences or is prior art under
17  35 U.S.C. §102.

18  **Produced with this Memo.  See, April 30, 2018 disclosure to Legal Zoom, *e.g.*,**
19  **PLNTF100267-269.  See also PLNTF100000-004; PLNTF100239-279.**

20  b. All documents evidencing the conception, reduction to practice, design and
21  development of each claimed invention, which were created on or before the
22  date of application for the patent in suit or the priority date identified pursuant
23  to Patent L.R. 3.1.e, whichever is earlier.

24  **Produced with this Memo.  See PLNTF100000-004; PLNTF100018-020; and**
25  **PLNTF100239-279.**

26  c. A copy of the file history for each patent in suit and each application to which a
27  claim for priority is made under Patent L.R. 3.1.e.

28  **Produced with this Memo.  See PLNTF100022-PLNTF100226.**

5

EXHIBIT 9
pg. 73

Appx368

1    d. Documents sufficient to evidence ownership of the patent rights by the party

2         asserting patent infringement; and

3    **Produced with this Memo. See PLNTF100227-PLNTF100238, and PLNTF100021.**

4    e. If a party identifies instrumentalities pursuant to Patent L.R. 3.1.g, documents

5         sufficient to show the operation of any aspects of elements of such

6         instrumentalities the patent claimant relies upon as embodying any asserted

7         claims. The producing party must separately identify by production number

8         which documents correspond to each category. If the documents identified

9         above are not in the possession, custody or control of the party charged with

10        production, that party must use its best efforts to obtain all responsive

11        documents and make a timely disclosure.

12   **See above product numbers and the produced Foxsun 2021 Catalog. See**

13   **PLNTF100005-PLNTF100017.**

14

15

16   Dated: March 20, 2024

17   Cummins Intellectual Property (IP) Law PLLC

18   */s/ Patrick Cummins,*

19   Patrick Cummins, CA Bar No. 294400

20   Patrick@CumminsIP.com

21   3426 Pepperhill Rd.

22   Lexington, KY 40502

23   Telephone: (502) 445-9880

24   *Counsel for Plaintiff,*

25   *DS Advanced Enterprises, Ltd.*

26

27

28

6

**EXHIBIT 9**
**pg. 74**

Appx369

# APPENDIX:
# CHART 1, CHART 2,
# AND EXHIBITS

**EXHIBIT 9**
**pg. 75**

Appx370

**CHART 1**

# **CLAIM 1**

An apparatus to detachably attach
an LED light fixture
to at least one of a ceiling,
and a recessed lighting fixture housing,
the apparatus comprises:
*(Continued on next page)*



The following discussion provides a
mapping between Claim 1 and the accused
products. The above portion of Claim 1
corresponds the preamble, which merely
states an intended use of the Apparatus of

Claim 1, and therefore does not provide any limiting structure, except to
introduce "an LED light fixture", which is later recited as an element of
Claim 1. See MPEP 2111.02(II) quoting *Rowe v. Dror,* 112 F.3d 473, 478,
42 USPQ2d 1550, 1553 (Fed. Cir. 1997) ("where a patentee defines a
structurally complete invention in the claim body and uses the preamble only
to state a purpose or intended use for the invention, the preamble is not a
claim limitation"). Nonetheless, Plaintiff provides the diagram above to map
the preamble of Claim 1 to images from Defendant's product manuals, and to
the product images otherwise included herein (captured and reproduced by
Plaintiff). Defendant's offering for sale, selling, and importing of the

1

**EXHIBIT 9**
**pg. 76**

Appx371

Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products.



*(Claim 1 continued)*
a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);

The accused retrofit clips are labeled "EE" in the image to above and to the right. There are screws labeled "AA", which are shown pointing towards the accused screw holes. Dotted lines are shown extending from the screws "AA" to the screw holes. At step "3" in the instruction manual of the accused products (sampled above and to the right), Defendant directs a consumer to screw the retrofit clips "EE" into the screw holes of the LED light fixture by screwing them into the screw holes. Plaintiff's Patent

2

**EXHIBIT 9**
**pg. 77**

Appx372

claims priority to Plaintiff's
Provisional Application, which
includes the drawing to right. The
Provisional Application drawing
above is labeled "—Housing—" and
shows two perspectives of the fixture,



and an element "4", which Plaintiff's Provisional Application refers to as the
"metal body". Claim 1 recites a "body" but not a "metal body". This "body"
portion is similar to where the accused plurality of screw holes of the accused
products receives screws for attaching the accused plurality of retrofit clips.
For at least these reasons, Defendant's accused products infringe these
elements of Claim 1, literally and by equivalents. Defendant's offering for
sale, selling, and importing of the Accused Products directly infringe these
Claim limitations, and Defendant contributes to infringement by directing
consumers to purchase and use the Accused Products in a manner that also
directly infringes the Claims.

3

EXHIBIT 9
pg. 78

Appx373

*(Claim 1 continued)*
a plurality of
new construction clips (104):





The accused new construction
clips are in the images above
and to the right.  A mapping



between claim elements and the images is also provided.  For at least these
reasons, Defendant's accused products infringe these elements of Claim 1,
literally and by equivalents.

Further evidence that supports this contention is the content Defendant
provides with their Utilitech Item #5042426.  For example, Defendant's Item
#5042426 is advertised as being for "canless" installations, and "new
constructions", and the corresponding installation manual indicates that
"clips" are utilized for mounting the fixture. See Exhibits 1 and 2.  This
supports Plaintiff's infringement contentions regarding these elements of
Claim 1, and also evidences Defendant's knowledge of infringement, and

4

**EXHIBIT 9**
**pg. 79**

Appx374

their willfully infringing conduct. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that also directly infringes the Claims.

5

**EXHIBIT 9**
**pg. 80**

Appx375

*(Claim 1 continued)*

a plurality of connecting posts (106)

to hold the new construction clips (104);

The accused connecting posts are shown in the images above and next to this text. The accused posts are riveted to the accused junction box of the accused

products. An image above shows the accused posts riveted to the accused junction box, and another image above shows an accused post isolated from the accused product. As a visual demonstration, another image of the 4" accused product is provided to the right to show the accused post attached to the fixture without the accused junction box. This arrangement would be similarly exhibited if the accused plurality of



connecting posts for the 6" accused products were attached to the accused products without the accused junction boxes. For at least these reasons,

6

EXHIBIT 9
pg. 81

Appx376

Defendant's accused products infringe these elements of Claim 1, literally
and by equivalents. Defendant's offering for sale, selling, and importing of
the Accused Products directly infringe these Claim limitations, and
Defendant contributes to infringement by directing consumers to purchase
and use the Accused Products in a manner that directly infringes the Claims.

7

**EXHIBIT 9**
**pg. 82**

Appx377



*(Claim 1 continued)*
a metal housing (108)
to embody a complete fixture (112);

These images and mappings are
provided to evidence the portions
of the accused product that

infringe these elements of Claim 1. For at least these reasons, the accused
products infringe these elements of Claim 1, literally and by equivalents.
Should further explanation be warranted, Plaintiff provides the following
support. Claim 1 utilizes terms such as "LED light *fixture*", "recessed light
*fixture* housing", and "complete *fixture*", which Defendant's may allege
invokes ambiguity with respect to the meaning of "complete fixture".
Regardless, Claim 4 further defines the "complete fixture"[1], as does the

---

[1] "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) and citing *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997).

8

**EXHIBIT 9**
**pg. 83**

Appx378

Specification of Plaintiff's Patent[2], which expressly define the "complete fixture" by stating that "the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories." The Specification goes on to define these sub-elements by stating that "[e]xamples of the electrical systems include but not limited to the LED driver, an LED PCB assembly, and an LED strips. Further examples of the accessories include but not limited to wire connectors, and ground wires." Plaintiff's Patent claims

priority to a Provisional Application that was filed with the provisional drawing to the right of this text. The provisional drawing to the right is labeled "—Housing—" to refer to the entire content of the drawing, further reinforcing the



infringement of these elements of Claim 1. The element "4" in the Provisional Application, and in the provisional drawing above, is referred to as a "metal body" and the element "3" is referred to as a "connecting post". Claim 1 includes a "body" element at the following passage: "a plurality of retrofit clips (102) adaptable to attach with a *body* of the LED light fixture", but a "*metal* body" is not expressly recited in Claim 1. The Provisional

[2] "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) (quotations removed).
9

**EXHIBIT 9**
**pg. 84**

Application also includes the additional
provisional drawing shown to the right
of this text. The element "6" in the
Provisional Application is referred to as
"complete fixture". The "housing" and
the "complete fixture" therefore overlap



in scope. This is reinforced by the Specification of the non-provisional
application at [0014], which states that "[i]n some examples, one element
may be designed as multiple elements, or multiple elements may be designed
as one element." While Defendant may argue that a "housing" is necessarily
something entirely external and enveloping, this would be contrary to
Plaintiff's Patent, which has no external housing that completely envelopes
the "clips" and that is separate from the "clips". Rather, the "metal housing"
of Claim 1 embodies the complete fixture by including the complete fixture
as a constituent part, thereby even conforming to the definition of "embody".
See attached Exhibit 3³. For at least these reasons, the accused products
infringe on these elements of Claim 1, literally and by equivalents.
Additionally, and though likely not necessary to prove infringement, Plaintiff
alleges that the white portions of the accused products also infringe these
elements of Claim 1 because the produced PIXIE test results, and supporting
documents, evidence the white portions being made of metal. Additionally, a

---

³ "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily
apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely
accepted meaning of commonly understood words. *See Brown v. 3M,*265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the
claims did not require elaborate interpretation). In such circumstances, general purpose dictionaries may be helpful."
*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (quotations removed).

10

Appx380

EXHIBIT 9
pg. 85

patent application filed by the manufacturer of the accused products, Zhejiang Yankon Group/Mega, supports a finding that the white portions of the accused products are made of metal. See attached Exhibit 4. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.

Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that directly infringes the Claims.

11

**EXHIBIT 9**
**pg. 86**

*(Claim 1 continued)*
a junction box (116)
to hold
a plurality of connection wirings,
wherein the junction box (116)
comprises
a plurality of output wires;
and



The images above and to the right show the accused junction box, the accused connection wirings, and the accused output wires. The accused junction box holds the accused connection wirings upon purchase and upon installation by a consumer. Defendant's instruction manual directs consumers to push input wires, from a home of a consumer, into a punchout of the accused junction box, to attach to the accused plurality of output wires of the accused junction box. The accused junction box comprises the accused output wires upon purchase and upon installation by a consumer, and the accused plurality of output wires can include the black and white wires, and the yellow and green wires. A top

12

EXHIBIT 9
pg. 87

Appx382

surface of the accused junction box includes a hinged plate and a bottom surface of the accused junction box includes part of a white portion of the accused product. When the accused junction box is detached from the white

portion of the accused product (as shown in the image to the right of this text), the accused junction box may not be safely utilized as a junction box without another bottom surface. Alternatively, the accused junction box, accused connection wirings, and accused



output wires infringe these elements of Claim 1 without relying on the white portion of the accused product being the bottom surface of the junction box. For at least these reasons, the accused products infringe these elements of Claim 1, literally and by equivalents.

Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that directly infringes the Claims.

13

**EXHIBIT 9**
**pg. 88**

Appx383

*(Claim 1 continued)*
a twist connector (118)
to attach the output wires
of the junction box (116)
to the metal housing (108),

The images to the right show
the accused twist connectors
attaching the accused output
wires of the accused junction
box to the accused metal
housing.    The images show
wires extending from part of
the accused metal housing to
the accused twist connector.
The images also show the
accused output wires of the
accused      junction      box
extending from the accused
twist connector towards the
accused junction box. When
the accused twist connector is
no    longer    connected,    the





14

**EXHIBIT 9**
**pg. 89**

Appx384

accused output wires are no longer connected to the accused metal housing. The accused twist connector is sold with twisted wires already encapsulated by the twist



connector. The twisted wires are forced into the twist connector to be in contact with conductors within an orange shell of the accused twist connector. The twist connector is a category of connector types that does not include all types of means for connecting wires. For example, a twist connector may not include connectors such as alligator clips, shrink wrap, crimp connectors, among others. The accused output wires are alleged to be the product of a rapid stripping, twisting, and tinning machine, as shown in Attached Exhibit 6. The resulting wires are then inserted (manually or automatically) into the accused twist connectors, and are wedged by conductors within the orange shell of the accused twist connectors. Should

Defendant successfully argue that the term "twist connector" refers to a wire nut or Marrette connector (as they previously asserted in their Motion to Dismiss), Plaintiff asserts that connector identified above is equivalent to the "twist connector" limitation because they are two things that accomplish substantially the same work, the same way, and to achieve the same result, and

15

EXHIBIT 9
pg. 90

Appx385

thus "they are the same, even though they differ in name, form, or shape." See *Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.* (EDNY 2006) citing *Union Paper Bag v. Murphy* (US 1878). "The recent trend in the Federal Circuit has been to afford primacy to the language of the claims with little regard to the analysis of function". See *Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.* (EDNY 2006) quoting *Wham-o, Inc. v. Sports Dimension* (ND CAL 2005). For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.

Further evidence that reinforces Plaintiff's infringement contentions, and Defendant's knowledge of infringement, is the content Defendant provide with Defendant's Utilitech Item #5042426. For example, the installation and operation instructions for Defendant's Item #5042426 refers to "wire nuts" and refers to a "tethered connector", but provides no express recitation of "twist connector", despite these being types of twist connectors.

Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that directly infringes the Claims.

16

**EXHIBIT 9**
**pg. 91**

Appx386

*(Claim 1 continued)*
wherein the retrofit clips (102)
make a friction fit
inside the recessed lighting fixture
housing to secure
the complete fixture (112)
inside,



The image above is from the instruction
manual for the accused products. The
accused retrofit clips are shown in the above image as being screwed in place
and secured to the accused complete fixture. The accused retrofit clips are
shown as having a friction fit inside of a recessed lighting fixture housing.
For example, dotted lines are connected to a solid circle surrounding a close-
up view of a portion of an accused retrofit clip in a friction fit inside the
recessed lighting fixture housing. For at least these reasons, the accused
products infringe on these elements of Claim 1, literally and by equivalents.
Further evidence that proves Defendant's knowledge of infringement, and
willfully infringing conduct, include content provided with Defendant's
Utilitech #5042429. This product is advertised on Defendant's website as a
"recessed retrofit light", with "friction clips" as the "mount type." See
attached Exhibit 5. The accused retrofit clips of the accused products can be
similarly described. For at least these reasons, the accused products infringe
on these elements of Claim 1, literally and by equivalents. Defendant's

17

EXHIBIT 9
pg. 92

Appx387

offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that directly infringes the Claims.

18

**EXHIBIT 9**
**pg. 93**

Appx388

*(Claim 1 continued)*

wherein the

new construction clips (104)

are attached to

the connecting posts (106)

if the recessed lighting fixture housing

is not present.




The images to the right include an image from an installation manual for the accused products and photos captured of the accused products. The images show the accused new construction clips attached to the accused connecting posts and no recessed lighting fixture housing present. Compare this to images above where the recessed lighting fixture housing is shown. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.

Further evidence that supports this contention is the content Defendant provides with their Utilitech Item #5042426. For example, Defendant's Item #5042426 is advertised as being for "canless" installations, and "new constructions", and the corresponding installation manual indicates that "clips" are utilized for mounting the fixture. See Exhibits 1 and 2. This supports

19

**EXHIBIT 9**
**pg. 94**

Appx389

Plaintiff's infringement contentions regarding the "new construction clips" and these elements of Claim 1, and also evidences Defendant's knowledge of infringement, and their willfully infringing conduct. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that directly infringes the Claims.

20

**EXHIBIT 9**
**pg. 95**

Appx390

# CLAIM 2

The apparatus according to claim 1 comprises a socket adapter (114) to replace a light bulb in the recessed lighting fixture housing.



The images to the right include an image from an installation manual for the accused products and a photo captured of the accused products. A mapping from Claim 2 and the accused products is shown. The accused products are sold with the accused socket adapter shown to the right. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products.

21

EXHIBIT 9
pg. 96

Appx391

# CLAIM 3

The apparatus according to claim 1, wherein the new construction clips (104) squeeze ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108).



The images above and to the right are from the installation manual for the accused products and photographs captured of the accused products. A mapping from Claim 3 to the accused products is shown. When a consumer installs the accused products, ceiling material would be squeezed between the accused new construction clips and an accused extremity of the accused metal housing, as shown in the images to the right. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to

22

**EXHIBIT 9**
**pg. 97**

Appx392

infringement by directing consumers to purchase and use the Accused Products in a manner that directly infringes the Claims.

EXHIBIT 9
pg. 98

Appx393

# CLAIM 4



The apparatus according to claim 1, wherein the complete fixture (112) comprises

a plurality of electrical systems,

clips,

and

accessories.

