Case Number: 25-1072; 25-1581

# UNITED STATES COURT OF APPEALS

# FOR THE FEDERAL CIRCUIT

DS ADVANCED ENTERPRISES, LTD.,

*Plaintiff - Appellant*

v.

LOWE'S HOME CENTERS, LLC,

*Defendant - Cross-Appellant*

Appeal and Cross-Appeal from the United States District Court for the Southern District of California, Case No. 3:23-cv-01335-CAB-JLB, the Honorable Cathy Ann Bencivengo

## CORRECTED BRIEF FOR PLAINTIFF-APPELLANT

## DS ADVANCED ENTERPRISES, LTD.

Filed on October 24, 2025 by:
Patrick D. Cummins,
of Cummins IP Law PLLC,
  Attorney for Plaintiff-Appellant
Cummins IP Law PLLC
348 E Main Street
Lexington, KY 40507
Phone: 502-445-9880

## Exemplary Claim from United States Patent 11,054,118

1. An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing, the apparatus comprises:

a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);

a plurality of new construction clips (104);

a plurality of connecting posts (106) to hold the new construction clips (104);

a metal housing (108) to embody a complete fixture (112);

a junction box (116) to hold a plurality of connection wirings, wherein the junction box (116) comprises a plurality of output wires; and

a twist connector (118) to attach the output wires of the junction box (116) to the metal housing (108),

wherein the retrofit clips (102) make a friction fit inside the recessed lighting fixture housing to secure the complete fixture (112) inside,

wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present.

# Certificate of Interest

Case Number:    25-1072; 25-1581

Short Case Caption:    DS Advanced Enterprises, Ltd. v. Lowe's

Home Centers, LLC

Filing Party/Entity    DS Advanced Enterprises, Ltd.

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Respectfully submitted,

Cummins IP Law PLLC

By: */s/ Patrick D. Cummins*,
Patrick D. Cummins
*Attorney for Plaintiff-Appellant,*
*DS Advanced Enterprises, Ltd.*
Dated: October 24, 2025

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>✖ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>✖ None/Not Applicable |
| DS Advanced Enterprises, Ltd. | | |

4. Legal Representatives. List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

**✖** None/Not Applicable          ☐    Additional pages attached

5. Related Cases. Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

**✖**    Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). Please do not duplicate information. This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

6. Organizational Victims and Bankruptcy Cases. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

**✖**        None/Not Applicable       ☐    Additional pages attached

# Table of Contents

Table of Contents............................................................................i

Table of Authorities .....................................................................v

Statement of Related Cases ........................................................1

Statement of Jurisdiction............................................................2

Statement of the Issues on Appeal ............................................3

STATEMENT OF THE CASE ....................................................6

I. Introduction ..............................................................................6

    A. The '118 Patent and the World's Retiring of
        Incandescent Downlights..............................................6

    B. Pre-Suit History of DSAE and Lowe's .......................10

SUMMARY OF ARGUMENT ...................................................22

ARGUMENTS AND STANDARDS OF REVIEW ..............................26

I. In multiple instances, the District Court abused its
    discretion to deny DSAE's Rule 52/59 motion. .............................26

    A. The District Court misapprehended the second
        step for determining patent infringement,
        resulting in blatant errors of law. .............................26

    B. As a fallacious special pleading, the District
        Court provided an exception to their claim
        construction in response to DSAE's Rule
        52/59 Motion, amounting to another clear
        legal error and error of judgment..............................29

    C. Despite DSAE expressly *agreeing* with the
        District Court's claim construction of "metal
        housing", the District Court abused their
        discretion by misconstruing DSAE's
        infringement arguments as proposing
        alternative claim construction................................31

D. The District Court made clearly erroneous findings of fact regarding whether the accused metal housing fell within the scope of the District Court's construction of "metal housing". ................................................................... 35

II. The District Court further abused its discretion to grant Lowe's summary judgment of non-infringement ................................................................... 38

A. The District Court did not view certain material facts, much less view them in a light favorable to DSAE, or determine whether Lowe's satisfied their initial burden. ........................................ 38

i. The District Court did not make any determination regarding whether Lowe's addressed the accused metal housing to a degree that satisfied their initial burden at summary judgement. ........................................ 39

ii. In view of the narrow scope of Dr. Bretschneider's testimony, the District Court erroneously resolved factual disputes at summary judgment. ........................................ 43

iii. In view of the narrow affidavit and letter from Lowe's counsel, the District Court erroneously resolved factual disputes at summary judgment. ........................................ 46

iv. Conclusion regarding the District Court's Abuses of Discretion at Summary Judgment ........................................ 48

B. Lowe's deliberately misled the District Court to circumvent their initial burden at summary judgment. ........................................ 49

C. The District Court repeatedly misconstrued DSAE's infringement arguments to be claim

     construction arguments, further evidencing
     their error in judgment. ............................................. 53

D. Lowe's litigation tactics reliably fall well below
     the standards set by Rule 56 and Rule 11. ................................ 55

E. Conclusion............................................................................ 58

III. The District Court's order alleging a Protective
    Order violation should be reversed because the
    remedial obligations of the Protective Order were
    followed and because some disclosed material is
    subject to the exclusion clause of the Protective
    Order. ............................................................................ 60

A. De novo review of the Protective Order should
     reveal the remedial requirements and
     exceptions clause of the Protective Order. ............................. 61

B. The Product Images and Messages at issue were
     never subject to the limitations of the
     Protective Order per the exclusion clause of
     the Protective Order. ................................................. 62

C. De novo weighing of each Party's factual
     assertions will reveal that the Product Images
     and Messages were available to DSAE before
     this Case was initiated, and thus not subject to
     the Protective Order. ................................................. 66

D. DSAE counsel did not violate the Protective
     Order's remedial instructions for avoiding
     further disclosure, and the Protective Order
     does not contemplate recovery of attorney's
     fees for incidental disclosure to a party solely
     for limited use in this litigation.................................. 71

E. The attorney's fee order is an abuse of
     discretion because the Magistrate and District
     Court did not find any harm caused by the

      alleged protective order violations. ...........................................77

F. The attorney's fees for two very different motions cannot be fairly justified as the harm caused by the alleged protective order violation. .....................................................................78

G. The District Court, as a matter of law, erroneously construed the Protective Order as requiring designation objections to be resolved before a non-designating party can discuss already-available materials with counsel. ...................................................................81

Conclusion and Statement of Relief Sought .........................................84

Corrected Certificate of Service.............................................................86

# Table of Authorities

<u>Cases</u>                                                           <u>Page</u>

*Apple Inc. v. Samsung Elecs. Co.*,
   No.: 12-CV-0630- LHK (PSG) (N.D. Cal. Jun. 26, 2013).................55

*Bieghler v. Kleppe*,
   633 F.2d 531 (9th Cir. 1980) ...............................................................38

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...............................................................................57

*Daniels-Hall v. Nat'l Educ. Ass'n*,
   629 F.3d 992 (9th Cir. 2010) ...............................................................7

*Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*,
   998 F.3d 917 (Fed. Cir. 2021) ..............................................................38

*Interactive Gift Express, Inc. v. Compuserve Inc.*,
   231 F. 3d 859 (Fed. Cir. 2000) ............................................................28

*Lujan v. Garcia*,
   734 F.3d 917 (9th Cir. 2013). ....................................................31, 61, 65

*M.D. v. Newport-Mesa Unified Sch. Dist.*,
   No.14-56443 (9th Cir. 2016) ...............................................................77

*Miguel Munoz v. Union Pacific Railroad Co.*,
   Case No.: 2:21-cv-00186-SU, 35 (D. Or. 2021) ...........................62, 67

*Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,*
   210 F.3d 1099 (9th Cir. 2000) ....................................................49, 51

<u>Cases</u>                                                        <u>Page</u>

*Pop Top Corp. v. Rakuten Kobo Inc.*,

    Case 21-2175, 46 (Fed. Cir. 2022) ......................................34

*Pyles v. MSPB*,

    45 F.3d 411 (Fed. Cir. 1995) .............................................29

*Shuffler v. Heritage Bank*,

    720 F.2d 1141 (9th Cir. 1983) ...............................61, 78, 81

*Soremekun v. Thrifty Payless, Inc.*,

    509 F.3d 978 (9th Cir. 2007) .............................................59

*Static Media LLC v. Leader Accessories LLC*,

    Case No. 21-2303, 39 (Fed. Cir. 2022) .........................60, 67

*Stewart v. American International Oil & Gas Co.*,

    845 F. 2d 196 (9th Cir. 1988) ...........................................57

*SunTiger v. Scientific Research Funding Group*,

    189 F. 3d 1327 (Fed. Cir. 1999) .......................................37

*Technatomy Corp., v. The United States*,

    No. 19-369C, pg. 2 (Fed. Cir. March 28, 2019)................78

*Teradata Corp. v. SAP SE*,

    No. 23-16065 (9th Cir. 2024) ............................................38

*United States for the Use and*

    *Benefit of Wiltec Guam, Inc. v. Kahaluuu Construction Co.*,

    857 F.2d 600 (9th Cir. 1988) ...........................60, 62, 66, 68

Cases                                          Page

*Vas-Cath Inc. v. Mahurkar*,

   935 F. 2d 1555 (Fed. Cir. 1991) ...................................................38

*Vulcan Eng'g Co., Inc. v. Fata Aluminum, Inc.*,

   278 F.3d 1366, 1375-76 (Fed. Cir. 2002)....................................46

Statute                                        Page

28 U.S.C. § 1295(a)(1) ..............................................................................2

28 U.S.C. § 1331 ......................................................................................2

28 U.S.C. § 1338 ......................................................................................2

28 U.S.C. § 636(b)(1)(C) .................................................................65, 66

35 U.S.C. § 123(a)...................................................................................6

Rules                                          Page

Fed. R. App. P. 4(a)(1)(A) ......................................................................2

Fed. R. Civ. P. 33 .............................................................................72, 77

Fed. R. Civ. P. 33(a)(2).........................................................................77

Fed. R. Civ. P. 37(b)..............................................................................75

Fed. R. Civ. P. 37(b)(2)(C)....................................................................75

Fed. R. Civ. P. 52 ....................................................................................3

Fed. R. Civ. P. 56 ....................................................................................3

Fed. R. Civ. P. 59 ....................................................................................3

Fed. R. Evid. 702...................................................................................50

Other Authorities                              Page

MPEP 608.01(m)....................................................................................31

## Statement of Related Cases

No appeal in or from the same civil action or proceeding in the originating tribunal was previously before this or any other appellate court. Plaintiff-Appellant, DS Advanced Enterprises, Ltd. ("DSAE") is aware of the following cases that involve DSAE's Patent, U.S. 11,054,118 (Appx0001-0012), and the related cases may be directly affected by this Court's decision in this Appeal:

1. *DS Advanced Enterprises v. LEDVANCE LLC*, Case No.: 1:24-cv-11155-JEK, United States District Court for the District of Massachusetts.

# Statement of Jurisdiction

This is a patent infringement action being appealed per DSAE's Amended Notice of Appeal filed on March 2, 2025. Appx1962.

The District Court had jurisdiction over this patent infringement action under 28 U.S.C. §§ 1331 and 1338. The Federal Circuit has jurisdiction under 28 U.S.C. § 1295(a)(1). Final Judgment from the District Court was entered on February 25, 2025 (Appx0052-0053), and the Amended Notice of Appeal was filed on March 2, 2025 pursuant to Fed. R. App. P. 4(a)(1)(A).

# Statement of the Issues on Appeal

1. Is the accused metal housing for each Accused Product a "casing or enclosure made of a scientifically recognized metal substance" per the District Court's claim construction of "metal housing"?[1]

2. Did the District Court abuse its discretion, in the context of Fed. R. Civ. P. 52 & 59 motion, to decide the first (1) issue above in favor of Lowe's?

3. Did the District Court violate appropriate standards under Fed. R. Civ. P. 56 when deciding the first (1) issue above in favor of Lowe's and granting Lowe's summary judgment motion ?

4. Did Lowe's satisfy their initial burden of production to a degree that

_____

[1] The images above are from DSAE's Infringement Contentions and show the accused metal housings for the 4" and 6" versions of the Accused Products. Appx0706, Appx0712, Appx0720, Appx0733, Appx0739, and Appx0747; and Appx0776, ¶25.

would preclude a jury from finding the accused metal housing to be a "metal housing" as construed by the District Court?

5. Were certain images of DSAE's own products, appearing in Lowe's confidential presentations, not subject to the limitations of the Protective Order, per paragraph 30 of the Protective Order, because the images were already available to DSAE before this Case?

6. Were communications between Lowe's and DSAE's Marketing Specialist not subject to the limitations of the Protective Order, per paragraph 30 of the Protective Order, because the communications were in furtherance of an existing contract between DSAE and the Marketing Specialist?

7. Did the District Court abuse its discretion by finding DSAE's counsel violated the Protective Order, despite finding that DSAE's counsel took remedial actions according to the Protective Order?

8. Did the District Court abuse its discretion by requiring DSAE's counsel to pay attorney's fees for Lowe's preparing two different motions directed to an alleged protective order violation?

9. If the Case is remanded, is reassignment warranted in view of

impartiality or bias that may be exhibited by the Southern District

of California?

# STATEMENT OF THE CASE

## I. Introduction

DSAE's president, Mr. David Sherman ("David"), filed his first United States provisional patent application on May 18, 2018. Appx0671; and Appx1611, ¶6. The application ultimately matured into the patent at issue in this Case, U.S. Patent 11,054,118. David then assigned to his micro-entity business DS Advanced Enterprises, Ltd ("DS" refers to David Sherman). *Id*. 35 U.S.C. § 123(a). *Id*. and Appx0001-0012.

As further background, David has decades of experience in the lighting industry, and his small Canadian business, DSAE, is an extension of that experience wherein David leverages his lighting industry knowledge to develop and trade residential and commercial lighting products. Appx1313, ¶9; Appx1314, ¶15; and Appx1315, ¶23.

### A. The '118 Patent and the World's Retiring of Incandescent Downlights

The '118 Patent solves a number of problems arising from the world's transition from incandescent light bulbs to light emitting diodes (LEDs). In 2007, there were an estimated 435 million recessed lighting fixtures

installed in residential applications[1]. "Recessed light fixtures" refer to light fixtures that are recessed into ceilings, often in spaces (*e.g.*, attics, soffits, etc.) where air flow is limited.[2] When initially introduced to the world, these fixtures often operated using relatively high wattage incandescent bulbs, which are notoriously inefficient, giving off 90% of their supplied energy as heat instead of light.[3, 4] Because of the risks these

---

[2] Plaintiff asks the Federal Circuit to take Judicial Notice of the following U.S. government website: https://basc.pnnl.gov/code-compliance/recessed-lighting-code-compliance-brief *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–99 (9th Cir. 2010).

[3] Plaintiff asks this Court to take Judicial Notice of the following U.S. government website: https://www.energy.gov/sites/default/files/2022-06/job-aid-3-2_seal-dam-recessed-lights.pdf. *Id*.

[4] Plaintiff asks this Court to take Judicial Notice of the following U.S. government website: https://www.energy.gov/energysaver/when-turn-your-lights. *Id*.

fixtures pose, recessed fixture housings in unconditioned spaces are required by electrical standards organizations to be "IC-rated" (*i.e.*, Insulation Contact rated)[5] to



mitigate risk of ignition of any surrounding insulation (see image above for context). In view of their inefficiencies and risks to public safety, recessed incandescent fixtures are being replaced by ever-improving LED fixtures[3].

In furtherance of this transition away from dangerous incandescent downlights, retailers sell kits for replacing existing incandescent fixtures. Prior to the '118 Patent, retailers *separately* offered different types of "new construction" and "retrofit" LED fixture kits. New construction kits are for installing in constructions where an existing fixture housing is unsafe to re-use, or where there is no existing fixture housing. Retrofit kits

_____

[5] Plaintiff asks this Court to take Judicial Notice of the following U.S. government website: https://www.energy.gov/energysaver/lighting-design. *Id*.

are utilized when an existing recessed housing or "can" is available and safe to re-use.

A major drawback to these kits is that the decision to undertake a "retrofit" or a "new construction" installation may not be made final for each existing fixture until an electrician or repairperson climbs up to the ceiling and examines each individual fixture. Purchasing a large volume of a *single* type of LED fixture kit (*e.g.*, "retrofit") would therefore be extremely wasteful until the condition and re-usability of any existing fixtures are determined. This can be especially wasteful for retailers and electricians who often warehouse *both* types of fixture kits.

Upon seeing David's invention, set forth in the '118 Patent, lighting retailers and manufactures realized the benefit of exclusively offering his particular single re-usable universal kit for both "retrofit" and "new construction" applications.  David's invention eliminates the need to warehouse multiple types of

fixture kits, thereby preserving space, materials, and other affected resources. Appx0010, col. 5, lines 33-35. David's invention also reduces material waste because it can be re-used after installation (*e.g.*, relocated to a different room or building), instead of being thrown away during replacement.

## B. Pre-Suit History of DSAE and Lowe's

During pendency of the '118 Patent, David wore out his shoe's soles presenting his invention to retailers such as Costco, Home Depot, and Lowe's. Appx1315, ¶23; and Appx1617. David was even able to have his invention directly presented to the Defendant-Appellee, Lowe's, by contracting with a Marketing Specialist, Total Marketing International Co., who had an existing relationship with Lowe's. Appx1313, ¶¶9-10; Appx1300; and Appx0941-0943.

On December 17, 2019, the Marketing Specialist emailed details of David's invention to Lowe's Senior Merchant in Recessed Lighting in furtherance of scheduling a presentation with Lowe's. Appx0941-0943. In the email thread, Lowe's replied with a willingness to meet and discuss DSAE's patent pending product:

| DSAE's Marketing Specialist: | "Brandon…It's a gamechanger! You will be impressed." |
| Lowe's Senior Merchant: | "You are welcome to come by and show us this at 11:30am. Let me know. Thanks!" |

*Id.* (modified).

On April 13, 2021, months after this correspondence with Lowe's and another presentation to Lowe's Canada, DSAE's Preferred Manufacturer contacted DSAE and indicated that "Lowes" would be placing orders for David's invention ("Covered Products"). See Appx1216-1217-552; and Appx1314, ¶¶11-14. DSAE's preferred manufacturer emailed David Purchase Orders, including "PO149907823", identified in the subject line of the email. Appx1288; and Appx1216-1217. A screen capture of the native Excel version of Purchase Order 149907823 is attached as Appx1288 and shows 396,000 units of DSAE's "3in1" to be ordered. *Id.*; Appx1284; and Appx1314, ¶13.

The native version of the Purchase Order shows images of the DSAE's 3in1 products being ordered. *Id.* Appx1288 (partially reproduced below). During discovery those *same* images appeared in confidential Lowe's presentations produced by Lowe's. For comparison, please see DSAE's

product images shown in the Purchase Order at Appx1288 (PLNTF102061) and then compare them to Zhejiang Yankon's presentation at Appx1801-1802 and Lowe's presentation slides at Appx1808-1812. See also, Appx1814.



Early in this Case, Lowe's filed translations of Purchase Orders 149907824 and 149907825 on the record. See Appx0261-0266 ("Needed quantities of spare parts are pending final confirmation from Lowes"). The Mandarin version of 149907825 also refers to "Lowes" and "3in1" in English characters. See also, Appx1284. The image reproduced to the right above is a screenshot of the native Excel version of PO149907823

These orders would have been a great success for any first-time inventor or micro-entity—but those orders were subsequently canceled. Lowe's would ultimately promote and retail the Accused Products without



involving the David or DSAE. See Appx1141 at 2(c). The image to the right above was captured at a Lowe's retail store.

On March 30, 2023 while visiting a Lowe's retail store, a manager for DSAE's Preferred Manufacturer noticed "3in1" products being sold under Lowe's private label "Utilitech". Appx1290-1293. The products indicated they were labeled as manufactured by Zhejiang Yankon Group Co. Ltd. in China. The text messages to David indicated that "yanko[n]" had previously purchased samples of David's product in the past. *Id*. ("in lowes they are selling 3in1 downlights…i know who made it…yanko[n]"…they bought samples from us before") (modified). *Id*. and Appx1314, ¶¶11 and 16.



On May 8, 2023, prior to initiating this Case, DSAE sent demand letters to Lowe's and Yankon alleging patent infringement. Appx0341, Appx0343, Appx0373, Appx0400, and Appx0437 at ¶¶4, 6, and 10. DSAE received responses from both Lowe's and Yankon, who CC'd

Lowe's in-house counsel, Mr. Will Baeza. Appx0349; Appx0351; and Appx0437-0438 at ¶¶8, 12, and 14. Lowe's and Yankon continued to manufacture and retail the Accused Products after receiving and responding to these demand letters. Appx0026, lines 21-24 (Magistrate's report confirming Lowe's documents "LHC_000841–887" include sales data for the Accused Products from "July 2022 through March 2024").

## C. Brief Procedural History Regarding Infringement Suit

DSAE filed their original complaint on July 21, 2023. Appx0055. Thereafter, Lowe's filed multiple motions without attempting to dismiss the actual claims of patent infringement. Appx0118 and Appx0238. This odd strategy was inconsequential. Appx0445. DSAE and Lowe's subsequently exchanged discovery requests and patent-related contentions per the District Court's patent local rules. See, *e.g.*, DSAE's Infringement Contentions, served March 20, 2024, Appx0692, Appx0697, and other relevant pages attached as Appx0706, Appx0712, Appx0720, Appx0733, Appx0739, and Appx0747; and Appx0776 at ¶25.

On July 15, 2024, Lowe's motioned for summary judgment of non-infringement before the *Markman* hearing. Appx0479. Lowe's summary

judgment motion did not attach or cite DSAE's Infringement Contentions from March 20, 2024. *Id*. On September 10, 2024, the District Court canceled the scheduled *Markman* Hearing, despite claim construction being fully briefed. Appx1064.

Although the District Court asked Parties to prepare to discuss "the infringement allegations related to the 'metal housing (108)' limitation of Claim 1", the District Court did not provide any formal claim construction until the day of the hearing on Lowe's summary judgment motion. Appx1064. During the summary judgment hearing, the District Court finally indicated their claim construction of "metal housing". Appx1154, lines 2-5. The District Court did not seem to recall this order of events at the subsequent hearing on DSAE's Rule 52/59 motion. Appx1934, lines 19-20 ("The Court's construction, I think, resulted in the defendant's request that they be found not infringing"). No other claim element has been construed by the District Court.

### D. Brief History Regarding Discovery Issues

Discovery issues related to this Appeal stem from an interrogatory served on DSAE by Lowe's, and requests for admission served on Lowe's

by DSAE. Appx1140-1145, Appx0945-0952 (DSAE's Requests for Admission Nos. 3 and 4), and Appx1970 at No. 55.

Lowe's Interrogatory No. 12 states:

> If Plaintiff disagrees with any part of the invalidity contentions of LHC, including Defendant's Initial Invalidity Contentions served on May 20, 2024 and any later supplements, please identify and explain such disagreements in detail. To be complete, Your response should include, at a minimum:…explanations of any dispute about the propriety of obviousness combinations.

Appx1140.

DSAE's Requests for Admission Nos. 3 and 4 state:

> ADMISSION REQUEST NO. 3 You are requested to admit that, prior to 2023, you did receive information about the lighting products described in the "presentation" you refer to in Doc. No. 19 at pg. 7, lines 7-10.

> ADMISSION REQUEST NO. 4 You are requested to admit that, prior to 2023, you did receive information about the lighting products described in the "sales orders" you refer to in Doc. No. 19 at pg. 7, lines 15-22.

Appx0950-0951.

On June 5, 2024, Lowe's served their Interrogatory No. 12 on DSAE.

Appx1140. On June 21, 2024, DSAE served their Request for Admissions

Nos. 3 and 4 on Lowe's. Appx0945. On July 2, 2024, DSAE served an

Initial Response to Lowe's Interrogatory No. 12. Lowe's counsel requested that DSAE's counsel supplement that Initial Response to include further details regarding, *inter alia*, secondary considerations of non-obviousness.

In response to this request to supplement, DSAE served a First Supplemental Response ("First Supplement") to Lowe's Interrogatory No. 12 on July 19, 2023. Appx1317, ¶11. The First Supplement was signed by David via a docusign process initiated by DSAE's counsel, pursuant to Fed. R. Civ. P. 33(b)(5). *Id*., ¶9.

On July 22, 2024, Lowe's served their written response to each of DSAE's Requests for Admissions Nos. 3 and 4 by stating: "Defendant will not respond to this request". Appx0950-0951; and Appx1318, ¶12. DSAE immediately took issue with Lowe's non-response. Appx1318, ¶13. In view of their non-response and in furtherance of motioning to compel Lowe's to respond to these RFAs, DSAE proposed a meet and confer, as required by the Magistrate's rules. *Id*. Parties participated in a meet and confer on July 29, 2024. Appx1286; and Appx1318, ¶¶14-15.