The images above and to the right are of the accused products. The Specification states that examples of the accessories include but are not limited to "wire connectors, and ground wires." The wires shown are insulated strands of wires. A mapping is shown from elements of Claim 4 to the accused products. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by

24

EXHIBIT 9
pg. 99

Appx394

equivalents. Defendant's offering for sale, selling, and importing of the
Accused Products directly infringe these Claim limitations, and Defendant
contributes to infringement by directing consumers to purchase and use the
Accused Products.

25

**EXHIBIT 9**
**pg. 100**

Appx395

# CLAIM 5

The apparatus according to claim 1, wherein the junction box (116) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires.



The image above and to the right are of the accused products. A mapping is shown from elements of Claim 5 to the accused products. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that directly infringes the Claims.

26

EXHIBIT 9
pg. 101

Appx396

CHART 2

# **CLAIM 1**

An apparatus to detachably attach
an LED light fixture
to at least one of a ceiling,
and a recessed lighting fixture housing,
the apparatus comprises:

The following discussion provides a
mapping between Claim 1 and the accused
products. The above portion of Claim 1
corresponds the preamble, which merely
states an intended use of the Apparatus of
Claim 1, and therefore does not provide any
limiting structure, except to introduce "an
LED light fixture", which is later recited as an element of Claim 1. See MPEP
2111.02(II) quoting *Rowe v. Dror*, 112 F.3d 473, 478, 42 USPQ2d 1550, 1553
(Fed. Cir. 1997) ("where a patentee defines a structurally complete invention
in the claim body and uses the preamble only to state a purpose or intended use
for the invention, the preamble is not a claim limitation"). Nonetheless,
Plaintiff provides the diagram above to map the preamble of Claim 1 to images
from Defendant's product manuals, and to the product images otherwise
included herein (captured and reproduced by Plaintiff). Defendant's offering
for sale, selling, and importing of the Accused Products directly infringe these

27

**EXHIBIT 9**
**pg. 102**

Appx397

Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products.

**EXHIBIT 9**
**pg. 103**

Appx398

*(Claim 1 continued)*
a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);



The accused retrofit clips are labeled "EE" in the image to above and to the right. There are screws labeled "AA", which are shown pointing towards the accused screw holes. Dotted lines are shown extending from the screws "AA" to the screw holes. At step "3"



in the instruction manual of the accused products (sampled above and to the right), Defendant directs a consumer to screw the retrofit clips "EE" into the screw holes of the LED light fixture by screwing them into the screw holes.

Plaintiff's Patent claims priority to Plaintiff's Provisional Application, which includes the drawing to right. The Provisional Application drawing above is labeled "—Housing—" and shows two perspectives of the fixture,



29

EXHIBIT 9
pg. 104

Appx399

and an element "4", which Plaintiff's Provisional Application refers to as the "metal body". The Claims recite a "body" but do not expressly recite a "metal body". This "body" portion is similar to where the accused plurality of screw holes of the accused products receives screws for attaching the accused plurality of retrofit clips. For at least these reasons, Defendant's accused products infringe these elements of Claim 1, literally and by equivalents. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

30

**EXHIBIT 9**
**pg. 105**

Appx400

*(Claim 1 continued)*
a plurality of new construction clips (104);



The accused new construction clips are in the images above and to the right. A mapping between claim elements and the images is also provided. For at least these reasons, Defendant's accused products infringe these elements of Claim 1, literally and by equivalents.

Further evidence that supports this contention is the content Defendant provides with their Utilitech Item #5042426. For example, Defendant's Item #5042426 is advertised as being for "eanless" installations, and "new constructions", and the corresponding installation manual indicates that "clips" are utilized for mounting the fixture. See Exhibits 1 and 2. This supports Plaintiff's infringement contentions regarding these elements of Claim 1, and also evidences Defendant's knowledge of infringement, and their willfully infringing conduct. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to

31

**EXHIBIT 9**
**pg. 106**

Appx401

infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

32

**EXHIBIT 9**
**pg. 107**

Appx402

*(Claim 1 continued)*
a plurality of connecting posts (106)
to hold the new construction clips (104);



The accused connecting posts are shown
in the images above and next to this text.
The accused posts are riveted to the accused
junction box of the accused products. An
image above shows the accused posts
riveted to the accused junction box, and
another image above shows an accused post
isolated from the accused product. As a
visual demonstration, another image of the
4" accused product is provided to the right
to show the accused post attached to the fixture
without the accused junction box. This
arrangement would be similarly exhibited if the
accused plurality of connecting posts for the 6"
accused products were attached to the accused
products without the accused junction boxes.
For at least these reasons, Defendant's accused
products infringe these elements of Claim 1,
literally and by equivalents. Defendant's



33

EXHIBIT 9
pg. 108

Appx403

offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

34

**EXHIBIT 9**
**pg. 109**

Appx404



*(Claim 1 continued)*
a metal housing (108)
to embody a complete fixture (112);

These images and mappings are provided to evidence the portions of the accused product that infringe these elements of Claim 1. For at least these reasons, the accused products infringe these elements of Claim 1, literally and by equivalents.

Should further explanation be warranted, Plaintiff provides the following support. Claim 1 utilizes terms such as "LED light *fixture*", "recessed light *fixture* housing", and "complete *fixture*", which Defendant's may allege invokes ambiguity with respect to the meaning of "complete fixture". Regardless, Claim 4 further defines the "complete fixture" [4], as does the

---

[4] "Because claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) and citing *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1159 (Fed. Cir. 1997).

35

EXHIBIT 9
pg. 110

Appx405

Specification of Plaintiff's Patent [5], which expressly define the "complete fixture" by stating that "the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories." The Specification goes on to define these sub-elements by stating that "[e]xamples of the electrical systems include but not limited to the LED driver, an LED PCB assembly, and an LED strips. Further examples of the accessories include but not limited to wire connectors, and ground wires." Plaintiff's Patent claims priority to a Provisional

Application that was filed with the provisional drawing next to this text. The provisional drawing is labeled "— Housing—" to refer to the entire content of the drawing, further reinforcing the infringement of these elements of Claim 1. The element "4" in the Provisional



Application, and in the provisional drawing above, is referred to as a "metal body" and the element "3" is referred to as a "connecting post". Claim 1 includes a "body" element at the following passage: "a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture", but a "*metal body*" is not expressly recited in Claim 1. The Provisional Application also includes the additional provisional drawing shown below this text. The element "6" in the Provisional Application below is referred to as "complete fixture". The "housing" and the "complete fixture" therefore overlap in scope.

---

[5] "[T]he specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996) (quotations removed).

36

**EXHIBIT 9**
**pg. 111**

Appx406

This is reinforced by the Specification of the non-provisional application at [0014], which states that "[i]n some examples, one element may be designed as multiple elements, or multiple elements may be designed as one



element."     While Defendant may argue that a "housing" is necessarily something entirely external and enveloping, this would be contrary to Plaintiff's Patent, which has no external housing that is separate from the "clips" and that completely envelopes the "clips". Rather, the "metal housing" of Claim 1 embodies the complete fixture by including the complete fixture as a constituent part, thereby even conforming to the definition of "embody". See attached Exhibit 3 [6]. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.

Additionally, and though likely not necessary to prove infringement, Plaintiff alleges that the white portions of the accused products also infringe these elements of Claim 1 because the produced PIXIE test results, and supporting documents, evidence the white portions being made of metal. Additionally, a patent application filed by the manufacturer of the accused products, Zhejiang Yankon Group/Mega, supports a finding that the white portions of the accused products are made of metal. See attached Exhibit 4. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by

---

[6] "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. *See Brown v. 3M,*265 F.3d 1349, 1352 (Fed. Cir. 2001) (holding that the claims did not require elaborate interpretation). In such circumstances, general purpose dictionaries may be helpful." *Phillips v. AWH Corp.,* 415 F.3d 1303, 1314 (Fed. Cir. 2005) (quotations removed).

37

**EXHIBIT 9**
**pg. 112**

Appx407

equivalents. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

38

**EXHIBIT 9**
**pg. 113**

Appx408

*(Claim 1 continued)*
a junction box (116)
to hold a plurality of connection wirings,
wherein the junction box (116)
comprises a plurality of output wires; and



The images above and to the right show the accused junction box, the accused connection wirings, and the accused output wires. The accused junction box holds the accused connection wirings upon purchase and upon installation by a



consumer. Defendant's instruction manual directs consumers to push input wires, from a home of a consumer, into a punchout of the accused junction box, to attach to the accused plurality of output wires of the accused junction box. The accused junction box comprises the accused output wires upon purchase and upon installation by a consumer, and the accused plurality of output wires can include the black and white wires, and the yellow and green wires. A top surface of the accused junction box includes a hinged plate and a bottom

39

EXHIBIT 9
pg. 114

Appx409

surface of the accused junction box includes part of a white portion of the accused product. When the accused junction box is detached from the white portion of the accused product (as shown in the image to the right of this text), the accused junction box may not be safely utilized as a junction box without another bottom surface.

Alternatively, the accused junction box, accused connection wirings, and accused output wires infringe these elements of Claim 1 without relying on the white portion of the accused product being the bottom surface of the junction box.

For at least these reasons, the accused products infringe these elements of Claim 1, literally and by equivalents.

Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

40

**EXHIBIT 9**
**pg. 115**

Appx410



*(Claim 1 continued)*
a twist connector (118)
to attach the output wires
of the junction box (116)
to the metal housing (108),

The images above and to the right show the accused twist connectors attaching the accused output wires of the accused junction box to the accused metal housing. The images show wires extending from part of the accused metal housing to the accused twist connector. The images also show the accused output wires of the accused junction box extending from the accused twist connector towards the accused junction box. When the accused twist connector is no longer connected, the accused output wires are no longer connected to the

41

EXHIBIT 9
pg. 116

Appx411

accused metal housing. The accused twist connector is sold with twisted wires already encapsulated by the accused twist connector. The twisted wires are forced into the twist connector to be in contact with conductors within an orange shell of the accused twist connector. The twist connector is a category of connector types that does not include all types of means for connecting wires. For example, a twist connector may not include connectors such as alligator clips, shrink wrap, crimp connectors, among others. The accused output wires are alleged to be the product of a rapid stripping, twisting, and tinning machine, as shown in Attached Exhibit 6. The resulting wires are then inserted (manually or automatically) into the accused twist connectors, and are wedged by conductors within the orange shell of the accused twist connectors.

Should Defendant successfully argue that the term "twist connector" refers to a wire nut or Marrette connector (as they previously asserted in their Motion to Dismiss), Plaintiff asserts that connector identified above is equivalent to the "twist connector" limitation because they are two things that accomplish substantially the same work, the same way, and to achieve the same result, and thus "they are the same, even though they differ in name, form, or shape." See *Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.* (EDNY 2006) citing *Union Paper Bag v. Murphy* (US 1878). "The recent trend in the Federal Circuit has been to afford primacy to the language of the claims with little regard to the analysis of function". See *Van Blarcom Closures, Inc. v. Owens-Illinois, Inc.* (EDNY 2006) quoting *Wham-o, Inc. v. Sports Dimension* (ND CAL 2005). For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.

42

EXHIBIT 9
pg. 117

Appx412

Further evidence that reinforces Plaintiff's infringement contentions, and Defendant's knowledge of infringement, is the content Defendant provide with Defendant's Utilitech Item #5042426. For example, the installation and operation instructions for Defendant's Item #5042426 refers to "wire nuts" and refers to a "tethered connector", but provides no express recitation of "twist connector", despite these being types of twist connectors. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

43

**EXHIBIT 9**
**pg. 118**

Appx413

*(Claim 1 continued)*
wherein the retrofit clips (102)
make a friction fit
inside the recessed
lighting fixture housing
to secure the complete fixture (112)
inside,

The image above is from the
instruction manual for the accused products. The accused retrofit clips are
shown in the above image as being screwed in place and secured to the accused
complete fixture. The accused retrofit clips are shown as having a friction fit
inside of a recessed lighting fixture housing. For at least these reasons, the
accused products infringe on these elements of Claim 1, literally and by
equivalents.

Further evidence that proves Defendant's knowledge of infringement, and
willfully infringing conduct, include content provided with Defendant's
Utilitech #5042429. This product is advertised on Defendant's website as a
"recessed retrofit light", with "friction clips" as the "mount type." See
attached Exhibit 5. The accused retrofit clips of the accused products can be
similarly described. For at least these reasons, the accused products infringe
on these elements of Claim 1, literally and by equivalents. Defendant's
offering for sale, selling, and importing of the Accused Products directly
infringe these Claim limitations, and Defendant contributes to infringement

44

EXHIBIT 9
pg. 119

Appx414

by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

45

**EXHIBIT 9**
**pg. 120**

Appx415

*(Claim 1 continued)*

wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present.





The images to the right include an image from an installation manual for the accused products and a photo captured of the accused products. The images show the accused new construction clips attached to the accused connecting posts and no recessed lighting fixture housing present. Compare this to images above where the recessed lighting fixture housing is shown. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.

Further evidence that supports this contention is the content Defendant provides with their Utilitech Item #5042426. For example, Defendant's Item #5042426 is advertised as being for "canless" installations, and "new constructions", and the corresponding installation manual indicates that "clips" are utilized for mounting the fixture. See Exhibits 1 and 2. This supports

46

**EXHIBIT 9**
**pg. 121**

Appx416

Plaintiff's infringement contentions regarding the "new construction clips" and these elements of Claim 1, and also evidences Defendant's knowledge of infringement, and their willfully infringing conduct. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

47

**EXHIBIT 9**
**pg. 122**

Appx417

# CLAIM 2

The apparatus according to claim 1 comprises a socket adapter (114) to replace a light bulb in the recessed lighting fixture housing.



The images to the right include an image from an installation manual for the accused products and a photo captured of the accused products. A mapping is shown between Claim 2 and the accused products. The accused products are sold with the accused socket adapter shown to the right. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.



Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

48

EXHIBIT 9
pg. 123

Appx418

# CLAIM 3

The apparatus according to claim 1,
wherein the new construction clips (104)
squeeze ceiling material
placed between the new construction clips (104)
and an extremity of the metal housing (108).





The images above and to the right are from
the installation manual for the accused
products and photographs captured of the
accused products. A mapping is shown
between Claim 3 and the accused products.
When a consumer installs the accused
products, ceiling material would be squeezed
between the accused new construction clips
and an accused extremity of the accused
metal housing, as shown in the images to the
right. For at least these reasons, the accused
products infringe on these elements of Claim 1, literally and by equivalents.
Defendant's offering for sale, selling, and importing of the Accused Products
directly infringe these Claim limitations, and Defendant contributes to
infringement by directing consumers to purchase and use the Accused Products
in a manner that infringes the Claims.

49

**EXHIBIT 9**
**pg. 124**

Appx419

# CLAIM 4

The apparatus according to claim 1, wherein the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories.








The images above and to the right are of the accused products. The Specification states that examples of the accessories include but are not limited to "wire connectors, and ground wires." The wires shown are insulated strands of wires. A mapping is shown from elements of Claim 4 to the accused products. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents. Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products in a manner that infringes the Claims.

50

EXHIBIT 9
pg. 125

Appx420

# CLAIM 5

The apparatus according to claim 1, wherein the junction box (116) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires.



The images above and to the right are of the accused products. A mapping is shown from elements of Claim 5 to the accused products. For at least these reasons, the accused products infringe on these elements of Claim 1, literally and by equivalents.



Defendant's offering for sale, selling, and importing of the Accused Products directly infringe these Claim limitations, and Defendant contributes to infringement by directing consumers to purchase and use the Accused Products.

51

EXHIBIT 9
pg. 126

Appx421

## EXHIBIT 1



52

EXHIBIT 9
pg. 127

Appx422



## Overview

Convert old recessed downlights to advanced LED energy-saving technology with the 4-inch adjustable white can-less recessed downlight from Utilitech. This innovative recessed downlight features five selectable white color temperatures (2700K/3000K/4000K/5000K/6500K) that can be preset when installing the fixture. Each light comes with a tethered J-Box for installation directly into finished ceilings without recessed cans. The timeless design provides a sleek low profile look. Dimmable integrated LEDs produce extra bright 750-lumen light using only 12 watts of electricity - up to 84% less energy than an equivalent 75-watt incandescent. It is ideal for residential use in bedrooms, kitchens, living rooms, bathrooms, or commercial spaces for general lighting in retail and hospitality spaces. Use this versatile light in new constructions, remodeling, and retrofitting, and to replace older recessed bulbs. A 90+ CRI light makes colors vibrant and skin tones look more natural. The LLEDR4XT/HO-5CCT/V2 has an estimated energy cost of only 1.45 per year. It has an average life of 50,000 hours/45.7 years and is Energy Star Compliant, for fewer bulb replacements and energy savings. Get long-lasting, energy-efficient light that will enhance any home or commercial space with the Utilitech LED Recessed Downlight.