Just minutes after concluding this meet and confer, and 10 days after

receiving the First Supplement to Lowe's Interrogatory No. 12, Lowe's alleged that David viewing the "sales information" in the First Supplement violated the Protective Order. Appx1318, ¶16; and Appx1060-1063. Lowe's would later suggest including this issue in a subsequent joint statement to the Magistrate, wherein DSAE would also include DSAE's issues with Lowe's non-response to the RFAs. Appx1208 ("Draft Joint submission re Protective Order").

On July 31, 2024, Lowe's indicated they would be motioning for an order requiring DSAE and DSAE's counsel to provide affidavits regarding the alleged Protective Order violation. Appx1204; and Appx1318, ¶17. In furtherance of satisfying the remedial instructions provided in the Protective Order, DSAE and DSAE's counsel quickly provided the requested affidavits, and Lowe's eventually indicated their express satisfaction. See Protective Order at pgs. viii-xi, ¶15; Appx1318-1319, ¶¶18-23; and Appx1202. DSAE also served a Second Supplement for the Interrogatory No. 12 that omitted the 3 confidential sales numbers Lowe's counsel had taken issue with. Appx1319, ¶¶22-24.

In response to the Second Supplement, Lowe's alleged that David's

viewing of Product Images and Messages in the Second Supplement violated the Protective Order. *Id.*, ¶24; Appx1213 ("also pdf pages 63-64"); Appx1770-1775 (hereinafter "Messages"); Appx1814 (showing the images hereinafter referred to as "Product Images"). The Product Images are the same as those found in the native version of Purchase Order 149907823 from 2021, as discussed above. Appx1288. The Messages correspond to an email thread between DSAE's Marketing Specialist and Lowe's from 2019, part of which is already on the public record. See Appx0941-0943 compared with Appx1770-1775. DSAE's counsel attempted to explain to Lowe's counsel that the Product Images and Messages were already available to DSAE. Appx1269.

On August 8, 2024, weeks after the alleged protective order violation, and when indicating their satisfaction with the affidavits, Lowe's indicated they would instead be submitting a different motion to enforce the Protective Order. Appx1202. This other motion would attempt to limit DSAE's use of evidence of secondary considerations (*e.g.*, evidence of copying and commercial success), including the Product Images and Messages. Appx1252-1253. Lowe's indicated they did not believe they

needed to meet and confer regarding this other motion. Appx1252.

Weeks later, on August 27, 2024, Lowe's asked DSAE's counsel to subsequently meet and confer regarding this other motion. Appx1259. Prior to this, Parties had not had a meet and confer regarding the alleged protective order violation per the Magistrate's rules. Appx1252.

On August 29, 2024, Parties participated in another discovery conference with the Magistrate regarding Requests for Admission Nos. 3 and 4. Appx1971 at No. 55. On September 6, 2024, Lowe's was served re-propounded Requests for Admissions No. 3 and 4, with a shortened response period. Appx1146-1150. On September 20, 2024, Lowe's again responded to each request for admission by stating: "Defendant will not respond to this request." *Id*.

Six days later, on September 26, 2024, the District Court verbally granted Lowe's summary judgment and ordered all "other discovery issues…are vacated", thereby preventing DSAE from pursuing a motion to compel responses to Requests for Admissions Nos. 3 and 4. Appx1165, lines 1-5 (modified).

Before the hearing on Lowe's summary judgment motion, Lowe's

filed their motion to enforce the Protective Order and to limit DSAE's use of evidence of copying and commercial success. Appx1034 and Appx1046. The Magistrate provided a report and recommendation regarding the motion, and the District Court adopted the Magistrate's report and recommendation, thereby ordering DSAE's counsel to pay attorney's fees. Appx0024-0038; and Appx0039-0042. DSAE's counsel, a solo practitioner, subsequently secured bank loans to pay the $25,000 in attorney's fees to Zhejiang Yankon Mega Co. Ltd. in China. Zhejiang Yankon supplies the Accused Products to Lowe's and is also a client of Lowe's counsel. Appx1887, ¶6. Lowe's counsel has since acknowledged receipt of the payment from DSAE's counsel.

Subsequent to Lowe's filing their motion to enforce the Protective Order, DSAE filed their Rule 52/59 Motion in furtherance of asking the District Court to find clear error in their summary judgment order, or at least modify their summary judgment order to help clarify the record for this Appeal. Appx1585-1609. That post-judgment motion was denied, as was Lowe's 35 U.S.C. § 285 motion for attorney's fees. Appx0048-0051; and Appx0043-0047.

## SUMMARY OF ARGUMENT

The District Court abused their discretion when denying DSAE's Rule 52/59 Motion by not finding the accused housing portion of the Accused Products are covered by the District Court's construction of "metal housing (108)". The District Court erroneously reasoned that the accused metal housing "doesn't correspond to the rest of the patent and the specification." Appx1936, lines 9-15. This a clear legal error evidencing the District Court's abuse of discretion because the second step of determining patent infringement does not require an entire patent to read on an accused product to find infringement. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 231 F. 3d 859, 865-866 (Fed. Cir. 2000).

The District Court further abused their discretion by misconstruing DSAE's infringement arguments as claim construction arguments. The accused metal housing is "a 'casing or enclosure made of a scientifically recognized metal substance'" considering it is made of metal and it houses a strip of LEDs, diffuser lens, among other parts. Appx0019, lines 3-6.

At summary judgment, the only evidence Lowe's offered to meet their burden was two affidavits. An affidavit from Lowe's counsel argued that

the accused metal housing is "internal" relative to the plastic wafer piece that extends over the accused metal housing. However, the District Court's construction of "metal housing (108)" is not limited to something that is uncovered. The second affidavit was from Lowe's technical expert Dr. Bretschneider whose affidavit does not address the accused metal housing. Rather, Dr. Bretschneider's testimony is limited to the plastic wafer piece that extends over the accused metal housing. In view of these two affidavits being propounded to meet Lowe's burden at summary judgment, the District Court necessarily resolved factual disputes. This was clearly a legal error at summary judgment. *Scharf v. United States Atty. Gen.*, 597 F. 2d 1240, 1243 (9th Cir. 1979). The affidavits do not preclude a jury from finding the accused metal housing to be within the scope of the District Court's construction of "metal housing". *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970).

Regarding the alleged Protective Order violation, the District Court abused its discretion to order DSAE's counsel to pay attorneys' fees for an alleged Protective Order violation. The Product Images and Messages

that were disclosed to DSAE's president are excluded from the restrictions and obligations of the Protective Order because of the exclusion clause of the Protective Order. Protective Order at pg. xii, ¶30. The exclusion clause indicates that materials already available to a party are not subject to the restrictions and obligations of the Protective Order. *Id*.

The Product Images were in a Purchase Order that DSAE's president received well before initiation of this Case, and the Messages were in furtherance of a contract between DSAE and DSAE's Marketing Specialist. Despite making timely objections, the District Court abdicated their duty to make factual findings regarding whether those materials were already available to DSAE and thus not subject to the Protective Order. Lowe's did not provide any evidence to the contrary, which should have been a consideration by the District Court in view of DSAE's objections.

The District Court also abused its discretion by ordering attorneys' fees because DSAE's president viewed 3 sales numbers when signing an interrogatory. The interrogatory response explained much of DSAE's position regarding secondary considerations of non-obviousness (e.g.,

commercial success) and was solely used for this litigation. The Magistrate recognized that DSAE's counsel followed the remedial requirements of the Protective Order and that no non-party viewed those 3 sales numbers. The Magistrate also found that any harm was speculative. Despite these facts being found by the Magistrate, the District Court abused their discretion to require DSAE's counsel, a solo practitioner, to pay $25,000 in attorneys' fees. The operative Protective Order does not support this sanction under the circumstances, nor does any Ninth Circuit precedent.

**ARGUMENTS AND STANDARDS OF REVIEW**

## I. In multiple instances, the District Court abused its discretion to deny DSAE's Rule 52/59 motion.

<u>**Standard of Review**</u>

When a case "presents a procedural question not unique to patent law, this court follows the law of the regional circuit from which the case is appealed." *Massey v. Del Labs.*, Inc., 118 F.3d 1568, 1572 (Fed. Cir. 1997). For appeals of orders per Fed. R. Civ. P 59(e), the Ninth Circuit applies an abuse of discretion standard. *Far Out Productions, Inc. v. Oskar*, 247 F. 3d 986, 992-993 (9th Cir. 2001). Abuse of discretion is found when a district court either (1) makes an error of law, (2) rests its decision on clearly erroneous findings of fact, or (3) when the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment. *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). See also, Appx0049, lines 10-17.

## A. The District Court misapprehended the second step for determining patent infringement, resulting in blatant errors of law.

The District Court's reasoning for denying DSAE's post-judgment

motion and granting Lowe's summary judgment of non-infringement is a clear legal error amounting to an abuse of discretion. Prior to the hearing on DSAE's Rule 52/59 motion, the District Court expressly stated in its summary judgment order that they construe the claim element "metal housing (108)"…as a 'casing or enclosure made of a scientifically recognized metal substance.'" Appx0019, lines 3-6. During the hearing on DSAE's Rule 52/59 motion, and in view of this construction, DSAE's counsel plainly asked the District Court why the accused metal housing (shown below) should not fall within the scope of the District Court's construction. Appx1936, lines 9-15. In response, the District Court replied: "It doesn't correspond to the rest of the patent and the specification." *Id*.



This rationale from the District Court is erroneous in view of binding precedent that sets forth the correct second step for determining patent infringement. *Interactive Gift Express, Inc. v. Compuserve Inc.*, 231

F. 3d 859, 865-866 (Fed. Cir. 2000) ("Second, a determination must be made as to whether the properly construed claims read on the accused device."). It is a gross error of law and clear abuse of discretion to find non-infringement because "the rest of patent", outside of claims, does not read on an accused device. Appx1936, lines 9-15.

This erroneous infringement analysis from the District Court would lead to an unjust and prejudicial result for any patentee attempting to prove infringement after claim construction. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed. Cir. 2005) ("although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments"); and *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1342 (Fed. Cir. 2001) ("drawings are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves").

A patentee is *not* required to prove infringement by showing the accused product corresponds to "the rest of the patent and the specification". If that were the case, there would be no reason to even go through claim

construction. The District Court's erroneous rationale for not finding the construed claim element in the Accused Products is a clear error of law and amounts to an abuse of discretion.

## B. As a fallacious special pleading, the District Court provided an exception to their claim construction in response to DSAE's Rule 52/59 Motion, amounting to another clear legal error and error of judgment.

During the hearing on DSAE's Rule 52/59 motion, DSAE's counsel argued for finding legal errors in the District Court's summary judgment order and, in response, the District Court defended by invoking a special pleading. [6] The District Court's special pleading required a new exception

---

[6] Merriam-Webster's online dictionary defines "special pleading" as "the allegation of special or new matter to offset the effect of matter pleaded by the opposite side and admitted, as distinguished from a direct denial of the matter pleaded". DSAE respectfully requests judicial notice of this dictionary definition. *Pyles v. MSPB*, 45 F.3d 411, 415 (Fed. Cir. 1995) (taking judicial notice of dictionary definition). https://www.merriam-webster.com/dictionary/special%20pleading

to its construction of "metal housing".  The District Court stated this new exception as follows: "What is indicated as the metal housing, parenthetical 108, that then corresponds to the descriptions in the specification and the drawings, is not a flat disk contained within a structure that is plastic…that holds the circuitry".  Appx1936, lines 16-20. (modified).  In other words, rather than giving any factual justification for their non-infringement decision, the District Court hinted at a new claim construction, further insulating Lowe's from liability for patent infringement.

The District Court's rationale is ironic in view of their earlier admission that they could not find caselaw to further limit a claim based on an included parenthetical element (*e.g.*, "(108)"). See Appx1717, lines 5-12. And yet, despite admitting to not finding any case law on point, the District Court seemed to sua sponte create a new infringement exception based on a parenthetical element being included with "metal housing" in the Claims.  *Id*.

The MPEP expressly indicates that limiting the claims in this way is

completely inappropriate.[7] MPEP 608.01(m). This claim form would likley not be unfamiliar to a USPTO examiner that has examined PCT applications.

From DSAE's perspective, the District Court proposed an ad hoc claim construction in response to a post judgment motion. The District Court's special pleading should leave this Federal Circuit with "a definite and firm conviction that the district court committed a clear error of judgment." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013).

## C. Despite DSAE expressly *agreeing* with the District

---

[7] MPEP 608.01(m) at ¶3: "Reference characters corresponding to elements recited in the detailed description and the drawings may be used in conjunction with the recitation of the same element or group of elements in the claims. The reference characters, however, should be enclosed within parentheses so as to avoid confusion with other numbers or characters which may appear in the claims. *The use of reference characters is to be considered as having no effect on the scope of the claims*." (emphasis added).

**Court's claim construction of "metal housing", the District Court abused their discretion by misconstruing DSAE's infringement arguments as proposing alternative claim construction.**

The District Court seemed reluctant to move past claim construction for "metal housing", despite DSAE expressly agreeing with the District Court's construction of "metal housing". Appx1603, lines 1-4. Ironically, when faced with this agreement, and in response to infringement arguments, the District Court defended by sua sponte alluding to invalidity. Appx1935, lines 9-14. Lowe's summary judgment motion was directed to non-infringement, not invalidity. Furthermore, none of DSAE's counsel's statements at the Rule 52/59 motion hearing were in furtherance of some different claim construction of "metal housing".

> Attorney Cummins: "…we wanted to get some indication of why [the accused metal housing] was not addressed or why it shouldn't be within the scope of the term 'metal housing' as construed by this Court..."
>
> Judge Bencivengo: "To some extent, I feel like your interpretation of what the metal housing should be would render this patent indefinite because I wouldn't be able to tell what was the housing. And it is not indefinite."

*Id*. (modified).

From DSAE's counsel's perspective, District Court seemed to be using claim construction as a strawman to avoid addressing whether the accused metal housing fell within the District Court's construction of "metal housing".[8] Despite being expressly pushed on the issue, the District Court would not explain why, as a factual matter, the accused metal housing does not "house" at least the strip of LEDs of the Accused Products. Appx1936, lines 6-25. Instead, the District Court seemed to nearly resort to ad hominem by adopting Lowe's false characterization of DSAE's proposed claim construction. *Id*., lines 24-25 to Appx1937, lines 1-2.

---

[8]    The District Court may have been alluding to DSAE's arguments regarding construction of the *entire* claim phrase "a metal housing (108) to embody a complete fixture (112);" from Claim 1 of the '118 Patent, as opposed to construction of just: "metal housing (108)". The District Court apparently did not construe that entire claim phrase, but only construed the term "metal housing". DSAE does not take issue with the District Court's construction of "metal housing (108)" in this Appeal.

The rationale of the District Court, and their response to DSAE's inquiries and arguments, should leave the Federal Circuit with a definite and firm conviction that the District Court made multiple clear errors of judgment to deny DSAE's Rule 52/59 Motion. Even if DSAE's arguments were not clear in their Rule 52/59 Motion, they were certainly clarified at the hearing on DSAE's Rule 52/59 Motion. The District Court's made a clear error of judgment by blatantly misconstruing DSAE's position. *Pop Top Corp. v. Rakuten Kobo Inc.*, Case 21-2175, 46 at pgs. 5-6 (Fed. Cir. 2022) (nonprecedential opinion finding a party's misrepresentation of another party's position to warrant sanctions).

The District Court's misconstruing of DSAE's arguments is also apparent in the order issued by the District Court after the hearing, as discussed in the following section. See, *infra*, § I(D). The District Court's misconstruing of DSAE's position further evidences their errors of judgment.

## D. The District Court made clearly erroneous findings of fact regarding whether the accused metal housing fell within the scope of the District Court's construction of "metal housing".

DSAE filed their post judgment motion in the hopes that the District Court would, *inter alia*, recognize the clear error they made in the second step of determining patent infringement. Although the District Court once addressed the accused metal housing in their response, no explanation was given regarding why the accused metal housing should not fall within the scope of the District Court's construction of "metal housing". Appx0051, ¶1.

The explanation offered by the District Court does not address whether the accused metal housing is "a 'casing or enclosure made of a

scientifically recognized metal substance.'" Appx0019, lines 3-6.[9]
Nothing in the District Court's construction indicates the metal housing is
limited to something that is *un*covered.

The District Court's factual findings and legal rationale arrive at a very
absurd result. For instance, consider, *arguendo*, a circumstance in which
the Accused Products never had the "plastic covering" piece that the
District Court refers to, and the Accused Products *are* ultimately found to
infringe under the same construction of "metal housing". Appx0051, line
5 ("the plastic covering"). Now consider, subsequent to this hypothetical
infringement decision, Lowe's *re*-releases the Accused Products *with* the
plastic covering. Under the District Court's rationale, those re-released
Accused Products would no longer infringe, simply because the "plastic

---

[9] The District Court alleged that DSAE misquoted the claim
construction of metal housing, despite DSAE cropping an image of the
District Court's summary judgment order where the claim construction
was expressly provided. Appx0019, lines 3-6 compared to Appx1593,
lines 16-19.

covering" is now covering the accused metal housing. *Id*. In other words, under the same construction, and despite having all of the same features of the infringing product, the re-released product would no longer infringe because Lowe's covered up the metal housing. Appx0051, footnote 1 at lines 27-28. This result would be absurd because it is completely contrary to the purpose of patent claims and claim construction. *SunTiger v. Scientific Research Funding Group*, 189 F. 3d 1327, 1336 (Fed. Cir. 1999). See also, Appx0617, lines 1-6.

Unfortunately, the District Court would not concede their abuse of discretion. Rather, and in what felt like a "let them eat cake" moment, the District Court invited DSAE, a micro-entity, to "take it to the Circuit, and they can tell me I am wrong." Appx1937, lines 6-7; and Appx1611, ¶6.

In conclusion, the District Court abused its discretion multiple times to deny DSAE's Rule 52/59 motion. DSAE respectfully contends that the District Court's clear errors of law and erroneous factual findings should leave the Federal Circuit with a definite and firm conviction that the District Court made clear errors of judgment.

## II. The District Court further abused its discretion to grant Lowe's summary judgment of non-infringement.

<u>**Standard of Review**</u>

This Court reviews decisions on motions under Fed. R. Civ. P. 56 based on the law of the regional circuit—here, the Ninth Circuit. *Edgewell Personal Care Brands, LLC v. Munchkin, Inc.*, 998 F.3d 917, 919 (Fed. Cir. 2021). The Ninth Circuit reviews a district court's grant of summary judgment de novo. *Teradata Corp. v. SAP SE*, No. 23-16065 (9th Cir. 2024). In reviewing the granting of summary judgment, all inferences must be drawn in the light most favorable to the party opposing the motion. *Bieghler v. Kleppe*, 633 F.2d 531, 533 (9th Cir. 1980). The Federal Circuit "must make an independent determination as to whether the standards for summary judgment have been met." *Vas-Cath Inc. v. Mahurkar*, 935 F. 2d 1555, 1560 (Fed. Cir. 1991).

### A. The District Court did not view certain material facts, much less view them in a light favorable to DSAE, or determine whether Lowe's satisfied their initial burden.

The District Court abused their discretion by not appropriately considering DSAE's propounded evidence regarding the accused metal

housing. If the District Court did consider DSAE's evidence, they improperly resolved facts in view of Dr. Bretschneider's affidavit and Lowe's counsel's affidavit. *Scharf v. United States Atty. Gen.*, 597 F. 2d 1240, 1243 (9th Cir. 1979) (Finding that an "affidavit required the court to resolve an issue of fact…[which] is not the court's function on summary judgment) (modified).

### i. The District Court did not make any determination regarding whether Lowe's addressed the accused metal housing to a degree that satisfied their initial burden at summary judgement.

Because Lowe's does not have the ultimate burden of proving infringement at trial, Lowe's "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). The District Court made no coherent attempt to determine whether Lowe's satisfied their burden, nor did the District Court seem inclined to even acknowledge any burden of the moving party. Appx0015, lines 14-18 ("The usual standard applies.").

Lowe's attempted to satisfy their initial burden of production by citing

to Lowe's counsel's affidavit, which then cited to a letter sent from that same Lowe's counsel during the pleading stage of this Case. Appx0489, lines 6-9, referring to Appx0496 ("Stimpson Decl., Ex. C, at 1-3"), and Appx0518-0520. Lowe's also attempted to satisfy their initial burden of production by providing Dr. Bretschneider's affidavit. Appx0499-0502. The District Court avoided comparing these affidavits with DSAE's



evidence to determine whether Lowe's satisfied their initial burden at summary judgment.

As shown above, DSAE pointed to the accused metal housing to satisfy the "metal housing" element of both independent Claim 1 and dependent Claim 3 of the '118 Patent. Appx0706, Appx0712, Appx0720, Appx0733, Appx0739, and Appx0747 (reproduced below and annotated with boxes at "metal housing"). The accused metal housing looks similar to a metal frisbee and houses at least a strip of LEDs and diffuser lens when an Accused Product is completely installed. *Id*. DSAE points to this when addressing the "metal housing" claim element in both the independent Claim 1 *and* dependent Claim 3. *Id*.

> Plaintiff has already expressly identified, for the Defendant, features of the Accused Products include the "metal housing (108) to embody a complete fixture (112)". See Exh. 9 at pgs. 84-87 and 111-114, and as shown in the image to the left. These elements of an Accused Product #5141630 were also provided as a physical exhibit. See Exh. 12 and Cummins Decl. ¶¶19-22.

Appx0616, line 21 to Appx0617, line 1.

The District Court was clearly capable of acknowledging DSAE's

infringement contentions at summary judgment. At the hearing on DSAE's Rule 52/59 motion, the District Court expressly acknowledged that DSAE's position regarding Lowe's design-around efforts was as a "reiterated" position. Appx0051, footnote 1, lines 26-28.

> District Court: "In opposition to the summary judgment motion DS Advanced *reiterated* its argument that the …'white wafer piece[]'….was….included as an attempt to avoid infringement."

*Id*. (modified and emphasis added).

DSAE has consistently argued that the "white wafer" or "plastic covering" was part Lowe's and/or Zhejiang Yankon's efforts to design around the '118 Patent. The District Court understood those arguments were being "reiterated" *after* summary judgment, and therefore understood DSAE's position regarding the accused metal housing. This has therefore left DSAE wondering why, at summary judgment, did the District Court not consider the accused metal housing as material evidence that should be viewed in a light most favorable to DSAE. See *Id*.; see also, Appx0616, lines 21-28, citing to "Exh. 9 at pgs. 84-87 and 111-114"; and see Appx0706, Appx0712, Appx0720, Appx0733,

Appx0739, and Appx0747.

The District Court abdicated their duty to determine whether Lowe's satisfied their initial burden at summary judgment. In failing to do so, the District Court committed clear legal errors. DSAE respectfully requests the Federal Circuit reverse the District Court's decision of non-infringement in view of these abuses of discretion by the District Court.

### ii. In view of the narrow scope of Dr. Bretschneider's testimony, the District Court erroneously resolved factual disputes at summary judgment.

Aside from their failure to consider facts supporting DSAE's infringement contentions, the District Court made legal errors regarding their role when evaluating Dr. Bretschneider's testimony. The District Court's job at summary judgment was not to speculate whether a jury would find Dr. Bretschneider's testimony persuasive—and yet the District Court seemed to do just that.

Lowe's provided two declarations to support summary judgment of non-infringement as to the "metal housing": (1) "Stimpson Decl., Ex. C, at 1-3" and (2) "Bretschneider Decl. ¶¶12-24." Appx0489, lines 6-9. Dr.

Bretschneider's testimony did *not* address DSAE's March 20, 2024 Infringement Contentions regarding the accused metal housing. Appx0499, line 14 to Appx0502, line 4. Therefore, Dr. Bretschneider's affidavit does not completely preclude a jury from finding the accused metal housing is a "metal housing" as construed by the District Court.

Consider *arguendo* that Dr. Bretschneider's testimony was actually meant to address the accused metal housing. Dr. Bretschneider alleged that "any physical inspection of the products" would show "the housings are all comprised of…plastic". Appx0499, ¶14. If this was meant to address the accused metal housing, there is absolutely no explanation as to how Dr. Bretschneider arrived at this conclusion when viewing the accused metal housing. *Id*. The District Court should not have found this to be substantial evidence because it is merely a conclusory statement of a purported expert[10]. See, *e.g.*, *Trs. Of Box. Univ. Everlight Elecs. Co.*,

_____

[10] Dr. Bretschneider's resume was not attached to Lowe's principal summary judgment brief, and was only included in Lowe's reply brief.