- Integrated tethered J-Box eliminates the need for recessed can housing
- 5 white lights option (2700K/3000K/4000K/5000K/6500K) create the perfect mood for any space
- High output 750-lumen light provides extra brightness and can be used in higher ceilings
- 90+ CRI color rendering emits light that closely resembles sunlight for more vibrant, realistic light
- Energy star approved
- Fully dimmable

53

**EXHIBIT 9**
**pg. 128**

**EXHIBIT 2**



54

**EXHIBIT 9**
**pg. 129**

Appx424

## EXHIBIT 3



EXHIBIT 9
pg. 130

Appx425



56

EXHIBIT 9
pg. 131

Appx426



57

**EXHIBIT 9**
**pg. 132**

Appx427

# EXHIBIT 4



influenced on one hand, and the PS plate is easy to crack in a ball impact test and cannot pass safety certification on the other hand.

Therefore, a new solution is needed to solve this problem.

Disclosure of invention

The utility model discloses solve the technical problem that above-mentioned prior art exists, provide a LED lamp with fire retardant property.

The above technical problem of the present invention can be solved by the following technical solutions: the utility model provides a LED lamp with fire behaviour, includes the base, install LED light source board on the base, with LED light source board electric connection's non-isolation drive power supply and install on the base and be located the printing opacity cover of adopting the PS material of LED light source board top, be equipped with fire-retardant layer between LED light source board and the printing opacity cover.

Preferably, the flame-retardant layer is a flame-retardant coating which is sprayed on the surface of the LED light source plate or the inner surface of the light-transmitting cover.

Preferably, the flame-retardant layer is a flame-retardant film, and the flame-retardant film is covered with the LED light source plate or is adhered to the inner surface of the light-transmitting cover.

Preferably, the thickness of the flame retardant layer is 0.025 to 0.3 mm.

Preferably, the flame retardant layer comprises antimony trioxide, magnesium hydroxide, aluminum hydroxide or a silicon-based material and has a flame retardant rating of V0.

Preferably, the LED light source board and the non-isolated driving power supply are integrated, the non-isolated driving power supply is arranged on the surface of the LED light source board and forms a photoelectric module with the LED light source board, and the photoelectric module is installed in the base.

Preferably, the LED light source board and the non-isolated driving power supply are split, and the non-isolated driving power supply and the LED light source board are respectively installed on the base.

5. The LED lamp with flame retardant property as claimed in claim 1, wherein the flame retardant layer has a composition of antimony trioxide, magnesium hydroxide, aluminum hydroxide or a silicon-based material and has flame retardant rating of V0.

6. The LED lamp with flame retardant property of claim wherein the LED light source board and the non-isolated driving power source are integrated, the non-isolated driving power source is disposed on the surface of the LED light source board and forms an optoelectronic module with the LED light source board, and the optoelectronic module is mounted in the base.

7. The LED lamp with flame retardant property of claim wherein the LED light source board and the non-isolated driving power supply are separated, and the non-isolated driving power supply and the LED light source board are respectively installed on the base.

58

EXHIBIT 9
pg. 133

Appx428

# EXHIBIT 5



59

**EXHIBIT 9**
**pg. 134**

Appx429



EXHIBIT 9
pg. 135

Appx430

**EXHIBIT 6**



**Automatic Wire Stripping Twisting and Tin Soldering Machine**

**KINGSING**
23K subscribers     Subscribe          👍 8   👎     ↪ Share   ...

956 views  9 months ago

This is a high-precision servo-type wire stripping, twisting and tinning machine, which integrates the functions of cutting, stripping, twisting and tinning. It supports simultaneous processing of multiple wires, and the speed of processing 8 wires at a time can reach 12,000 wires per hour, with ...**more**

61

**EXHIBIT 9**
**pg. 136**

Appx431

1
2                   **CERTIFICATE OF SERVICE**
3
4       I, Patrick Cummins, of full age, certifies that on March 20, 2024, I caused a copy of
5 the foregoing PLAINTIFF'S DISCLOSURE OF ASSERTED CLAIMS AND
6 INFRINGEMENT CONTENTIONS PER PATENT L.R. 3.1 AND 3.2 to be served by
7 electronic mail to the following counsel of record for Case No.:3:23-cv-01335-CAB-JLB:
8      PETER S. DOODY
9      SCOTT D. STIMPSON (Pro Hac Vice)
10      KATHERINE M. LIEB (Pro Hac Vice)
11      LINXUAN YAN (Pro Hac Vice)
12       *Attorneys for Defendant LOWE'S HOME CENTERS, LLC*
13
14 In accordance with 28 U.S. Code § 1746, I declare under penalty of perjury that the
15 foregoing is true and correct.
16
17      Executed on this 20th day of March 2024, in Lexington, Kentucky.
18
19
20      Patrick D. Cummins, CA Bar No. 294400
21
22
23
24
25
26
27
28

**EXHIBIT 9**
**pg. 137**

Appx432

# EXHIBIT 10

**EXHIBIT 10**
**pg. 138**

Appx433

1   Ryan W. Koppelman (SBN 290704)
    **Alston & Bird LLP**
2   350 S. Grand St. 51st Floor
    Los Angeles, CA 90071
3   Telephone: (213) 576-1000
    ryan.koppelman@alston.com

4

5   Adam D. Swain (SBN 257687)
    **Alston & Bird LLP**
6   950 F St NW
    Washington, DC 20004
7   Telephone: (202) 239-3622
    adam.swain@alston.com

8   *Attorneys for Defendants Cooper*
9   *Lighting, LLC, Lowe's Home Centers,*
    *LLC, and Home Depot USA, Inc.*

        Ryan L. Frei (SBN 310722)
        **Klarquist Sparkman, LLP**
        121 SW Salmon St., Suite 1600
        Portland, OR 97204
        Telephone: (503) 595-5300
        ryan.frei@klarquist.com

        *Attorneys for Defendants Amazon.com*
        *Inc., and Amazon.com Services LLC*

10  Additional counsel on signature page.

11

12  **UNITED STATES DISTRICT COURT**

13  **CENTRAL DISTRICT OF CALIFORNIA**

14

15  DS ADVANCED ENTERPRISES, LTD.,
    A CORPORATION

16          Plaintiff,

17      v.

18  COOPER LIGHTING, LLC,
    LOWE'S HOME CENTERS, LLC,
19  HOME DEPOT USA, INC,
    AMAZON.COM, INC, and
20  AMAZON.COM SERVICES LLC,

21          Defendants.

22

23

**Case No. 5:23-cv-02603**

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Judge: Hon. John A. Kronstadt
Date: June 17, 2024
Time: 8:30 a.m.
Courtroom: 10C

24

25

26

27

28

**EXHIBIT 10**
**pg. 139**

Appx434

1    Plaintiff alleges an impossible infringement scenario that violates the legal
2  requirements for plausibly pleading patent infringement, and defies common sense. To
3  distract the Court's eye, Plaintiff's Opposition sets up strawmen arguments irrelevant to
4  lack of plausible infringement allegations. Plaintiff imports different allegations from
5  another case involving a different product manufactured by a different manufacturer who
6  is not a party here. Dkt. 34 at 17-18 ("Opp."). Plaintiff further alleges "piracy," which is
7  not a recognized legal doctrine in patent law. These salacious and irrelevant arguments
8  have no bearing on the merits of the Motion and should not distract the Court from the
9  fact that Plaintiff's infringement allegations in this case are vexatious, and untethered to
10  reality, and should be dismissed.

11    While Plaintiff's Opposition eventually touches on the substantive merits, it still
12  fails to present a plausible theory of infringement supported by sufficiently detailed
13  allegations. First, the claims of the '118 patent require a "twist connector (118) to attach
14  the output wires of the junction box to the metal housing" of the LED fixture, but the
15  Accused Products indisputably have no such connectors on any wiring that extends from
16  the junction box to the metal housing. To gloss over this fatal flaw, Plaintiff points to
17  some wires that indisputably *supply* electric power to the junction box and baselessly
18  labels them "output wires." Opp. at 6. Neither the Complaint nor the Opposition provide
19  any facts or allegations which could make it even remotely plausible that a wire *supplying*
20  electric power to the junction box could possibly qualify as the "output wires of the
21  junction box to the metal housing."

22    Second, even if Plaintiff could just arbitrarily label a "supply wire" as an "output
23  wire," the alleged "output wires" still do not *attach to the metal housing* and the alleged
24  "twist connector" still does not attach the junction box to a metal housing of the LED
25  fixture. Consistent with the specification, claim 1 requires "a twist connector (118) to
26  attach the output wires of the junction box (116) to the metal housing (108)." *See, e.g.,*
27  '118 patent at 5:22-23, 1:61-62, and Fig. 7. Under Plaintiff's theory, however, the alleged
28  "twist connector" attaches the junction box *to an Edison socket adapter*, via supply wires

1

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS       CASE NO. 5:23-CV-02603

**EXHIBIT 10**
**pg. 140**

Appx435

# EXHIBIT 11
# Instructions and Packaging for an Accused Product (Submitted Under Separate Cover)

EXHIBIT 11
pg. 141

Appx436

# EXHIBIT 12
# Pieces of an Accused Product
# (Submitted Under Separate Cover)

EXHIBIT 12
pg. 142

Appx437

# EXHIBIT 13
# Wafer Piece of an
# Accused Product
# (Submitted Under
# Separate Cover)

**EXHIBIT 13**
**pg. 143**

Appx438

# EXHIBIT 14
## Other Pieces of an Accused Product (Submitted Under Separate Cover)

EXHIBIT 14
pg. 144

Appx439

# EXHIBIT 15

**EXHIBIT 15**
**pg. 145**

Appx440



EXHIBIT 15
pg. 146

Appx441



EXHIBIT 15
pg. 147

Appx442



**EXHIBIT 15**
**pg. 148**

Appx443

1    Patrick Cummins
2    CA Bar No.: 294400
     Patrick@CumminsIP.com
3    Cummins IP PLLC
4    3426 PEPPERHILL RD
5    LEXINGTON, KY 40502
     TEL: 502.445.9880
6    *Counsel for Plaintiff,*
7    *DS Advanced Enterprises, Ltd.*

8

9

10           **UNITED STATES DISTRICT COURT**

11          **SOUTHERN DISTRICT OF CALIFORNIA**

12

13   DS ADVANCED ENTERPRISES, LTD.,          Case No.: 3:23-cv-01335-CAB-JLB
     A CORPORATION,
14                                           **NOTICE OF LODGEMENT IN**
15   *Plaintiff*,                            **SUPPORT OF PLAINTIFF'S**
                                             **MEMORANDUM OF POINTS AND**
16   v.                                      **AUTHORITIES IN OPPOSITION TO**
                                             **DEFENDANT'S MOTION FOR**
17   LOWE'S HOME CENTERS, LLC,               **SUMMARY JUDGEMENT (DOC.**
18   A CORPORATION,                          **NO. 34)**

19        *Defendant*.                       JURY TRIAL DEMANDED

20
                                             DATE:   see Doc. No. 39
21                                           JUDGE: HONORABLE CATHY ANN
22                                           BENCIVENGO

23                                           PER CHAMBER RULES, NO ORAL
24                                           ARGUMENT UNLESS SEPARATELY
25                                           ORDERED BY THE COURT

26

27

28

CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

Appx444

Plaintiff DS Advanced Enterprises, Ltd. hereby lodges true and correct copies of the following documents and things in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgement (Doc. No. 34).

| | |
|---|---|
| **EXHIBIT 1** | The Oxford Concise Dictionary (excerpted and annotated).  See Cummins Decl. at ¶ 1. |
| **EXHIBIT 2** | Merriam-Webster's Intermediate Dictionary (excerpted and annotated).  See Cummins Decl. at ¶ 1. |
| **EXHIBIT 3** | Merriam-Webster Dictionary and Thesaurus (excerpted and annotated).  See Cummins Decl. at ¶ 1. |
| **EXHIBIT 4** | Plaintiff's Non-Provisional Patent Application.  See Cummins Decl. at ¶ 6. |
| **EXHIBIT 5** | Plaintiff's Provisional Patent Application.  See Cummins Decl. at ¶ 5. |
| **EXHIBIT 6** | Certificate of Correction for Plaintiff's Patent.  See Cummins Decl. at ¶ 17. |
| **EXHIBIT 7** | Connectors shaved by Plaintiff's Counsel using Dremel.  See Cummins Decl. at ¶¶ 7-10. |
| **EXHIBIT 8** | Line E: Electrical Fundamentals (excerpted and annotated).  See Cummins Decl. at ¶¶ 12-14. |
| **EXHIBIT 9** | Plaintiff's Disclosure of Asserted Claims and Infringement Contentions per Patent L.R. 3.1 and 3.1, as served on Defendant March 20, 2024.  See Cummins Decl. at ¶¶ 15-18, and 25. |
| **EXHIBIT 10** | Defendant's Reply in Support of Motion to Dismiss in Case No.: 5:23-cv-02603, Doc. No. 37 (C.D. Cal. May 29, 2024)  (excerpted and annotated).  See Cummins Decl. at ¶ 11. |

CUMMINS
INTELLECTUAL PROPERTY LAW, PLLC

OTICE OF LODGEMENT IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)
1

Appx445

| | | |
|---|---|---|
| 1<br>2<br>3 | **EXHIBIT 11** | Instructions and Packaging for Defendant's Utilitech Item No. 5041630. (Sample Physically Submitted Under Separate Cover to the Court and to Defendant's Counsel). See Cummins Decl. at ¶¶ 19-22. |
| 4<br>5<br>6 | **EXHIBIT 12** | Pieces of Defendant's Utilitech Item No. 5041630. (Sample Physically Submitted Under Separate Cover to the Court and to Defendant's Counsel). See Cummins Decl. at ¶¶ 19-22. |
| 7<br>8<br>9 | **EXHIBIT 13** | Wafer Piece of Defendant's Utilitech Item No. 5041630. (Sample Physically Submitted Under Separate Cover to the Court and to Defendant's Counsel). See Cummins Decl. at ¶¶ 19-22. |
| 10<br>11<br>12 | **EXHIBIT 14** | Other Pieces of Defendant's Utilitech Item No. 5041630. (Sample Physically Submitted Under Separate Cover to the Court and to Defendant's Counsel). See Cummins Decl. at ¶¶ 19-22. |
| 13<br>14 | **EXHIBIT 15** | Screenshots showing alligator clips, crimp connectors, and shrink wrap. See Cummins Decl. at ¶ 24. |

15

16    Dated: July 8, 2024

17        CUMMINS IP LAW PLLC

18        */s/ Patrick Cummins*,

19        Patrick D. Cummins, CA Bar No. 294400

20        3426 Pepperhill Rd.

21        Lexington, KY 40502

22        Telephone: (502) 445-9880

23        Patrick@CumminsIP.com

24        *Counsel for Plaintiff, DS Advanced Enterprises, Ltd.*

25

26

27

28


CUMMINS
INTELLECTUAL PROPERTY LAW PLLC

1  Patrick Cummins
2  CA Bar No.: 294400
   Patrick@CumminsIP.com
3  Cummins IP PLLC
4  3426 PEPPERHILL RD
5  LEXINGTON, KY 40502
   TEL: 502.445.9880
6  ***Counsel for Plaintiff,***
7  ***DS Advanced Enterprises, Ltd.***

8
9
10                **UNITED STATES DISTRICT COURT**
11               **SOUTHERN DISTRICT OF CALIFORNIA**
12

| | |
|---|---|
| 13  DS ADVANCED ENTERPRISES, LTD., | Case No.: 3:23-cv-01335-CAB-JLB |
| 14  A CORPORATION, | |
| 15  *Plaintiff,* | **DECLARATION IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)** |
| 16  v. | |
| 17  LOWE'S HOME CENTERS, LLC, | |
| 18  A CORPORATION, | |
| 19  *Defendant.* | JURY TRIAL DEMANDED |
| 20 | |
| 21 | DATE:   see Doc. No. 39 JUDGE: HONORABLE CATHY ANN BENCIVENGO |
| 22 | |
| 23 | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| 24 | |

25
26
27
28

CUMMINS
INTELLECTUAL PROPERTY ON
Law PLLC

DECLARATION IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)

Case No.: 3:23-cv-01335-CAB-JLB

1

2  I, Patrick Cummins, declare as follows:

3      1. I am over the age of eighteen and not a party to this action.  I am an attorney

4  licensed to practice law before all Courts of the State of California and am admitted to

5  practice before the Southern District of California.  I am counsel at Cummins IP PLLC.

6      2. I am the attorney of record for the Plaintiff in this matter.  I have personal

7  knowledge of the facts stated in this Declaration and, if called to testify, could and

8  would testify competently and under oath to these facts.

9      3. On June 9, 2024, I used a camera to capture images of the dictionaries shown

10 in Exhibits 1-3.

11     4. On June 17, 2024, I produced copies of those dictionary images to Defendant's

12 counsel.

13     5. I downloaded a copy of Plaintiff's Provisional U.S. Patent Application

14 62/673,595 from patentcenter.uspto.gov and attached the Provisional Application as

15 Exhibit 5.  I have served Defendant with a copy of the Provisional Application.

16     6. I downloaded a copy of Plaintiff's Non-Provisional U.S. Patent Application

17 16/392,73 from patentcenter.uspto.gov and attached the Non-Provisional Application

18 as Exhibit 4.  I have served Defendant with a copy of the Non-Provisional Application.