896 F. 3d 1357, 1362-65 (Fed. Cir. 2018); and *WBIP, LLC v. Kohler Co.*, 829 F. 3d 1317, 1337-1339 (Fed. Cir. 2016).

Dr. Bretschneider admits he "was asked to determine the makeup of *the housing* of those fixtures", implying that Lowe's directed Dr. Bretschneider to limit his testimony to only what Lowe's purported "the housing" to be. Appx0499, ¶13 (emphasis added). The piece that the District Court refers to as the "plastic housing" or "plastic covering" appears to be what Dr. Bretschneider was told was the housing. Appx0500, lines 7-25 ("The image…of the back of the housing"); and Appx0019, lines 13-15 (the District Court equating the "white wafer piece" to a "plastic housing"). There is no evidence to suggest Dr. Bretschneider inspected the accused metal housing: the metal portion that houses the strip of LEDs, light diffusing lens, etc. Dr. Bretschneider's testimony is therefore very narrow in that respect.

Finally, and perhaps most importantly, Dr. Bretschneider's testimony was taken prior to the District Court announcing their claim construction, and presumably before Lowe's received DSAE's March 20, 2024

Infringement Contentions. Therefore, the District Court necessarily had to resolve this void between Dr. Bretschneider's narrow testimony and a jury being precluded from finding infringement. This was not the job of the District Court at summary judgment and should be considered an abuse of discretion.

### iii. In view of the narrow affidavit and letter from Lowe's counsel, the District Court erroneously resolved factual disputes at summary judgment.

Lowe's counsel's affidavit only cites to a letter he drafted. Appx0489, lines 6-9. In the letter, Lowe's counsel argues that the accused metal housing cannot be a "metal housing" because it is covered by the plastic wafer piece. Appx0519. However, nothing in Claim 1, much less the District Court's construction of "metal housing", precludes infringement when the metal housing is covered by a plastic wafer. Furthermore, it is well-established that adding a feature to an accused product will not preclude a finding of infringement where all elements of a patent claim are otherwise present. Appx0604, lines 11-13, citing *Vulcan Eng'g Co., Inc. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1375-76 (Fed. Cir. 2002).

Lowe's counsel's affidavit does not address the accused metal housing except to refer to it as "internal" because it is covered by the "plastic covering" referred to by the District Court. Appx0019, lines 13-15. Although DSAE did not have the District Court's construction at the time of submitting their opposition brief, the District Court's construction of "metal housing" did not subsequently limit the "metal housing" to something that is exclusively uncovered. This renders Lowe's counsel's arguments in his letter completely irrelevant in view of the District Court's claim construction.

Lowe's counsel provides no argument regarding why a jury would be precluded from returning a verdict in favor of DSAE. The possibility of a jury providing a favorable verdict to DSAE is never foreclosed by any affidavit or other evidence propounded by Lowe's at summary judgment. Therefore, and again, the District Court necessarily had to resolve this void between Lowe's counsel's narrow affidavit and the District Court's subsequent claim construction. In doing so, the District Court committed more legal errors that should be considered abuses of discretion.

## iv. Conclusion regarding the District Court's Abuses of Discretion at Summary Judgment

The affidavits of Stimpson and Dr. Bretschneider simply do not preclude a jury from finding the accused metal housing to be within the scope of the District Court's construction of "metal housing". This circumstance is similar to *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970), wherein the Supreme Court found that the affidavits submitted by a summary judgment movant did not negate an essential element of the nonmoving party's claim or defense. See *Nissan Fire & Marine Ins. Co.* at 1105 (9th Cir. 2000) ("by providing narrow…affidavits…, Kress failed to present evidence negating an essential element of Adickes' claim.") (modified). As explained by the Ninth Circuit, the Supreme Court in *Adickes* found that factual disputes were inappropriately resolved at summary judgment, at least in view of the district court granting summary based on the narrow affidavits. *Id*.

Similar to *Adickes*, the District Court must have resolved factual disputes to grant summary judgment of non-infringement in favor the moving party, Lowe's. Respectfully, DSAE asserts that the District Court

committed clear legal errors and gross errors of judgment by resolving factual disputes at summary judgment.

## B. Lowe's deliberately misled the District Court to circumvent their initial burden at summary judgment.

Lowe's grossly failed to meet their initial burden to "persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.,* 210 F.3d 1099, 1102 (9th Cir. 2000). Summary judgment is not "a substitute for discovery" where the movant can simply say that "the nonmoving party has no such evidence. *Id*. at 1105. Despite acknowledging this burden, Lowe's circumvented this requirement by submitting narrow and misleading affidavits.

Lowe's submitted expert testimony of Dr. Bretschneider, who indicated he "took apart the [Accused Products]" and that "any physical inspection of the products" would reveal that the "housings are plastic". Appx0499, lines 14-27. Dr. Bretschneider includes an image of the back side of the white wafer piece, confirming he was capable of examining what is under the white wafer. Appx0500. But he provides no discussion of the accused metal housing. Appx0499-0502. So, although DSAE's inspection likely

revealed the accused metal housing, and DSAE's Infringement Contentions expressly map the "metal housing" claim element to the accused metal housing, Dr. Bretschneider's nonetheless swears under oath that "*any* physical inspection of the products" reveals they have "housings that are plastic". *Id*. and Appx1383 (emphasis added).

Because Dr. Bretschneider was apparently not put on notice of DSAE's position regarding the accused metal housing, but *was* put on notice of Lowe's position, his testimony is not particularly reliable, much less helpful "to understand the evidence or determine a fact in issue". Fed. R. Evid. 702. Dr. Bretschneider's affidavit is just further evidence of Lowe's bad faith and wasteful litigation tactics. Lowe's certainly had time to solicit additional testimony from Dr. Bretschneider and did not need to rush their Rule 56 motion. Lowe's principal summary judgment brief did not even include Dr. Bretschneider's curriculum vitae, which should further show how Lowe's neglected to meet their initial burden at summary judgement. Appx0604, lines 26-27.

From DSAE's perspective, Lowe's intentionally[11] avoided addressing these assertions from DSAE's March 20, 2024 Infringement Contentions, considering they were served on Lowe's counsel *weeks* before filing their summary judgment motion on June 10, 2024. *Id.* and Appx0697. As a result, DSAE had "no obligation to produce anything". *Fritz Cos., Inc.,* at 1102-1103 (9th Cir. 2000). Nonetheless, DSAE *did* produce evidence, despite the pre-summary judgment record and DSAE's infringement contentions already pointing to the accused metal housing for satisfying the "metal housing" claim element. Appx0706, Appx0712, Appx0720, Appx0733, Appx0739, and Appx0747.

In opposing Lowe's summary judgment motion, DSAE provided the District Court with a physical exhibit, as well as images of the accused

---

[11] Lowe's summary judgment motion should be considered an abuse of Fed. R. Civ. P. 56 for many reasons. Not holding Lowe's accountable for this abuse risks denying future plaintiffs access to due process, especially for micro-entity plaintiffs.

metal housing. *Id.* and Appx0616, line 21 to Appx0617, line 1. Nonetheless, the District Court never appears to acknowledge the evidence presented by DSAE, and shockingly claims that DSAE did not provide any evidence. Appx0019, lines 12-15. For instance, the District Court erroneously concluded that "DS Advanced offers no evidence to rebut Dr. Eric Bretschneider's analysis…apart from its…proposed claim construction". *Id.* The District Court's summary judgment opinion provides no indication that this evidence was actually compared to their construction of "metal housing". Appx0013-20, generally. The District Court avoids providing any reasoning why a jury would be precluded from weighing this evidence and returning a verdict for DSAE.

In summary, the District Court should have taken more care to follow the appropriate standards under Fed. R. Civ. P. 56. The Accused Products have a metal housing, as construed by the District Court, and Lowe's less-than-innovative design around effort should not have been rewarded with summary judgment. DSAE respectfully requests the Federal Circuit find that the District Court abused their discretion, and order the District

Court's non-infringement decision to be reversed.

## C. The District Court repeatedly misconstrued DSAE's infringement arguments to be claim construction arguments, further evidencing their error in judgment.

The District Court determined non-infringement at summary judgment based on their claim construction of "metal housing" and their "straight forward visual confirmation" of Lowe's physical sample of the Accused Products. Appx0019, lines 15-16. In deciding in favor of Lowe's, the District Court falsely alleged:

> "DS Advanced offer[ed] *no evidence* to rebut Dr. Eric Bretschneider's analysis and conclusion related to the plastic housing, apart from its somewhat tortured proposed claim construction of 'metal housing' which the Court rejects."

Appx0019, lines 12-15 (modified and emphasis added).

As discussed above, DSAE's opposition attached a physical exhibit 12, which DSAE described in their opposition memo as being within the scope of the claimed metal housing. Appx0616, lines 21-28. This, along with many pictures of the accused metal housing, rebuts Dr. Bretschneider's testimony, and were not addressed by Lowe's or Dr. Bretschneider. Appx0499, ¶14.

Upon receiving this evidence, the District Court erroneously interpreted the evidence for a "tortured" claim construction, presumably to avoid the appearance of weighing evidence at summary judgment. It is shocking that DSAE's emphasis on plain meanings of words such as "embody" (*e.g.*, give shape or form to) and "housing" (*e.g.*, something that covers or protects) was viewed with disdain and ultimately mischaracterized by the District Court, over and over again. Appx0635 and Appx0637; Appx1718, lines 1-3; Appx1936, line 24 (District Court: "Well, there's this, and this and this, and so all of this is part of the complete structure; and therefore, there's metal,"). These and other statements from the District Court have led DSAE's counsel to question the impartiality of the District Court.

Over and over again, the District Court received infringement arguments but then purposefully misconstrued them as claim construction arguments. This cannot be an accident when the result repeatedly favors one party. As another example, the District Court provided as follows:

> DS Advanced illustrates in its *infringement* contentions that in the accused device there are wires passing through an opening in the 'white wafer piece' (i.e., the plastic housing) connecting to a circuit board on a metal disk contained therein. Therefore,

DS Advanced argues the metal disk with the circuit board constitutes the 'metal housing.' This approach to *claim construction* based on the configuration of the accused device however is misplaced.

Appx0019, lines 13-18 (emphasis added).

In other words, the District Court acknowledges DSAE is making an "*infringement*" argument but then purposefully misconstrues the argument to be a "*claim construction*" argument. *Id*. This and so many other rationales from the District Court are so disappointing. The District Court seems akin to a vehicle on autopilot, erroneously prioritizing getting a trip over with, rather than taking the correct path. The Federal Circuit should have a firm conviction that the District Court made multiple different errors in their judgment.

## D. Lowe's litigation tactics reliably fall well below the standards set by Rule 56 and Rule 11.

Prior to Lowe's motion for summary judgment, Lowe's was served with DSAE's Infringement Contentions on March 20, 2024, and those contentions are typically treated like interrogatories in the Ninth Circuit. Appx0621, lines 24-28, citing *Apple Inc. v. Samsung Elecs. Co.*, No.: 12-CV-0630- LHK (PSG) (N.D. Cal. Jun. 26, 2013). But, despite being

required to, Lowe's summary judgment motion did not substantively address the disputed material facts set forth in DSAE's March 20, 2024 Infringement Contentions. Appx0697, Appx0706, Appx0712, Appx0720, Appx0733, Appx0739, and Appx0747-.

The only attempt to address DSAE's position regarding the accused metal housing involved Lowe's deliberately misconstruing DSAE's position regarding the accused metal housing. Appx0489, lines 5-12. The closest thing to an argument is when Lowe's alleges "All of Plaintiff's arguments have been consistently frivolous", which of course is merely conclusory and not in good faith. *Id*. Lowe's purporting to summarize DSAE's position also cannot be reasonably construed as an argument in rebuttal (*e.g.*, "parts being housed[] should be considered part of the housing itself."). *Id*. (modified). Instead of making any good faith argument regarding the accused metal housing, Lowe's simply points back to the white wafer piece. *Id*.

Lowe's avoids making any substantive argument regarding why their proposed claim construction of "metal housing" does not read on the

accused metal housing that houses the strip of LEDs, diffuser lens, etc. DSAE's formal infringement contentions pointed to the accused metal housing when addressing both Claims 1 and 3, but Lowe's never addressed this in their summary judgment motion. See *Id*. compared to Appx0706, Appx0712, and Appx0720. Lowe's was required to address those contentions regarding the accused metal housing, but ignored them in violation of binding precedent. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 336-337 (1986) (movant cannot ignore supporting evidence that the record clearly contained). Instead, Lowe's counsel misconstrued DSAE's position, and the District Court seemed to not bat an eye.

In their Notice, Lowe's counsel signs their statement per Fed. R. Civ. P. 11 indicating a factual contention that "There is no genuine dispute of material fact". ECF 34-1, pg.2. Their statement is one of many patently false statements Lowe's submitted to the District Court. Lowe's counsel had weeks to "stop and think" and make a reasonable inquiry before submitting their sworn statements. *Stewart v. American International Oil & Gas Co.*, 845 F. 2d 196 (9th Cir. 1988). Lowe's knew of DSAE's

position regarding the accused metal housing, despite their constant gaslighting. Appx1642, lines 1-16. Lowe's veracity has been questionable throughout this entire litigation[12]. DSAE emphasized this in their summary judgement opposition brief, and expressly asked that DSAE be awarded attorney's fees in view of Lowe's making such a wasteful use of Rule 56. Appx0621, lines 24-26 (DSAE arguing, "[p]er FRCP 11(b)(4) and 56(h), Defendant's Motion is in bad faith for unprecedentedly evading Plaintiff's Infringement Contentions") (modified).

## C. Conclusion.

DSAE respectfully requests the Federal Circuit reverse the District Court's non-infringement order and find that the accused metal housing is within the scope of the District Court's construction of "metal housing". In doing so, DSAE respectfully requests reversal of the District Court's (1) denial of DSAE's post judgment motion and (2) granting of summary judgment of non-infringement. The Federal Court should find that the District Court grossly abdicated their duty to apply the appropriate

---

[12] See, *e.g.*, ECF No. 23 at pg. 5, lines 19-20; ECF No. 81 at pg. 8, lines 8-19.

standards for such motions. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Upon remand, the previously-scheduled *Markman* hearing should be held, without re-construing the "metal housing (108)" claim element. DSAE should also be awarded their attorney's fees for having to defendant against, and appeal, Lowe's erroneous summary judgment motion. There should be no question that Lowe's summary judgment motion was an abuse of Fed. R. Civ. P. 56 meant to interfere with DSAE's right to due process.

# III. The District Court's order alleging a Protective Order violation should be reversed because the remedial obligations of the Protective Order were followed and because some disclosed material is subject to the exclusion clause of the Protective Order.

## Standard of Review

In the Ninth Circuit, a district court's selection of legal standards is reviewed de novo. *United States v. National Medical Enterprises, Inc.*, 792 F. 2d 906, 910-911 (9th Cir. 1986). The Ninth Circuit reviews findings of fact in connection with a motion for sanctions under the clearly erroneous standard. *Id.* If the district court failed to make factual findings in response to objections, sanctions under Fed. R. Civ. P. 37 are reviewed de novo. *United States for the Use and Benefit of Wiltec Guam, Inc. v. Kahaluuu Construction Co.*, 857 F.2d 600, 603 (9th Cir. 1988).

For protective order violations, the Federal Circuit reviews a district court's decision to sanction and the choice of an appropriate sanction under an abuse of discretion standard. *Static Media LLC v. Leader Accessories LLC*, Case No. 21-2303, 39 at pg. 6 (Fed. Cir. 2022). Abuse of discretion is found when: (1) a district court makes an error of law, (2)

rests its decision on clearly erroneous findings of fact, or (3) when the reviewing court is left with a definite and firm conviction that the district court committed a clear error of judgment. *Lujan*, at 933 (9th Cir. 2013).

For discovery sanctions, the Ninth Circuit allows for "a compensatory award [that] is limited to the 'actual losses sustained as a result of the contumacy.'" *Shuffler*, at 1148 (9th Cir. 1983) (modified).

## A. De novo review of the Protective Order should reveal the remedial requirements and exceptions clause of the Protective Order.

Upon reviewing the relevant legal standards de novo, the Federal Circuit should find that the Protective Order contemplates incidental disclosures and sets forth obligations for preventing further disclosure in such instances. See attached Protective Order at ¶15. The Protective Order also includes an exclusion clause that makes crystal clear: if a person "already has or obtains legitimate possession" of information, then the "restrictions and obligations" within the Protective Order are not prohibitive of discussions of the information with that person. *Id*. at ¶30. These portions of the Protective Order form the standards to which the

facts regarding the alleged Protective Order violations should be applied.

The District Court's interpretation of the Protective Order should be considered erroneous because it renders the exclusion clause meaningless and allows Lowe's to unilaterally deprive DSAE of access to discuss DSAE's own materials with counsel. *Miguel Munoz*, Case No.: 2:21-cv-00186-SU, 35 at pg. 5 (D. Or. 2021) (modified) (denying defendant's motion to limit plaintiff's use of documents for being contrary to the "plain meaning and purpose of the protective order's exclusion clause").

## B. The Product Images and Messages at issue were never subject to the limitations of the Protective Order per the exclusion clause of the Protective Order.

Despite DSAE making the appropriate objections, the District Court failed to make factual findings regarding whether the Product Images and Messages were subject to the restrictions and obligations of the Protective Order. For this reason, the Federal Circuit should make these factual findings de novo. *Kahaluuu Construction Co.*, at 603 (9th Cir. 1988).

In DSAE's objections, DSAE expressly cited to the exclusion clause at paragraph 30 of the Protective Order; and DSAE propounded evidence

showing how the "information included in the Second Supplemental Response was already available to DSAE and [thus] not subject to the Protect[ive] Order". Appx1943, lines 5-7 (modified); and Appx1192, lines 22-28. DSAE emphasized and argued that the information alleged to have been disclosed in violation of the Protective Order included Product Images of DSAE's *own* Covered Products, and Messages in furtherance of a contract between DSAE and their Marketing Specialist. Appx1946, line 26 to Appx1947, line 7; and Appx1944, footnote 1.

As discussed above, the Product Images appeared in internal presentations produced by Lowe's during discovery, and those Product Images are the exact same images from a 2021 Purchase Order DSAE received from their preferred manufacturer. Appx1288; Appx1284; and Appx1314, ¶¶12-13. Not even an entire page of any confidential presentation was disclosed, only the Product Images in isolation in an interrogatory response regarding secondary considerations of non-obviousness. Appx1812.

In support of the objections, DSAE provided a copy of the April 13, 2021 Purchase Order 149907823 to the District Court, with a supporting

affidavit from David, to prove that those Product Images were already available to DSAE. Appx1288; Appx1284; and Appx1314, ¶13. Similarly, regarding the Messages, DSAE provided the District Court with excerpts from a contract between DSAE and the Marketing Specialist, along with David's affidavit attesting to the existence of the contract. Appx1313, ¶¶9-10; Appx1300. Lowe's did not provide any evidence for the District Court to weigh against DSAE's evidence.

Because DSAE already had "legitimate possession" of this information that Lowe's designated as confidential, the "restrictions and obligations within [the Protective] Order [are] not deemed to prohibit discussions of any confidential information". Protective Order, ¶30. Lowe's provided no evidence to the contrary but instead asserted:

> "Whether the images are the same, and which entity was the first to create them, are questions for which discovery has not provided answers, but regardless they are questions irrelevant to this motion."

ECF No. 75 at pg. 5, lines 19-22.

Lowe's ultimately provided no evidence to rebut DSAE's evidence and testimony supporting DSAE's contentions that the Product Images and

Messages were already available to DSAE. Lowe's could have answered this during discovery but repeatedly refused to answer DSAE's request for admission No. 4. Appx0950-0951; and Appx1147-1148. DSAE even asked the District Court for additional time to conduct discovery to resolve this issue. Appx1192, lines 26-28. But still, upon being presented with this evidence, the District Court claimed to have "considered DS Advanced's objections *de novo*", and then deemed them "overruled" or "moot." Appx0042, lines 11-12.

DSAE respectfully asks this Federal Circuit to consider the District Court's failure to make factual findings a clear legal error and abuse of discretion. *Lujan*, 734 F.3d 917 (9th Cir. 2013). Again, despite acknowledging DSAE's objection that "the information disclosed in violation of the Protective Order was already known to DS Advanced", the District Court never made factual findings regarding whether paragraph 30 rendered the information not subject to the restrictions and obligations of the Protective Order. Appx1192, lines 15-25. 28 U.S.C. § 636(b)(1)(C).

### C. De novo weighing of each Party's factual assertions will reveal that the Product Images and Messages were available to DSAE before this Case was initiated, and thus not subject to the Protective Order.

DSAE respectfully asks the Federal Circuit make de novo findings in view of the District Court committing legal error by failing to make de novo factual findings in response to DSAE's objections. *Kahaluuu Construction Co.*, 857 F.2d 600, 603 (9th Cir. 1988). The District Court was required to make de novo factual findings in response to DSAE's objections to the Magistrate's report and recommendation. 28 U.S.C. § 636(b)(1)(C).

The District Court expressly acknowledged DSAE's arguments and objections regarding the exclusion clause, but made no attempt to make de novo findings of fact regarding this objection. See Appx0040 at lines 14-16 ("DS Advanced asserted then and reasserts now that the information disclosed in violation of the Protective Order was already known to DS Advanced"). The District Court then quickly deferred to the Magistrate's findings regarding the objection by stating: "the magistrate judge found however DS Advanced did not follow the Protective Order

procedures to challenge the designation prior to counsel disclosing the materials to his client." *Id.*, lines 16-19. Despite acknowledging DSAE's objection, the District Court made no factual findings regarding whether the information disclosed was already available to DSAE. *Id.*

The District Court may have construed the Protective Order to necessitate a designation challenge before C-FCO information can be discussed with the non-designating party. But nothing in the plain language of Paragraph 30 of the Protective Order supports such an interpretation. Appx1943, lines 5-8, citing ECF No. 32 at ¶30. See *Miguel Munoz*, Case No.: 2:21-cv-00186-SU, 35 at pg. 5 (D. Or. 2021); and *Static Media LLC* at pg. 11 (Fed. Cir. 2022).

In view of this omission, DSAE respectfully asks the Federal Circuit to make de novo findings regarding whether the Product Images and Messages were already available to DSAE. Making such findings of fact would not require weighing of evidence considering Lowe's provided no evidence to counter DSAE's contentions. The Federal Circuit can then apply that determination to Paragraph 30 of the Protective Order to find

that those materials were never subject to the restrictions and obligations of the Protective Order. *Kahaluuu Construction Co.*, 857 F.2d 600, 603 (9th Cir. 1988).

The facts of particular relevance are the April 13, 2021 Purchase Order 149907823 that included the Product Images, DSAE's agreement with the Marketing Specialist, other messages from the same email thread between the Marketing Specialist and Lowe's already on the public record (Appx0941-0943), David's affidavit authenticating the April 13, 2021 Purchase Order 149907823 (Appx1314, ¶11-14), and DSAE's agreement with the Marketing Specialist (Appx1300 and Appx1313, ¶10). Lowe's had multiple opportunities to rebut this evidence but did not provide any substantive evidence for the District Court to weigh.

Lowe's only purported evidence is a false or intentionally misleading allegation. Lowe's asserted that, in DSAE's opposition memo, DSAE's counsel admitted the Second Supplement violated the Protective Order. Appx1957, line 23 to Appx1958, line 3. In support of their assertion, Lowe's asked the District Court to compare "pre-motion correspondence"

with the "sanctions motion opposition" to find this admission. *Id*. The pre-motion correspondence refers to 5 emails exchanged between DSAE's counsel and Lowe's counsel that occurred *before* the Second Supplement was provided on August 1, 2024, and those emails make no mention of the Product Images or Messages. Appx1060-1063 (Lowe's counsel taking issue with "sales numbers", and DSAE's counsel indicating catalog snippet disclosed) compared to Appx1319, ¶¶22-26 (DSAE's counsel expressing an apology but not admitting to a violation of the Protective Order).

Lowe's citation to the "sanctions motion opposition" refers to paragraphs of DSAE's counsel's affidavit that provide a timeline of certain events. Appx1317-1321. The cited portion shows DSAE's counsel acknowledging an apology to Lowe's counsel. However, DSAE's counsel never concedes or admits that David's viewing of the Product Images and Messages was a violation of the Protective Order. *Id*., Appx1261, and Appx1263 (modified).

Lowe's appears to be arguing that, because DSAE's counsel admits that

David viewed certain C-FCO materials, DSAE's counsel was therefore admitting that the Protective Order was violated. But this is an unreasonable leap to make in view of the cited emails. Those emails are not where the evidence on this issue stops. DSAE's counsel's expression of regret or offering an apology should not be construed as an admission that David's viewing of the emails with DSAE's Marketing Specialist violated the Protective Order. DSAE's counsel's actions of apologizing, supplementing interrogatory responses, and providing affidavits were all in furtherance of remedying what Lowe's was alleging to be a harmful disclosure. Amicably remedying Lowe's alleged discovery issue was the most reasonable course of action in the context of DSAE's ongoing discovery dispute regarding DSAE's Requests for Admissions Nos. 3 and 4.