19     7. There are two connectors shown in attached Exhibit 7.  I captured the image

20 shown in Exhibit 7.  The connector at the top of the image in Exhibit 7 is a wire nut,

21 and the connector at the bottom of the image in Exhibit 7 is an end of a socket adapter

22 provided with the Accused Products.

23     8. A socket adapter is included with Defendant's Item #5041630, shown in Doc.

24 No. 17-1 at pg. 16, and also provided in the physical Exhibit 12 (submitted under

25 separate cover to Defendant's Counsel and this Court).

26     9. Using a Dremel tool, I shaved part of one side of a connector at an end of a

27 socket adapter that is included with each of the Accused Products, and I also shaved

28

CUMMINS
INTELLECTUAL PROPERTY LAW
LAW PLLC

DECLARATION IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)
1                          Case No.: 3:23-cv-01335-CAB-JLB

Appx448

1     part of the wire nut. I shaved these portions off to reveal the internal structures of the
2     connectors shown in Exhibit 7.

3         10. I captured the image in Exhibit 7 after shaving off portions of the respective
4     connectors with my personal Dremel tool.

5         11. On July 1, 2024, I extracted the first two pages of Defendant's reply memo
6     in Case 5:23-cv-02603-JAK-SHK and attached the two pages to Plaintiff's Opposition
7     to Defendant's Motion as Exhibit 10. Defendant's reply memo can be found in docket
8     for that case as Doc. No. 37. I also annotated the second page of the two pages of
9     Exhibit 10 with a red box.

10        12. When preparing Plaintiff's Opposition, I excerpted and attached the
11     "Electrical Fundamentals" document as Exhibit 8. The Electrical Fundamentals
12     document was originally emailed to Plaintiff's counsel, from Defendant's counsel, on
13     June 3, 2024.

14        13. The email in which Defendant shared the Electrical Fundamentals is shown
15     in Doc. No. 34-9 at pg. 2. The "Attachments" heading shows the name of the document
16     as "Line E – Electrical Fundamentals Competency E-1 (definition for twist connector
17     on page 13-14).pdf".

18        14. The image labeled "Figure 12: " of the Electrical Fundamentals document is
19     also shown in the Wikipedia Article that Defendant's expert, Dr. Bretschneider,
20     references, and that Defendant references in Defendant's Letter. See Exh. 8 at pg. 65.
21     See Doc. No. 34-7 at pg. 5; Doc. No. 34-4 at pg. 7; Doc. No. 34 at pg. 13; and see also
22     Doc. No. 20-2 (the Wikipedia Article).

23        15. Attached as Exhibit 9 is a true and correct copy of Plaintiff's Asserted
24     Claims and Infringement Contentions that I served on Defendant on March 20, 2024.

25        16. When preparing Plaintiff's Infringement Contentions (attached as Exhibit
26     9), I accessed the video found at the URL provided in the attached Judicial Notice at ¶

27

28

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

DECLARATION IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)
2
Case No.: 3:23-cv-01335-CAB-JLB

1  1. I captured a screenshot of this video, and a copy of the screenshot can be found at

2  pg. 136 of the attached exhibits (in Exhibit 9).

3      17. I downloaded a copy of a Certificate of Correction provided in the

4  prosecution history of Non-Provisional U.S. Patent Application 16/392,73 from

5  patentcenter.uspto.gov, and attached the Certificate of Correction as Exhibit 6.

6  Defendant has tagged their copy of the Certificate of Correction with bates stamp

7  "LHC_000005".

8      18. When preparing Plaintiff's Infringement Contentions (attached as Exhibit

9  9), I accessed Defendant's website at the URLs provided in the attached Judicial Notice

10  at ¶¶ 8-10. I captured screenshots of Defendant's website and product instructions, and

11  a copy of those screenshots can be found in Exhibit 9 at pgs. 127-129 and 134-135 of

12  the attached exhibits.

13      19. When preparing Plaintiff's attached Opposition to Defendant's Motion, I

14  purchased two of Defendant's Utilitech #5041630 product from Lowe's. This product

15  is one of multiple products being accused of infringing Plaintiff's Patent Claims 1-5 in

16  this Case.

17      20. I disassembled each product and placed their pieces into ziplock bags. I

18  placed a piece of paper into each ziplock back to indicate whether the ziplock bag is to

19  be identified as one of Exhibit 11, 12, 13, or 14.

20      21. Prior to filing Plaintiff's attached Opposition in ECF, I mailed a package to

21  Defendant's counsel with one set of ziplock bags for one of the Accused Products I

22  purchased per ¶ 19.

23      22. Prior to filing Plaintiff's attached Opposition in ECF, I mailed a separate

24  package to this Court with another set of the ziplock bags for another of the Accused

25  Products I purchased per ¶ 19.

26      23. I received Defendant's Exhibit B from Defendant's counsel via FedEx

27  (referenced by Defendant in Doc. No. 34-6). The package included the Utilitech

28

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

DECLARATION IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)
3
Case No.: 3:23-cv-01335-CAB-JLB

Appx450

1    #5041630 product, but without the instructions sheet for the product.

2          24. When preparing Plaintiff's attached Opposition, I captured screenshots of

3    the following URLs to provide illustrative examples of crimp connectors, alligator

4    clips, and shrink wrap, and provided those screenshots in Exhibit 15:

5          i.     https://www.amazon.com/ELECFUN-8in-Heat-Shrink-

6                 Tubing/dp/B08SQRKXH2/?th=1

7          ii.    https://www.lowes.com/pd/Gardner-Bender-2-Pack-Standard/4582329

8          iii.   https://www.lowes.com/pd/Utilitech-50-Pack-Metal-Wire-

9                 Connectors/999952818

10         25. When preparing Plaintiff's Infringement Contentions (attached as Exhibit

11   9), I personally captured images of a 4" version (Utilitech #5041631) and a 6" version

12   (Utilitech #5041632) of the Accused Products shown in Exhibit 9.  I personally

13   purchased, from a Lowe's retail store near me, the products shown in Exhibit 9.  I

14   personally arranged the products in the images in Exhibit 9, and I personally annotated

15   the images with the arrows shown in Exhibit 9.

16         26.  In accordance with 28 U.S. Code § 1746, I declare under penalty of perjury

17   that the foregoing is true and correct.

18

19         Executed on this 8th day of July, in Lexington, Kentucky.

20

21

22         Patrick D. Cummins, CA Bar No. 294400

23

24

25

26

27

28

DECLARATION IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)
4
Case No.: 3:23-cv-01335-CAB-JLB

Appx451

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

1

2  Patrick Cummins
   CA Bar No.: 294400
3  Patrick@CumminsIP.com
4  Cummins IP PLLC
   3426 PEPPERHILL RD
5  LEXINGTON, KY 40502
6  TEL: 502.445.9880
7  **Counsel for Plaintiff,**
   **DS Advanced Enterprises, Ltd.**
8

9

10              **UNITED STATES DISTRICT COURT**

11             **SOUTHERN DISTRICT OF CALIFORNIA**

12

13  DS ADVANCED ENTERPRISES, LTD.,        Case No.: 3:23-cv-01335-CAB-JLB
        A CORPORATION,
14                                         **REQUEST FOR JUDICIAL NOTICE**
15         *Plaintiff*,                    **IN SUPPORT OF PLAINTIFF'S**
                                           **MEMORANDUM OF POINTS AND**
16     v.                                  **AUTHORITIES IN OPPOSITION TO**
                                           **DEFENDANT'S MOTION FOR**
17  LOWE'S HOME CENTERS, LLC,             **SUMMARY JUDGEMENT (DOC.**
        A CORPORATION,                     **NO. 34)**
18
19         *Defendant*.                    JURY TRIAL DEMANDED
20
21                                         DATE:   see Doc. No. 39
                                           JUDGE: HONORABLE CATHY ANN
22                                                 BENCIVENGO
23
24                                         PER CHAMBER RULES, NO ORAL
                                           ARGUMENT UNLESS SEPARATELY
25                                         ORDERED BY THE COURT
26

27

28

CUMMINS

Appx452

**REQUEST FOR JUDICIAL NOTICE**

In accordance with Fed. R. Evid. 201, Plaintiff requests that this Honorable Court, in its consideration of Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgement, take judicial notice of the information contained in the following documents, attached hereto as:

1. Exhibit 9 at pg. 136 is a screenshot I captured of an internet YouTube video found at the following URL, which I recently accessed again on July 1, 2024:

   https://www.youtube.com/watch?v=u-BLFzGeswY

2. Exhibit 4 is a true and correct copy of Plaintiff's US Non-Provisional Application having application number 16/392,731, which is also accessible through the following government website:

   https://patentcenter.uspto.gov/applications/16392731

3. Exhibit 5 is a true and correct copy of Plaintiff's US Provisional Application having application number 62/673,595, which is also accessible through the following government website:

   https://patentcenter.uspto.gov/applications/62673595

4. Exhibit 1 is a true and correct copy of images captured of certain pages of "The Concise Oxford Dictionary", Oxford University Press, 10th edition (1999).

5. Exhibit 2 is a true and correct copy of images captured of certain pages of "Merriam-Webster's Intermediate Dictionary", Merriam-Webster, Incorporated (2004).

6. Exhibit 3 is a true and correct copy of images captured of certain pages of "Merriam-Webster's Dictionary and Thesaurus", Merriam-Webster, Incorporated, (2020).

CUMMINS
INTELLECTUAL PROPERTY LAW PLLC

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
1
Case No.: 3:23-cv-01335-CAB-JLB

Appx453

1     7. Exhibit 6 is a true and correct copy of a Certificate of Correction available

2           in the prosecution history of Plaintiff's Patent Application, US

3           16/392,731, which is also accessible through the following government

4           website (select "Documents and Transactions" from the following URL):

5           https://patentcenter.uspto.gov/applications/16392731

6     8. Exhibit 9 at pgs. 127-128 includes true and correct copies of screenshots

7           of Defendant's webpage for Defendant's Utilitech product #5042426,

8           which is also accessible via the following URL:

9           https://www.lowes.com/pd/Utilitech-Canless-Trimless-Recessed-

10          Downlight-White-4-in-750-Lumen-Switchable-White-Round-

11          Dimmable-LED-Canless-Recessed-

12          Downlight/5013395579?idProductFound=false&idExtracted=true

13     9. Exhibit 9 at pg. 129 also includes a true and correct copy of a screenshot

14           of an instructions sheet that is sold with Defendant's Utilitech product

15           #5042426, and which is also accessible via the following URL:

16           https://pdf.lowes.com/productdocuments/867986fb-815a-4851-b50f-

17          2e81a16c4080/60169581.pdf

18     10. Exhibit 9 at pgs. 134-135 also includes true and correct copies screenshots

19           of Defendant's webpage for Defendant's Utilitech product #5042429, and

20           which is also accessible via the following URL:

21          https://www.lowes.com/pd/Utilitech-Retrofit-Kit-White-5-in-or-6-in-

22          925-Lumen-Switchable-White-Round-Dimmable-LED-Recessed-

23          Downlight/5013395525?idProductFound=false&idExtracted=true

24     11. Exhibit 15 at pgs. 146-148 also includes true and correct copies

25           screenshots of Defendant's webpage and an Amazon webpage for various

26           electrical connectors, and which are also accessible via the following

27           URLs:

28


CUMMINS
INTELLECTUAL PROPERTY LAW
Law PLLC

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
2
Case No.: 3:23-cv-01335-CAB-JLB

Appx454

1                    https://www.amazon.com/ELECFUN-8in-Heat-Shrink-

2                        Tubing/dp/B08SQRKXH2/?th=1

3                    https://www.lowes.com/pd/Gardner-Bender-2-Pack-Standard/4582329

4                    https://www.lowes.com/pd/Utilitech-50-Pack-Metal-Wire-

5                        Connectors/999952818

6

7        Under, Federal Rule of Evidence 201, "[t]he Court may take judicial notice of a

8 fact that is not subject to a reasonable disputed because it . . . can accurately and readily

9 be determined from sources whose accuracy cannot reasonably be questioned."  See

10 Fed. R. Evid. § 201.  "Pursuant to Federal Rule of Evidence 201,…the [c]ourt is

11 permitted to take judicial notice of adjudicative facts 'not subject to reasonable dispute,'

12 and 'capable of accurate and ready determination by resort to sources whose accuracy

13 cannot reasonably be questioned.'" See *Rupert v. Bond*, 68 F. Supp. 3d 1142, 1154

14 (N.D. Cal. 2014) citing Fed. R. Evid. 201(b) (modified).  A court is permitted to take

15 judicial notice of "matters of public record".  See *Mack v. S. Bay Beer Distribs.*, 798

16 F.2d 1279, 1282 (9th Cir.1986).

17        Regarding supra ¶¶ 1, and 8-11, a court may take judicial notice of information

18 found on a company's website.  See *Patel v. Parnes*, 253 F.R.D. 531, 546-547 (C.D.

19 Cal. 2008).  Here, Plaintiff's Opposition relies upon the information conveyed by a

20 video demonstrating the use of a machine for automatically stripping, twisting, and tin-

21 soldering wires.  By selecting the embedded link at the word "KINGSING" next to the

22 "Subscribe" button, one will be directed to the machine manufacturer's page on

23 YouTube.com (https://www.youtube.com/@KINGSING), which provides a link to the

24 machine manufacturer's webpage (https://www.KINGSING.com).  Plaintiff requests

25 this Court take judicial notice of the automated operation of stripping, twisting, and tin-

26 soldering wires, as conveyed in the cited video and the screen capture of the video

27 reproduced as Exhibit 9 at pg. 136.  Plaintiff also requests this Court take judicial notice

28



CUMMINS
INTELLECTUAL PROPERTY (IP)
Law PLLC

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
3
Case No.: 3:23-cv-01335-CAB-JLB

Appx455

1  of Defendant's website, Defendant's product instructions, and an Amazon webpage,
2  each found at the URLs provided with *supra* ¶¶ 8-11.  Plaintiff requests this Court take
3  judicial notice of the existence of the products, descriptions, and instructions
4  reproduced as Exhibit 9 at pgs. 134-135 and 127-129, and Exhibit 15 at pgs. 146-148.
5  See also Cummins Decl. at ¶¶ 16, 18, and 24.

6         Regarding supra ¶¶ 2-3 and 7, "it is [] well-established that a court may take
7  judicial notice of patents or patent applications."  See *Anderson v. Kimberly-Clark*
8  *Corp.*, No. 2014-1117, 9 n.3 (Fed. Cir. 2014) (modified).  Here, Plaintiff's Opposition
9  relies upon the contents of a provisional patent application, and a non-provisional patent
10 application, and corresponding certificate of correction, to counter allegations in
11 Defendant's Motion for Summary Judgement of Non-Infringement.  Plaintiff therefore
12 requests that this Court take judicial notice of Plaintiff's Patent (Doc. No. 34-5), Non-
13 Provisional Patent Application, Provisional Application, and Certificate of Correction,
14 reproduced and attached as Exhibits 4-6. See Cummins Decl. at ¶¶ 5-6 and 17.

15        Regarding *supra* ¶¶ 4-6, this Court has indicated that dictionaries can be
16 judicially noticed because their accuracy cannot be reasonably questioned. See *Walker*
17 *v. Woodford*, 454 F. Supp. 2d 1007, 1022 (S.D. Cal. 2006).  Here, Plaintiff's Opposition
18 relies upon the contents of multiple dictionaries to counter allegations in Defendant's
19 Motion for Summary Judgement of Non-Infringement.  Plaintiff has also provided
20 relevant images for authenticating the cited dictionaries.   See Exhibits 1-3 and
21 Cummins Decl. at ¶¶ 3-4. Plaintiff therefore requests that this Court take judicial notice
22 of the dictionary definitions shown in Exhibits 1-3.

23        In summary, Plaintiff requests Judicial Notice of the above-identified Opposition
24 Exhibits and websites, which correspond to information that is easily accessible, easily
25 verified, and not subject to reasonable dispute.  See *supra* ¶¶ 1-11.

26

27 Dated: July 8, 2024

28

CUMMINS
INTELLECTUAL PROPERTY LAW
Law PLLC

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
4
Case No.: 3:23-cv-01335-CAB-JLB

Appx456

1 **CUMMINS IP LAW PLLC**

2 */s/ Patrick Cummins*,

3 Patrick D. Cummins, CA Bar No. 294400

4 3426 Pepperhill Rd.