Before Lowe's filed their motion to enforce the Protective Order, DSAE's counsel put Lowe's on express notice of DSAE's position regarding whether David's viewing of the Product Images and Messages violated the Protective Order:

> [DSAE has] various reasons for [their] apprehension regarding a broader elimination of evidence. For example, the images in the interrogatory response were already available to the plaintiff and are only distinguished from the native [Purchase Order] by the blue background and their arrangement. Additionally, the email that was attached to the interrogatory involved Matt Varnell, who was under contract with Plaintiff at the time of the email (see PLNTF101977).

Appx1269 (modified).

This correspondence to Lowe's counsel occurred *before* Lowe's filed their protective order motion on September 9, 2024. *Id*.

In conclusion, upon weighing of evidence de novo, the Federal Circuit should find that the Product Images and Messages were already available to DSAE, well before this Case was initiated.

## D. DSAE counsel did not violate the Protective Order's remedial instructions for avoiding further disclosure, and the Protective Order does not contemplate recovery of attorney's fees for incidental disclosure to a party solely for limited use in this litigation.

Despite incidental disclosure to parties being contemplated by the Protective Order, and despite the Magistrate finding that DSAE took remedial action to limit further disclosure as the Protective Order requires,

the District Court found the Protective Order to have been violated when David viewed three confidential sales numbers during signing of an interrogatory response. Appx0024 and Appx0039. In view of the obligations in the Protective Order being satisfied, and the nature and the purpose of the Protective Order, the Federal Court should find that the District Court abused its discretion in ordering DSAE's counsel pay $25,000 in attorney's fees.

In furtherance of satisfying Fed. R. Civ. P. 33, DSAE's counsel requested David sign the First Supplement via an electronic signature request. Appx1317, ¶9. Three confidential sales numbers were included in the First Supplement because Lowe's interrogatory requested DSAE's position on secondary considerations of non-obviousness (*e.g.*,

commercial success, evidence of copying, etc.). Appx0032, lines 1-9.[13]

The disclosure and signing were solely for the purposes of this litigation

and the three sales numbers were never revealed to anyone else besides

David, the person to whom Lowe's Integratory No. 12 was directed.

Appx1321, ¶33; and Appx0033, lines 3-6.

Respectfully, DSAE contends that the majority *and* dissent in *Static*

*Media LLC* may both agree that the District Court abused their discretion

by ordering DSAE's counsel to pay attorneys' fees.

> Protective orders, such as the one at issue in this case,
> operate as an agreement between the parties meant to
> promote an efficient discovery process, while
> safeguarding the secrets and proprietary information of
> the parties.
>
> In exchange for the ability to review such information,
> outside counsel agrees to protect against the disclosure
> of the confidential information to persons outside of that

---

[13] DSAE's counsel expressly took responsibility and apologized for this

mistake regarding the three sales numbers. Appx1192, lines 15-20.

Lowe's falsely states that DSAE's counsel did not take responsibility.

Appx1957, lines 5-10. See also, Appx1328, ¶13.

particular litigation.

*Static Media LLC* at pgs. 16-17 (Fed. Cir. 2022) (Honorable Judge Reyna, dissenting).

> []It was objectively reasonable to interpret the protective order as prohibiting only the public disclosure of documents or disclosure to a third party not bound by the protective order.

*Id.* at pgs. 11-14 (majority's opinion; modified).

Similar to the protective order in *Static Media LLC*, the operative Protective Order in this Case expressly emphasizes the "competitive reasons" for keeping materials confidential, and that "the purpose of [the Protective Order] is to protect the confidentiality of such materials as much as practical during the litigation." Protective Order at pg. 4, line 25 to pg. 4, line 5 (modified); and *Static Media LLC* at pg. 11 (Fed. Cir. 2022) ("the protective order exists to prevent injury, damage, or competitive disadvantages resulting from public disclosure of the information"). In this Case, the Magistrate's report does not even consider DSAE to be a competitor of Lowe's, much less a competitor that could cause Lowe's any harm. Appx0031, line 25 to Appx0032, line 13.

When Lowe's alleged the disclosure of the sales numbers was improper, DSAE's counsel followed the Protective Order's instructions to prevent further disclosure to a non-party. *Id*., lines 22-25. The Magistrate found that DSAE's counsel followed the proper remedial steps to prevent further disclosure to a non-party. Appx0032, lines 6-13.

Lowe's avoids acknowledging this in their principal brief, and hardly sought any attorneys' fees for the time period when DSAE and DSAE's counsel were requested to provide, and then provided, affidavits in pursuit of resolving Lowe's concerns. Appx1034 (see motion, generally); and Appx1930 (summaries of billed time); and Appx1317-1321 (attesting to events occurring between July 29, 2024 and August 3, 2024).

The Rule cited by the Magistrate's Report and Lowe's, Fed. R. Civ. P. 37(b), makes clear that upon finding a party "fail[ed] to obey an order to provide or permit discovery", a court must order the disobedient party to pay the movant's expenses unless the failure was substantially justified. *Id*. at § (b)(2)(C). The Ninth Circuit does permit sanctions for Protective Order violations under Rule 37. However, DSAE's counsel was found to

have followed the remedial Protective Order's obligations for incidental disclosures. Protective Order at ¶¶15 and 30. The Parties stipulated to those obligations and remedies and the District Court made the stipulation enforceable. Discovery issues stemming from the alleged violation were resolved without requiring further intervention by the District Court. No non-party received any of Lowe's confidential materials.

The Protective Order requires the disclosing party to "make every effort to prevent further disclosure by the party", and DSAE and DSAE's counsel did just that. Protective Order at ¶15. In furtherance of satisfying the Protective Order, DSAE's counsel served affidavits detailing the disclosure and remedial measures taken to prevent further disclosure. The attached affidavits detail those measures taken by DSAE and DSAE's counsel nearly every day between July 29, 2023 to August 3, 2024 before Lowe's expressly confirmed the issue was "resolved". See Appx1318, ¶16 to Appx1321, ¶36. In the end, there was no "further disclosure by the party". Protective Order at ¶15.

The docusign process at issue was in furtherance of satisfying Fed. R.

Civ. P. 33, since Lowe's interrogatory #12 solicited DSAE's position on secondary considerations of non-obviousness. Fed. R. Civ. P. 33(a)(2). Furthermore, DSAE's counsel acted swiftly to satisfy the remedial actions to avoid further disclosure, thereby satisfying the obligations of the Protective Order.

For these reasons, the Federal Circuit should find that the District Court committed clear legal error by not adhering to the language of the Protective Order. Additionally, the Federal Circuit should find that the District Court abused their discretion for not making findings of fact in response to DSAE's objections. *M.D. v. Newport-Mesa Unified Sch. Dist.*, No.14-56443, pg. 8 (9th Cir. 2016) (reversing district court for abuse of discretion when district court's decision is "[]not supported by the record").

## E. The attorney's fee order is an abuse of discretion because the Magistrate and District Court did not find any harm caused by the alleged protective order violations.

As acknowledge by the Magistrate, the Ninth Circuit allows for "a compensatory award [that] is limited to the 'actual losses sustained as a

result of the contumacy.'" *Shuffler*, at 1148 (9th Cir. 1983), cited at Appx0028, lines 20-23. Seemingly in furtherance of making factual findings regarding harm to Lowe's, the Magistrate *expressly* indicated that any alleged harm was "purely speculative". Appx032, lines 6-10.

Despite finding only speculative harm or loss, and despite DSAE following the remedial instructions in the Protective Order, the Magistrate recommended sanctioning DSAE's counsel. The Federal Circuit should consider this to be a clear error of law and judgment, as no actual loss or harm was found to apply to any rule or law. *Technatomy Corp., v. The United States*, No. 19-369C, pg. 2 (Fed. Cir. March 28, 2019) (opinion designated as not for publication) (finding no competitive harm under circumstances of disclosure).

### F. The attorney's fees for two very different motions cannot be fairly justified as the harm caused by the alleged protective order violation.

DSAE objected to paying attorney's fees "billed *before* the purported 9/3/24 meet and confer," but the District Court erroneously read this objection to be directed to the time spent *during* the meet and confer—not

what occurred "before" the meet and confer. See Appx1947, lines 9-11 (DSAE's objection, emphasis added) compared to Appx0041, lines 13-14. As a result, and instead of addressing the actual objection *de novo*, the District Court devoted a couple of sentences to the importance of meet and confers. Appx0041, lines 14-20.

Almost immediately after alleging the protective order violation, Lowe's expressly indicated that they would be motioning for an order requiring affidavits from DSAE and DSAE's counsel. Appx1204. Lowe's seemingly had buyer's remorse considering they still wanted their request for affidavits to go before the Magistrate after receiving the affidavits. Appx1213, lines 17-18 (Lowe's counsel: "I have the declaration….This needs to be addressed by the court order….this is going to the court Monday") (modified). It was only *after* suitable affidavits were served that Lowe's proposed meeting and conferring regarding a Rule 37 sanctions motion to limit DSAE's ability to use certain evidence of secondary considerations. Appx1253.

The subsequent meet and confer should *not* have been considered by

the District Court as the earliest time for which Lowe's started experiencing harm, at least in the context of this Case. In this Case, DSAE acted swiftly to comply with the demands of Lowe's to resolve the alleged Protective Order violation with respect to the sales numbers. When those demands were satisfied and Lowe's indicated as much on August 8, 2024, Lowe's subsequently wanted the opportunity to limit DSAE's ability to use evidence of secondary considerations. Appx1252 and Appx1249. Lowe's identified a separate reason to motion for sanctions and on August 27, 2024, and Lowe's proposed a meet and confer regarding a different motion for sanctions. Appx1259 and Appx1261. Lowe's had initially sought to enforce the Protective Order by requiring affidavits from DSAE and DSAE's counsel. Appx1204. Although all Parties consumed resources to accomplish this, Lowe's ultimately did not need to file any motion to obtain those affidavits.

For at least these reasons, DSAE should not have been ordered to pay attorney's fees for time billed *during and after* that meet and confer. Appx1954-1955, and Appx1259. The Federal Circuit should therefore

find this award of attorney's fees to be a legal error considering the attorney's fees were for time spent after Lowe's was satisfied with the affidavits from DSAE and DSAE's counsel. *Shuffler*, at 1148 (9th Cir. 1983).

## G. The District Court, as a matter of law, erroneously construed the Protective Order as requiring designation objections to be resolved before a non-designating party can discuss already-available materials with counsel.

The District Court and Magistrate erroneously conflated discussions between a party and party's counsel, and making material publicly available (*e.g.*, filing on the public record). This error led to the District Court unjustly ordering DSAE's counsel to pay attorneys' fees for an alleged Protective Order violation. DSAE respectfully requests the Federal Circuit reverse the District Court's granting of Lowe's motion to enforce the Protective Order and reverse the Magistrate's granting of sealing of LHC_000812.

The Magistrate considered Lowe's motion to enforce the protective order to be seeking "potentially dispositive sanctions", thereby requiring Lowe's to satisfy the heightened standard for sealing Lowe's Exhibit A,

LHC_000812, Lowe's internal presentation that includes DSAE's Product Images. Appx0022, lines 3-9. The Magistrate indicates that Lowe's satisfied this heightened standard by asserting the documents to be sealed disclose "sensitive commercial information." Appx0023, lines 6-7. The only argument Lowe's set forth for sealing "one of the diagrams" of "certain proposed LHC products" was that competitors could develop an identical product without incurring research costs. Appx1031, lines 17-19.

DSAE's contention is, in part, that the Magistrate abdicated their duty to weigh Lowe's evidence with the evidence DSAE's submitted in opposition to sealing LHC_000812, at least at the last page. Appx1166, generally. The Magistrate even acknowledges DSAE's position to some degree. Appx0022, lines 5-9. DSAE had explained how the Product Images were included in Purchase Orders for DSAE's Covered Products, well before this Case was initiated, and that Lowe's took "no position" with respect to the confidential designation of the Purchase Order. Appx1167-1174.

The District Court and Magistrate effectively decided that the public's

interest in judicial records, and DSAE's evidence in opposition to sealing, was outweighed by Lowe's bare assertion. The District Court and Magistrate provide no rationale as to why Lowe's brief argument should trump DSAE's evidence and the public interest in having access to judicial records. Nonetheless, this was not the same standard to be met for determining whether a party can discuss already-available materials. The materials alleged by Lowe's to have been disclosed in violation of the Protective Order were not disclosed to a third-party, much less made accessible to the general public. The Federal Circuit should therefore find that any alleged Protective Order violation by Lowe's was either not a violation, or at least not a violation of a court order warranting payment of attorney's fees.

## Conclusion and Statement of Relief Sought

DSAE respectfully asks the Court of Appeals for the Federal Circuit to grant the following relief:

1. Find that the accused metal housing of the Accused Products falls within the District Court's construction of "metal housing (108)".

2. Reverse the District Court's order, Appx0048, denying DSAE's Rule 52/59 Motion.

3. Reverse the District Court's order, Appx0013, granting Lowe's Rule 56 Motion.

4. Find that DSAE's counsel did not violate the Protective Order.

5. Reverse the District Court's order, Appx0039, granting Lowe's Motion to Enforce the Protective Order.

6. Find the Magistrate's Report, Appx0024, to be an abuse of discretion.

7. Reverse the Magistrate's order, Appx0021, granting of sealing of LHC_000812.

8. Reassign Case to different District Court Judge or different District Court.

Respectfully submitted,

Cummins IP Law PLLC

By: */s/ Patrick D. Cummins*,

Patrick D. Cummins

*Attorney for Plaintiff-Appellant,*

*DS Advanced Enterprises, Ltd.*

Dated: October 24, 2025

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

## Certificate of Compliance with Type-Volume Limitations

Case Number: 25-1072; 25-1581

Short Case Caption: DS Advanced Enterprises, Ltd. v. Lowe's Home Centers, LLC

The foregoing corrected filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☒ the filing has been prepared using a proportionally-spaced typeface and includes <u>13963</u> words.

☐ the filing has been prepared using a monospaced typeface and includes
_____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____
_____).

Respectfully submitted,
Cummins IP Law PLLC
By: */s/ Patrick D. Cummins*,
Patrick D. Cummins
*Attorney for Plaintiff-Appellant,*
*DS Advanced Enterprises, Ltd.*
Dated: October 24, 2025

# Corrected Certificate of Service

I, Patrick D. Cummins, of full age, certify that on the 24th day of October 2025, I caused a copy of the foregoing Plaintiff-Appellant, DS Advanced Enterprises, Ltd.'s (DSAE) Corrected Brief to be served via ECF on:

> Scott D. Stimpson, and
> Katherine M. Lieb of
> SILLS CUMMIS & GROSS P.C.
> 101 Park Avenue, 28th Floor
> New York, New York 10178
> *Attorneys for Defendant - Cross-Appellant,*
> *Lowe's Home Centers, LLC*

I certify under penalty of perjury that the foregoing is true and correct.

By: */s/ Patrick D. Cummins*,
Patrick D. Cummins
*Attorney for Plaintiff-Appellant,*
*DS Advanced Enterprises, Ltd.*
Dated: October 24, 2025

Case number: 25-1072; 25-1581

# UNITED STATES COURT OF APPEALS

# FOR THE FEDERAL CIRCUIT

DS ADVANCED ENTERPRISES, LTD.,

*Plaintiff-Appellant*

v.

LOWE'S HOME CENTERS, LLC,

*Defendant-Cross-Appellant*

# Appellant's Corrected Brief Addendum

# DS ADVANCED ENTERPRISES, LTD. v. LOWE'S HOME CENTERS, LLC

Case Number:    25-1072; 25-1581

# APPELLANT'S CORRECTED BRIEF ADDENDUM

## TABLE OF CONTENTS

**Protective Orders**                                                                    **Page**

Joint Protective Order (March 21, 2024)

(ECF 33) ........................................................................................i

**Patent**

US Patent 11,054,118 Patent

(ECF N/A, USPTO)....................................................Appx0001

**Judgments**

Rule 56 Order (September 30, 2024)

(ECF 67) ...................................................................Appx0013

Order to Seal (January 24, 2025)

(ECF 97) ...................................................................Appx0021

Report and Recommendation for Sanctions (January 24, 2025)

(ECF 99) ...................................................................Appx0024

**Judgments**                                                      **Pages**

Order Adopting Sanctions Report (February 24, 2025)

(ECF 107) ....................................................................Appx0039

Attorney's Fees Order (February 24, 2025)

(ECF 108) ....................................................................Appx0043

Rule 52/59 Order (February 24, 2025)

(ECF 109) ....................................................................Appx0048

Final Judgment Minute Order (February 24, 2025)

(ECF 110) ....................................................................Appx0052

Final Judgment Order (February 25, 2025)

(ECF 111) ....................................................................Appx0053

1
2
3
4
5
6
7
8       **UNITED STATES DISTRICT COURT**

9       **SOUTHERN DISTRICT OF CALIFORNIA**

10
11  DS ADVANCED ENTERPRISES,          Case No. 3:23-cv-01335-CAB-JLB
    LTD., a Corporation,
12                                    **ORDER GRANTING JOINT**
                 Plaintiff,           **MOTION TO ENTER**
13                                    **PROTECTIVE ORDER [ECF 32]**
         v.
14
    LOWE'S HOME CENTERS, LLC, a
15  Corporation,

16               Defendant.

17
18
19
20       The parties' Joint Motion to Enter Protective Order is **GRANTED** and the

21  stipulated terms, as set forth in the joint motion, (*see* ECF 32), are hereby adopted and

22  entered as an order of this Court as set forth below.[1]

23       The Court recognizes that at least some of the documents and information

24  ("materials") being sought through discovery in the above-captioned action are, for

25  competitive reasons, normally kept confidential by the parties.  The parties have agreed

26
27  _____

28  [1] The Court has made slight revisions to Paragraphs 18, 19, and 33.

to be bound by the terms of this Protective Order ("Order") in this action.

The materials to be exchanged throughout the course of the litigation between the parties may contain trade secret or other confidential research, technical, cost, price, marketing or other commercial information, as is contemplated by Federal Rule of Civil Procedure 26(c)(1)(G).   The purpose of this Order is to protect the confidentiality of such materials as much as practical during the litigation.  THEREFORE:

## DEFINITIONS

1.    The term "confidential information" will mean and include information contained or disclosed in any materials, including documents, portions of documents, answers to interrogatories and requests for admissions, trial testimony, deposition testimony, and transcripts of trial testimony and depositions, including data, summaries, and compilations derived therefrom that is deemed to be confidential information by any party to which it belongs.

2.    The term "materials" will include, but is not limited to: documents; correspondence; memoranda; bulletins; blueprints; specifications; customer lists or other material that identify customers or potential customers; price lists or schedules or other matter identifying pricing; minutes; telegrams; letters; statements; cancelled checks; contracts; invoices; drafts; books of account; worksheets; notes of conversations; desk diaries; appointment books; expense accounts; recordings; photographs; motion pictures; compilations from which information can be obtained and translated into reasonably usable form through detection devices; sketches; drawings; notes (including laboratory notebooks and records); reports; instructions; disclosures; other writings; models, prototypes, and other physical objects.

3.    The term "counsel" will mean outside counsel of record, and other attorneys, paralegals, secretaries, and other support staff employed in the law firms identified below: Cummins IP PLLC and Sills Cummis & Gross P.C. "Counsel" also includes Will Baeza, an in-house attorney for Lowe's Home Center LLC ("LHC").   Additional in-house attorneys for either party may be designated as "counsel" under this Paragraph by providing

2

1    the other party with notice of the names of such in-house attorneys prior to the disclosure

2    of any "CONFIDENTIAL-FOR COUNSEL ONLY" materials.

3                                    <u>GENERAL RULES</u>

4        4.      Each party to this litigation that produces or discloses any materials, answers

5    to interrogatories and requests for admission, trial testimony, deposition testimony, and

6    transcripts of trial testimony and depositions, or information that the producing party

7    believes should be subject to this Order may designate the same as "CONFIDENTIAL" or

8    "CONFIDENTIAL – FOR COUNSEL ONLY."

9            a.      Designation as "CONFIDENTIAL": A party or non-party subject to

10           this Order may only designate documents or other information in this action as

11           "CONFIDENTIAL" if the designating party or non-party has an articulable, good

12           faith basis to believe that each document or other information designated as

13           confidential qualifies for protection under Federal Rule of Civil Procedure 26(c).

14           b.      Designation as "CONFIDENTIAL – FOR COUNSEL ONLY": Any

15           party may designate information as "CONFIDENTIAL – FOR COUNSEL ONLY"

16           only if, in the good faith belief of such party and its counsel, the information is

17           among that considered to be most sensitive by the party, including but not limited to

18           trade secret or other confidential research, development, financial or other

19           commercial information.

20       5.      With respect to the Confidential portion of any Discovery Material other than

21   deposition transcripts and exhibits, the producing party or its counsel may designate such

22   portion as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" by

23   stamping or otherwise clearly marking as "CONFIDENTIAL" or "CONFIDENTIAL –

24   FOR COUNSEL ONLY," respectively, on each page of the protected material in a manner

25   that will not interfere with legibility or audibility.  For digital files being produced, the

26   producing party may mark each viewable page or image with the appropriate designation,

27   and for native files, mark the medium, container, and/or communication in which the

28   digital files were contained.

3:23-cv-01335-CAB-JLB

6.      In the event the producing party elects to produce materials for inspection, no marking need be made by the producing party in advance of the initial inspection.  For purposes of the initial inspection, all materials produced will be considered as "CONFIDENTIAL – FOR COUNSEL ONLY," and must be treated as such pursuant to the terms of this Order.  Thereafter, upon selection of specified materials for copying by the inspecting party, the producing party must, within a reasonable time prior to producing those materials to the inspecting party, mark the copies of those materials that contain confidential information with the appropriate confidentiality marking.

7.      Whenever a deposition taken on behalf of any party involves a disclosure of confidential information of any party:

a.      the deposition or portions of the deposition must be designated as containing confidential information subject to the provisions of this Order; such designation must be made on the record whenever possible, but a party may designate portions of depositions as containing confidential information after transcription of the proceedings; a party will have until 30 calendar days after receipt of the deposition transcript to inform the other party or parties to the action of the portions of the transcript to be designated "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY."

b.      the disclosing party will have the right to exclude from attendance at the deposition, during such time as the confidential information is to be disclosed, any person other than the deponent, counsel (including their staff and associates), the court reporter, and the person(s) agreed upon pursuant to Paragraph 10 below; and

c.      the originals of the deposition transcripts and all copies of the deposition must bear the legend "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY," as appropriate, and the original or any copy ultimately presented to a court for filing must not be filed unless it can be accomplished under

seal, identified as being subject to this Order, and protected from being opened except by order of the Court.

8.    All confidential information designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" must not be disclosed by the receiving party to anyone other than those persons designated within this Order and must be handled in the manner set forth below and, in any event, must not be used for any purpose other than in connection with this litigation and any appeals thereto, and not for any business, commercial, or competitive purpose or in any other litigation proceeding unless and until such designation is removed either by agreement of the parties or by order of the Court. Nothing contained in this Order, however, will affect or restrict the rights of any party with respect to its own documents or information produced in this action.

9.    Information designated "CONFIDENTIAL – FOR COUNSEL ONLY" must be viewed only by counsel (as defined in Paragraph 3) of the receiving party, and by independent experts or consultants under the conditions set forth in this Paragraph.  For purposes of this Paragraph, an expert or consultant shall mean a person with specialized knowledge or experience in a matter pertinent to the litigation who (1) has been retained by a party or its counsel to serve as an expert witness or as a consultant in this action, (2) is not a past or current employee of a party or of a party's competitor, and (3) at the time of retention is not anticipated to become an employee of a party or of a party's competitor. An expert or consultant is defined to include the outside consultant's or expert's direct reports and other support personnel, such that the disclosure to an outside consultant or expert who employs others within his or her firm to help in his or her analysis shall count as a disclosure to a single outside consultant or expert.  No disclosure of information designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" may be provided to an expert or consultant that is involved in competitive decision-making, as defined by *U.S. Steel v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir. 1984), on behalf of a party or a competitor of a party.