5 Lexington, KY 40502

6 Telephone: (502) 445-9880

7 Patrick@CumminsIP.com

8 *Counsel for Plaintiff, DS Advanced Enterprises, Ltd.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



CUMMINS
INTELLECTUAL PROPERTY LAW
LAW PLLC

REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
5
Case No.: 3:23-cv-01335-CAB-JLB

Appx457

Patrick Cummins
CA Bar No.: 294400
Patrick@CumminsIP.com
Cummins IP PLLC
3426 PEPPERHILL RD
LEXINGTON, KY 40502
TEL: 502.445.9880
***Counsel for Plaintiff,***
***DS Advanced Enterprises, Ltd.***

# U.S. DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DS ADVANCED ENTERPRISES, LTD., A CORPORATION, *Plaintiff,* v. LOWE'S COMPANIES, INC., A CORPORATION, LOWE'S HOME CENTERS, LLC, A CORPORATION, LF, LLC, A CORPORATION YANKON LIGHTING, INC., A CORPORATION, *Defendants.* | Case No.: 3:23-cv-01335-CAB-JLB  **CERTIFICATE OF SERVICE** |

Appx458

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that true and correct copies of the above and following documents and related exhibits have been served on July 8, 2024 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civ. LR 5.4(d). Some related physical Exhibits have been mailed to Defendant's counsel and this Court via USPS, as of July 5, 2024 and are expected to arrive by July 8-9, 2024. Any other counsel of record will be served by U.S. Mail or hand delivery.

1. **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34) AND RELATED EXHIBITS**
2. **NOTICE OF LODGEMENT IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)**
3. **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)**
4. **DECLARATION IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT (DOC. NO. 34)**

Dated: July 8, 2024

**CUMMINS IP PLLC**

*/s/ Patrick Cummins*,

Patrick D. Cummins, CA Bar No. 294400

CUMMINS
INTELLECTUAL PROPERTY
LAW PLLC

1

Appx459

1  3426 Pepperhill Rd.

2  Lexington, KY 40502

3  Telephone: (502) 445-9880

4  Patrick@CumminsIP.com

5  ***Counsel for Plaintiff, DS Advanced Enterprises, Ltd.***

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CUMMINS
INTELLECTUAL PROPERTY OF
LAW PLLC

2

Appx460

1  PATRICK CUMMINS (SBN: 294400)
2  Patrick@CumminsIP.com
   Cummins IP PLLC
3  3426 Pepperhill Rd.
4  Lexington, KY 40502
5  Telephone: 502.445.9880
   *Counsel for Plaintiff,*
6  *DS Advanced Enterprises, Ltd.*
7
8
9              **UNITED STATES DISTRICT COURT**
10            **SOUTHERN DISTRICT OF CALIFORNIA**
11
12  DS ADVANCED ENTERPRISES, LTD.,      Case No.: 3:23-cv-01335-CAB-JLB
13    a corporation,
                                        **Plaintiff's Reply in Support of**
14        *Plaintiff,*                  **Plaintiff's Motion Pursuant to Fed. R.**
                                        **Civ. P. § 59(e) and §52(b) Regarding**
15  v.                                  **Judgement**
    LOWE'S HOME CENTERS, LLC,
16    a corporation,                    Date:    December 2, 2024
17        *Defendant.*                  Judge:   Hon. Cathy Ann Bencivengo
18
19                                      PER CHAMBER RULES, NO ORAL
                                        ARGUMENT UNLESS SEPARATELY
20                                      ORDERED BY THE COURT
21
22
23
24
25
26
27
28

*Honorable Judge Bencivengo*                    *Case No.: 3:23-cv-01335-CAB-JLB*

Appx461

**A. Not Finding Infringement in View of the Accused Metal Housing is the Clear Error to be Corrected per Plaintiff's Motion**

As Lowe's agrees, motions made pursuant to Rule 52(b) are designed to correct findings of fact which are central to the ultimate decision. Doc. No. 83 at pg. 3, lines 1-4 (citations omitted). In this particular instance, the finding of fact to be corrected is whether the Accused Products include a "metal housing", as claimed in Claim 1 of Plaintiff's Patent.

Recently, in another Case involving Plaintiff's Patent and another accused product sold by LEDVANCE LLC ("Ledvance"), Ledvance referred to a portion of their own accused products as a "metal housing". As shown below, the portion Ledvance refers to is *nearly identical* to the accused metal housing of the Lowe's products—the same portion of Lowe's Accused Products Plaintiff has been pointing to since the original complaint. See Doc. No. 81 at § III(a). Below is an annotated excerpt from defendant Ledvance's reply brief in their motion to dismiss with an overlayed image of Lowe's accused metal housing for ease of comparison. See also, *DS Advanced Enterprises, Ltd. v. Ledvance LLC*, Case



9    For example, below is an image of Ledvance Product 62884 from the FAC. Dkt. 27

10   at 34. The image shows wires from the junction box connecting to the LED strip

11   through a small hole near the center of the metal housing.

Lowe's Accused Product

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 1 —    Case No.: 3:23-cv-01335-CAB-JLB*

1 No. 1:23-cv-11155-JEK, Doc. No. 82 at pg. 12, lines 9-20 (D. Mass. September 3, 2024).
2 For ease of reference, the entire page from Ledvance's reply brief is also attached as Exhibit
3 A. Cummins Decl. at ¶ 3. The above image of Lowe's accused metal housing was
4 excerpted from Doc. No. 79-1 at pg. 11, lines 1-18. Each metal housing above houses an
5 LED strip for each respective fixture.

6      Ledvance's admission was not available until September 3, 2024. Plaintiff's
7 Opposition to Lowe's summary judgment was filed on July 8, 2024, well before
8 Ledvance's admission. See Cummins Decl. at ¶ 4-6. This admission by Ledvance should
9 be compared to Plaintiff's infringement contentions, as reproduced below. Plaintiff's
10 infringement contentions were attached to Plaintiff's opposition to Defendant's summary
11 judgement motion but not addressed by Lowe's. Doc. No. 45-1 at pg. 70 (annotated below).

12      For purposes of finding clear error per Plaintiff's Rule 52/59 Motion, Ledvance's
13 admission should illuminate the clear error of finding non-infringement, or at least the clear
14 error of finding no genuine issue of material fact regarding the accused metal housing.
15 Ledvance is one of the largest producers of lighting products in the world, and they own
16 famous lighting brands such as Sylvania and Osram[1-2]. Ledvance has also partnered with



identified, for the Defendant, features of the
Accused Products include the "metal housing
(108) to embody a complete fixture (112)". See
Exh. 9 at pgs. 84-87 and 111-114, and as shown
in the image to the left. These elements of an
Accused Product #5141630 were also provided
as a physical exhibit. See Exh. 12 and Cummins

22 *(Claim 1 continued)*
23 a metal housing (108)
24 to embody a complete fixture (112)
25
26
27  These images and copy right are
   provided to evidence the portions
   of the accused product that
28 infringe these elements of Claim 1. For at least these reasons, the accused

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
25                          Case No.: 3:23-cv-01335-CAB-JLB

27
28 [1] https://en.wikipedia.org/wiki/Ledvance
   [2] https://shop.ledvanceus.com/about-us/

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 2 —      Case No.: 3:23-cv-01335-CAB-JLB

Appx463

1  Lowe's[3]. Ledvance's products have *nearly the same* metal housing as Lowe's Accused
2  Products, and Ledvance *expressly* refers to their nearly-identical metal housing as a "metal
3  housing". See *supra* pg. 1, and see Exhibit A.

4

5  **B. Defendant Denies—but Does Not Substantively Address—Plaintiff's Brief**
6  **Showing the Metal Housing Claim Element Mapped to Plaintiff's Covered Products**

7      Lowe's argues that a patentee's commercial embodiment should not be the focus of
8  an infringement analysis, but that argument completely misses the point. Doc. No. 83 at
9  pg. 5, lines 1-6. Of course the Claims of Plaintiff's Patent should be the primary focus.
10 However, Patent L.R. 3.1(g) expressly states that: "If a party claiming patent infringement
11 asserts or wishes to preserve the right to rely, for any purpose, on the assertion that its own
12 apparatus....practices the claimed invention, the party must identify...each such
13 apparatus....that incorporates or reflects that particular claim." Patent L.R. 3.1(g)
14 (modified). This is why Plaintiff expressly referred to their covered products in their
15 infringement contentions. See Doc. No. 45-1 at pg. 73, lines 4-23, which lists the same
16 item number as the item number shown in Plaintiff's Motion's Opening Brief (Doc. No.
17 79-1 at pg. 12, lines 16-17) ("ZF-DL6-12W-DIM-5CC-*L#"). Lowe's did not address or
18 rebut this in their summary judgement briefs.

19     Lowe's further alleges that "Plaintiff does nothing to show its own product is
20 covered by the patent", which is yet another example of Lowe's asking this Court to deny
21 reality. Doc. No. 83 at pg. 4, lines 27-28. Plaintiff's Motion expressly compared the
22 accused metal housing to the metal housing of the Covered Products *and* to this Court's
23 construction of "metal housing". See, at least, Doc. No. 79-1 at pg. 9, lines 10-28, and see
24 also, pg. 11, lines 1-18. The allegation that Plaintiff did "nothing" to map Plaintiff's
25 Covered Product merely adds to the list of knowingly false statements submitted by Lowe's
26 and their counsel to this Court.

27

28 [3] https://corporate.lowes.com/newsroom/press-releases/osram-sylvania-and-lowes-
introduce-brightest-led-light-bulb-11-18-10

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 3 —    *Case No.: 3:23-cv-01335-CAB-JLB*

### C. Lowe's Metal Housing Arguments Finally Address the Accused Metal Housing but Their Assertions Further Stink of "Dead Fish"

Lowe's makes many of the same arguments that Plaintiff has already debunked, but Lowe's also *finally* makes some effort to address the accused metal housing by arguing it "is an internal structure – it is a part being housed. Contrary to Plaintiff's argument, it does nothing to encase the LEDs, but rather it is the structure on which they are secured". Doc. No. 83 at pg. 6, lines 22-26. In response, this Court should consider Ledvance's admission that the portion Plaintiff is referring to *is* a metal housing. See pg. 1, *supra*. Additionally, the only reason the accused metal housing appears "internal" is because Lowe's or Lowe's manufacturer, Zhejiang Yankon, slapped an extraneous wafer piece on the Accused Products as their non-inventive design-around that leaves the metal housing intact. Doc. No. 79-1 a pg. 9, lines 20-28.

Lowe's also makes another Orwellian assertion that the accused metal housing does not encase or enclose the LED strip, which this Court can easily debunk with their own eyes. Doc. No. 83 at pg. 7, lines 20-23. Lowe's even concedes that "the Court's claim construction…says nothing about what must be enclosed" and yet—still, Lowe's will not concede that the accused metal housing is enclosing *something* (*e.g.*, the LED strip). *Id.*



Lowe's Accused Product

Lowe's bare assertion that the accused metal housing "does nothing to encase the LEDs" simply denies plain English. The verbs "encase" and "house" are synonymous and mean to cover[4] or enclose[5] something. The LED strip is not entirely visible in pictures like the ones to the right of this text



because the LED strip is *being enclosed* by the accused metal housing. Doc. No. 81 at pg.

---

[4] https://www.britannica.com/dictionary/encase
[5] https://www.britannica.com/dictionary/house

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*Case No.: 3:23-cv-01335-CAB-JLB*

— 4 —

1  9, lines 14-28. That is the purpose of the accused metal housing. The surrounding lip of
2  the accusing metal housing even extends down far enough for both the LED strip and
3  diffuser lens to be enclosed by the accused metal housing. The accused metal housing also
4  happens to house the diffuser lens and reflective paper that comes with the Accused
5  Products, further evidencing that the accused metal housing houses multiple things, aside
6  from part of the complete fixture (*e.g.*, the LED strip). See image below include parts of
7  one of the Accused Products. See Cummins Decl. at ¶ 7. The images below also show the
8  diffuser lens and reflective paper being disposed within the accused metal housing, and
9  being slightly displaced from the accused metal housing. Although these images may not
10  be necessary for this Court to grant Plaintiff's Motion, they are nonetheless provided to
11  reinforce Lowe's recent assertion that the accused metal housing does not house anything.
12  See Doc. No. 83 at pg. 8, lines 20-23 (Lowe's indicating that this Court's construction of
13  the "metal housing" "says nothing about what must be enclosed.").



Reflective Paper   Diffuser Lens   Accused Metal Housing   Hoop

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 5 —   *Case No.: 3:23-cv-01335-CAB-JLB*

Appx466

**C.  Lowe's Knowingly Submits Falsehoods by Continuing to Allege this Case Involved a "Game of Ever-Changing" Infringement Analysis**

Lowe's alleges Plaintiff has continually changed their infringement contentions throughout this Case, but this is another attempt to perpetuate a false narrative. Lowe's doubling down on this false narrative simply reveals their lack of counterarguments regarding the accused metal housing. Doc. No. 83 at pg. 5, lines 26-28. If Lowe's had any counterarguments regarding why the accused metal housing is not within the scope of this Court's construction of "metal housing", they hopefully would have made those arguments by now. Lowe' assertion is self-defeating considering Lowe's alleges that "Plaintiff argues...only a single internal part" is the accused metal housing, and then addresses Plaintiff's assertion that "the junction box should be considered part of the housing." *Id*. compared to Doc. No. 83 at pg. 8, lines 5-6.

Lowe's intentional misrepresentations continue as they assert "Plaintiff argued that any 'metal structure' in the LHC product be the housing." *Id*. at pg. 6, lines 3-4. The portion of Plaintiff's opposition that Defendant cites to is the Doc. No. 45 at pgs. 5 and 7. Oddly, those pages correspond to the table of authorities for Plaintiff's opposition to Defendant's summary judgment motion. Doc. No. 83 at pg. 6, lines 3-4 citing to Doc. No. 45 at pgs. 5 and 7. These false assertions are reckless and should not be tolerated. It is telling that Lowe's never puts the word "any" in quotes when making this assertion. *Id*.

Lowe's goes on to submit another blatant falsehood by asserting: "Nowhere in Plaintiff's opposition did it ever single out the internal part it does now, and nowhere did Plaintiff even mention the 'strip of LEDs' it now alleges to be 'housed' by this part." Doc. No. 83 at pg. 6, lines 7-8. Plaintiff's Infringement Contentions expressly discuss the strip of LEDs by pointing them out and mapping to the Claims. Doc. No. 45-1 at pgs. 84-85 ("LED strips"). For every instance of the term "metal housing", Plaintiff pointed to the accused metal housing. Plaintiff's counsel even asserted this at the hearing. Doc. No. 69 at pg. 8, line 18, to pg. 9, line 18. The images below provide more instances of the Plaintiff

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 6 —    *Case No.: 3:23-cv-01335-CAB-JLB*

Appx467

1  singling out the accused
2  metal housing and/or the
3  LED strip.   These images



17  of the junction box (116)
18  to the metal housing (108),
19
20

4  further reinforce Lowe's knowingly submitting false
5  statements on the record. Doc. No. 83 at pg. 6, lines 7-11.

6       Lowe's also attempts to argue that some images in
7  Plaintiff's Motion were "addressing a different claim
8  element" than the metal housing claim element. Doc. No.
9  83 at pg. 6, lines 12-16.[6]  The referenced page of
10  Plaintiff's Motion expressly shows the term "the metal
11  housing (108)" with an arrow from that term to the
12  accused metal housing.  Doc. No. 79-1 at pg. 15.  An
13  excerpt from that page is reproduced at
14  the far upper-right of this page.
15  Lowe's assertion is another false
16  statement.  The image does not show
17  "a different claim element" being
18  mapped to the accused metal
19  housing. *Id.*

*(Claim 1 continued)*
a metal housing (108)
to embody a complete fixture (112);



and an extremity of the metal housing (108).
The images above and to the right are from the installation manual for the accused products and photographs captured of the accused products. A mapping from Claim 3 to the accused products is shown. When a

20       Lowe's arguments are a desperate attempt to
21  convince this Court that Plaintiff is presenting a new
22  infringement theory that Plaintiff could've asserted in
23  their opposition to Defendant's summary judgment
24  motion.  But that is *not* the case.  Plaintiff's Motion
25  addresses clear error in the decision to grant summary
26  judgment of non-infringement—not to set forth any new

The apparatus according to claim 1, wherein the complete fixture (112) comprises
a plurality of electrical systems,
clips,
and
accessories.



27
28

---

[6] Lowe's cites to the brief's page number 11, not the ECF page number.

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*Case No.: 3:23-cv-01335-CAB-JLB*

1  theories of infringement. As Plaintiff repeats in Plaintiff's Motion, Defendant did not
2  attach Plaintiff's infringement contentions to their summary judgment motion, much less
3  address the infringement theories set forth in Plaintiff's infringement contentions. Doc.
4  No. 79-1 at § IX. Lowe's has only themselves to blame for this. Lowe's had been served
5  the infringement contentions according to the Patent Local Rules, but Lowe's opted to not
6  address them in their summary judgment. *Id.* For a variety of reasons, this just makes no
7  sense. Plaintiff did not have "ever-changing" infringement theories, nor did Plaintiff assert
8  new infringement theories in Plaintiff's Motion.