5

V

a.  The right of any independent expert to receive any confidential information will be subject to the advance approval of such expert by the producing party or by permission of the Court.  The party seeking approval of an independent expert must provide the producing party with the name and curriculum vitae of the proposed independent expert, and an executed copy of the form attached hereto as Exhibit A, in advance of providing any confidential information of the producing party to the expert.

b.  Any objection by the producing party to an independent expert receiving confidential information must be made in writing within 14 calendar days following receipt of the identification of the proposed expert. Any such objection must set forth in detail the grounds on which it is based.

c.  A party that receives a timely written objection must follow the meet and confer requirements set forth in Paragraph V.A. of the Honorable Jill J. Burkhardt's Civil Chambers Rules (the "Chambers Rules") to try to resolve the matter by agreement.  If the parties cannot reach agreement promptly, counsel for all affected parties will address their dispute to this Court in accordance with Paragraphs V. B and C of the Chamber Rules.

d.  Confidential information may be disclosed to an independent expert if the fourteen-day period has passed and no objection has been made.  The approval of independent experts must not be unreasonably withheld.

10.  Information designated "CONFIDENTIAL" must be viewed only by counsel (as defined in Paragraph 3) of the receiving party, by independent experts (pursuant to the terms of Paragraph 9), and by the additional individuals listed below, provided each such individual has read this Order in advance of disclosure and has executed a copy of the form attached hereto as Exhibit A:

a.  Executives who are required to participate in policy decisions with reference to this action;

3:23-cv-01335-CAB-JLB

vi

b.      Technical personnel of the parties with whom counsel for the parties find it necessary to consult, in the discretion of such counsel, in preparation for trial of this action; and

c.      Stenographic and clerical employees associated with the individuals identified above.

11.    In addition, with respect to material designated "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY," the parties may also disclose such information to the following persons:

a. outside vendors or service providers (such as copy-service providers and document-management consultants) that counsel hire and assign to this matter;

b. any mediator or arbitrator that the parties engage in this matter or that this Court appoints, provided such person has executed a copy of the form attached hereto as Exhibit A and the signed copy has been provided to all parties;

c. any person indicated on the face of the document to be its originator, author, or a recipient of a copy of the document, may be shown the same;

d. stenographers engaged to transcribe depositions the parties conduct in this action; and

e. this Court, including any appellate court, its support personnel, and court reporters.

12.    All information which has been designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY" by the producing or disclosing party, and any and all reproductions of that information, must be retained in the custody of the counsel for the receiving party identified in Paragraph 3, except that independent experts authorized to view such information under the terms of this Order may retain custody of copies such as are necessary for their participation in this litigation.

13.    Any party seeking to file documents under seal must comply with the procedures set forth in the ECF Manual. Parties should not seek to file under seal entire

1  pleadings, or entire attachments, unless the party can establish that the entire document

2  satisfies the standard for sealing.

3    Unless the entire document satisfies the standard for sealing, a redacted version of

4  the document must be publicly filed on the docket with only those portions of the document

5  appropriately subject to filing under seal redacted.  An application to file under seal should

6  specifically address the factual and legal basis for sealing each proposed redaction.

7    The party shall lodge the unredacted version of any filing in accordance with the

8  ECF Manual.

9    If a party is seeking to file a document that contains information designated as

10  confidential by another party, the filing party must reach out to the designating party in

11  advance of filing the application to file under seal to obtain from the designating party the

12  legal basis for the confidential designation. The filing party must include the legal basis in

13  the application to file under seal.  If any party opposes the application to file under seal,

14  that party must, within one court day, contact the chambers of the judge who will rule on

15  the application to notify the judge's staff that an opposition to the application will be filed.

16    14.  At any stage of these proceedings, any party may object to a designation of

17  materials as confidential information or as privileged.  The party objecting to material

18  designated as confidential or privileged must notify, in writing, counsel for the designating

19  party of the objected-to materials and the grounds for the objection.  If the dispute is not

20  resolved consensually between the parties after meeting and conferring within 14 calendar

21  days of receipt of such a notice of objections, the parties may jointly request the Court's

22  assistance with the dispute, in accordance with the Chambers Rules.  The materials at issue

23  must be treated as confidential information or privileged, as designated by the designating

24  party, until the Court has ruled on the objection or the matter has been otherwise resolved.

25    15.  All confidential information must be held in confidence by those inspecting

26  or receiving it and must be used only for purposes of this action.  Counsel for each party,

27  and each person receiving confidential information, must take reasonable precautions to

28  prevent the unauthorized or inadvertent disclosure of such information.  If confidential

3:23-cv-01335-CAB-JLB

information is disclosed to any person other than a person authorized by this Order, the party responsible for the unauthorized disclosure must immediately bring all pertinent facts relating to the unauthorized disclosure to the attention of the other parties and, without prejudice to any rights and remedies of the other parties, make every effort to prevent further disclosure by the party and by the person(s) receiving the unauthorized disclosure.

16.    No party will be responsible to another party for disclosure of confidential information under this Order if the information in question is not labeled or otherwise identified as such in accordance with this Order.

17.    If a party, through inadvertence, produces any confidential information without labeling or marking or otherwise designating it as such in accordance with this Order, at any point in time prior to trial, the designating party may give written notice to the receiving party that the document or thing produced is deemed confidential information, and that the document or thing produced should be treated as such in accordance with that designation under this Order.  The receiving party must treat the materials as confidential, once the designating party so notifies the receiving party.  If the receiving party has disclosed the materials before receiving the designation, the receiving party must notify the designating party in writing of each such disclosure.

18.    Nothing in this Protective Order shall require disclosure of documents, electronically stored information ("ESI"), or other information protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege, or other protection from discovery ("Privileged Material"). If Privileged Material is nevertheless inadvertently or unintentionally produced or made available for inspection, the parties have stipulated that such disclosure shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or work product doctrine, or other ground for withholding production to which the producing party would otherwise be entitled to assert. Any party that inadvertently produces or makes available for inspection materials it believes are Privileged Materials may obtain the return of those materials by promptly notifying the recipient(s) after learning of the inadvertent or unintentional

disclosure and providing a privilege log for the inadvertently or unintentionally produced documents, information or other material. The recipient(s) shall immediately gather and return all copies of the Privileged Material to the producing party after receiving a request for their return, except for any pages containing privilege markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the producing party. The recipient shall also immediately destroy and certify such destruction after receiving a request for return of inadvertently produced materials all documents or parts thereof summarizing or otherwise disclosing the content of the inadvertently produced material and shall not use such material for any purpose. Notwithstanding this provision, outside litigation counsel of record are not required to delete information that may reside on their respective firm's electronic back-up systems that are over-written in the normal course of business.

19.    The parties have stipulated that this Order be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d), and that it be enforceable and granted full faith and credit in all other state and federal proceedings by 28 U.S.C § 1738.  In the event of a conflict of law, the parties have stipulated that the law that is most protective of privilege shall apply.

20.    Nothing within this Order will prejudice the right of any party to object to the production of any discovery material on the grounds that the material is protected as privileged or as attorney work product.

21.    Nothing in this Order will bar counsel from rendering advice to their clients with respect to this litigation and, in the course thereof, relying upon any information designated as confidential information, provided that the contents of the information must not be disclosed.

22.    Nothing contained in this Order will be construed as a ruling regarding the admissibility at trial of any document, testimony, or other evidence.

23.    This Order will be without prejudice to the right of any party to oppose production of any information for lack of relevance or any other ground other than the mere

X

presence of confidential information.  The existence of this Order must not be used by either party as a basis for discovery that is otherwise improper under the Federal Rules of Civil Procedure.

24.    Nothing within this Order will be construed to prevent disclosure of confidential information if such disclosure is required by law or by order of the Court.

25.    The terms of this Order are applicable to information produced by a non-party in this action and designated as "CONFIDENTIAL" or "CONFIDENTIAL – FOR COUNSEL ONLY."  Such information produced by non-parties in connection with this litigation is protected by the remedies and relief provided by this Order.  In the event that a party is required, by a valid discovery request, to produce a non-party's confidential information in its possession, that party shall follow the procedures set forth below in Paragraph 26.  Nothing in these provisions should be construed as prohibiting a non-party from seeking additional protections.

26.    Nothing in this Order will prevent any party from producing any confidential material in its possession in response to a lawful subpoena or other compulsory process, or if required to produce by law or by any government agency having jurisdiction, provided that such party gives written notice to the producing party as soon as reasonably possible, and if permitted by the time allowed under the request, at least 10 days before any disclosure.  Upon receiving such notice, the producing party will bear the burden to oppose compliance with the subpoena, other compulsory process, or other legal notice if the producing party deems it appropriate to do so.

27.    Within sixty (60) days of the final termination of this action, including any and all appeals, counsel for each party must, upon request of the producing party, return all confidential information to the party that produced the information, including any copies, excerpts, and summaries of that information, or must destroy same at the option of the receiving party, and must purge all such information from all machine-readable media on which it resides.  Notwithstanding the foregoing, counsel for each party may retain all pleadings, briefs, memoranda, motions, and other documents filed with the Court that refer

to or incorporate confidential information, and will continue to be bound by this Order with respect to all such retained information.  Further, attorney work product materials that contain confidential information need not be destroyed, but, if they are not destroyed, the person in possession of the attorney work product will continue to be bound by this Order with respect to all such retained information.

28.    Absent an *ex parte* motion made within 10 calendar days of the termination of the case, the parties understand that the Court will destroy any confidential documents in its possession.

29.    The restrictions and obligations set forth within this Order will not apply to any information that:

      a.    the parties agree should not be designated confidential information;

      b.    the parties agree, or the Court rules, is already public knowledge;

      c.    the parties agree, or the Court rules, has become public knowledge other than as a result of disclosure by the receiving party, its employees, or its agents in violation of this Order; or has come or will come into the receiving party's legitimate knowledge independently of the production by the designating party.  Prior knowledge must be established by pre-production documentation.

30.    The restrictions and obligations within this Order will not be deemed to prohibit discussions of any confidential information with anyone if that person already has or obtains legitimate possession of that information.

31.    Transmission by e-mail or some other currently utilized method of transmission is acceptable for all notification purposes within this Order.

32.    This Order will survive the termination of the litigation and will continue to be binding upon all persons to whom confidential materials are produced or disclosed.

33.    At the conclusion of the litigation, the Parties may request that this Court retain jurisdiction over all persons subject to this Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any for any contempt thereof.

3:23-cv-01335-CAB-JLB

1    34.    This Order may be modified by agreement of the parties, subject to approval

2  by the Court.

3    35.    The Court may modify the terms and conditions of this Order for good cause,

4  or in the interest of justice, or on its own order at any time in these proceedings.

5    36.    Without separate court order, this Order and the parties' stipulation do not

6  change, amend, or circumvent any court rule or local rule.

7    **IT IS SO ORDERED**.

8  Dated:  March 21, 2024

9

10                                    Hon. Jill L. Burkhardt

11                                    United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3:23-cv-01335-CAB-JLB

## <u>EXHIBIT A</u>

## ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _____ (name), of _____ (address), declare under penalty of perjury that I have read in its entirety and understand the Protective Order ("Order") that was issued by the United States District Court for the Southern District of California on _____ (date), in the case of *DS Advanced Enterprises, LLC v. Lowe's Home Centers, LLC*. I agree to comply with and to be bound by all the terms of the Order, and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to the Order to any person or entity, except in strict compliance with the provisions of the Order.

I further agree to submit to the jurisdiction of the United States District Court for the Southern District of California for the purpose of enforcing the terms of the Order, even if such enforcement proceedings occur after termination of this action.

Name: _____

Signature: _____     Date: _____



US011054118B2

(12) **United States Patent** (10) Patent No.: **US 11,054,118 B2**

Sherman (45) Date of Patent: **Jul. 6, 2021**

(54) **APPARATUS TO DETACHABLY ATTACH LED LIGHT FIXTURE TO CEILING OR RECESSED LIGHTING FIXTURE HOUSING**

(71) Applicant: **David Sherman**, Boca Raton, FL (US)

(72) Inventor: **David Sherman**, Boca Raton, FL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **16/392,731**

(22) Filed: **Apr. 24, 2019**

(65) **Prior Publication Data**

US 2021/0140610 A1 May 13, 2021

(51) **Int. Cl.**
*F21V 21/04* (2006.01)
*F21V 17/12* (2006.01)
*F21V 21/088* (2006.01)
*F21Y 115/10* (2016.01)

(52) **U.S. Cl.**
CPC .............. *F21V 17/12* (2013.01); *F21V 21/04* (2013.01); *F21V 21/088* (2013.01); *F21Y 2115/10* (2016.08)

(58) **Field of Classification Search**
CPC ...... F21V 21/04; F21V 21/044; F21V 21/047; F21V 21/088; F21V 17/162
USPC ........................................................ 362/147
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,957,572 A * | 9/1999 | Wedekind | F21V 21/04 362/365 |
| 7,909,487 B1 * | 3/2011 | Venetucci | F21S 8/02 362/147 |

| | | | |
|---|---|---|---|
| 8,894,253 B2 * | 11/2014 | Rowlette, Jr. | F21V 29/004 362/373 |
| 10,393,359 B1 * | 8/2019 | Qi | F21V 21/044 |
| 2009/0097262 A1 * | 4/2009 | Zhang | F21S 8/026 362/364 |
| 2009/0273938 A1 * | 11/2009 | Wronski | F21S 8/02 362/346 |
| 2010/0053950 A1 * | 3/2010 | Higuchi | F21S 8/026 362/234 |
| 2012/0044704 A1 * | 2/2012 | Wilson | F21S 8/026 362/365 |
| 2012/0182744 A1 * | 7/2012 | Santiago | F21S 8/026 362/365 |
| 2014/0254177 A1 * | 9/2014 | Danesh | F21V 21/30 362/363 |
| 2015/0233537 A1 * | 8/2015 | Athalye | F21V 7/0066 362/147 |
| 2015/0260383 A1 * | 9/2015 | Wilcox | F21S 8/026 362/294 |
| 2015/0338071 A1 * | 11/2015 | Feit | F21S 8/036 362/370 |

(Continued)

*Primary Examiner* — Christopher M Raabe

(57) **ABSTRACT**

Disclosed is an apparatus to detachably attach an LED light fixture to a ceiling or a recessed lighting fixture housing. The apparatus comprises retrofit clips (**102**), a plurality of new construction clips (**104**), connecting posts (**106**), metal housing (**108**), screw holes (**110**), complete fixture (**112**), junction box (**116**), and twist connector (**118**). The retrofit clips (**102**) are adaptable to attach with the metal housing (**108**) of the LED light fixture by screwing them into screw holes (**110**). The connecting posts (**106**) hold the new construction clips (**104**). The metal housing (**108**) embodies the complete fixture (**112**). The junction box (**116**) holds connection wirings and may hold an LED driver. The twist connector (**118**) attaches the output wires of the junction box (**116**) to the metal housing (**108**).

**5 Claims, 5 Drawing Sheets**



(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2017/0059102 A1 * | 3/2017 | Grant | ..................... F21S 8/026 |
| 2018/0266635 A1 * | 9/2018 | Dong | .................... F21S 8/026 |
| 2018/0313524 A1 * | 11/2018 | Vidal | ................... F21V 23/009 |

* cited by examiner



**FIG. 1**



**FIG. 2a**



**FIG. 2b**



**FIG. 3**



400

106          106

**FIG. 4**



500

114

**FIG. 5**



**FIG. 6**



**FIG. 7**



**FIG.8A**

**FIG.8B**

# APPARATUS TO DETACHABLY ATTACH LED LIGHT FIXTURE TO CEILING OR RECESSED LIGHTING FIXTURE HOUSING

## TECHNICAL FIELD

The present invention is generally related to an apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing.

## BACKGROUND

The subject matter discussed in the background section should not be assumed to be prior art merely as a result of its mention in the background section. Similarly, a problem mentioned in the background section or associated with the subject matter of the background section should not be assumed to have been previously recognized in the prior art. The subject matter in the background section merely represents different approaches, which in-and-of-themselves may also be inventions.

Typically, the consumers and/or electricians have to buy different LED recessed light fixtures for new construction installations and retrofit installations. Currently, various mounting clips are used either for retrofit or new construction applications. This specification recognizes the problems faced by the consumers and/or electricians while installing the LED recessed light fixtures. Additionally, it is recognized in this specification that an apparatus for retrofit and new construction applications can reduce the amount of inventory carried by lighting distributors.

Thus, in view of the above, there is a long-felt need in the industry to address the aforementioned deficiencies and inadequacies.

Further limitations and disadvantages of conventional and traditional approaches will become apparent to one of skill in the art through comparison of described systems with some aspects of the present disclosure, as set forth in the remainder of the present application and with reference to the drawings.

## SUMMARY OF THE INVENTION

An apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing is provided substantially, as shown in and/or described in connection with at least one of the figures, as set forth more completely in the claims.

The apparatus comprises a plurality of retrofit clips (**102**), a plurality of new construction clips (**104**), a plurality of connecting posts (**106**), a metal housing (**108**), a plurality of screw holes (**110**), a complete fixture (**112**), a socket adapter (**114**), a junction box (**116**), and a twist connector (**118**). The plurality of retrofit clips (**102**) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (**110**). The plurality of connecting posts (**106**) hold the new construction clips (**104**). The metal housing (**108**) embodies the complete fixture (**112**). The junction box (**116**) holds the plurality of connection wirings. The junction box (**116**) comprises a plurality of output wires. The twist connector (**118**) attaches the output wires of the junction box (**116**) to the metal housing (**108**). The socket adapter (**114**) replaces a light bulb in the recessed lighting fixture housing.

In an aspect, the new construction clips (**104**) squeeze ceiling material placed between the new construction clips (**104**) and an extremity of the metal housing (**108**).

In an aspect, the complete fixture (**112**) comprises a plurality of electrical systems, clips, and accessories.

In an aspect, the junction box (**116**) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

Accordingly, one advantage of the present system and method is that it provides both a retrofit application and a new construction application embodied in the same LED light fixture.

Accordingly, one advantage of the present invention is that it allows lighting retailers and distributors to carry only one set of inventory, thus saving money and warehouse space.

These features and advantages of the present disclosure may be appreciated by reviewing the following description of the present disclosure, along with the accompanying figures wherein like reference numerals refer to like parts.

## BRIEF DESCRIPTION OF DRAWINGS

The accompanying drawings illustrate the embodiments of apparatus, methods, and other aspects of the disclosure. Any person with ordinary skills in the art will appreciate that the illustrated element boundaries (e.g., boxes, groups of boxes, or other shapes) in the figures represent an example of the boundaries. In some examples, one element may be designed as multiple elements, or multiple elements may be designed as one element. In some examples, an element shown as an internal component of one element may be implemented as an external component in another and vice versa. Furthermore, the elements may not be drawn to scale.

Various embodiments will hereinafter be described in accordance with the appended drawings, which are provided to illustrate, not limit, the scope, wherein similar designations denote similar elements, and in which:

FIG. **1** illustrates an exemplary view of retrofit clips and new construction clips, in accordance with at least one embodiment.

FIG. **2***a* illustrates an exemplary view of connecting post and metal housing, in accordance with at least one embodiment.

FIG. **2***b* illustrates an exemplary view of the metal housing, in accordance with at least one embodiment.

FIG. **3** illustrates an exemplary view of new construction clips and screw holes, in accordance with at least one embodiment.

FIG. **4** illustrates an exemplary view of connecting post, in accordance with at least one embodiment.

FIG. **5** illustrates an exemplary view of the socket adapter, in accordance with at least one embodiment.

FIG. **6** illustrates an exemplary view of the complete fixture, in accordance with at least one embodiment.

FIG. **7** illustrates an exemplary view of the junction box and twist connector, in accordance with at least one embodiment.

FIG. **8***a* illustrates a first exemplary view of a permanently installed junction box, in accordance with at least one embodiment.

FIG. **8***b* illustrates a second exemplary view of the permanently installed junction box, in accordance with at least one embodiment.

## DETAILED DESCRIPTION

The present disclosure is best understood with reference to the detailed figures and description set forth herein. Various embodiments have been discussed with reference to

3

the figures. However, those skilled in the art will readily appreciate that the detailed descriptions provided herein with respect to the figures are merely for explanatory purposes, as the methods and systems may extend beyond the described embodiments. For instance, the teachings presented, and the needs of a particular application may yield multiple alternative and suitable approaches to implement the functionality of any detail described herein. Therefore, any approach may extend beyond certain implementation choices in the following embodiments.

References to "one embodiment," "at least one embodiment," "an embodiment," "one example," "an example," "for example," and so on indicate that the embodiment(s) or example(s) may include a particular feature, structure, characteristic, property, element, or limitation but that not every embodiment or example necessarily includes that particular feature, structure, characteristic, property, element, or limitation. Further, repeated use of the phrase "in an embodiment" does not necessarily refer to the same embodiment.

Methods of the present invention may be implemented by performing or completing manually, automatically, or a combination thereof, selected steps or tasks. The term "method" refers to manners, means, techniques and procedures for accomplishing a given task including, but not limited to, those manners, means, techniques, and procedures either known to, or readily developed from known manners, means, techniques and procedures by practitioners of the art to which the invention belongs. The descriptions, examples, methods, and materials presented in the claims and the specification are not to be construed as limiting but rather as illustrative only. Those skilled in the art will envision many other possible variations within the scope of the technology described herein.

The present specification describes an apparatus to detachably attach an LED light fixture to at least one of a ceiling and a recessed lighting fixture housing. The apparatus comprises a plurality of retrofit clips (102), a plurality of new construction clips (104), a plurality of connecting posts (106), a metal housing (108), a plurality of screw holes (110), a complete fixture (112), a socket adapter (114), a junction box (116), and a twist connector (118).

FIG. 1 illustrates an exemplary view (100) of retrofit clips (102) and new construction clips (104), in accordance with at least one embodiment. The plurality of retrofit clips (102) are adaptable to attach with the body of the LED light fixture by screwing them into a plurality of screw holes (110), shown in FIG. 3.

FIG. 2a illustrates an exemplary view (200a) of connecting post (106) and metal housing (108), in accordance with at least one embodiment. The plurality of connecting posts (106) hold the new construction clips (104). The metal housing (108) embodies a complete fixture (112), shown in FIG. 6. FIG. 2b illustrates an exemplary view (200b) of metal housing (108), in accordance with at least one embodiment.

FIG. 3 illustrates an exemplary view (300) of new construction clips (104) and screw holes (110), in accordance with at least one embodiment. FIG. 4 illustrates an exemplary view (400) of the connecting post (106), in accordance with at least one embodiment.

FIG. 5 illustrates an exemplary view (500) of socket adapter (114), in accordance with at least one embodiment. The socket adapter (114) replaces a light bulb in the recessed lighting fixture housing.

FIG. 6 illustrates an exemplary view (600) of a complete fixture (112), in accordance with at least one embodiment. In an embodiment, the new construction clips (104) squeeze

4

ceiling material placed between the new construction clips (104) and an extremity of the metal housing (108). In an embodiment, the complete fixture (112) comprises a plurality of electrical systems, clips, and accessories. Examples of the electrical systems include but not limited to the LED driver, an LED PCB assembly, and an LED strip. Further, examples of the accessories include but not limited to wire connectors, and ground wire.

FIG. 7 illustrates an exemplary view (700) of the junction box (116) and twist connector (118), in accordance with at least one embodiment. The junction box (116) holds a plurality of connection wirings. The junction box (116) comprises a plurality of output wires. The twist connector (118) attaches the output wires of the junction box (116) to the metal housing (108). In an embodiment, the junction box (116) allows an LED driver to be installed and includes a predefined area to attach a plurality of wires.

In operation, if the existing recessed housing is present, the retrofit clips (102) make a friction fit inside the existing recessed lighting fixture housing to secure the complete fixture (112) inside. In case, the existing recessed housing is not present the new construction clips (104) are attached to the connecting posts (106).

In an embodiment, the present apparatus may be manufactured by die casting a metal housing (108). The metal housing (108) is a base of the complete fixture (112) containing two connecting posts (106), to attach new construction clips (104) and nine screw holes (110) (each retrofit clips uses 3 screws), at 120 degrees, to accept the retrofit clip (102). In an embodiment, the junction box (116) is made from sheet metal, stamped steel or plastic, configured into a hexagonal, or a round shape, including several side holes to be used for wiring. Further, the LED driver may installed inside the junction box (116). In an exemplary embodiment, the present apparatus may be manufactured by plastic injection molding to obtain a plastic housing.

FIG. 8a illustrates a first exemplary view (800a) of a permanently installed junction box (116), in accordance with at least one embodiment. FIG. 8b illustrates a second exemplary view (800b) of the permanently installed junction box, in accordance with at least one embodiment. The junction box (116) is permanently attached to the metal housing (108) or plastic housing. The first exemplary view (800a) and the second exemplary view (800b) show an absence of output wires from the junction box (116) to metal housing (108) or plastic housing. In real-time, the output wire connections are internally arranged and cannot be seen by the user. FIG. 8a and FIG. 8b also depict the placement of the new construction clip (104), connecting posts (106), and retrofit clips (102) when junction box (116) is permanently attached to the metal housing (108) or the plastic housing.