9

10     **D.     Lowe's Limited Remaining Arguments Miss the Point and Intentionally**
11           **Mischaracterize the Purpose of Plaintiff's Motion**

12         Lowe's does not rebut Plaintiff's arguments regarding the junction box and original
13  Claims as filed, except to attempt to summarize the argument, cite to this Court's Order,
14  and then assert that the argument cannot be raised for the first time in Plaintiff's Motion.
15  Doc. No. 83 at pg. 8, lines 13-26. Lowe's also cites to Plaintiff's Motion's discussion of
16  the junction box being part of the metal housing per Claim 5, but Lowe's does not address
17  the *Home Depot* case cited by Plaintiff's Motion and at the hearing. Doc. No. 83 at pg. 8,
18  line 12-22. Lowe's simply re-quotes this Court's order, Doc. No. 67, which also does not
19  address the *Home Depot* case. Doc. No. 79-1 at pg. 20, lines 12-22.

20         Lowe's provides a number of other arguments that do not have much merit. For
21  example, regarding Dependent Claim 4, Lowe's wholly misses the point. Claim 4 *must* be
22  prioritized over other intrinsic evidence during claim construction, at least according to
23  binding precedents. Doc. No. 83 at pg. 8, lines 1-3 compared to Doc. No. 79-1 at pg. 16,
24  line 28 to pg. 17, line 4 (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir.
25  2005)). Plaintiff's discussion of Claim 4 was to further illuminate the alleged clear error.
26  Doc. No. 79-1 at § VII.

27         Despite Lowe's opposition brief citing to the Order, Doc. No. 67 from Honorable
28  Judge Bencivengo, and attempting to rebut any new facts being asserted, Lowe's provides

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 8 —     *Case No.: 3:23-cv-01335-CAB-JLB*

1   a contradictory footnote argument regarding a lack of certified statement per Civil L.R.
2   7.1(i)(1). Doc. No. 83 at pg. 3, lines 25-26. The local rules require that a motion for
3   reconsideration include a statement indicating "(1) when and to what judge the application
4   was made, (2) what ruling or decision or order was made thereon, and (3) what new or
5   different facts and circumstances are claimed to exist which did not exist, or were not
6   shown, upon such prior application." Civil L.R. 7.1(i)(1). Considering Lowe's own
7   opposition brief indirectly admits those requirements are met, Lowe's footnote argument
8   has no merit.

9           Lowe's goes on to perform some quote cropping in furtherance of alleging Plaintiff
10   entirely disclaimed the doctrine of equivalents regarding the metal housing. Doc. No. 83
11   at pg. 5, lines 9-13. This is simply not true, but also not particularly relevant to Plaintiff's
12   Motion. Also, regarding Lowe's rebuttal to arguments regarding copying, the facts *do*
13   support Lowe's copied Plaintiff's design, as addressed in Plaintiff's Motion. See, at least,
14   Doc. No. 79-1 at pg. 13, line 19 to pg. 14, line 15. Evidence of copying is also found in
15   the image of the Ledvance product on pg. 1 from the Ledvance case (Lowe's attached the
16   entire Ledvance complaint as Doc. No. 77-8).

17           Finally, Lowe's awkwardly attempts to re-frame the first few lines of Plaintiff's
18   Motion (Doc. No.79-1) as patronizing of this Court. It is no secret that the Southern District
19   of California is ranked[7] high relative to all other District Courts in filings per judgeship.
20   Plaintiff's Counsel was simply alluding to this fact by referring to a "rocket docket".
21   Lowe's clearly did not appreciate the blackhole analogy either. Doc. No. 79-1 at pgs. 5-6.

22           Furthermore, any mentioning of "impartiality" was *not* to explain why Plaintiff lost
23   at summary judgement. Far from it. Plaintiff's Counsel simply incorporated that language
24   into their introduction as a sincere request, and in reflection upon hearing the phrase
25   "almost frivolous" at the hearing. Doc. No. 69 at pg. 6, lines 3. Lowe's, in another brief,
26   points to Plaintiff seeking reassignment but Lowe's is seemingly unaware of why
27

28   [7] https://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2024

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
*— 9 —*     *Case No.: 3:23-cv-01335-CAB-JLB*

Appx470

1 reassignment could be more efficient in view of the Central District case involving
2 Plaintiff's Patent and Lowe's. Doc. No. 84 at pg. 7, lines 26-28. Lowe's attempts to
3 mischaracterize Plaintiff's Motion are disingenuous, especially in view of the constant
4 misleading and false statements Lowe's continue to submit on the record.

5    If Plaintiff's Motion was at all offensive to this Court (as Lowe's suggests), Plaintiff
6 and Plaintiff's Counsel sincerely apologize to this Court. Portions of Plaintiff's Motion,
7 such as the opening lines, were sincere attempts to distinguish Plaintiff's Motion from other
8 motions for reconsideration, which Plaintiff's Counsel acknowledges may be a procedural
9 tool that is overused. Though Plaintiff hopes this Court will agree that use of this tool was
10 warranted under these circumstances.

11

12                    **E. Conclusion Regarding Plaintiff's Motion**

13    As Plaintiff's Motion suggests, the Defendant invited clear error by not addressing
14 Plaintiff's infringement contentions and directing this Court to something other than the
15 accused metal housing that Plaintiff had been referring to since the beginning of this case.
16 Doc. No. 79-1 at § IX. Although some newly discovered evidence is set forth in Plaintiff's
17 Motion briefs, that evidence is not intended to be the exclusive basis for Plaintiff's Motion.
18 See *Id.*, at least at §§ I and II. Plaintiff respectfully and primarily asserts that, in view of
19 Plaintiff's Motion, there exists clear error in concluding that the accused metal housing is
20 not within the scope of this Court's construction of the "metal housing" claim element.
21 Doc. No. 79-1 at pg. 11, lines 1-28. Additionally, Plaintiff's respectfully asserts that this
22 Court committed clear error by weighing facts at summary judgment and/or not finding a
23 genuine dispute of material fact regarding the white wafer and the accused metal housing.

24

25    For at least these reasons, Plaintiff respectfully asks this Court to modify its
26 judgment and/or modify its findings, per Fed. R. Civ. P. §§ 52(b) and/or 59(e), to resolve
27 any manifest error in this Court's Order, Doc. No. 67.

28

1    Dated: November 25, 2024

2    */s/ Patrick D. Cummins*,

3    Patrick D. Cummins

4    Cummins IP Law PLLC

5    3426 Pepperhill Rd.

6    Lexington, KY 40502

7    Telephone: (502) 445-9800

8    Patrick@CumminsIP.com

9    *Attorney for Plaintiff,*

10       *DS Advanced Enterprises, Ltd.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiff's Reply in Support of Motion Pursuant to Fed. R. Civ. P. § 52(b) and § 59(e)*
*Honorable Judge Burkhardt*
— 11 —    *Case No.: 3:23-cv-01335-CAB-JLB*

Appx472

1  PATRICK CUMMINS (SBN: 294400)
2  Patrick@CumminsIP.com
   Cummins IP PLLC
3  3426 Pepperhill Rd.
4  Lexington, KY 40502
5  Telephone: 502.445.9880
   *Counsel for Plaintiff,*
6    *DS Advanced Enterprises, Ltd.*
7

8

9            **UNITED STATES DISTRICT COURT**
10         **SOUTHERN DISTRICT OF CALIFORNIA**
11

12 | DS ADVANCED ENTERPRISES, LTD., | Case No.: 3:23-cv-01335-CAB-JLB
13 |   a corporation,
14 |        *Plaintiff,*  | **Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b) Regarding Judgement**
15 | v.
   | LOWE'S HOME CENTERS, LLC,
16 |   a corporation,
17 |
18 |        *Defendant.*  | Date:    December 2, 2024
   |                       | Judge:  Hon. Cathy Ann Bencivengo
19 |
20 |                       | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT
21

22

23

24

25

26

27

28
   *Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)*
   *Honorable Judge Burkhardt*
   — 1 —          *Case No.: 3:23-cv-01335-CAB-JLB*

I, Patrick Cummins, declare as follows:

1. I am over the age of eighteen and not a party to this action. I am an attorney licensed to practice law before all Courts of the State of California and am admitted to practice before the Southern District of California. I am counsel at Cummins IP PLLC.

2. I am the attorney of record for the Plaintiff in this matter. I have personal knowledge of the facts stated in this Declaration and, if called to testify, could and would testify competently and under oath to these facts.

3. Exhibit A is a true and correct copy of a page from Ledvance LLC's reply brief in another action involving Plaintiff's Patent. I annotated that same page and included an excerpt of the annotated page in the attached brief.

4. In their reply brief, Ledvance admitted to having a "metal housing" in their accused product. *DS Advanced Enterprises, Ltd. v. Ledvance LLC*, Case No. 1:23-cv-11155-JEK, Doc. No. 82 at pg. 12, lines 9-20 (D. Mass. September 3, 2024).

5. Ledvance's admission was not available until September 3, 2024. Plaintiff's Opposition to Lowe's summary judgment was filed on July 8, 2024. See ¶ 4, *supra*.

6. Ledvance's admission is a new fact that supports granting Plaintiff's Motion per Fed. R. Civ. P. § 59(e) and §52(b).

7. I created the diagrams in the attached reply brief. The diagram at page 5 includes an image I captured of Lowe's Accused Product's reflective paper, diffuser lens, hoop, and accused metal housing. The Accused Product is sold with the diffuser lens and reflective paper disposed within, and housed by, the accused metal housing.

In accordance with 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct.

*Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's
Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)*
*Honorable Judge Burkhardt*
*Case No.: 3:23-cv-01335-CAB-JLB*

*— 1 —*

1  Dated: November 25, 2024

2  */s/ Patrick D. Cummins*,

3  Patrick D. Cummins

4  Cummins IP Law PLLC

5  3426 Pepperhill Rd.

6  Lexington, KY 40502

7  Telephone: (502) 445-9800

8  Patrick@CumminsIP.com

9  *Attorney for Plaintiff,*

10  *DS Advanced Enterprises, Ltd.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  *Declaration of Patrick Cummins in Support of Plaintiff's Reply in Support of Plaintiff's*
*Motion Pursuant to Fed. R. Civ. P. § 59(e) and §52(b)*
*Honorable Judge Burkhardt*
— 2 —    *Case No.: 3:23-cv-01335-CAB-JLB*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT A

1  LED PCB assembly, LED strip, wire connectors, and ground wires. Defendant has

2  demonstrated the absurdity of this characterization of "metal housing" in § (II)(A),

3  *supra*. Accepting the specification's definition of the "metal housing" as "a base of

4  the complete fixture," Plaintiff's argument regarding the output wires collapses

5  entirely. *See* Dkt 78 at 12 (relying on "metal housing" including the complete fixture).

6       Furthermore, Plaintiff's pleadings make it clear that none of the Ledvance

7  Accused Products use a twist connector to connect the output wires of the junction

8  box to the metal housing under the plain and ordinary meaning of "metal housing".

9  For example, below is an image of Ledvance Product 62884 from the FAC. Dkt. 27

10  at 34. The image shows wires from the junction box connecting to the LED strip

11  through a small hole near the center of the metal housing. These are the only wires

12  connecting between the junction box and the housing. They are never shown with

13  and do not utilize any form of wire connector, let alone a twist connector.



20       The FAC demonstrates this fact over and over again with images for each

22                                         9

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
3  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
4  Facsimile:  (619) 696-1410

5  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
6  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
7  101 Park Avenue, 28th Floor
   New York, NY 10178
8  Telephone: (212) 643-7000

9  Attorneys for Defendant LOWE'S HOME
   CENTERS, LLC

10

11             **UNITED STATES DISTRICT COURT**

12             **SOUTHERN DISTRICT OF CALIFORNIA**

13

| 14 | DS ADVANCED ENTERPRISES, LTD., a corporation, | Case No. 3:23-cv-01335-CAB-JLB |
|---|---|---|
| 15 | | **NOTICE OF MOTION AND DEFENDANT'S MOTION TO ENFORCE THE PROTECTIVE ORDER AND FOR SANCTIONS** |
| 16 | Plaintiff, | |
| 17 | v. | |
| 18 | LOWE'S HOME CENTERS, LLC, a Corporation, | Date:      October 14, 2024 Judge;   The Honorable Jill L. Burkhardt |
| 19 | Defendants. | |
| 20 | | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| 21 | | |

22

23        **TO THE PARTIES AND THEIR COUNSEL OF RECORD**

24        **PLEASE TA E NOTICE** that on October 14, 2024, or as soon thereafter as

25  the matter may be heard before the Honorable Jill L. Burkhardt in Courtroom 15A of

26  the United States District Court for the Southern District of California, located at 333

27  West Broadway, San Diego, California 92101, DEFENDANT LOWE'S HOMES

28  CENTERS, LLC ("LHC") will, and hereby does, move for an order enforcing the

HIGGS FLETCHER &
MACK LLP
                                                    Case No. 3:23-cv-01335-CAB-JLB

Appx478

1 protective order and for sanctions (1) Awarding LHC reasonable attorneys' fees and
2 expenses incurred as a result of the DS Advanced violation of the Protective Order,
3 including all attorneys' fees and expenses incurred in connection with this Motion;
4 (2) Precluding DS Advanced from alleging commercial success, copying, or
5 skepticism for any purpose in this litigation. Alternatively: Precluding DS Advanced
6 from using LHC_000795-812 or LHC_000841 or any of the information contained in
7 those documents to assert commercial success, copying, or skepticism for any purpose
8 in this litigation; and (3) granting such other and further relief the Court deems just
9 and proper.

10 The motion is made pursuant to Federal Rules of Civil Procedure 37(b) on the
11 grounds that Plaintiff violated the terms of the Protective Order entered by this Court
12 at ECF No. 33.

13 This Motion is based on Notice of Motion, Memorandum of Law in Support of
14 its Motion to Enforce the Protective Order and for Sanctions ("Motion"), Declaration
15 of Scott D. Simpson in Support of Motion, and all exhibits attached thereto,
16 Certificate of Compliance under Local 26.1(b), all pleadings and papers filed in this
17 action, and such other and further matters as the Court may consider.

18 Dated: September 9, 2024          HIGGS FLETCHER & MACK LLP

19

20

21                                    By:  ___/s/ Peter S. Doody_____
                                          PETER S. DOODY
22

23                                         SILLS CUMMIS & GROSS P.C.
24                                         Scott D. Stimpson (Pro Hac Vice)
                                           Katherine M. Lieb (Pro Hac Vice)
25                                         Linxuan Yan (Pro Hac Vice)
26
                                           Attorneys for Defendant LOWE'S HOME
27                                         CENTERS, LLC
28

HIGGS FLETCHER &
MACK LLP                                  2          Case No. 3:23-cv-01335-CAB-JLB

Appx479

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
3  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
4  Facsimile:   (619) 696-1410

5  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
6  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
7  101 Park Avenue
   New York, NY 10178
8  Telephone: (212) 643-7000

9  Attorneys for Defendant LOWE'S HOME
   CENTERS, LLC

10

11                **UNITED STATES DISTRICT COURT**

12             **SOUTHERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  DS ADVANCED ENTERPRISES, LTD., a corporation, | Case No. 3:23-cv-01335-CAB-JLB |
| 15 | **MOTION TO ENFORCE THE PROTECTIVE ORDER AND FOR SANCTIONS UNDER SEAL** |
| 16         Plaintiff, | |
| 17      v. | Date:   October 14, 2024 Judge: The Honorable Jill L. Burkhardt |
| 18  LOWE'S HOME CENTERS, LLC, a Corporation, | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| 19         Defendants. | |

20

21

22

23

24

25

26

27

28

HIGGS FLETCHER &
MACK LLP

12573346.v9

Appx480

1

## TABLE OF CONTENTS

2   I.    PRELIMINARY STATEMENT ..... 1

3   II.   STATEMENT OF FACTS . ... 2

4   III.  ARGUMENT .. 5

5       A. DS Advanced Violated The Protective Order And Tried To Mislead
6       Counsel For LHC About The Violation ... 5

7       B. The Court "Must" Award Fees And Costs Incurred As A Result Of DS
8       Advanced's Violation Of The Protective Order ... 6

9       C. The Court Should Preclude DS Advanced From Alleging Commercial
10      Success, Copying, Or Skepticism For Any Purpose In This Litigation . 7

11   IV.  CONCLUSION ...........................10

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Appx481

1

## TABLE OF AUTHORITIES

2

**CASES**

3   *Apple, Inc. v. Samsung Elecs. Co.,*
4       No. 5:11-cv-01846 (LHK) (PSG), 2014 WL 12596470 (N.D. Cal. Jan. 29, 2014)
        ..........................................................................................................................5, 7

5   *Brown Bag Software v. Symantec Corp.,*
6       960 F.2d 1465 (9th Cir. 1992)........................................................................8

7   *Dairy, LLC v. Milk Moovement, Inc.,*
        No. 2:21-CV-02233 (WBS) (AC), 2022 WL 17994355, (E.D. Cal. Dec. 29, 2022)
8       ...............................................................................................................................6

9   *Doherty v. State Farm Gen. Ins. Co.,*
        No. CV-19-1963-JFW (PLAx), 2020 WL 2510642 (C.D. Cal. Mar. 4, 2020)......5

10  *Grimes v. City & Cnty. of S.F.,*
        951 F.2d 236 (9th Cir. 1991)......................................................................5, 7
11

12  *In re Incretin Mimetics Prod. Liab. Litig.,*
        No. 13-MD-2452 (AJB)(MDD), 2015 WL 1499167 (S.D. Cal. Apr. 1, 2015) ......8

13  *Intel Corp. v. VIA Techs., Inc.,*
14      198 F.R.D. 525 (N.D. Cal. 2000) .....................................................................8

15  *Koch v. Greenberg,*
        No. 07 CV 9600 (BSJ)(DF), 2011 WL 4485975 (S.D.N.Y. Sept. 28, 2011)......8

16  *Life Techs. Corp. v. Biosearch Techs., Inc.,*
        No. C-12-00852 WHA (JCS), 2012 WL 1600393 (N.D. Cal. May. 7, 2012)..........6
17

18  *Roadway Exp., Inc. v. Piper,*
        447 U.S. 752 (1980)..........................................................................................9

19  *Volvo Penta of the Americas, LLC v. Brunswick Corp.,*
        81 F.4th 1202 (Fed. Cir. 2023) ........................................................................9
20

21  **RULES**

    Fed. R. Civ. P. 37(b)(2)(A) ...............................................................................6
22

23  Fed. R. Civ. P. 37(b)(2)(A)(ii) .........................................................................10

    Fed. R. Civ. P. 37(b)(2)(C) ...............................................................................8
24

25

26

27

28

HIGGS FLETCHER &
MACK LLP

ii

12573346.v9

Appx482

1    Defendant Lowe's Home Centers, LLC ("LHC") submits this Memorandum of
2 Law in Support of its Motion to Enforce the Protective Order and for Sanctions
3 against DS Advanced Enterprises, Ltd. ("DS Advanced"), pursuant to Rule 37(b) of
4 the Federal Rules of Civil Procedure.