In an embodiment, the components of the present apparatus such as the plurality of retrofit clips (102), the plurality of new construction clips (104), the metal housing (108), the plurality of screw holes (110), the complete fixture (112), the socket adapter (114), the junction box (116), and the twist connector (118) are reconfigurable and the new construction clips (104) are attached to the connecting posts (106), or to a different connecting method.

In a real-time use, a user such as consumers or electricians has to decide whether the installation of the complete fixture (112) is retrofit or new construction application and then selects an appropriate attachment method.

For a retrofit installation, the user removes the light bulb and trims from the existing recessed lighting fixture and exposes the recessed housing. Then the user removes the

5

6

two new construction clips (**104**) from the metal housing (**108**) or connecting posts (**106**) and attaches the three retrofit clips (**102**) by screwing them with provided screws to the die-cast base or metal housing (**108**) in the provided screw holes (**110**). The user then attaches the socket adapter (**114**) by connecting the two free wires to two free wires in the junction box (**116**). The socket adapter (**114**) is screwed into an existing socket and places the junction box (**116**) on top of the metal housing (**108**) (if the junction box (**116**) is not attached to metal housing (**108**) or plastic housing). The user then pushes the complete fixture (**112**) and the junction box (**116**) fully into the existing recessed housing, wherein the junction box (**116**) is attached with the body of the LED light fixture. The complete fixture (**112**) is held inside existing recessed housing by the friction of retrofit clips (**102**) against inside the existing recessed housing.

For the new construction installation, the user cuts a hole in the ceiling of the appropriate size to accommodate the metal housing (**108**), where the complete fixture (**112**) is to be located. Then the user pulls wires from the building's electrical system and attaches to free wires in a junction box (**116**). Then the user attaches the junction box (**116**) to the LED fixture using the twist connector (**118**). Then the user pushes junction box (**116**) through a hole in the ceiling and allows it to rest on inside of the ceiling. The user then pushes new construction clips (**104**) perpendicular to the ceiling and push through the ceiling hole. Then the user allows the new construction clips (**104**) to squeeze the ceiling between the new construction clips (**104**) and extremity of the metal housing (**108**).

Thus the present apparatus provides a means to attach the LED light fixture to the ceiling directly or into a recessed lighting fixture housing. By providing both retrofit and new construction applications, the present apparatus reduces the amount of inventory carried.

No language in the specification should be construed as indicating any non-claimed element as essential to the practice of the invention.

It will be apparent to those skilled in the art that various modifications and variations can be made to the present invention without departing from the spirit and scope of the invention. There is no intention to limit the invention to the specific form or forms enclosed. On the contrary, the intention is to cover all modifications, alternative constructions, and equivalents falling within the spirit and scope of the invention, as defined in the appended claims. Thus, it is intended that the present invention cover the modifications and variations of this invention, provided they are within the scope of the appended claims and their equivalents.

The invention claimed is:

**1**. An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing, the apparatus comprises:

a plurality of retrofit clips (**102**) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (**110**);

a plurality of new construction clips (**104**);

a plurality of connecting posts (**106**) to hold the new construction clips (**104**);

a metal housing (**108**) to embody a complete fixture (**112**);

a junction box (**116**) to hold a plurality of connection wirings, wherein the junction box (**116**) comprises a plurality of output wires; and

a twist connector (**118**) to attach the output wires of the junction box (**116**) to the metal housing (**108**), wherein the retrofit clips (**102**) make a friction fit inside the recessed lighting fixture housing to secure the complete fixture (**112**) inside, wherein the new construction clips (**104**) are attached to the connecting posts (**106**) if the recessed lighting fixture housing is not present.

**2**. The apparatus according to claim **1** comprises a socket adapter (**114**) to replace a light bulb in the recessed lighting fixture housing.

**3**. The apparatus according to claim **1**, wherein the new construction clips (**104**) squeeze ceiling material placed between the new construction clips (**104**) and an extremity of the metal housing (**108**).

**4**. The apparatus according to claim **1**, wherein the complete fixture (**112**) comprises a plurality of electrical systems, clips, and accessories.

**5**. The apparatus according to claim **1**, wherein the junction box (**116**) allows an LED driver to be installed and comprises a predefined area to attach a plurality of wires.

* * * * *

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 11,054,118 B2                                    Page 1 of 1
APPLICATION NO.     : 16/392731
DATED               : July 6, 2021
INVENTOR(S)         : David Sherman

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

On the Title Page

Insert item (60), as follows:
--Related U.S. Application Data
(60) Provisional application No. 62/673,595, filed on May 18, 2018.--

Signed and Sealed this
Twenty-third Day of January, 2024

*Katherine Kelly Vidal*

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*

Appx0011

UNITED STATES PATENT AND TRADEMARK OFFICE
# CERTIFICATE OF CORRECTION

PATENT NO.          : 11,054,118 B2                          Page 1 of 1
APPLICATION NO.     : 16/392731
DATED               : July 6, 2021
INVENTOR(S)         : David Sherman

It is certified that error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

    In the Drawings

    Sheet 4, FIG. 6, replace "112" with -- 116 --

Signed and Sealed this
Ninth Day of July, 2024

*Katherine Kelly Vidal*

Katherine Kelly Vidal
*Director of the United States Patent and Trademark Office*

Appx0012

1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10

11   DS ADVANCED ENTERPRISES, Ltd.,        Case No.:  3:23-cv-01335-CAB-JLB
12                          Plaintiff,
                                          **ORDER ON DEFENDANT'S**
13   v.                                   **MOTION FOR SUMMARY**
                                          **JUDGMENT OF**
14   LOWE'S HOME CENTERS, LLC,            **NONINFRINGEMENT**
15                          Defendant.
16                                        [ECF No. 34]
17

18       Plaintiff DS Advanced Enterprises, LTD. ("DS Advanced") filed this lawsuit against
19   Defendant Lowe's Home Centers, LLC. ("Lowe's HC") alleging infringement of U.S.
20   Patent No. 11,054,118 ('118 Patent).  Lowe's HC moves for summary judgment of
21   noninfringement. [ECF No. 34.] DS Advanced filed an opposition.  [ECF No. 45.] Lowe's
22   HC filed a reply. [ECF No. 47.]  The Court held argument on September 26, 2024.  Central
23   to Defendant's motion is the construction of the limitation "metal housing."   For the
24   reasons explained further below, since the Accused Products contain only plastic housings,
25   and the doctrine of equivalents does not apply, Lowe's HC's motion is **GRANTED.**
26       **I.      PATENT AT ISSUE AND ACCUSED PRODUCTS**
27       DS Advanced identifies itself as a designer and seller of lighting fixtures worldwide.
28   DS Advanced filed an amended complaint ("Complaint") on Oct. 16, 2023, alleging

Appx0013

infringement of the '118 Patent.  The Patent discloses "an apparatus to detachably attach an LED light fixture to a ceiling or a recessed lighting fixture housing."  [Patent No. '118, ECF No. 34-5 at 2.]  DS Advanced claims infringement for all five claims of the '118 Patent. [*See* Compl. ¶¶ 15–45.]

The accused Lowe's HC products are recessed lighting products designated as Utilitech Items #5041630, #5041631, #5041632, #5041633, and #5041634 (collectively, the "Accused Products").  [Compl. ¶¶ 75–110.]  The Accused Products are largely similar and for purposes of this motion, any differences between them are irrelevant.

Claim 1, the only independent claim of the '118 patent, claims:

> An apparatus to detachably attach an LED light fixture to at least one of a ceiling, and a recessed lighting fixture housing, the apparatus comprises:
> a plurality of retrofit clips (102) adaptable to attach with a body of the LED light fixture by screwing them into a plurality of screw holes (110);
> a plurality of new construction clips (104);
> a plurality of connection posts (106) to hold the new construction clips (104);
> a metal housing (108) to embody a complete fixture (112);
> a junction box (116) to hold a plurality of connection wirings, where the junction box (116) comprises a plurality of output wires; and
> a twist connector (118) to attach the output wires of the junction box (116) to the metal housing (108), wherein the retrofit clips (102) make a friction fit inside the recessed lighting fixture housing to secure the complete fixture (112) inside, wherein the new construction clips (104) are attached to the connecting posts (106) if the recessed lighting fixture housing is not present.

[Patent No. '118, Ex. 34-5, Col 6:9-28.]

Employing an unusual format, at least in this Court's experience, the claim itself incorporates specific references to the structure disclosed in the specification for each claim limitation, e.g., a metal housing (108), a junction box (116), etc.

///

///

///

Appx0014



[Patent No. '118, Ex. 34-5, Fig. 8A.]

Defendant's motion asserts that summary judgment is proper because certain claim limitations are absent from each of the Accused Products, specifically: (1) a metal housing (108); (2) the junction box (116); and (3) a twist connector (118).

## II.   LEGAL STANDARD

The usual standard for summary judgment applies to this case. Summary judgment is authorized if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The nonmoving party must come forward with specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

A patent infringement analysis involves two steps: (1) claim construction; and (2) application of the properly construed claim to the accused product. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Claim construction is a matter of law reserved for the court. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). "Disputes concerning the meaning of claims do not preclude summary judgment, because the resolution of those disputes is part of the process of claim interpretation, a question of law." *Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998).

To prove direct infringement, "the plaintiff must establish by a preponderance of the evidence that the accused device infringes one or more claims of the patent either literally

3

1  or under the doctrine of equivalents." *Advanced Cardiovascular Sys., Inc. v. Scimed Life*
2  *Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).

3      Literal infringement requires that each element in the asserted claim be literally
4  present in the accused device. *General Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 981
5  (Fed. Cir. 1997).  If a reasonable jury cannot find that every limitation or its equivalent of
6  a properly construed claim is found in the accused product, the court may enter summary
7  judgment of noninfringement. *Medgraph Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed.
8  Cir. 2016).

9  **III.   DISCUSSION**

10     Claim construction requires a review of the patent's intrinsic evidence and, when
11 appropriate, extrinsic evidence.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed.
12 Cir. 2005) (en banc).  "Claim terms are generally given their plain and ordinary meaning,
13 which is the meaning one of ordinary skill in the art would ascribe to a term when read in
14 the context of the claim, specification, and prosecution history." *Apple Inc. v. MPH Techs.*
15 *Oy*, 28 F.4th 254, 259 (Fed. Cir. 2022).  Claims must be read in view of the specification
16 of which they are a part.  The specification is always highly relevant to the claim
17 construction. *Phillips*, 415 F.3d at 1315.  "The construction that stays true to the claim
18 language and most naturally aligns with the patent's description of the invention will be,
19 in the end, the correct construction."  *Renishaw PLC v. Marposs Societa' per Azioni*, 158
20 F.3d 1243, 1250 (Fed. Cir. 1998).

21     Based on the Court's construction of the claim limitation "metal housing (108)" and
22 the undisputed fact that the corresponding aspect of the accused devices is a plastic
23 housing, the Court finds it unnecessary to go beyond the absence of this limitation to enter
24 a judgment of noninfringement for Defendant Lowe's HC.

25
26
27
28

Appx0016

**A. Construction of Metal Housing (108)**

The plain language of the claim limitation "metal housing (108)" unambiguously requires that this housing element of the apparatus be comprised of metal.  Although the parties banter somewhat over a definition of metal, neither contend that in the context of this patent metal has a special meaning to a person of skill in the art.

The Court finds that the claim requires this "housing" limitation of the apparatus be made of a scientifically recognized metal substance.  *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words."); *Arlington Industries, Inc. v. Bridgeport Fittings*, 632 F.3d 1246, 1253 (Fed. Cir. 2011) (claim recited a "spring metal adaptor," consistent with the ordinary and customary meaning of the words; this term imposed the limitation that the adapter must be made of spring metal).

The construction dispute focuses more on the interpretation of the claim limitation "the metal housing (108) to embody the complete fixture (112)."  [Patent No. '118, Ex. 34-5, Col. 6:88.]  The Court is guided by the maxim that "[c]laims mean precisely what they say."  *Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*, 482 F.3d 1347, 1355 (Fed. Cir. 2007).  On its face, Claim 1 makes clear that the metal housing (108) is just one part of the overall apparatus.  [Patent No. '118, Ex. 34-5, Col. 6:9-28.]

Claim 1 describes the metal housing (108) as a component of the apparatus designed to embody the complete fixture (112).  The complete fixture includes a plurality of electrical systems, clips, and accessories.  [*Id.*, Col. 4:2-4.]  The metal housing (108) is attached to the output wires of the junction box (116) by a twist connector (118), both separately identified components of the claimed apparatus.  [*Id.*, Fig. 7, Col. 4:9-15.]  Retrofit clips (102), another separate component, are attached to the metal housing (108) to provide a friction fit inside a recessed lighting fixture housing to secure the complete fixture (112) inside.  [*Id.*, Figs. 7 and 8B.]

The metal housing (108) is a particular structure to which various other claim components are attached and it contains, i.e., encases, the complete fixture. "Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention." *Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010).

DS Advanced contends that the phrase "to embody" found in the claim limitation "the metal housing (108) to embody the complete fixture (112)" implies that the metal housing is somehow analogous to the entire fixture, rather than a component that encases (houses) the parts of the complete fixture. Plaintiff argues that the claim should be construed such that this metal housing component (108) is metal if other component parts of the complete fixture, such as the various clips, wires, and junction box, are metal since the housing, regardless of whether that individual part is made of metal, contains the complete fixture.

The Court is not persuaded by this interpretation of the claim. It directly contradicts the plain language of the claim that provides that the metal housing (108) is a component of the complete fixture (112), among numerous individually identified components. The specification describes the metal housing (108) as the base of the complete fixture (112). [Patent No. '118, Ex. 34-5, at Col. 4:25-26.] Different terms are presumed to mean different things. *CAE Screenplates, Inc. v. Heinrich Fiedler GmbH & Co. KG*, 224 F.3d 1308, 1317 (Fed. Cir. 2000).

Moreover, the patentee included in the claim itself the specification's parenthetical references for each component limitation. While this unusual format of claiming the invention may not limit the claimed invention to only the figures as illustrated in the specification, the inclusion of these references for each component part of the claimed apparatus informs the construction of each limitation—and therefore what constitutes the metal housing element. DS Advanced's claim construction argument that the metal housing (108) is the embodiment of the complete fixture (112) is contrary to the claim

3:23-cv-01335-CAB-JLB

Appx0018

language.  These are separately identified limitations, and the housing is disclosed to embody, i.e., encase, the complete fixture and must be formed of metal.

The Court construes the "metal housing (108)" limitation of the '118 Patent based on the plain language of the claim and in accordance with the descriptions in the specification and its figures as a "casing or enclosure made of a scientifically recognized metal substance."

**B.  Summary Judgment for Lowes is Warranted: There is No Dispute of Fact as to Whether the Accused Product Contains a "Metal Housing (108)"**

Having construed the claim limitation "metal housing (108)," the Court is satisfied that there is no dispute of material fact as to whether the Accused Product infringes the '118 Patent.  The summary judgment evidence is clear that the Accused Products have a housing made of plastic.  [ECF No. 48-1 ("Bretschneider Decl.") ¶¶ 12-24.]  DS Advanced offers no evidence to rebut Dr. Eric Bretschneider's analysis and conclusion related to the plastic housing, apart from its somewhat tortured proposed claim construction of "metal housing" which the Court rejects.  The straightforward visual confirmation of the plastic housing from the physical sample submitted by Lowe's HC as part of its motion leaves no debate on the issue.  [ECF No. 34-6.]  As the Accused Products do not contain a metal housing as construed by the Court, there can be no literal infringement, and summary judgment for Lowe's HC is warranted unless the doctrine of equivalents applies.  *See Medtronic, Inc.*, 843 F.3d at 949.

**C. The Doctrine of Equivalents is Barred by the Disclosure-Dedication Doctrine**

A lack of literal infringement does not end the infringement inquiry as infringement may exist under the doctrine of equivalents.  The doctrine of equivalents allows, in some circumstances, a claim element to be met by its substantial equivalent.  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 732–33 (2002) (citing *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.*, 339 U.S. 605 (1950)).

In this case, "the disclosure-dedication doctrine bars application of the doctrine of equivalents."  *Eagle Pharms. Inc. v. Slayback Pharma LLC*, 958 F.3d 1171, 1175 (Fed.

7

Cir. 2020).  The doctrine states that "when a patent drafter discloses but declines to claim subject matter, . . . this action dedicates the unclaimed subject matter to the public." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002). The application of the disclosure-dedication rule is a question of law for the Court. *SanDisk Corp. v. Kingston Tech. Co.*, 695 F.3d 1348, 1364 (Fed. Cir. 2012).

The '118 Patent itself distinguishes between the metal housing (108) or plastic housing.  [*See, e.g.*, '118 Patent, Ex. 34-5, Col. 4:34-36, 41-52.]  Yet "plastic housing" is not the subject of any of the '118 Patent's claims.  Given that the Patent disclosed plastic housings, but did not claim them, the "disclosure-dedication" rule applies: the plastic housings are dedicated to the public and cannot be captured under the doctrine of equivalents.  *See PCS Computer Products, Inc. v. Foxconn International, Inc.*, 355 F.3d 1353, 1360 (Fed. Cir. 2004) ("We agree with the district court, however, that the specific disclosure that '[o]ther prior art devices use molded plastic and/or metal parts that must be cast or forged which again are more expensive metal forming operations,' . . . dedicated the alternative use of plastic parts to the public.").  Accordingly, there is no infringement by equivalents.

**IV.   CONCLUSION**

Defendant's motion for summary judgment of noninfringement of the '118 patent is **GRANTED**.  All pending motions and deadlines are vacated, except for Defendant's Motion for Sanctions [ECF No. 59] pending before the magistrate judge for determination. Final judgment will be entered upon determination of that motion.

It is **SO ORDERED**.

Dated:  September 30, 2024

_____
Hon. Cathy Ann Bencivengo
United States District Judge

1
2
3
4
5
6
7
8                     UNITED STATES DISTRICT COURT
9                   SOUTHERN DISTRICT OF CALIFORNIA
10

11    DS ADVANCED ENTERPRISES, LTD.,        Case No.: 23-cv-01335-CAB-JLB
12                           Plaintiff,
                                             **ORDER GRANTING DEFENDANT'S**
13    v.                                     **MOTION TO FILE DOCUMENTS**
                                             **RELATING TO THE MOTION TO**
14    LOWE'S COMPANIES, INC., ET AL.,        **ENFORCE THE PROTECTIVE**
                                             **ORDER AND FOR SANCTIONS**
15                           Defendants.     **UNDER SEAL**
16
17                                           **[ECF Nos. 57, 58]**
18

19        Before the Court is a motion filed by Defendant Lowe's Homes Centers, LLC

20   ("LHC") to file documents relating to the pending motion to enforce the protective order

21   and for sanctions ("Sanctions Motion") under seal.  (ECF No. 57.)  LHC seeks an order

22   sealing: (1) Exhibit A (LHC_000795–812) to the Declaration of Scott D. Stimpson

23   ("Stimpson Decl.") (ECF No. 59-3), filed in support of LHC's Sanctions Motion (ECF No.

24   59); (2) Exhibit B to Stimpson Decl. (LHC_000841–887); (3) certain portions of Exhibit C

25   to Stimpson Decl.; and (4) certain portions of LHC's Memorandum of Law in support of

26   the Sanctions Motion.  (ECF No. 57 at 2.)  Plaintiff DS Advanced Enterprises, Ltd.

27   ("Plaintiff") filed an opposition.  (ECF No. 70.)

28   ///

                                           1

LHC argues that the documents and information it seeks to seal include non-public financial and competitive information, including diagrams of LHC's products. (ECF No. 57-1 at 2–4.) LHC designated the underlying documents as "CONFIDENTIAL – FOR COUNSEL ONLY," pursuant to the Protective Order issued in this case. (*Id.* at 3 (citing ECF No. 33).) Plaintiff opposes the motion to the extent it seeks to seal images of Plaintiff's products, which are covered by Plaintiff's Patent, US 11,054,118, as they are readily available to Plaintiff and therefore not subject to the Protective Order. (ECF No. 70 at 2.) Specifically, Plaintiff opposes the sealing of the images of Plaintiff's products from the last page of LHC's Exhibit A (LHC_000812). (*Id.* at 9.) Plaintiff also suggests that it opposes the sealing of any sales data attributable to purchase orders received by Plaintiff. (*Id.*)

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents,'" which is "justified by the interest of citizens in 'keep[ing] a watchful eye on the workings of public agencies.'" *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597, n.7, 598 (1978)). As such, a party seeking to seal a judicial record attached to a dispositive motion must "articulate[] compelling reasons supported by specific factual findings" that can surmount the "strong presumption in favor of access to court records." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003).

However, a different standard applies to non-dispositive motions. *Kamakana*, 447 F.3d at 1179. "Non[-]dispositive motions are often unrelated, or only tangentially related, to the underlying cause of action, and, as a result, the public's interest in accessing dispositive materials does not apply with equal force to non-dispositive materials." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (citation and internal quotation marks omitted). "In light of the weaker public interest in non[-]dispositive materials, we apply the 'good cause' standard when parties wish to keep them under seal." *Id.*; *see also* Fed. R. Civ. P. 26(c)(1) (stating that for good cause shown, courts may enter an order

2

1  preventing the disclosure of a "trade secret or other confidential research, development, or
2  commercial information").

3      Although a discovery-related motion is generally non-dispositive, as LHC seeks
4  potentially dispositive sanctions, the Court will address both standards. Based on its review
5  of the documents, the Court finds that there is good cause for filing the requested
6  documents under seal. *See Pintos*, 605 F.3d at 678. Moreover, the Court finds compelling
7  reasons for their sealing based on their disclosure of sensitive commercial information. *See
8  San Diego Detox, LLC v. Detox Ctr. of San Diego, LLC*, No. 3:22-cv-01145-RBM-DDL,
9  2024 WL 3610965, at *1 (S.D. Cal. July 31, 2024).[1]  Accordingly, LHC's Motion is
10 **GRANTED**. The Clerk of Court is directed to file all documents lodged at ECF No. 58
11 under seal.

12     **IT IS SO ORDERED.**
13 Dated:  January 24, 2025

14                                  *Jill Burkhardt*
15                                  Hon. Jill L. Burkhardt
                                    United States Magistrate Judge
16
17
18
19
20
21
22
23
24
25
26
27 [1]   The Court notes that the Honorable Cathy Ann Bencivengo previously ordered that
   the documents at issue, LHC_000795–812 and LHC_000841–887, should be sealed in this
28 case, finding both good cause and compelling reasons. (*See* ECF Nos. 76, 80.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DS ADVANCED ENTERPRISES, LTD.,

Plaintiff,

v.

LOWE'S COMPANIES, INC., et al.,

Defendants.

Case No.:  23-cv-01335-CAB-JLB

**REPORT AND RECOMMENDATION RE: MOTION TO ENFORCE THE PROTECTIVE ORDER AND FOR SANCTIONS**

**(ECF No. 59)**

20
21
22
23

This Report and Recommendation is submitted to the Honorable Cathy Ann Bencivengo, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California.

24
25
26
27
28

On September 9, 2024, Defendant Lowe's Homes Centers, LLC ("LHC") filed a Motion to Enforce the Protective Order and for Sanctions pursuant to Federal Rule of Civil Procedure 37(b).  (ECF Nos. 59 (redacted); 98 (sealed).)  LHC moves for an order enforcing the Protective Order issued in this case and sanctioning Plaintiff DS Advanced Enterprises, Ltd. ("Plaintiff").  (*Id.* at 1–2.)  Plaintiff filed an opposition.  (ECF No. 71.)

1    LHC filed a reply. (ECF No. 75.) For the reasons set forth below, the Court
2    **RECOMMENDS** that LHC's Motion to Enforce the Protective Order and for Sanctions
3    be granted in part.

4    **I.    BACKGROUND**

5        **A.    Factual Background**

6        Plaintiff commenced this lawsuit against multiple entities on July 21, 2023, alleging
7    infringement of U.S. Patent No. 11,054,118 ('118 Patent). (ECF No. 1.) In its First
8    Amended Complaint ("FAC"), Plaintiff alleges infringement of the '118 Patent solely
9    against LHC. (*See* FAC, ECF No. 17.)

10        Plaintiff identifies itself as a designer and seller of lighting fixtures worldwide. (*Id.*
11    ¶ 13.) Plaintiff claims to be the owner of all right, title, and interest in the '118 Patent. (*Id.*
12    ¶¶ 16, 123.) The Patent discloses "an apparatus to detachably attach an LED light fixture
13    to a ceiling or a recessed lighting fixture housing." (Patent No. '118, ECF No. 34-5 at 2.)