5 **I.    PRELIMINAR  STATEMENT**

6    DS Advanced and its counsel violated this Court's Protective Order by
7 disclosing LHC's highly sensitive information, including internal confidential
8 product information, as well as LHC's sales, cost, and profit data, to the President of
9 DS Advanced – a competitor selling lighting products directly to North American
10 customers.

11    On March 31, 2024, this Court entered the Protective Order.  Under its terms,
12 any information designated CONFIDENTIAL – FOR COUNSEL ONLY may be
13 viewed, as relevant here, "only by counsel . . . of the receiving party."  Relying on the
14 Protective Order, LHC produced two documents, LHC_000795-812 and
15 LHC_000841.  These documents disclosed, among other things, LHC's sales, costs,
16 and profit information, and internal proposals for products that would compete with
17 DS Advanced products, along with estimated sales and profit margins for those
18 products.  Both documents were designated CONFIDENTIAL – FOR COUNSEL
19 ONLY.

20    Upon reviewing discovery responses verified by the President of DS Advanced,
21 counsel for LHC became concerned that confidential information may have been
22 improperly disclosed to DS Advanced.  In response to inquiries from LHC counsel,
23 and only after initially claiming that no Protective Order violations had occurred,
24 counsel for DS Advanced admitted that this information had been disclosed.

25    The seriousness of the violation – disclosing sensitive sales, costs, and profit
26 data, and proposals for competing products with associated profits margins, to a
27 competitor – requires correspondingly serious sanctions to remedy the harm caused

28

1  by the improper disclosure, and to deter DS Advanced and others from Protective
2  Order violations in the future.

3      The improper disclosures were made in connection with alleged secondary
4  considerations of non-obviousness (specifically, alleged commercial success,
5  copying, and skepticism). Accordingly, LHC submits that the appropriate
6  sanctions, tied to the circumstances of the improper disclosure, should be:

7
8      • Awarding LHC reasonable attorneys' fees and expenses incurred as a result
         of the DS Advanced's violation of the Protective Order, including all fees
         and costs related to this motion, as required by Fed. R. Civ. P. 37(b)(2)(C);
9        and

10     • Precluding DS Advanced from alleging commercial success, copying, or
11        skepticism for any purpose in this litigation. (DS Advanced may attempt
          dispute obviousness allegations on all other grounds.) Alternatively:
12        Precluding DS Advanced from using LHC_000795-812 or LHC_000841,
13        or any of the information contained in those documents, to assert
          commercial success, copying, or skepticism for any purpose in this
14        litigation.
15

16  **II.   STATEMENT OF FACTS**

17     On March 20, 2024, Plaintiff DS Advanced and Defendant LHC submitted a
18  Joint Motion to Enter Protective Order ("Joint Motion"). ECF No. 32. On March 21,
19  2024, Magistrate Judge Jill L. Burkhardt entered the resulting Protective Order. ECF
20  No. 33 ("Protective Order").

21     The Protective Order permits parties to designate materials as either
22  "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" and provides
23  that any materials designated as such "must not be disclosed by the receiving party to
24  anyone other than those persons designated within this Order" and must be handled
25  in the manner described in the Order. ECF No. 33,   8. Consistent with the stipulation
26  of the parties, the Protective Order requires that any information designated
27  CONFIDENTIAL – FOR COUNSEL ONLY "must be viewed only by counsel (as

28

1  defined in Paragraph 3) of the receiving party, and by independent experts or
2  consultants under the conditions set forth in this Paragraph." *Id.*  9.

3      In response to DS Advanced' Requests for Production of Documents, on April
4  4, 2024, LHC produced the two documents at issue in the instant motion,
5  LCH_000795-812 and LHC_000841.   *See* Declaration of Scott D. Simpson
6  ("Simpson Decl."), Exhibit A (LHC_000795-812) and Exhibit B (LHC_000841).
7  LHC_000795-812 is an internal presentation containing diagrams of certain proposed
8  products.  The final page of the presentation, LHC_000812, contained a diagram of
9  one of those products, as well as an estimate of total sales and expected gross margin
10  percentage. LHC_000841 is an excel spreadsheet containing detailed sales, costs, and
11  profit data for LHC's products, from July 2022 through March 2024, including gross
12  revenue, net revenue, costs of goods sold, total units sold, and net margins, among
13  other things.

14      On July 19, 2024, months after the Protective Order was entered by the Court,
15  DS Advanced served Supplemental Interrogatory Responses, verified by David
16  Sherman, its President. Simpson Decl., Exhibit C ("Supplemental Responses"). The
17  Supplemental Responses set forth alleged evidence of commercial success of the
18  purported invention, and disclosed the highly sensitive sales, costs, and profit data.
19  Specifically, it stated:

20      •

21

22

23

24      The Supplemental Responses also set forth alleged evidence of copying and
25  skepticism of the purported invention. *Id.* at 16-17, 22-23. In support, DS Advanced
26  reproduced a diagram of a proposed product (including "Image from LHC_000795"),
27  and disclosed estimated sales data for that product, as well as the expected profit
28  margins. *Id.* Specifically, the Supplemental Response stated:

Material omitted refers to Lowe's sales data.   Appx485

1   •

2

3

4   LHC counsel wrote to counsel for DS Advanced to confirm none of this

5   information was shown to DS Advanced:

6   Patrick, *can you please confirm that no LHC "Counsel Only"*
7   *documents or information have been shown to your client (or had their*
    *substance otherwise disclosed, orally or by other means, to your*
8   *client)?*  We just want to be certain this is no misunderstanding in this
9   regard.

10  Simpson Decl., Exhibit D (emphasis added).  In response, DS Advanced counsel

11  advised only that a "catalog snippet" had been disclosed and that there had been no

12  violation of the Protective Order:

13  *I have not shown my client any of the "counsel only" documents you*
14  *produced*, except for the catalog snippet in the interrogatory  12
    response.   I've discussed damages expectations in view of the
15  spreadsheets you produced, but *never showed my client the*
16  *spreadsheets*. Otherwise, I believe *I'm complying with the counsel only*
    *requests*.  Hopefully you are also reciprocating.
17

18  *Id.* (emphasis added). Thus, in response to a direct question from LHC counsel as to

19  whether any of the highly confidential information in the LHC documents had been

20  disclosed "orally or by other means," DS Advanced counsel did not reveal that any of

21  the sales, costs, or profit data had been disclosed; indeed, DS Advanced counsel tried

22  to throw LHC counsel off the scent by not directly answering the question, and stating

23  that the "documents" themselves had not been disclosed.

24      Had counsel for LHC accepted this response, LHC would not have known of

25  the Protective Order violations.  Counsel for LHC, however, followed up:

26  You say you did not show your client the spreadsheets.  Are we correct
    that none of the sales numbers were disclosed to your client, directly or
27  indirectly

28

Material omitted refers to Lowe's sales data.

Appx486

1  *Id.* Only then did counsel for DS Advanced admit that his client "reviewed the
2  interrogatory response  12," including all the LHC highly confidential information
3  contained in it. *Id.*

4  **III.   ARGUMENT**

5         Rule 37 of the Federal Rules of Civil Procedure "authorizes the Court to impose
6  sanctions when a party has violated a discovery order, including a protective order
7  issued pursuant to Rule 26." *Doherty v. State Farm Gen. Ins. Co.*, No. CV-19-1963-
8  JFW (PLAx), 2020 WL 2510642, at *5 (C.D. Cal. Mar. 4, 2020); *see also* Fed. R.
9  Civ. P. 37(b)(2)(A); *Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-cv-01846 (LHK)
10  (PSG), 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014) ("[T]he Ninth Circuit
11  has repeatedly held that Rule 37 'provide[s] comprehensively for enforcement of all
12  [discovery] orders, including Rule 26(c) protective orders.'") (citations omitted)).

13         The Court "'may issue further just orders' in response to violations of
14  discovery orders, including the judicial establishment of facts, striking certain
15  evidence or defenses, or other appropriate sanctions for various discovery
16  violations." *See Apple, Inc.*, 2014 WL 12596470, at *5 (citing Fed. R. Civ. P. 37).
17  The "ideal" sanction is one that furthers "both the remedial and deterrent goals of
18  sanctions, as the need for one is not diminished by a need for the other." *Id.* at *6;
19  *see also Grimes v. City & Cnty. of S.F.*, 951 F.2d 236, 240-241 (9th Cir. 1991)
20  ("The very purpose of Rule 37 is to [e]nsure compliance with discovery orders . . .
21  the court may, within reason, use as many and as varied sanctions as are necessary
22  to hold the scales of justice even.") (internal quotations omitted)).

23              **A.    DS ADVANCED VIOLATED THE PROTECTIVE ORDER AND
                         TRIED TO MISLEAD COUNSEL FOR LHC ABOUT THE
24                       VIOLATION**

25         The Protective Order is clear and unambiguous in its requirement that any
26  document designated as "CONFIDENTIAL – FOR COUNSEL ONLY" must be
27  viewed "only by counsel . . . of the receiving party," and "independent experts or
28  consultants" under the conditions outlined in the Protective Order. ECF No. 33,  9;

HIGGS FLETCHER &
MACK LLP
                                              5

12573346.v9

Appx487

1 *see also, e.g., id.,* 8 (confidential information "must not be disclosed by the receiving
2 party to anyone other than those designated in this Order.").

3      There is no dispute that counsel for DS Advanced disclosed contents of
4 LHC_000795-812 and LHC_000841, both designated as CONFIDENTIAL – FOR
5 COUNSEL ONLY, to Mr. Sherman, the President of LHC's competitor, DS
6 Advanced. The improperly disclosed information included a diagram showing a
7 proposed product, a recitation of estimated revenue figures and profits, and LHC's
8 actual revenue numbers, including gross earning revenue and net profits. Simpson
9 Decl., Exhibit C at 15-17, 22-23.

10      DS Advanced counsel was far less than candid about the improper disclosure.
11 In response to a direct question by LHC counsel as to whether the documents had
12 been disclosed or had their "substance otherwise disclosed, orally or by other means,"
13 DS Advanced counsel did not reveal the disclosures, instead stating: "I believe I'm
14 complying with the counsel only requests." Simpson Decl., Exhibit D. It was only
15 after the persistence of LHC counsel that it was confirmed these improper disclosures
16 were made. *Id.*

17
**B.   THE COURT MUST A ARD FEES AND COSTS INCURRED**
18 **AS A RESULT OF DS ADVANCED'S VIOLATION OF THE**
**PROTECTIVE ORDER**
19
      LHC is entitled to attorneys' fees and expenses incurred as a result of DS
20
Advanced's violation of the Protective Order. *See* Fed. R. Civ. P. 37(b)(2)(C) (court
21
"must" award fees absent substantial justification or special circumstances); *Dairy,*
22
*LLC v. Milk Moovement, Inc.*, No. 2:21-CV-02233 (WBS) (AC), 2022 WL 17994355,
23
at *2 (E.D. Cal. Dec. 29, 2022) ("Fed. R. Civ. P. 37(b)(2)(C) makes clear that absent
24
certain special circumstances, payment of reasonable expenses, including attorneys'
25
fees, is mandatory."); *Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852
26
WHA (JCS), 2012 WL 1600393, at *8 (N.D. Cal. May. 7, 2012) ("[T]he Court must
27
award reasonable expenses, including attorney's fees, incurred as a result of the
28

1   violation, 'unless the noncompliance was substantially justified or other
2   circumstances make an award of expenses unjust.'" (citation omitted)); *Apple, Inc.*,
3   2014 WL 12596470, at *10 (" uinn Emanuel shall reimburse Apple, Nokia, and their
4   counsel for any and all costs and fees incurred in litigating this motion and the
5   discovery associated with it, as required by Rule 37 in the absence of 'substantial
6   justification' or other showing of 'harmlessness,' neither of which the court finds
7   here.").

8       Here, there is no dispute that counsel for DS Advanced shared information that
9   LHC designated CONFIDENTIAL – FOR COUNSEL ONLY with Mr. Sherman, the
10  President of LHC's competitor, who was not authorized to view that information.
11  There is no justification for DS Advanced's violation of the Protective Order.  LHC
12  is entitled to all attorneys' fees and costs for DS Advanced's unjustified violation of
13  the Protective Order.

14      **C.**   **THE COURT SHOULD PRECLUDE DS ADVANCED FROM**
              **ALLEGING COMMERCIAL SUCCESS  COP  ING OR**
15             **S  EPTICISM FOR AN   PURPOSE IN THIS LITIGATION**

16       Counsel for DS Advanced disclosed highly sensitive sales, cost, and profit data,
17  and diagrams of proposed products with their estimated sales and expected profit
18  margins, to the President of DS Advanced.  This LHC competitor thus now possesses
19  the ability to use that information, willfully or otherwise, to compete in selling light
20  fixtures.  It could, for example, use the revenue and pricing data to inform its own
21  pricing and purchase decisions.  The disclosure of this information spells irreparable
22  harm to LHC, as the information cannot be erased form Mr. Sherman's memory, and
23  as President, Mr. Sherman is surely deeply involved with purchasing, pricing, and all
24  profit analyses at DS Advanced.  The sanctions should fit the seriousness of the
25  situation and be tied to the context of the inappropriate conduct.  *See Apple, Inc.*,
26  2014 WL 12596470, at *6; *Grimes*, 951 F.2d at 240–241.

27       Courts recognize that disclosure of sensitive information to a competitor can
28  be uniquely harmful.  *See, e.g.*, *In re Incretin Mimetics Prod. Liab. Litig.*, No. 13-

1  MD-2452 (AJB)(MDD), 2015 WL 1499167, at *10 (S.D. Cal. Apr. 1, 2015)
2  (addressing disclosure to competitor: "[s]trict compliance with the terms of the
3  protective order is anticipated, and required in cases such as this where multiple
4  market competitors are engaged in litigation."); *Intel Corp. v. VIA Techs., Inc.*, 198
5  F.R.D. 525, 530-31 (N.D. Cal. 2000) (finding that disclosure to others involved in
6  "competitive decisionmaking" "could have dire consequences"); *see also Brown Bag*
7  *Software v. Symantec Corp.*, 960 F.2d 1465, 1471 (9th Cir. 1992) (addressing harm
8  of disclosing confidential information to those involved in "competitive marketing
9  decisions").

10  No amount of money can compensate LHC for the damages from the
11  disclosure, and an evidentiary sanction is appropriate. *See* Fed. R. Civ. P.
12  37(b)(2)(A)(ii) (authorizing preclusion sanction); *Koch v. Greenberg*, No. 07 CV
13  9600 (BSJ)(DF), 2011 WL 4485975, at *4 (S.D.N.Y. Sept. 28, 2011) (because
14  plaintiff violated the protective order, he is to be "precluded from introducing the
15  Fireman's Fund Documents on any substantive motion in this case or at trial.").