14        Plaintiff alleges in the FAC that LHC sold "pirated lighting products" in its stores
15    and on its websites and thereby infringed Plaintiff's Patent in violation of 35 U.S.C. § 271.
16    (FAC ¶¶ 69–72, 124.) The accused LHC products are recessed lighting products
17    designated as Utilitech Items #5041630, #5041631, #5041632, #5041633, and #5041634.
18    (*Id.* ¶¶ 75–110.)

19        On June 10, 2024, LHC filed a motion for summary judgment of noninfringement
20    asking the Court to grant summary judgment of non-infringement and dismiss the case in
21    its entirety. (ECF No. 34.) On September 30, 2024, the Honorable Cathy Ann Bencivengo
22    granted LHC's motion and vacated all pending motions and deadlines, except for the
23    present motion. (ECF No. 67.) On October 10, 2024, Plaintiff filed a Notice of Appeal to
24    the Federal Circuit. (ECF No. 72.)

25        **B.    Discovery**

26        As discovery commenced in this matter, the parties filed a Joint Motion for
27    Protective Order. (ECF No. 32.) The Joint Motion was granted, and the operative
28    Protective Order was entered on March 21, 2024. (ECF No. 33.) In the stipulated

2

Protective Order, the parties agree "to be bound by the terms" of the Protective Order, which permits parties to designate information as "CONFIDENTIAL – FOR COUNSEL ONLY" ("C-FCO") only if, "in the good faith belief of such party and its counsel, the information is among that considered to be most sensitive by the party, including but not limited to trade secret or other confidential research, development, financial or other commercial information." (*Id.* at 1–3.) Information designated C-FCO may be viewed only by counsel of the receiving party (as defined by the parties in the stipulated Protective Order), and by identified persons under designated conditions. (*Id.* ¶¶ 4–12.) In order to receive and review information designated as CONFIDENTIAL, Plaintiff's President, David Sherman, signed a copy of Exhibit A to the Protective Order which bound him to the Protective Order's provisions. (*See id.* at ¶ 10, Ex. A; *see also* Declaration of David Sherman ("Sherman Decl."), ECF No. 71-2 ¶¶ 3–8.)

On April 4, 2024, LHC produced two documents, LHC_000795–812 and LHC_000841–887, which were responsive to Plaintiff's Requests for Production of Documents. (ECF No. 59-1 at 4, 6.) These documents disclosed, among other things, LHC's sales, costs, and profit information, and internal proposals for products that would compete with Plaintiff's products, along with estimated sales and profit margins for those products. (*Id.*) Specifically, LHC_000795-812 is an internal presentation containing diagrams of certain proposed products. (*Id.* at 6.) The final page of the presentation, LHC_000812, contains a diagram of one of those products, as well as an estimate of total sales and expected gross margin percentage. (*Id.*) LHC_000841–887 is an excel spreadsheet containing detailed sales, costs, and profit data for LHC's products, from July 2022 through March 2024, including gross revenue, net revenue, costs of goods sold, total units sold, and net margins, among other things. (*Id.*) Both documents were designated C-FCO by LHC pursuant to the Protective Order. (*Id.* at 4.)

On July 19, 2024, Plaintiff served supplemental interrogatory responses ("First Supplemental Response"), verified by Mr. Sherman, on LHC. (ECF No. 59-1 at 6–7; *see also* Declaration of Patrick Cummins ("Cummins Decl."), ECF No. 71-4 ¶ 11.) The

responses addressed commercial success, citing LHC_000841 for evidence of units sold by LHC of the Accused Products since 2022, as well as gross revenue and net profit. (ECF No. 98 at 84.) The responses also addressed both evidence of copying, which involved reproducing an image from LHC_000795, and skepticism, citing LHC_000812. (*Id.* at 4–7.)

On July 29, 2024, LHC raised concerns with Plaintiff regarding what sales information had been disclosed to Mr. Sherman when he reviewed and verified the First Supplemental Response. (Cummins Decl. ¶ 16.) On August 1, 2024, Plaintiff's counsel spoke with Mr. Sherman to address LHC's concerns. (*Id.* ¶ 18.) Mr. Sherman recounted in his declaration that he had printed a single copy of the First Supplemental Response, but he had not discussed or otherwise shared any information from the First Supplemental Response with anyone other than Plaintiff's counsel. (Sherman Decl. ¶¶ 11–12, 17.) Mr. Sherman agreed to mail his single printed copy of the First Supplemental Response to counsel and remove any digital copies from his possession. (*Id.* ¶¶ 13–15, 27.)

On August 1, 2024, Plaintiff's counsel served a second supplemental interrogatory response ("Second Supplemental Response"), verified by Mr. Sherman, on LHC. (Cummins Decl. ¶ 22.) The next day, LHC's counsel raised concerns regarding images and exhibits in the Second Supplemental Response, which it claimed had also been in the First Supplemental Response. (*Id.* ¶ 24.) Plaintiff's counsel apologized for including certain exhibits in the interrogatory responses. (*Id.* ¶ 25.) He claimed to have "mistakenly attached certain exhibits assuming they were part of an email thread that was already in Plaintiff's possession prior to the initiation" of the present lawsuit. (*Id.*) That same day, Plaintiff's counsel contacted Mr. Sherman regarding LHC's latest concerns and had him mail the single copy he had printed of the Second Supplemental Response back to counsel and confirm he did not have any other copies and had not discussed the Second Supplemental Response with anyone. (*Id.* ¶¶ 26–28.) Mr. Sherman mailed his single printed copy of the Second Supplemental Response back to counsel, confirmed he did not

4

have another other copies, and agreed to sign an affidavit addressing LHC's concerns. (Sherman Decl. ¶¶ 20–27.)

On August 3, 2024, Plaintiff served both a redacted and unredacted third supplemental interrogatory response on LHC to address its confidentiality concerns. (Cummins Decl. ¶ 36.)

## II.    LEGAL STANDARDS

Rule 37 of the Federal Rules of Civil Procedure grants courts the authority to impose sanctions where a party has violated a discovery order, including a protective order issued pursuant to Rule 26. Fed. R. Civ. P. 37(b)(2); *see Apple, Inc. v. Samsung Elecs. Co.*, No. 5:11-CV-01846-LHK-PSG, 2014 WL 12596470, at *5 (N.D. Cal. Jan. 29, 2014); *Life Techs. Corp. v. Biosearch Techs.*, Inc., No. C-12-00852 WHA JCS, 2012 WL 1600393, at *8 (N.D. Cal. May 7, 2012).

Rule 37 "authorizes the district court to impose a wide range of sanctions if a party fails to comply with a discovery order." *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 910 (9th Cir. 1986). "The choice among the various sanctions rests within the discretion of the district court." *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980). However, the court's authority to issue sanctions "is subject to certain limitations[.]" *Nat'l Med. Enters., Inc.*, 792 F.2d at 910. Specifically: "(1) the sanction must be just; and (2) the sanction must specifically relate to the particular claim at issue in the order." *Id.* Furthermore, a compensatory award is limited to the "actual losses sustained as a result of the contumacy." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1148 (9th Cir. 1983). And where the sanction amounts to dismissal of a claim, the district court is "required to consider whether the claimed noncompliance involved willfulness, fault, or bad faith," and the availability of lesser sanctions. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citation omitted). "Disobedient conduct not shown to be outside the litigant's control" meets the standard of willfulness, bad faith or fault. *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1233 (9th Cir. 2006) (citations omitted).

23-cv-01335-CAB-JLB

## III.   DISCUSSION

### A.   Parties' Arguments

LHC contends that Plaintiff's counsel improperly disclosed information and images contained in documents identified as C-FCO to Plaintiff's President, a competitor, in violation of the Protective Order. (ECF Nos. 59-1 at 4; 75 at 5.) LHC contends that these documents reveal sensitive sales, costs, and profit data, and proposals for competing products with associated product margins. (ECF No. 59-1 at 4.) Furthermore, LHC complains that, when Plaintiff's counsel was first asked if C-FCO documents or their substance had been disclosed, Plaintiff's counsel failed to reveal the disclosure, responding, instead, "I believe I'm complying with the counsel only requests." (*Id*. at 9.) LHC contends that, after inquiries, Plaintiff admitted that it had disclosed this information. (*Id.* at 4.) LHC seeks serious sanctions to remedy the harm caused by the improper disclosure and to deter Plaintiff and others from such violations in the future. (*Id.* at 4–5.)

Specifically, LHC seeks attorney's fees and costs incurred as result of Plaintiff's violation of the Protective Order. (ECF No. 59-1 at 9.) LHC also asks the Court to preclude Plaintiff "from alleging commercial success, copying, or skepticism for any purpose in this litigation." (*Id.* at 11.) If the Court prefers a lesser sanction, then LHC proposes the Court preclude Plaintiff from "using LHC_000795-812 or LHC_000841 to assert commercial success, copying, or skepticism for any purpose in this litigation (limiting the sanction to these two documents only)." (*Id.* at 12.)

In response, Plaintiff does not dispute that Mr. Sherman reviewed unredacted versions of the supplemental interrogatory responses at issue. (*See* ECF No. 71 at 4–12; Cummins Decl. ¶¶ 9–28.) Rather, Plaintiff contends, with respect to both the supplemental interrogatory responses, that LHC was not prejudiced and, with respect to the Second Supplemental Response, that the C-FCO material LHC complains about should not have been so designated because Plaintiff had independent knowledge of the information. (*See* ECF No. 71 at 5–6, 9–11, 15–16.) Plaintiff further contends that Mr. Sherman only reviewed an unredacted version of the supplemental interrogatory responses at issue

1    through Plaintiff's counsel's mistake and outlines the steps Plaintiff took to rectify the

2    mistake. (*Id.* at 4–9.) Mr. Sherman specifically states in affidavits that he did not discuss

3    or otherwise share any information contained in the supplemental interrogatory responses

4    that he reviewed with anyone. (Sherman Decl. ¶¶ 12, 17, 24; Second David Sherman

5    Declaration ("Second Sherman Decl."), ECF No. 71-3 at ¶ 4.) Mr. Sherman also states that

6    he returned all copies of the supplemental interrogatory responses he may have

7    downloaded or printed to his counsel. (Sherman Decl. ¶¶ 14–15, 22–23, 26–27; Second

8    Sherman Decl. ¶¶ 5–6.)

9        Plaintiff further argues that Plaintiff is hardly a competitor of Defendant like

10   Amazon or Home Depot. (ECF No. 71 at 9–10.) In this regard, Mr. Sherman explicitly

11   states that he does not own or operate retail stores, does not have any employees, and does

12   not compete with LHC. (Second Sherman Decl. ¶¶ 7–9.) However, Mr. Sherman also

13   states that he has purchased lights from manufacturers and resold them to other vendors for

14   profit. (*Id.* ¶ 15.)

15       Overall, Plaintiff argues the Court should deny LHC's request for sanctions because

16   LHC has failed to provide evidence of great harm caused by the purported violation or

17   evidence of bad faith or willful conduct. (ECF No. 71 at 12–18.)

18       **B.    Analysis**

19           1.    <u>Violation of the Protective Order</u>

20       There is no dispute that Plaintiff's counsel violated the Protective Order issued in

21   this case. As discussed above, he disclosed to his client C-FCO information and images

22   on not one, but *two*, separate occasions, despite having been advised of the violation after

23   the first occasion. Although the issue of whether or not the material was properly

24   designated in the first place may go to the issue of the harm suffered by LHC, it is not a

25   defense to the violations of the Protective Order. There were procedures available to

26   Plaintiff to challenge improper designations. (*See* ECF No. 33 at ¶ 14.) It should go

27   without saying that a party who receives discovery subject to a protective order may not

28

7

1  unilaterally decide not to comply with the protective order because that party has decided

2  the material was improvidently designated as confidential.

3      The question now is one of remedy.

4          2.    Remedy for Violations

5      Pursuant to Federal Rule of Civil Procedure 37(b)(2)(C), when there is a failure to

6  abide by a protective order, the court "must order the disobedient party, the attorney

7  advising that party, or both to pay the reasonable expenses, including attorney's fees,

8  caused by the failure, unless the failure was substantially justified or other circumstances

9  make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).  Here, the Court finds

10  that counsel's violation of the Protective Order was not substantially justified.  Plaintiff's

11  counsel's actions may have been a mistake, but counsel was still careless with LHC's

12  sensitive information.  *See Life Techs. Corp. v. Biosearch Techs., Inc.*, No. C-12-00852

13  WHA JCS, 2012 WL 1600393, at *9 (N.D. Cal. May 7, 2012) (noting that "in patent cases,

14  it is critical that outside counsel handle the opposing party's confidential information with

15  the utmost caution").  Furthermore, when asked directly whether C-FCO material had been

16  shared with Mr. Sherman, Plaintiff's counsel did not give the inquiry careful consideration,

17  but instead initially asserted that he was handling C-FCO material properly.  (*See* ECF No.

18  59-7 at 2–5.)  After being alerted to LHC's concern about the First Supplemental Response,

19  Plaintiff's counsel should have taken extra care with respect to C-FCO material when

20  preparing the Second Supplemental Response.  He did not.

21      However, the Court finds that there are mitigating circumstances that make a full

22  award of expenses unjust.  First, after his initial deflection, Plaintiff's counsel took

23  substantial steps to minimize any harm and to provide LHC with evidentiary support that

24  Mr. Sherman no longer had access to C-FCO material, that he did not recall the substance

25  of what he had seen, and that he had not shared the information with anyone else.  In

26  addition, LHC argues that it has been prejudiced, but it has not convincingly demonstrated

27  significant prejudice.  LHC contends that Plaintiff is a competitor and Mr. Sherman can

28  utilize the limited information he was given to compete with LHC in selling light fixtures.

23-cv-01335-CAB-JLB

Appx0031

1  (*See* ECF No. 59-1 at 10.)  The Court does not find these arguments persuasive.  First, Mr.

2  Sherman is the sole employee of Plaintiff and does not own any retail stores.  Second,

3  LHC_000841–887, is a 47-page excel spreadsheet containing detailed sales, costs, and

4  profit data for LHC's products, from July 2022 through March 2024, including gross

5  revenue, net revenue, costs of goods sold, total units sold, and net margins, among other

6  things.    However, Mr. Sherman did not receive or review this spreadsheet.    The

7  interrogatory reviewed by Mr. Sherman identified only three numbers—total units sold of

8  the Accused Products since 2022, the gross revenue, and reported net profit.  (ECF No. 98

9  at 84.)  The extent to which Mr. Sherman can recall and then utilize these three numbers to

10  compete with and harm LHC is unclear, but it strikes the Court as purely speculative.[1]

11  Moreover, the interrogatory reviewed by Mr. Sherman which contains a partial image from

12  LHC_000812, only contains estimates from a "PROMO" presentation, not actual sales

13  figures.  (*See id.* at 86–88.)

14      Taking all of this into consideration, the Court finds that Plaintiff's counsel should,

15  within limits, pay the reasonable expenses, including attorney's fees, incurred by LHC as

16  a result of his violation of the Protective Order with respect to the First Supplemental

17  Response and Second Supplemental Response.  *See Cahill v. Nike, Inc.*, No. 3:18-CV-

18  01477-JR, 2024 WL 3963809, at *6 (D. Or. Aug. 26, 2024) (finding counsel liable for

19  reasonable attorney's fees where counsel disclosed confidential information subject to a

20  protective order to a news organization although the disclosure was not deliberate or done

21  in bad faith).

22      The Court has not been persuaded that Plaintiff should be precluded from alleging

23  commercial success, copying, or skepticism for any purpose in this litigation, or that

24

25  ───────────────

26  [1]    Mr. Sherman stated in his declaration that he does not recall any of LHC's sales data

27  that was revealed when he reviewed and signed the First Supplemental Response, except

28  that he believes he remembers "the number of significant digits of gross revenue for

  [LHC's] sales of the Accused Products."  (ECF No. 71-3 at 4.)

23-cv-01335-CAB-JLB

1  Plaintiff should be precluded from using LHC_000795–812 or LHC_000841–887, or any

2  of the information contained in these documents, to assert commercial success, copying,

3  or skepticism in this litigation. First, there was nothing improper about the underlying

4  production or retention of the documents. They were not, for example, inadvertently

5  produced privileged documents that were improperly retained by Plaintiff. Thus, there

6  would be no remedial purpose to the evidence preclusion. LHC is simply seeking to punish

7  and therefore deter Plaintiff and others from protective order violations in the future. (*See*

8  ECF No. 59-1 at 5.)

9       "Rule 37(b) sanctions may serve . . . *punitive and deterrent purposes*," *Falstaff*

10  *Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 783 (9th Cir. 1983) (emphasis added),

11  but "the sanction must specifically relate to the particular claim at issue in the order," *Nat'l*

12  *Med. Enters., Inc.*, 792 F.2d at 910. *See, e.g., Life Techs. Corp. v. Biosearch Techs., Inc.*,

13  No. C-12-00852 WHA JCS, 2012 WL 1600393, at *11 (N.D. Cal. May 7, 2012) (barring

14  attorney who disclosed attorney's eyes only documents to his client from further access to

15  attorney's eyes only documents). Here, the Court finds that LHC has not demonstrated

16  that the proposed remedy is sufficiently related to the violation at issue such that evidence

17  preclusion is appropriate. Plaintiff utilized the relevant documents when attempting to

18  support secondary considerations of non-obviousness in responding to LHC's

19  interrogatories, specifically commercial success, copying, and skepticism. (*See* ECF No.

20  59-1 at 5, 11.) However, wholesale preclusion of the argument or use of the documents is

21  too attenuated and would not be a just penalty given the circumstances discussed below,

22  where the Court does not find bad faith or prejudice.

23       As discussed above, although Plaintiff's counsel was careless with LHC's

24  confidential information, there is nothing in the record before the Court to suggest that

25  Plaintiff itself acted willfully or in bad faith. Plaintiff's President simply reviewed the

26  information provided to him and signed the interrogatory responses he was asked to sign.

27  (Sherman Decl. ¶¶ 9–30.) Mr. Sherman only briefly retained the C-FCO information at

28  issue before returning or deleting all copies, and did not share the information with anyone

1    besides Plaintiff's counsel. (*Id.*)  Moreover, there is nothing in the record before the Court
2    to suggest Plaintiff's counsel acted willfully or in bad faith.  Preclusion of evidence can be
3    a severe sanction, which is generally only imposed to deter "flagrant disobedience and
4    callous disregard of court discovery orders." *See Sumitomo Marine*, 617 F.2d at 1369–70.
5    Here, LHC has not established that Plaintiff or Plaintiff's counsel flagrantly disobeyed or
6    callously disregarded the Protective Order.

7         Lastly, "[w]hen a court excludes evidence under Rule 37, the court should do so only
8    where there is a finding of prejudice to the nonoffending party." *Life Techs. Corp.*, 2012
9    WL 1600393, at *11.  As addressed above, LHC argues that it has been prejudiced, but it
10   has not demonstrated that it has suffered such prejudice as to warrant the harsh sanction of
11   evidence preclusion.

12        For the foregoing reasons, the Court finds that the appropriate remedy for Plaintiff's
13   counsel's violation of the Protective Order is ordering counsel to pay, within limits, the
14   reasonable expenses, including attorney's fees, incurred by LHC as a result of his violation
15   of the Protective Order with respect to the First Supplemental Response and Second
16   Supplemental Response.  *See Apple, Inc.*, 2014 WL 12596470, at *10 (finding that
17   assessing outside counsel as liable for any and all costs and fees incurred in litigating a
18   motion for sanctions, in addition to public findings of wrongdoing, to be sufficient to
19   remedy the harm of repeated protective order violations and discourage similar conduct in
20   the future).

21              3.    Reasonable Attorney's Fees

22        As LHC did not substantiate its fee request in its Motion to Enforce the Protective
23   Order and for Sanctions, the Court ordered LHC to file a supplemental declaration in
24   support of its motion specifying the amount of attorney's fees and costs sought and
25   attaching all supporting documentation.  (ECF No. 91.)  In its supplemental declaration,
26   LHC states that it is seeking $41,448.11 in attorney's fees and expenses incurred by its
27   counsel, Sills Cummis & Gross P.C. ("Sills Cummis"), as result of Plaintiff's violations of
28   the Protective Order.  (Suppl. Decl. of Scott D. Stimpson ("Stimpson Decl."), ECF No. 93

¶ 2.)[2]  This amount includes a client discount of 15% on Sills Cummis's standard billing rate. (*Id.* ¶ 14.)

LHC is generally entitled to all "reasonable expenses" caused by Plaintiff's counsel's violation of the Protective Order.  *See* Fed. R. Civ. P. 37(b)(2)(C).  Reasonable attorney fees are calculated based on the lodestar method, which requires the court to "multiply[] the number of hours it finds the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *McGrath v. Cnty. of Nevada*, 67 F.3d 248, 252 (9th Cir. 1995); *see also Cruz v. Nike Retail Servs., Inc.*, 346 F.R.D. 107, 115 (S.D. Cal. 2024).

The party seeking fees bears the burden of demonstrating that its counsel's hourly rates are reasonable and in line with prevailing rates in the relevant legal community of the Southern District of California.  *See Herring Networks, Inc. v. Maddow*, No. 3:19-cv-1713-BAS-AHG, 2021 WL 409724, at *2 (S.D. Cal. Feb. 5, 2021).  To do so, the party must produce "satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1263 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate.").

In calculating the number of reasonable hours to include in the lodestar, the court should consider "whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." *Moore v. Jas. H. Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).  Billing records may establish the reasonableness of the requested number of hours.  *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013).  The court will exclude any hours

---

[2]    LHC represents that any monetary award in this case will go toward reimbursement of the fees spent by Yankon Lighting due to its indemnification obligations. (Stimpson Decl. ¶ 6.)

23-cv-01335-CAB-JLB

1    "that are excessive, redundant, or otherwise unnecessary." *McCown v. City of Fontana*,

2    565 F.3d 1097, 1102 (9th Cir. 2009) (citation omitted); *see also Cruz*, 346 F.R.D. at 117.

3    The court has "a great deal of discretion in determining the reasonableness of the fee[,]"

4    including "the reasonableness of the hours claimed by the prevailing party." *Gates v.*

5    *Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).

6         LHC represents that four attorneys worked on the Motion to Enforce the Protective

7    Order and for Sanctions: (1) Scott Stimpson, a member of Sills Cummis's litigation

8    department and Chair of its Intellectual Property Practice Group, with over 35 years of

9    experience in intellectual property litigation and counselling, with an hourly billing rate of

10   $925; (2) Randy Moonan, a member of Sills Cummis's litigation department with over 11

11   years of experience representing clients in complex high-stakes litigation and in sensitive

12   regulatory and internal investigations, with an hourly billing rate of $825; (3) Laura

13   Krawczyk, counsel in Sills Cummis's litigation department, with almost 20 years of

14   experience handling intellectual property litigation, with an hourly billing rate of $675; and

15   (4) Sean Camperson, an associate in Sills Cummis's litigation department, with 2 years of

16   experience handling commercial litigation disputes, with an hourly billing rate of $450.

17   (Stimpson Decl. ¶¶ 9–12.)

18        In its briefing, LHC has not demonstrated—or attempted to demonstrate—that its

19   counsel's hourly rates are reasonable and in line with prevailing rates in the relevant legal

20   community of the Southern District of California. However, the Court finds that counsel's

21   hourly rates, as discounted, are reasonable in this District. *See CliniComp Int'l, Inc. v.*

22   *Cerner Corp.*, No. 17-cv-02479-GPC (DEB), 2023 WL 2604816, at *3 (S.D. Cal. Mar. 22,

23   2023) (finding reasonable undiscounted hourly rates for a partner up to $1,465, for

24   associates up to $805, and for paralegals up to $495 in patent litigation); *NuVasive, Inc. v.*

25   *Alphatec Holdings, Inc.*, No. 3:18-CV-347-CAB-MDD, 2020 WL 6876300, at *2–3 (S.D.

26   Cal. Mar. 20, 2020) (finding a Winston & Strawn partner's billing rate of $1,005 per hour

27   and other attorneys' rates of $860 and $885 per hour "consistent with the prevailing market

28   rates for complex patent litigation in this district"); *Orthopaedic Hosp. v. Encore Med.*,

*L.P.*, No. 3:19-cv-00970-JLS-AHG, 2021 WL 5449041, at \*13–15 (S.D. Cal. Nov. 19, 2021) (finding reasonable in a complex, high-stakes patent litigation a Quinn Emanuel partner's billing rate of up to $1,260 and a fifth-year associate hourly rate of up to $1,065, but acknowledging a client discount that worked out to an average hourly rate of $709.63). Here, incorporating its client discount, Sills Cummis billed an average hourly rate of $632.80 for its work on this patent litigation.  The Court finds that rate reasonable in this District.