16  Because DS Advanced's transgressions were in connection with efforts to
17  support commercial success, copying, and skepticism, LHC respectfully requests
18  that DS Advanced be precluded from alleging commercial success, copying, or
19  skepticism for any purpose in this litigation.[1]  LHC believes such a sanction is fully
20  appropriate under these circumstances, where (1) LHC's highly confidential
21  information was disclosed to a competitor; (2) the disclosure was intentional and
22  deliberate; (3) there was a lack of candor about the improper disclosure and an
23  effort to conceal it; and (4) the recipient had not even been required to read the
24  Protective Order or sign the undertaking that would have been required for
25  disclosure of lower "CONFIDENTIAL" materials to him.  Should the Court prefer
26  a lesser sanction, then LHC proposes that the Court preclude DS Advanced from

27

28  [1] DS Advanced may attempt to dispute obviousness allegations on all other grounds.

1  using LHC_000795-812 or LHC_000841 to assert commercial success, copying,
2  or skepticism for any purpose in this litigation (limiting the sanction to these two
3  documents only).

4        The appropriate sanction should satisfy the dual purpose of Rule 37,
5  attempting to both remedy the harm caused by the disclosure and deter other
6  Protective Order violations.  *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 763-64
7  (1980) ("Rule 37 sanctions must be applied diligently both to penalize those whose
8  conduct may be deemed to warrant such a sanction, and to deter those who might be
9  tempted to such conduct in the absence of such a deterrent.").  Neither of these
10  alternative sanctions seek to preclude any infringement or willfulness claims of DS
11  Advanced; nor do they seek to prevent DS Advanced from challenging any of the
12  defenses or claims raised by LHC.  Indeed, allegations of commercial success,
13  copying, and skepticism are "secondary" considerations related to obviousness (*see*
14  *Volvo Penta of the Americas, LLC v. Brunswick Corp.*, 81 F.4th 1202, 1212-13 (Fed.
15  Cir. 2023)), and precluding DS Advanced from making these arguments (or
16  precluding use of the two documents in questions) has no impact on DS Advanced
17  challenging the disclosures of the prior art or the obviousness combinations
18  themselves.

19  / / /
20  / / /
21  / / /
22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

HIGGS FLETCHER &
MACK LLP

9

12573346.v9

1  **IV.  CONCLUSION**

2      For the foregoing reasons, LHC respectfully requests that the Court grant

3  LHC's Motion and enter an order:

4     • Awarding LHC reasonable attorneys' fees and expenses incurred as a result
5      of the DS Advanced's violation of the Protective Order, including all
    attorneys' fees and expenses incurred in connection with this Motion.
6
7     • Precluding DS Advanced from alleging commercial success, copying, or
    skepticism for any purpose in this litigation. Alternatively: Precluding DS
8      Advanced from using LHC_000795-812 or LHC_000841, or any of the
    information contained in those documents, to assert commercial success,
9      copying, or skepticism for any purpose in this litigation.

10     • Granting such other and further relief the Court deems just and proper.

11

12  Dated: September 9, 2024       Respectfully submitted,
13

14                      HIGGS FLETCHER & MACK LLP

15                      By:    */s/ Peter S. Doody*
16                           PETER S. DOODY

17                           SILLS CUMMIS & GROSS P.C.
18                           Scott D. Stimpson (Pro Hac Vice)
                         Katherine M. Lieb (Pro Hac Vice)
19                           Linxuan Yan (Pro Hac Vice)

20                           Attorneys for Defendant LOWE'S HOME
21                           CENTERS, LLC

22

23

24

25

26

27

28

                                  10

12573346.v9

Appx492

1

### **CERTIFICATE OF SERVICE**

2

The undersigned hereby certifies that a true and correct copy of the foregoing

3 document has been served on September 9, 2024, to all counsel of record, who are

4 deemed to have consented to electronic service via the Court's CM/ECF system. I

5 declare under penalty of perjury of the laws of the United States that the foregoing is

6 true and correct.

7
*/s/ Peter S. Doody*
Peter S. Doody

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12573346.v9

Appx493

1  PETER S. DOODY (Bar No. 127653)
   Doody@higgslaw.com
2  HIGGS FLETCHER & MACK LLP
   401 West A Street, Suite 2600
3  San Diego, California 92101-7910
   Telephone:  (619) 236-1551
4  Facsimile:   (619) 696-1410

5  SCOTT D. STIMPSON (Pro Hac Vice)
   KATHERINE M. LIEB (Pro Hac Vice)
6  LINXUAN YAN (Pro Hac Vice)
   SILLS CUMMIS & GROSS P.C.
7  101 Park Avenue
   New York, NY 10178
8  Telephone: (212) 643-7000

9  Attorneys for Defendant LOWE'S HOME
   CENTERS, LLC
10

11          **UNITED STATES DISTRICT COURT**

12          **SOUTHERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14 DS ADVANCED ENTERPRISES, LTD., a corporation, | Case No. 3:23-cv-01335-CAB-JLB |
| 15 | **DECLARATION OF COMPLIANCE    ITH CIVIL RULE** |
| 16    Plaintiff, | **.   IN SUPPORT DEFENDANT'S MOTION TO ENFORCE THE** |
| 17    v. | **PROTECTIVE ORDER AND FOR SANCTIONS** |
| 18 LOWE'S HOME CENTERS, LLC, a Corporation, | Date:    October 14, 2024 Judge:  The Honorable Jill L. Burkhardt |
| 19    Defendants. | |
| 20 | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |
| 21 | |

22

23          I, Scott D. Stimpson, declare as follows: pursuant to 28 U.S.C.  1746:

24          1.      I am a Member at the law firm of Sills Cummis & Gross P.C. ("Sills

25  Cummis"), 101 Park Avenue, 28th Floor, New York, New York 10178, attorneys for

26  defendant Lowe's Home Centers ("LHC") in this litigation. I submit this declaration

27  in support of LHC's Motion to Enforce the Protective Order and for Sanctions. I have

28  personal knowledge of the facts set forth herein and can testify competently thereto.

HIGGS FLETCHER &
MACK LLP

12542383.1                                    Case No. 3:23-cv-01335-CAB-JLB

1    2.    On July 19, 2024, months after the Protective Order was entered by the
2  Court, DS Advanced Enterprises, Ltd ("DS Advanced") served Supplemental
3  Interrogatory Responses, verified by David Sherman, its president, on LHC.  Upon
4  reviewing these responses, I became concerned that confidential information may
5  have been improperly disclosed to DS Advanced.

6    3.    The Protective Order entered at ECF No. 33 did not authorize Mr.
7  Sherman to view information from LHC_000795 and LHC_000841, designated by
8  LHC as CONFIDENTIAL – FOR COUNSEL ONLY, that were reproduced and
9  summarized in the Supplemental Interrogatory Responses.

10    4.    On July 29, 2024, I emailed counsel for DS Advanced, informing him
11  that DS Advanced violated the Protective Order.  In response to my inquiries, and
12  only after initially claiming that no Protective Order violations had occurred, counsel
13  for DS Advanced admitted that this information had been disclosed.

14    5.    On August 27, 2024, I emailed counsel for DS Advanced to set up a meet
15  and confer regarding DS Advanced's violation of the Protective Order.

16    6.    On September 3, 2024, I met and conferred with counsel for DS
17  Advanced telephonically.  I explained that DS Advanced's disclosure of information
18  contained in LHC_000795 and LHC_000841 in the Supplemental Interrogatory
19  Responses, verified by Mr. Sherman, constituted a violation of the Protective Order.
20  Counsel for DS Advanced and I discussed some remedial measures but were unable
21  to come to an agreement.

22  / / /
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

HIGGS FLETCHER &
MACK LLP

12542383.1                               2                  Case No. 3:23-cv-01335-CAB-JLB

1    7.    Pursuant to Civil Local Rule 26.1, I telephonically met and conferred

2  with counsel for DS Advanced concerning its violation of the Protective Order.

3        I declare under penalty of perjury that the foregoing is true and correct.

4

5  Dated: September 9, 2024                    */s/ Scott D. Stimpson*
                                              Scott D. Simpson
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Appx496

1   PETER S. DOODY (Bar No. 127653)
    Doody@higgslaw.com
2   HIGGS FLETCHER & MACK LLP
    401 West A Street, Suite 2600
3   San Diego, California 92101-7910
    Telephone:   (619) 236-1551
4   Facsimile:   (619) 696-1410

5   SCOTT D. STIMPSON (Pro Hac Vice)
    KATHERINE M. LIEB (Pro Hac Vice)
6   LINXUAN YAN (Pro Hac Vice)
    SILLS CUMMIS & GROSS P.C.
7   101 Park Avenue
    New York, NY 10178
8   Telephone: (212) 643-7000

9   Attorneys for Defendant LOWE'S HOME
    CENTERS, LLC

10

11              **UNITED STATES DISTRICT COURT**

12              **SOUTHERN DISTRICT OF CALIFORNIA**

13

| | |
|---|---|
| 14  DS ADVANCED ENTERPRISES, LTD., a corporation, | Case No. 3:23-cv-01335-CAB-JLB |
| 15 | **DECLARATION OF SCOTT D. STIMPSON IN SUPPORT** |
| 16      Plaintiff, | **DEFENDANT'S MOTION TO ENFORCE THE PROTECTIVE** |
| 17      v. | **ORDER AND FOR SANCTIONS** |
| 18  LOWE'S HOME CENTERS, LLC, a Corporation, | Date:   October 14, 2024 |
| 19      Defendants. | Judge:   The Honorable Jill L. Burkhardt |
| 20 | PER CHAMBER RULES, NO ORAL ARGUMENT UNLESS SEPARATELY |
| 21 | ORDERED BY THE COURT |

22

23          I, Scott D. Stimpson, declare as follows:

24          1.      I am a Member of the law firm Sills Cummis & Gross P.C., 101 Park

25   Avenue, 28th Floor, New York, New York 10178, attorneys for defendant LOWE'S

26   HOME CENTERS, LLC ("LHC") in this litigation.  I submit this declaration in

27   support of LHC's Motion to Enforce the Protective Order and for Sanctions. I have

28   personal knowledge of the facts set forth herein and can testify competently thereto.

HIGGS FLETCHER &
MACK LLP

1    2.    A true and correct copy of LHC_000795, previously produced in this
2  litigation and designed as CONFIDENTIAL – FOR COUNSEL ONLY, is attached
3  hereto as **E   i it A**.

4    3.    A true and correct copy of LHC_000841, previously produced in this
5  litigation and designed as CONFIDENTIAL – FOR COUNSEL ONLY, is attached
6  hereto as **E   i it B**.

7    4.    A true and correct copy of the relevant portions of DS Advanced
8  Enterprises, Ltd.'s ("DS Advanced") Supplemental Objections and Responses to
9  Defendant's Second Set of Interrogatories to Plaintiff from June 5, 2024, is attached
10  hereto as **E   i it C**.

11    5.    A true and correct copy of email communications from myself and
12  counsel for DS Advanced is attached hereto as **E   i it D**.

13    I declare under penalty of perjury that the foregoing is true and correct.

14

15  Dated: September 9, 2024          */s/ Scott D. Stimpson*
16                            Scott D. Stimpson

17

18

19

20

21

22

23

24

25

26

27

28

Appx498

# Exhibit A

# FILED UNDER SEAL

[Lowe's Confidential Internal Product Presentation (LHC_000795-812) at Appx758-764]

# Exhibit B

# FILED

# UNDER SEAL

[Lowe's Confidential Sales Data Spreadsheet (LHC_000841-887), excertped at Appx767]

# Exhibit C

# FILED
# UNDER SEAL

[Excerpts from Supplemental Response to Interrogatory No. 12, at Appx768-778

# Exhibit D

| | |
|---|---|
| **From:** | Scott D. Stimpson |
| **Sent:** | Tuesday, July 30, 2024 12:25 PM |
| **To:** | Patrick Cummins |
| **Cc:** | Katherine Lieb; Linxuan Yan |
| **Subject:** | RE: LHC AEO documents |

Patrick:

Of course, this is a violation of the Protective Order. That Order states in Paragraph 9 that only counsel and experts can see material designated "Counsel Only" and Paragraph 8 states that this information "must not be disclosed by the receiving party to anyone other than those designated in this Order…." There are no circumstances under which you are allowed to disclose any such information to your client, and we consider this a serious violation of the Court's Protective Order.

There was nothing "indirect" about this disclosure we can see – you wrote down our sales information in your response to interrogatory 12, for example, and gave it to your client to review.

We are currently assessing the situation and will need to address this with out client.

Scott


**Scott D. Stimpson**
Chairman of the Intellectual Property Group

 Sills Cummis & Gross P.C.

**website | bio | vCard | newsroom | email** 

101 Park Avenue, 28th Floor, New York, NY 10178
p (212) 500-1550 | f (212) 643-6500  **map**


**From:** Patrick Cummins <patrick@cumminsip.com>
**Sent:** Tuesday, July 30, 2024 10:43 AM
**To:** Scott D. Stimpson <sstimpson@sillscummis.com>
**Cc:** Katherine Lieb <klieb@sillscummis.com>; Linxuan Yan <lyan@sillscummis.com>
**Subject:** Re: LHC AEO documents

 **\*\*\* External Email \*\*\***

Hi Scott,

You sent these messages just after our somewhat heated discovery meet and confer, so this is all coming off as a bit combative from my perspective. I plan to respond to your other email separately, later today. Regarding these messages, again, I discussed damages expectations with my client after I reviewed your spreadsheet. My client never saw the spreadsheet, but otherwise left the conversation understanding that our initial estimates were high. Are you alleging this is indirect disclosure? My client also reviewed the interrogatory response #12 and signed it, as the interrogatory expressly states. Are you alleging that is indirect disclosure? Your invalidity contentions alleged we have found no evidence of secondary considerations, and you recently asked us to supplement the interrogatory #12 response, which specifically asked for our position on secondary considerations. As you know, secondary considerations include evidence of copying and commercial success, which were detailed in the supplemental response. Are you alleging any of that is indirect disclosure? Would you prefer portions of the interrogatory response be filed under seal if relied upon later? If you are particularly concerned about any of this, please let me know with specificity, otherwise I have no context for your concerns outside of us coming off the meet and confer yesterday regarding my issues with your discovery responses.

Thank you,

Patrick D. Cummins
*Patent Prosecutor and Litigator*
(502) 445-9880
Patrick@CumminsIP.com

CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC



On Mon, Jul 29, 2024 at 5:19 PM Scott D. Stimpson <sstimpson@sillscummis.com> wrote:

Patrick, thank you.  We have not shown our client, or otherwise disclosed to our client, anything that is Counsel Only.

You say you did not show your client the spreadsheets.  Are we correct that none of the sales numbers were disclosed to your client, directly or indirectly?

Scott

**Scott D. Stimpson**
Chairman of the Intellectual Property Group

**Sills Cummis & Gross** P.C.

**website | bio | vCard | newsroom | email**  🖾 📘 in

2
Appx507

101 Park Avenue, 28th Floor, New York, NY 10178
p (212) 500-1550 | f (212) 643-6500  **map**

---

**From:** Patrick Cummins <patrick@cumminsip.com>
**Sent:** Monday, July 29, 2024 3:20 PM
**To:** Scott D. Stimpson <sstimpson@sillscummis.com>
**Cc:** Katherine Lieb <klieb@sillscummis.com>; Linxuan Yan <lyan@sillscummis.com>
**Subject:** Re: LHC AEO documents



---

Scott,

I have not shown my client any of the "counsel only" documents you produced, except for the catalog snippet in the interrogatory #12 response.  I've discussed damages expectations in view of the spreadsheets you produced, but never showed my client the spreadsheets.  Otherwise, I believe I'm complying with the counsel only requests.  Hopefully you are also reciprocating.

Thank you,

Patrick D. Cummins

*Patent Prosecutor and Litigator*

(502) 445-9880

Patrick@CumminsIP.com



CUMMINS
INTELLECTUAL PROPERTY (IP)
LAW PLLC

On Mon, Jul 29, 2024 at 2:54 PM Scott D. Stimpson <sstimpson@sillscummis.com> wrote:

Patrick, can you please confirm that no LHC "Counsel Only" documents or information have been shown to your client (or had their substance otherwise disclosed, orally or by other means, to your client)?  We just want to be certain this is no misunderstanding in this regard.

Thank you,

Scott

**Scott D. Stimpson**
Chairman of the Intellectual Property Group

**Sills Cummis & Gross** P.C.

**website | bio | vCard | newsroom | email**

101 Park Avenue, 28th Floor, New York, NY 10178
p (212) 500-1550  |  f (212) 643-6500  **map**

NOTICE: The contents of this email and any attachments to it contain confidential and/or legally privileged information from the law firm of Sills Cummis & Gross P.C. This information is only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of the contained information is strictly prohibited and that the documents should be returned to this firm immediately. In this regard, if you have received this email in error, please notify us by email immediately.

**Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Sills Cummis & Gross P.C. for any loss or damage arising in any way from its use.

This email message has been scanned for viruses by Mimecast.