 The Court has reviewed the invoices provided by LHC in detail.  The Court finds that only time entries that specifically reflect research, drafting, and review of the Motion to Enforce the Protective Order and for Sanctions are reasonably awarded in this case.  The Court will exclude all time spent meeting and conferring, reviewing emails, and communicating with clients, opposing counsel, and within the firm.  In this regard, the Court finds that Mr. Stimpson's time sheets reflect that he spent 9.3 hours reviewing and revising the motion,[3] Ms. Krawczyk spent 13.3 hours researching and drafting the motion, Mr. Moonan spent 22.6 hours drafting and finalizing the motion, including declarations and exhibits, and the reply,[4] and Mr. Camperson spent 11.2 hours conducting research. The Court will not question Sills Cummis's decision to have Mr. Moonan, a senior counsel, do the majority of drafting in this case, as he may have been more efficient with his time than a junior associate.  However, the Court finds that LHC has not endeavored to justify the reasonableness or efficiency of having multiple people draft the motion.  Accordingly, the Court finds it appropriate to cut Ms. Krawczyk's hours entirely.  For the foregoing reasons, the Court finds that LHC has established reasonable expenses in the amount of $27,444.38.

---

[3]  The Court is not including Mr. Stimpson's hours on July 31, August 3, August 5, August 27, September 3 (conference), September 5, October 7 (correspondence), October 10, and October 15.

[4]  The Court is not including Mr. Moonan's hours on September 3.

However, Rule 37(b)(2)(C) also directs the Court to consider whether "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). Here, the Court further considers the relative financial positions of the parties, the lack of evidence of intentionality, the remediation efforts undertaken by Plaintiff's counsel, and the lack of persuasive evidence of harm to LHC and determines that an appropriate sanction under these circumstances should not exceed $25,000. Accordingly, the Court finds a total fee award of $25,000 to be reasonable and just.

## IV. CONCLUSION

For the reasons set forth above, the Court the Court **RECOMMENDS** that LHC's Motion to Enforce the Protective Order and for Sanctions be **GRANTED IN PART** such that Plaintiff's counsel be ordered to pay the reasonable expenses, including attorney's fees, in the amount of $25,000, caused by his violation of the Protective Order with respect to the First Supplemental Response and Second Supplemental Response. However, the Court recommends that all other forms of relief requested by LHC be denied.

**IT IS HEREBY ORDERED** that no later than __January 31, 2025__, each party shall file either a "Notice of Intent to File Objections" or a "Notice of Intent Not to File Objections." If a party has timely noticed its intent to object, any written objections to this Report and Recommendation shall be filed with the Court and served on all parties no later than __February 7, 2025__. The document should be captioned "Objections to Report and Recommendation."

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449,445 (9th Cir 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir 1991).

**IT IS SO ORDERED.**

Dated: January 24, 2025

Hon. Jill L. Burkhardt
United States Magistrate Judge

15

23-cv-01335-CAB-JLB

1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 11  DS ADVANCED ENTERPRISES, LTD., | Case No.: 3:23-cv-01335-CAB-JLB |
| 12                                     Plaintiff, | |
| 13  v. | **ORDER ADOPTING REPORT AND RECOMMENDATION RE: MOTION TO ENFORCE THE PROTECTIVE ORDER AND FOR SANCTIONS, AND GRANTING IN PART DEFENDANT'S MOTION** |
| 14  LOWE'S HOME CENTERS, LLC, | |
| 15                                     Defendant. | |
| 16 | |
| 17 | [Doc. Nos. 59, 99] |
| 18 | |
| 19 | |

20      Pending before the Court is the Report and Recommendation ("R&R") of Magistrate
21  Judge Jill L. Burkhardt, filed on January 24, 2025, recommending that the Court grant in
22  part defendant Lowe's Home Center's ("Lowe's HC") motion to enforce the Protective
23  Order and impose sanctions against counsel for plaintiff DS Advanced Enterprises, Ltd.
24  ("DS Adavanced").  [Doc. Nos. 59 and 99.]
25      Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1) set forth a district
26  court's duties in connection with a magistrate judge's report and recommendation.  The
27  district court must "make a de novo determination of those portion of the report to which
28

1

1  objection is made," and "may accept, reject, or modify, in whole or in part, the findings or

2  recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1); *see also United*

3  *States v. Raddatz*, 447 U.S. 667, 673-76 (1980); *United States v. Remsing*, 874 F.2d 614,

4  617 (9th Cir. 1989).  DS Advanced filed timely objections. [Doc. No. 105.]  Lowe's HC

5  filed a timely response. [Doc. No. 106.]

6       DS Advanced does not object to the finding of the magistrate judge that its counsel

7  violated the terms of the Protective Order issued in the case by disclosing to his client

8  information and images designated as "CONFIDENTIAL – FOR COUNSEL ONLY" ("C-

9  FCO").  DS Advanced does not directly object to the magistrate judge's finding that

10 counsel made these disclosures twice, despite having been advised of the violation after

11 the first occasion.

12      DS Advanced objects that the magistrate judge did not resolve its challenge to

13 Lowe's HC's confidentiality designations raised in its opposition to Lowe's HC's motion

14 for sanctions before finding the violation of the Protective Order.  DS Advanced asserted

15 then and reasserts now that the information disclosed in violation of the Protective Order

16 was already known to DS Advanced and was improperly designated C-FCO.  As the

17 magistrate judge found however DS Advanced did not follow the Protective Order

18 procedures to challenge the designation prior to counsel disclosing the materials to his

19 client.  DS Advanced's argument that the confidential material disclosed should not have

20 been designated confidential in the first instance does not alter the fact that counsel

21 disclosed it twice without properly seeking to first remove the C-FCO designation.  The

22 discovery was produced subject to the Protective Order and DS Advanced's counsel could

23 not unilaterally decide to ignore the designation because he thought it improperly

24 designated.  DS Advanced's untimely challenge to the designation in response to the

25 motion for sanctions for violating the Protective Order does not remedy the violations.  The

26 objection is overruled.

27      DS Advanced's remaining objections are with regard to the propriety of the fees

28 Lowe's HC claims to have incurred in the seeking to enforce the Protective Order and the

Appx0040

sanction imposed on DS Advanced's counsel for his non-compliance with the terms of the Order.

The magistrate judge considered the reasonable expenses, including attorneys' fees incurred by Loew's HC as a result of the violations of the Protective Order. DS Advanced objects to the recovery of any fees related to the second violation arising from the production of the Second Supplemental Interrogatory Responses and communications regarding that production. The Second Supplemental Interrogatory Responses however evidenced that counsel provided C-FCO material to his client again without first seeking to properly remove the designation. This was made apparent in DS Advanced's opposition to the motion for sanctions and was therefore addressed in Lowe's HC's reply. To the extent the magistrate judge awarded fees that covered expenses related to addressing the second violation, the objection is overruled.

Similarly, DS Advanced objects to the recovery of fees arising from meet and confer efforts to address the Protective Order violations. These efforts to ascertain what occurred and when, and the extent of the violations were relevant to the determination of an appropriate sanction. It provided important factual background to determine the scope of the violation and the potential harm to Lowe's HC resulting from the improper disclosures. The information developed through the meet and confer process in part established that the harm to Lowe's HC from the disclosures was limited and did not justify the issue preclusion sanctions Lowe's HC sought. The magistrate judge also found that mitigating circumstances made a full award of Lowe's HC's expenses unjust.

Lowe's HC sought over $41,000 in fees and expenses as a result of the violations of the Protective Order. The magistrate judge reviewed the invoices provided by Lowe's HC in detail and only found time entries for research, drafting and review of the motion to be reasonably awarded. Time spent meeting and conferring, reviewing emails, communicating with clients and with opposing counsel and communications within the defense counsels' firm were all excluded, as was the time billed by attorney Krawczyk. Consequently, DS Advanced's objections to recovery of fees for communications, emails

3

1  and meet and confer discussions, and purported block billing are moot, as they were

2  excluded from the recommended final award.

3        The magistrate judge evaluated the nature of the violations, the harm to Lowe's HC

4  and the reasonable expenses billed for the preparation of the motion.  The magistrate judge

5  ultimately concluded and ordered, that for his violations of the Protective Order, counsel

6  for DS Advanced should pay $25,000.  This Court overrules the objections raised by DS

7  Advanced to this award and finds no basis to revise this number.  Further DS Advanced

8  has provided no legal justification for its argument that Lowe's HC's indemnitor should be

9  precluded from receiving the payment.

10       Having reviewed the R&R, the Court finds that it is thorough, well-reasoned, and

11  contains no clear error.  Having considered DS Advanced's objections *de novo*, the

12  objections are overruled or deemed moot. Accordingly, the Court hereby **ADOPTS**

13  Magistrate Judge Burkhardt's report and recommendation.  The motion to enforce the

14  Protective Order and award sanctions is GRANTED IN PART as set forth within the

15  Report and Recommendation.

16       It is **SO ORDERED**.

17  Dated:  February 24, 2025

18  _____

19  Hon. Cathy Ann Bencivengo
    United States District Judge

20

21

22

23

24

25

26

27

28

Appx0042

1
2
3
4
5
6
7
8                   UNITED STATES DISTRICT COURT

9                 SOUTHERN DISTRICT OF CALIFORNIA

10

11   DS ADVANCED ENTERPRISES, Ltd.,        Case No.:  3:23-cv-01335-CAB-JLB

12                              Plaintiff,
                                           **ORDER ON DEFENDANT'S**
13   v.                                    **MOTION FOR ATTORNEYS' FEES**
                                           **AND RELATED EXPENSES**
14   LOWE'S HOME CENTERS, LLC,

15                             Defendant.
                                           [Doc. No. 77]
16

17

18       Before the Court is a motion brought by defendant Lowe's Home Centers, LLC

19  ("Lowe's HC") as the prevailing party in this litigation, for the Court to find this case

20  exceptional pursuant to 35 U.S.C. § 285, and to award defendant its reasonable attorney

21  fees and expenses against plaintiff DS Advanced Enterprises, Ltd. ("DS Advanced").

22  Lowe's HC also seeks an award of fees and expenses against plaintiff's counsel pursuant

23  to 35 U.S.C. § 1927, asserting that counsel's bad faith conduct unreasonably multiplied the

24  proceedings.  [Doc. No. 77.]  DS Advanced filed an opposition. [Doc. No. 81.]  Lowe's

25  HC filed a reply. [Doc. No. 84.]  The Court determined this motion could be decided on

26  the papers. Civ.LR 7.1.d.1.

27       A district court in exceptional cases may award reasonable attorney fees and non-

28  taxable costs to the prevailing party. 35 U.S.C. § 285.  "An exceptional case is simply one

1

1   that stands out from others with respect to the substantive strength of a party's litigating

2   position . . . or the unreasonable manner in which the case was litigated." *Dragon*

3   *Intellectual Prop. v. Dish Network*, 101 F.4th 1366 1369-70 (Fed. Cir. 2024) *citing Octane*

4   *Fitness LLC v. ICON Health & Fitness, Inc*. 572 U.S. 545, 554 (2014).

5        A district court may determine whether a case is exceptional in the case-by-case

6   exercise of its discretion considering the totality of the circumstances. *OneSubsea IP UK*

7   *Ltd. v. FMC Tech., Inc*., 68 F.4th 1285, 1294 (Fed. Cir. 2023).  A party seeking fees under

8   § 285 must prove the case is exceptional by a preponderance of the evidence. *Id., citing*

9   *Octane Fitness,* 572 U.S. at 554.[1]

10       As an initial matter the Court finds that Lowe's HC's fee motion was submitted

11  timely.  Although the Court granted Lowe's HC's summary judgment of non-infringement

12  on September 30, 2024, the order specifically stated final judgment would not be entered

13  until a pending motion for sanctions was resolved.  [Doc. No. 67.]  Further on October 15,

14  2024, the Court issued a scheduling order for the filing of an exceptional case determination

15  after entry of final judgment, which still has not occurred.  [Doc. No. 74.] That order

16  notwithstanding, Lowe's HC filed its motion on October 23, 2024, in advance of the entry

17  of final judgment.  DS Advanced's contention that the motion should be deemed waived

18  as untimely is rejected.

19       The briefing on this motion by both parties highlights that this has been an

20  acrimonious litigation with both sides hurling assertions of bad faith and misconduct.

21  Lowe's HC accuses DS Advanced and its counsel of harassing litigation tactics and shifting

22  frivolous infringement contentions.  DS Advanced accuses Lowe's counsel of making false

23  statements to the Court and violations of Rule 11.

24

25

26

_____

27  [1] Counsel for DS Advanced erroneously argued that the standard to prove the exceptional nature of the
28  case is clear and convincing evidence [Doc. No. 81, at 6], citing to case law that preceded the Supreme
Court's rejection of that evidentiary burden in *Octane Fitness*.

2

The Court in assessing whether this case merits an exceptional case finding considers only the matters before it.  As evidence of plaintiff's bad faith and harassment, Lowe's HC references other litigations in other districts filed by DS Advanced against other Lowe's entities or affiliates regarding the same patent at issue in this litigation.  These matters are not before this Court and will be left to those district judges to determine if they were improvidently or maliciously filed.

Lowe's HC also references a violation by counsel for DS Advanced of the Protective Order entered in this case.  That discovery matter was addressed by the magistrate judge in a Report and Recommendation made to this Court. [Doc. No. 99.]  Counsel's violations were found to be unjustified, careless failures to adhere to the terms of the Protective Order but not bad faith, and counsel has already been sanctioned.

The Court focuses on the history of this case and the litigation position of DS Advanced.  The case was filed on July 21, 2023. [Doc. No. 1.]  Lowe's HC contends that DS Advanced improperly named multiple defendants without justification, however DS Advanced voluntarily dismissed those parties on August 21, 2023, before any substantial expense or inconvenience was incurred.  [Doc. No 5.]

DS Advanced filed an amended complaint on October 16, 2023. [Doc. No. 17.] Lowe's HC filed a motion to dismiss willfulness allegations which the Court denied finding that, based only on the allegations of the complaint, DS Advanced plausibly stated a claim for willful infringement.  [Doc. No. 24.]  Lowe's HC then filed its answer on January 29, 2024. [Doc. No. 27.]  In March 2024, the parties entered into a Scheduling Order [Doc. No. 31] and a Protective Order [Doc. No. 33].  Nothing else appears on the docket until Lowe's HC filed its motion for summary judgment of non-infringement on June 10, 2024. [Doc. No. 34.]

After receipt of DS Advanced's infringement contentions, Lowe's HC presented its motion to the Court for summary judgment of non-infringement.  Based on proposed constructions of three limitations of the patent's only independent claim, Lowe's HC argued for a finding of non-infringement asserting that the aspects of the accused devices

3

1   that DS Advanced contended satisfied those claim elements could not as a matter of law

2   infringe. [*Id.*]

3         Lowe's HC briefed the three claim limitations. The Court after construing the "metal

4   housing" limitation found it unnecessary to reach the two other challenged limitations.  DS

5   Advanced proposed a construction for "metal housing" that it contended encompassed the

6   accused devices.  The Court rejected the proposed construction as contrary to the plain

7   meaning of the claim term and the specification.  [Doc. No. 67.]   Lowe's HC correctly

8   states that the Court was highly skeptical of the construction being proffered by DS

9   Advanced and remarked that it was "almost frivolous."

10        The question before the Court now is whether DS Advanced's interpretation of the

11  claim limitation was so objectively unreasonable that the circumstances support an

12  exceptional case finding.  The construction of "metal housing" was put before the Court

13  relatively early in the litigation, just three months after the entry of the Scheduling Order

14  and Protective Order. DS Advanced appears to have consistently identified in its

15  infringement contentions the aspects of the accused device it alleged met this claim

16  limitation based on its expansive interpretation of the claim.

17        The Court does not find that DS Advanced asserted its construction in bad faith or

18  for an improper purpose, such as to extract a settlement.  *See Extremity Medical, LLC v.*

19  *Nextremity Solutions, Inc.* 2024 WL 4384202, *2 (Oct. 3, 2024, D.Del.) (pursing baseless

20  litigation for a quick pay day).  DS Advanced failed to convince the Court of its

21  interpretation of the patent and the Court found the proposed construction strained the plain

22  reading of the claim.  Under the totality of the circumstances however the Court is not

23  convinced that DS Advanced knowingly and intentionally asserted a meritless position for

24  improper purposes.  It was just wrong.

25        Lowe's HC's motion to find the case exceptional and request for an award of

26  attorneys' fees and expenses pursuant to 35 U.S.C. § 285 is DENIED.

27        The Court also does not find that DS Advanced's counsel intentionally and in bad

28  faith unreasonably multiplied the proceedings justifying a fee award pursuant to 35 U.S.C.

§ 1927. Counsel has a litigation style that is perhaps overly aggressive and at times reflected a somewhat condescending attitude toward the Court, but the Court does not find it was intentionally harassing or advanced in bad faith. The request for a fee award against counsel is also DENIED.[2]

It is **SO ORDERED**.

Dated: February 24, 2025

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[2] The sanction award against counsel for DS Advanced for his violations of the Protective Order however remains affirmed.

5

3:23-cv-01335-CAB-JLB

Appx0047

1
2
3
4
5
6
7

8          UNITED STATES DISTRICT COURT

9          SOUTHERN DISTRICT OF CALIFORNIA

10

11   DS ADVANCED ENTERPRISES, Ltd.,        Case No.:  3:23-cv-01335-CAB-JLB

12                          Plaintiff,

13   v.                                    **ORDER ON PLAINTIFF'S MOTION TO AMEND AND ALTER THE JUDGMENT PURSUANT TO Fed. R. Civ. P. §§ 52(b) and 59(e)**

14   LOWE'S HOME CENTERS, LLC,

15                          Defendant.

16                                         [Doc. No. 79]

17

18          Before the Court is a motion brought by plaintiff DS Advanced Enterprises ("DS

19   Advanced") to vacate the Court's judgment and for reconsideration of the Court's order

20   granting summary judgment of noninfringement for defendant Lowe's Home Centers

21   ("Lowe's HC"). [Doc. No. 79.]  Lowe's HC filed an opposition. [Doc. No. 83.]  DS

22   Advanced filed a reply. [Doc. No. 86.]  The Court held argument on January 16, 2025.  The

23   motion is DENIED.

24          DS Advanced asserted infringement of U.S. Patent No. 11,054,118 against Lowe's

25   HC. The patent is directed to an apparatus designed to detachably attach a lighting fixture

26   to a ceiling or a recessed lighting fixture housing. [Doc. No. 34-5, at 2.]

27          Lowe's  HC  moved  for  summary  judgment  of  noninfringement  based  on

28   constructions of certain claim limitations of the patent's only independent claim and the

1

Appx0048

1  assertion that the accused device lacked those limitations.    After considering the
2  submissions of the parties and counsels' arguments on the construction of the claim
3  limitation "metal housing," the Court granted Lowe's HC's motion for summary judgment.
4  [Doc. No. 67.]

5     DS Advanced now moves pursuant to Fed. R. Civ. P. §§ 52(b) and 59(e) to set aside
6  the judgment for Lowe's HC and for reconsideration of the Court's claim construction and
7  its finding of noninfringement.    Reconsideration is an "extraordinary remedy, to be used
8  sparingly in the interests of finality and conservation of judicial resources."    *Kona*
9  *Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000.)

10    A district court may properly reconsider its decision under § 59(e) if it is "(1)
11 presented with newly discovered evidence, (2) committed clear error or the initial decision
12 was manifestly unjust, or (3) if there is an intervening change in the controlling law."
13 *School Dist. No. 1J v. ACandS, Inc.* 5 F.3d 1255, 1263 (9th Cir. 1993). Clear error occurs
14 when "the reviewing court on the entire record is left with the definite and firm conviction
15 that mistake has been committed."    *United States v. U.S. Gypsum Co*., 333 U.S. 364, 395
16 (1948).    Motions for reconsideration are not to be used merely as an intermediate appeal
17 before taking a disputed ruling to the circuit court.

18    DS Advanced has not presented newly discovered evidence unavailable to it at the
19 time of filing its opposition to the defendant's motion for summary judgment.    Nor has it
20 presented an intervening change in the law.    DS Advanced contends the Court committed
21 clear error in both its construction of the claim limitation "metal housing" and its
22 determination that the component of the accused device that constitutes the housing
23 limitation is plastic and therefore does not infringe.

24    DS Advanced's motion is largely focused on a comparison of Lowe's HC's accused
25 product with what DS Advanced asserts is its own commercial embodiment of the
26 invention. This comparison is neither relevant to the claim construction or the infringement
27 analysis.    "Claim construction, from which an infringement analysis depends, focuses on
28 the recited limitations of the *claims*, not on the features of a commercial embodiment of

1   the invention." *Myco Indus., Inc. v. BlephEX, LLC*, 955 Fl3d 1, 15 (Fed. Cir. 2020)

2   (emphasis in the original). "Infringement is determined on the basis of the claim, not on

3   the basis of a comparison with the patentee's commercial embodiment of the claimed

4   invention." *ACS Hosp. Sys. Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1578 (Fed. Cir.

5   1984).

6       DS Advanced disputes the Court's construction of the limitation "metal housing."

7   Plaintiff misconstrues or misstates the Court's claim construction in its motion. Further,

8   to the extent plaintiff asserts new claim construction arguments, that is not an appropriate

9   basis for reconsideration of the Court's claim construction order.

10      DS Advanced still seeks to construe the metal housing limitation based on the

11  configuration of the accused device. For example, claim 1 of the patent includes the

12  following limitation: "a twist connector (118) to attach the output wires of the junction box

13  (116) to the metal housing (108)." DS Advanced illustrates in its infringement contentions

14  that in the accused device there are wires passing through an opening in the "white wafer

15  piece" (i.e., the plastic housing) connecting to a circuit board on a metal disk contained

16  therein. Therefore, DS Advanced argues the metal disk with the circuit board constitutes

17  the "metal housing." This approach to claim construction based on the configuration of

18  the accused device however is misplaced. *See NeoMagic Corp. v. Trident Microsystems,*

19  *Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be

20  construed by reference to the accused device.")

21      The claim is construed based on its plain language and the specification and then

22  that construction is applied to the accused device to determine if the device is covered. DS

23  Advanced looks to its commercial embodiment and the accused device and contends that

24  any metal structure meets the claim limitation, but this simply ignores the plain meaning

25

26

27

28

3:23-cv-01335-CAB-JLB

Appx0050

1  of housing and its identification in the specification as a component separate from the

2  junction box, the clips, and the lighting fixture.[1]

3      DS Advanced also argues that the Court should reconsider whether this internal

4  metal component contained within the plastic housing of defendant's accused device,

5  revealed by removing the plastic covering, could be viewed by a jury as meeting the metal

6  housing limitation.  The Court rejects this argument, whether timely raised or not, as this

7  metal disk does not meet the Court's construction of the limitation of a housing.  It is a part

8  of the accused device contained within the plastic housing.

9      Plaintiff has not provided newly discovered evidence, identified an intervening

10  change in the controlling law, or demonstrated the court committed clear error in either its

11  claim construction or in granting summary judgment of noninfringement for defendant.

12  DS Advanced's motion is therefore DENIED.

13      It is **SO ORDERED**.

14  Dated:  February 24, 2025

15

16  _____
   Hon. Cathy Ann Bencivengo
   United States District Judge

17

18

19

20

21

22

23

24  _____

25

26  [1] DS Advanced alleged in its amended complaint [Doc. No. 17, at ¶89] that the plastic portion of the accused device has metallic content and therefore meets the claim limitation but did not argue this in opposition to LHC's motion for summary judgment.  In opposition to the summary judgment motion DS Advanced reiterated its argument that the housing limitation was met by the metal structures in the accused device including the metal disk beneath the "white wafer piece," which it contended was simply an added plastic component included as an attempt to avoid infringement.  [Doc. No. 45, at 33.]

27

28

Appx0051

# MINUTE ORDER OF THE UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

Case Name:  **DS Advanced Enterprises, Ltd. v. Lowe's Home Centers, LLC**          Case Number:  **23cv1335-CAB-JLB**

Hon. Cathy Ann  Bencivengo          Ct. Deputy Lori Hernandez          Rptr Tape:  [Reporter Tape]

Plaintiff's motion to amend or alter this judgment having been denied, the Court hereby enters Final Judgment in favor of Defendant Lowe's Home Centers, LLC

Date:  February 24, 2025                                    Initials:  AET

Appx0052



# United States District Court

## SOUTHERN DISTRICT OF CALIFORNIA

DS Advanced Enterprises, Ltd.

Civil Action No.  23-cv-01335-CAB-JLB

**Plaintiff,**

**V.**

See Attachment

**JUDGMENT IN A CIVIL CASE**

**Defendant.**

**Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED:

Plaintiff's motion to amend or alter this judgment having been denied, the Court hereby enters Final Judgment in favor of Defendant Lowe's Home Centers, LLC. Case Closed.

**Date:**        2/25/25

**CLERK OF COURT**
**JOHN MORRILL, Clerk of Court**
By:  s/  A. Hazard

A. Hazard, Deputy

Appx0053